IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., *et al.*, | |
| Plaintiffs | No. 1:21-cv-02130-CJN |
| v. | |
| HERRING NETWORKS, INC., *et al.*, | Judge Carl J. Nichols |
| Defendants | **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' REPLY IN SUPPORT
## OF MOTION TO DISMISS, STAY, OR TRANSFER

## <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction ................................................................................................. 1

II.   The Court should abstain ............................................................................. 3

    A.    *Colorado River* abstention applies ..................................................... 3

        1.    This case is substantially similar to the *Coomer* Action ........................... 3

        2.    This is an exceptional case that warrants abstention ................................ 5

    B.    Dismissal is appropriate ....................................................................... 8

    C.    Even if the Court doesn't dismiss, a stay is appropriate ...................... 9

III.  If the Court doesn't abstain, it should transfer ................................................. 10

    A.    The action could have been brought in Colorado ................................. 10

    B.    The private-interest factors favor transfer ........................................... 11

    C.    The public-interest factors favor transfer ............................................ 19

    D.    The potential for inconsistent judgments favors transfer .................... 21

    E.    The fact that the *Coomer* Action was filed first favors transfer ......... 22

IV.   Dominion has failed to adequately plead personal jurisdiction over OAN and the Herrings .................................................................................................... 22

    A.    D.C.'s long-arm statute doesn't confer jurisdiction over OAN or the Herrings ............................................................................................... 22

    B.    OAN and the Herrings didn't cause tortious injury in Washington, D.C. ........... 24

    C.    Jurisdiction doesn't comport with due process .................................... 25

V.    Conclusion ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*African Methodist Episcopal Church v. Lucien,*
   756 F.3d 788 (5th Cir. 2014) ................................................................................................3

*Alkanani v. Aegis Def. Servs., LLC,*
   976 F. Supp. 2d 13 (D.D.C. 2014) .......................................................................................14

*Atkinson v. Grindstone Capital, LLC,*
   12 F. Supp. 3d 156 (D.D.C. 2014) .........................................................................................8

*Beall v. Edwards Lifesciences LLC,*
   310 F. Supp. 3d 97 (D.D.C. 2018) .......................................................................................15

*Beck v. Dobrowski,*
   559 F.3d 680 (7th Cir. 2009) .................................................................................................3

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) .............................................................................................................25

\* *Calder v. Jones,*
   465 U.S. 783 (1984) ......................................................................................................10, 23

\* *Colorado River Water Conservation District v. United States,*
   424 U.S. 800 (1976) ..................................................................................................... passim

\* *Coomer v. Donald J. Trump for President, Inc., et al.,*
   Case No. 2020CV034319 (Denver County District Court, Colorado) ......................... passim

*Coomer v. Make Your Life Epic LLC,*
   Case No. 2021-cv-03440 (D. Colo.) ..................................................................................1, 22

*Coomer v. Salem Media of Colo., Inc.,*
   Case No. 2021CV033632 (Denver County District Court, Colorado) ....................................1

*Cooper v. US Dominion, Inc.,*
   Case No. 2021-cv-02672 (D. Colo.) ............................................................................2, 19, 22

*Crane v. New York Zoological Soc.,*
   894 F.2d 454 (D.C. Cir. 1990) .............................................................................................24

*D&D Fuller CATV Constr. Inc. v. Pace,*
   780 P.2d 520 (Colo. 1989) ....................................................................................................10

## TABLE OF AUTHORITIES
(continued)

Page

*D'Onofrio v. SFX Sports Grp., Inc.*,
   534 F. Supp. 2d 86 (D.D.C. 2008) ...........................................................................23

*D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*,
   705 F.3d 1223 (10th Cir. 2013) .................................................................................3

*D.L. v. Unified Sch. Dist. No. 497*,
   392 F.3d 1223 (10th Cir. 2004) .................................................................................4

*Dano Resource Recovery, Inc. v. District of Columbia*,
   1992 WL 165977 (D.D.C. June 30, 1992) .................................................................9

*Dickerson v. Novartis Corp.*,
   315 F.R.D. 18 (S.D.N.Y. 2016) .........................................................................12, 20

*In re: Dish Network LLC*,
   2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ..........................................................15

*Diversified Management, Inc. v. Denver Post, Inc.*,
   653 P.2d 1103 (Colo. 1982) ......................................................................................8

*Edge Investment, LLC v. District of Columbia*,
   927 F.3d 549 (D.C. Cir. 2019) ..............................................................................6, 7

*Eisenberg v. West Virginia Office of Disciplinary Counsel*,
   856 Fed. Appx. 314 (D.D.C. 2021) ...........................................................................4

*Foster-el v. Beretta U.S.A. Corp.*,
   163 F. Supp. 2d 67 (D.D.C. 2001) ............................................................................9

*Fox v. Maulding*,
   16 F.3d 1079 (10th Cir. 1994) ..................................................................................6

*Gardner v. Major Automotive Companies*,
   2012 WL 1230135 (E.D.N.Y. April 12, 2012) .......................................................19

*Hicks v. Miranda*,
   422 U.S. 332 (1975) ..................................................................................................4

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ................................................................................................11

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ................................................................................................20

# TABLE OF AUTHORITIES
(continued)

Page

\* *Jefferson-11th Street, LLC v. District of Columbia*,
2020 WL 3035038 (D.D.C. June 5, 2020) ............................................................3, 9

*Lapointe v. Van Note*,
2004 WL 3609346 (D.D.C. Nov. 9, 2004) ...............................................................24

*Marsh v. Hollander*,
339 F. Supp. 2d 1 (D.D.C. 2004) ..............................................................................24

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) .........................................................................................................3

*Mouzon v. Radiancy, Inc.*,
85 F. Supp. 3d 361 (D.D.C. 2015) ............................................................................24

\* *Nunes v. Cable News Network, Inc.*,
520 F. Supp. 3d 549 (S.D.N.Y. 2021) ..............................................12, 13, 20, 21

\* *Nunes v. WP Company LLC*,
2021 WL 3550896 (D.D.C. Aug. 11, 2021) ..........................................12, 13, 20

*Parkridge 6, LLC v. U.S. Dept. of Transportation*,
772 F. Supp. 2d 5 (D.D.C. 2009) ..............................................................................21

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ...............................................................................................8, 9

*R.R. Street & Co. Inc. v. Transport Ins. Co.*,
656 F.3d 966 (9th Cir. 2011) ......................................................................................9

*Richards v. Duke Univ.*,
480 F. Supp. 2d 222 (D.D.C. 2007) ..........................................................................24

*Rodriguez v. Robbins*,
2010 WL 11622792 (C.D. Cal. Nov. 17, 2010) ........................................................19

*Ross v. Davis*,
74 F. Supp. 3d 231 (D.D.C. 2014) ..............................................................................1

*S.E.C. v. Telco Mktg. Svcs, Inc.*,
1980 WL 1397 (D.D.C. March 26, 1980) ..................................................................15

*Sackheim v. Lynch*,
2012 WL 13148965 (W.D. Tex. March 13, 2012) .......................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Scolaro v. D.C. Bd. of Elections & Ethics*,
    104 F. Supp. 2d 18 (D.D.C. 2000) ..........................................................................1

*Sheehan v. Koonz*,
    102 F. Supp. 2d 1 (D.D.C. 1999) ...........................................................................9

*Smulley v. Mut. of Omaha Bank*,
    634 F. App'x 335 (2d Cir. 2016) ..........................................................................3

*Stewart v. Azar*,
    308 F. Supp. 3d 239 (D.D.C. 2018) .....................................................................20

*Travelers Indem. Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990) ...............................................................................6

*Treppel v. Reason*,
    793 F. Supp. 2d 429 (D.D.C. 2011) .....................................................................21

*Troster v. Garland*,
    2021 WL 5865447 (D.D.C. Dec. 10. 2021) .........................................................21

*Urquhart-Bradley v. Mobley*,
    964 F.3d 36 (D.C. Cir. 2020) ...............................................................................23

*US Dominion Inc. v. Fox Corporation*,
    Case No. N21C-11-082 (New Castle County, Delaware) ......................................19

*US Dominion Inc. v. Fox News Network LLC*,
    Case No. N21C-03-257 (New Castle County, Delaware) ......................................19

*US Dominion Inc. v. Newsmax Media, Inc.*,
    Case No. N21C-08-063 (New Castle County, Delaware) ......................................19

\* *US Dominion, Inc. v. Powell*,
    2021 WL 3550974 (D.D.C. Aug. 11, 2021) .............................................13, 20, 22

*Van Horn v. Nat'l R.R. Passenger Corp.*,
    2005 WL 8168296 (D.D.C. Dec. 13, 2005)..........................................................15

*Weisler v. Cmty. Health Sys., Inc.*,
    2012 WL 4498919 (D.N.M. Sept. 27, 2012) ........................................................14

*Wilderness Society v. Babbitt*,
    104 F. Supp. 2d 10 (D.D.C. 2000) ..................................................................11, 20

**TABLE OF AUTHORITIES**
(continued)

**Page**

* *Wolken v. Lufkin*,
1995 WL 704773 (N.D. Ill. Nov. 28, 1995) .............................................................4

**Statutes**

* 28 U.S.C. § 1404(a) .............................................................................................3, 6, 25

**Other Authorities**

*Appropriateness of Federal Court Abstention Under Colorado River Water
Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed.
2d 483, Given the Existence of Concurrent Parallel Proceeding*, 193 A.L.R.
Fed. 291 § 4.............................................................................................................5

Bente Birkland, "Voting Data From A Colorado County Was Leaked Online.
Now The Clerk Is In Hiding," NPR, https://www.npr.org/2021/09/03/
1033374723/voting-data-from-a-colorado-county-was-leaked-online-now-the-
clerk-is-in-hiding (last visited Jan. 13, 2022) .......................................................13

Colo. R. Civ. P. 19(a)(2)(B).............................................................................................5

Conrad Swanson DP, "Coloradan Jenna Ellis is fighting for President Trump on
vote-counting," *Daily Camera*, https://www.dailycamera.com/2020/
11/06/colorado-jenna-ellis-trump-election-2020/ (last visited Jan. 13, 2022)........18

Fed. R. Civ. P. 12(c) ......................................................................................................19

https://www.dominionvoting.com/strs-colorado/ (last visited Jan. 13, 2022)...............13

https://www.linkedin.com/in/alexander-bruesewitz-671a61142/ (last visited Jan.
13, 2022) ..............................................................................................................18

https://www.linkedin.com/in/christopherckrebs/ (last visited Jan. 13, 2022)................18

https://www.oann.com/infocus/ (last visited Jan. 13, 2022)...........................................18

Matthew Brown, "Pro-Trump protesters picket Attorney General Barr's house in
Virginia, demand he 'lock up' Joe Biden," *USA Today*,
https://www.usatoday.com/story/news/politics/elections/2020/11/01/protesters
-william-barrs-virginia-home-demand-joe-biden-arrest/6112424002/ (last
visited Jan. 13, 2022) ............................................................................................18

Matt Stieb, "Who Is Ron Watkins, the QAnon Celebrity Running for Congress?,"
*New York Mag Intelligencer*, https://nymag.com/intelligencer/article/ron-
watkins-qanon-congress.html (last visited Jan. 13, 2022) .......................................18

## TABLE OF AUTHORITIES
(continued)

**Page**

* Restatement Second, Conflict of Laws § 150 ..........................................................................11

* Rodney A. Smolla, Law of Defamation § 12:35 (2d ed. 2021).........................11, 12, 13, 20, 21

## I.     Introduction

The theme of Dominion's Opposition to Defendants' Motion to Dismiss, Stay, or Transfer (ECF No. 45, the "Response") is that Dominion's former director of product strategy and security, Dr. Eric Coomer, is so distinct from Dominion that Dr. Coomer's lawsuit against defendants Herring Networks, Inc., d/b/a One America News Network ("OAN"), and Chanel Rion in Colorado[1] should have no impact on where and how this case proceeds.  But as explained in Defendants' Motion (ECF No. 41), the two cases overlap dramatically, with each seeking to hold OAN liable for the same statements about the role of Dominion and Dr. Coomer in the 2020 presidential election.  This is reinforced by the Proposed Findings of Fact and Conclusions of Law recently filed in the *Coomer* Action by Dr. Coomer, in which he asserts that he is "the face of the Dominion conspiracy theory" and that in OAN's coverage, "no discernable distinction between references to Dr. Coomer and Dominion existed."  *See* **Exhibit A**, at ¶¶ 71, 185.[2]  Thus, according to Dr. Coomer, he effectively *is* Dominion and every statement OAN has made about Dominion is also a statement about Dr. Coomer (and *vice versa*).  It is therefore essential that the claims related to OAN's statements be litigated in a single jurisdiction, namely Colorado.

The *Coomer* Action is not the only case pending in Colorado related to the involvement of Dr. Coomer and Dominion in the 2020 presidential election.  Dr. Coomer has filed two additional cases challenging statements about Dominion and him.  *See Coomer v. Salem Media of Colo., Inc.*, Case No. 2021CV033632 (Denver County District Court, Colorado), and *Coomer v. Make Your Life Epic LLC*, Case No. 2021-cv-03440 (D. Colo.).  And Dominion is a defendant in an election-

---

[1] *Coomer v. Donald J. Trump for President, Inc., et al.*, Case No. 2020CV034319 (Denver County District Court, Colorado) (the "*Coomer* Action").

[2] As with the attachments to the Motion, the Court may take judicial notice of matters of public record.  *See Ross v. Davis,* 74 F. Supp. 3d 231, 237 (D.D.C. 2014); *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 26 n. 6 (D.D.C. 2000).

related case in the U.S. District of Colorado.  *See Cooper v. US Dominion, Inc.*, Case No. 2021-cv-02672 (D. Colo.).  Given the pending litigation and the facts of this case, the home jurisdiction of Dominion and Dr. Coomer (Colorado for both) is the epicenter for these cases.

Both the *Coomer* Action and this case place at issue publications by Defendants about Dominion's role in the election; as a result, allowing the cases to proceed separately would present *at least* the following risks for conflicting findings of fact and conclusions of law:

- The courts could reach different conclusions about the veracity of certain alleged statements, which would impact the defenses of truth and substantial truth in both cases. For example, how are Defendants to proceed if this Court finds that Dr. Coomer participated in an "antifa conference call," but the court in the *Coomer* Action finds that he did not?

- The courts could reach different conclusions about the adequacy of the technological security measures employed by Dominion, which would impact the defenses of truth and substantial truth in both cases.

- The courts could reach different conclusions about the reliability of Defendants' sources, which would impact the defenses of truth and substantial truth in both cases.  For example, how are Defendants to proceed if this Court finds that key witness Joseph Oltmann was credible at the relevant times, but the court in the *Coomer* Action finds that he was not?

- The courts could reach different conclusions about whether Dr. Coomer made statements about his ability and willingness to affect the election, which would impact the defenses of truth or substantial truth in both cases.

- The courts could reach different conclusions about whether certain alleged statements were defamatory (rather than statements of opinion, hyperbole, etc.).

- The courts could reach different conclusions about whether Defendants acted with knowing falsity and/or reckless disregard for the truth (i.e. actual malice).  For example, how are Defendants to proceed if this Court finds that the statements about Dr. Coomer were made with actual malice, but the court in the *Coomer* Action does not?

- The courts could reach different conclusions about applicability of the fair report privilege or any other applicable privileges.

In short, allowing these cases to proceed separately could lead to directly contrary findings of fact or conclusions of law in connection with *identical* issues.

Given the clear nexus of this case in Colorado and pendency of the *Coomer* Action, this

Court should invoke *Colorado River* abstention and dismiss or stay this case.  Alternatively, the Court should transfer the case to the U.S. District of Colorado under 28 U.S.C. § 1404(a).  And even if the Court maintains jurisdiction over this case, it should dismiss the claims against OAN, Charles Herring, and Robert Herring Sr. for failure to adequately plead personal jurisdiction.

## II.    The Court should abstain.

The Response largely ignores Defendants' alternative request for a ***stay*** based on *Colorado River* abstention, arguing primarily that dismissal isn't appropriate.  Dismissal is warranted; regardless, *Colorado River* abstention doctrine applies and the case should, at minimum, be stayed.

### A.    *Colorado River* abstention applies.

#### 1.    This case is substantially similar to the *Coomer* Action.

Dominion claims *Colorado River* abstention shouldn't apply because the actions are not parallel and the *Coomer* Action would not leave this Court with "nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983).  But Dominion overstates case parallelism for *Colorado River* abstention and glosses over the impact of the *Coomer* Action on this case.

The two cases are sufficiently "parallel" for *Colorado River* abstention.  The parties in the two cases need not be the "same" — they need be only "substantially similar," which they are.  Dominion admits that the D.C. Circuit hasn't ruled on what constitutes a parallel case (Response, p. 8), and multiple circuit courts have held that substantial similarity is sufficient.  *See, e.g.,* S*mulley v. Mut. of Omaha Bank*, 634 F. App'x 335, 337 (2d Cir. 2016); *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014); *Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009); *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013).  In fact, this Court granted *Younger* abstention when the parties weren't identical.  *See Jefferson-11th Street, LLC v. District of Columbia*, 2020 WL 3035038, *1-*2 (D.D.C. June 5,

2020) (Nichols, J.).[3]  OAN and Rion are defendants in both cases, and Dr. Coomer has claimed that there is "no discernable distinction between references to Dr. Coomer and Dominion."  (Exh. A, ¶ 185).  Thus, the parties are "substantially similar," and the cases involve the same issues — namely whether certain statements made about Dominion and Dr. Coomer are defamatory.

Abstention is particularly appropriate because courts have found that cases involving an employee and his employer are "parallel" for abstention purposes.  *See Wolken v. Lufkin*, 1995 WL 704773, *1 (N.D. Ill. Nov. 28, 1995).  *Wolken* is not alone:  In *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230-31 (10th Cir. 2004), the court found that the relationship between an employee and former employer was sufficient for purposes of *Younger* abstention.  The court held that "Plaintiffs' allegation against [the employee] is that he was the officer of the [former employer] responsible for many of its allegedly unlawful actions. . . .  Plaintiffs' claim against [the employee] is derivative of, if not the same as, their claim against the [former employer]."  *Id.*  Similarly, in *Hicks v. Miranda*, 422 U.S. 332, 334-35 (1975), the Supreme Court held that the interests of the employee and employer were so "intertwined" that the federal action should not interfere with the state court.  Here, the interests of Dr. Coomer and Dominion are intertwined.  Given that Dr. Coomer has described himself as the "face of the Dominion conspiracy theory" (Exh. A, ¶ 71), Dominion cannot reasonably argue he is a "different party" for abstention purposes.

The Response argues this point by attacking *Wolken*, but Dominion's argument fails.  Dominion attempts to distinguish *Wolken* from this case by noting the employee in that case was the president and majority shareholder of the company.  1995 WL 704773 at *1.  But this fails to acknowledge the significant role Dr. Coomer played at Dominion — he was its director of product

---

[3]  Like *Colorado River* abstention, *Younger* abstention requires "an ongoing, parallel state proceeding."  *Eisenberg v. West Virginia Office of Disciplinary Counsel*, 856 Fed. Appx. 314, 314 (D.D.C. 2021).

development and security — or the fact that he was the "face of the Dominion conspiracy theory" (Exh. A, ¶ 71), both in the challenged news coverage and, importantly, in Dominion's efforts to address security concerns.  *See* Motion, pp. 3-4.  Dr. Coomer was not a mere "employee" of Dominion — in fact, Dr. Coomer asserts he *is* Dominion for purposes of defamation.

For that very reason, Dominion underestimates the degree to which the *Coomer* Action will dispose of its claims.  For example, if the *Coomer* court holds that statements made by Defendants about Dominion are true or that Defendants did not act with actual malice, those holdings will be dispositive of Dominion's claims.  And if the pending anti-SLAPP motion is denied, OAN intends to file a motion to join Dominion under Colo. R. Civ. P. 19(a)(2)(B).

Dominion asserts that the *Coomer* Action implicates only "one of the 25 defamatory statements alleged here" (*see, e.g.,* Response, p. 10), but the claims related to statements about Dr. Coomer by Oltmann, including in "Dominion-izing the Vote," are directly referenced four times among the "25 statements" (Compl., ¶¶ 305(d), (f), (i), (j)).  Moreover, as referenced in the Motion at p. 7 and reiterated in Dr. Coomer's Proposed Statement of Facts and Conclusions of Law, Dr. Coomer asserts that *any* criticism of Dominion is also criticism of him, and *vice versa*.

## 2.    This is an exceptional case that warrants abstention.

Dominion argues that abstention is appropriate only in "truly unusual cases" (Response, p. 11), but Dominion overstates how unusual a case must be to warrant abstention.  There have been hundreds of cases granting stays or dismissals based on *Colorado River* abstention since the Supreme Court's decision in 1976.  *See Appropriateness of Federal Court Abstention Under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483, Given the Existence of Concurrent Parallel Proceeding*, 193 A.L.R. Fed. 291 § 4 (identifying hundreds of cases granting *Colorado River* abstention).  While the Supreme Court has held that *Colorado River* abstention applies to "exceptional" cases, *Colorado River Water*

*Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976), this case meets that standard.

Abstention "does not rest on a mechanical checklist," *Edge Investment, LLC v. District of Columbia*, 927 F.3d 549, 553 (D.C. Cir. 2019), but the *Colorado River* factors weigh so heavily in favor of abstention here that this rises to the level of an exceptional case.  This case is clearly distinguishable from *Edge*, where only three of the factors favored abstention.  *Id.* at 554. Moreover, unlike *Edge*, these are high-profile cases of significant public concern that involve important state law issues, including Colorado's recently passed anti-SLAPP statute.  Given the factual nexus in Colorado and the litigation already pending there, the only reason for Dominion to file this case in this District is forum shopping.  This Court can, and should, take that into account in evaluating abstention.  *See, e.g., Fox v. Maulding*, 16 F.3d 1079, 1081-82 (10th Cir. 1994) (impermissible forum shopping by the party opposing abstention listed as additional factor to consider in deciding whether to abstain under *Colorado River*); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990) ("In the *Colorado River* context, this Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage.").

Dominion's efforts to argue the *Colorado River* elements are unavailing:

*Inconvenience of federal forum*: For the same reasons that proceeding in this District is inconvenient under Section 1404(a), it is inconvenient for purposes of *Colorado River* abstention. Defendants discuss the convenience factors in depth in Section III.B, *infra*, and incorporate those arguments by reference here.

*Likelihood of piecemeal litigation*: As discussed *supra* p. 1, Dr. Coomer has argued in the *Coomer* Action that he and Dominion are one and the same for purposes of defamation.  Both cases thus implicate all statements by Defendants about Dominion related to claims of election

fraud.  These are not, as Dominion argues, "two lawsuits proceeding concurrently in two different courts" (Response, p. 14) — the two cases are essentially the same, involving the same witnesses, evidence, and legal issues and substantially the same parties.  As described *supra* p. 5, the rulings in the *Coomer* Action will bind Dominion, and as described *supra* p. 2, there are numerous examples of identical factual and legal questions that could yield inconsistent rulings.  Allowing that to occur would result in "piecemeal litigation" that is "abnormally excessive or deleterious," *Edge*, 927 F.3d at 556, namely requiring Defendants to litigate the same case twice, potentially with different outcomes.  Finally, Dominion argues that this case should proceed because Dominion has other related cases pending before this Court and "staying one while the others proceed does not conserve judicial economy." (Response, p. 15).  But Defendants are not parties to those actions, and Dominion created this situation by suing separately and waiting several months to sue Defendants.  Dominion's strategic delay is not a basis to avoid abstention.

*Order of jurisdiction*:  There is no dispute that the *Coomer* Action was filed first, well before this case.  The *Coomer* Action has not been "tied up in anti-SLAPP briefing" (Response, p. 15) but rather has been in the throes of largely one-sided written and oral discovery allowed to Dr. Coomer (i.e. "Dr. Dominion").  The *Coomer* Action is much further along, both on the substance and (over OAN's objections) on discovery.  A dismissal or stay in this case would not indefinitely delay adjudication but rather would allow all parties in this case to take advantage of the discovery and substantive rulings in the further-advanced *Coomer* Action.

*Application of state vs. federal law*:  As set forth at length in the Motion (pp. 23-25) and discussed further *infra* p. 21, Colorado law applies.  Application of Colorado law is critical because this case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  *Colorado River*, 424 U.S.

at 814.  Indeed, the Colorado Supreme Court has wrestled with the public policy considerations related to actual malice in defamation cases and has applied a standard that is materially distinct from federal and Washington, D.C. law.  *See Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1105-08 (Colo. 1982) (holding that the actual malice standard for fault in a defamation case under Colorado law applies as long as the speech at issue involved a matter of public concern, regardless of whether the plaintiff is a public figure).  This case will put that standard to the test, and it also will implicate Colorado's anti-SLAPP statute, which was only recently enacted and has yet to be interpreted by the Colorado Supreme Court.  Thus, it would be "exceptional" for this Court to address these novel issues of Colorado law, particularly if OAN wins anti-SLAPP relief in Colorado.  Although the D.C. Circuit has found that the D.C. anti-SLAPP statute doesn't apply in federal court (which has yet to be addressed by the U.S. Supreme Court), there is no guidance on how a D.C. federal court is supposed to treat a Colorado state court anti-SLAPP victory on overlapping allegations.  By abstaining, this Court can avoid that quagmire.

*Protection of parties' interests*:  Dominion doesn't argue that a Colorado state court would not be able to adequately protect the parties' interests.  (Response, pp. 16-17).  Courts have routinely held that this factor weighs in favor of abstention when there is no "reason why the state court would be inadequate or why litigation in that forum could be prejudicial."  *Atkinson v. Grindstone Capital, LLC*, 12 F. Supp. 3d 156, 166 (D.D.C. 2014).  In fact, given the numerous Colorado witnesses beyond the subpoena power of this Court, the Colorado court would provide superior protection of the parties' interests.

## B.     Dismissal is appropriate.

The Response argues that the Supreme Court's ruling in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) "forecloses Defendants' request for dismissal" (Response, p. 6), but it does

not.  It is by no means settled law that *Quackenbush* applies to *Colorado River* abstention in a case for damages, and it is telling that Dominion cites no circuit-level supporting authority. *Quackenbush* involved *Burford* abstention, and courts are split on whether *Quackenbush* applies in *Colorado River* abstention cases.  *See, e.g., Sackheim v. Lynch*, 2012 WL 13148965, *9 n. 5 (W.D. Tex. March 13, 2012) (evaluating *Colorado River* abstention and holding that "[t]he rule outlined in *Quackenbush* applies to cases involving *Burford* abstention, and because the case at bar does not involve *Burford* abstention, the *Quackenbush* rule is inapplicable").[4]

Moreover, courts have continued to dismiss damages cases based on *Colorado River* abstention after *Quackenbush*.  *See, e.g., R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 983-84 (9th Cir. 2011); *Sheehan v. Koonz*, 102 F. Supp. 2d 1, 3 (D.D.C. 1999).  Accordingly, it is well within the Court's discretion to dismiss this case based on *Colorado River* abstention.

### C.      Even if the Court doesn't dismiss, a stay is appropriate.

Although Dominion argues against dismissal, it doesn't dispute that a stay is appropriate if the Court finds *Colorado River* abstention applicable.  The Court is, of course, aware that a stay of damages claims would be appropriate in an abstention scenario; that is exactly what it did in the *Jefferson* case.  *See* 2020 WL 3035038 at *5.  Courts in this District routinely enter abstention stays.  *See, e.g., Foster-el v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001); *Dano Resource Recovery, Inc. v. District of Columbia*, 1992 WL 165977 (D.D.C. June 30, 1992).  At a minimum, the Court should stay this case pending completion of the anti-SLAPP proceedings in Colorado.  If the trial court, intermediate court of appeals, or Colorado Supreme Court grant OAN

---

[4] Indeed, Justice Kennedy wrote in his *Quackenbush* concurrence that "[w]e ought not rule out, though, the possibility that a federal court might **dismiss a suit for damages** in a case where a serious affront to the interests of federalism could be averted in no other way."  *Quackenbush*, 517 U.S. at 733-34 (emphasis added).

anti-SLAPP relief, that will have a profound impact on Dominion's overlapping claims.

**III.    If the Court doesn't abstain, it should transfer.**

    **A.    The action could have been brought in Colorado.**

Dominion's argument that transfer is inappropriate because Defendants have not shown that this action "could have been brought in Colorado" (Response, p. 17) fails because the *Coomer* Action against OAN and Rion already ***is*** pending in Colorado.  The Court can be confident that the Colorado courts would find personal jurisdiction over OAN and Rion because Rion challenged personal jurisdiction and her motion to dismiss was denied.[5]  *See* June 21, 2021 Order denying dismissal, attached as **Exhibit B**.

Under Colorado law, the court may exercise jurisdiction "where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing harmful effect within the forum state."  *D&D Fuller CATV Constr. Inc. v. Pace*, 780 P.2d 520, 525 (Colo. 1989) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  In denying dismissal in the *Coomer* Action, the court determined that under the "*Calder* effects test," Rion published the allegedly defamatory statements in Colorado because the statements were directed to Colorado and allegedly harmed a Colorado resident (Dr. Coomer).  *See* Exh. B.  The court held that while Rion's communications were intended for a national audience, the communications "had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado.  The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct." *See* Exh. B, p. 21.  The same analysis would apply to the other defendants.  Although Defendants deny that the Herrings are liable for the statements in this case, to the extent they have any contacts related to the statements, those contacts would be with Colorado, where Dominion is based.

---

[5] OAN never challenged personal jurisdiction in Colorado.

Dominion claims, without any authority, that Defendants have "waived" any argument for the existence of Colorado personal jurisdiction other than consent. But the fact that OAN and Rion are subject to personal jurisdiction in the *Coomer* Action is open and obvious. Thus this case is entirely different from *Hoffman v. Blaski*, 363 U.S. 335, 336 (1960), where the transferee venue was a jurisdiction where "the plaintiff did not have a right to bring" the case. Dominion plainly could have brought this case in Colorado, where Dominion and Dr. Coomer are based.

### B. The private-interest factors favor transfer.

*Plaintiffs' Choice of Forum*: Dominion doesn't dispute that its choice of forum is entitled to less deference where there is an inadequate factual nexus between the chosen forum and the events in dispute. *See Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000). Rather, Dominion argues there is a "strong connection between its claims and this District." (Response, p. 20). But that is incorrect as a matter of fact and law. Dominion emphasizes that some of OAN's reporters reside in this District and that certain segments were allegedly written and produced in this District. (*Id.*). But that is irrelevant to identifying the "nexus of events" for a defamation claim, and Dominion cites no case law to the contrary. That is perhaps because Dominion counsel Rodney Smolla[6] has written that "[i]n a defamation action . . . the *Restatement Second* specifically provides that **the state with the most significant relationship is usually the plaintiff's** domicile (if a natural person) or **principal place of business (if a corporation)**." Rodney A. Smolla, Law of Defamation § 12:35 (2d ed. 2021) (citing Restatement Second, Conflict of Laws § 150) (emphasis added). And where, as here, the publication occurs nationally, "the place of greatest harm . . . is the district **where the plaintiff was domiciled**, absent strong

---

[6] Oddly, Smolla's name appears in the signature block of the Complaint and he has appeared *pro hac vice* in the "related cases" before this Court, but he has not moved for *pro hac vice* admission in this case and his name does not appear in the signature block of the Response.

countervailing circumstances." *Nunes v. Cable News Network, Inc*., 520 F. Supp. 3d 549, 557 (S.D.N.Y. 2021) (emphasis added); *see also Nunes v. WP Company LLC*, 2021 WL 3550896, *7 (D.D.C. Aug. 11, 2021) (same); *Dickerson v. Novartis Corp*., 315 F.R.D. 18, 31 (S.D.N.Y. 2016) (same); Smolla at § 12:35 (same).

Dominion doesn't dispute that it was and is domiciled in Colorado, and Dominion hasn't adequately explained why it was harmed in this District, rather than in its home state. Dominion references its allegation that "OAN directly targeted then-President Donald Trump" (Response, p. 20), but President Trump's location at the time of publication has no relevance to the harm that Dominion is claiming, which is broad damage to its reputation on a nationwide scale.[7]

Given the legal standard for determining the factual nexus of a defamation claim and the numerous links between this litigation and Dominion's home state (Motion, pp. 3-10), it is clear that Colorado has vastly deeper connections with this case and Dominion's choice of forum is entitled to minimal (if any) deference. Dominion filed in this jurisdiction to avoid an anti-SLAPP motion and to potentially benefit from the dismissal denial in the "related cases." (Response, p. 21). Dominion is engaging in forum shopping, and its choice of forum should thus be given limited to no deference (particularly in light of Dominion's strategic delay in suing Defendants here after the Court had ruled on dismissal in the "related cases").

*Defendants' Choice of Forum*: Dominion's argument on this factor rehashes its argument as to the previous factor, incorrectly asserting that Defendants' choice of forum is entitled to no deference because there is no factual nexus in Colorado. (Response, p. 22). As set forth above,

---

[7] If this case were only about statements made "by OAN to President Trump," Dominion clearly would have no case because it would be impossible for OAN to defame Dominion to President Trump given his preexisting views of the voting company. Dominion is arguing that Defendants' statements harmed its reputation with people who previously thought highly of Dominion, and that does not include President Trump.

that is both factually and legally incorrect.

*Location Where Claims Arose*: Dominion has again failed to correctly identify where its claims arose.  The allegations that some OAN employees worked in this District[8] or that President Trump viewed statements in this District are irrelevant — what matters is Dominion's "most significant relationship" with Colorado.  *See Nunes*, 520 F. Supp. 3d at 557; *WP Company LLC*, 2021 WL 3550896 at *7; Smolla at § 12:35.

Dominion claims that its reputation has been damaged by Defendants' statements, meaning that Dominion has been harmed (if at all) in jurisdictions where it operates and/or lost existing or prospective business opportunities.  Dominion hasn't alleged that it lost business opportunities in this District.   And Defendants have been unable to identify information indicating that Washington, D.C. currently uses, has used, or has considered using Dominion technology.  Thus, Dominion cannot plausibly argue that its claims arose in this District.  In Colorado, on the other hand, Dominion "proudly serves 62 of 64 Colorado counties,"[9] meaning the statements made by Defendants would have the most impact (if any) in Colorado.  Indeed, data from Dominion machines in Colorado is at issue in a current FBI probe in Mesa County, Colorado.[10]  Additionally, the statements forming the basis for this lawsuit include quotes from Colorado resident Oltmann and statements about Colorado resident Dr. Coomer.  Thus, this case is clearly distinguishable from *US Dominion, Inc. v. Powell*, 2021 WL 3550974, *17 (D.D.C. Aug. 11, 2021) ("*Dominion I*"), where the Court held that the defendant did "not provide the Court with any conduct *in Texas*

---

[8] Dominion is incorrect in stating that OAN's Dominion-related content "bypass[ed] OAN's editorial team in California." (Response, p. 23).

[9] *See* https://www.dominionvoting.com/strs-colorado/ (last visited Jan. 13, 2022).

[10] *See* Bente Birkland. "Voting Data From A Colorado County Was Leaked Online. Now The Clerk Is In Hiding," NPR, https://www.npr.org/2021/09/03/1033374723/voting-data-from-a-colorado-county-was-leaked-online-now-the-clerk-is-in-hiding (last visited Jan. 13, 2022).

that gave rise to Dominion's claims." (Emphasis in original).

 _Convenience of the Parties_: This District is not the more convenient forum for the parties. While the inconvenience to Dominion of litigating in this forum is not an issue (Response, p. 24), Dominion hasn't argued that litigating in its home district would be inconvenient. Accordingly, the convenience for Defendants is dispositive, and Colorado is the most convenient forum for Defendants because OAN and Rion are already litigating the _Coomer_ Action there.

 The other arguments raised by Dominion on convenience are without merit. First, the fact that OAN has previously consented to litigate in this District has no bearing on whether it must do so here. _See, e.g., Alkanani v. Aegis Def. Servs., LLC,_ 976 F. Supp. 2d 13, 37 n.10 (D.D.C. 2014) ("[I]t is well established that consent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum."); _Weisler v. Cmty. Health Sys., Inc._, 2012 WL 4498919, *7 (D.N.M. Sept. 27, 2012) (citations omitted) ("[A] party's consent to jurisdiction in one case extends to that case alone."). Second, Dominion is incorrect to assume that Defendants' case against _Smartmatic_ will remain in this District (Response, p. 24) — OAN will seek dismissal, a stay, and/or transfer of that case as well. Third, Dominion relies on cursory contacts between Charles Herring and Washington, D.C. to allege that it would be convenient for Herring (a California resident) to litigate in this District. As part of the effort to establish contacts between Charles Herring and this District, Dominion attaches as Exhibit 3 to the Response a Declaration that was signed in **California**, prepared by a **California** law firm, and submitted in a **California** case. (Response, Exh. 3). The only reference to this District is a statement that he had a meeting **more than seven years ago** at a hotel in Washington, D.C. (_Id._ at ¶ 9). That obviously doesn't suggest that litigating here would be convenient for Defendants — rather, it confirms that Charles Herring is located in California.

_Convenience of the Witnesses_: The convenience of the third-party witnesses — the most important factor in the transfer analysis, _Beall v. Edwards Lifesciences LLC_, 310 F. Supp. 3d 97, 105 (D.D.C. 2018) — heavily favors transfer to Colorado.  Although Dominion attempts to undermine the importance of the Colorado-based, non-party witnesses identified by Defendants in the Motion, Dominion cannot dispute that there are numerous material third-party witnesses in Colorado (which makes sense because Dominion is based in Colorado and Dr. Coomer is a Colorado resident).  Instead, Dominion claims Defendants provided insufficient detail about some witnesses, including "whether that witness is willing to travel to a foreign jurisdiction." (Response, p. 26).  Although not necessary for transfer, additional information about each witness is set forth below, and the "willingness to travel" test put forth by Dominion is not required.  _See, e.g., Van Horn v. Nat'l R.R. Passenger Corp._, 2005 WL 8168296, *5 (D.D.C. Dec. 13, 2005) (disregarding plaintiff's argument that "there is nothing to suggest that any witness would be unwilling or unavailable to testify" and finding that access to witnesses in transferee forum supported granting motion to transfer); _S.E.C. v. Telco Mktg. Svcs, Inc._, 1980 WL 1397, *1 (D.D.C. March 26, 1980) (granting motion to transfer absent evidence of unwillingness of key witnesses to appear voluntarily, but where defendant argued merely that "any of its witnesses, who are unwilling to testify, could not be forced to do so in Washington D.C."); _In re: Dish Network LLC_, 2021 WL 4911981, *3 (Fed. Cir. Oct. 21, 2021) (vacating denial of motion to transfer and holding that "[w]e have stated that when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor").

Regardless, the actions of the two most critical Colorado witnesses — Oltmann and Dr. Coomer — show they will not travel voluntarily to Washington, D.C. to participate.  Even in his home state of Colorado, Oltmann didn't appear for a deposition and was sanctioned by the

court as a result (Oltmann was deposed thereafter).  *See Coomer* Action, August 29, 2021 Order. And Dr. Coomer has claimed in court filings that he has gone into hiding and answers his door armed with a shotgun because of concerns about his safety, *see Coomer* Action, Filing ID E9E5DD591D201, Exh. A, ¶ 20, so it is reasonable to presume he will have little interest in traveling to this District.  It also is telling that Dominion **presented no declaration from Dr. Coomer suggesting otherwise** (even though Dominion presumably still has access to its former director of product development and security).

In the Motion, Defendants identified the currently known non-party witnesses in Colorado and explained their significance.  (Motion, pp. 19-21).  This should be more than sufficient for the transfer analysis.  But for avoidance of any doubt, Defendants elaborate as follows:

- **Dr. Eric Coomer**: Dr. Coomer will provide testimony about, among other things, his work for Dominion, his role as the public face for Dominion's security efforts before and after the 2020 presidential election, his actions leading up to the 2020 presidential election, his extremely biased and disturbing Facebook posts, his participation in an "antifa conference call," the allegations in the *Coomer* Action, and the allegations in this case.

- **Joseph Oltmann**: Oltmann will provide testimony about what he heard on the "antifa conference call," how he came to be on the "antifa conference call," what he has subsequently learned about Dr. Coomer, how he came to be in possession of Dr. Coomer's Facebook posts, and what statements he made in interviews aired by OAN.

- **Tay Anderson**: Anderson is material to Defendants' defenses that they did not act with actual malice in reporting about the "antifa conference call."  Anderson will testify that he was the administrator of the conference call that took place in late September 2020 with Black Lives Matter activists and that they discussed Joey Camp (see below).

- **Joey Camp**: Camp's testimony will corroborate Anderson's testimony about the events that led to the "antifa conference call" that formed the basis for the allegedly defamatory statements involving Oltmann.

- **Jan Wondra**: Wondra will testify about why she decided to publish the December 22, 2020 *Ark Valley Voice* story in which Dr. Coomer claimed his Facebook posts were not authentic, and potentially about what Dr. Coomer told her about the basis for those claims. Wondra also has published several articles before and after December 22, 2020 about Dr. Coomer and the Dominion litigation, including a December 5, 2020 article in which she reported on a newly elected Colorado state representative's request to the Colorado attorney general to investigate Dominion and referenced alleged threats to another

Dominion employee resulting from allegations of election fraud.  All of these topics are relevant to Dominion's claims.

- ***Denver Post editor/reporter who coordinated the Dec. 2020 editorial by Dr. Coomer***: This individual, a Colorado resident, will testify about why the *Post* decided to publish Dr. Coomer's editorial in which he claimed his Facebook posts were not authentic, and potentially about what Dr. Coomer told him or her about the basis for those claims.  The *Post* representative also could potentially testify about Dominion Voting System's contracts with 62 of the 64 counties in Colorado and the potential impact of any allegedly defamatory statements on Dominion.

- ***Heidi Beedle***: Beedle will testify about whether she attended a call with Anderson in late September 2020, as asserted by Oltmann, and about the truth Oltmann's other statements.

- ***Erik Maulbetsch***: Maulbetsch is a reporter for the *Colorado Times Reporter* who writes about local Colorado political issues, including issues relating to Colorado's use of Dominion machines and issues that have arisen with the machines in Mesa County, Colorado.  He will testify about his participation or coverage of the call of Black Lives Matter activists that took place in September 2020 and his knowledge of the proliferation of Dominion machines in Colorado and the potential impact of any allegedly defamatory statements on Dominion's contracts with Colorado.

- ***Eight anonymous witnesses***: As set forth in the Motion, the eight not-yet-identified residents who attended the "antifa conference call" likely reside in Colorado and will be able to testify on topics such as the authenticity of Dr. Coomer's Facebook posts and the veracity of Oltmann's statements about what occurred on the "antifa conference call."

- ***Former Dominion employees***: These individuals will testify about the technology and security of Dominion voting machines, including whether the statements made by Defendants were correct.

For its part, Dominion identifies 11 other purported non-party witnesses and claims they have no connections to Colorado.  But the vast majority also have no connection to this District, and there is no reason to believe that Colorado would be any less convenient for them than Washington, D.C. — and in fact, one of the witnesses ***resides in Colorado***:

- ***Rudolph Giuliani***: Giuliani resides in New York, but he would benefit from proceeding in Colorado because he is litigating the *Coomer* Action in Colorado.  *See US Dominion, Inc. v. Giuliani*, Case No. 21-cv-00213 (D.D.C.) (ECF No. 1, ¶ 8).

- ***Sidney Powell***: Powell resides in Texas, but she would benefit from proceeding in Colorado because she is litigating the *Coomer* Action in Colorado.  *See US Dominion, Inc. v. Sidney Powell*, Case No. 21-cv-00040 (D.D.C.) (ECF No. 1, ¶ 15).

- ***Mike Lindell***: Lindell resides in Minnesota.  *See US Dominion, Inc. v. My Pillow, Inc.*,

-17-

Case No. 21-cv-00445 (D.D.C.) (ECF No. 1, ¶ 10).

- **Ron Watkins**: Until recently, Watkins lived outside of the United States.  He is now contemplating a run for public office in Arizona and likely lives there.[11]

- **Ed Solomon**: Solomon resides in Long Island, New York.  (Compl., ¶ 28).

- **Patrick Byrne**: Byrne is a resident of Utah.  *See US Dominion, Inc. v. Patrick Byrne*, Case No. 21-cv-02131 (D.D.C.) (ECF No. 1, ¶ 16).

- **Russell Ramsland**: Ramsland resides in Texas.  (Compl., n. 63).

- **Alex Bruesewitz**: Bruesewitz appears to reside in Washington, D.C.[12]

- **Stephanie Hamill**: Hamill is an OAN employee and therefore is a party witness.[13]

- **Christopher Krebs**: Krebs appears to reside in greater Washington, D.C. area, although it is unclear whether he lives in this District.[14]

- **William Barr**: Barr resides in Virginia.[15]

- **Jenna Ellis**: Ellis *is from Colorado.*[16]

Based on the location of all non-party witnesses identified to date, Colorado would be a convenient forum for at least 20 of them, whereas this District would be convenient for, at most, two of them. Accordingly, this critical factor weighs heavily in favor of transfer.

> _Ease of Access to Sources of Proof_: As reflected above, there are more witnesses relevant

---

[11] *See* Matt Stieb. "Who Is Ron Watkins, the QAnon Celebrity Running for Congress?," *New York Mag Intelligencer*, https://nymag.com/intelligencer/article/ron-watkins-qanon-congress.html (last visited Jan. 13, 2022).

[12] *See* https://www.linkedin.com/in/alexander-bruesewitz-671a61142/ (last visited Jan. 13, 2022).

[13] *See* https://www.oann.com/infocus/ (last visited Jan. 13, 2022).

[14] *See* https://www.linkedin.com/in/christopherckrebs/ (last visited Jan. 13, 2022).

[15] *See* Matthew Brown, "Pro-Trump protesters picket Attorney General Barr's house in Virginia, demand he 'lock up' Joe Biden," *USA Today*, https://www.usatoday.com/story/news/politics/elections/2020/11/01/protesters-william-barrs-virginia-home-demand-joe-biden-arrest/6112424002/ (last visited Jan. 13, 2022).

[16] *See* Conrad Swanson DP, "Coloradan Jenna Ellis is fighting for President Trump on vote-counting," *Daily Camera*, https://www.dailycamera.com/2020/11/06/colorado-jenna-ellis-trump-election-2020/ (last visited Jan. 13, 2022).

to this case in Colorado than anywhere else, particularly this District.  Moreover, the three cases

filed by Dr. Coomer in Colorado and the *Cooper* case pending against Dominion will all result in

discovery that is relevant to this case and efficiencies would be gained by having all of those cases

pending in the same jurisdiction.  On the other hand, the so-called "related cases" filed by

Dominion and pending in this District are not "related" in a way that will achieve discovery

efficiencies because they do not involve the same allegedly defamatory statements (***or the news***

***media***).[17]  Regardless, the progress of those cases will be slowed if Dominion tries to synchronize

discovery because if this Motion is denied, Defendants will move for judgment on the pleadings

under Federal Rule of Civil Procedure 12(c) and a related stay of discovery.  *See, e.g., Gardner v.*

*Major Automotive Companies*, 2012 WL 1230135, *6 (E.D.N.Y. April 12, 2012) (granting stay of

discovery pending ruling on motion for judgment on the pleadings); *Rodriguez v. Robbins*, 2010

WL 11622792, *1 (C.D. Cal. Nov. 17, 2010) (same).  The private-interest factors favor transfer.

### C.      The public-interest factors favor transfer.

<u>Local interest</u>: Colorado has a much stronger local interest in this dispute.  Both as a matter

of fact and law, the claims in this case arise in Colorado, not this District.  The state of Colorado

has an interest in adjudicating whether a Colorado company was defamed.  And the injuries to

both Dominion (if any) and Dr. Coomer (if any) occurred in Colorado.  The factual nexus for a

---

[17] Notably, Dominion is litigating defamation cases over 2020 presidential election coverage against other news media entities ***elsewhere***, not in D.C. *See US Dominion Inc. v. Fox News Network LLC*, Case No. N21C-03-257 (New Castle County, Delaware) (filed March 26, 2021); *US Dominion Inc. v. Newsmax Media, Inc.*, Case No. N21C-08-063 (New Castle County, Delaware) (filed Aug. 10, 2021); *US Dominion Inc. v. Fox Corporation*, Case No. N21C-11-082 (New Castle County, Delaware) (filed Nov. 8, 2021).  Dominion has sued Fox News, Newsmax, and Fox Corporation in their place of incorporation — Delaware.  If Dominion had treated OAN in the same fashion, Dominion would have filed in California, but Dominion presumably did not do so because of California's strong anti-SLAPP statute (which is almost identical to Colorado's anti-SLAPP statute).

defamation claim is where harm primarily occurred, which presumptively is the domicile of the defamed.  *See Nunes*, 520 F. Supp. 3d at 557; *WP Company LLC*, 2021 WL 3550896 at *7; *Dickerson*, 315 F.R.D. at *6.  Even Rodney Smolla, who is listed in the signature block of the Complaint in this action, agrees.  *See* Smolla at § 12:35.

The Court's analysis in *Dominion I* is distinguishable because Powell and Lindell made their statements in this District, at press conferences and rallies targeted to individuals in this District.  2021 WL 3550974, at *15.  Here, Defendants broadcast their statements nationally, with the actual broadcast occurring in California.  *See* Motion, Exh. M.  If a national broadcast opened the door to a "local interest" in every location where the broadcast could be viewed, that would be tantamount to adopting universal jurisdiction.  But that is not the law.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (rejecting universal jurisdiction).

The case law cited by Dominion is not to the contrary.  The question raised in the cases cited by Dominion is whether the controversy has "national significance," not whether the plaintiff was affected nationwide.  In *Stewart v. Azar*, 308 F. Supp. 3d 239, 249 (D.D.C. 2018), the court determined that the case regarding the propriety of Medicaid programs addressed questions of "national policy" that would carry "national consequences," meaning that the local interest factor weighed against transfer.  Similarly, *Babbitt* involved "national significance," "national resources," "national organizations," and "national issues."  104 F. Supp. 2d at 17-18.  This case is clearly distinguishable.  While the ultimate result of this case may impact **Dominion** nationwide, it does not implicate any national policy issues that would have national consequences for anyone other than Dominion or Dr. Coomer, both Colorado residents.  Accordingly, the local interest clearly weighs in favor of transfer to Colorado.

*Relative court congestion*: Dominion attempts to parse the relative court congestion

numbers in several different ways, but ultimately does not dispute that the median time to trial is faster in Colorado.  (Response, p. 33).  This alone is a sufficient basis for the Court to find that this factor weighs in favor of transfer.  *See, e.g., Treppel v. Reason*, 793 F. Supp. 2d 429, 439 (D.D.C. 2011); *Parkridge 6, LLC v. U.S. Dept. of Transportation*, 772 F. Supp. 2d 5, 8-9 (D.D.C. 2009).

<u>*Familiarity with law*</u>: Colorado courts are more familiar with Colorado law, and Colorado law governs.  Dominion contends, without citation, that "taking Dominion's allegations as true, D.C. law governs" (Response, p. 33), but the Court "need not accept the plaintiff's legal conclusions as true."  *Troster v. Garland*, 2021 WL 5865447, *3 (D.D.C. Dec. 10. 2021) (transferring case to E.D. Va.); *see also Dominion I,* 2021 WL 3550974 at *7 ("[T]he Court need not accept as true 'a legal conclusion couched as a factual allegation.'").  Accordingly, the Court should conduct its own choice of law analysis and conclude that Colorado law governs.

Dominion acknowledges that the Court must apply the "most significant relationship" test. (Response, p. 34).  ***Colorado*** has the most significant relationship with this case.  The most significant relationship in a defamation case is where the plaintiff was primarily harmed, and courts routinely make choice of law determinations on that basis.  *See, e.g., Nunes*, 520 F. Supp. 3d at 557 (holding in a multistate publication defamation case, choice of law analysis turns on plaintiff's domicile); *see also* Smolla at § 12:35.  Thus, Colorado law applies and given the complexity of relevant Colorado law (as addressed *supra* p. 8), this factor favors transfer.

### D. The potential for inconsistent judgments favors transfer.

As set forth *supra* p. 2, litigating this case and the *Coomer* Action separately would foster conflicting judgments and rulings.  Dr. Coomer is taking the position in Colorado that he is equivalent to Dominion, thus any statements about Dominion are also statements about him.  This is not a scenario where there are questions about a few overlapping statements — both cases are

challenging Defendants' coverage of Dominion in full, and it is entirely possible that two courts will reach different conclusions.  The first hurdle is the pending anti-SLAPP motion in Colorado — the Response does not explain how this Court should respond if the anti-SLAPP motion is granted and Dr. Coomer's claims are dismissed (with fees and costs awarded against Dr. Coomer).

Dominion contends a federal case cannot be consolidated with the *Coomer* Action.  But as noted *supra* p. 5 and in the Motion, Defendants intend to file a motion to join Dominion as a party in the *Coomer* Action if the anti-SLAPP motion is denied and that denial is not reversed on appeal.

### E.   The fact that the *Coomer* Action was filed first favors transfer.

Defendants don't argue for application of the "first-filed" rule, which applies only to duplicate federal cases, but the Motion presents authority that a state case preceding a federal case can be considered as part of the Court's analysis.  (Motion, pp. 25-26).  This is just one more factor favoring transfer.  And Dominion is incorrect in saying that there are no related cases pending in the U.S. District of Colorado.  Dominion is a defendant in *Cooper*, and Dr. Coomer has filed the *Make Your Life Epic LLC* lawsuit.

## IV.   Dominion has failed to adequately plead personal jurisdiction over OAN and the Herrings.

### A.   D.C.'s long-arm statute doesn't confer jurisdiction over OAN or the Herrings.

Dominion argues that "for many of the same reasons addressed in *Dominion I* regarding the Powell and Lindell defendants, this Court has specific jurisdiction over the Herrings, and OAN."  (Response, p. 37).[18]  But OAN and the Herrings are distinguishable from Powell and Lindell, who made statements in this District to an audience in this District.  OAN is not alleged to have made any statements in this District but rather is alleged to have broadcast statements

---

[18] Dominion does not argue, and has therefore waived, general personal jurisdiction.

nationally.  And as to the Herrings, Dominion has failed to adequately allege any facts indicating they took material actions in this District or made defamatory statements in this District.

Dominion bases its argument for jurisdiction on the notion that OAN and the Herrings "transacted business in this District" (Response, p. 38), but the claims are based on allegedly defamatory statements, not business transactions.  For there to be specific jurisdiction, Dominion must allege contacts in this District relevant to the allegedly defamatory statements.  As to OAN, Dominion once again lists the same set of alleged connections to this District but cites no authority suggesting that these contacts are relevant to specific personal jurisdiction.  The broadcast didn't happen from Washington, D.C. — it happened from California.  *See* Motion, Exh. M. But if Dominion is unwilling to sue Defendants in the place where publication occurred, it is necessary to evaluate the "effects" of the statements.  *See Calder*, 465 U.S. at 789.  Here, "the focal point both of the story and of the harm suffered," *id.*, is in Colorado, where Dominion is domiciled.

The exercise of personal jurisdiction over the Herrings is even more attenuated.  According to Dominion, because the Herrings were involved in entirely unrelated business transactions in this District and in decision-making at OAN, they're subject to specific personal jurisdiction. (Response, pp. 39-41).  Under this reasoning, corporate executives would be subject to personal jurisdiction in any District where their companies do business, but that is not the law.  Dominion cites *Urquhart-Bradley v. Mobley*, 964 F.3d 36 (D.C. Cir. 2020), and certain district court authority to argue that a court can exercise personal jurisdiction over "high ranking officers" like the Herrings based on actions of their corporations.  (Response, pp. 41-42).  But courts in this district have rejected the idea that a plaintiff can manufacture personal jurisdiction simply by making conclusory allegations "that [defendants] have directed or supervised activities of subordinates who have taken some action in the District." *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d

86, 92 (D.D.C. 2008); *see also Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 371-72 (D.D.C. 2015); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 230-31 (D.D.C. 2007).

Additionally, Dominion argues that the Herrings can be liable for the statements at issue because they were made by OAN while under the Herrings' control.  (Response, p. 41).  But Dominion overstates the impact of the court's language in *Marsh v. Hollander*, 339 F. Supp. 2d 1, 8 n. 8 (D.D.C. 2004), which was actually *dicta* and not the holding of the court.  And the cases are distinguishable because *Marsh* involved an attorney issuing a statement on behalf of his client.  *Id.* This sort of agency relationship is clearly different from the Herrings' relationship to OAN.

Dominion's argument that, under Defendants' reasoning, no court has personal jurisdiction over OAN and the Herrings is nonsensical.  Courts in California obviously would.  And Colorado currently is exercising jurisdiction over OAN in the *Coomer* Action.

## B.     OAN and the Herrings didn't cause tortious injury in Washington, D.C.

In arguing personal jurisdiction for an "additional and independently sufficient reason" (Response, p. 43), Dominion once again misconstrues the facts and law of publication in the defamation context.  Dominion correctly states that defamatory statements can cause injury where published (*id.*) but fails to acknowledge that the statements at issue here were not "published" just in Washington, D.C.  Rather, they were published nationally, requiring the multistate publication analysis discussed throughout this Reply.  In one of the cases cited by Dominion, the Court found jurisdiction **in the plaintiff's home district** — i.e., where the statement was received and where the alleged harm occurred.  *See Crane v. New York Zoological Soc.*, 894 F.2d 454, 457 (D.C. Cir. 1990).  And in another, the court **granted** a plaintiff's motion to dismiss for lack of personal jurisdiction where the statement was published elsewhere.  *See Lapointe v. Van Note*, 2004 WL 3609346, *6 (D.D.C. Nov. 9, 2004).  Here, again, the alleged "harm" to Dominion's reputation

has manifested, if at all, primarily in Colorado, and there is no allegation or reason to believe that any harm has occurred in this District. Dominion's reference to the "elected officials" in Paragraph 289 of the Complaint is misleading because those "elected officials" are located throughout the country. And Dominion's interest in maintaining its reputation with state governments has no connection to activities in Washington, D.C. Finally, Dominion has failed to allege it has ever served this District or how it lost business or opportunities to implement its voting technology in this District as a result of any allegedly defamatory statements or actions by OAN or the Herrings.

Simply put, even if a tortious injury occurred because of the actions allegedly attributable to OAN and the Herrings (which Defendants deny), it did not occur in Washington, D.C., and Dominion has failed to adequately allege anything to the contrary.

> ### C.     Jurisdiction doesn't comport with due process.

Dominion has not made a *prima facie* showing that OAN has any contacts in Washington, D.C. that ***relate to the claims in this case***, which is necessary for specific jurisdiction (and Dominion has waived general jurisdiction). Accordingly, exercising personal jurisdiction over OAN and the Herrings would be inconsistent with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Moreover, even if Dominion had adequately alleged relevant contacts by OAN, those contacts would not apply to the Herrings, meaning it would be unreasonable to exercise jurisdiction over them.

## V.     Conclusion

The Court should dismiss or stay this case based on *Colorado River* abstention. Alternatively, the Court should transfer this case to the U.S. District Court for the District of Colorado under Section 1404(a). And if the Court does not dismiss, stay, or transfer the case in its entirety, the Court should dismiss the claims against OAN, Charles Herring, and Robert Herring, Sr. for failure by Dominion to adequately plead personal jurisdiction.

Respectfully submitted,


By:  /s/ Blaine C. Kimrey
           Counsel for all defendants


Blaine C. Kimrey
bkimrey@vedderprice.com
Jeanah Park
jpark@vedderprice.com
Bryan Clark
bclark@vedderprice.com
Brian Ledebuhr
bledebuhr@vedderprice.com
Julia Koechley
jkoechley@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Ave NW, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

Dated: January 13, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of January 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served on the following counsel for the parties:

Thomas A. Clare, Esq.
tom@clarelocke.com
Megan Lambart Meier, Esq.
megan@clarelocke.com
Dustin Andrew Pusch, Esq.
dustin@clarelocke.com
Clare Locke LLP
10 Prince Street
Alexandria, VA 22314

Davida Brook, Esq.
dbrook@susmangodfrey.com
Stephen Shackelford, Jr., Esq.
sshackelford@susmangodfrey.com
Justin A. Nelson, Esq.
jnelson@susmangodfrey.com
Katherine Marie Peaslee, Esq.
kpeaslee@susmangodfrey.com
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019

/s/ Blaine C. Kimrey
Blaine C . Kimrey