# Exhibit B

| | |
|---|---|
| DISTRICT COURT<br>CITY & COUNTY OF DENVER<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: June 21, 2021 8:49 AM<br>CASE NUMBER: 2020CV34319 |
| **Plaintiff:**<br><br>Eric Coomer,<br><br>v.<br><br>**Defendants:**<br><br>Donald J. Trump For President, Inc., et al. | ▲ **COURT USE ONLY** ▲ |
| | Case           Number:<br>2020CV34319<br><br>Courtroom:  409 |
| **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO C.R.C.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION** | |

In the complaint filed in this action, Plaintiff Eric Coomer ("Coomer") has asserted claims of 1) defamation; 2) intentional infliction of emotional distress; 3) civil conspiracy; and 4) a request for a preliminary and permanent injunction against several individuals and organizations that are not residents of the State of Colorado.

The following Defendants have filed motions to dismiss pursuant to C.R.C.P. 12(b)(2) for lack of personal jurisdiction: Donald J. Trump for President, Inc. ("Trump Campaign"), Sidney Powell ("Powell"), Sidney Powell, P.C. ("Powell P.C."), Defending the Republic, Inc. ("DTR"), Rudolph Giuliani ("Giuliani"), James Hoft ("Hoft"), TGP Communications LLC dba The Gateway Pundit ("TGP"), Eric Metaxas ("Metaxas"), and Chanel Rion ("Rion") (collectively, Defendants herein).[1]

After reviewing in detail the parties' filings (including the exhibits and declarations), reviewing the Court's file, and applicable law, the Court concludes that the Defendants' motions to dismiss for lack of personal jurisdiction must be DENIED.

---

[1] The following Defendant have not contested personal jurisdiction in this matter: Joseph Oltmann ("Oltmann"), FEC United, Shuffling Madness Media, Inc. dba Conservative Daily, Michelle Malkin ("Malkin"), and Herring Networks, Inc. dba One America News Network.

## I.    Background and Facts as Alleged

Plaintiff's First Amended Complaint contains the following factual and jurisdictional allegations, which the court must accept as true for the purposes of deciding Defendants' motions to dismiss pursuant to C.R.C.P. 12(b)(2).[2]

Plaintiff Coomer is a resident of Colorado. (Plaintiff's First Amended Complaint ("⊺ FAC"), ¶10). At the time of the events that serve as the basis for this cause of action, Coomer was employed as the Director of Product Strategy and Security for Dominion Voting Systems, Inc. (Dominion).  Dominion's headquarters are located in Denver, Colorado. (⊺ FAC, ¶¶43-44). Dominion provided "election support services" for the 2020 presidential election, which included voting machine set-up and system testing. (⊺ FAC, ¶44).

 Following the November 3, 2020 presidential election, and beginning on approximately November 9, 2020, Oltmann began making statements, initially through his Conservative Daily Podcast, wherein he stated that Oltmann had infiltrated an Antifa conference call in September 2020 and had overheard someone who was identified as "Eric . . . the Dominion guy." According to Oltmann, he overheard the voice identified as "Eric" make a statement paraphrased as, "[d]on't worry about the election, Trump's not going to win. I made sure of that."  (Plaintiff's First Amended Complaint ("⊺ FAC"), ¶52).

After Oltmann's initial November 9, 2020 podcast broadcast, Oltmann appeared on numerous other platforms amplifying the information contained in his initial November 9, 2020 podcast, sharing the address and a photograph of Coomer's home in Colorado, and making additional statements referring to Coomer similar to "treason is punishable by death." (⊺ FAC, ¶58).

Coomer has alleged that all Defendants, including Defendants Hoft, TGP, Michele Malkin (a resident of Colorado and a political blogger/commentator) (⊺ FAC, ¶71), Metaxas, Rion, Herring Networks, Inc., Powell, Giuliani and the Trump Campaign used Oltmann as the source for their subsequent statements and reporting that Coomer, an employee of Dominion, had acknowledged manipulating the presidential election results.  (⊺ FAC, ¶¶56-62).

Coomer contends that Oltmann's statements during the November 9, 2020 podcast and the subsequent efforts of the other Defendants to amplify and embellish those statements were baseless and unequivocally false. Coomer has

---

[2] Allegations in a complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor.  *Archangel*, 123 P.3d 1187, 1192 (Colo. 2005) and *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 66 (Colo. 2007).

affirmed that he had no knowledge of the "Antifa Conference Call"; did not participate in such an alleged call; did not make the comments Oltmann alleged were made; and did not take steps to subvert the results of the presidential election. (¶ FAC, ¶¶56-62).

After an extensive recitation of statements concerning Coomer made by all of the Defendants in this matter, including detailed references to the dates and places such statements were made, Coomer has pled that "all Defendants relied on false statements made by one another to advance a narrative that had no basis in fact." (¶ FAC, ¶71). Coomer has further alleged that "Defendants disregarded credible evidence and relied on inherently unreliable sources to form their inherently improbably accusations and that Defendants' conduct has resulted in direct harm to Dr. Coomer through their encouragement of violence and threats." *Id.*

Coomer has pled specific instances of death threats that he received in Colorado. (¶ FAC, ¶¶72-80). Coomer has pled that these threats were made as a result of the statements initially made by Oltmann and then amplified by other Defendants. (¶ FAC, ¶81). Coomer has alleged that his reputation, privacy, safety and earnings in Colorado have all been harmed by Defendants. *Id.* Coomer has alleged that he has been forced to flee his home (in Colorado) and has had to sever ties with friends and family members to stay in seclusion. (¶ FAC, ¶74). Some of the threats have been directed at the town of Salida, Colorado as reflected by Twitter user @AngLindva who posted the following on November 25, 2020: "Dear Salida Colorado . [sic] we have rented a house in your town for as long as it takes to find Eric Coomer. We will disrupt that town until found. Pedal pushers racing will no longer have peace."

In support of his defamation cause of action, Coomer has alleged that the statements regarding his alleged participation in the Antifa Conference Call and his alleged efforts to undermine the election are defamatory per se as they injure his reputation, impute a crime, and disparage his business practices. (¶ FAC, ¶84). Coomer also alleges that all Defendants published their false statements with actual malice because they knew or had reason to know that the statements were false and published their statements with knowledge or reckless disregard of the falsity. (¶ FAC, ¶85).

In support of his civil conspiracy cause of action, Coomer has alleged that all Defendants (including residents of Colorado Oltmann and Malkin) participated in a conspiracy to defame and inflict emotional distress on Coomer as part of the Defendants' collective effort to create a false narrative that President Trump's election loss could only have occurred if there was fraudulent election activity. (¶ FAC, ¶¶91-93). Coomer has specifically pled that the Defendants' efforts were assisted by other Colorado residents, such as Randy Corporon, that worked to amplify Oltmann's statements. (¶ FAC, ¶71, fn. 100).

In addition to the allegations surrounding Colorado being the source of the alleged defamatory statements and the location where the harm to Coomer occurred, Coomer has also pled that each of the out-of-state Defendants intentionally published their statements to Colorado audiences by broadcasting on national networks: Trump Campaign, ⁋ FAC, ¶27; Powell, ⁋ FAC, ¶28; Powell P.C., ⁋ FAC, ¶29; DTR, ⁋ FAC, ¶30; Giuliani, ⁋ FAC, ¶31; Hoft, ⁋ FAC, ¶35; TGP, ⁋ FAC, ¶36; Metaxas, ⁋ FAC, ¶38; and Rion, ⁋ FAC, ¶39.

## II.    The Parties' Positions

### A.    Plaintiff's Position:

Although Plaintiff has tailored his jurisdictional arguments as to each individual defendant, Plaintiff's specific personal jurisdiction arguments can be summarized as follows:

- Defendants intentionally targeted and defamed a Colorado resident.

- Defendants' defamatory statements specifically concerned a Colorado resident, his work in Colorado, his conduct in Colorado and his communications in Colorado.

- Defendants deliberately used and identified other Colorado residents as the sources of their defamatory statements.

- Defendants conspired with their Colorado sources to defame a Colorado resident.

- Defendants used national media outlets to publish their statement to Colorado residents.

- It was foreseeable and inevitable that the effects of the tortious conduct would be felt in Colorado.

- Plaintiff suffered devastating consequences in Colorado.

### B.    Defendants' Positions:

Although nine (9) defendants have filed C.R.C.P. 12(b)(2) motions to dismiss, they assert substantially similar arguments in their respective pleadings. Their arguments can be summarized as follows:

- Defendants are non-residents of Colorado.

- Defendants' conduct occurred outside Colorado.

- Plaintiff's connections to Colorado are not sufficient to create personal jurisdiction over Defendants.

- The foreseeability of harming Plaintiff in Colorado does not establish personal jurisdiction.

- Defendants directed their statements at a national audience and did not direct their statements to Colorado specifically.

- Even if there are minimum contacts with Colorado, requiring Defendants to litigate in Colorado offends notions of fair play and substantial justice.

### III.    C.R.C.P. 12(b)(2) Standard

**A.    Procedure for Addressing C.R.C.P. 12(b)(2) Motions**

Before this Court may exercise personal jurisdiction over a non-resident defendant, the Court must determine whether it has statutory and constitutional authority to do so. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

A trial court, in its discretion, may decide a motion to dismiss under C.R.C.P. 12(b)(2) before trial based solely on documentary evidence provided by the parties, or by holding a hearing.  *Archangel v. Lukoil*, 123 P.3d 1187, 1192 (Colo. 2005).  While the options are not mutually exclusive, the plaintiff's burden of proof on the question of personal jurisdiction depends on the method that the court employs to resolve the issue.  *Archangel*, 123 P.3d at 1192.

When a trial court decides the motion on documentary evidence alone, the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion by raising a reasonable inference that the court has jurisdiction over the defendant.  *Giduck v. Niblett*, 408 P.3d 856, 862 (Colo. App. 2014). A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 66 (Colo. 2007)

Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties.  *Archangel*, 123 P.3d at 1192. The court's role in addressing a Rule 12(b)(2) motion on documentary evidence is one of "data collector" and "not a fact-finder."  *Id*. The allegations in the complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor.  *Id*. and *Goettman*, 176 P.3d at 66.

Alternatively, if a court elects to resolve the question of personal jurisdiction by holding an evidentiary hearing, the plaintiff must establish that jurisdiction exists by a preponderance of the evidence. *Archangel*, 123 P.3d at 1192. If a court holds a hearing, it becomes the fact-finder and may weigh and resolve any factual disputes pertaining to jurisdiction. *Id.* To decide whether a hearing is required, the court determines if the circumstances of a particular case indicate that it is:

> unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a prima facie showing of facts essential to *in personam* jurisdiction. A court may so determine, for example when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible. *Archangel*, at 1193.

However, the *Archangel* court cautioned that trial courts "should be wary of adjudicating the jurisdictional issue with an evidentiary hearing 'where the jurisdictional facts are inextricably intertwined with the merits of the case, because doing so could endanger the plaintiff's substantive right to a jury trial.'" *Id.*, citing *Foster–Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 149 (1st Cir. 1995).

Here, the parties do not have significant disputes regarding the factual allegations surrounding the question of personal jurisdiction. Rather, the parties' primary disputes surround the question of whether the facts, as alleged by Plaintiff, are sufficient to establish personal jurisdiction over the out-of-state Defendants. Therefore, the Court resolves Defendants' C.R.C.P. 12(b)(2) motions to dismiss without an evidentiary hearing.

## 2.     Requirements for Personal Jurisdiction

To determine whether personal jurisdiction exists over a defendant, a court must examine if it has statutory and constitutional authority to exercise such jurisdiction. *In re Marriage of Malwitz*, 99 P.3d 56, 59 (Colo. 2004). A court must analyze whether the defendant's activities are sufficient to make jurisdiction statutorily appropriate and whether the exercise of jurisdiction over the defendant comports with due process. *In re Marriage of Malwitz*, 99 P.3d at 59.

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant must satisfy both the requirements of Colorado's long-arm statute, C.R.S. § 13-1-124, and the requirements of due process of law. *D&D Fuller CATV Constr., Inc. v. Pace*, 780 P.2d 520, 523 (Colo. 1989). Because Colorado's long-arm statute confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado Constitution, if a plaintiff satisfies

constitutional requirements, the requirements of the long-arm statute are also satisfied.  *Giduck*, at 862.

Colorado's long-arm statute, C.R.S. § 13-1-124(1)(a)-(b) states, in relevant part:

> Engaging in any act enumerated in this section by any person. Whether or not a resident of the state of Colorado, either in person or by an agent, submits such person...to the jurisdiction of the courts of this state concerning any cause of action arising from: (a) The transaction of any business within this state; (b) The commission of a tortious act within this state...

With respect to tort claims, the Colorado Supreme Court has held that negligent conduct in a foreign state which causes injury in Colorado may be deemed an act committed within Colorado for purposes of the long-arm statute. *Foundation For Knowledge in Development v. Interactive Design Consultants, LLC.*, 234 P.3d 673, 677 (Colo. 2010), citing *Scheuer v. Dist. Court*, 684 P.2d 249, 251 (Colo. 1984).

To satisfy the requirement of Constitutional due process, it must be shown that a defendant has certain minimum contacts with the State of Colorado so that he may foresee being answerable in court in this state.  *Archangel*, 123 P.3d at 1194.  The quantity and nature of the required minimum contacts depends on whether the plaintiff alleges that specific or general jurisdiction exists.  *Id.*

General jurisdiction exists if the defendant engaged in continuous and systematic activities that are of a general business nature in the forum state. *Giduck*, at 863. General jurisdiction allows a court to exercise jurisdiction over a nonresident defendant even where the litigation arises out of non-forum contacts.  *Archangel*, at 1194.

Specific jurisdiction over a nonresident defendant exists where the injuries underlying the litigation arise out of and are related to activities that are significant and purposefully directed by the defendant at residents of the State of Colorado. *Id.*  Stated differently, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Giduck*, at 863, citing *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014).  Specific jurisdiction can be exercised over a defendant when the injury itself arises out of a defendant's contacts with the forum state. *Foundation For Knowledge in Development v. Interactive Design Consultants, LLC.*, 234 P.3d 673, 677 (Colo. 2010).

In determining whether a defendant purposefully availed himself of the privilege of conducting business in Colorado, the actions of the <u>defendant</u> must be considered, not those unilaterally taken by someone else such as the plaintiff. *Archangel*, 123 P.3d at 1194.  The relationship must arise out of contacts that

the defendant, and the defendant alone, created with the state. *Giduck*, at 863, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The purpose of due process is to protect the liberty of the nonresident defendant, not the convenience of a plaintiff or third parties. *Giduck* at 863. Additionally, the minimum contacts analysis requires an assessment of the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* As the United States Supreme Court has noted, "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014). This principle applies regardless of the nature of the claim asserted. Due process cannot be based on "random, fortuitous, or attenuated" contacts or on the "unilateral activity" of a plaintiff. *Walden*, 134 S.Ct at 1123 (citation omitted).

Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way. *Walden* at 1125. A defendant needs to perform some action showing that they "purposefully availed [themselves] of the privilege of conducting activities in the forum state." *Goettman*, 176 P.3d at 67.

Finally, if a plaintiff demonstrates that the required minimum contacts exist with the defendant and the forum state (whether claimed jurisdiction is specific or general) a court must then apply a test of reasonableness to determine whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Archangel*, 123 P.3d at 1194-95. This analysis requires that a court analyze whether its exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the specific circumstances of the case. *Id.* at 1195. In performing this assessment, a court may consider several factors including 1) the burden on the defendant, 2) the forum state's interest in resolving the controversy, and 3) the plaintiff's interest in attaining effective and convenient relief. *Id.* If a defendant's contacts with the forum state are weak, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction. *Id.* The converse is also true. *Id.*

## IV.    Analysis

In response to Defendants' Motions to Dismiss under C.R.C.P. 12(b)(2), Coomer contends that specific jurisdiction exists over the Defendants.[3] A court may exercise specific jurisdiction where the alleged injury arises out of and is related to "activities that are significant and purposefully directed by the

---

[3] Coomer does not make any arguments relating to general jurisdiction.

defendant at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Coomer has asserted the tort claims of defamation, intentional infliction of emotional distress, and civil conspiracy. The tort of defamation occurs where the false statements are published. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-81 (1984) (libel is generally held to occur wherever the offending material is circulated). This is true because false statements of fact harm both the subject of the falsehood and the recipients of the false statements. *Id.*, at 776. "The legally relevant 'occurrence' in a defamation action is where the publication occurred, i.e. where third persons were exposed to the material that would tend to damage the plaintiff's reputation." *Seidel v. Kirby*, 296 F.Supp.3d 745, 753 (D. Md. 2017). As a result, under C.R.S. § 13-1-124(1)(b), assuming that there are sufficient minimum contacts between Defendants and the State of Colorado, Defendants are subject to personal jurisdiction in this state. See *Scheuer v. Dist. Court*, 684 P.2d 249, 251 (Colo. 1984) (negligent conduct in a foreign state which causes injury in Colorado may be deemed an act committed within Colorado for purposes of the long-arm statute).

The commission of a tort, alone, may create a sufficient nexus between the defendant and the forum satisfying due process requirements *D & D Fuller CATV Constr. Inc. v. Pace,* 780 P.2d 520, 525 (Colo. 1989). For this to be the case, however, the defendant must be "so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction." *Id.* "There are instances, however, when the tortious conduct is 'so remote as to require a closer nexus between the defendant and that state,' and the 'court must engage in a complete minimum contacts analysis.'" *Id.*

The Colorado Supreme Court has held, consistent with the United States Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), that a trial court may exercise jurisdiction "where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state." *D & D Fuller CATV Constr. Inc.* at 525–26. But, "the mere allegation that an out-of-state defendant . . . has committed . . . torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). Instead, in applying the *Calder* "effects" test, the court must determine whether the forum state was the focal point of both the defendant's action and the effects of those actions. *Marquest Med. Prods., Inc. v. Daniel, McKee & Co.*, 791 P.2d 14, 16 (Colo.

App. 1990) (emphasis added). If the forum state is not "the focal point both of the story and of the harm suffered," then the plaintiff may not hale the defendant into court in its home state. *Calder*, 465 U.S. at 789.

To resolve the jurisdictional question, "a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws." *Far West Capital*, 46 F.3d at 1079.

Applying the *Calder* effects test, the Court finds that as a whole, Colorado was the focal point of Defendants' alleged defamatory statements. However, because the personal jurisdiction inquiry requires an individualized evaluation of each defendant's conduct and relationship to the forum state, the Court will address each defendant separately.  For purposes of the Court's analysis and findings below, the Court is accepting the allegations of Coomer's First Amended Complaint as true.

## Donald J. Trump for President, Inc. ("Trump Campaign")

Calder Effects Test:

The Court finds that, although the Trump Campaign's communications were intended for a national audience, the communications nonetheless had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado. The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct for the following reasons.

Defendant Oltmann was the initial source of the election fraud allegations against Coomer.  There is no credible claim that there has been any other source of the statements that Coomer participated in an Antifa Conference Call and stated that he had made sure that Donald Trump would not win the 2002 election. Oltmann, a resident of Colorado, claimed to have infiltrated a conference call between Colorado Antifa activists (as part of his efforts to uncover members of the Colorado media that were involved with Antifa). Oltmann initially broadcast his claims about Coomer from his studio in Colorado. Oltmann's claims were then picked up by Defendants, including the Trump Campaign, and disseminated to a national audience, which included Colorado residents. The allegedly defamatory statements created significant harm to Coomer within the State of Colorado because his reputation with his Colorado employer has been damaged, he has received death threats in Colorado, his address in Colorado has been broadcast, and he has been required to leave his Colorado home for his safety.

Because the alleged defamatory statements concern a Colorado resident, who is alleged to have admitted in a conference call that took place in Colorado, that he had used his position with a Colorado company to ensure the election

defeat of Donald Trump, they necessarily were of particular interest to a Colorado audience.

<u>Minimum Contacts</u>:

The Trump Campaign has had the following contacts with Colorado: Eric Trump has made campaign appearances in Colorado; the Trump Campaign solicited donations from Colorado residents; and lawyers for the Trump Campaign worked with Defendant Oltmann in Colorado to prepare an affidavit wherein Oltmann repeated his statements regarding Coomer's participation in the Antifa Conference Call.

(1)   *Are defendant's contacts related to the plaintiff's cause of action?*

Yes.  The Trump Campaign was actively involved in campaigning and soliciting donations from Colorado residents for the 2020 presidential campaign in Colorado. After losing the election, the Trump Campaign and its agents directed statements at Colorado audiences, alleging election fraud generally, and alleging election fraud against Coomer (a Colorado resident) specifically.  The Trump Campaign worked with attorneys in Colorado to develop their claims of election fraud and to obtain the affidavit from Defendant Oltmann.

(2)   *Do defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum?*

Yes. The Trump Campaign published the allegedly defamatory statements in Colorado.  *See Calder v. Jones, supra* and *Gilmore v. Jones*, 370 F.Supp.3d 630, 657-68) (W.D. Va. 2019).

(3)   *Based on the nature of the contact(s) should the defendant reasonably anticipate being haled into court in Colorado?*

Yes. The Trump Campaign published the allegedly defamatory statements in Colorado. Additionally, Coomer has alleged that the Trump Campaign conspired with Colorado residents to spread the allegedly defamatory statements.

<u>Fair Play and Substantial Justice</u>:

(1)   *Burden on the defendant:*

The Court finds that there is a minimal burden on the Trump Campaign, an organization that had substantial activity in Colorado during the 2020 presidential election.

*(2)     Colorado's interest in adjudicating the dispute:*

The Court finds that Colorado has a strong interest in adjudicating the dispute. The alleged defamatory statements were aimed at a Colorado resident (Coomer) and negatively impacted a company with headquarters and employees in Denver, Colorado. Coomer has been forced to go into hiding as a result of threats made by members of the public that heard the statements that are the subject of this action. Moreover, the harm caused by the statements have extended beyond Coomer and Dominion. As previously referenced, threats have been directed at the entire town of Salida, Colorado as a result of the calls for citizens to "find the traitor." Finally, the statements were received by Colorado residents who had their faith in the election process eroded by claims of election fraud. *See Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 776 (1984) (false statements of fact harm both the subject of the falsehood and the recipients of the false statements).

*(3)     Plaintiff's interest in obtaining convenient and effective relief*:

Plaintiff has brought an action against fourteen defendants, four of which are residents of Colorado (Oltmann, FEC United, Shuffling Madness, and Malkin). Because Oltmann, a Colorado resident, was the initial source of the alleged defamatory statements, and because Coomer, a Colorado resident, has been harmed in Colorado by the statements, Colorado is the jurisdiction best suited to hear this action. Because the Trump Campaign engaged in conduct with Colorado as a focal point, it is appropriate for Colorado to exercise specific personal jurisdiction over the Trump Campaign in this matter.

## Sidney Powell ("Powell"), Sidney Powell, P.C. ("Powell P.C.") and Defending the Republic, Inc. ("DTR")

Because Powell is a representative of Powell P.C. and DTR and Powell's actions relevant to this case were as a representative of Powell P.C. and DTR and within the scope and furtherance of her work for Powell P.C. and DTR, the Court's personal jurisdictional analysis for Powell, Powell P.C. and DTR are identical.

Calder Effects Test:

The Court finds that, although Powell's communications were intended for a national audience, the communications nonetheless had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado. The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct for the following reasons.

Defendant Oltmann was the initial source of the election fraud allegations against Coomer. There is no credible claim that there has been any other source of the statements that Coomer participated in an Antifa Conference Call and stated that he had made sure that Donald Trump would not win the 2002 election. Oltmann, a resident of Colorado, claimed to have intercepted a conference call between Colorado Antifa activists (as part of his efforts to uncover members of the Colorado media that were involved with Antifa). Oltmann initially broadcast his claims about Coomer from his studio in Colorado. Oltmann's claims were then picked up by Defendants, including Powell, and disseminated to a national audience, which included Colorado residents. The allegedly defamatory statements created significant harm to Coomer within the State of Colorado because his reputation with his Colorado employer has been damaged, he has received death threats in Colorado, his address in Colorado has been broadcast, and he has been required to leave his Colorado home for his safety.

Because the alleged defamatory statements concern a Colorado resident, who is alleged to have admitted in a conference call that took place in Colorado, that he had used his position with a Colorado company to ensure the election defeat of Donald Trump, they necessarily were of particular interest to a Colorado audience.

<u>Minimum Contacts</u>:

Powell has had the following contacts with Colorado: Powell and attorneys functioning under her direction in Colorado worked with Defendant Oltmann to prepare an affidavit in Colorado wherein Oltmann repeated his statements regarding Coomer's participation in the Antifa Conference Call. Additionally, Powell has engaged in fundraising efforts in Colorado to support DTR.

(1)   *Are defendant's contacts related to the plaintiff's cause of action?*

Yes. Powell was actively involved coordinating efforts in Colorado designed to amplify Oltmann's statements regarding Coomer. Powell then directed statements at Colorado audiences, alleging election fraud generally, and alleging election fraud against Coomer (a Colorado resident) specifically. Powell worked with attorneys in Colorado to develop their claims of election fraud and to obtain the affidavit from Defendant Oltmann.

(2)   *Do defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum?*

Yes. Powell published the allegedly defamatory statements in Colorado. *See Calder v. Jones, supra* and *Gilmore v. Jones*, 370 F.Supp.3d 630, 657-68) (W.D. Va. 2019).

*(3)   Based on the nature of the contact(s) should the defendant reasonably anticipate being haled into court in Colorado?*

Yes. Powell published the allegedly defamatory statements in Colorado. Additionally, Coomer has alleged that Powell conspired with Colorado residents to spread the allegedly defamatory statements.

Fair Play and Substantial Justice:

*(1)   Burden on the defendant:*

The Court finds that there is a minimal burden on Powell as she is known for litigating cases in many states across the United States.

*(2)   Colorado's interest in adjudicating the dispute:*

The Court finds that Colorado has a strong interest in adjudicating the dispute. The alleged defamatory statements were aimed at a Colorado resident (Coomer) and negatively impacted a company with headquarters and employees in Denver, Colorado. Coomer has been forced to go into hiding as a result of threats made by members of the public that heard the statements that are the subject of this action. Moreover, the harm caused by the statements have extended beyond Coomer and Dominion. As previously referenced, threats have been directed at the entire town of Salida, Colorado as a result of the calls for citizens to "find the traitor." Finally, the statements were received by Colorado residents who had their faith in the election process eroded by claims of election fraud. *See Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 776 (1984) (false statements of fact harm both the subject of the falsehood and the recipients of the false statements).

(3)   *Plaintiff's interest in obtaining convenient and effective relief*:

Plaintiff has brought an action against fourteen defendants, four of which are residents of Colorado (Oltmann, FEC United, Shuffling Madness, and Malkin). Because Oltmann, a Colorado resident, was the initial source of the alleged defamatory statements, and because Coomer, a Colorado resident has been harmed in Colorado by the statements, Colorado is the jurisdiction best suited to hear this action. Because Powell engaged in conduct with Colorado as a focal point, it is appropriate for Colorado to exercise specific personal jurisdiction over Powell, Powell, P.C. and DTR in this matter.

**Rudolph Giuliani ("Giuliani")**

Calder Effects Test:

The Court finds that, although Giuliani's communications were intended for a national audience, the communications nonetheless had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado. The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct for the following reasons.

Defendant Oltmann was the initial source of the election fraud allegations against Coomer. There is no credible claim that there has been any other source of the statements that Coomer participated in an Antifa Conference Call and stated that he had made sure that Donald Trump would not win the 2002 election. Giuliani's claim that he relied on unnamed "investigators and individuals" outside of Colorado is not deemed "competent" evidence. Oltmann, a resident of Colorado, claimed to have intercepted a conference call between Colorado Antifa activists (as part of his efforts to uncover members of the Colorado media that were involved with Antifa). Oltmann initially broadcast his claims about Coomer from his studio in Colorado. Oltmann's claims were then picked up by Defendants, including Giuliani, and disseminated to a national audience, which included Colorado residents. The allegedly defamatory statements created significant harm to Coomer within the State of Colorado because his reputation with his Colorado employer has been damaged, he has received death threats in Colorado, his address in Colorado has been broadcast, and he has been required to leave his Colorado home for his safety.

Because the alleged defamatory statements concern a Colorado resident, who is alleged to have admitted in a conference call that took place in Colorado, that he had used his position with a Colorado company to ensure the election defeat of Donald Trump, they necessarily were of particular interest to a Colorado audience.

<u>Minimum Contacts</u>:

Giuliani acknowledges that as part of his efforts to investigate claims of voter fraud, he was investigating Dominion Voting Systems, a Colorado company.

    *(1)    Are defendant's contacts related to the plaintiff's cause of action?*

          Yes. Giuliani acknowledges that he was investigating Coomer's Colorado employer, Dominion Voting Systems as part of his efforts to allege election fraud, the same topic of his statements concerning Coomer.

    *(2)    Do defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum?*

Yes. Giuliani published the allegedly defamatory statements in Colorado. *See Calder v. Jones, supra* and *Gilmore v. Jones*, 370 F.Supp.3d 630, 657-68) (W.D. Va. 2019).

*(3)* *Based on the nature of the contact(s) should the defendant reasonably anticipate being haled into court in Colorado?*

Yes. Giuliani published the allegedly defamatory statements in Colorado. Additionally, Coomer has alleged that Giuliani conspired with Colorado residents to spread the allegedly defamatory statements.

<u>Fair Play and Substantial Justice</u>:

*(1)* *Burden on the defendant:*

The Court finds that there is a minimal burden on Giuliani as he self-identifies as a "nationally known public servant" and has participated in litigation on behalf of the Trump Campaign in many states in the United States.

*(2)* *Colorado's interest in adjudicating the dispute:*

The Court finds that Colorado has a strong interest in adjudicating the dispute. The alleged defamatory statements were aimed at a Colorado resident (Coomer) and negatively impacted a company with headquarters and employees in Denver, Colorado. Coomer has been forced to go into hiding as a result of threats made by members of the public that heard the statements that are the subject of this action. Moreover, the harm caused by the statements have extended beyond Coomer and Dominion. As previously referenced, threats have been directed at the entire town of Salida, Colorado as a result of the calls for citizens to "find the traitor." Finally, the statements were received by Colorado residents who had their faith in the election process eroded by claims of election fraud. *See Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 776 (1984) (false statements of fact harm both the subject of the falsehood and the recipients of the false statements).

(3) *Plaintiff's interest in obtaining convenient and effective relief*:

Plaintiff has brought an action against fourteen defendants, four of which are residents of Colorado (Oltmann, FEC United, Shuffling Madness, and Malkin). Because Oltmann, a Colorado resident, was the initial source of the alleged defamatory statements, and because Coomer, a Colorado resident has been harmed in Colorado by the statements, Colorado is the jurisdiction best suited to hear this action. Because Giuliani engaged in

conduct with Colorado as a focal point, it is appropriate for Colorado to exercise specific personal jurisdiction over Giuliani in this matter.

**James Hoft ("Hoft") and TGP Communications LLC dba The Gateway Pundit ("TGP")**

Because Hoft is a representative of TGP and Hoft's actions relevant to this case were as a representative of TGP and within the scope and furtherance of his work with TGP, the Court's personal jurisdictional analysis for Hoft and TGP are identical.

Calder Effects Test:

The Court finds that, although Hoft's communications were intended for a national audience, the communications nonetheless had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado. The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct for the following reasons.

Defendant Oltmann was the initial source of the election fraud allegations against Coomer.  There is no credible claim that there has been any other source of the statements that Coomer participated in an Antifa Conference Call and stated that he had made sure that Donald Trump would not win the 2002 election. Oltmann, a resident of Colorado, claimed to have intercepted a conference call between Colorado Antifa activists (as part of his efforts to uncover members of the Colorado media that were involved with Antifa). Oltmann initially broadcast his claims about Coomer from his studio in Colorado. Oltmann's claims were then picked up by Defendants, including Hoft, and disseminated to a national audience, which included Colorado residents. The allegedly defamatory statements created significant harm to Coomer within the State of Colorado because his reputation with his Colorado employer has been damaged, he has received death threats in Colorado, his address in Colorado has been broadcast, and he has been required to leave his Colorado home for his safety.

Because the alleged defamatory statements concern a Colorado resident, who is alleged to have admitted in a conference call that took place in Colorado, that he had used his position with a Colorado company to ensure the election defeat of Donald Trump, they necessarily were of particular interest to a Colorado audience.

Minimum Contacts:

Hoft has had the following direct contacts with Colorado: Hoft conducted and broadcast an interview with Colorado based Oltmann on November 16, 2020 addressing his Oltmann's claims against Coomer and Hoft appeared on the Denver, Colorado based radio show "The Peter Boyles Show" on November 19, 2020 to discuss his election fraud allegations.

(1)   *Are defendant's contacts related to the plaintiff's cause of action?*

Yes.  Hoft was actively involved efforts in Colorado designed to amplify Oltmann's statements regarding Coomer.  Hoft then directed statements at Colorado audiences, alleging election fraud generally, and alleging election fraud against Coomer (a Colorado resident) specifically.  Hoft's attorney, Randy Corporon, worked with other attorneys in Colorado to develop their claims of election fraud and to obtain the affidavit from Defendant Oltmann.

(2)   *Do defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum?*

Yes. Hoft published the allegedly defamatory statements in Colorado.  *See Calder v. Jones, supra* and *Gilmore v. Jones*, 370 F.Supp.3d 630, 657-68) (W.D. Va. 2019).

(3)   *Based on the nature of the contact(s) should the defendant reasonably anticipate being haled into court in Colorado?*

Yes. Hoft published the allegedly defamatory statements in Colorado. Additionally, Coomer has alleged that Hoft conspired with Colorado residents to spread the allegedly defamatory statements.

Fair Play and Substantial Justice:

(1)   *Burden on the defendant:*

The Court finds that there is a minimal burden on Hoft to litigate in Colorado as he appears to have a close working relationship with his Colorado attorney, Randy Corporon, which pre-dates this lawsuit. The Court has also granted Hoft's Missouri counsel's *pro hac vice* admission.

(2)   *Colorado's interest in adjudicating the dispute:*

The Court finds that Colorado has a strong interest in adjudicating the dispute. The alleged defamatory statements were aimed at a Colorado resident (Coomer) and negatively impacted a company with headquarters and employees in Denver, Colorado. Coomer has been forced to go into hiding as a result of threats made by members of the public that heard the statements that are the subject of this action. Moreover, the harm caused by the statements have extended beyond Coomer and Dominion. As previously referenced, threats have been directed at the entire town of Salida, Colorado as a result of the calls for citizens to "find the traitor." Finally, the statements were received by Colorado residents who had their faith in the election process eroded by claims of election fraud. *See Keeton*

*v. Hustler Magazine, Inc.*, 465 U. S. 770, 776 (1984) (false statements of fact harm both the subject of the falsehood and the recipients of the false statements).

(3)     *Plaintiff's interest in obtaining convenient and effective relief*:

Plaintiff has brought an action against fourteen defendants, four of which are residents of Colorado (Oltmann, FEC United, Shuffling Madness, and Malkin). Because Oltmann, a Colorado resident, was the initial source of the alleged defamatory statements, and because Coomer, a Colorado resident has been harmed in Colorado by the statements, Colorado is the jurisdiction best suited to hear this action. Because Hoft engaged in conduct with Colorado as a focal point, it is appropriate for Colorado to exercise specific personal jurisdiction over Hoft and TGP in this matter.

**Eric Metaxas ("Metaxas")**

Calder Effects Test:

The Court finds that, although Metaxas's communications were intended for a national audience, the communications nonetheless had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado. The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct for the following reasons.

Defendant Oltmann was the initial source of the election fraud allegations against Coomer.  There is no credible claim that there has been any other source of the statements that Coomer participated in an Antifa Conference Call and stated that he had made sure that Donald Trump would not win the 2002 election. Oltmann, a resident of Colorado, claimed to have intercepted a conference call between Colorado Antifa activists (as part of his efforts to uncover members of the Colorado media that were involved with Antifa). Oltmann initially broadcast his claims about Coomer from his studio in Colorado. Oltmann's claims were then picked up by Defendants, including Metaxas, and disseminated to a national audience, which included Colorado residents. The allegedly defamatory statements created significant harm to Coomer within the State of Colorado because his reputation with his Colorado employer has been damaged, he has received death threats in Colorado, his address in Colorado has been broadcast, and he has been required to leave his Colorado home for his safety.

Because the alleged defamatory statements concern a Colorado resident, who is alleged to have admitted in a conference call that took place in Colorado, that he had used his position with a Colorado company to ensure the election defeat of Donald Trump, they necessarily were of particular interest to a Colorado audience.

<u>Minimum Contacts</u>:

Metaxas has had the following direct contacts with Colorado: Metaxas interviewed Colorado resident Oltmann two times (November 24 and 25, 2021). Colorado is the state with the most radio stations (25) broadcasting Metaxas's radio show.

(1)   *Are defendant's contacts related to the plaintiff's cause of action?*

Yes.  Metaxas was actively involved efforts in Colorado designed to amplify Oltmann's statements regarding Coomer. Metaxas reached out to Oltmann in Colorado for purposes of conducting two interviews with Oltmann. Metaxas then directed statements at Colorado audiences, alleging election fraud generally, and alleging election fraud against Coomer (a Colorado resident) specifically.

(2)   *Do defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum?*

Yes. Metaxas published the allegedly defamatory statements in Colorado.  *See Calder v. Jones, supra* and *Gilmore v. Jones*, 370 F.Supp.3d 630, 657-68) (W.D. Va. 2019).

(3)   *Based on the nature of the contact(s) should the defendant reasonably anticipate being haled into court in Colorado?*

Yes. Metaxas published the allegedly defamatory statements in Colorado. Additionally, Coomer has alleged that Metaxas conspired with Colorado residents to spread the allegedly defamatory statements.

<u>Fair Play and Substantial Justice</u>:

(1)   *Burden on the defendant:*

The Court finds that there is a burden on Metaxas to litigate in Colorado. However, because Metaxas has been able to participate in court proceedings remotely via WebEx, the Court finds that the burden on Metaxas is not greater than the other factors to be balanced.

(2)   *Colorado's interest in adjudicating the dispute:*

The Court finds that Colorado has a strong interest in adjudicating the dispute. The alleged defamatory statements were aimed at a Colorado resident (Coomer) and negatively impacted a company with headquarters and employees in Denver, Colorado. Coomer has been forced to go into

hiding as a result of threats made by members of the public that heard the statements that are the subject of this action. Moreover, the harm caused by the statements have extended beyond Coomer and Dominion. As previously referenced, threats have been directed at the entire town of Salida, Colorado as a result of the calls for citizens to "find the traitor." Finally, the statements were received by Colorado residents who had their faith in the election process eroded by claims of election fraud. *See Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 776 (1984) (false statements of fact harm both the subject of the falsehood and the recipients of the false statements).

(3)     *Plaintiff's interest in obtaining convenient and effective relief*:

Plaintiff has brought an action against fourteen defendants, four of which are residents of Colorado (Oltmann, FEC United, Shuffling Madness, and Malkin). Because Oltmann, a Colorado resident, was the initial source of the alleged defamatory statements, and because Coomer, a Colorado resident has been harmed in Colorado by the statements, Colorado is the jurisdiction best suited to hear this action. Because Metaxas engaged in conduct with Colorado as a focal point, it is appropriate for Colorado to exercise specific personal jurisdiction over Metaxas in this matter.

## Chanel Rion ("Rion")

Calder Effects Test:

The Court finds that, although Rion's communications were intended for a national audience, the communications nonetheless had a focus on Colorado, were aimed at citizens of Colorado, and the harms associated with the statements were felt in Colorado. The Court finds that Colorado was the focal point of the alleged defamatory statements and conduct for the following reasons.

Defendant Oltmann was the initial source of the election fraud allegations against Coomer.  There is no credible claim that there has been any other source of the statements that Coomer participated in an Antifa Conference Call and stated that he had made sure that Donald Trump would not win the 2002 election. Oltmann, a resident of Colorado, claimed to have intercepted a conference call between Colorado Antifa activists (as part of his efforts to uncover members of the Colorado media that were involved with Antifa). Oltmann initially broadcast his claims about Coomer from his studio in Colorado. Oltmann's claims were then picked up by Defendants, including Rion, and disseminated to a national audience, which included Colorado residents. The allegedly defamatory statements created significant harm to Coomer within the State of Colorado because his reputation with his Colorado employer has been damaged, he has received death threats in Colorado, his address in Colorado has been broadcast, and he has been required to leave his Colorado home for his safety.

Because the alleged defamatory statements concern a Colorado resident, who is alleged to have admitted in a conference call that took place in Colorado, that he had used his position with a Colorado company to ensure the election defeat of Donald Trump, they necessarily were of particular interest to a Colorado audience.

Minimum Contacts:

Rion has had the following direct contacts with Colorado: Rion interviewed Colorado resident Oltmann regarding his claims regarding Coomer and broadcast that interview on November 21, 2020 and again on November 22, 2021. During her interview of Oltmann, Rion made the following specific statement directed to Colorado resident, Coomer, "if Coomer is investigated and found to have indeed tampered with a presidential election, such an action could be tried for treason."

(1)   *Are defendant's contacts related to the plaintiff's cause of action?*

Yes.  Rion was actively involved efforts in Colorado designed to amplify Oltmann's statements regarding Coomer. Rion reached out to Oltmann in Colorado for purposes of conducting her interview of Oltmann. Rion then directed statements at Colorado audiences, alleging election fraud generally, and alleging election fraud against Coomer (a Colorado resident) specifically. Rion suggested that Coomer could be tried for treason.

(2)   *Do defendant's contacts involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum?*

Yes. Rion published the allegedly defamatory statements in Colorado.  *See Calder v. Jones, supra* and *Gilmore v. Jones*, 370 F.Supp.3d 630, 657-68) (W.D. Va. 2019).

(3)   *Based on the nature of the contact(s) should the defendant reasonably anticipate being haled into court in Colorado?*

Yes. Rion published the allegedly defamatory statements in Colorado. Additionally, Coomer has alleged that Rion conspired with Colorado residents to spread the allegedly defamatory statements.

Fair Play and Substantial Justice:

(1)   *Burden on the defendant:*

The Court finds that there is a burden on Rion to litigate in Colorado. However, because Rion is a national news reported that has traveled to

Colorado for at least one week-long ski vacation, the Court finds that the burden on Rion is not greater than the other factors to be balanced.

*(2)     Colorado's interest in adjudicating the dispute:*

The Court finds that Colorado has a strong interest in adjudicating the dispute. The alleged defamatory statements were aimed at a Colorado resident (Coomer) and negatively impacted a company with headquarters and employees in Denver, Colorado. Coomer has been forced to go into hiding as a result of threats made by members of the public that heard the statements that are the subject of this action. Moreover, the harm caused by the statements have extended beyond Coomer and Dominion. As previously referenced, threats have been directed at the entire town of Salida, Colorado as a result of the calls for citizens to "find the traitor", echoing Rion's statements regarding Coomer being tried for treason. Finally, the statements were received by Colorado residents who had their faith in the election process eroded by claims of election fraud. *See Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 776 (1984) (false statements of fact harm both the subject of the falsehood and the recipients of the false statements).

*(3)     Plaintiff's interest in obtaining convenient and effective relief:*

Plaintiff has brought an action against fourteen defendants, four of which are residents of Colorado (Oltmann, FEC United, Shuffling Madness, and Malkin). Because Oltmann, a Colorado resident, was the initial source of the alleged defamatory statements, and because Coomer, a Colorado resident has been harmed in Colorado by the statements, Colorado is the jurisdiction best suited to hear this action. Because Rion engaged in conduct with Colorado as a focal point, it is appropriate for Colorado to exercise specific personal jurisdiction over Rion in this matter.

For the foregoing reasons, the Court **DENIES** the Defendants' C.R.C.P. 12(b)(2) Motions to Dismiss.  The Court is aware that all of the Defendants have also brought motions to dismiss pursuant to C.R.C.P. 12(b)(5), but those motions will be addressed in a separate Order issued in due course.

**SO ORDERED** this Monday, June 21, 2021.


BY THE COURT:

Marie Avery Moses
District Court Judge