```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA


US DOMINION, INC.,
                                             CV Action
              Plaintiff,                     No. 1:21-2130

         vs.                                 Washington, DC
                                             April 20, 2022
HERRING NETWORKS, INC., et al,
                                             11:02 a.m.
              Defendants.
_____/


              TRANSCRIPT OF IN-PERSON ORAL ARGUMENT
              BEFORE THE HONORABLE CARL J. NICHOLS
                  UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Plaintiff:       MEGAN MEIER
                         DUSTIN PUSCH
                          CLARE LOCKE LLP
                          10 Prince Street
                          Alexandria, VA 22314
                          202-628-7406


                         KATHERINE PEASLEE
                          SUSMAN GODFREY LLP
                          1201 Third Avenue, Suite 3800
                          Seattle, WA 98101
                          206-505-3828


                         JUSTIN NELSON  (by telephone)
                          SUSMAN GODFREY LLP
                          1000 Louisiana Street, Suite 5100
                          Houston, TX 77002
                          713-653-7895
```

APPEARANCES (CONT'D.)

**For the Defendant:**       **BLAINE KIMREY**
                            **BRYAN CLARK**
                            **JEANAH PARK**  (by telephone)
                             VEDDER PRICE P.C.
                             222 North LaSalle Street, Ste 2200
                             Chicago, IL 60601
                             312-609-7865


                            **BRIAN McCALMON**  (by telephone)
                             VEDDER PRICE P.C.
                             1401 New York Avenue NW, Ste 500
                             Washington, DC 20005
                             202-312-3320


**Also Present:**            **CHARLES HERRING**  (by telephone)
                            **ROBERT HERRING**  (by telephone)




**Reported By:**             **LORRAINE T. HERMAN, RPR, CRC**
                             Official Court Reporter
                             U.S. District & Bankruptcy Courts
                             333 Constitution Avenue, NW
                             Room 6720
                             Washington, DC 20001
                             202-354-3196


*** Proceedings recorded by stenotype shorthand and this
    transcript was produced by computer-aided
    transcription.

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3    civil case year 21-2130, US Dominion, Inc. versus Herring

4    Networks, Inc., et al.

5          Counsel, please introduce yourselves beginning

6    with the plaintiff.

7          **THE COURT:**  And, Counsel, my general rule in the

8    courtroom these days is whoever is at the podium should feel

9    free to, and I actually would request, to take off your

10   mask.  It's easier for the court reporter to hear you, me,

11   opposing counsel, and then when you are seated back at

12   counsel table, just please put your mask back on.  Thank

13   you.

14         **MS. PEASLEE:**  Good morning, Your Honor.  Katherine

15   Peaslee, Susman Godfrey, on behalf of Dominion.  Good

16   morning.

17         **THE COURT:**  Good morning.

18         **MS. MEIER:**  Good morning, Your Honor.  This is

19   Megan Meier of the law firm Clare Locke, LLP, on behalf of

20   Dominion.  And with me today is my colleague Justin Pusch.

21         **THE COURT:**  Good morning, Counsel.

22         **MR. NELSON:**  Good morning.  This is Justin Nelson

23   from Susman Godfrey, appearing by phone.  Thank you, Your

24   Honor.

25         **THE COURT:**  Good morning, Mr. Nelson.

1          **MR. KIMREY:**  Good morning, Your Honor.  I'm Blaine

2     Kimrey.  Lead counsel for defendants in this case.

3          **MR. CLARK:**   And Bryan Clark of Vedder Price, also

4     on behalf of defendants.

5          **THE COURT:**  Good morning, Counsel.

6          We are obviously here on defendants' Motion to

7     Dismiss, Stay or Transfer.  I would like to treat this as a

8     traditional oral argument; that is to say, to hear from

9     defendant's counsel.  I don't have a particular time set in

10    my mind, at least.  Obviously we don't have a clock or

11    anything.  I suspect that we can be done today in an hour or

12    less.  But I don't want to limit your argument in any way.

13    I will have questions, of course.  Then I'll hear from

14    plaintiff's counsel and then I'll give you a short rebuttal.

15         So with that, Mr. Kimrey will you be presenting

16    argument?

17         **MR. KIMREY:**  I will, Your Honor.

18         **THE COURT:**  Please feel free to come on up.

19         **MR. KIMREY:**  Feels so nice having the mask off.

20    It's hot.

21         Again, Your Honor, I'm Blaine Kimrey from Vedder

22    Price in Chicago.  I am lead counsel for defendants in this

23    case.

24         Just to give you some context, I am also lead

25    counsel in the *Smartmatic* case that is pending before Your

1      Honor.  I'm also lead counsel in the *Coomer* case that's

2      pending in Colorado.  And I lead the arguments for the

3      Herring defendants at the anti-SLAPP hearing in Colorado on

4      October 14th and 15th of last year.  So I'm intimately

5      familiar with that proceeding, as well as the briefing

6      situation in the *Smartmatic* case.

7              This case and the *Coomer* case are essentially,

8      Your Honor, the same case.  They don't need to be mirror

9      images of each other for Your Honor to grant the relief

10     we've requested here today and in our briefing, they just

11     need to be substantially similar and they definitely are.

12             What is the core issue or what are the core issues

13     in the two cases?  The core factual issues relate to whether

14     Dominion voting systems -- and as Your Honor knows, Dominion

15     is one of the largest voting software and hardware companies

16     in the country -- whether Dominion voting systems were

17     reliable during the 2020 presidential election and whether

18     they were secure.  That was the news-worthy issue that was

19     being covered by not only One American News network,

20     otherwise known also OAN, but also CNN, HBO, Fox, Newsmax,

21     MSNBC, et cetera.

22             All news outlets on the left, right, straight down

23     the middle were all covering this issue.  And Dominion's

24     complaint is that the reporting related to the security or

25     lack thereof or reliability or lack thereof of its equipment

1    gave rise to liability and damages for defamation and we

2    disagree.

3            Dr. Coomer -- he has a PhD from Berkeley and he

4    likes to be referred to as doctor, so we call him doctor.

5    He is a doctor -- PhD.  He has characterized himself as the

6    face of Dominion with respect to this controversy.  He did

7    that in his proposed findings of fact and conclusions of law

8    before Judge Moses in the Colorado State Court case, which

9    is pending in Denver District Court.  And he did that

10   because he wanted to argue under defamation law that

11   comments about Dominion that didn't specifically refer to

12   him were of and concerning him, even though they didn't

13   specifically say, "Dr. Coomer."  So it's a benefit to him,

14   under the "of and concerning" doctrine, to say all comments

15   related to Dominion are comments related to him.

16           Now we disagree on the "of and concerning" issue;

17   however, that is important for purposes of assessing the

18   overlap between the two cases.  Because Dr. Coomer says, in

19   the Colorado case, not only statements made by OAN or people

20   covered by OAN about him, subject to his defamation claims,

21   but so are statements about Dominion.  And that makes sense,

22   to a certain degree -- not under the "of and concerning"

23   doctrine but more generally -- because Dr. Coomer was the

24   director of product strategy and security for Dominion back

25   during the election in 2020.  And he was rolled out by

Dominion as the lead testifier for Dominion in addition to

CEO, John Poulos, about Dominion's security and Dominion's

reliability.

And Dr. Coomer, both before and after the

election, took on a very public role with respect to

Dominion.  He actually holds several patents in the relevant

technology.  He used to be at Sequoia.  And if this case

remains before this Court, which we don't think it should,

but if it does, we will educate the Court eventually about

the connections among Dominion, Sequoia and Smartmatic.

They are connected.

I know a lot of people have criticized Sidney

Powell for drawing those connections.  And she may not have

drawn those connections quite 100 percent accurately, but

they are connected?  And Dr. Coomer is part of that

connection because he started at Sequoia, which used to be

owned by Smartmatic, and eventually was acquired by

Dominion.  So when Dominion acquired Sequoia, Dominion, in

essence, acquired Dr. Coomer.

And then Dr. Coomer was rolled out to testify, for

instance, in Georgia with respect to alleged voting

irregularities to CISA with respect to election voting

irregularities.  So it's not like he's some tertiary,

inconsequential, former employee of Dominion.  He, during

the election, was held out by Dominion as the person to

1    refute the allegations against Dominion related to voting

2    and security and election fraud; and that's why there is

3    this overlap.  Both cases --

4              **THE COURT:**  Is it your view that -- I think you

5    said this in your brief -- issues that are determined

6    against Dr. Coomer would have preclusive effect as to

7    Dominion?

8              **MR. KIMREY:**  Yes.

9              **THE COURT:**  Why?

10             **MR. KIMREY:**  And vice versa.

11             **THE COURT:**  Wait.  Let me just pause you before

12   that answer.  What does vice versa mean?

13             **MR. KIMREY:**  Just as --

14             **THE COURT:**  Are you assuming if Dr. Coomer

15   prevails against the defendants in Colorado, that that would

16   have a conclusive effect on them here?

17             **MR. KIMREY:**  Well, let's break that up, Your

18   Honor.

19             So there's the issue of collateral estoppel and

20   then res judicata.  As to the allegedly defamatory

21   statements that overlap between the two cases, a decision

22   that there is liability or there is damages in the *Coomer*

23   case, on one of those overlapping allegedly defamatory

24   statements, could have a collateral estoppel effect before

25   this court, on those same allegedly defamatory statements.

1          And what I meant by vice versa is if this court

2     were to find liability or damages on the same allegedly

3     defamatory statements that are issued in the *Coomer* case,

4     that could have a collateral estoppel effect as well in the

5     Colorado court.  That's why this court should grant the

6     relief we are requesting, because it's not just an overlap

7     from a collateral estoppel affect or, perhaps, even a res

8     judicata affect as to the allegedly defamatory statements.

9     It's as to all of the factual issues.  All of the discovery

10    is going to be the same, looking into expert analysis of the

11    security of Dominion's systems.

12          **THE COURT:**  Why would -- imagine hypothetically

13    that you prevail in Colorado as to Dr. Coomer, why would

14    Dominion be bound by that, either on an issue or a claim?

15    It's not mutual.

16          **MR. KIMREY:**  Because it's the exact same allegedly

17    defamatory statement.

18          **THE COURT:**  But it's not the same party.  How can

19    one plaintiff be bound to a determination on an issue that

20    it didn't participate in litigation of?

21          **MR. KIMREY:**  Well, eventually Dominion will be

22    participating in the Colorado litigation, if it goes

23    forward.  But it's because they are synonymous.  Coomer

24    alleged, in effect, for purposes of defamation, is Dominion.

25    And that Dominion, meanwhile, has said that allegedly defam-

1      --

2                   **THE COURT:**  You think that's wrong?

3                   **MR. KIMREY:**  I think it's wrong from an "of and

4      concerning" perspective.  But I ultimately don't determine

5      the "of and concerning" issue.  The Court does or the jury

6      does.  So there is the risk that there would be a

7      determination that statements about Coomer are of and

8      concerning Dominion.  That could be the case here.  That

9      could be the case there.  And it's the risk of that that I'm

10     talking about, Your Honor.  Even though I disagree with the

11     "of and concerning" point that Dr. Coomer is making.

12                   Just as in Colorado, *Coomer* puts at issue the

13     special, the OAN special, "Dominion-izing the Vote," so does

14     Dominion here in this case.  Just as Dr. Coomer is squarely

15     at issue in the Colorado case, he's squarely at issue here,

16     Your Honor.

17                   Just as third-party witness -- and, Your Honor, as

18     you know in the 1404(a) analysis -- I'm skipping ahead a

19     little bit.  But in the 1404(a) analysis, courts often find

20     that third-party witness jurisdiction to the subpoena power

21     of the court is the seminal issue.  Right?  Whether you can

22     hail people into court.

23                   This court can't hail Joe Oltmann into this court,

24     because Joe Oltmann is a Colorado resident.  Joe Oltmann is

25     a key witness, because everything kind of started with him.

1      The initial reporting related to his having said that he was

2      on what he referred to as an "Antifa call," in which he

3      heard somebody identify themselves as, "Eric from Dominion,"

4      and that person saying on the call that, "nobody needed to

5      worry about Trump wing because he had taken care of that."

6           That then led to disclosure of his Facebook posts,

7      which were highly right wing, incendiary, violent,

8      et cetera, and lead to acceleration of the reporting and

9      also addressing of the issue by various public figures and

10     public officials.

11          Ron Watkins is another third-party witness.  I am

12     not going to list them all up front here, but these are just

13     samples or examples.  And Ron Watkins is not subject to the

14     subpoena power of this court.  Ron Watkins is featured in

15     "Dominioniz-ing the Vote".

16          With any defamatory case, you start with the

17     allegedly defamatory statements.  In fact, many

18     jurisdictions -- and I think this is one of them -- have

19     adopted the in haec verba doctrine or pleading the alleged

20     defamatory statements with specificity.

21          And as I was preparing for this argument, Your

22     Honor, in my hotel room, I walked through the complaint

23     filed by Dominion in this case.  And I refer Your Honor to

24     Page 154 of the complaint.  And this is kind of convenient

25     because Dominion did set these all out in chronological

1     order for us.  There's been some reference by Dominion to 25

2     allegedly defamatory statements.  There are actually 25

3     categories of allegedly defamatory statements.  And I want

4     to walk through each one of these and show to Your Honor how

5     they have nothing to do with D.C.

6            And by the way, we are unaware of Dominion ever

7     having served the District of Columbia in any way

8     whatsoever.  And Dominion hasn't put that at issue before

9     the Court.

10           Now, if we look at Page 154(a), at the bottom of

11    the page.  Are you there, Your Honor?

12           **BY THE COURT:**  Yes.

13           **MR. KIMREY:**  So this is the first defamatory

14    statement by anyone associated with OAN, on November 12,

15    2020.  This allegedly defamatory statement doesn't refer to

16    a specific jurisdiction.  It definitely doesn't refer to

17    D.C., but it doesn't refer to Michigan or Nevada or Arizona

18    or Georgia or Texas or anything else.  So this allegedly

19    defamatory statement essentially has a national scope.  It

20    does not refer to D.C.

21           Moving on to (b), which is on Page 155, this is

22    November 13, 2020, *The Tipping Point*.  This allegedly

23    defamatory category, I guess, is both national and Michigan.

24    So as you know, Your Honor, or as I imagine you know,

25    because I think we all know at this point, there was a lot

1     of controversy in Antrim County, Michigan, associated with

2     the vote totals.  So a lot of this coverage relates to

3     Michigan.  So here we have allegedly defamatory statement

4     category 2.  It's national in Michigan.  It has nothing to

5     do with D.C.

6            Flipping the page to 156, this is allegedly

7     defamatory statement category number 3 and it refers to

8     Pennsylvania.  It has nothing to do with D.C. at all.

9            Go to 4.  Now here is where Dr. Coomer comes in.

10    Dr. Coomer is initially reported on, according to the

11    Complaint, on November 16, 2020.  In this package called,

12    "Dominion Exec: Trump Is Not Going to Win, I Made F-ing Sure

13    Of It."

14           And here the focus is not D.C., it's Dr. Coomer in

15    Colorado.  And this makes sense because Dominion is

16    headquartered in Colorado.  And Dr. Coomer was living in

17    Colorado when he worked for Sequoia, because Sequoia was

18    based in Colorado as well, and when Dominion acquired

19    Sequoia, it acquired Dr. Coomer.  It has a Colorado nexus.

20           So moving on to number 5, this is Page 158,

21    allegedly defamatory statement category number 5.  This is

22    North Carolina.  It has nothing to do with D.C.

23           Number 6 --

24           **THE COURT:**  Can I just ask you a question?

25    Ms. Rion --

1          **MR. KIMREY:**  Yes.

2          **THE COURT:**  -- if that's how you pronounce her

3     name -- when she made these statements, where was she

4     physically?

5          **MR. KIMREY:**  Chanel Rion, Your Honor, is a

6     resident of Washington, D.C.

7          **THE COURT:**  And the statements, at least some of

8     the statements in these paragraphs, were made here in D.C.?

9          **MR. KIMREY:**  That's correct, Your Honor.  And that

10    is a fact that is inconsequential under the relevant

11    analysis.  I mean, definitely something to point out and

12    something that Dominion has pointed out.  But those

13    statements don't dictate what law applies, what forum is

14    appropriate.

15          And, Your Honor, this is something that we

16    highlight in our Smartmatic briefing.  And I will

17    acknowledge that we did not highlight it, just because of an

18    oversight, in our Dominion briefing.  But D.C. is unusual in

19    that it's recognized in exception to personal jurisdiction

20    for news gathering.

21          So the theory here is that every news outlet has a

22    bureau in D.C. or many do.  Every news outlet has a White

23    House correspondent, or many do, and because of the national

24    significance, the national federal significance of D.C., the

25    District of Columbia has found, We are not going to subject

1    people to personal jurisdiction, companies to personal

2    jurisdiction, just because they broadcast -- you know -- or

3    let me step back -- just because they are videotaped by a

4    camera from the White House lawn.

5              Now, the reason I just stepped back, Your Honor,

6    is I was about to say, "broadcast from the White House

7    lawn."  OAN does not broadcast from the White House lawn.

8    OAN -- and you can see this with satellite images, if you

9    look at OAN in San Diego.  All of OAN's broadcasts via

10   satellite is done out of San Diego.

11             So, basically, Chanel would shoot her headshot, or

12   whatever you want to call it, and she would then ship it to

13   San Diego for a producer to then incorporate that into a

14   larger piece.  So that's what happened with much of

15   "Dominioniz-ing the Vote."  So some of that, at least, was

16   shot in D.C. of Chanel Rion, but it wasn't broadcast out of

17   D.C.  It was then shipped off digitally to San Diego, put

18   together, you know, sliced and diced, and then broadcast out

19   of the satellite from San Diego to the universe.

20             So I'm not going to -- there are a lot of

21   allegedly defamatory statements here, Your Honor.  If you go

22   through each and every one of the 25 categories, you will

23   see that none of them mentions the District of Columbia at

24   all, has any relationship to the District of Columbia at

25   all, for purposes of abstention analysis, 1404(a), transfer

1    analysis for personal jurisdiction.

2              Just like any other media entity, OAN has a White

3    House correspondent in Chanel Rion.  Also, I represent,

4    Christina Bobb in this matter.  She is another personality,

5    OAN personality, who also resides in Washington, D.C.  And

6    you'll note, Your Honor, we don't challenge personal

7    jurisdiction as to the two of them, Ms. Rion and Ms. Bobb,

8    because they are arguably subject to general jurisdiction,

9    given their domicile.  So we only challenge personal

10   jurisdiction as to OAN, Charles Herring, who is on the phone

11   right now, and Robert Herring, who is on the phone right

12   now.

13             So what I've shown here, Your Honor, is if you go

14   through all of these 25 categories of allegedly defamatory

15   statements, you see they have nothing to do with D.C.

16             You also see that this drum beat related to

17   Dr. Coomer is repeated throughout.  And you may not see it

18   by reference to Dr. Coomer in what Dominion put in the

19   complaint.  But any time you see "Dominioniz-ing the Vote"

20   being rebroadcast, that is Dr. Coomer, because Dr. Coomer is

21   featured in "Dominioniz-ing the Vote."

22             So Dominion itself concedes in the complaint --

23   and this is at Paragraph 56, Your Honor -- that local

24   election officials run elections.  So the federal government

25   doesn't run -- doesn't dictate what hardware or software is

1  used by the State of Michigan.  The federal government

2  doesn't dictate what hardware and software is used by the

3  State of Texas.  This is an inherently localized issue.

4          Dominion is trying to federalize it by saying,

5  Yeah, but you were covering the President of the United

6  States, Donald Trump.  Or you were covering Rudy Giuliani,

7  one of Trump's lawyers, saying certain things in Washington,

8  D.C.  But that's not how defamation law works.

9          And Rodney Smolla -- I've been reading Rodney

10  Smolla's treatise since 1997.  Mr. Smolla, I will

11  acknowledge is one of the foremost academics on defamation

12  law.  His treatise, along with Bob Sachs' treatise, is

13  something we often read as defamation defense lawyers and

14  media lawyers.  You can draw a rough analogy to, perhaps,

15  Wright and Miller -- you know, for federal courts.

16          **THE COURT:**  I am familiar with it.

17          **MR. KIMREY:**  So he has -- his name is on the

18  pleadings in this case.  I don't think he's admitted in D.C.

19  And I don't think he actually signed the response to our

20  Motion to Dismiss, Stay or Transfer.  But he's definitely on

21  the pleadings.  He's definitely on the docket.

22          And he says in his treatise -- and again, you

23  know, this ties into this local nature of the elections, at

24  Paragraph 56 of the Complaint, that typically in a

25  defamation case, the law of the domicile of the person

1   defamed or the entity defamed, is what controls.  And the

2   domicile of Dominion is Colorado.  Dominion even pleads that

3   in the Complaint.

4         So this is an inherently localized issue, you

5   know, security, reliability, fraud in elections.  It

6   involves Dominion voting machines and software.  Dominion is

7   based in Colorado.  And Dominion itself, on its website,

8   says that it serves 62 of 64 counties in the State of

9   Colorado.  Meanwhile, it doesn't serve anybody in D.C.  So

10  where is the locus of the alleged damage in this case?  It's

11  not D.C., by any stretch of the imagination.  It's

12  definitely Colorado, where Dominion is based, where its

13  reputation is headquartered and where it serves 62 of the 64

14  counties in the state.

15        **THE COURT:**  And, obviously, there's a litigation

16  pending there now, of course.  And as you mentioned the

17  hearing on the anti-SLAPP motion was conducted in

18  mid-October.  No decision on that I assume yet.  Correct?

19        **MR. KIMREY:**  That's correct, Your Honor.

20        **THE COURT:**  Do you have a sense -- has there been

21  any indication from the Court about when a ruling would be

22  expected?

23        **MR. KIMREY:**  Every time I talk about something

24  like this an order drops.  So I'm a little nervous, a little

25  paranoid.  At any moment.  It's fully briefed.  There's

1    nothing left for the Court.  The trick is -- you know, it's

2    a challenge for Judge Moses because there are so many

3    defendants.  She needs to write, probably, several

4    anti-SLAPP opinions.  I thought that by now we would have a

5    ruling.  But there's nothing like a Biden notice that would,

6    you know, serve as a catalyst.

7          The time period for a ruling, under the anti-SLAPP

8    statute has long passed and so -- you know, any day now.

9          **THE COURT:**  I think it goes without saying, but I

10   will say it anyway, and this is to all of the parties.  If a

11   ruling does issue --

12         **MR. KIMREY:**  Yes.

13         **THE COURT:**  -- I would expect a notice of

14   something from one party or the other or both.

15         **MR. KIMREY:**  Yes, Your Honor.  We will definitely

16   let you know when we get a ruling.  So --

17         **THE COURT:**  Let me ask a related question, which

18   is, given the D.C. Circuit's anti-SLAPP decision by

19   then-Judge Kavanaugh, if this case stays here and obviously

20   if the case in Colorado, as litigated in Colorado, aren't at

21   least some of the relevant standards going to be different

22   because of the anti-SLAPP application in Colorado?

23         **MR. KIMREY:**  Absolutely.  And that's not the only

24   law that is different.  So let me address anti-SLAPP first.

25   You're right.  The D.C. Circuit has clearly held that the

1    District of Columbia anti-SLAPP statute doesn't apply in

2    federal court.  That issue has not gone up to the U.S.

3    Supreme Court yet, but that's definitely precedent for this

4    Court because you are sitting in the District of Columbia

5    and appeals go up to that circuit.  That is why we haven't

6    raised it as an issue here, because of that circuit-level

7    precedent.

8         Meanwhile, in Colorado, there is an anti-SLAPP

9    statute that has been applied in the federal court.  And the

10   Colorado's anti-SLAPP statute is fairly new.  It's almost

11   identical.  Not totally but almost identical to California

12   anti-SLAPP statute.  So Colorado courts are now looking to

13   California for application of the Colorado anti-SLAPP

14   statute in citing District-level, Circuit-level opinions

15   from California.

16        And California courts have applied the state

17   anti-SLAPP statute in federal court, under certain

18   circumstances.  It basically boils down to whether you see

19   it as properly or substantive, the *Erie* Doctrine, et cetera.

20   The California courts have not said, like the D.C. Circuit,

21   No way.  No how.  The statute doesn't apply here.  They

22   applied it federally.  So that's a huge distinction between

23   Colorado and D.C.

24        Another major distinction is that in the

25   diversified decision in Colorado, the Colorado Supreme Court

1    found that the plurality opinion in *Rosenbloom* applies to

2    matters of public concern.  So what does that mean?  *New*

3    *York Times versus Sullivan*, 1967.  So actual malice is

4    applied to public officials.  It then gets extended to

5    public figures.  Then it gets extended to matters of public

6    concern in the *Rosenbloom* plurality.  The U.S. Supreme Court

7    in *Gertz* said, Ignore that plurality.  We are not going to

8    extend actual malice to matters of public concern.  Colorado

9    said, Well, we have broader free speech protections than

10   under the federal constitution.  So we are going to maintain

11   the vitality of *Rosenbloom*.  We are not going to follow

12   *Gertz*.  And that means not only for public officials, not

13   only for public figures, but also for matters of public

14   concern, we are going to recognize the actual malice

15   standard.

16          That matters here because Dr. Coomer has argued in

17   Colorado that he is a private figure.  We disagree with

18   that.  We say he is a public figure because of all of the

19   public advocating he did on this very issue for Dominion.

20   But, you know, we could -- I don't think we should lose, but

21   we could theoretically lose on that.

22          And then we turn to, Is election fraud a matter of

23   public concern?  Yes, it is.  So it doesn't matter if

24   Dr. Coomer is a public figure or not, because we have public

25   concern and we have actual malice; and that standard,

1    obviously, is very important to us in this case because

2    rather than showing negligence, Dominion would have to show

3    knowing falsity or reckless disregard for the truth.  And

4    there's no evidence, at all, that OAN in its reporting,

5    engaged in knowing falsity or reckless disregard for the

6    truth.  So these are two critical issues that are different

7    between D.C. and Colorado.

8         I'd like to take a deeper dive, Your Honor, on

9    abstentia.  *Colorado River* absentia.  I still have my

10   federal courts casebook flagged and highlighted from federal

11   courts with Charles Alan Wright.  I actually took him when

12   he was fairly senior but still sharp.  It was an amazing

13   class.  And I was introduced to the doctrines of abstention

14   in his class.  One of those doctrines is *Colorado River*

15   abstention.  We have a disagreement with Dominion about the

16   first factor or the first consideration, which is the degree

17   to which there has to be overlap between the state case and

18   the federal case.

19        Case law across the country has found that you

20   don't need an absolute mirror image; that you can have

21   substantial similarity.  They say, Hey, you don't even have

22   substantial similarity because Dominion is not a party in

23   the Colorado case.

24        Well, that's a distinction without a difference

25   because Coomer says he has Dominion in the Colorado case,

1    the same allegedly defamatory statements are at issue, to a

2    certain degree, the same whole factual scenario is at issue,

3    the same witnesses are at issue.  And, if we lose on the

4    anti-SLAPP motion, and we lose all of the way up to the

5    highest level of appeal, we are going to third-party in

6    Dominion in the case.  We haven't answered yet, but we are

7    going to third-party Dominion in.

8         If we win in the Colorado State Court case,

9    Dominion should still have to litigate in federal court in

10   Colorado because of the pendency of the state court case and

11   the pendency of the other federal cases in Colorado, and the

12   fact that this case really has, at its core nexus, the State

13   of Colorado.  So we have sufficient overlap, Your Honor, for

14   purposes of application of *Colorado River* abstention.

15        I just quote, this is Coomer -- Exhibit A to our

16   Reply, Your Honor, which is the Proposed Findings of Fact

17   and Conclusions of Law by Dr. Coomer in the Colorado case.

18   And this is at Paragraph 71 and 185 of those Findings of

19   Fact and Conclusions of Law.  He says, and I quote, "I am

20   the face of the Dominion conspiracy theory."

21        In OAN's coverage, no discernible distinction

22   between references to Dr. Coomer and Dominion existed.  And,

23   moreover, you know, again, courts have been clear, even Your

24   Honor has been clear, that for abstentia to apply -- and

25   this was in the *Jefferson-11th Street* case, Your Honor,

1   which you are shaking your head so I won't cite it to you,

2   but it's cited in the briefs, this Court found -- I believe

3   it was *Burford* abstention, not *Colorado River* abstention.

4   But nevertheless, this Court found that you don't need

5   complete mirror image symmetry for purposes of application

6   of abstention doctrines.  So we have sufficient overlap

7   here.

8          Other factors to consider, Your Honor, number 1,

9   location of property.  Okay.  So that's a non-issue because

10  this is not a property case.  There is no "res" in this

11  case.

12         Number 2, inconvenience of the forum in which the

13  case is pending.  This forum is highly inconvenient, first

14  and foremost, because of what is going on in the Coomer

15  case.  It's going to be a mess, if this case moves forward,

16  while that case moves forward in Colorado.  And that,

17  frankly, even though Dominion won't concede this, that's

18  inconvenient for everybody.  It's inconvenient for all the

19  parties.  It's inconvenient for the judges in both

20  jurisdictions.  It's clearly inconvenient.

21         Additionally, it is inconvenient for Charles

22  Herring and Robert Herring and OAN.  The Herrings -- so OAN

23  is a family-owned company.  And it is largely run by Robert

24  Herring, who is the father and patriarch, serial

25  entrepreneur.  And Charles Herring, one of his sons, and

1    Bobby Herring, another son.  They are San Diegoans.

2            **THE COURT:**  Why couldn't they have been sued in

3    the first instance in Colorado?

4            **MR. KIMREY:**  I'm sorry, Your Honor.  Could you

5    repeat that?

6            **THE COURT:**  Why couldn't they, the Herring

7    defendants, the individual defendants, why would a court

8    have concluded that it had personal jurisdiction as to those

9    two, for my purposes -- for purposes of thinking through the

10   transfer question?

11           **MR. KIMREY:**  Okay.  So under *Walden*, what we look

12   at, U.S. Supreme Court case, is contacts directed at the

13   jurisdiction.  Right?

14           So if I were the judge, and I was going to find

15   that personal jurisdiction existed over the defendants here

16   in the Colorado case, what I would say is, it's obvious and

17   notorious that Dominion is based in Colorado.  And when you

18   allegedly defame a company based in Colorado, you are

19   intentionally engaging in conduct targeted at that --

20           **THE COURT:**  The jurisdiction.

21           **MR. KIMREY:**  Yeah, at that jurisdiction.  And

22   that's effectively what Judge Moses found as to Chanel Rion,

23   because Chanel is a defendant in that case, we attached to

24   one of our pleadings that finding.

25           So just as the Court found personal jurisdiction

1    over Chanel Rion in Colorado, it would have found, I predict

2    -- you never know.  Right?  I can't read judicial minds, but

3    most likely the Court would have said, same analysis applies

4    to Charles Herring, same analysis applies to Robert Herring,

5    same analysis applies to Christina Bobb.

6         And there is a fundamental distinction, right,

7    Your Honor, Dominion is sitting there being allegedly harmed

8    in Colorado.  Dominion isn't sitting in D.C. being allegedly

9    harmed.  Right?  They are not even here.  I know they have

10   counsel here in this courtroom right now, but they have

11   never served the District of Columbia with any software or

12   hardware, you know, from the beginning of time to the

13   present.  So that's a fundamental distinction.

14        Again, going to the San Diego point.  It's

15   inconvenient for them here.  Also, it doesn't comport with

16   due process.  It's fundamentally unfair to held [sic] them

17   into this jurisdiction.  I think that is part of the D.C.

18   has recognized the news gathering exception to the D.C.

19   long-arm statute.

20        Likelihood of piecemeal litigation.  Again, I am

21   under abstention.  There is high likelihood of piecemeal

22   litigation, as I highlighted.  The order of jurisdiction.

23   The Colorado case, Your Honor, was filed eight months before

24   this case was filed.  So I don't know why Dominion did what

25   it did, but as you know, Dominion sued Rudy Giuliani, Mike

1    Lindell, Sidney Powell.  All of those cases are before you.

2    They went through full briefing on a Motion to Dismiss.  You

3    denied the Motion to Dismiss.  That all happened.  Where

4    were we?  We hadn't been sued yet.  Why?  I don't know.

5    Maybe they were waiting to see what was going to happen in

6    the Colorado case.  I don't know why they did that.

7    Incidentally, at that time Dr. Coomer filed this case in

8    Colorado, he was still employed by Dominion.

9         Anyway, order of jurisdiction.  Clearly

10   jurisdiction attached in Colorado long before we were sued

11   here.  And I believe that the delay in suing us has -- you

12   know, it's not like the allegedly defamatory statements

13   weren't made until right before the complaint was filed.

14   Right?  We were making allegedly defamatory statements back

15   in November of 20 -- 20 -- what's the first -- 2020.  So

16   they sat on it for whatever reason.

17        I think that this Court became much more

18   attractive to Dominion probably after the Court issued its

19   dismissal opinion.  And that might have had something to do

20   with the suits that then got filed after that opinion was

21   issued, Your Honor.

22        Next factor, state versus federal law.  I already

23   highlighted that.  There are two fundamental distinctions,

24   at least, with respect to anti-SLAPP application, and with

25   respect to ongoing vitality of the *Rosenbloom* plurality, be

1    it diversified in Colorado, which stands in stark contrast

2    to *Gertz* in federal court.

3              Finally, protection of parties' interests.

4    Dominion -- we are asking for this case to go to Dominion's

5    home state.  Dominion says it serves 62 of 64 counties in

6    that state.  The State of Colorado, I think, has a very

7    significant interest in adjudicating this controversy.

8    Particularly given the breadth of free speech protection in

9    Colorado, as reflected by the diversified opinion, ongoing

10   vitality of *Rosenbloom*, and the anti-SLAPP statute.  Which,

11   again, is almost an exact copy of the Colorado anti-SLAPP

12   statute.

13             So all of the factors that matter, except for

14   where the property is located, and that's irrelevant.  So

15   all of the factors that matter support *Colorado River*

16   abstention.  Now, I'm not suggesting, Your Honor, that

17   courts abstain under *Colorado River* abstention lightly.  I

18   recognize that there is a fairly high hurdle you have to

19   achieve.  This is that kind of case, though.  And we've

20   cited to Your Honor a Chicago case, a U.S. Northern District

21   of Illinois case, the *Wolken,* W-o-l-k-e-n, case.  Again,

22   it's just a District Court opinion.  It's not presidential

23   for this court, but it's persuasive, and it's very similar

24   to this situation with a state court defamation case by one

25   party, a federal court defamation case by another party.

1    They are sufficiently similar.  And there the District Court

2    abstained under *Colorado River* abstention.  And it wasn't

3    subject to appeal for whatever reason.

4          Dominion, on the abstention point, makes a big

5    deal about the distinction between dismissal and a stay.

6    And we're, frankly, fine with either, Your Honor.  But we

7    think dismissal is appropriate.

8          This Court did -- the name of the opinion is

9    escaping me right now but this Court did -- and the name of

10   the opinion is escaping me right now.  But this Court did

11   analyze *Quakenbush* in an opinion.  And the Court, in what I

12   see as dicta said, it looks like, if it's an equitable

13   relief claim, we can dismiss it.  If it's damages, we should

14   stay it -- you know, there's really no precedent binding me

15   either way.  I didn't really intend for it all to be

16   dismissed.  So I'm going to stay it.  That was essentially

17   it.

18         The court didn't say, This is the law of the land.

19   The court acknowledged the lack of clarity.  And that lack

20   of clarity, I believe, is highlighted in *Quakenbush* by the

21   concurrence of Kennedy, if I remember.  And he says, Yeah, I

22   can see situations where we would dismiss based on damages.

23   So it's an open question.

24         So this Court has discretion, in our opinion to

25   either dismiss, which would be perfectly fine, or stay

1    pending what occurs in Colorado.  And Dominion may say, But

2    we need justice now.  The house is on fire.  It's not.  If

3    the house were on fire, why didn't they sue OAN when they

4    sued Giuliani and Lindell and Powell?

5            They themselves delayed up until, you know, the

6    running of the statute of limitations.  Right?  So they were

7    in no rush.  They are not seeking a temporary restraining

8    order or a preliminary injunction.  So any claims that they

9    need to go faster than this Court is willing to go, if the

10   Court does stay, should fall on deaf ears.

11           Again, Your Honor, the most efficient thing to do

12   would be to simply dismiss the case and allow the court

13   proceeding to continue in Colorado.  So that's abstention,

14   Your Honor.

15           The Court may say, you know, Abstention, it's kind

16   of a high hurdle.  Maybe I don't want to go there.  Might be

17   subject to appellate scrutiny, depending on which way I go.

18   Could be early appellate scrutiny.  This is where 1404(a) is

19   fantastic, because 1404(a), sometimes referred to as forum

20   non conveniens, although some jurisdictions say they are

21   different.  But 1404(a) gives the Court complete discretion

22   to transfer the matter to another federal court.

23           The factors the courts consider -- and this isn't

24   scientific and, you know, it's kind of -- it's almost like

25   the U.S. Copyright Act.  You can infer use.  You can kind of

1    weigh whatever you want, the way you want, as long as you

2    have reasonable justification.

3            Private interest factors are the plaintiff's

4    choice of forum, the defendant's choice of forum, location

5    where the claims arose, convenience of the parties,

6    convenience of the witnesses and ease of access to the

7    sources of proof.  You've seen this a million times.

8            **THE COURT:**  Granted many and denied many.

9            **MR. KIMREY:**  What?

10           **THE COURT:**  I've granted many transfer motions and

11   I've denied some.  I'm very familiar with the factors.

12           **MR. KIMREY:**  Yes.  Yes.

13           So here, plaintiff's choice of forum, obviously

14   it's here, but -- could you hand me -- thank you -- here the

15   plaintiff's choice of forum should be given slim to no

16   deference because filing here, I think, transparently was

17   forum shopping.  They filed here because of your dismissal

18   decision in the Lindell, Giuliani and Powell cases.

19           They didn't sue Fox News here.  They didn't sue

20   Fox Corp here.  They didn't sue Newsmax here.  They sued all

21   of those entities in Delaware, where those entities are

22   citizens.  Right?  Just like we are a citizen of California.

23           This was a strategic choice.  Why did they do

24   this?  Because they liked your opinion, understandably.  And

25   they liked the fact that the anti-SLAPP statute has been

1     found inapplicable in federal Court by the D.C. Circuit.

2              I have, Your Honor -- so part of the evidence of

3     Smartmatic, Sequoia and Dominion being tied together relates

4     to litigation in the U.S. Southern District of New York,

5     that occurred in 2013, related to Dominion's acquisition of

6     Sequoia.  And, ultimately, there was a bankruptcy in

7     Colorado, of course related to Sequoia, because that's where

8     they are based.  Again, Dominion acquired them.  They are

9     based in Colorado as well.  And another companion case in

10    the Southern District of New York, the Colorado case, was

11    filed first.  Dominion in this case filed a motion under

12    1404(a) to transfer to Colorado.  So it was arguing against

13    Smartmatic in New York that that case should be in Colorado.

14    We would have cited this in our briefing, Your Honor, but I

15    didn't stumble across it until after the briefing, plus we

16    had a page limit.

17             But I have copies of their motion to transfer in

18    2013, and they make several of the same arguments we make.

19    One of the arguments they make, which is what I'm on right

20    now, is plaintiff's choice of forum.  And what they say is,

21    Smartmatic's choice of forum, in the U.S. Southern District

22    in New York, is entitled to no deference, because Smartmatic

23    was engaging in forum shopping by filing that suit as a

24    hedge against the bankruptcy in Colorado, in New York.  And

25    this factor, under 1404(a), should not weigh in Smartmatic's

1    favor because of that forum shopping.

2             I have copies flagged.  I can provide them to Your

3    Honor.

4             **THE COURT:**  Please.

5             **MR. KIMREY:**  May I approach?

6             **THE COURT:**  Yes.  You can hand it to the courtroom

7    deputy.

8             **MR. KIMREY:**  I flagged, Your Honor, the relevant

9    provisions.  And these provisions show Dominion's arguing --

10   this is the second circuit, not the D.C. Circuit.  This

11   notion that in the event of forum shopping, you shouldn't

12   give deference to the plaintiff's forum, replicates across

13   all circuits.

14            **THE COURT:**  It's not particularly persuasive to

15   me, I must say, that one party took a position nine years

16   ago in different issues and different litigation, that is

17   arguably inconsistent at a high-level of generality with the

18   position they are taking now.  So I wouldn't dwell on this.

19            **MR. KIMREY:**  I will not.  But take a look, Your

20   Honor.  So anyway, choice of forum shouldn't be given any

21   deference.

22            Next item, defendant's choice of forum.  Okay?

23   You know what that is, that is Colorado.

24            Location where the claims arose.  Here Smolla

25   notes in his treatise, that the state with the most

1    significant relationship typically is the domicile of the

2    plaintiff, because that's where their reputation suffers

3    harm.  So location where the claims arose, that's Colorado.

4    Convenience of the parties, again, it's convenient for

5    everybody.  Dominion is based in Colorado.  Convenience of

6    the witnesses.

7              So we, in our reply, Your Honor, go on ad nauseam

8    about multiple, different third-party witnesses who are

9    relevant.  And we did provide support for what they would

10   testify to in our opening brief.  In fact, we gave you

11   affidavits or declarations that had been filed in the

12   Colorado litigation that show what Joe Oltmann would say;

13   that show what Colorado reporter Heidi Beedle would say.

14   That show what Denver School Board member Tay Anderson would

15   say.

16             I, frankly, don't know if I've ever had a Forum

17   non conveniens situation, where we had so many third-party

18   witnesses that were outside the subpoena power of the court

19   from which I was seeking transfer.  So clearly the

20   convenience of the witnesses points towards Colorado.

21             Ease of access to the sources of group.  I will

22   concede, Your Honor, within the past 10 years, courts

23   haven't really focused on this factor very much because

24   everything is digital.

25             **THE COURT:**  Right.

1        **MR. KIMREY:**  But the headquarters is in Colorado.

2    So to the extent there are paper documents, they would all

3    be there at the headquarters probably.  Also, there are an

4    untold number of former employees of Dominion, who likely

5    still live in Colorado, including but not limited to

6    Dr. Coomer, who we would like to depose about issues related

7    to reliability and security of Dominion systems.  And any

8    bias that employees might have at Dominion that could

9    indicate a desire to skew election results.

10        There are also public interest factors under

11   1404(a), as you know Your Honor, the local interest.  Again,

12   Colorado, I've already explained that.  Relative court

13   congestion.  This is always tricky to argue to a judge,

14   because no judge likes to hear that their court is slow.  So

15   I'm not saying that Your Honor, but, you know, the federal

16   judicial statistics do show that cases go to trial faster,

17   for whatever reason, in Colorado generally speaking than

18   they do here.

19        Familiarity with the law.  Okay.  So anti-SLAPP.

20   I mean, this court -- anti-SLAPP doesn't even apply,

21   according to the D.C. Circuit in this court.  Colorado has

22   adapted an anti-SLAPP law that subsumes the entire, at least

23   right now, body of case law from the State of Colorado.

24        Additionally, we have the *Rosenbloom* issue.  Now,

25   obviously, this court could evaluate actual malice because

1    it applies to a public figure and public official.  So is

2    the analysis really that different if you are looking at a

3    matter of public concern.  But this Court may deem things to

4    be or not be a public concern that Colorado would disagree

5    with.  So, you know, there still could be a distinction

6    there.  So all of the factors under 1404(a) weigh in favor

7    of transfer.

8         I'm going to move on to personal jurisdiction

9    unless you have any questions.  Okay.

10        So personal jurisdiction.  Again, I fall on my

11   sword.  We didn't cite the exception in our briefing, the

12   news gathering exception.  We recognized it between the

13   Dominion briefing and the Smartmatic briefing.  It is in the

14   Smartmatic briefing, Your Honor.  It applies, regardless of

15   whether we cite it.  It is the law of D.C.  And I will give

16   you, Your Honor, a citation, *Shirlington Limousine and*

17   *Transportation, Inc. versus* -- coincidentally enough -- *San*

18   *Diego Union-Tribune*, 566 F.Supp. 2d 1, pincite 4, D.D.C.

19   2008.

20        There the court finds despite the availability of

21   the story and the jurisdiction, and despite the fact the San

22   Diego Union Tribune had a bureau in D.C., that didn't

23   subject the San Diego Union Tribune to specific personal

24   jurisdiction in D.C., because of the news gathering

25   exception, because everybody has a bureau here.

1          And this kind of ties into the *Nicastro* case, the

2   U.S. Supreme Court case *J. McIntyre versus Nicastro*, 564

3   U.S. 873, pincite 886.  And in that case the U.S. Supreme

4   Court said it is antithetical to due process to subject

5   people or companies to universal jurisdiction.

6          If having a bureau in D.C. subjected a news entity

7   to specific personal jurisdiction, that would be tantamount

8   to a recognition of universal jurisdiction, because then

9   simply having a bureau anywhere in the United States, would

10  subject you to specific personal jurisdiction.

11         So I read this exception under D.C. law to

12  complement nicely the *Nicastro* warning against the notion of

13  universal jurisdiction.  And the case I cited to you, the

14  *Shirlington* case, that's just a District Court case.  But

15  this notion has been recognized by the Circuit.  And here

16  are a couple of cites for circuit recognition of the

17  exception, the news gathering exception, 62 F.2d 873 and 807

18  F.2d 217.  Both D.C. Circuit decisions, recognizing the news

19  gathering exception, to the exercise of personal

20  jurisdiction.

21         So let's now turn to the actual allegations of

22  personal jurisdiction.  We have to look at the Complaint.

23  They have an obligation to plead a prima facie basis for

24  personal jurisdiction.  Unless and until they do that, the

25  burden doesn't shift to us.  The burden never shifted,

1    because they failed to plead a prima facie case.

2          Their allegations with respect to personal

3    jurisdiction are limited to Paragraphs 43 through 48 of the

4    Complaint.  Six paragraphs total.  This is a 331-paragraph

5    Complaint.  And their allegations with respect to personal

6    jurisdiction, take up only six paragraphs that is testament

7    to the conclusory nature at -- threadbare nature of their

8    allegations.

9          And as to the people in entity on behalf of whom

10   we move to dismiss for failure to properly plead personal

11   jurisdiction, there is just one paragraph as to each.  For

12   OAN it's Paragraph 43, for Robert Herring it's 44 and for

13   Charles Herring it's Paragraph 45.

14         And if you read those, you can see, Your Honor,

15   they are threadbare.  They are conclusory.  They don't

16   establish a prima facie case.  They simply parrot the

17   long-arm statute.  And they are almost identical for each of

18   them.  So as to OAN, they invoke Subsection 1, 3 and 4 of

19   the D.C. long-arm statute.  So that's transacting business,

20   causing tortious injury in the District or causing tortious

21   injury outside the District that affects the District.

22         Those exact same allegations, verbatim, are

23   conclusory, threadbare, are asserted against Robert Herring.

24   So the allegations as to OAN and Robert are identical.  Even

25   though they are clearly separate entities, even though there

1    is a corporate shield doctrine for purposes of personal

2    jurisdiction, they treat OAN and Robert Herring as if they

3    are alteregos, synonymous, et cetera.  As you know, Your

4    Honor, it is hard to establish the alterego doctrine.  And

5    they haven't made any effort to do so here.

6         As to Charles Herring, it's almost identical

7    except that they begin with an allegation based on

8    information and belief related to his Twitter feed and

9    LinkedIn.  Okay.  First of all, information and belief,

10   that's not a prima facie case.  Second of all, he doesn't

11   live in D.C.  He's never lived in D.C.  His Twitter and

12   LinkedIn feed -- those are hearsay, by the way.  And they

13   haven't tried to get over the hearsay exception.  There is

14   no declaration submitted with the Twitter and LinkedIn feed.

15   It's not authenticated.  The Court shouldn't even consider

16   it.

17        Regardless, Charles has always lived in San Diego.

18   He's always had his primary residence in San Diego.

19   Otherwise, the allegations are identical to OAN and Robert.

20   Again, showing that they are conclusory, threadbare.  They

21   are not targeted to the specific individuals.  They failed

22   to make a prima facie showing as to OAN, Robert and Charles.

23   And they have not -- they can't -- regardless, they can't

24   overcome the news gathering exception.

25        So if the Court doesn't abstain, under *Colorado*

1    *River* abstention, either dismissing or staying, or doesn't

2    transfer under 1404(a), the Court should dismiss the

3    Herrings and OAN because of their failure, because of

4    Dominion's failure, to plead a prima facie case of personal

5    jurisdiction.

6         The easiest path, Your Honor, I believe, is the

7    middle one in this case.  So in other words, because of the

8    discretionary nature of 4104(a), the Court can go there

9    without even getting to abstentia.  The Court can get there

10   without even going to personal jurisdiction.

11        I am not saying this because I think our

12   abstention argument is weak.  I think it's extremely strong.

13   I am not saying this because I think our personal

14   jurisdiction argument is weak as to Robert and Charles

15   Herring and OAN.  I think it is very strong.  Particularly

16   given the news gathering exception and the corporate shield

17   doctrine.  What I am saying is the that easiest way, and the

18   way that -- you know, 1404(a) transfer isn't immediately

19   appealable.  Again, it's discretionary.  And even if there

20   were appeals, say you 1292-ed it -- you know, if you follow

21   me -- 28 U.S.C. 1292 -- it's a discretionary review, I

22   believe.  I believe.  Don't hold me do that.  I believe.

23   But regardless, it's not -- it's not appealable, 1404(a) is

24   not appealable on an interlocutory basis.

25        Now, finally, Your Honor, they say in a footnote

1   -- and I don't remember where it is, but there's a footnote

2   somewhere in the brief that says, if you are inclined to

3   agree with them on personal jurisdiction, please allow us

4   jurisdictional discovery.

5          Where plaintiff has failed to plead a prima facie

6   case, and is relying on conclusory allegations, in the

7   complaint with respect to personal jurisdiction, courts

8   regularly deny such a jurisdictional discovery request.  I

9   will give you a couple of cites:  529 F. 3d 1087 and 104 F.

10  3d 1392, those are both D.C. Circuit opinions.  You know,

11  they haven't done enough in the complaint to even get to

12  jurisdictional discovery and, really, the point is moot if

13  the court abstains or if it transfers under 1404(a).

14          I'm happy to address any questions Your Honor has.

15          **THE COURT:**  I like I'd like to hear from

16  plaintiff's counsel, and I will give you an opportunity to

17  rebut.

18          **MR. KIMREY:**  Thank you, Your Honor.

19          **THE COURT:**  Thank you.

20          **MS. PEASLEE:**  Thank you, your Honor.  And with

21  Your Honor's permission, my co-counsel and I are going to

22  divide up the issues.  I will address abstention first and

23  then my co-counsel, Ms. Meier, will address the personal

24  jurisdiction and the transfer.

25          **THE COURT:**  Very well.

1          **MS. PEASLEE:**  So at the outset, Your Honor, there

2      is a factual point I wanted to correct the record on.  OAN

3      has noted that perhaps this was forum shopping because

4      Dominion really liked Your Honor's decision on the Motions

5      to Dismiss filed by the individual defendants, Giuliani and

6      Powell.

7          I would just note, Your Honor, that we filed this

8      Complaint on August 10th, 2021.  And Your Honor issued that

9      decision on those Motions to Dismiss on August 11th, 2021.

10     So that played no role in our decision as to where to file

11     this case.  However, the fact that we had filed those cases

12     here, certainly was a relevant consideration, because we

13     believe these cases are very clearly related.

14         Another thing that I just wanted to correct for

15     the record is that Mr. Kimrey has stated that this case is

16     about the Dominion system's reliability and security.  And

17     that's not quite right.  We have not alleged, as any of the

18     defamatory statements in this action statements generally

19     saying that Dominion systems are not reliable or not secure.

20     This case is about whether Dominion rigged the 2020

21     election.  Not whether their systems are hypothetically

22     safe, but whether they actually flipped votes.  And that's a

23     very important distinction, Your Honor.

24         As my colleague on the other side said, you have

25     to start with the defamatory statements in a defamation

1  action.  And so I just think that is very important framing

2  for where we begin.  So starting there, looking at the

3  defamatory statements alleged in these two actions, the

4  premise of defendants' argument here for dismissing or

5  staying under the doctrine of *Colorado River* is that this

6  case largely overlaps with the *Coomer* case.

7          And if you look at Exhibit J to their Motion,

8  which is Eric Coomer's Complaint in Colorado State court,

9  and you compare it to the Complaint in this case, as I'm

10  sure Your Honor has done, it's very clear that the overlap

11  between the two cases is minimal.  Eric Coomer has alleged

12  statements against 14 different defendants in a 64-page

13  Complaint.  Among those he dedicates a single paragraph,

14  it's Paragraph 61, to conduct by the OAN defendants.  He

15  notes three specific statements by the OAN defendants.

16          By contrast, Dominion has filed a 212-page

17  Complaint with over 300 paragraphs dedicated to the conduct

18  by the OAN defendants and their defamatory statements.

19  We've alleged 25 different statements or category of

20  statements, if you want to frame them that way.  Of those,

21  24 are not at issue in Eric Coomer's Complaint.  It is

22  simply not the case that these cases deal with substantially

23  the same issues, because 24 of the specific statements,

24  which is where you need to start in a defamation action, 24

25  of them are not at issue in the Coomer case.

1          In *Moses H. Cone*, in interpreting and applying the

2     *Colorado River* Doctrine, the Supreme Court stated that

3     *Colorado River* abstention applies when a parallel state

4     court litigation will be an adequate vehicle for the

5     complete and prompt resolution of the issues between the

6     parties, and that it would be a serious abuse of discretion

7     to apply the doctrine when that is not the case.

8          It cannot possibly be the case that the state

9     court action here will be an adequate vehicle for the

10    complete and prompt resolution of the issues between OAN and

11    Dominion because the issues are not the same, the statements

12    alleged are not the same and Dominion is not a party to that

13    action.

14         So with that framing of what we are looking at

15    here, I'm going to back up a little bit and throw out three

16    primary reasons that defendants' argument with regard to

17    *Colorado River* abstention fails.

18         The first of these, as you've heard, they are

19    seeking dismissal under *Colorado River*.  However, this is an

20    action for damages.  And under the Supreme Court's analysis

21    in *Quakenbush*, which I acknowledge dealt that with *Burford*

22    abstention, dismissing an action for damages under federal

23    abstention principles is not something that the Court can

24    do.

25         Now, Your Honor, as we've already talked about, we

1    looked at *Quakenbush* in *Jefferson-11th Street*, that is the

2    case opposing counsel was describing though not naming, I

3    believe, in his argument.  So I know that you are familiar

4    with this doctrine.

5            One thing I do want to point out about your

6    decision in *Jefferson-11th Street* is that there you pointed

7    out the fact that, you know, after having considered

8    *Quakenbush*, dismissing without prejudice the claim would

9    work a manifest in justice because the statute of

10   limitations would toll or -- excuse me -- would run.

11           **THE COURT:**  Would not toll.  Right.

12           **MS. PEASLEE:**  Yeah, because it would not be

13   tolled, it would run.

14           The exact same thing is true here.  For 18 of the

15   25 statements that we've alleged the statute of limitations

16   has already tolled.  And for the remaining, it will toll

17   within the next two months, so that is the same

18   circumstance.

19           **THE COURT:**  Why -- so on the fundamental question

20   of, I will put it this way, relief.  Again, this assumes I

21   think *Colorado River* abstention makes sense at all or is

22   applicable, but assuming it is, at least in a circumstance

23   where you had complete overlap, parties claims and the like,

24   and it was still a suit for damages, why wouldn't it make

25   sense to dismiss the second suit for damages, if it really

1    was overlapping entirely?  Why would you stay that

2    second-filed, completely-overlapping case?

3              **MS. PEASLEE:**  Well, Your Honor, you would have to

4    go back to the reasoning in *Quakenbush* and they walk through

5    there the line of cases that they are relying on, which

6    include *Colorado River*, and the federal principles

7    underlying the notion of abstention, and federal courts

8    abdicating their jurisdiction over cases that they otherwise

9    properly have jurisdiction over, and the fact that that

10   history is rooted in equity cases.

11             As a matter sort of practical efficiency, the

12   Supreme Court, I don't think, has faced a situation where

13   you have truly two identical cases.  And it does seem

14   possible to me that faced with that situation where you have

15   quite literally duplicate cases, the Supreme Court would

16   say, Okay.  In this case you can dismiss that.  But that's

17   certainly not what we have here and that's not what was

18   being analyzed in the *Quakenbush* decision either.

19             Unless Your Honor has any questions about the

20   inappropriateness of dismissal in our view, I am going to

21   move on.

22             **THE COURT:**  Please.

23             **MS. PEASLEE:**  So the second reason that the OAN

24   defendants' argument with regard to abstention fails is

25   because the *Colorado* Doctrine doesn't apply in the first

1    place because these are not parallel actions.  Defendants

2    have set up a little bit of a strawman here saying, Well,

3    they don't have to be identical and Dominion says they have

4    to be identical.

5            We acknowledge that the standard is substantial

6    similarity.  There is not substantial similarity here.  The

7    first reason for that is because Dominion is not a party to

8    the Coomer action.  Defendants have sought to get around

9    that by saying, Well, Eric Coomer has argued that he is the

10   face of Dominion and anything defamatory as to Dominion is

11   defamatory to him.

12           This fails for a couple of reasons.  The first is

13   that what Eric Coomer has argued is that because of OAN's

14   defamatory broadcast, in the public's mind he is associated

15   with Dominion.  But public association does not create any

16   sort of legal affiliation.  Eric Coomer is no longer an

17   employee of Dominion.  He was not authorized by Dominion to

18   bring his case.  He is not seeking any relief on behalf of

19   Dominion.  He doesn't represent Dominion.  There -- his case

20   is on his own individual behalf.  And Dominion is not a

21   party.  So that would be the first thing.

22           And I should say that defendants have cited a few

23   cases about employers and employees, including *Wolken*, which

24   is the Northern District of Illinois case.  That was a very

25   different circumstance because the employee you were talking

1    about was the CEO -- president, I believe -- and primary

2    shareholder of the other entity.  For legal purposes they

3    really were alteregos.  This is not the case where Eric

4    Coomer and his former employer are alteregos.  So that case

5    just doesn't apply.

6            **THE COURT:**  What was your view -- obviously, I had

7    some colloquy with defense counsel about the potential

8    preclusive effect of the litigation in Colorado.  Can you

9    just walk me through your view of the potential preclusive

10   effect, if any, of that litigation here, assuming it were to

11   go to judgment before this case?

12           **MS. PEASLEE:**  Sure.  And it depends on which party

13   we are talking about binding.

14           **THE COURT:**  Agree.

15           **MS. PEASLEE:**  If are talking about binding

16   Dominion, then our view is that there is no preclusive

17   effect at all because collateral estoppel does not apply.

18   Dominion is not a party to that case.  The Supreme Court has

19   walked through, you know, when a non-party can and cannot be

20   bound by a prior decision.  And it's a very limited set of

21   circumstances when you are dealing with fiduciaries or

22   trustees; that's *Taylor v. Sturgell*.  They explicitly

23   rejected the notion of virtual representation where you have

24   some connection between the parties and shared interest.

25   And at most that's what you would have here.

1          Our view is Dominion is certainly not going to be

2     bound by anything in that decision.  Whether OAN is, is a

3     different question.  Frankly, Your Honor, we can't say at

4     this point, because it very much depends on what grounds the

5     Colorado court rules.  As you discussed with opposing

6     counsel, there are different standards in the anti-SLAPP

7     briefings.  So it depends on what that court finds.

8          Is it possible that there will be points on which

9     OAN is bound in this litigation, if that one reaches

10    judgment first?  Yes.  But it's a big question mark at this

11    point, frankly.  And that sort of question mark is exactly

12    the sort of doubt that the court cannot have if it's going

13    to grant the exceptional remedy of abstention under *Colorado*

14    *River*.

15         **THE COURT:**  It certainly seems to make the

16    standard for dismissal very high.  Whether it would be

17    prudent to have that case go forward before this one seems a

18    little different to me.  And I get that analytically there

19    is the question of whether *Colorado River* abstention applies

20    at all, and the question is what relief to grant.

21         But in my mind, they are not totally unrelated

22    because keeping this case -- I'm not saying this is where I

23    am at all but, you know, thinking about it as, There are

24    issues that are, to an extent, similar.  So let's see what

25    happens there before we proceed here.  It's very different

1      in my mind than essentially saying, It's so obvious that

2      that case is going to be essentially resolving all issues

3      between the parties that I am prepared to dismiss.

4              **MS. PEASLEE:**  Sure.  And I understand Your Honor's

5      sort of pragmatic point there.  I would say in terms of the

6      case law, the standard for stay and dismissal is not any

7      different.  But just from a pragmatic point of considering

8      whether this case should proceed before this one, I will

9      note that they are still in anti-SLAPP briefings.  Is it is

10     not the case that that case has proceeded far ahead of this

11     one.

12             I will also note in terms of their being similar

13     issues that are before Your Honor, we also have several

14     other cases -- I know Your Honor is well aware of --

15     currently pending before this court.  I think if we are

16     talking about similarity of issues, there is far more there

17     than there is between this case and that in Colorado court.

18     So I don't think it is the case that you are losing any

19     efficiency by moving this case forward.

20             **THE COURT:**  I don't ask this because I think it's

21     highly relevant to my determination of the motion but it

22     wasn't totally clear to me from the briefs and the arguments

23     that Dr. Coomer's relationship with Dominion -- just when he

24     was -- when he became a former employee.  Can you just walk

25     me through the basic chronology there?

1      **MS. PEASLEE:**  Sure.  It is correct he was still an

2   employee when he filed his suit.  He separated from the

3   company in May of 2021.

4      **THE COURT:**  Thank you.

5      **MS. PEASLEE:**  Of course.

6      So, you know, I think we've covered from my

7   perspective why these cases are not parallel.  If Your Honor

8   has further questions about that, I am happy to answer them.

9   Otherwise, I will move on to the third reasons that their

10  argument --

11      **THE COURT:**  Please.

12      **MS. PEASLEE:**  Okay.

13      So the third reason their argument under Colorado

14  -- these are not parallel cases and you go on to actually

15  applying the factors, the Supreme Court has described their

16  test as an exceptional circumstances test.  And this is not

17  an exceptional case that justifies abdicating that court's

18  "virtually unflagging obligation to exercise jurisdiction

19  that it possesses."

20      And I would like to point Your Honor to the D.C.

21  Circuit's 2019 opinion in *Edge Investment versus District of

22  Columbia,* it's 927 F. 3d 549.

23      And the reason I really want to highlight that

24  opinion is because there the D.C. Circuit gave very detailed

25  instructions on how district courts in this circuit are to

1    apply the Supreme Court's exceptional circumstances test, in

2    the Circuit's own words, "To make sure that Colorado River

3    stays confined to its banks."

4           There are just a couple of points I would like to

5    highlight from that decision.  The first being that -- so we

6    heard OAN and seen OAN in their briefing walk through the

7    factors that are relevant to the exceptional circumstances

8    test, and effectively count up the factors.  And what the

9    Circuit made very clear in *Edge* is that this is not a

10   factor-counting test.  It's not a question of, Do the number

11   of factors that could potentially weigh in support of

12   abstention outnumber those that don't?

13          And, in fact, when the District Court reversed --

14   excuse me -- when the Circuit Court reversed the District

15   Court, they noted that the District Court had relied on

16   earlier decisions, unappealed decisions, from within this

17   circuit that used exactly that sort of factor-counting

18   approach.

19          And, in fact, one of the unappealed District Court

20   decisions, relied upon by the District Court in *Edge*,

21   *Foster-el v. Beretta*, is one of the same cases the

22   defendants have relied on here.  And what the circuit went

23   on to say was that that approach is not the way you are

24   supposed to be doing this.  Rather, the factors themselves

25   have to be exceptional.  There are no exceptional

1    circumstances here.

2            And I think we've covered them fairly adequately

3    in our briefing, so I don't want to belabor them all.  I do

4    want to touch just briefly upon the potential piecemeal

5    litigation because that is the one the courts have treated

6    as most important.  What I will say on that is the overlap

7    here, as we've already discussed, is minimal.  It's not even

8    certain there will be any sort of overlap such that there is

9    piecemeal litigation, but even if there were some thing that

10   was duplicative or overlapped, the *Edge* court made clear

11   mere duplication and mere inconsistency do not support a

12   stay.  And they pointed to *Colorado River* itself, as sort of

13   the paradigmatic case where piecemeal litigation was really

14   a problem.  That's where you had a comprehensive scheme for

15   adjudicating water rights and then a separate suit to

16   adjudicate water rights for 1,000 people; that's excessive

17   duplication and inconsistency.  That is not what we have

18   here with respect to one overlapping statement by OAN.

19           The other factor that I want to highlight is state

20   versus federal law.  We disagree with the defendants over

21   what law exists -- or what law applies, rather.  We believe

22   D.C. law applies.  But regardless, the thing I would like to

23   note for the abstention piece of this is that whether this

24   Court agrees or not, applying Colorado law is not an

25   exceptional circumstance that would support abstention under

1    *Colorado River*.  The only difference that defendants have

2    pointed to with regard to Colorado law is the scope to --

3    scope of claims to which the actual malice standard applies.

4         If this Court decides that Colorado law applies,

5    it is perfectly capable of applying the actual malice

6    standard.  Your Honor has, in fact, already done so in your

7    Motion to Dismiss opinion in the related cases.

8         So with that, Your Honor, unless Your Honor has

9    questions on the abstention piece of things, I am going to

10   hand it over to my colleague, Ms. Meier, to address personal

11   jurisdiction.

12        **THE COURT:**  That makes sense to me.  Thank you,

13   Counsel.

14        **MS. PEASLEE:**  Thank you, Your Honor.

15        **MS. MEIER:**  Good afternoon, Your Honor.  Megan

16   Meier for Dominion.

17        **THE COURT:**  Ms. Meier.

18        **MS. MEIER:**  I was a bit surprised, frankly, to see

19   OAN challenging this Court's personal jurisdiction in asking

20   the court to transfer this case to a state where OAN has no

21   offices, where none of the defendants reside and from which

22   none of the defendants worked on the defamatory statements

23   at issue in this case.

24        OAN's office is two blocks from here, at 101

25   Constitution Avenue, across from the United States Capitol

1    that was stormed by a person holding an OAN flag because

2    they believed OAN's lies about the election.

3            OAN's lies were filmed and produced here in

4    Washington, D.C. by OAN's D.C. resident employees, at the

5    direction of the Herrings.  And those lies featured

6    D.C.-based interviews of folks like Sidney Powell, Rudy

7    Giuliani, the My Pillow Guy Mike Lindell, who all came to

8    D.C. and gave televised interviews to OAN's D.C. personnel,

9    because this was the center of the action for purveyors of

10   the big lie about the election.

11           Now, counsel today, although they didn't raise it

12   anywhere in their brief say, Well, the news gathering

13   exception under *Shirlington* decision is our

14   get-out-of-jail-free card.  The *Shirlington* decision cannot

15   carry that water.

16           That was a case where the defamatory statements at

17   issue were worked on and produced, et cetera, in San Diego.

18   And the mere existence of a D.C. bureau, that have nothing

19   to do with the defamatory statements at issue in that case,

20   solely the existence of that bureau was not enough.

21           But that's not at all what we have here.  We have

22   a D.C.-based office that exists because the Herrings

23   negotiated a partnership with the Washington Times to be

24   able to cover their political content here in D.C.  They set

25   up a permanent office here, two blocks from this courthouse,

1    to cover this sort of material.  That takes it outside of

2    the *Shirlington* decision, that the defendants did not state

3    in their belief.

4         This case is much more like the *Lewy versus*

5    *Southern Poverty Law Center* from this court in 2010, two

6    years after the *Shirlington* decision.  The cite for that

7    case is 723 F. Supp. 2d 116, and that's from 2010 in this

8    court.

9         In that case, the court found that there was

10   personal jurisdiction over the Southern Poverty Law Center,

11   which is based in Alabama, in part because of their news

12   gathering activities here and the level of contacts that

13   they had here which are much less than what the Herrings and

14   OAN and the individual defendants have established with

15   respect to this case.

16        So unless Your Honor has specific questions, I'm

17   not going to spend too much time belaboring why this Court

18   has personal jurisdiction over OAN.  I want to focus my time

19   instead on why this Court has personal jurisdiction over the

20   Herrings.

21        **THE COURT:**  I would like you to focus on that.

22   And then I think -- so I want to hear that.  And then, I

23   think, address -- I'm going to paraphrase, obviously,

24   defendants' argument, but on the transfer question is, As

25   between the two fora here, Colorado has a more significant

1    connection, both because of the ongoing litigation but also,

2    really, Dominion is indisputably headquartered in Colorado.

3    And so at least as between those two fora, that's a better

4    place to be.

5            **MS. MEIER:**  Yes, Your Honor.

6            **THE COURT:**  But please do the personal

7    jurisdiction as to the Herrings first.

8            **MS. MEIER:**  Let's start with the Herrings.  So

9    opposing counsel noted a couple paragraphs of our Complaint.

10   I think they missed where we actually pled the specific

11   facts that established jurisdiction over the Herrings.  I'd

12   like to direct Your Honor to Paragraphs 18, 19 and 20 in

13   particular.

14           The defamatory statements at issue in this case

15   were what OAN insiders refer to as "H stories."  Those are

16   stories that were personally approved by the Herrings and

17   that the Herrings required OAN to run; that's in Paragraph

18   19 of our Complaint.

19           So -- and there's a lot of detail about that.  We

20   don't just make this allegation in a conclusory fashion.  We

21   actually cite to evidence in the public domain about this.

22   The defamatory content at issue here was directed by Robert

23   and Charles Herring.  And the D.C. long-arm statute is

24   explicit, that it's not just your own actions that can

25   subject you to personal jurisdiction here, but it applies to

1    those who act, quote, directly or by an agent in transacting

2    business or in causing tortious injury in D.C.  So those are

3    the paragraphs that I would refer Your Honor to.  I can read

4    from them if you want but time is short.

5         **THE COURT:**  My question is, in a sense,

6    analytical, which is to say, Do you concede that if it

7    weren't for that specific direction by the Herrings, that is

8    to say, that if all you are relying on was their positions

9    within the corporate structure and ownership, and they

10   didn't take any specific directed activity, that there would

11   be not to personal jurisdiction over them?

12        **MS. MEIER:**  I think if we were to ignore those

13   allegations completely --

14        **THE COURT:**  Yes, that's my question.

15        **MS. MEIER:**  -- there would still be jurisdiction,

16   at least over Charles Herring with his Twitter and LinkedIn

17   profile was holding himself out as being in D.C., that he

18   was connecting his work with OAN as being D.C.-based and

19   D.C.-focused.  So even if he was lying in his social media

20   profiles, he's still purposely availing himself for the

21   benefits of connecting himself to Washington D.C. publicly.

22        **THE COURT:**  Do you concede that, just to be as

23   broad as possible, that neither Herring resides in the

24   district?

25        **MS. MEIER:**  I don't concede that because I don't

1    know that.  And I would also note that opposing counsel just

2    said that Mr. Charles Herring's primary residence has always

3    been in San Diego.  I don't think it's at all -- I don't

4    know if Charles Herring was lying on his Twitter profile or

5    if he has a second them to in D.C.

6          I would also note that in our Complaint we allege,

7    in part based on his own representations on his social media

8    profiles, that he regularly travels to OAN's Washington

9    office to work on the sort of statements that gave rise to

10   this case; that's in Paragraph 20.  So I don't concede that

11   they don't have homes here in D.C.  They very well may.

12         **THE COURT:**  My question was a little different,

13   which is whether they reside here.

14         **MS. MEIER:**  I don't know the answer to that.

15         **THE COURT:**  So at least -- I take it then at least

16   as to Charles Herring, you continue to argue that general

17   jurisdiction can be found as to him.

18         **MS. MEIER:**  I think we would need jurisdictional

19   discovery.  I did find it telling that when we attached

20   Mr. Charles Herring's -- I don't think we attached but we

21   cited them and saved copies of his LinkedIn profiles where

22   he held himself out as a resident of D.C.  After we did

23   that, he changed his LinkedIn and Twitter profiles.

24         I also find it telling that they didn't respond

25   with a declaration from him saying, I don't have a house in

1    D.C.  I don't have property here.  I don't have an apartment

2    here.  I found that telling that we didn't see that at all.

3    So I don't know.

4         **THE COURT:**  I mean, it seems to me that your most

5    direct argument, for lack of a better word, is that both

6    Herrings oversaw and directed the making of defamatory

7    statements that occurred, among other places, from the

8    District of Columbia.

9         **MS. MEIER:**  Yeah.  And the specific detail around

10   that is laid out in Paragraphs 18 through 20.  But it's not

11   just that they were involved.  And then we have insiders who

12   have gone on the record to say that particularly with

13   high-import stories like the 2020 election, with respect to

14   those kinds of stories, these were stories that the Herrings

15   said, Run this story.  And circumventing any sort of fact

16   checking and editorial review by folks on the editorial team

17   in California; that these were directed specifically by the

18   Herrings.

19        **THE COURT:**  So assuming that ends up to be the

20   case, obviously you allege it, why wouldn't Dominion be able

21   to sue them in Colorado, those two?  Because as defense

22   counsel indicated, you could think about that as direction

23   to make statements, among other things, about a company that

24   was headquartered in Colorado and it would suffer injury in

25   Colorado.  So why wouldn't Dominion have been able to sue

1      those two defendants at least in Colorado?

2              **MS. MEIER:**  I think it's doubtful that *Calder* can

3      carry that much water without anything else.  If the only

4      thing they did was direct the making of a defamatory

5      statement about a Colorado resident, with absolutely nothing

6      else, there are a number of cases that have said it violates

7      due process to have jurisdiction over the state solely on

8      the basis of that.  There has to be something else.  And the

9      something else that we have in this case is extensive and is

10     alleged, as I said, in Paragraphs 18 through 20.

11             We also have their negotiation, a partnership with

12     Washington Times, the establishment of their office two

13     blocks from here.  The fact that they were directing the

14     production of stories like Chanel Rion and Christina Bobb

15     collaborating with the very defendants in cases that are now

16     pending before this court here in D.C.

17             **THE COURT:**  All right.  So I get your argument,

18     among others, about transfer, a case could not have been

19     filed in Colorado, for those reasons especially.

20             Assume that I disagree with that proposition.

21     Imagine I say, It could have been filed in either location.

22     And I really just want to think through the traditional 1404

23     transfer factors.  Why is this a better forum than Colorado?

24             **MS. MEIER:**  I would love to answer that but there

25     is actually one more reason that it wouldn't have been

1      brought up in Colorado in the first place.

2                  **THE COURT:**  Okay.

3                  **MS. MEIER:**  Which is that a substantial part of

4      the events or admissions giving rise to this claim didn't

5      happen there.  The defendants didn't work on these

6      defamatory statements in Colorado.  They did it here in D.C.

7      or directed their agents to do it here in D.C.  So that's

8      another reason why it couldn't have been brought in Colorado

9      to begin with.

10                 But in terms of the factors weighing against the

11     transfer, there are a number of them.  First of all,

12     obviously, the plaintiff's choice of forum should be given

13     deference.  But there is a substantial, substantial nexus

14     with D.C., which is that this is the city where various

15     individual defendants traveled to give televised interviews

16     to OAN that were produced here in D.C., filmed here in D.C.,

17     produced here in D.C.  So that is the substantial nexus.

18                 The notion it's not more convenient for OAN to

19     litigate a case in Colorado than in a courthouse two blocks

20     from its office.  And that's the office two blocks from here

21     that employs the cameramen and the producers and Chanel Rion

22     and Christina Bobb, who worked on these defamatory

23     statements.  They are all right here, as are their

24     computers, devices and whatever hard copy documents or notes

25     they have are two blocks from here.  The notion that it is

1    more convenient to have this litigated in Colorado is false.

2         The Herrings have no trouble coming to Washington,

3    D.C.  They established their second office here.  The

4    witnesses are across the country.  Sure they are not all

5    from D.C. but neither are they all from Colorado.  And

6    that's not a factor that favors transfer to Colorado.  It's

7    really just a testament to the widespread, nationwide

8    character of this coordinated defamatory campaign that was

9    largely executed here in D.C. by OAN in collaboration with

10   the folks that it chose to put on the air.

11        Colorado law doesn't control and I can go through

12   the factors on this.  Opposing counsel repeatedly cited

13   Mr. Smolla's treatise that the residence of the plaintiff

14   typically controls.  Typically.  This is not a typical case.

15   This is not a typical case where one individual person, you

16   know, living in Michigan was defamed and her reputation was

17   harmed in Michigan.  What we have here is three plaintiffs,

18   one of which is based in Ontario, Canada, two of which are

19   in Colorado, that were defamed on a global scale by folks

20   from all different states who converged here on D.C. to do

21   it.

22        If you look at the factors of the most significant

23   relationship test, which is the test that D.C. applies, they

24   nearly all favor the application of D.C. law.  So first of

25   all, as to the residence of the parties, as I said, we have

1    one plaintiff who is not from Colorado, but then we have

2    other parties who are here in D.C., California, then we have

3    the Ontario plaintiff.

4         The other three factors all favor the application

5    of D.C. law.  This is the place where the conduct giving

6    rise to the injury occurred.  This is the place where the

7    injury occurred, including because the defendants worked on

8    the statements here and specifically targeted a D.C.

9    resident, then-president Trump, convincing him to reTweet

10   their defamatory accusations.  And the fourth factor favors

11   the application of D.C. law.

12        This is the place, if any, where the relationship,

13   if you could call it that, between OAN and Dominion is

14   centered.  This is -- they don't do business together.  The

15   only relationship they have is OAN filming and producing

16   defamatory broadcast about Dominion here.

17        So all of the factors that get applied under D.C.

18   law will point to the application of D.C. law.  But as my

19   colleague pointed out, even if the Court were to conclude

20   that Colorado law applies, that's not a sufficient reason to

21   transfer the case because the actual malice standard is

22   applied by federal courts across the country every day.

23        The district of Colorado is more congested than

24   this court as is laid out in our brief.  And D.C. has the

25   local interest in deciding this case.  The events that gave

1    rise to this case happened here.  OAN put facially

2    unreliable sources on its air here.  Those facially

3    unreliable sources are going to have their cases decided

4    here.  And judicial efficiency is served by having OAN's

5    broadcast of a defamatory interview with Rudy Giuliani

6    decided by the same jury.  You have Giuliani collaborating

7    with OAN in doing that defamatory broadcast.  There is some

8    judicial efficiency to having those heard together.

9         Finally, with respect to the risk of inconsistent

10   judgments, right, that can't be resolved by transferring

11   this case to federal court in Colorado because the *Coomer*

12   action isn't pending in federal court in Colorado, and

13   obviously this court can't transfer to Colorado state court.

14        So for all of these reasons, the case should stay

15   here.  This Court has personal jurisdiction over all of the

16   OAN defendants.  And with that, I will stop and answer any

17   questions you may have.

18        **THE COURT:**  No, I would like to hear from defense

19   counsel as well.  Thank you, Counsel.

20        **MR. KIMREY:**  Hello, again, Your Honor.

21        I'm going to address the points in which they

22   occurred before you in my rebuttal.

23        Ms. Sammons [sic] noted that this case was filed

24   one day before Your Honor's opinion in the Lindell, Giuliani

25   and Powell case.  That is true.  I didn't realize that until

1    just now.  However, the oral argument occurred in June.  And

2    reasonable minds may differ on this but I have reviewed the

3    transcript and I do believe the writing was on the wall as

4    to what was going to happen.

5           Additionally, my point about forum shopping

6    relates not just to what was going on in those cases that

7    have -- that allegedly are related, but also the absence of

8    application of the anti-SLAPP statute in this court.  It's a

9    huge difference strategically for Dominion between Colorado

10   and D.C.  And I think it did play a big role in its decision

11   to sue here.

12          This distinction between reliability and security

13   versus writ.  So there's a lot of narrative in the Complaint

14   about "The big lie."  And, frankly, it's hard to litigate

15   against that drum beat of the big lie, which really doesn't

16   mean anything.  It's just a superficial tagline.

17          The reference to the OAN flag on January 6th is,

18   frankly, ridiculous.  OAN didn't storm the Capitol.  And I

19   know that we are going to be dealing with suggestions

20   otherwise, but this is not an incitement case.  And if you

21   look at the allegedly defamatory statements, again, the 25

22   categories, they speak for themselves.  In each and every

23   one of those don't say, Dominion rigged the election.

24   Dominion rigged the election.  Dominion rigged the election.

25          This is critical.  This is a point we made in

1    Colorado.  We never said -- OAN never said, Dominion rigged

2    the election.  What OAN said with respect to the Colorado

3    case was that Joe Oltmann said that he heard on an Antifa

4    call, that somebody named Eric said, Nobody needed to worry

5    about Trump winning because he had taken care of it."

6            That's fundamentally different because we are a

7    news entity.  That is why it is fundamentally different from

8    the cases that are allegedly related here.  It's one thing

9    to be Mike Lindell.  It's one thing to be Rudy Giuliani.

10           **THE COURT:**  But you have not moved to dismiss for

11   failure to state a claim.  So I have to assume that every

12   single allegation in here states a claim that OAN and the

13   other defendants defamed Dominion.

14           **MR. KIMREY:**  Understood, Your Honor.

15           **THE COURT:**  So the point of your argument is?

16           **MR. KIMREY:**  The allegedly defamatory statements

17   don't all say that Dominion rigged the election.

18           **THE COURT:**  They say what they say.

19           **MR. KIMREY:**  There say what they say.

20           **THE COURT:**  And you concede that at least some of

21   those statements that are in the Complaint here are not the

22   same statements that are at issue in Colorado.

23           **MR. KIMREY:**  Although it's not as Ms. Sammons

24   [sic] indicated because Coomer is not relying on only that

25   which he set forth in the Complaint.  He's relying on a

1    voluminous, alleged defamatory statement chart, which we put

2    before Your Honor.

3            So if you look at the findings -- the Proposed

4    Findings of Fact and Conclusions of Law from Dr. Coomer, the

5    statements he puts at issue are way beyond what he actually

6    pled in the First Amended Complaint.  Attached to those

7    Findings of Fact and Conclusions of Law was this defamatory

8    statement chart was Exhibit K, which is before Your Honor.

9            **THE COURT:**  Yes.

10            **MR. KIMREY:**  It's not just one statement that

11    overlaps.  It's much more significant.  Again, though, I

12    noted to Your Honor and it's true, they aren't mirror

13    images.  But the fundamental facts -- you know, Coomer

14    himself -- and remember, when he filed the case in Colorado,

15    he was the Director of Product Strategy and Security for

16    Dominion.  A very high-level executive.

17            **THE COURT:**  What's your best argument for or best

18    case for the proposition that Dominion would be in any way

19    bound by a loss by Dr. Coomer?

20            **MR. KIMREY:**  My best argument for that is that

21    Dr. Coomer says he is Dominion.

22            **THE COURT:**  But that's -- his saying that doesn't

23    make it so, and I don't -- is there a doctrine that

24    establishes that proposition?

25            **MR. KIMREY:**  That --

1          **THE COURT:**  I could say that.  It wouldn't be true

2     and that -- I don't understand what the legal significance

3     of that would be for purposes of res judicata.

4          **MR. KIMREY:**  So let's say in the Colorado case,

5     with respect to the statement by Joe Oltmann that he heard

6     on the call that somebody named Eric said, Don't worry about

7     Trump winning, I took care of it.  That exact same statement

8     is put at issue by Dominion.  Dr. Coomer says it's about him

9     and Dominion and that they are synonymous.  Dominion says

10    it's about Dominion.

11         All of the doctrines that apply, all of the

12    elemental analysis, all of the defenses, would be before

13    Your Honor and before Judge Moses simultaneously.  Okay?  So

14    you might find that --

15         **THE COURT:**  Hold on.  My question is, Imagine that

16    Dr. Coomer loses the claim, either because it's determined

17    that that statement is not about him or it's not false or

18    it's not defamatory.  He loses the claim as to that

19    statement.  What forecloses Dominion from saying, It's about

20    us -- that's not inconsistent -- and it's false as to us and

21    it's defamatory as to us?

22         **MR. KIMREY:**  Because it can't be false as Dominion

23    -- as to Dominion and true as to Dr. Coomer, because it's

24    the exact same statement.

25         **THE COURT:**  It may not be about Coomer.

1       **MR. KIMREY:**  Yeah, but -- so let's say that both

2   courts find that the statement is --

3       **THE COURT:**  Actual fact.

4       **MR. KIMREY:**  And of and concerning Dominion.  You

5   may find or the jury may find here that it was substantially

6   true under the substantial truth doctrine.  The judge in

7   Colorado or the jury in Colorado may find it's not

8   substantially true.  Even though they are -- let's assume

9   for purposes of the hypothetical it's synonymous as to the

10  of and concerning.

11      **THE COURT:**  Yes.

12      **MR. KIMREY:**  There could be a complete difference

13  --

14      **THE COURT:**  That is true a lot of the time when

15  you have different plaintiffs litigating issues.  The

16  question is not whether they would be inconsistent.  The

17  question is whether Dominion would be bound and foreclosed

18  from litigating in this case if *Coomer* loses that question

19  as a non-party in Colorado.

20      **MR. KIMREY:**  As -- well, Dominion would be --

21  eventually will be a party, if we continue to litigate,

22  because we would add them.  Right now Dominion technically

23  is not a party.  But I think that this would get to notions

24  of comity, c-o-m-i-t-y.

25      **THE COURT:**  I know how to spell comity.

1          **MR. KIMREY:**  I just think of c-o-m-e-d-y when I

2     say comity.  So issues of comity, with respect to federal

3     deference to a state court decision on the exact same issue.

4     This is the underlying public policy to *Colorado River*

5     abstention.

6          I guess this Court -- let's say that Judge Moses

7     finds that it's an issue of law, not fact.  And she says,

8     Substantial truth does not apply to the Oltmann statement

9     about the Antifa call.  This Court then says, Okay.

10    Everything is the same.  I mean, basically I can plug in

11    Dominion for Coomer.  It's the exact same statement.  Actual

12    malice applies the same way, right, substantial truth.  And

13    I think it was substantially true.  How does the Court

14    reconcile that?

15         I guess I can't cite -- as I stand here today,

16    Your Honor, I can't cite a case that says as a matter of

17    federal comity, your hands would be tied.  You could not

18    find substantial truth on the exact same statement that

19    Judge Moses found substantial truth was lacking on.  But it

20    creates a problem, a conflict, that Colorado abstention is

21    intended to navigate around.  And if you don't like *Colorado*

22    *River* abstention, then 1404(a) could do the trick.

23         As to this notion of under abstention between

24    dismissal and a stay you asked, you know, if it were a

25    mirror image, you know, could I dismiss in a damages case?

1    Would that be okay?  I just note, I emphasize, Ms. Sammons

2    [sic] said that would be okay.  So in certain circumstances,

3    they've conceded, that the Court could dismiss under

4    *Colorado River* abstention.  Okay.  So that's the Merrick

5    Garland opinion, this is the D.C. Circuit.

6              As we note in our briefing, *Edge* is fundamentally

7    different.  In *Edge*, sure, the Court did say you don't tick

8    off factor after factor and weigh it and in the balance you

9    mechanically say it applies or it doesn't apply.  It

10   definitely did say that.  Merrick Garland did write that.

11             But, nevertheless, there were only three factors

12   satisfied there.  And we've satisfied all of them in our

13   case.  So in that -- Merrick Garland wasn't faced with a

14   circumstance where the defendant had satisfied every single

15   one of the factors for *Colorado River* abstention.

16             On to Ms. Meier's argument on personal

17   jurisdiction.  So Ms. Meier made much of Paragraphs 18

18   through 20 of the Complaint.  They don't say what she said

19   they say.  This is what they say:  Defendant Robert Herring

20   is the CEO of OAN, and son Charles Herring is the president.

21   So what.  According to a former OAN anchor, Robert Herring

22   is the network.  He is in control of absolutely everything.

23   He wants to be.  And if someone doesn't like it, they are

24   fired.

25             Robert Herring's grip on the network's coverage

1    gets even tighter when it comes to stories of greater

2    importance.  According to another former OAN producer,

3    Robert Herring became the defacto news director for the

4    network, has a ton of influence over every aspect of the

5    newscast, with stories written on his whim.  According to

6    another OAN employee, it was his way or no way.  OAN

7    employees run afoul to Herrings' directives have been

8    publicly scolded and fired.

9          Okay.  So that is a bunk of hearsay it's not

10    admissible as evidence.

11    **THE COURT:**  These are just allegations at this

12    point.  Why do I care about hearsay now?

13    **MR. KIMREY:**  Let's say they are true.  Let's

14    assume for purposes of -- I mean, this is different because

15    it's personal jurisdiction.  But let's assume they are true,

16    which they are not.  Let's assume they are true.  They don't

17    tie to the allegedly defamatory statements in this case.

18    Right?  You have to say that Robert Herring played a seminal

19    agency direction role as to the allegedly defamatory

20    statements in this case.

21    **THE COURT:**  Why isn't it enough to plead, what is

22    pled in the next paragraph, which is that quote -- and I'm

23    going to paraphrase a little bit -- the Herrings personally

24    approved and required OAN to run these stories with the

25    Herrings exercising control over their content and without

1    the California editorial team or anyone else fact checking

2    the stories or vetting sources.

3            Again, I don't know if that's true or not, but

4    it's alleged.  Why is that not enough?

5            **MR. KIMREY:**  Are you referring to Paragraph 19?

6            **THE COURT:**  I am.

7            **MR. KIMREY:**  Okay.  Just -- I want to make sure

8    that I'm following along with Your Honor.  So the false

9    Dominion stories were examples of what were referred to as

10   "H stories."  Herrings personally approved and required to

11   run with blah, blah, blah, blah, blah, blah.

12           So it's -- I don't think that this establishes a

13   prima facie case of personal jurisdiction over them, because

14   it's simply conclusory and it's not sourced.  And they pled

15   no -- you know, no plausibly *Twombly Iqbal* considerable

16   allegations that actually tie Robert Herring to the

17   allegedly defamatory statements here.

18           The same goes for --

19           **THE COURT:**  Would it be enough -- not a question

20   about whether it's adequately alleged here, but would it be

21   enough for personal jurisdiction purposes to allege that --

22   I'll just put it this way -- a CEO of a media company

23   expressly directed a newscaster to make a defamatory

24   statement in whatever jurisdiction we are talking about?

25           **MR. KIMREY:**  So if that's the entire hypothetical

1   without any other facts or caveats or whatever, yes.  I mean

2   -- and let's make it even closer.  Let's say the CEO

3   actually uttered the allegedly defamatory statement.

4         Let's say you work for me, Your Honor.  And I say,

5   Your Honor, I would like you to say that Dominion rigged the

6   election.  And you say, as a subordinate to me, Dominion

7   rigged the election.  I'm going to have a hard time from a

8   personal jurisdiction perspective.  However, there are two

9   caveats.  Number one, the news gathering exception.

10        **THE COURT:**  Understood.  Understood.

11        **MR. KIMREY:**  -- in D.C.

12        **THE COURT:**  Yes.

13        **MR. KIMREY:**  And also, number two, when I tell you

14   to do that, what state are you directing the statement at?

15   You are not directing it at D.C.  You are directing it at

16   Colorado, because that's where Dominion is.  So even there,

17   although the CEO in that scenario could be subject to

18   personal jurisdiction, they would not be subject to personal

19   jurisdiction under these facts in D.C. because of the news

20   gathering exception.

21        **THE COURT:**  Yes.

22        **MR. KIMREY:**  By the way, with respect to the news

23   gathering exception, Ms. Meier cited the *Southern Poverty*

24   *Law Center* case.  That case is fundamentally

25   distinguishable -- go ahead.  Please read it, Your Honor --

1    because it involved way more activity directed by the SPLC

2    to the District of Columbia, beyond simple news gathering

3    and news dissemination.

4           So there are several indicia of contacts with the

5    D.C. -- with the District of Columbia that the SPLC had in

6    that case that we don't have here.  So the SPLC case is not

7    applicable or dispositive.

8           There was a suggestion that Mr. Herring was lying

9    on his Twitter feed.  That's not true.  Mr. Herring doesn't

10   own property in D.C.  And I don't know -- if you look at

11   what they say in the Complaint -- so this is Paragraph 20 --

12   it says, Charles Herring's Twitter and LinkedIn locations

13   place him in Washington, D.C.  I don't even know what they

14   are talking about because they don't attach it.  Again, it's

15   unauthenticated.  Whatever.  And they do refer to geo

16   location elsewhere with respect to another witness, but they

17   don't do that with respect to Mr. Herring.

18          And then they cite to these URLs for Twitter.

19   Again, I don't even know what they say because -- I would

20   love to see it -- they didn't attach copies of it.  They

21   pled, Your Honor -- if you look at the first page of the

22   Complaint, and Ms. Meier said she doesn't know.  Well, if

23   she doesn't know, then she can't allege that Charles Herring

24   owned or owns property in Washington, D.C.

25          The caption on the Complaint says, Charles

1   Herring, 17353 Circa Oriente Rancho, Santa Fe, California.

2   They know where he lives.  It's in the Complaint.  Same goes

3   for Robert Herring, 4289 Rancho Los Rios Trail, San Diego,

4   California.  They pled where these guys live.  And this

5   Twitter thing, for lack of a better way to put it, is a red

6   herring.  Again, Ms. Meier alleged she doesn't know.  She

7   doesn't know whether Charles owns any property in D.C. and

8   he doesn't.

9          She suggested that the *Calder* affects test

10  wouldn't go so far as to subject a CEO in the hypothetical

11  that you gave to me to jurisdiction in Colorado.  And then

12  she said there are a bunch of cases that say you need more.

13  I don't know what those cases are.  She didn't cite any.

14  They are not cited in the brief.  And then I think under the

15  hypothetical that you gave me, you know, that would subject

16  Mr. Herring to personal jurisdiction in Colorado, just as

17  Judge Moses found that Chanel Rion was subject to personal

18  jurisdiction in Colorado.

19          There has been this mention of the Washington

20  Times.  This is now percolating up in all of these cases.

21  It's weird.  It doesn't make sense.  There is no partnership

22  between Herring and the Washington Times.  There are no

23  allegations with respect to that in the Complaint.  They, I

24  believe, shared some office space many, many years ago.

25  That hasn't been the case for quite sometime.  And the

1   stories weren't produced in D.C.  Produced.  Producer is a

2   human.  Right?  They have a title.  It says on their

3   business card, "Producer."  The producers are all in San

4   Diego.

5       If you look at these allegedly defamatory

6   statements, they don't all involve interviewing Rudy

7   Giuliani in D.C. or interviewing Sidney Powell in D.C.  They

8   involve all kinds of different packages, many of which

9   didn't involve an OAN talent based in D.C.  In fact, I think

10  the majority of the talent was based in San Diego.  So --

11  and by the way they didn't travel here for the interviews,

12  Rudy Giuliani and Sidney Powell and -- they were all here

13  already.  Right?  Because of the work that they were doing

14  in D.C.

15      Ms. Meier suggested that communications with Trump

16  creates a connection here.  I don't understand that at all.

17  Trump hasn't sued for defamation in this case.  Smolla says

18  you look at the domicile of the plaintiff.  I don't know why

19  you look at the domicile of a third party, like the

20  president of the United States.  There is simply no support

21  for that anywhere in Rodney Smolla's treatise.

22      Finally, as to other defendants, the cases

23  shouldn't be related that have been moved to be related

24  before Your Honor.  But if Giuliani's being a party matters

25  or Powell's being a party matters, their party's in

1     Colorado.  They've been sued in the Colorado case.  And

2     anybody they want to bring in, they can bring in, once

3     Dominion becomes a party.

4          And finally, Your Honor, this distinction between

5     transferring between state and federal court.  It doesn't

6     matter.  We cited to Your Honor situations where the first

7     case was state court case, the second case was a federal

8     case.  And the court did abstain or transfer to the federal

9     court.  And basically what we would do, Your Honor, is if

10    you transfer to Colorado, we would seek to stay that case

11    pending a ruling on the anti-SLAPP in our case.  If we

12    ultimately lost on anti-SLAPP, then we'd bring in Dominion

13    in that case.  And if we won on anti-SLAPP, then we'd

14    litigate against Dominion in the federal case in Colorado,

15    which makes sense because that's where Dominion is.

16    Colorado law does apply.  Ms. Meier said it doesn't.  I

17    actually didn't really follow the argument.  It clearly does

18    apply in this case.  And I think Rodney Smolla -- Smolla's

19    treatise --

20         **THE COURT:**  Just to put a fine point on what

21    you've said, transferring this case doesn't solve the

22    *Colorado River* problem, it just shifts it to another court.

23    Right?

24         The same reason that I would defer to a state

25    court in Colorado would be an argument for the Colorado

1   federal court to defer.  So you would --

2          **MR. KIMREY:**  Right.  That's true.

3          So you wouldn't necessarily -- so the remedy under

4   abstention is either dismissal or a stay here.  The remedy

5   under 1404 is a transfer.  Regardless of how the case -- so,

6   you know, they could -- let's say it gets transferred.  If

7   it gets transferred there, we are still going to have comity

8   issues --

9          **THE COURT:**  Yes.

10          **MR. KIMREY:**  -- that we are going to highlight to

11   the federal court when we say, Stay this because of what is

12   going on in the state court.  So you don't immediately

13   eliminate the comity concerns that underpin abstention, but

14   you put it on the road to being taken care of in Colorado.

15   But you are not actually moving it to Colorado based on

16   abstention.  You are moving it to Colorado based on 1404(a).

17          **THE COURT:**  No, I understand you.  Moving it to

18   Colorado is the forum that should be considering, among

19   other questions, whether it should be stayed or dismissed

20   based on abstention.

21          **MR. KIMREY:**  Exactly, Your Honor.

22          **THE COURT:**  All right.  So some judge is going to

23   have to deal with the *Colorado River* question, whether it's

24   me or the District Court judge in Colorado.

25          **MR. KIMREY:**  I don't know.  I haven't thought this

1   fully through, Your Honor, but I don't know if we would

2   argue *Colorado River* abstention in seeking a stay.  I think

3   we might argue the inherent authority of the court.

4           **THE COURT:**  Sure.  Fair enough.

5           **MR. KIMREY:**  Even though -- I would have to look

6   to see whether there have been *Colorado River* abstention

7   cases that involve a federal and state in the same state.

8           **THE COURT:**  Right.

9           **MR. KIMREY:**  Because I don't think of it that way.

10  I think of it as being in another state.

11          **THE COURT:**  Right.

12          **MR. KIMREY:**  I don't know if we would invoke

13  *Colorado River* abstention again.  We would just say, In the

14  interest of comity and conflicts --

15          **THE COURT:**  Yeah.

16          **MR. KIMREY:**  -- go ahead and stay this, and wait

17  to see what happens.  Because anti-SLAPP -- it's also a

18  federal court.  Right?  So the federal court is going to

19  defer to Colorado appellate courts and the Colorado Supreme

20  Court on application of anti-SLAPP.  I haven't fully thought

21  through all of the theories, but the idea would be that you

22  need to let this percolate through the Colorado system with

23  this Nason statute, to see what the appellate court and the

24  Supreme Court will do.  And then, if there is still

25  something left when that's all done, we can come back to

1    you.  But it may resolve.

2              **THE COURT:**  Right.

3              **MR. KIMREY:**  Because if -- you know, for instance,

4    if Dominion sees anti-SLAPP ruling in our favor with respect

5    to *Coomer*, you know, they may not want to litigate.  So the

6    federal case may just go away by agreement.

7              **THE COURT:**  Understood.

8              Thank you, Counsel.

9              **MR. KIMREY:**  Thank you, Your Honor.

10             **THE COURT:**  So thank you for the arguments this

11   morning and for the papers.  I am going to take the matter

12   under advisement.

13             As I noted earlier, obviously, I expect that

14   should there be any substantial developments in the Colorado

15   Coomer action, that the parties should notify me.  I'm not

16   going to just sit here and wait for something to happen, but

17   obviously, if I'm in the middle of working on this and

18   something does happen, I would like to know.

19             Other than that, I will take the motion under

20   advisement.  And the parties will hear from me by opinion to

21   follow.  Thank you.

22             (Proceedings concluded at 1:02 p.m.)

23

24

25

1          **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court**

4     **Reporter,** certify that the foregoing is a true and

5     correct transcript of the record of proceedings in the

6     above-entitled matter.

7

8

9

10     ___April 28, 2022___          _/s/_____
              **DATE**                    **Lorraine T. Herman**
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**BY THE COURT:**
**[1]** 12/11
**DEPUTY CLERK:**
**[1]** 3/1
**MR. CLARK: [1]**
4/2
**MR. KIMREY:**
**[62]** 3/25 4/16
4/18 8/7 8/9 8/12
8/16 9/15 9/20
10/2 12/12 13/25
14/4 14/8 17/16
18/18 18/22 19/11
19/14 19/22 25/3
25/10 25/20 31/8
31/11 33/4 33/7
33/18 34/25 41/17
65/19 67/13 67/15
67/18 67/22 68/9
68/19 68/24 69/3
69/21 69/25 70/3
70/11 70/19 70/25
73/12 74/4 74/6
74/24 75/10 75/12
75/21 80/1 80/9
80/20 80/24 81/4
81/8 81/11 81/15
82/2 82/8
**MR. NELSON: [1]**
3/21
**MS. MEIER: [14]**
3/17 54/14 54/17
57/4 57/7 58/11
58/14 58/24 59/13
59/17 60/8 61/1
61/23 62/2
**MS. PEASLEE:**
**[13]** 3/13 41/19
41/25 45/11 46/2
46/22 48/11 48/14
50/3 50/25 51/4
51/11 54/13
**THE COURT: [89]**

**/**
**/s [1]** 83/10

**1**
**1,000 [1]** 53/16
**10 [2]** 1/16 34/22
**100 [1]** 7/14
**1000 [1]** 1/24

**101 [1]** 54/24
**104 [1]** 41/9
**1087 [1]** 41/9
**10th [1]** 42/8
**116 [1]** 56/7
**11:02 [1]** 1/7
**11th [4]** 23/25
42/9 45/1 45/6
**12 [1]** 12/14
**1201 [1]** 1/20
**1292 [1]** 40/21
**1292-ed [1]** 40/20
**13 [1]** 12/22
**1392 [1]** 41/10
**14 [1]** 43/12
**1401 [1]** 2/10
**1404 [18]** 10/18
10/19 15/25 30/18
30/19 30/21 32/12
32/25 35/11 36/6
40/2 40/18 40/23
41/13 61/22 71/22
80/5 80/16
**14th [1]** 5/4
**154 [2]** 11/24
12/10
**155 [1]** 12/21
**156 [1]** 13/6
**158 [1]** 13/20
**15th [1]** 5/4
**16 [1]** 13/11
**17353 [1]** 77/1
**18 [5]** 45/14 57/12
60/10 61/10 72/17
**185 [1]** 23/18
**19 [3]** 57/12 57/18
74/5
**1967 [1]** 21/3
**1997 [1]** 17/10
**1:02 [1]** 82/22
**1:21-2130 [1]** 1/5

**2**
**20 [9]** 1/6 27/15
27/15 57/12 59/10
60/10 61/10 72/18
76/11
**20001 [1]** 2/20
**20005 [1]** 2/10
**2008 [1]** 36/19
**2010 [2]** 56/5 56/7
**2013 [2]** 32/5
32/18
**2019 [1]** 51/21

**2023-3128-33 [1]**
2/11
**202-354-3196 [1]**
2/20
**202-628-7406 [1]**
1/17
**2020 [8]** 5/17 6/25
12/15 12/22 13/11
27/15 42/20 60/13
**2021 [3]** 42/8 42/9
51/3
**2022 [2]** 1/6 83/10
**206-505-3828 [1]**
1/21
**21-2130 [1]** 3/3
**212-page [1]**
43/16
**2130 [2]** 1/5 3/3
**217 [1]** 37/18
**2200 [1]** 2/6
**222 [1]** 2/6
**22314 [1]** 1/17
**24 [3]** 43/21 43/23
43/24
**25 [7]** 12/1 12/2
15/22 16/14 43/19
45/15 66/21
**28 [2]** 40/21 83/10
**2d [2]** 36/18 56/7

**3**
**300 [1]** 43/17
**312-609-7865 [1]**
2/7
**3196 [1]** 2/20
**331-paragraph [1]**
38/4
**3320 [1]** 2/11
**333 [1]** 2/19
**3800 [1]** 1/20
**3828 [1]** 1/21
**3d [3]** 41/9 41/10
51/22

**4**
**4104 [1]** 40/8
**4289 [1]** 77/3
**43 [2]** 38/3 38/12
**44 [1]** 38/12
**45 [1]** 38/13
**48 [1]** 38/3

**5**
**500 [1]** 2/10
**5100 [1]** 1/24

**529 [1]** 51/22
**549 [1]** 51/22
**56 [2]** 16/23 17/24
**564 [1]** 37/2
**566 [1]** 36/18

**6**
**60601 [1]** 2/6
**61 [1]** 43/14
**62 [4]** 18/8 18/13
28/5 37/17
**64 [3]** 18/8 18/13
28/5
**64-page [1]** 43/12
**6720 [1]** 2/19
**6th [1]** 66/17

**7**
**71 [1]** 23/18
**713-653-7895 [1]**
1/25
**723 [1]** 56/7
**7406 [1]** 1/17
**77002 [1]** 1/24
**7865 [1]** 2/7
**7895 [1]** 1/25

**8**
**807 [1]** 37/17
**873 [2]** 37/3 37/17
**886 [1]** 37/3

**9**
**927 [1]** 51/22
**98101 [1]** 1/20

**A**
**a.m [1]** 1/7
**abdicating [2]**
46/8 51/17
**able [3]** 55/24
60/20 60/25
**about [51]** 6/11
6/20 6/21 7/2 7/9
10/7 10/10 11/5
15/6 18/21 18/23
22/15 29/5 34/8
35/6 42/16 42/20
44/25 45/5 46/19
47/23 48/1 48/7
48/13 48/15 49/23
50/16 51/8 55/2
55/10 57/19 57/21
60/22 60/23 61/5
61/18 64/16 66/5

66/14 67/5 69/6
69/8 69/10 69/17
69/19 69/25 71/9
73/12 74/20 74/24
76/14
**above [1]** 83/6
**above-entitled [1]**
83/6
**absence [1]** 66/7
**absentia [1]** 22/9
**absolute [1]**
22/20
**absolutely [3]**
19/23 61/5 72/22
**abstain [3]** 28/17
39/25 79/8
**abstained [1]**
29/2
**abstains [1]**
41/13
**abstentia [3]** 22/9
23/24 40/9
**abstention [43]**
15/25 22/13 22/15
23/14 24/3 24/3
24/6 26/21 28/16
28/17 29/2 29/4
30/13 30/15 40/1
40/12 41/22 44/3
44/17 44/22 44/23
45/21 46/7 46/24
49/13 49/19 52/12
53/23 53/25 54/9
71/5 71/20 71/22
71/23 72/4 72/15
80/4 80/13 80/16
80/20 81/2 81/6
81/13
**abuse [1]** 44/6
**academics [1]**
17/11
**acceleration [1]**
11/8
**access [2]** 31/6
34/21
**according [5]**
13/10 35/21 72/21
73/2 73/5
**accurately [1]**
7/14
**accusations [1]**
64/10
**achieve [1]** 28/19
**acknowledge [4]**

**A**

acknowledge...
[4] 14/17 17/11
44/21 47/5
acknowledged [1]
29/19
acquired [6] 7/17
7/18 7/19 13/18
13/19 32/8
acquisition [1]
32/5
across [6] 22/19
32/15 33/12 54/25
63/4 64/22
act [2] 30/25 58/1
action [12] 1/4
42/18 43/1 43/24
44/9 44/13 44/20
44/22 47/8 55/9
65/12 82/15
actions [3] 43/3
47/1 57/24
activities [1]
56/12
activity [2] 58/10
76/1
actual [11] 21/3
21/8 21/14 21/25
35/25 37/21 54/3
54/5 64/21 70/3
71/11
actually [15] 3/9
7/6 12/2 17/19
22/11 42/22 51/14
57/10 57/21 61/25
68/5 74/16 75/3
79/17 80/15
ad [1] 34/7
adapted [1] 35/22
add [1] 70/22
addition [1] 7/1
Additionally [3]
24/21 35/24 66/5
address [7] 19/24
41/14 41/22 41/23
54/10 56/23 65/21
addressing [1]
11/9
adequate [2] 44/4
44/9
adequately [2]
53/2 74/20
adjudicate [1]
53/16

adjudicating [2]
28/7 53/15
admissible [1]
73/10
admissions [1]
62/4
admitted [1]
17/18
adopted [1] 11/19
advisement [2]
82/12 82/20
advocating [1]
21/19
affect [2] 9/7 9/8
affects [2] 38/21
77/9
affidavits [1]
34/11
affiliation [1]
47/16
afoul [1] 73/7
after [8] 7/4 27/18
27/20 32/15 45/7
56/6 59/22 72/8
afternoon [1]
54/15
again [23] 4/21
17/22 23/23 26/14
26/20 28/11 28/21
30/11 32/8 34/4
35/11 36/10 39/20
40/19 45/20 65/20
66/21 68/11 74/3
76/14 76/19 77/6
81/13
against [11] 8/1
8/6 8/15 32/12
32/24 37/12 38/23
43/12 62/10 66/15
79/14
agency [1] 73/19
agent [1] 58/1
agents [1] 62/7
ago [2] 33/16
77/24
agree [2] 41/3
48/14
agreement [1]
82/6
agrees [1] 53/24
ahead [4] 10/18
50/10 75/25 81/16
aided [1] 2/23
air [2] 63/10 65/2

all [2] 1/7 3/
Alabama [1]
56/11
Alan [1] 22/11
Alexandria [1]
1/17
all [66] 5/22 5/23
6/14 9/9 9/9 11/12
11/25 12/25 13/8
15/9 15/24 15/25
16/14 19/10 21/18
22/4 23/4 24/18
27/1 27/3 28/13
28/15 29/15 31/20
33/13 35/2 36/6
39/9 39/10 45/21
48/17 49/20 49/23
50/2 53/3 55/7
55/21 58/8 59/3
60/2 61/17 62/11
62/23 63/4 63/5
63/20 63/24 63/25
64/4 64/17 65/14
65/15 67/9 69/11
69/11 69/12 72/12
77/20 78/3 78/6
78/8 78/12 78/16
80/22 81/21 81/25
allegation [3]
39/7 57/20 67/12
allegations [13]
8/1 37/21 38/2
38/5 38/8 38/22
38/24 39/19 41/6
58/13 73/11 74/16
77/23
allege [4] 59/6
60/20 74/21 76/23
alleged [15] 7/21
9/24 11/19 18/10
42/17 43/3 43/11
43/19 44/12 45/15
61/10 68/1 74/4
74/20 77/6
allegedly [33]
8/20 8/23 8/25 9/2
9/8 9/16 9/25
11/17 12/2 12/3
12/15 12/18 12/22
13/3 13/6 13/21
15/21 16/14 23/1
25/18 26/7 26/8
27/12 27/14 66/7
66/21 67/8 67/16

75/3 78/5
allow [2] 30/12
41/3
almost [6] 20/10
20/11 28/11 30/24
38/17 39/6
along [2] 17/12
74/8
already [7] 27/22
35/12 44/25 45/16
53/7 54/6 78/13
also [24] 2/13 4/3
4/24 5/1 5/20 5/20
11/9 16/3 16/5
16/16 21/13 26/15
35/3 35/10 50/12
50/13 57/1 59/1
59/6 59/24 61/11
66/7 75/13 81/17
alterego [1] 39/4
alteregos [3] 39/3
48/3 48/4
although [4]
30/20 55/11 67/23
75/17
always [4] 35/13
39/17 39/18 59/2
am [16] 4/22 4/24
11/11 17/16 23/19
26/20 40/11 40/13
40/17 46/20 49/23
50/3 51/8 54/9
74/6 82/11
amazing [1]
22/12
Amended [1] 68/6
American [1] 5/19
among [6] 7/10
43/13 60/7 60/23
61/18 80/18
analogy [1] 17/14
analysis [12] 9/10
10/18 10/19 14/11
15/25 16/1 26/3
26/4 26/5 36/2
44/20 69/12
analytical [1] 58/6
analytically [1]
49/18
analyze [1] 29/11
analyzed [1]
46/18
anchor [1] 72/21

Anderson [1]
34/14
another [14]
11/11 16/4 20/24
25/1 28/25 30/22
32/9 42/14 62/8
73/2 73/6 76/16
79/22 81/10
answer [5] 8/12
51/8 59/14 61/24
65/16
answered [1]
23/6
anti [30] 5/3
18/17 19/4 19/7
19/18 19/22 19/24
20/1 20/8 20/10
20/12 20/13 20/17
23/4 27/24 28/10
28/11 31/25 35/19
35/20 35/22 49/6
50/9 66/8 79/11
79/12 79/13 81/17
81/20 82/4
anti-SLAPP [30]
5/3 18/17 19/4
19/7 19/18 19/22
19/24 20/1 20/8
20/10 20/12 20/13
20/17 23/4 27/24
28/10 28/11 31/25
35/19 35/20 35/22
49/6 50/9 66/8
79/11 79/12 79/13
81/17 81/20 82/4
Antifa [3] 11/2
67/3 71/9
antithetical [1]
37/4
Antrim [1] 13/1
any [34] 4/12
11/16 12/7 15/24
16/2 16/19 18/11
18/21 18/25 19/8
26/11 30/8 33/20
35/7 36/9 39/5
41/14 42/17 46/19
47/15 47/18 48/10
50/6 50/18 53/8
58/10 60/15 64/12
65/16 68/18 75/1
77/7 77/13 82/14
anybody [2] 18/9
79/2

Case 1:21-cv-02130-CJN   Document 48   Filed 04/28/22   Page 26 of 104

**A**

**anyone [2]** 12/14 74/1

**anything [6]** 4/11 12/18 47/10 49/2 61/3 66/16

**anyway [3]** 19/10 27/9 33/20

**anywhere [3]** 37/9 55/12 78/21

**apartment [1]** 60/1

**appeal [2]** 23/5 29/3

**appealable [3]** 40/19 40/23 40/24

**appeals [2]** 20/5 40/20

**APPEARANCES [2]** 1/14 2/3

**appearing [1]** 3/23

**appellate [4]** 30/17 30/18 81/19 81/23

**applicable [2]** 45/22 76/7

**application [11]** 19/22 20/13 23/14 24/5 27/24 63/23 64/4 64/11 64/18 66/8 81/20

**applied [6]** 20/9 20/16 20/22 21/4 64/17 64/22

**applies [18]** 14/13 21/1 26/3 26/4 26/5 36/1 36/14 44/3 49/19 53/21 53/22 54/3 54/4 57/25 63/23 64/20 71/12 72/9

**apply [14]** 20/1 20/21 23/24 35/20 44/7 46/25 48/5 48/17 52/1 69/11 71/8 72/9 79/16 79/18

**applying [4]** 44/1 51/15 53/24 54/5

**approach [3]** 33/5 52/18 52/23

**appropriate [2]** 14/14 29/7

**approved [3]** 57/16 73/24 74/10

**April [2]** 1/6 83/10

**are [154]**

**aren't [2]** 19/20 68/12

**arguably [2]** 16/8 33/17

**argue [5]** 6/10 35/13 59/16 81/2 81/3

**argued [3]** 21/16 47/9 47/13

**arguing [2]** 32/12 33/9

**argument [23]** 1/10 4/8 4/12 4/16 11/21 40/12 40/14 43/4 44/16 45/3 46/24 51/10 51/13 56/24 60/5 61/17 66/1 67/15 68/17 68/20 72/16 79/17 79/25

**arguments [5]** 5/2 32/18 32/19 50/22 82/10

**Arizona [1]** 12/17

**arm [4]** 26/19 38/17 38/19 57/23

**arose [3]** 31/5 33/24 34/3

**around [3]** 47/8 60/9 71/21

**as [113]**

**ask [3]** 13/24 19/17 50/20

**asked [1]** 71/24

**asking [2]** 28/4 54/19

**aspect [1]** 73/4

**asserted [1]** 38/23

**assessing [1]** 6/17

**associated [3]** 12/14 13/1 47/14

**association [1]** 47/15

**assume [7]** 18/18 61/20 67/11 70/8 73/14 73/15 73/16

**assumes [1]** 45/20

**assuming [4]** 8/14 45/22 48/10 60/19

**attach [2]** 76/14 76/20

**attached [5]** 25/23 27/10 59/19 59/20 68/6

**attractive [1]** 27/18

**August [2]** 42/8 42/9

**authenticated [1]** 39/15

**authority [1]** 81/3

**authorized [1]** 47/17

**availability [1]** 36/20

**availing [1]** 58/20

**Avenue [4]** 1/20 2/10 2/19 54/25

**aware [1]** 50/14

**away [1]** 82/6

**B**

**back [9]** 3/11 3/12 6/24 15/3 15/5 27/14 44/15 46/4 81/25

**balance [1]** 72/8

**bankruptcy [3]** 2/18 32/6 32/24

**banks [1]** 52/3

**based [21]** 13/18 18/7 18/12 25/17 25/18 29/22 32/8 32/9 34/5 39/7 55/6 55/22 56/11 58/18 59/7 63/18 78/9 78/10 80/15 80/16 80/20

**basic [1]** 50/25

**basically [4]** 15/11 20/18 71/10 79/9

**basis [3]** 37/23 40/24 61/8

**be [88]**

**beat [2]** 16/16 66/15

**became [3]** 27/17 50/24 73/3

**because [101]**

**becomes [1]** 79/3

**Beedle [1]** 34/13

**been [23]** 12/1 17/9 18/20 20/9 23/23 23/24 25/2 27/4 31/25 34/11 37/15 59/3 60/25 61/18 61/21 61/25 62/8 73/7 77/19 77/25 78/23 79/1 81/6

**before [26]** 1/10 4/25 6/8 7/4 7/8 8/11 8/24 12/8 26/23 27/1 27/10 27/13 48/11 49/17 49/25 50/8 50/13 50/15 61/16 65/22 65/24 68/2 68/8 69/12 69/13 78/24

**begin [3]** 39/7 43/2 62/9

**beginning [2]** 3/5 26/12

**behalf [6]** 3/15 3/19 4/4 38/9 47/18 47/20

**being [14]** 5/19 16/20 26/7 26/8 32/3 46/18 50/12 52/5 58/17 58/18 78/24 78/25 80/14 81/10

**belabor [1]** 53/3

**belaboring [1]** 56/17

**belief [3]** 39/8 39/9 56/3

**believe [13]** 24/2 27/11 29/20 40/6 40/22 40/22 40/22 42/13 45/3 48/1 53/21 66/3 77/24

**believed [1]** 55/2

**benefit [1]** 6/13

**benefits [1]** 58/21

**Beretta [1]** 52/21

**Berkeley [1]** 6/3

**best [3]** 68/17 68/17 68/20

**better [4]** 57/3 60/5 61/23 77/5

**between [23]** 6/18 8/21 20/22

**becomes [1]** 79/3 22/7 22/17 23/22 29/5 36/12 43/11 44/5 44/10 48/24 50/3 50/17 56/25 57/3 64/13 66/9 66/12 71/23 77/22 79/4 79/5

**beyond [2]** 68/5 76/2

**bias [1]** 35/8

**Biden [1]** 19/5

**big [6]** 29/4 49/10 55/10 66/10 66/14 66/15

**binding [3]** 29/14 48/13 48/15

**bit [5]** 10/19 44/15 47/2 54/18 73/23

**blah [6]** 74/11 74/11 74/11 74/11 74/11 74/11

**BLAINE [3]** 2/4 4/1 4/21

**blocks [6]** 54/24 55/25 61/13 62/19 62/20 62/25

**Board [1]** 34/14

**Bob [1]** 17/12

**Bobb [5]** 16/4 16/7 26/5 61/14 62/22

**Bobby [1]** 25/1

**body [1]** 35/23

**boils [2]** 20/18

**both [10]** 7/4 8/3 12/23 19/14 24/19 37/18 41/10 57/1 60/5 70/1

**bottom [1]** 12/10

**bound [7]** 9/14 9/19 48/20 49/2 49/9 68/19 70/17

**breadth [1]** 28/8

**break [1]** 8/17

**BRIAN [1]** 2/9

**brief [6]** 8/5 34/10 41/2 55/12 64/24 77/14

**briefed [1]** 18/25

**briefing [14]** 5/5 5/10 14/16 14/18 27/2 32/14 32/15 36/11 36/13 36/13

Case 1:21-cv-02130-CJN Document 49 Filed 04/28/22 Page 87 of 104

# B

**briefing... [4]** 36/14 52/6 53/3 72/6
**briefings [2]** 49/7 50/9
**briefly [1]** 53/4
**briefs [2]** 24/2 50/22
**bring [4]** 47/18 79/2 79/2 79/12
**broad [1]** 58/23
**broadcast [9]** 15/2 15/6 15/7 15/16 15/18 47/14 64/16 65/5 65/7
**broadcasts [1]** 15/9
**broader [1]** 21/9
**brought [2]** 62/1 62/8
**BRYAN [2]** 2/4 4/3
**bunch [1]** 77/12
**bunk [1]** 73/9
**burden [2]** 37/25 37/25
**bureau [7]** 14/22 36/22 36/25 37/6 37/9 55/18 55/20
**Burford [2]** 24/3 44/21
**business [4]** 38/19 58/2 64/14 78/3

# C

**c-o-m-e-d-y [1]** 71/1
**c-o-m-i-t-y [1]** 70/24
**Calder [2]** 61/2 77/9
**California [11]** 20/11 20/13 20/15 20/16 20/20 31/22 60/17 64/2 74/1 77/1 77/4
**call [8]** 6/4 11/2 11/4 15/12 64/13 67/4 69/6 71/9
**called [1]** 13/11
**came [1]** 55/7
**camera [1]** 15/4

**cameramen [1]** 62/21
**campaign [1]** 63/8
**can [29]** 4/11 9/18 10/21 13/24 15/8 17/14 22/20 29/13 29/22 30/25 30/25 33/2 33/6 38/14 40/8 40/9 44/23 46/16 48/8 48/19 50/24 57/24 58/3 59/17 61/2 63/11 71/10 79/2 81/25
**can't [11]** 10/23 26/2 39/23 39/23 49/3 65/10 65/13 69/22 71/15 71/16 76/23
**Canada [1]** 63/18
**cannot [4]** 44/8 48/19 49/12 55/14
**capable [1]** 54/5
**Capitol [2]** 54/25 66/18
**caption [1]** 76/25
**card [2]** 55/14 78/3
**care [5]** 11/5 67/5 69/7 73/12 80/14
**CARL [1]** 1/10
**Carolina [1]** 13/22
**carry [2]** 55/15 61/3
**case [161]**
**casebook [1]** 22/10
**cases [33]** 5/13 6/18 8/3 8/21 23/11 27/1 31/18 35/16 42/11 42/13 43/11 43/22 46/5 46/8 46/10 46/13 46/15 47/23 50/14 51/7 51/14 52/21 54/7 61/6 61/15 65/3 66/6 67/8 77/12 77/13 77/20 78/22 81/7
**catalyst [1]** 19/6
**categories [4]** 12/3 15/22 16/14 66/22

**category [5]** 12/23 13/4 13/7 13/21 43/19
**causing [3]** 38/20 38/20 58/2
**caveats [2]** 75/1 75/9
**center [4]** 55/9 56/5 56/10 75/24
**centered [1]** 64/14
**CEO [7]** 7/2 48/1 72/20 74/22 75/2 75/17 77/10
**certain [6]** 6/22 17/7 20/17 23/2 53/8 72/2
**certainly [4]** 42/12 46/17 49/1 49/15
**certify [1]** 83/4
**cetera [5]** 5/21 11/8 20/19 39/3 55/17
**challenge [3]** 16/6 16/9 19/2
**challenging [1]** 54/19
**Chanel [10]** 14/5 15/11 15/16 16/3 25/22 25/23 26/1 61/14 62/21 77/17
**changed [1]** 59/23
**character [1]** 63/8
**characterized [1]** 6/5
**CHARLES [22]** 2/13 16/10 22/11 24/21 24/25 26/4 38/13 39/6 39/17 39/22 40/14 57/23 58/16 59/2 59/4 59/16 59/20 72/20 76/12 76/23 76/25 77/7
**chart [2]** 68/1 68/8
**checking [2]** 60/16 74/1
**Chicago [3]** 2/6 4/22 28/20
**choice [10]** 31/4 31/4 31/13 31/15

**31/23 32/20 32/2 33/20 33/22 62/12
**chose [1]** 63/10
**Christina [4]** 16/4 26/5 61/14 62/22
**chronological [1]** 11/25
**chronology [1]** 50/25
**Circa [1]** 77/1
**circuit [20]** 19/25 20/5 20/6 20/14 20/20 32/1 33/10 33/10 35/21 37/15 37/16 37/18 41/10 51/24 51/25 52/9 52/14 52/17 52/22 72/5
**Circuit's [3]** 19/18 51/21 52/2
**circuit-level [2]** 20/6 20/14
**circuits [1]** 33/13
**circumstance [5]** 45/18 45/22 47/25 53/25 72/14
**circumstances [7]** 20/18 48/21 51/16 52/1 52/7 53/1 72/2
**circumventing [1]** 60/15
**CISA [1]** 7/22
**citation [1]** 36/16
**cite [9]** 24/1 36/11 36/15 56/6 57/21 71/15 71/16 76/18 77/13
**cited [10]** 24/2 28/20 32/14 37/13 47/22 59/21 63/12 75/23 77/14 79/6
**cites [2]** 37/16 41/9
**citing [1]** 20/14
**citizen [1]** 31/22
**citizens [1]** 31/22
**city [1]** 62/14
**civil [1]** 3/3
**claim [8]** 9/14 29/13 45/8 62/4 67/11 67/12 69/16 69/18
**claims [7]** 6/20

**30/8 31/5 33/24 34/3 45/23 54/3
**CLARE [2]** 1/16 3/19
**clarity [2]** 29/19 29/20
**CLARK [2]** 2/4 4/3
**class [2]** 22/13 22/14
**clear [6]** 23/23 23/24 43/10 50/22 52/9 53/10
**clearly [7]** 19/25 24/20 27/9 34/19 38/25 42/13 79/17
**clock [1]** 4/10
**closer [1]** 75/2
**CNN [1]** 5/20
**co [2]** 41/21 41/23
**co-counsel [2]** 41/21 41/23
**coincidentally [1]** 36/17
**collaborating [2]** 61/15 65/6
**collaboration [1]** 63/9
**collateral [5]** 8/19 8/24 9/4 9/7 48/17
**colleague [4]** 3/20 42/24 54/10 64/19
**colloquy [1]** 48/7
**Colorado [167]**
**Colorado's [1]** 20/10
**COLUMBIA [12]** 1/2 12/7 14/25 15/23 15/24 20/1 20/4 26/11 51/22 60/8 76/2 76/5
**come [2]** 4/18 81/25
**comes [2]** 13/9 73/1
**coming [1]** 63/2
**comity [8]** 70/24 70/25 71/2 71/2 71/17 80/7 80/13 81/14
**comments [3]** 6/11 6/14 6/15
**communications [1]** 78/15

**C**

**companies [3]**
5/15 15/1 37/5
**companion [1]**
32/9
**company [5]**
24/23 25/18 51/3
60/23 74/22
**compare [1]** 43/9
**complaint [33]**
5/24 11/22 11/24
13/11 16/19 16/22
17/24 18/3 27/13
37/22 38/4 38/5
41/7 41/11 42/8
43/8 43/9 43/13
43/17 43/21 57/9
57/18 59/6 66/13
67/21 67/25 68/6
72/18 76/11 76/22
76/25 77/2 77/23
**complement [1]**
37/12
**complete [6]** 24/5
30/21 44/5 44/10
45/23 70/12
**completely [2]**
46/2 58/13
**completely-overla
pping [1]** 46/2
**comport [1]**
26/15
**comprehensive
[1]** 53/14
**computer [1]**
2/23
**computer-aided
[1]** 2/23
**computers [1]**
62/24
**concede [7]**
24/17 34/22 58/6
58/22 58/25 59/10
67/20
**conceded [1]**
72/3
**concedes [1]**
16/22
**concern [8]** 21/2
21/6 21/8 21/14
21/23 21/25 36/3
36/4
**concerning [10]**
6/12 6/14 6/16

6/22 10/4 10/5
10/8 10/11 70/4
70/10
**concerns [1]**
80/13
**conclude [1]**
64/19
**concluded [2]**
25/8 82/22
**conclusions [5]**
6/7 23/17 23/19
68/4 68/7
**conclusive [1]**
8/16
**conclusory [7]**
38/7 38/15 38/23
39/20 41/6 57/20
74/14
**concurrence [1]**
29/21
**conduct [4]** 25/19
43/14 43/17 64/5
**conducted [1]**
18/17
**Cone [1]** 44/1
**confined [1]** 52/3
**conflict [1]** 71/20
**conflicts [1]**
81/14
**congested [1]**
64/23
**congestion [1]**
35/13
**connected [2]**
7/11 7/15
**connecting [2]**
58/18 58/21
**connection [4]**
7/16 48/24 57/1
78/16
**connections [3]**
7/10 7/13 7/14
**consider [3]** 24/8
30/23 39/15
**considerable [1]**
74/15
**consideration [2]**
22/16 42/12
**considered [1]**
45/7
**considering [2]**
50/7 80/18
**conspiracy [1]**
23/20

**constitution [3]**
2/19 21/10 54/25
**CONT'D [1]** 2/3
**contacts [3]**
25/12 56/12 76/4
**content [3]** 55/24
57/22 73/25
**context [1]** 4/24
**continue [3]**
30/13 59/16 70/21
**contrast [2]** 28/1
43/16
**control [3]** 63/11
72/22 73/25
**controls [2]** 18/1
63/14
**controversy [3]**
6/6 13/1 28/7
**convenience [5]**
31/5 31/6 34/4
34/5 34/20
**conveniens [2]**
30/20 34/17
**convenient [4]**
11/24 34/4 62/18
63/1
**converged [1]**
63/20
**convincing [1]**
64/9
**Coomer [60]** 5/1
5/7 6/3 6/13 6/18
6/23 7/4 7/15 7/19
7/20 8/6 8/14 8/22
9/3 9/13 9/23 10/7
10/11 10/12 10/14
13/9 13/10 13/14
13/16 13/19 16/17
16/18 16/20 16/20
21/16 21/24 22/25
23/15 23/17 23/22
24/14 27/7 35/6
43/6 43/11 43/25
47/8 47/9 47/13
47/16 48/4 65/11
67/24 68/4 68/13
68/19 68/21 69/8
69/16 69/23 69/25
70/18 71/11 82/5
82/15
**Coomer's [3]**
43/8 43/21 50/23
**coordinated [1]**
63/8

**copies [4]** 32/17
33/2 59/21 76/20
**copy [2]** 28/11
62/24
**Copyright [1]**
30/25
**core [4]** 5/12 5/12
5/13 23/12
**Corp [1]** 31/20
**corporate [3]**
39/1 40/16 58/9
**correct [7]** 14/9
18/18 18/19 42/2
42/14 51/1 83/5
**correspondent [2]**
14/23 16/3
**could [25]** 8/24
9/4 10/8 10/9
21/20 21/21 25/4
30/18 31/14 35/8
35/25 36/5 52/11
60/22 61/18 61/21
64/13 69/1 70/12
71/17 71/22 71/25
72/3 75/17 80/6
**couldn't [3]** 25/2
25/6 62/8
**counsel [28]** 3/5
3/7 3/11 3/12 3/21
4/2 4/5 4/9 4/14
4/22 4/25 5/1
26/10 41/16 41/21
41/23 45/2 48/7
49/6 54/13 55/11
57/9 59/1 60/22
63/12 65/19 65/19
82/8
**count [1]** 52/8
**counties [3]** 18/8
18/14 28/5
**counting [2]**
52/10 52/17
**country [4]** 5/16
22/19 63/4 64/22
**County [1]** 13/1
**couple [5]** 37/16
41/9 47/12 52/4
57/9
**course [4]** 4/13
18/16 32/7 51/5
**court [136]**
**court's [4]** 44/20
51/17 52/1 54/19
**courthouse [2]**

55/25 62/19
**courtroom [3]** 3/8
26/10 33/6
**courts [19]** 2/18
10/19 17/15 20/12
20/16 20/20 22/10
22/11 23/23 28/17
30/23 34/22 41/7
46/7 51/25 53/5
64/22 70/2 81/19
**cover [2]** 55/24
56/1
**coverage [3]** 13/2
23/21 72/25
**covered [4]** 5/19
6/20 51/6 53/2
**covering [3]** 5/23
17/5 17/6
**CRC [1]** 2/17
**create [1]** 47/15
**creates [2]** 71/20
78/16
**critical [2]** 22/6
66/25
**criticized [1]** 7/12
**currently [1]**
50/15
**CV [1]** 1/4

**D**

**D.C [93]**
**D.C. [4]** 55/6
55/22 58/18 58/19
**D.C.-based [3]**
55/6 55/22 58/18
**D.C.-focused [1]**
58/19
**D.D.C [1]** 36/18
**damage [1]** 18/10
**damages [10]** 6/1
8/22 9/2 29/13
29/22 44/20 44/22
45/24 45/25 71/25
**DATE [1]** 83/10
**day [3]** 19/8 64/22
65/24
**days [1]** 3/8
**DC [3]** 1/6 2/10
2/20
**deaf [1]** 30/10
**deal [3]** 29/5
43/22 80/23
**dealing [2]** 48/21
66/19

# D

dealt [1] 44/21
decided [2] 65/3 65/6
decides [1] 54/4
deciding [1] 64/25
decision [19] 8/21 18/18 19/18 20/25 31/18 42/4 42/9 42/10 45/6 46/18 48/20 49/2 52/5 55/13 55/14 56/2 56/6 66/10 71/3
decisions [4] 37/18 52/16 52/16 52/20
declaration [2] 39/14 59/25
declarations [1] 34/11
dedicated [1] 43/17
dedicates [1] 43/13
deem [1] 36/3
deeper [1] 22/8
defacto [1] 73/3
defam [1] 9/25
defamation [13] 6/1 6/10 6/20 9/24 17/8 17/11 17/13 17/25 28/24 28/25 42/25 43/24 78/17
defamatory [56] 8/20 8/23 8/25 9/3 9/8 9/17 11/16 11/17 11/20 12/2 12/3 12/13 12/15 12/19 12/23 13/3 13/7 13/21 15/21 16/14 23/1 27/12 27/14 42/18 42/25 43/3 43/18 47/10 47/11 47/14 54/22 55/16 55/19 57/14 57/22 60/6 61/4 62/6 62/22 63/8 64/10 64/16 65/5 65/7 66/21 67/16 68/1 68/7 69/18 69/21 73/17 73/19 74/17 74/23 75/3

defame [1] 25/18
defamed [5] 18/1 18/1 63/16 63/19 67/13
defendant [4] 2/4 25/23 72/14 72/19
defendant's [3] 4/9 31/4 33/22
defendants [33] 1/8 4/2 4/4 4/22 5/3 8/15 19/3 25/7 25/7 25/15 42/5 43/12 43/14 43/15 43/18 47/1 47/8 47/22 52/22 53/20 54/1 54/21 54/22 56/2 56/14 61/1 61/15 62/5 62/15 64/7 65/16 67/13 78/22
defendants' [5] 4/6 43/4 44/16 46/24 56/24
defense [4] 17/13 48/7 60/21 65/18
defenses [1] 69/12
defer [3] 79/24 80/1 81/19
deference [6] 31/16 32/22 33/12 33/21 62/13 71/3
definitely [9] 5/11 12/16 14/11 17/20 17/21 18/12 19/15 20/3 72/10
degree [3] 6/22 22/16 23/2
Delaware [1] 31/21
delay [1] 27/11
delayed [1] 30/5
denied [3] 27/3 31/8 31/11
Denver [2] 6/9 34/14
deny [1] 41/8
depending [1] 30/17
depends [3] 48/12 49/4 49/7
depose [1] 35/6
deputy [1] 33/7

described [1] 51/15
describing [1] 45/2
desire [1] 35/9
despite [2] 36/20 36/21
detail [2] 57/19 60/9
detailed [1] 51/24
determination [3] 9/19 10/7 50/21
determine [1] 10/4
determined [2] 8/5 69/16
developments [1] 82/14
devices [1] 62/24
diced [1] 15/18
dicta [1] 29/12
dictate [3] 14/13 16/25 17/2
did [23] 6/6 6/9 11/25 14/17 21/19 26/24 26/25 27/6 29/8 29/9 29/10 31/23 34/9 56/2 59/19 59/22 61/4 62/6 66/10 72/7 72/10 72/10 79/18
didn't [25] 6/11 6/12 9/20 29/15 29/18 30/3 31/19 31/19 31/20 32/15 36/11 36/22 55/11 58/10 59/24 60/2 62/4 62/5 65/25 66/18 76/20 77/13 78/9 78/11 79/17
Diego [16] 15/9 15/10 15/13 15/17 15/19 26/14 36/18 36/22 36/23 39/17 39/18 55/17 59/3 77/3 78/4 78/10
Diegoans [1] 25/1
differ [1] 66/2
difference [4] 22/24 54/1 66/9 70/12
different [24] 19/21 19/24 22/6 30/21 33/16 33/16

described [1] 34/8 36/2 43/12
43/19 47/25 49/3 49/6 49/18 49/25 50/7 59/12 63/20 67/6 67/7 70/15 72/7 73/14 78/8
digital [1] 34/24
digitally [1] 15/17
direct [3] 57/12 60/5 61/4
directed [8] 25/12 57/22 58/10 60/6 60/17 62/7 74/23 76/1
directing [4] 61/13 75/14 75/15 75/15
direction [4] 55/5 58/7 60/22 73/19
directives [1] 73/7
directly [1] 58/1
director [3] 6/24 68/15 73/3
disagree [7] 6/2 6/16 10/10 21/17 36/4 53/20 61/20
disagreement [1] 22/15
discernible [1] 23/21
disclosure [1] 11/6
discovery [5] 9/9 41/4 41/8 41/12 59/19
discretion [3] 29/24 30/21 44/6
discretionary [3] 40/8 40/19 40/21
discussed [2] 49/5 53/7
dismiss [19] 4/7 17/20 27/2 27/3 29/13 29/22 29/25 30/12 38/10 40/2 42/5 42/9 45/25 46/16 50/3 54/7 67/10 71/25 72/3
dismissal [10] 27/19 29/5 29/7 31/17 44/19 46/20 49/16 50/6 71/24 80/4

dismissed [2] 29/16 80/19
dismissing [4] 40/1 43/4 44/22 45/8
dispositive [1] 76/7
disregard [2] 22/3 22/5
dissemination [1] 76/3
distinction [11] 20/22 20/24 22/24 23/21 26/6 26/13 29/5 36/5 42/23 66/12 79/4
distinctions [1] 27/23
distinguishable [1] 75/25
district [37] 1/2 1/2 1/11 2/18 6/9 12/7 14/25 15/23 15/24 20/1 20/4 20/14 26/11 28/20 28/22 29/1 32/4 32/10 32/21 37/14 38/20 38/21 38/21 47/24 51/21 51/25 52/13 52/14 52/15 52/19 52/20 58/24 60/8 64/23 76/2 76/5 80/24
District-level [1] 20/14
dive [1] 22/8
diversified [3] 20/25 28/1 28/9
divide [1] 41/22
do [36] 12/5 13/5 13/8 13/22 14/22 14/23 16/15 18/20 27/19 30/11 31/23 35/16 35/18 37/24 39/5 40/22 44/24 45/5 52/10 53/3 53/11 55/19 57/6 58/6 58/22 62/7 63/20 64/14 66/3 71/22 73/12 75/14 76/15 76/17 79/9 81/24
docket [1] 17/21
doctor [3] 6/4 6/4

**D**

doctor... [1] 6/5
doctrine [14] 6/14
6/23 11/19 20/19
39/1 39/4 40/17
43/5 44/2 44/7
45/4 46/25 68/23
70/6
doctrines [4]
22/13 22/14 24/6
69/11
documents [2]
35/2 62/24
does [18] 7/9
8/12 10/5 10/6
10/13 12/20 15/7
19/11 21/2 30/10
46/13 47/15 48/17
71/8 71/13 79/16
79/17 82/18
doesn't [34]
12/15 12/16 12/17
16/25 16/25 17/2
18/9 20/1 20/21
21/23 26/15 35/20
37/25 39/10 39/25
40/1 46/25 47/19
48/5 63/11 66/15
68/22 72/9 72/23
76/9 76/22 76/23
77/6 77/7 77/8
77/21 79/5 79/16
79/21
doing [3] 52/24
65/7 78/13
domain [1] 57/21
domicile [6] 16/9
17/25 18/2 34/1
78/18 78/19
DOMINION [138]
Dominion's [8]
5/23 7/2 7/2 9/11
28/4 32/5 33/9
40/4
Dominion-izing
[1] 10/13
Dominioniz [4]
11/15 15/15 16/19
16/21
Dominioniz-ing
[4] 11/15 15/15
16/19 16/21
don't [68] 4/9
4/10 4/12 5/8 7/8

17/18 17/19 21/20
22/20 22/21 24/4
26/24 27/4 27/6
30/16 34/16 38/15
40/22 41/1 46/12
47/3 50/18 50/20
52/12 53/3 57/20
58/25 58/25 59/3
59/3 59/10 59/11
59/14 59/20 59/25
60/1 60/1 60/3
64/14 66/23 67/17
68/23 69/2 69/6
71/21 72/7 72/18
73/16 74/3 74/12
76/6 76/10 76/13
76/14 76/17 76/19
77/13 78/6 78/16
78/18 80/12 80/25
81/1 81/9 81/12
Donald [1] 17/6
done [6] 4/11
15/10 41/11 43/10
54/6 81/25
doubt [1] 49/12
doubtful [1] 61/2
down [2] 5/22
20/18
Dr [2] 7/20 13/16
Dr. [33] 6/3 6/13
6/18 6/23 7/4 7/15
7/19 8/6 8/14 9/13
10/11 10/14 13/9
13/10 13/14 13/19
16/17 16/18 16/20
16/20 21/16 21/24
23/17 23/22 27/7
35/6 50/23 68/4
68/19 68/21 69/8
69/16 69/23
Dr. Coomer [32]
6/3 6/13 6/18 6/23
7/4 7/15 7/19 8/6
8/14 9/13 10/11
10/14 13/9 13/10
13/14 13/19 16/17
16/18 16/20 16/20
21/16 21/24 23/17
23/22 27/7 35/6
68/4 68/19 68/21
69/8 69/16 69/23
Dr. Coomer's [1]
50/23

draw [1] 17/10
drawing [1] 7/13
drawn [1] 7/14
drops [1] 18/24
drum [2] 16/16
66/15
due [3] 26/16
37/4 61/7
duplicate [1]
46/15
duplication [2]
53/11 53/17
duplicative [1]
53/10
during [3] 5/17
6/25 7/24
DUSTIN [1] 1/15
dwell [1] 33/18

**E**

each [6] 5/9 12/4
15/22 38/11 38/17
66/22
earlier [2] 52/16
82/13
early [1] 30/18
ears [1] 30/10
ease [2] 31/6
34/21
easier [1] 3/10
easiest [2] 40/6
40/17
ed [1] 40/20
Edge [6] 51/21
52/9 52/20 53/10
72/6 72/7
editorial [3] 60/16
60/16 74/1
educate [1] 7/9
effect [8] 8/6 8/16
8/24 9/4 9/24 48/8
48/10 48/17
effectively [2]
25/22 52/8
efficiency [4]
46/11 50/19 65/4
65/8
efficient [1] 30/11
effort [1] 39/5
eight [1] 26/23
either [9] 9/14
29/6 29/15 29/25
40/1 46/18 61/21
69/16 80/4

election [20] 5/17
6/25 7/5 7/22 7/25
8/2 16/24 21/22
35/9 42/21 55/2
55/10 60/13 66/23
66/24 66/24 67/2
67/17 75/6 75/7
elections [3]
16/24 17/23 18/5
elemental [1]
69/12
eliminate [1]
80/13
else [6] 12/18
61/3 61/6 61/8
61/9 74/1
elsewhere [1]
76/16
emphasize [1]
72/1
employed [1]
27/8
employee [6]
7/24 47/17 47/25
50/24 51/2 73/6
employees [5]
35/4 35/8 47/23
55/4 73/7
employer [1] 48/4
employers [1]
47/23
employs [1]
62/21
ends [1] 60/19
engaged [1] 22/5
engaging [2]
25/19 32/23
enough [8] 36/17
41/11 55/20 73/21
74/4 74/19 74/21
81/4
entire [2] 35/22
74/25
entirely [1] 46/1
entities [3] 31/21
31/21 38/25
entitled [2] 32/22
83/6
entity [6] 16/2
18/1 37/6 38/9
48/2 67/7
entrepreneur [1]
24/25

equipment [1]
5/25
equitable [1]
29/12
equity [1] 46/10
Eric [10] 11/3
43/8 43/11 43/21
47/9 47/13 47/16
48/3 67/4 69/6
Erie [1] 20/19
escaping [2] 29/9
29/10
especially [1]
61/19
essence [1] 7/19
essentially [5] 5/7
12/19 29/16 50/1
50/2
establish [2]
38/16 39/4
established [3]
56/14 57/11 63/3
establishes [2]
68/24 74/12
establishment [1]
61/12
estoppel [5] 8/19
8/24 9/4 9/7 48/17
et [7] 1/7 3/4 5/21
11/8 20/19 39/3
55/17
et cetera [5] 5/21
11/8 20/19 39/3
55/17
evaluate [1] 35/25
even [27] 6/12 9/7
10/10 18/2 22/21
22/23 24/17 26/9
35/20 38/24 38/25
39/15 40/9 40/10
40/19 41/11 53/7
53/9 58/19 64/19
70/8 73/1 75/2
75/16 76/13 76/19
81/5
event [1] 33/11
events [2] 62/4
64/25
eventually [4] 7/9
7/17 9/21 70/21
ever [2] 12/6
34/16
every [9] 14/21
14/22 15/22 18/23

**E**

**every... [5]** 64/22 66/22 67/11 72/14 73/4
**everybody [3]** 24/18 34/5 36/25
**everything [4]** 10/25 34/24 71/10 72/22
**evidence [4]** 22/4 32/2 57/21 73/10
**exact [9]** 9/16 28/11 38/22 45/14 69/7 69/24 71/3 71/11 71/18
**exactly [3]** 49/11 52/17 80/21
**examples [2]** 11/13 74/9
**except [2]** 28/13 39/7
**exception [16]** 14/19 26/18 36/11 36/12 36/25 37/11 37/17 37/17 37/19 39/13 39/24 40/16 55/13 75/9 75/20 75/23
**exceptional [8]** 49/13 51/16 51/17 52/1 52/7 52/25 52/25 53/25
**excessive [1]** 53/16
**excuse [2]** 45/10 52/14
**Exec [1]** 13/12
**executed [1]** 63/9
**executive [1]** 68/16
**exercise [2]** 37/19 51/18
**exercising [1]** 73/25
**Exhibit [3]** 23/15 43/7 68/8
**existed [2]** 23/22 25/15
**existence [2]** 55/18 55/20
**exists [2]** 53/21 55/22
**expect [2]** 19/13 82/13

**expected [1]** 18/22
**expert [1]** 9/10
**explained [1]** 35/12
**explicit [1]** 57/24
**explicitly [1]** 48/22
**expressly [1]** 74/23
**extend [1]** 21/8
**extended [2]** 21/4 21/5
**extensive [1]** 61/9
**extent [2]** 35/2 49/24
**extremely [1]** 40/12

**F**

**F-ing [1]** 13/12
**F.2d [2]** 37/17 37/18
**F.Supp [1]** 36/18
**face [3]** 6/6 23/20 47/10
**Facebook [1]** 11/6
**faced [3]** 46/12 46/14 72/13
**facially [2]** 65/1 65/2
**facie [8]** 37/23 38/1 38/16 39/10 39/22 40/4 41/5 74/13
**fact [23]** 6/7 11/17 14/10 23/12 23/16 23/19 31/25 34/10 36/21 42/11 45/7 46/9 52/13 52/19 54/6 60/15 61/13 68/4 68/7 70/3 71/7 74/1 78/9
**factor [11]** 22/16 27/22 32/25 34/23 52/10 52/17 53/19 63/6 64/10 72/8 72/8
**factor-counting [2]** 52/10 52/17
**factors [21]** 24/8 28/13 28/15 30/23

**31/3 31/4** 1 35/10 36/6 51/15 52/7 52/8 52/11 52/24 61/23 62/10 63/12 63/22 64/4 64/17 72/11 72/15
**facts [4]** 57/11 68/13 75/1 75/19
**factual [4]** 5/13 9/9 23/2 42/2
**failed [3]** 38/1 39/21 41/5
**fails [3]** 44/17 46/24 47/12
**failure [4]** 38/10 40/3 40/4 67/11
**Fair [1]** 81/4
**fairly [4]** 20/10 22/12 28/18 53/2
**fall [2]** 30/10 36/10
**false [5]** 63/1 69/17 69/20 69/22 74/8
**falsity [2]** 22/3 22/5
**familiar [4]** 5/5 17/16 31/11 45/3
**Familiarity [1]** 35/19
**family [1]** 24/23
**family-owned [1]** 24/23
**fantastic [1]** 30/19
**far [3]** 50/10 50/16 77/10
**fashion [1]** 57/20
**faster [2]** 30/9 35/16
**father [1]** 24/24
**favor [5]** 33/1 36/6 63/24 64/4 82/4
**favors [2]** 63/6 64/10
**Fe [1]** 77/1
**featured [3]** 11/14 16/21 55/5
**federal [38]** 14/24 16/24 17/1 17/15 20/2 20/9 20/17 21/10 22/10 22/10 22/18 23/9 23/11

30/22 32/1 35/15 44/22 46/6 46/7 53/20 64/22 65/11 65/12 71/2 71/17 79/5 79/7 79/8 79/14 80/1 80/11 81/7 81/18 81/18 82/6
**federalize [1]** 17/4
**federally [1]** 20/22
**feed [4]** 39/8 39/12 39/14 76/9
**feel [2]** 3/8 4/18
**Feels [1]** 4/19
**few [1]** 47/22
**fiduciaries [1]** 48/21
**figure [4]** 21/17 21/18 21/24 36/1
**figures [3]** 11/9 21/5 21/13
**file [1]** 42/10
**filed [20]** 11/23 26/23 26/24 27/7 27/13 27/20 31/17 32/11 32/11 34/11 42/5 42/7 42/11 43/16 46/2 51/2 61/19 61/21 65/23 68/14
**filing [2]** 31/16 32/23
**filmed [2]** 55/3 62/16
**filming [1]** 64/15
**finally [5]** 28/3 40/25 65/9 78/22 79/4
**find [11]** 9/2 10/19 25/14 59/19 59/24 69/14 70/2 70/5 70/5 70/7 71/18
**finding [1]** 25/24
**findings [6]** 6/7 23/16 23/18 68/3 68/4 68/7
**finds [3]** 36/20 49/7 71/7
**fine [3]** 29/6 29/25 79/20

**fire [2]** 30/2 30/3
**fired [2]** 72/24 73/8
**firm [1]** 3/19
**first [24]** 12/13 19/24 22/16 22/16 24/13 25/3 27/15 32/11 39/9 41/22 44/18 46/25 47/7 47/12 47/21 49/10 52/5 57/7 62/1 62/11 63/24 68/6 76/21 79/6
**flag [2]** 55/1 66/17
**flagged [3]** 22/10 33/2 33/8
**flipped [1]** 42/22
**Flipping [1]** 13/6
**focus [3]** 13/14 56/18 56/21
**focused [2]** 34/23 58/19
**folks [4]** 55/6 60/16 63/10 63/19
**follow [4]** 21/11 40/20 79/17 82/21
**following [1]** 74/8
**footnote [2]** 40/25 41/1
**fora [2]** 56/25 57/3
**foreclosed [1]** 70/17
**forecloses [1]** 69/19
**foregoing [1]** 83/4
**foremost [2]** 17/11 24/14
**former [6]** 7/24 35/4 48/4 50/24 72/21 73/2
**forth [1]** 67/25
**forum [23]** 14/13 24/12 24/13 30/19 31/4 31/4 31/13 31/15 31/17 32/20 32/21 32/23 33/1 33/11 33/12 33/20 33/22 34/16 42/3 61/23 62/12 66/5 80/18
**forward [5]** 9/23

**F**

**forward... [4]**
24/15 24/16 49/17
50/19
**Foster [1]** 52/21
**Foster-el [1]**
52/21
**found [14]** 14/25
21/1 22/19 24/2
24/4 25/22 25/25
26/1 32/1 56/9
59/17 60/2 71/19
77/17
**fourth [1]** 64/10
**Fox [3]** 5/20
31/19 31/20
**frame [1]** 43/20
**framing [2]** 43/1
44/14
**frankly [8]** 24/17
29/6 34/16 49/3
49/11 54/18 66/14
66/18
**fraud [3]** 8/2 18/5
21/22
**free [5]** 3/9 4/18
21/9 28/8 55/14
**front [1]** 11/12
**full [1]** 27/2
**fully [3]** 18/25
81/1 81/20
**fundamental [5]**
26/6 26/13 27/23
45/19 68/13
**fundamentally [5]**
26/16 67/6 67/7
72/6 75/24
**further [1]** 51/8

**G**

**Garland [3]** 72/5
72/10 72/13
**gathering [14]**
14/20 26/18 36/12
36/24 37/17 37/19
39/24 40/16 55/12
56/12 75/9 75/20
75/23 76/2
**gave [8]** 6/1 34/10
51/24 55/8 59/9
64/25 77/11 77/15
**general [3]** 3/7
16/8 59/16
**generality [1]**

**generally [3]** 6/23
35/17 42/18
**geo [1]** 76/15
**Georgia [2]** 7/21
12/18
**Gertz [3]** 21/7
21/12 28/2
**get [10]** 19/16
39/13 40/9 41/11
47/8 49/18 55/14
61/17 64/17 70/23
**get-out-of-jail-fre
e [1]** 55/14
**gets [5]** 21/4 21/5
73/1 80/6 80/7
**getting [1]** 40/9
**Giuliani [12]** 17/6
26/25 30/4 31/18
42/5 55/7 65/5
65/6 65/24 67/9
78/7 78/12
**Giuliani's [1]**
78/24
**give [7]** 4/14 4/24
33/12 36/15 41/9
41/16 62/15
**given [7]** 16/9
19/18 28/8 31/15
33/20 40/16 62/12
**gives [1]** 30/21
**giving [2]** 62/4
64/5
**global [1]** 63/19
**go [21]** 13/9
15/21 16/13 20/5
28/4 30/9 30/9
30/16 30/17 34/7
35/16 40/8 46/4
48/11 49/17 51/14
63/11 75/25 77/10
81/16 82/6
**GODFREY [4]**
1/19 1/23 3/15
3/23
**goes [4]** 9/22
19/9 74/18 77/2
**going [43]** 9/10
11/12 13/12 14/25
15/20 19/21 21/7
21/10 21/11 21/14
23/5 23/7 24/14
24/15 25/14 26/14
27/5 29/16 36/8

**40/10 41/2 44/18**
46/20 49/1 49/12
50/2 54/9 56/17
56/23 65/3 65/21
66/4 66/6 66/19
73/23 75/7 80/7
80/10 80/12 80/22
81/18 82/11 82/16
**gone [2]** 20/2
60/12
**Good [11]** 3/2
3/14 3/15 3/17
3/18 3/21 3/22
3/25 4/1 4/5 54/15
**got [1]** 27/20
**government [2]**
16/24 17/1
**grant [4]** 5/9 9/5
49/13 49/20
**granted [2]** 31/8
31/10
**greater [1]** 73/1
**grip [1]** 72/25
**grounds [1]** 49/4
**group [1]** 34/21
**guess [3]** 12/23
71/6 71/15
**Guy [1]** 55/7
**guys [1]** 77/4

**H**

**had [18]** 11/5
25/8 27/19 32/16
34/11 34/16 34/17
36/22 39/18 42/11
45/23 48/6 52/15
53/14 56/13 67/5
72/14 76/5
**hadn't [1]** 27/4
**haec [1]** 11/19
**hail [2]** 10/22
10/23
**hand [3]** 31/14
33/6 54/10
**hands [1]** 71/17
**happen [5]** 27/5
62/5 66/4 82/16
82/18
**happened [3]**
15/14 27/3 65/1
**happens [2]**
49/25 81/17
**happy [2]** 41/14
51/8

**hard [4]** 39/4
62/24 66/14 75/7
**hardware [4]** 5/15
16/25 17/2 26/12
**harm [1]** 34/3
**harmed [3]** 26/7
26/9 63/17
**has [65]** 6/3 6/5
9/25 12/19 13/4
13/8 13/19 13/22
14/12 14/21 14/22
14/25 15/24 16/2
17/17 18/20 19/8
19/25 20/2 20/9
21/16 22/17 22/19
22/25 23/12 23/24
26/18 27/11 28/6
29/24 31/25 35/21
36/25 37/15 39/17
41/5 41/14 42/3
42/15 43/10 43/11
43/16 45/16 46/12
46/19 47/9 47/13
48/18 50/10 51/8
51/15 54/6 54/8
54/20 56/16 56/18
56/19 56/25 59/2
59/5 61/8 64/24
65/15 73/4 77/19
**hasn't [3]** 12/8
77/25 78/17
**have [115]**
**haven't [8]** 20/5
23/6 34/23 39/5
39/13 41/11 80/25
81/20
**having [8]** 4/19
11/1 12/7 37/6
37/9 45/7 65/4
65/8
**HBO [1]** 5/20
**he [61]** 6/3 6/3 6/5
6/5 6/6 6/9 6/10
6/25 7/6 7/7 7/16
7/24 11/1 11/2
11/2 11/5 13/17
17/17 17/19 17/22
21/17 21/18 21/19
22/12 22/25 23/19
27/8 29/21 39/10
43/13 43/14 47/9
47/14 47/17 47/18
47/19 50/23 50/24
51/1 51/2 51/2

**58/17 58/19 59/5
59/8 59/22 59/23
67/3 67/5 67/25
68/5 68/5 68/14
68/15 68/21 69/5
69/18 72/22 72/23
77/2 77/8
**he's [9]** 7/23
10/15 17/18 17/20
17/21 39/11 39/18
58/20 67/25
**head [1]** 24/1
**headquartered [4]**
13/16 18/13 57/2
60/24
**headquarters [2]**
35/1 35/3
**headshot [1]**
15/11
**hear [8]** 3/10 4/8
4/13 35/14 41/15
56/22 65/18 82/20
**heard [6]** 11/3
44/18 52/6 65/8
67/3 69/5
**hearing [2]** 5/3
18/17
**hearsay [4]** 39/12
39/13 73/9 73/12
**hedge [1]** 32/24
**Heidi [1]** 34/13
**held [4]** 7/25
19/25 26/16 59/22
**Hello [1]** 65/20
**her [3]** 14/2 15/11
63/16
**here [101]**
**HERMAN [3]** 2/17
83/3 83/10
**herring [41]** 1/7
2/13 2/13 3/3 5/3
16/10 16/11 24/22
24/22 24/24 24/25
25/1 25/6 26/4
26/4 38/12 38/13
38/23 39/2 39/6
40/15 57/23 58/16
58/23 59/4 59/16
72/19 72/20 72/21
73/3 73/18 74/16
76/8 76/9 76/17
76/23 77/1 77/3
77/6 77/16 77/22
**Herring's [4]** 59/2

# H

Herring's... [3]
59/20 72/25 76/12
Herrings [19]
24/22 40/3 55/5
55/22 56/13 56/20
57/7 57/8 57/11
57/16 57/17 58/7
60/6 60/14 60/18
63/2 73/23 73/25
74/10
Herrings' [1] 73/7
Hey [1] 22/21
high [7] 26/21
28/18 30/16 33/17
49/16 60/13 68/16
high-import [1]
60/13
high-level [2]
33/17 68/16
highest [1] 23/5
highlight [6]
14/16 14/17 51/23
52/5 53/19 80/10
highlighted [4]
22/10 26/22 27/23
29/20
highly [3] 11/7
24/13 50/21
him [15] 6/4 6/12
6/12 6/13 6/15
6/20 10/25 22/11
47/11 59/17 59/25
64/9 69/8 69/17
76/13
himself [6] 6/5
58/17 58/20 58/21
59/22 68/14
his [31] 6/7 6/20
11/1 11/6 17/12
17/17 17/22 22/14
24/25 33/25 39/8
39/11 39/18 45/3
47/18 47/19 47/20
48/4 51/2 58/16
58/18 58/19 59/4
59/7 59/7 59/21
59/23 68/22 73/5
73/6 76/9
history [1] 46/10
hold [2] 40/22
69/15
holding [2] 55/1
58/17

holds [1] 7/6
home [1] 28/5
homes [1] 59/11
Honor [104]
Honor's [4] 41/21
42/4 50/4 65/24
HONORABLE [1]
1/10
hot [1] 4/20
hotel [1] 11/22
hour [1] 4/11
house [8] 14/23
15/4 15/6 15/7
16/3 30/2 30/3
59/25
Houston [1] 1/24
how [9] 9/18 12/4
14/2 17/8 20/21
51/25 70/25 71/13
80/5
however [5] 6/17
42/11 44/19 66/1
75/8
huge [2] 20/22
66/9
human [1] 78/2
hurdle [2] 28/18
30/16
hypothetical [4]
70/9 74/25 77/10
77/15
hypothetically [2]
9/12 42/21

# I

I'd [3] 22/8 41/15
57/11
I'll [3] 4/13 4/14
74/22
I'm [27] 4/1 4/21
5/1 5/4 10/9 10/18
15/20 18/24 25/4
28/16 29/16 31/11
32/19 35/15 36/8
41/14 43/9 44/15
49/22 56/16 56/23
65/21 73/22 74/8
75/7 82/15 82/17
I've [6] 16/13 17/9
31/10 31/11 34/16
35/12
idea [1] 81/21
identical [9]
20/11 20/11 38/17

38/24 39/6 39/19
46/13 47/3 47/4
identify [1] 11/3
ignore [2] 21/7
58/12
IL [1] 2/6
Illinois [2] 28/21
47/24
image [3] 22/20
24/5 71/25
images [3] 5/9
15/8 68/13
imagination [1]
18/11
imagine [4] 9/12
12/24 61/21 69/15
immediately [2]
40/18 80/12
import [1] 60/13
importance [1]
73/2
important [5]
6/17 22/1 42/23
43/1 53/6
IN-PERSON [1]
1/10
inapplicable [1]
32/1
inappropriatenes
s [1] 46/20
INC [5] 1/4 1/7 3/3
3/4 36/17
incendiary [1]
11/7
Incidentally [1]
27/7
incitement [1]
66/20
inclined [1] 41/2
include [1] 46/6
including [3] 35/5
47/23 64/7
inconsequential
[2] 7/24 14/10
inconsistency [2]
53/11 53/17
inconsistent [4]
33/17 65/9 69/20
70/16
inconvenience [1]
24/12
inconvenient [7]
24/13 24/18 24/18
24/19 24/20 24/21

incorporate [1]
15/13
indicate [1] 35/9
indicated [2]
60/22 67/24
indication [1]
18/21
indicia [1] 76/4
indisputably [1]
57/2
individual [6]
25/7 42/5 47/20
56/14 62/15 63/15
individuals [1]
39/21
infer [1] 30/25
influence [1] 73/4
information [2]
39/8 39/9
ing [5] 11/15
13/12 15/15 16/19
16/21
inherent [1] 81/3
inherently [2]
17/3 18/4
initial [1] 11/1
initially [1] 13/10
injunction [1]
30/8
injury [6] 38/20
38/21 58/2 60/24
64/6 64/7
insiders [2] 57/15
60/11
instance [3] 7/21
25/3 82/3
instead [1] 56/19
instructions [1]
51/25
intend [1] 29/15
intended [1]
71/21
intentionally [1]
25/19
interest [7] 28/7
31/3 35/10 35/11
48/24 64/25 81/14
interests [1] 28/3
interlocutory [1]
40/24
interpreting [1]
44/1
interview [1] 65/5

interviewing [2]
78/6 78/7
interviews [4]
55/6 55/8 62/15
78/11
intimately [1] 5/4
introduce [1] 3/5
introduced [1]
22/13
Investment [1]
51/21
invoke [2] 38/18
81/12
involve [4] 78/6
78/8 78/9 81/7
involved [2]
60/11 76/1
involves [1] 18/6
Iqbal [1] 74/15
irregularities [2]
7/22 7/23
irrelevant [1]
28/14
is [334]
isn't [5] 26/8
30/23 40/18 65/12
73/21
issue [37] 5/12
5/18 5/23 6/16
8/19 9/14 9/19
10/5 10/12 10/15
10/15 10/21 11/9
12/8 17/3 18/4
19/11 20/2 20/6
21/19 23/1 23/2
23/3 24/9 35/24
43/21 43/25 54/23
55/17 55/19 57/14
57/22 67/22 68/5
69/8 71/3 71/7
issued [4] 9/3
27/18 27/21 42/8
issues [19] 5/12
5/13 8/5 9/9 22/6
33/16 35/6 41/22
43/23 44/5 44/10
44/11 49/24 50/2
50/13 50/16 70/15
71/2 80/8
it [170]
it's [104]
item [1] 33/22
its [10] 5/25 18/7
18/12 22/4 23/12

**I**

its... [5] 27/18
52/3 62/20 65/2
66/10
itself [3] 16/22
18/7 53/12
izing [1] 10/13

**J**

jail [1] 55/14
January [1] 66/17
JEANAH [1] 2/5
Jefferson [3]
23/25 45/1 45/6
Jefferson-11th [3]
23/25 45/1 45/6
Joe [6] 10/23
10/24 10/24 34/12
67/3 69/5
John [1] 7/2
judge [15] 1/11
6/8 19/2 19/19
25/14 25/22 35/13
35/14 69/13 70/6
71/6 71/19 77/17
80/22 80/24
judges [1] 24/19
judgment [2]
48/11 49/10
judgments [1]
65/10
judicata [3] 8/20
9/8 69/3
judicial [4] 26/2
35/16 65/4 65/8
June [1] 66/1
jurisdiction [68]
10/20 12/16 14/19
15/1 15/2 16/1
16/7 16/8 16/10
25/8 25/13 25/15
25/20 25/21 25/25
26/17 26/22 27/9
27/10 36/8 36/10
36/21 36/24 37/5
37/7 37/8 37/10
37/13 37/20 37/22
37/24 38/3 38/6
38/11 39/2 40/5
40/10 40/14 41/3
41/7 41/24 46/8
46/9 51/18 54/11
54/19 56/10 56/18
56/19 57/7 57/11

57/25 58/11 58/19
59/17 61/7 65/15
72/17 73/15 74/13
74/21 74/24 75/8
75/18 75/19 77/11
77/16 77/18
jurisdictional [4]
41/4 41/8 41/12
59/18
jurisdictions [3]
11/18 24/20 30/20
jury [4] 10/5 65/6
70/5 70/7
just [54] 3/12
4/24 5/10 8/11
8/13 9/6 10/12
10/14 10/17 11/12
13/24 14/17 15/2
15/3 15/5 16/2
23/15 25/25 28/22
31/22 37/14 38/11
42/7 42/14 43/1
48/5 48/9 50/7
50/23 50/24 52/4
53/4 57/20 57/24
58/22 59/1 60/11
61/22 63/7 66/1
66/6 66/16 68/10
71/1 72/1 73/11
74/7 74/22 77/16
79/20 79/22 81/13
82/6 82/16
justice [2] 30/2
45/9
justification [1]
31/2
justifies [1] 51/17
JUSTIN [3] 1/23
3/20 3/22

**K**

KATHERINE [2]
1/19 3/14
Kavanaugh [1]
19/19
keeping [1] 49/22
Kennedy [1]
29/21
key [1] 10/25
KIMREY [5] 2/4
4/2 4/15 4/21
42/15
kind [7] 10/25
11/24 28/19 30/15

kinds [2] 60/14
78/8
know [73] 7/12
10/18 12/24 12/24
12/25 15/2 15/18
17/15 17/23 18/5
19/1 19/6 19/8
19/16 21/20 23/23
26/2 26/9 26/12
26/24 26/25 27/4
27/6 27/12 29/14
30/5 30/15 30/24
33/23 34/16 35/11
35/15 36/5 39/3
40/18 40/20 41/10
45/3 45/7 48/19
49/23 50/14 51/6
59/1 59/4 59/14
60/3 63/16 66/19
68/13 70/25 71/24
71/25 74/3 74/15
76/10 76/13 76/19
76/22 76/23 77/2
77/6 77/7 77/13
77/15 78/18 80/6
80/25 81/1 81/12
82/3 82/5 82/18
knowing [2] 22/3
22/5
known [1] 5/20
knows [1] 5/14

**L**

lack [6] 5/25 5/25
29/19 29/19 60/5
77/5
lacking [1] 71/19
laid [2] 60/10
64/24
land [1] 29/18
largely [3] 24/23
43/6 63/9
larger [1] 15/14
largest [1] 5/15
LaSalle [1] 2/6
last [1] 5/4
law [40] 3/19 6/7
6/10 14/13 17/8
17/12 17/25 19/24
22/19 23/17 23/19
27/22 29/18 35/19
35/22 35/23 36/15
37/11 50/6 53/20

53/24 54/2 54/4
56/5 56/10 63/11
63/24 64/5 64/11
64/18 64/18 64/20
68/4 68/7 71/7
75/24 79/16
lawn [3] 15/4 15/7
15/7
lawyers [3] 17/7
17/13 17/14
lead [7] 4/2 4/22
4/24 5/1 5/2 7/1
11/8
least [13] 4/10
14/7 15/15 19/21
27/24 35/22 45/22
57/3 58/16 59/15
59/15 61/1 67/20
led [1] 11/6
left [3] 5/22 19/1
81/25
legal [3] 47/16
48/2 69/2
less [2] 4/12
56/13
let [6] 8/11 15/3
19/16 19/17 19/24
81/22
let's [16] 8/17
37/21 49/24 57/8
69/4 70/1 70/8
71/6 73/13 73/13
73/15 73/16 75/2
75/2 75/4 80/6
level [7] 20/6
20/14 20/14 23/5
33/17 56/12 68/16
Lewy [1] 56/4
liability [3] 6/1
8/22 9/2
lie [3] 55/10 66/14
66/15
lies [3] 55/2 55/3
55/5
lightly [1] 28/17
like [30] 4/7 7/23
16/2 18/24 19/5
20/20 22/8 27/12
29/12 30/24 31/22
35/6 41/15 41/15
45/23 51/20 52/4
53/22 55/6 56/4
56/21 57/12 60/13

53/24 53/24 63/22
liked [3] 31/24
31/25 42/4
likelihood [2]
26/20 26/21
likely [2] 26/3
35/4
likes [2] 6/4 35/14
limit [2] 4/12
32/16
limitations [3]
30/6 45/10 45/15
limited [3] 35/5
38/3 48/20
Limousine [1]
36/16
Lindell [6] 27/1
30/4 31/18 55/7
65/24 67/9
line [1] 46/5
LinkedIn [7] 39/9
39/12 39/14 58/16
59/21 59/23 76/12
list [1] 11/12
literally [1] 46/15
litigate [2] 23/9
62/19 66/14 70/21
79/14 82/5
litigated [2] 19/20
63/1
litigating [2]
70/15 70/15
litigation [16]
9/20 9/22 18/15
26/20 26/22 32/4
33/16 34/12 44/4
48/8 48/10 49/9
53/5 53/9 53/13
57/1
little [8] 10/19
18/24 18/24 44/15
47/2 49/18 59/12
73/23
live [3] 35/5 39/11
77/4
lived [2] 39/11
39/17
lives [1] 77/2
living [2] 13/16
63/16
LLP [4] 1/16 1/19
1/23 3/19

# L

**local [4]** 16/23 17/23 35/11 64/25
**localized [2]** 17/3 18/4
**located [1]** 28/14
**location [6]** 24/9 31/4 33/24 34/3 61/21 76/16
**locations [1]** 76/12
**LOCKE [2]** 1/16 3/19
**locus [1]** 18/10
**long [7]** 19/8 26/19 27/10 31/1 38/17 38/19 57/23
**long-arm [4]** 26/19 38/17 38/19 57/23
**longer [1]** 47/16
**look [15]** 12/10 15/9 25/11 33/19 37/22 43/7 63/22 66/21 68/3 76/10 76/21 78/5 78/18 78/19 81/5
**looked [1]** 45/1
**looking [5]** 9/10 20/12 36/2 43/2 44/14
**looks [1]** 29/12
**LORRAINE [3]** 2/17 83/3 83/10
**Los [1]** 77/3
**lose [4]** 21/20 21/21 23/3 23/4
**loses [3]** 69/16 69/18 70/18
**losing [1]** 50/18
**loss [1]** 68/19
**lost [1]** 79/12
**lot [7]** 7/12 12/25 13/2 15/20 57/19 66/13 70/14
**Louisiana [1]** 1/24
**love [2]** 61/24 76/20
**lying [3]** 58/19 59/4 76/8

# M

**machines [1]**

**made [10]** 6/19 13/12 14/3 14/8 27/13 39/5 52/9 53/10 66/25 72/17
**maintain [1]** 21/10
**major [1]** 20/24
**majority [1]** 78/10
**make [14]** 32/18 32/18 32/19 39/22 45/24 49/15 52/2 57/20 60/23 68/23 74/7 74/23 75/2 77/21
**makes [6]** 6/21 13/15 29/4 45/21 54/12 79/15
**making [4]** 10/11 27/14 60/6 61/4
**malice [9]** 21/3 21/8 21/14 21/25 35/25 54/3 54/5 64/21 71/12
**manifest [1]** 45/9
**many [11]** 11/17 14/22 14/23 19/2 31/8 31/8 31/10 34/17 77/24 77/24 78/8
**mark [2]** 49/10 49/11
**mask [3]** 3/10 3/12 4/19
**material [1]** 56/1
**matter [12]** 16/4 21/22 21/23 28/13 28/15 30/22 36/3 46/11 71/16 79/6 82/11 83/6
**matters [7]** 21/2 21/5 21/8 21/13 21/16 78/24 78/25
**may [17]** 7/13 16/17 30/1 30/15 33/5 36/3 51/3 59/11 65/17 66/2 69/25 70/5 70/5 70/7 82/1 82/5 82/6
**Maybe [2]** 27/5 30/16
**McCALMON [1]** 2/9

**McIntyre [1]** 37/2
**me [29]** 3/10 3/20 8/11 15/3 19/20 19/24 29/9 29/10 29/14 31/14 33/15 40/21 40/22 45/10 46/14 48/9 49/18 50/22 50/25 52/14 54/12 60/4 75/4 75/6 77/11 77/15 80/24 82/15 82/20
**mean [9]** 8/12 14/11 21/2 35/20 60/4 66/16 71/10 73/14 75/1
**means [1]** 21/12
**meant [1]** 9/1
**meanwhile [3]** 9/25 18/9 20/8
**mechanically [1]** 72/9
**media [5]** 16/2 17/14 58/19 59/7 74/22
**MEGAN [3]** 1/15 3/19 54/15
**MEIER [12]** 1/15 3/19 41/23 54/10 54/16 54/17 72/17 75/23 76/22 77/6 78/15 79/16
**Meier's [1]** 72/16
**member [1]** 34/14
**mention [1]** 77/19
**mentioned [1]** 18/16
**mentions [1]** 15/23
**mere [3]** 53/11 53/11 55/18
**Merrick [3]** 72/4 72/10 72/13
**mess [1]** 24/15
**Michigan [8]** 12/17 12/23 13/1 13/3 13/4 17/1 63/16 63/17
**mid [1]** 18/18
**mid-October [1]** 18/18
**middle [3]** 5/23 40/7 82/17
**might [5]** 27/19 30/16 35/8 69/14
**Mr. [11]** 3/25 4/15

**Mike [3]** 26/25 55/7 67/9
**Miller [1]** 17/15
**million [1]** 31/7
**mind [4]** 4/10 47/14 49/21 50/1
**minds [2]** 26/2 66/2
**minimal [2]** 43/11 53/7
**mirror [5]** 5/8 22/20 24/5 68/12 71/25
**missed [1]** 57/10
**moment [1]** 18/25
**months [2]** 26/23 45/17
**moot [1]** 41/12
**more [12]** 6/23 27/17 50/16 56/4 56/25 61/25 62/18 63/1 64/23 68/11 76/1 77/12
**moreover [1]** 23/23
**morning [11]** 3/2 3/14 3/16 3/17 3/18 3/21 3/22 3/25 4/1 4/5 82/11
**Moses [8]** 6/8 19/2 25/22 44/1 69/13 71/6 71/19 77/17
**most [7]** 26/3 30/11 33/25 48/25 53/6 60/4 63/22
**motion [12]** 4/6 17/20 18/17 23/4 27/2 27/3 32/11 32/17 43/7 50/21 54/7 82/19
**motions [3]** 31/10 42/4 42/9
**move [4]** 36/8 38/10 46/21 51/9
**moved [2]** 67/10 78/23
**moves [2]** 24/15 24/16
**moving [6]** 12/21 13/20 50/19 80/15 80/16 80/17

**170** 42/15 59/2 59/20 63/13 76/8 76/9 76/17 77/16
**Mr. Charles [2]** 59/2 59/20
**Mr. Herring [4]** 76/8 76/9 76/17 77/16
**Mr. Kimrey [2]** 4/15 42/15
**Mr. Nelson [1]** 3/25
**Mr. Smolla [1]** 17/10
**Mr. Smolla's [1]** 63/13
**Ms [1]** 72/1
**Ms. [15]** 13/25 16/7 16/7 41/23 54/10 54/17 65/23 67/23 72/16 72/17 75/23 76/22 77/6 78/15 79/16
**Ms. Bobb [1]** 16/7
**Ms. Meier [9]** 41/23 54/10 54/17 72/17 75/23 76/22 77/6 78/15 79/16
**Ms. Meier's [1]** 72/16
**Ms. Rion [2]** 13/25 16/7
**Ms. Sammons [2]** 65/23 67/23
**MSNBC [1]** 5/21
**much [10]** 15/14 27/17 34/23 49/4 56/4 56/13 56/17 61/3 68/11 72/17
**multiple [1]** 34/8
**must [1]** 33/15
**mutual [1]** 9/15
**my [25]** 3/7 3/20 4/10 11/22 22/9 25/9 36/10 41/21 41/23 42/24 49/21 50/1 50/21 51/6 54/10 55/7 56/18 58/5 58/14 59/12 64/18 65/22 66/5 68/20 69/15

# N

**name [4]** 14/3

**N**

name... [3]  17/17 29/8 29/9
named [2]  67/4 69/6
naming [1]  45/2
narrative [1] 66/13
Nason [1]  81/23
national [5]  12/19 12/23 13/4 14/23 14/24
nationwide [1] 63/7
nature [4]  17/23 38/7 38/7 40/8
nauseam [1]  34/7
navigate [1] 71/21
nearly [1]  63/24
necessarily [1] 80/3
need [10]  5/8 5/11 22/20 24/4 30/2 30/9 43/24 59/18 77/12 81/22
needed [2]  11/4 67/4
needs [1]  19/3
negligence [1] 22/2
negotiated [1] 55/23
negotiation [1] 61/11
neither [2]  58/23 63/5
NELSON [3]  1/23 3/22 3/25
nervous [1]  18/24
network [3]  5/19 72/22 73/4
network's [1] 72/25
NETWORKS [2] 1/7 3/4
Nevada [1]  12/17
never [6]  26/2 26/11 37/25 39/11 67/1 67/1
nevertheless [2] 24/4 72/11
new [8]  2/10 20/10 21/2 32/4

32/24
news [24]  5/18 5/19 5/22 14/20 14/21 14/22 26/18 31/19 36/12 36/24 37/6 37/17 37/18 39/24 40/16 55/12 56/11 67/7 73/3 75/9 75/19 75/22 76/2 76/3
news-worthy [1] 5/18
newscast [1]  73/5
newscaster [1] 74/23
Newsmax [2] 5/20 31/20
next [4]  27/22 33/22 45/17 73/22
nexus [4]  13/19 23/12 62/13 62/17
Nicastro [3]  37/1 37/2 37/12
nice [1]  4/19
nicely [1]  37/12
NICHOLS [1]  1/10
nine [1]  33/15
no [27]  1/5 18/18 20/21 20/21 22/4 23/21 24/10 29/14 30/7 31/15 32/22 35/14 39/14 42/10 47/16 48/16 52/25 54/20 63/2 65/18 73/6 74/15 74/15 77/21 77/22 78/20 80/17
nobody [2]  11/4 67/4
non [5]  24/9 30/20 34/17 48/19 70/19
non-issue [1] 24/9
non-party [2] 48/19 70/19
none [3]  15/23 54/21 54/22
North [2]  2/6 13/22
Northern [2] 28/20 47/24
not [145]

note [9]  16/6 42/4 50/9 50/12 53/23 59/1 59/6 72/1 72/6
noted [6]  42/3 52/15 57/9 65/23 68/12 82/13
notes [3]  33/25 43/15 62/24
nothing [9]  12/5 13/4 13/8 13/22 16/15 19/1 19/5 55/18 61/5
notice [2]  19/5 19/13
notify [1]  82/15
notion [8]  33/11 37/12 37/15 46/7 48/23 62/18 62/25 71/23
notions [1]  70/23
notorious [1] 25/17
November [4] 12/14 12/22 13/11 27/15
now [28]  6/16 12/10 13/9 15/5 16/11 16/12 18/6 19/4 19/8 20/12 26/10 28/16 29/9 29/10 30/2 32/20 33/18 35/23 35/24 37/21 40/25 44/25 55/11 61/15 66/1 70/22 73/12 77/20
number [12]  13/7 13/20 13/21 13/23 24/8 24/12 35/4 52/10 61/6 62/11 75/9 75/13
NW [2]  2/10 2/19

**O**

OAN [62]  5/20 6/19 6/20 10/13 12/14 15/7 15/8 15/9 16/2 16/5 16/10 22/4 24/22 24/22 30/3 38/12 38/18 38/24 39/2 39/19 39/22 40/3 40/15 42/2 43/14 43/15 43/18 44/10

52/6 52/6 53/18 54/19 54/20 55/1 56/14 56/18 57/15 57/17 58/18 62/16 62/18 63/9 64/13 64/15 65/1 65/7 65/16 66/17 66/18 67/1 67/2 67/12 72/20 72/21 73/2 73/6 73/6 73/24 78/9
OAN's [10]  15/9 23/21 47/13 54/24 55/2 55/3 55/4 55/8 59/8 65/4
obligation [2] 37/23 51/18
obvious [2]  25/16 50/1
obviously [14] 4/6 4/10 18/15 19/19 22/1 31/13 35/25 48/6 56/23 60/20 62/12 65/13 82/13 82/17
occurred [6]  32/5 60/7 64/6 64/7 65/22 66/1
occurs [1]  30/1
October [2]  5/4 18/18
off [4]  3/9 4/19 15/17 72/8
office [9]  54/24 55/22 55/25 59/9 61/12 62/20 62/20 63/3 77/24
offices [1]  54/21
official [3]  2/18 36/1 83/3
officials [4]  11/10 16/24 21/4 21/12
often [2]  10/19 17/13
okay [16]  24/9 25/11 33/22 35/19 36/9 39/9 46/16 51/12 62/2 69/13 71/9 72/1 72/2 72/4 73/9 74/7
Oltmann [7] 10/23 10/24 10/24 34/12 67/3 69/5

once [1]  79/2
one [38]  5/15 5/19 8/23 9/19 11/18 12/4 15/22 17/7 17/11 19/14 22/14 24/25 25/24 28/24 32/19 33/15 38/11 40/7 45/5 49/9 49/17 50/8 50/11 52/19 52/21 53/5 53/18 61/25 63/15 63/18 64/1 65/24 66/23 67/8 67/9 68/10 72/15 75/9
ongoing [3]  27/25 28/9 57/1
only [12]  5/19 6/19 16/9 19/23 21/12 21/13 38/6 54/1 61/3 64/15 67/24 72/11
Ontario [2]  63/18 64/3
open [1]  29/23
opening [1]  34/10
opinion [16]  21/1 27/19 27/20 28/9 28/22 29/8 29/10 29/11 29/24 31/24 51/21 51/24 54/7 65/24 72/5 82/20
opinions [3]  19/4 20/14 41/10
opportunity [1] 41/16
opposing [6]  3/11 45/2 49/5 57/9 59/1 63/12
oral [3]  1/10 4/8 66/1
order [5]  12/1 18/24 26/22 27/9 30/8
Oriente [1]  77/1
other [19]  5/9 16/2 19/14 23/11 24/8 40/7 42/24 48/2 50/14 53/19 60/7 60/23 64/2 64/4 67/13 75/1 78/22 80/19 82/19
others [1]  61/18

**otherwise [5]**
5/20 39/19 46/8
51/9 66/20
**our [27]** 5/10
14/16 14/18 17/19
23/15 25/24 29/24
32/14 34/7 34/10
36/11 40/11 40/13
42/10 46/20 48/16
49/1 53/3 55/13
57/9 57/18 59/6
64/24 72/6 72/12
79/11 82/4
**out [18]** 6/25 7/20
7/25 11/25 14/11
14/12 15/10 15/16
15/18 44/15 45/5
45/7 55/14 58/17
59/22 60/10 64/19
64/24
**outlet [2]** 14/21
14/22
**outlets [1]** 5/22
**outnumber [1]**
52/12
**outset [1]** 42/1
**outside [3]** 34/18
38/21 56/1
**over [19]** 25/15
26/1 39/13 43/17
46/8 46/9 53/20
54/10 56/10 56/18
56/19 57/11 58/11
58/16 61/7 65/15
73/4 73/25 74/13
**overcome [1]**
39/24
**overlap [11]** 6/18
8/3 8/21 9/6 22/17
23/13 24/6 43/10
45/23 53/6 53/8
**overlapped [1]**
53/10
**overlapping [4]**
8/23 46/1 46/2
53/18
**overlaps [2]** 43/6
68/11
**oversaw [1]** 60/6
**oversight [1]**
14/18
**own [5]** 47/20
52/2 57/24 59/7

**owned [3]** 7/17
24/23 76/24
**ownership [1]**
58/9
**owns [2]** 76/24
77/7

**P**

**P R O C E E D I N
G S [1]** 3/1
**P.C [2]** 2/5 2/9
**p.m [1]** 82/22
**package [1]**
13/11
**packages [1]**
78/8
**page [10]** 11/24
12/10 12/11 12/21
13/6 13/20 32/16
43/12 43/16 76/21
**paper [1]** 35/2
**papers [1]** 82/11
**paradigmatic [1]**
53/13
**paragraph [14]**
16/23 17/24 23/18
38/4 38/11 38/12
38/13 43/13 43/14
57/17 59/10 73/22
74/5 76/11
**paragraphs [11]**
14/8 38/3 38/4
38/6 43/17 57/9
57/12 58/3 60/10
61/10 72/17
**parallel [4]** 44/3
47/1 51/7 51/14
**paranoid [1]**
18/25
**paraphrase [2]**
56/23 73/23
**PARK [1]** 2/5
**parrot [1]** 38/16
**part [6]** 7/15
26/17 32/2 56/11
59/7 62/3
**participate [1]**
9/20
**participating [1]**
9/22
**particular [2]** 4/9
57/13
**particularly [4]**

60/12
**parties [12]** 19/10
24/19 31/5 34/4
44/6 45/23 48/24
50/3 63/25 64/2
82/15 82/20
**parties' [1]** 28/3
**partnership [3]**
55/23 61/11 77/21
**party [26]** 9/18
10/17 10/20 11/11
19/14 22/22 23/5
23/7 28/25 28/25
33/15 34/8 34/17
44/12 47/7 47/21
48/12 48/18 48/19
70/19 70/21 70/23
78/19 78/24 78/25
79/3
**party's [1]** 78/25
**passed [1]** 19/8
**past [1]** 34/22
**patents [1]** 7/6
**path [1]** 40/6
**patriarch [1]**
24/24
**pause [1]** 8/11
**PEASLEE [2]**
1/19 3/15
**pendency [2]**
23/10 23/11
**pending [10]** 4/25
5/2 6/9 18/16
24/13 30/1 50/15
61/16 65/12 79/11
**Pennsylvania [1]**
13/8
**people [7]** 6/19
7/12 10/22 15/1
37/5 38/9 53/16
**percent [1]** 7/14
**percolate [1]**
81/22
**percolating [1]**
77/20
**perfectly [2]**
29/25 54/5
**perhaps [3]** 9/7
17/14 42/3
**period [1]** 19/7
**permanent [1]**
55/25
**permission [1]**

**person [6]** 1/10
7/25 11/4 17/25
55/1 63/15
**personal [45]**
14/19 15/1 15/1
16/1 16/6 16/9
25/8 25/15 25/25
36/8 36/10 36/23
37/7 37/10 37/19
37/22 37/24 38/2
38/5 38/10 39/1
40/4 40/10 40/13
41/3 41/7 41/23
54/10 54/19 56/10
56/18 56/19 57/6
57/25 58/11 65/15
72/16 73/15 74/13
74/21 75/8 75/18
75/18 77/16 77/17
**personality [2]**
16/4 16/5
**personally [3]**
57/16 73/23 74/10
**personnel [1]**
55/8
**perspective [3]**
10/4 51/7 75/8
**persuasive [2]**
28/23 33/14
**PhD [2]** 6/3 6/5
**phone [3]** 3/23
16/10 16/11
**physically [1]**
14/4
**piece [3]** 15/14
53/23 54/9
**piecemeal [5]**
26/20 26/21 53/4
53/9 53/13
**Pillow [1]** 55/7
**pincite [2]** 36/18
37/3
**place [7]** 47/1
57/4 62/1 64/5
64/6 64/12 76/13
**places [1]** 60/7
**plaintiff [10]** 1/5
1/15 3/6 9/19 34/2
41/5 63/13 64/1
64/3 78/18
**plaintiff's [8]** 4/14
31/3 31/13 31/15
32/20 33/12 41/16

**plaintiffs [2]**
63/17 70/15
**plausibly [1]**
74/15
**play [1]** 66/19
**played [2]** 42/10
73/18
**plead [6]** 37/23
38/1 38/10 40/4
41/5 73/21
**pleading [1]**
11/19
**pleadings [3]**
17/18 17/21 25/24
**pleads [1]** 18/2
**please [9]** 3/5
3/12 4/18 33/4
41/3 46/22 51/11
57/6 75/25
**pled [6]** 57/10
68/6 73/22 74/14
76/21 77/4
**plug [1]** 71/10
**plurality [4]** 21/1
21/6 21/7 27/25
**plus [1]** 32/15
**podium [1]** 3/8
**point [20]** 10/11
12/22 12/25 14/11
26/14 29/4 41/12
42/2 45/5 49/4
49/11 50/5 50/7
51/20 64/18 66/5
66/25 67/15 73/12
79/20
**pointed [5]** 14/12
45/6 53/12 54/2
64/19
**points [4]** 34/20
49/8 52/4 65/21
**policy [1]** 71/4
**political [1]** 55/24
**position [2]** 33/15
33/18
**positions [1]** 58/8
**possesses [1]**
51/19
**possible [3]**
46/14 49/8 58/23
**possibly [1]** 44/8
**posts [1]** 11/6
**potential [3]** 48/7
48/9 53/4

Case 1:21-cv-02130-CJN Document 48 Filed 04/28/22 Page 99 of 104

**P**

potentially [1] 52/11
Poulos [1] 7/2
Poverty [3] 56/5 56/10 75/23
Powell [9] 7/13 27/1 30/4 31/18 42/6 55/6 65/25 78/7 78/12
Powell's [1] 78/25
power [3] 10/20 11/14 34/18
practical [1] 46/11
pragmatic [2] 50/5 50/7
precedent [3] 20/3 20/7 29/14
preclusive [4] 8/6 48/8 48/9 48/16
predict [1] 26/1
prejudice [1] 45/8
preliminary [1] 30/8
premise [1] 43/4
prepared [1] 50/3
preparing [1] 11/21
present [2] 2/13 26/13
presenting [1] 4/15
president [5] 17/5 48/1 64/9 72/20 78/20
presidential [2] 5/17 28/22
prevail [1] 9/13
prevails [1] 8/15
PRICE [4] 2/5 2/9 4/3 4/22
prima [8] 37/23 38/1 38/16 39/10 39/22 40/4 41/5 74/13
primary [4] 39/18 44/16 48/1 59/2
Prince [1] 1/16
principles [2] 44/23 46/6
prior [1] 48/20
private [2] 21/17 31/3

probably [3] 19/3 27/18 35/3
problem [3] 53/14 71/20 79/22
proceed [2] 49/25 50/8
proceeded [1] 50/10
proceeding [2] 5/5 30/13
proceedings [3] 2/23 82/22 83/5
process [3] 26/16 37/4 61/7
produced [7] 2/23 55/3 55/17 62/16 62/17 78/1 78/1
producer [4] 15/13 73/2 78/1 78/3
producers [2] 62/21 78/3
producing [1] 64/15
product [2] 6/24 68/15
production [1] 61/14
profile [2] 58/17 59/4
profiles [4] 58/20 59/8 59/21 59/23
prompt [2] 44/5 44/10
pronounce [1] 14/2
proof [1] 31/7
properly [3] 20/19 38/10 46/9
property [7] 24/9 24/10 28/14 60/1 76/10 76/24 77/7
proposed [3] 6/7 23/16 68/3
proposition [3] 61/20 68/18 68/24
protection [2] 28/3 28/8
protections [1] 21/9
provide [2] 33/2 34/9
provisions [2]

prudent [1] 49/17
public [24] 7/5 11/9 11/10 21/2 21/4 21/5 21/5 21/8 21/12 21/13 21/13 21/18 21/19 21/23 21/24 21/24 35/10 36/1 36/1 36/3 36/4 47/15 57/21 71/4
public's [1] 47/14
publicly [2] 58/21 73/8
purposely [1] 58/20
purposes [13] 6/17 9/24 15/25 23/14 24/5 25/9 25/9 39/1 48/2 69/3 70/9 73/14 74/21
purveyors [1] 55/9
PUSCH [2] 1/15 3/20
put [13] 3/12 12/8 15/17 16/18 45/20 63/10 65/1 68/1 69/8 74/22 77/5 79/20 80/14
puts [2] 10/12 68/5

**Q**

Quakenbush [7] 29/11 29/20 44/21 45/1 45/8 46/4 46/18
question [21] 13/24 19/17 25/10 29/23 45/19 49/3 49/10 49/11 49/19 49/20 52/10 56/24 58/5 58/14 59/12 69/15 70/16 70/17 70/18 74/19 80/23
questions [9] 4/13 36/9 41/14 46/19 51/8 54/9 56/16 65/17 80/19
quite [4] 7/14 42/17 46/15 77/25
quote [4] 23/15

**R**

raise [1] 55/11
raised [1] 20/6
Rancho [2] 77/1 77/3
rather [3] 22/2 52/24 53/21
reaches [1] 49/9
read [6] 17/13 26/2 37/11 38/14 58/3 75/25
reading [1] 17/9
realize [1] 65/25
really [16] 23/12 29/14 29/15 34/23 36/2 41/12 42/4 45/25 48/3 51/23 53/13 57/2 61/22 63/7 66/15 79/17
reason [12] 15/5 27/16 29/3 35/17 46/23 47/7 51/13 51/23 61/25 62/8 64/20 79/24
reasonable [2] 31/2 66/2
reasoning [1] 46/4
reasons [5] 44/16 47/12 51/9 61/19 65/14
rebroadcast [1] 16/20
rebut [1] 41/17
rebuttal [2] 4/14 65/22
reckless [2] 22/3 22/5
recognition [2] 37/8 37/16
recognize [2] 21/14 28/18
recognized [4] 14/19 26/18 36/12 37/15
recognizing [1] 37/18
reconcile [1] 71/14
record [4] 42/2 42/15 60/12 83/5
recorded [1] 2/23

red [1] 77/5
refer [9] 6/11 11/23 12/15 12/16 12/17 12/17 12/20 57/15 58/3 76/15
reference [3] 12/1 16/18 66/17
references [1] 23/22
referred [4] 6/4 11/2 30/19 74/9
referring [1] 74/5
refers [1] 13/7
reflected [1] 28/9
refute [1] 8/1
regard [3] 44/16 46/24 54/2
regardless [6] 36/14 39/17 39/23 40/23 53/22 80/5
regularly [2] 41/8 59/8
rejected [1] 48/23
relate [1] 5/13
related [17] 5/24 6/15 6/15 8/1 11/1 16/16 19/17 32/5 32/7 35/6 39/8 42/13 54/7 66/7 67/8 78/23 78/23
relates [3] 13/2 32/3 66/6
relationship [6] 15/24 34/1 50/23 63/23 64/12 64/18
Relative [1] 35/12
relevant [8] 7/6 14/10 19/21 33/8 34/9 42/12 50/21 52/7
reliability [6] 5/25 7/3 18/5 35/7 42/16 66/12
reliable [2] 5/17 42/19
relied [3] 52/15 52/20 52/22
relief [6] 5/9 9/6 29/13 45/20 47/18 49/20
relying [5] 41/6 46/5 58/8 67/24 67/25
remaining [1]

# R

**remaining... [1]** 45/16
**remains [1]** 7/8
**remedy [3]** 49/13 80/3 80/4
**remember [3]** 29/21 41/1 68/14
**repeat [1]** 25/5
**repeated [1]** 16/17
**repeatedly [1]** 63/12
**replicates [1]** 33/12
**reply [2]** 23/16 34/7
**reported [2]** 2/17 13/10
**reporter [4]** 2/18 3/10 34/13 83/4
**reporting [4]** 5/24 11/1 11/8 22/4
**represent [2]** 16/3 47/19
**representation [1]** 48/23
**representations [1]** 59/7
**reputation [3]** 18/13 34/2 63/16
**request [2]** 3/9 41/8
**requested [1]** 5/10
**requesting [1]** 9/6
**required [3]** 57/17 73/24 74/10
**res [4]** 8/20 9/7 24/10 69/3
**reside [2]** 54/21 59/13
**residence [4]** 39/18 59/2 63/13 63/25
**resident [6]** 10/24 14/6 55/4 59/22 61/5 64/9
**resides [2]** 16/5 58/23
**resolution [2]** 44/5 44/10
**resolve [1]** 82/1

**resolved [1]** 65/10
**resolving [1]** 50/2
**respect [21]** 6/6 7/5 7/21 7/22 27/24 27/25 38/2 38/5 41/7 53/18 56/15 60/13 65/9 67/2 69/5 71/2 75/22 76/16 76/17 77/23 82/4
**respond [1]** 59/24
**response [1]** 17/19
**restraining [1]** 30/7
**results [1]** 35/9
**reTweet [1]** 64/9
**reversed [2]** 52/13 52/14
**review [2]** 40/21 60/16
**reviewed [1]** 66/2
**ridiculous [1]** 66/18
**rigged [8]** 42/20 66/23 66/24 66/24 67/1 67/17 75/5 75/7
**right [37]** 5/22 10/21 11/7 16/11 16/11 19/25 25/13 26/2 26/6 26/9 26/10 27/13 27/14 29/9 29/10 30/6 31/22 32/19 34/25 35/23 42/17 45/11 61/17 62/23 65/10 70/22 71/12 73/18 78/2 78/13 79/23 80/2 80/22 81/8 81/11 81/18 82/2
**rights [2]** 53/15 53/16
**Rion [10]** 13/25 14/5 15/16 16/3 16/7 25/22 26/1 61/14 62/21 77/17
**Rios [1]** 77/3
**rise [5]** 6/1 59/9 62/4 64/6 65/1
**risk [3]** 10/6 10/9 65/9
**River [29]** 22/9

22/14 23/14 24/3 28/15 28/17 29/2 40/1 43/5 44/2 44/3 44/17 44/19 45/21 46/6 49/14 49/19 52/2 53/12 54/1 71/4 71/22 72/4 72/15 79/22 80/23 81/2 81/6 81/13
**road [1]** 80/14
**ROBERT [20]** 2/13 16/11 24/22 24/23 26/4 38/12 38/23 38/24 39/2 39/19 39/22 40/14 57/22 72/19 72/21 72/25 73/3 73/18 74/16 77/3
**Rodney [4]** 17/9 17/9 78/21 79/18
**role [4]** 7/5 42/10 66/10 73/19
**rolled [2]** 6/25 7/20
**Ron [3]** 11/11 11/13 11/14
**room [2]** 2/19 11/22
**rooted [1]** 46/10
**Rosenbloom [6]** 21/1 21/6 21/11 27/25 28/10 35/24
**rough [1]** 17/14
**RPR [1]** 2/17
**Rudy [7]** 17/6 26/25 55/6 65/5 67/9 78/6 78/12
**rule [1]** 3/7
**rules [1]** 49/5
**ruling [7]** 18/21 19/5 19/7 19/11 19/16 79/11 82/4
**run [10]** 16/24 16/25 24/23 45/10 45/13 57/17 60/15 73/7 73/24 74/11
**running [1]** 30/6
**rush [1]** 30/7

# S

**Sachs' [1]** 17/12
**safe [1]** 42/22
**said [27]** 8/5 9/25

21/9 26/3 29/12 37/4 42/24 59/2 60/15 61/6 61/10 63/25 67/1 67/1 67/2 67/3 67/4 69/6 72/2 72/18 76/22 77/12 79/16 79/21
**same [33]** 5/8 8/25 9/2 9/10 9/16 9/18 23/1 23/2 23/3 26/3 26/4 26/5 32/18 38/22 43/23 44/11 44/12 45/14 45/17 52/21 65/6 67/22 69/7 69/24 71/3 71/10 71/11 71/12 71/18 74/18 77/2 79/24 81/7
**Sammons [3]** 65/23 67/23 72/1
**samples [1]** 11/13
**San [17]** 15/9 15/10 15/13 15/17 15/19 25/1 26/14 36/17 36/21 36/23 39/17 39/18 55/17 59/3 77/3 78/3 78/10
**Santa [1]** 77/1
**sat [1]** 27/16
**satellite [3]** 15/8 15/10 15/19
**satisfied [3]** 72/12 72/12 72/14
**saved [1]** 59/21
**say [60]** 4/8 6/13 6/14 15/6 19/10 21/18 22/21 25/16 29/18 30/1 30/15 30/20 32/20 33/15 34/12 34/13 34/15 40/20 40/25 46/16 47/22 49/3 50/5 52/23 53/6 55/12 58/6 58/8 60/12 61/21 66/23 67/17 67/18 67/18 67/19 67/19 69/1 69/4 70/1 71/2 71/6 72/7 72/9 72/10

72/18 72/19 72/19 73/13 73/18 75/2 75/4 75/4 75/5 75/6 76/11 76/19 77/12 80/6 80/11 81/13
**saying [16]** 11/4 17/4 17/7 19/9 35/15 40/11 40/13 40/17 42/19 47/2 47/9 49/22 50/1 59/25 68/22 69/19
**says [19]** 6/18 17/22 18/8 22/25 23/19 28/5 29/21 41/2 47/3 68/21 69/8 69/9 71/7 71/9 71/16 76/12 76/25 78/2 78/17
**scale [2]** 63/19
**scenario [2]** 23/2 75/17
**scheme [1]** 53/14
**School [1]** 34/14
**scientific [1]** 30/24
**scolded [1]** 73/8
**scope [2]** 12/19 54/2 54/3
**scrutiny [2]** 30/17 30/18
**seated [1]** 3/11
**Seattle [1]** 1/20
**second [8]** 33/10 39/10 45/25 46/2 46/23 59/5 63/3 79/7
**second-filed [1]** 46/2
**secure [2]** 5/18 42/19
**security [10]** 5/24 6/24 7/2 8/2 9/11 18/5 35/7 42/16 66/12 68/15
**see [18]** 15/8 15/23 16/15 16/16 16/17 16/19 20/18 27/5 29/12 29/22 38/14 49/24 54/18 60/2 76/20 81/6 81/17 81/23
**seek [1]** 79/10
**seeking [5]** 30/7

**S**

seeking... [4]
34/19 44/19 47/18
81/2
seem [1] 46/13
seems [3] 49/15
49/17 60/4
seen [2] 31/7 52/6
sees [1] 82/4
seminal [2] 10/21
73/18
senior [1] 22/12
sense [9] 6/21
13/15 18/20 45/21
45/25 54/12 58/5
77/21 79/15
separate [2]
38/25 53/15
separated [1]
51/2
Sequoia [10] 7/7
7/10 7/16 7/18
13/17 13/17 13/19
32/3 32/6 32/7
serial [1] 24/24
serious [1] 44/6
serve [2] 18/9
19/6
served [3] 12/7
26/11 65/4
serves [3] 18/8
18/13 28/5
set [6] 4/9 11/25
47/2 48/20 55/24
67/25
several [5] 7/6
19/3 32/18 50/13
76/4
shaking [1] 24/1
shared [2] 48/24
77/24
shareholder [1]
48/2
sharp [1] 22/12
she [16] 7/13 14/3
14/3 15/12 16/4
19/3 71/7 72/18
76/22 76/23 76/23
77/6 77/6 77/9
77/12 77/13
shield [2] 39/1
40/16
shift [1] 37/25
shifted [1] 37/25

shifts [1] 79/22
ship [1] 15/12
shipped [1] 15/17
Shirlington [6]
36/16 37/14 55/13
55/14 56/2 56/6
shoot [1] 15/11
shopping [6]
31/17 32/23 33/1
33/11 42/3 66/5
short [2] 4/14
58/4
shorthand [1]
2/23
shot [1] 15/16
should [19] 3/8
7/8 9/5 21/20 23/9
29/13 30/10 31/15
32/13 32/25 40/2
47/22 50/8 62/12
65/14 80/18 80/19
82/14 82/15
shouldn't [4]
33/11 33/20 39/15
78/23
show [7] 12/4
22/2 33/9 34/12
34/13 34/14 35/16
showing [3] 22/2
39/20 39/22
shown [1] 16/13
sic [4] 26/16
65/23 67/24 72/2
side [1] 42/24
Sidney [5] 7/12
27/1 55/6 78/7
78/12
signed [1] 17/19
significance [3]
14/24 14/24 69/2
significant [5]
28/7 34/1 56/25
63/22 68/11
similar [5] 5/11
28/23 29/1 49/24
50/12
similarity [5]
22/21 22/22 47/6
47/6 50/16
simple [1] 76/2
simply [6] 30/12
37/9 38/16 43/22
74/14 78/20
simultaneously
[1] 69/13

since [1] 17/10
single [3] 43/13
67/12 72/14
sit [1] 82/16
sitting [2] 20/4
26/7 26/8
situation [5] 5/6
28/24 34/17 46/12
46/14
situations [2]
29/22 79/6
six [2] 38/4 38/6
skew [1] 35/9
skipping [1]
10/18
SLAPP [30] 5/3
18/17 19/4 19/7
19/18 19/22 19/24
20/1 20/8 20/10
20/12 20/13 20/17
23/4 27/24 28/10
28/11 31/25 35/19
35/20 35/22 49/6
50/9 66/8 79/11
79/12 79/13 81/17
81/20 82/4
sliced [1] 15/18
slim [1] 31/15
slow [1] 35/14
Smartmatic [10]
4/25 5/6 7/10 7/17
14/16 32/3 32/13
32/22 36/13 36/14
Smartmatic's [2]
32/21 32/25
Smolla [5] 17/9
17/10 33/24 78/17
79/18
Smolla's [4]
17/10 63/13 78/21
79/18
so [156]
social [2] 58/19
59/7
software [5] 5/15
16/25 17/2 18/6
26/11
solely [2] 55/20
61/7
solve [1] 79/21
some [15] 4/24
7/23 12/1 14/7
15/15 19/21 30/20
31/11 48/7 48/24

since [1] 17/10
53/9 65/7 67/20
77/24 80/22
somebody [3]
11/3 67/4 69/6
someone [1]
72/23
something [13]
14/11 14/12 14/15
17/13 18/23 19/14
27/19 44/23 61/8
61/9 81/25 82/16
82/18
sometime [1]
77/25
sometimes [1]
30/19
somewhere [1]
41/2
son [2] 25/1
72/20
sons [1] 24/25
sorry [1] 25/4
sort [11] 46/11
47/16 49/11 49/12
50/5 52/17 53/8
53/12 56/1 59/9
60/15
sought [1] 47/8
sourced [1] 74/14
sources [5] 31/7
34/21 65/2 65/3
74/2
Southern [6] 32/4
32/10 32/21 56/5
56/10 75/23
space [1] 77/24
speak [1] 66/22
speaking [1]
35/17
special [2] 10/13
10/13
specific [12]
12/16 36/23 37/7
37/10 39/21 43/15
43/23 56/16 57/10
58/7 58/10 60/9
specifically [4]
6/11 6/13 60/17
64/8
specificity [1]
11/20
speech [2] 21/9
28/8
spell [1] 70/25

spend [1] 56/17
SPLC [3] 76/1
76/5 76/6
squarely [2]
10/14 10/15
stand [1] 71/15
standard [8]
21/15 21/25 47/5
49/16 50/6 54/3
54/6 64/21
standards [2]
19/21 49/6
stands [1] 28/1
stark [1] 28/1
start [4] 11/16
42/25 43/24 57/8
started [2] 7/16
10/25
starting [1] 43/2
state [35] 6/8
17/1 17/3 18/8
18/14 20/16 22/17
23/8 23/10 23/12
27/22 28/5 28/6
28/6 28/24 33/25
35/23 43/8 44/3
44/8 53/19 54/20
56/2 61/7 65/13
67/11 71/3 75/14
79/5 79/7 79/24
80/12 81/7 81/7
81/10
stated [2] 42/15
44/2
statement [24]
9/17 12/14 12/15
12/19 13/3 13/7
13/21 53/18 61/5
68/1 68/8 68/10
69/5 69/7 69/17
69/19 69/24 70/2
71/8 71/11 71/18
74/24 75/3 75/14
statements [52]
6/19 6/21 8/21
8/24 8/25 9/3 9/8
10/7 11/17 11/20
12/2 12/3 14/3
14/7 14/8 14/13
15/21 16/15 23/1
27/12 27/14 42/18
42/18 42/25 43/3
43/12 43/15 43/18
43/19 43/20 43/23

**S**

statements... [21]
44/11 45/15 54/22
55/16 55/19 57/14
59/9 60/7 60/23
62/6 62/23 64/8
66/21 67/16 67/21
67/22 68/5 73/17
73/20 74/17 78/6
states [8] 1/2
1/11 17/6 37/9
54/25 63/20 67/12
78/20
statistics [1]
35/16
statute [20] 19/8
20/1 20/9 20/10
20/12 20/14 20/17
20/21 26/19 28/10
28/12 30/6 31/25
38/17 38/19 45/9
45/15 57/23 66/8
81/23
stay [17] 4/7
17/20 29/5 29/14
29/16 29/25 30/10
46/1 50/6 53/12
65/14 71/24 79/10
80/4 80/11 81/2
81/16
stayed [1] 80/19
staying [2] 40/1
43/5
stays [2] 19/19
52/3
Ste [2] 2/6 2/10
stenotype [1]
2/23
step [1] 15/3
stepped [1] 15/5
still [13] 22/9
22/12 23/9 27/8
35/5 36/5 45/24
50/9 51/1 58/15
58/20 80/7 81/24
stop [1] 65/16
stories [13] 57/15
57/16 60/13 60/14
60/14 61/14 73/1
73/5 73/24 74/2
74/9 74/10 78/1
storm [1] 66/18
stormed [1] 55/1
story [2] 36/21

straight [1] 5/22
strategic [1]
31/23
strategically [1]
66/9
strategy [2] 6/24
68/15
strawman [1]
47/2
Street [6] 1/16
1/24 2/6 23/25
45/1 45/6
stretch [1] 18/11
strong [2] 40/12
40/15
structure [1] 58/9
stumble [1] 32/15
Sturgell [1] 48/22
subject [15] 6/20
11/13 14/25 16/8
29/3 30/17 36/23
37/4 37/10 57/25
75/17 75/18 77/10
77/15 77/17
subjected [1]
37/6
submitted [1]
39/14
subordinate [1]
75/6
subpoena [3]
10/20 11/14 34/18
Subsection [1]
38/18
substantial [14]
22/21 22/22 47/5
47/6 62/3 62/13
62/13 62/17 70/6
71/8 71/12 71/18
71/19 82/14
substantially [5]
5/11 43/22 70/5
70/8 71/13
substantive [1]
20/19
subsumes [1]
35/22
such [2] 41/8
53/8
sue [7] 30/3 31/19
31/19 31/20 60/21
60/25 66/11
sued [8] 25/2

26/25 27/4 27/10
30/4 31/20 78/17
79/1
suffer [1] 60/24
suffers [1] 34/2
sufficient [3]
23/13 24/6 64/20
sufficiently [1]
29/1
suggested [2]
77/9 78/15
suggesting [1]
28/16
suggestion [1]
76/8
suggestions [1]
66/19
suing [1] 27/11
suit [5] 32/23
45/24 45/25 51/2
53/15
Suite [2] 1/20
1/24
suits [1] 27/20
Sullivan [1] 21/3
superficial [1]
66/16
Supp [1] 56/7
support [6] 28/15
34/9 52/11 53/11
53/25 78/20
supposed [1]
52/24
Supreme [15]
20/3 20/25 21/6
25/12 37/2 37/3
44/2 44/20 46/12
46/15 48/18 51/15
52/1 81/19 81/24
sure [10] 13/12
43/10 48/12 50/4
51/1 52/2 63/4
72/7 74/7 81/4
surprised [1]
54/18
SUSMAN [4] 1/19
1/23 3/15 3/23
suspect [1] 4/11
sword [1] 36/11
symmetry [1]
24/5
synonymous [4]
9/23 39/3 69/9
70/9

system [1] 8/11
system's [1]
42/16
systems [6] 5/14
5/16 9/11 35/7
42/19 42/21

**T**

table [1] 3/12
tagline [1] 66/16
take [8] 3/9 22/8
33/19 38/6 58/10
59/15 82/11 82/19
taken [3] 11/5
67/5 80/14
takes [1] 56/1
taking [1] 33/18
talent [2] 78/9
78/10
talk [1] 18/23
talked [1] 44/25
talking [7] 10/10
47/25 48/13 48/15
50/16 74/24 76/14
tantamount [1]
37/7
targeted [3] 25/19
39/21 64/8
Tay [1] 34/14
Taylor [1] 48/22
team [2] 60/16
74/1
technically [1]
70/22
technology [1]
7/7
telephone [5]
1/23 2/5 2/9 2/13
2/13
televised [2] 55/8
62/15
tell [1] 75/13
telling [3] 59/19
59/24 60/2
temporary [1]
30/7
terms [3] 50/5
50/12 62/10
tertiary [1] 7/23
test [6] 51/16
51/16 52/1 52/8
52/10 63/23 63/23
77/9
testament [2]

testifier [1] 7/1
testify [2] 7/20
34/10
Texas [2] 12/18
17/3
than [11] 21/9
22/2 30/9 35/17
50/1 50/17 56/13
61/23 62/19 64/23
82/19
thank [14] 3/12
3/23 31/14 41/18
41/19 41/20 51/4
54/12 54/14 65/19
82/8 82/9 82/10
82/21
that [443]
that's [54] 5/1 8/2
9/5 10/2 14/2 14/9
15/14 17/8 18/19
19/23 20/3 20/22
22/24 24/9 24/17
25/22 26/13 28/14
30/13 32/7 34/2
34/3 37/14 38/19
39/10 42/17 42/22
46/16 46/17 48/22
48/25 53/14 53/16
55/21 56/7 57/3
57/17 58/14 59/10
62/7 62/20 63/6
64/20 67/6 68/22
69/20 72/4 74/3
74/25 75/16 76/9
79/15 80/2 81/25
their [32] 16/9
32/17 34/2 35/14
38/2 38/5 38/7
40/3 42/21 43/7
43/18 46/8 50/12
51/9 51/13 51/15
52/6 55/12 55/24
56/3 56/11 58/8
61/11 61/12 62/7
62/23 63/3 64/10
65/3 73/25 78/2
78/25
them [25] 8/16
11/12 11/18 15/23
16/7 26/15 26/16
32/8 33/2 38/18
41/3 43/20 43/25
51/8 53/2 53/3

**T**

**them...** [9] 58/4 58/11 59/5 59/21 60/21 62/11 70/22 72/12 74/13

**themselves** [4] 11/3 30/5 52/24 66/22

**then** [35] 3/11 4/13 4/14 7/20 8/20 11/6 15/12 15/13 15/17 15/18 19/19 21/4 21/5 21/22 27/20 37/8 41/23 48/16 53/15 56/22 56/22 59/15 60/11 64/1 64/2 64/9 71/9 71/22 76/18 76/23 77/11 77/14 79/12 79/13 81/24

**then-Judge** [1] 19/19

**then-president** [1] 64/9

**theoretically** [1] 21/21

**theories** [1] 81/21

**theory** [2] 14/21 23/20

**there** [88]

**there's** [10] 8/19 12/1 18/15 18/25 19/5 22/4 29/14 41/1 57/19 66/13

**thereof** [2] 5/25 5/25

**these** [28] 3/8 11/12 11/25 12/4 14/3 14/8 16/14 22/6 33/9 42/13 43/3 43/22 44/18 47/1 51/7 51/14 60/14 60/17 62/5 62/22 65/14 73/11 73/24 75/19 76/18 77/4 77/20 78/5

**they** [151]

**they've** [2] 72/3 79/1

**thing** [11] 30/11 42/14 45/5 45/14 47/21 53/9 53/22 61/4 67/8 67/9

**things** [4] 17/7 36/3 54/9 60/23

**think** [48] 7/8 8/4 10/2 10/3 11/18 12/25 17/18 17/19 19/9 21/20 26/17 27/17 28/6 29/7 31/16 40/11 40/12 40/13 40/15 43/1 45/21 46/12 50/15 50/18 50/20 51/6 53/2 56/22 56/23 57/10 58/12 59/3 59/18 59/20 60/22 61/2 61/22 66/10 70/23 71/1 71/13 74/12 77/14 78/9 79/18 81/2 81/9 81/10

**thinking** [2] 25/9 49/23

**third** [11] 1/20 10/17 10/20 11/11 23/5 23/7 34/8 34/17 51/9 51/13 78/19

**third-party** [7] 10/17 10/20 11/11 23/5 23/7 34/8 34/17

**this** [216]

**those** [37] 7/13 7/14 8/23 8/25 14/12 22/14 23/18 25/8 27/1 31/21 31/21 38/14 38/22 39/12 41/10 42/9 42/11 43/13 43/20 52/12 55/5 57/3 57/15 58/1 58/2 58/12 60/14 60/21 61/1 61/19 65/2 65/8 66/6 66/23 67/21 68/6 77/13

**though** [10] 6/12 10/10 24/17 28/19 38/25 38/25 45/2 68/11 70/8 81/5

**thought** [3] 19/4 80/25 81/20

**threadbare** [4] 38/7 38/15 38/23 39/20

**three** [5] 43/15 44/15 63/17 64/4 72/11

**through** [20] 11/22 12/4 15/22 16/14 25/9 27/2 38/3 46/4 48/9 48/19 50/25 52/6 60/10 61/10 61/22 63/11 72/18 81/1 81/21 81/22

**throughout** [1] 16/17

**throw** [1] 44/15

**tick** [1] 72/7

**tie** [2] 73/17 74/16

**tied** [2] 32/3 71/17

**ties** [2] 17/23 37/1

**tighter** [1] 73/1

**time** [11] 4/9 16/19 18/23 19/7 26/12 27/7 56/17 56/18 58/4 70/14 75/7

**times** [6] 21/3 31/7 55/23 61/12 77/20 77/22

**Tipping** [1] 12/22

**title** [1] 78/2

**today** [5] 3/20 4/11 5/10 55/11 71/15

**together** [4] 15/18 32/3 64/14 65/8

**toll** [3] 45/10 45/11 45/16

**tolled** [2] 45/13 45/16

**ton** [1] 73/4

**too** [1] 56/17

**took** [4] 7/5 22/11 33/15 69/7

**tortious** [3] 38/20 38/20 58/2

**total** [1] 38/4

**totally** [3] 20/11 49/21 50/22

**totals** [1] 13/2

**touch** [1] 53/4

**towards** [1] 34/20

**traditional** [2] 4/8 61/22

**transacting** [2] 38/19 58/1

**transcript** [4] 1/10 2/23 66/3 83/5

**transcription** [1] 2/24

**transfer** [24] 4/7 15/25 17/20 25/10 30/22 31/10 32/12 32/17 34/19 36/7 40/2 40/18 41/24 54/20 56/24 61/18 61/23 62/11 63/6 64/21 65/13 79/8 79/10 80/5

**transferred** [2] 80/6 80/7

**transferring** [3] 65/10 79/5 79/21

**transfers** [1] 41/13

**transparently** [1] 31/16

**Transportation** [1] 36/17

**travel** [1] 78/11

**traveled** [1] 62/15

**travels** [1] 59/8

**treat** [2] 4/7 39/2

**treated** [1] 53/5

**treatise** [8] 17/10 17/12 17/12 17/22 33/25 63/13 78/21 79/19

**trial** [1] 35/16

**Tribune** [3] 36/18 36/22 36/23

**trick** [2] 19/1 71/22

**tricky** [1] 35/13

**tried** [1] 39/13

**trouble** [1] 63/2

**true** [16] 45/14 65/25 68/12 69/1 69/23 70/6 70/8 70/14 71/13 73/13 73/15 73/16 74/3 76/9 80/2 83/4

**truly** [1] 46/13

**Trump** [8] 11/5 13/12 17/6 64/9 67/5 69/7 78/15

**Trump's** [1] 17/7

**trustees** [1] 48/22

**truth** [7] 22/3 22/6 70/6 71/8 71/12 71/18 71/19

**trying** [1] 17/4

**turn** [2] 21/22 37/21

**Twitter** [10] 39/8 39/11 39/14 58/16 59/4 59/23 76/9 76/12 76/18 77/5

**two** [25] 5/13 6/18 8/21 16/7 22/6 25/9 27/23 43/3 43/11 45/17 46/13 54/24 55/25 56/5 56/25 57/3 60/21 61/1 61/12 62/19 62/20 62/25 63/18 75/8 75/13

**Twombly** [1] 74/15

**TX** [1] 1/24

**typical** [2] 63/14 63/15

**typically** [4] 17/24 34/1 63/14 63/14

**U**

**U.S** [11] 2/18 20/2 21/6 25/12 28/20 30/25 32/4 32/21 37/2 37/3 37/3 U.S.C [1] 40/21

**ultimately** [3] 10/4 32/6 79/12

**unappealed** [2] 52/16 52/19

**unauthenticated** [1] 76/15

**unaware** [1] 12/6

**under** [37] 6/10 6/14 6/22 14/10 19/7 20/17 21/10 25/11 26/21 28/17 29/2 32/11 32/25 35/10 36/6 37/11 39/25 40/2 41/13 43/5 44/19 44/20 44/22 49/13 51/13 53/25 55/13 64/17 70/6 71/23 72/3

**U**

under... [6] 75/19 77/14 80/3 80/5 82/12 82/19
underlying [2] 46/7 71/4
underpin [1] 80/13
understand [4] 50/4 69/2 78/16 80/17
understandably [1] 31/24
Understood [4] 67/14 75/10 75/10 82/7
unfair [1] 26/16
unflagging [1] 51/18
Union [3] 36/18 36/22 36/23
Union-Tribune [1] 36/18
UNITED [6] 1/2 1/11 17/5 37/9 54/25 78/20
universal [3] 37/5 37/8 37/13
universe [1] 15/19
unless [5] 36/9 37/24 46/19 54/8 56/16
unrelated [1] 49/21
unreliable [2] 65/2 65/3
until [5] 27/13 30/5 32/15 37/24 65/25
untold [1] 35/4
unusual [1] 14/18
up [16] 4/18 8/17 11/12 20/2 20/5 23/4 30/5 38/6 41/22 44/15 47/2 52/8 55/25 60/19 62/1 77/20
upon [2] 52/20 53/4
URLs [1] 76/18
us [10] 1/4 3/3 12/1 22/1 27/11 37/25 41/3 69/20

**use [1]** 30/25
used [5] 7/7 7/16 17/1 17/2 52/17
uttered [1] 75/3

**V**

VA [1] 1/17
various [2] 11/9 62/14
VEDDER [4] 2/5 2/9 4/3 4/21
vehicle [2] 44/4 44/9
verba [1] 11/19
verbatim [1] 38/22
versa [3] 8/10 8/12 9/1
versus [9] 3/3 21/3 27/22 36/17 37/2 51/21 53/20 56/4 66/13
very [23] 7/5 21/19 22/1 28/6 28/23 31/11 34/23 40/15 41/25 42/13 42/23 43/1 43/10 47/24 48/20 49/4 49/16 49/25 51/24 52/9 59/11 61/15 68/16
vetting [1] 74/2
via [1] 15/9
vice [3] 8/10 8/12 9/1
videotaped [1] 15/3
view [6] 8/4 46/20 48/6 48/9 48/16 49/1
violates [1] 61/6
violent [1] 11/7
virtual [1] 48/23
virtually [1] 51/18
vitality [3] 21/11 27/25 28/10
voluminous [1] 68/1
vote [6] 10/13 11/15 13/2 15/15 16/19 16/21
votes [1] 42/22
voting [7] 5/14

**W**

W-o-l-k-e-n [1] 28/21
WA [1] 1/20
wait [3] 8/11 81/16 82/11
waiting [1] 27/5
Walden [1] 25/11
walk [5] 12/4 46/4 48/9 50/24 52/6
walked [2] 11/22 48/19
wall [1] 66/3
want [19] 4/12 12/3 15/12 30/16 31/1 31/1 43/20 45/5 51/23 53/3 53/4 53/19 56/18 56/22 58/4 61/22 74/7 79/2 82/5
wanted [3] 6/10 42/2 42/14
wants [1] 72/23
warning [1] 37/12
was [89]
Washington [16] 1/6 2/10 2/20 14/6 16/5 17/7 55/4 55/23 58/21 59/8 61/12 63/2 76/13 76/24 77/19 77/22
wasn't [4] 15/16 29/2 50/22 72/13
water [4] 53/15 53/16 55/15 61/3
Watkins [3] 11/11 11/13 11/14
way [25] 4/12 12/6 12/7 20/21 23/4 29/15 30/17 31/1 39/12 40/17 40/18 43/20 45/20 52/23 68/5 68/18 71/12 73/6 73/6 74/22 75/22 76/1 77/5 78/11 81/9
we [133]
we'd [2] 79/12 79/13
we're [1] 29/6
we've [9] 5/10

28/19 43/19 44/25 45/15 51/6 53/2 53/7 72/12
weak [2] 40/12 40/14
website [1] 18/7
weigh [5] 31/1 32/25 36/6 52/11 72/8
weighing [1] 62/10
weird [1] 77/21
well [18] 5/5 8/17 9/4 9/21 13/18 21/9 22/24 32/9 41/25 46/3 47/2 47/9 50/14 55/12 59/11 65/19 70/20 76/22
went [2] 27/2 52/22
were [40] 5/16 5/18 5/23 6/12 9/2 11/7 14/8 17/5 17/6 25/14 27/4 27/5 27/10 27/14 30/3 30/6 34/18 40/20 47/25 48/3 48/10 53/9 55/3 55/17 57/15 57/16 58/12 60/11 60/14 60/17 61/13 62/16 63/19 64/19 71/24 72/11 74/9 74/9 78/12 78/13
weren't [3] 27/13 58/7 78/1
what [74] 5/12 5/12 8/12 9/1 11/2 14/13 14/13 15/14 16/13 16/18 16/25 17/2 18/1 21/2 24/14 25/11 25/16 25/22 26/24 27/5 29/11 30/1 31/9 32/19 32/20 33/23 34/9 34/12 34/13 34/14 40/17 44/14 46/17 46/17 47/13 48/6 48/25 49/4 49/7 49/20 49/24 52/8 52/22 53/6 53/17 53/21 53/21 55/21 56/13 57/15

**66/4** 66/6 67/2 67/18 67/19 68/5 69/2 69/19 72/18 72/19 72/21 73/21 74/9 75/14 76/11 76/13 76/19 77/13 79/9 79/20 80/11 81/17 81/23
what's [2] 27/15 68/17
whatever [9] 15/12 27/16 29/3 31/1 35/17 62/24 74/24 75/1 76/15
whatsoever [1] 12/8
when [27] 3/11 7/18 13/17 13/18 14/3 18/21 19/16 22/11 25/17 30/3 44/3 44/7 48/19 48/21 50/23 50/24 51/2 52/13 52/14 59/19 68/14 70/14 71/1 73/1 75/13 80/11 81/25
where [46] 13/9 14/3 18/10 18/12 18/12 18/13 27/3 28/14 29/22 30/18 31/5 31/21 32/7 33/24 34/2 34/3 34/17 41/1 41/5 42/10 43/2 43/24 45/23 46/12 46/14 48/3 48/23 49/22 53/13 53/14 54/20 54/21 55/16 57/10 59/21 62/14 63/15 64/5 64/6 64/12 72/14 75/16 77/2 77/4 79/6 79/15
whether [22] 5/13 5/16 5/17 10/21 20/18 36/15 42/20 42/21 42/22 49/2 49/16 49/19 50/8 53/23 59/13 70/16 70/17 74/20 77/7 80/19 80/23 81/6
which [45] 6/8 7/8 7/16 11/2 11/7 12/21 19/17 22/16 22/17 23/16 24/1

**W**

**which... [34]** 24/12 28/1 28/10 29/25 30/17 32/19 34/19 43/8 43/24 44/21 46/5 47/23 48/12 49/8 54/3 54/21 56/11 56/13 58/6 59/13 62/3 62/14 63/18 63/18 63/23 65/21 66/15 67/25 68/1 68/8 73/16 73/22 78/8 79/15

**while [1]** 24/16

**whim [1]** 73/5

**White [5]** 14/22 15/4 15/6 15/7 16/2

**who [14]** 16/5 16/10 16/11 24/24 34/8 35/4 35/6 55/7 58/1 60/11 62/22 63/20 64/1 64/2

**whoever [1]** 3/8

**whole [1]** 23/2

**whom [1]** 38/9

**why [29]** 8/2 8/9 9/5 9/12 9/13 20/5 25/2 25/6 25/7 26/24 27/4 27/6 30/3 31/23 45/19 45/24 46/1 51/7 56/17 56/19 60/20 60/25 61/23 62/8 67/7 73/12 73/21 74/4 78/18

**widespread [1]** 63/7

**will [33]** 4/13 4/15 4/17 7/9 9/21 14/16 15/22 17/10 19/10 19/15 33/19 34/21 36/15 41/9 41/16 41/22 41/23 44/4 44/9 45/16 45/20 49/8 50/8 50/12 51/9 53/6 53/8 64/18 65/16 70/21 81/24 82/19 82/20

**willing [1]** 30/9

**win [2]** 13/12 23/8

**wing [2]** 1/5 1/7

**winning [2]** 67/5 69/7

**within [4]** 34/22 45/17 52/16 58/9

**without [8]** 19/9 22/24 40/9 40/10 45/8 61/3 73/25 75/1

**witness [5]** 10/17 10/20 10/25 11/11 76/16

**witnesses [7]** 23/3 31/6 34/6 34/8 34/18 34/20 63/4

**Wolken [2]** 28/21 47/23

**won [1]** 79/13

**won't [2]** 24/1 24/17

**word [1]** 60/5

**words [2]** 40/7 52/2

**work [6]** 45/9 58/18 59/9 62/5 75/4 78/13

**worked [5]** 13/17 54/22 55/17 62/22 64/7

**working [1]** 82/17

**works [1]** 17/8

**worry [3]** 11/5 67/4 69/6

**worthy [1]** 5/18

**would [88]**

**wouldn't [8]** 33/18 45/24 60/20 60/25 61/25 69/1 77/10 80/3

**Wright [2]** 17/15 22/11

**writ [1]** 66/13

**write [2]** 19/3 72/10

**writing [1]** 66/3

**written [1]** 73/5

**wrong [2]** 10/2 10/3

**Y**

**Yeah [7]** 17/5 25/21 29/21 45/12 60/9 70/1 81/15

**year [2]** 3/3 3/4

**years [4]** 33/15 34/22 56/6 77/24

**yes [18]** 8/8 12/12 14/1 19/12 19/15 21/23 31/12 31/12 33/6 49/10 57/5 58/14 68/9 70/11 75/1 75/12 75/21 80/9

**yet [4]** 18/18 20/3 23/6 27/4

**York [7]** 2/10 21/3 32/4 32/10 32/13 32/22 32/24

**you [199]**

**you'll [1]** 16/6

**You're [1]** 19/25

**you've [3]** 31/7 44/18 79/21

**your [126]**

**yourselves [1]** 3/5