# Exhibit A

| | |
|---|---|
| COLORADO COURT OF APPEALS<br>2 EAST 14TH AVENUE<br>DENVER, CO 80203<br><br>APPEAL | |
| **Plaintiff-Appellee:**<br>ERIC COOMER,<br><br>vs.<br><br>**Defendants-Appellants:**<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., SIDNEY POWELL, SIDNEY POWELL, P.C., RUDOLPH GIULIANI, JOSEPH OLTMANN, FEC UNITED, SHUFFLING MADNESS MEDIA, INC., dba CONSERVATIVE DAILY, JAMES HOFT, TGP COMMUNICATIONS LLC, dba THE GATEWAY PUNDIT, MICHELLE MALKIN, ERIC METAXAS, CHANEL RION, and HERRING NETWORKS, INC., dba ONE AMERICA NEWS NETWORK | ▲ COURT USE ONLY ▲ |
| **Attorneys for defendants-appellants Herring Networks, Inc., d/b/a One America News Network, and Chanel Rion:**<br>Richard A. Westfall, No. 15295<br>Westfall Law, LLC<br>5842 W. Marquette Drive<br>Denver, Colorado 80235<br>Telephone:  (720) 904-6022<br>Email: rwestfall@westfall.law<br><br>Blaine C. Kimrey, No. 57422<br>Jeanah Park, No. 57301<br>Vedder Price P.C.<br>222 N. LaSalle Street, Suite 2600<br>Chicago, Illinois 60601<br>Telephone:  (312) 609-7865<br>Email: bkimrey@vedderprice.com<br>        jpark@vedderprice.com | Court of Appeals Case Numbers:<br>2022CA843<br>2022CA879 |
| **AMENDED OPENING BRIEF OF DEFENDANTS-APPELLANTS HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, AND CHANEL RION** | |

# I.   CERTIFICATE OF COMPLIANCE

This brief complies with C.A.R. 28 and 32 except for the word limit in C.A.R. 28(g)(1).  Pursuant to the Order of October 12, 2022, Herring Networks, Inc. and Chanel Rion have cut the brief to 14,980 words.

*/s/ Blaine C. Kimrey*

## II.   TABLE OF CONTENTS

**Page**

I. CERTIFICATE OF COMPLIANCE ................................................................. i

II. TABLE OF CONTENTS .......................................................................... ii

III. TABLE OF AUTHORITIES ..................................................................vi

IV. STATEMENT OF ISSUES PRESENTED FOR REVIEW .............................1

V. STATEMENT OF THE CASE ..................................................................3

    A.     Coomer's lawsuit .................................................................3

    B.     Coomer in the public spotlight .................................................4

    C.     The antifa call ......................................................................6

    D.     Coomer's Facebook posts .......................................................8

    E.     The statements made by OAN and/or Rion ..................................10

    F.     The District Court litigation ...................................................11

VI. SUMMARY OF ARGUMENT ................................................................12

VII. ARGUMENT ..................................................................................15

    A.     The District Court reversibly erred in applying the wrong standard of proof .....................................................................15

           1.     The standard of review is *de novo* on this preserved issue ......15

           2.     The District Court should have applied the clear and convincing standard of proof but did not ...................................16

    B.     The District Court reversibly erred by improperly substituting itself as fact finder and improperly judging credibility ....................18

           1.     The standard of review is *de novo* on this preserved issue ......18

           2.     The District Court viewed facts in Coomer's favor and judged credibility ...........................................................18

    C.     The District Court reversibly erred in relying on inadmissible evidence .........................................................................22

           1.     The standard of review is *de novo* on this preserved issue ......22

           2.     The District Court relied on inadmissible evidence ...............23

# TABLE OF CONTENTS
(continued)

Page

D.   The District Court reversibly erred in denying OAN and Rion anti-SLAPP relief on Coomer's defamation claim (Cause of Action A) ...................................................................................... 28

    1.   The standard of review is *de novo* on these preserved issues ........................................................................ 28

    2.   The District Court reversibly erred in failing to apply the *in haec verba* doctrine, in considering allegedly defamatory statements not asserted in the operative complaint, and in lumping all allegedly defamatory statements by all defendants-appellants into three generalized and inaccurate categories ...................................... 29

    3.   The District Court reversibly erred in failing to apply the "of and concerning" doctrine and deeming Coomer and Dominion to be synonymous ................................................... 31

    4.   The District Court reversibly erred in finding sufficient admissible evidence of actual malice ...................................... 32

    5.   The District Court reversibly erred in finding the statements at issue false ........................................................ 37

    6.   The District Court reversibly erred in failing to apply the substantial truth doctrine ........................................................ 41

    7.   The District Court reversibly erred in finding statements capable of defamatory meaning ............................................... 43

    8.   The District Court reversibly erred in deeming Coomer a private figure, finding Coomer's claim not barred by the incremental harm doctrine, and finding sufficient evidence of actual damages ..................................................... 44

E.   The District Court reversibly erred in finding Coomer had pled or supported with admissible evidence sufficiently outrageous conduct for intentional infliction of emotional distress (Cause of Action B) ...................................................................................... 46

    1.   The standard of review is *de novo* on this preserved issue ...... 46

## TABLE OF CONTENTS
### (continued)

Page

2.   As a matter of law, the conduct of OAN and Rion was not outrageous, they did not act with actual malice, and Coomer has not demonstrated emotional distress ...................46

F.   The District Court reversibly erred in finding Coomer had sufficiently pled or submitted sufficient admissible evidence of a conspiracy (Cause of Action C) ......................................................49

1.   The standard of review is *de novo* on this preserved issue ......49

2.   A conspiracy requires an agreement among alleged co-conspirators, and no admissible evidence showed such an agreement ..................................................................................49

G.   The District Court reversibly erred in denying OAN and Rion anti-SLAPP relief on Coomer's injunctive relief claim (Cause of Action D).......................................................................................51

1.   The standard of review is *de novo* on this preserved issue ......51

2.   Injunctive relief is not a separate claim, and Coomer never moved for or otherwise justified an injunction ..............51

H.   The District Court reversibly erred in granting discovery and then in granting it in a one-way, inequitable fashion .........................53

1.   The standard of review is an abuse of discretion on this preserved issue ........................................................................53

2.   The District Court erred in *sua sponte* reversing the prior judge's denial of discovery and then erred again in almost completely denying discovery to the defendants .........54

I.   The District Court reversibly erred in *sua sponte* sanctioning OAN and Rion and in not recusing itself despite clear bias ..............60

1.   The standard of review is a mixed question on these preserved issues.......................................................................60

2.   The District Court improperly sanctioned OAN and Rion ......61

3.   The District Court demonstrated clear bias requiring recusal .....................................................................................63

# TABLE OF CONTENTS
### (continued)

**Page**

J.     The District Court reversibly erred in failing to stay the underlying case ..................................................................... 66

     1.    The standard of review is *de novo* on this preserved issue ...... 66

     2.    By staying OAN's and Rion's responsive pleading deadlines but not otherwise staying the case, the District Court reversibly erred ............................................................. 66

VIII. CONCLUSION .............................................................................. 67

IX. FEE REQUEST ................................................................................ 67

### III.   TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspen Props. Co. v. Preble*,
   780 P.2d 57 (Colo. App. 1989)................................................................58

*Averill v. Superior Court*,
   42 Cal. App. 4th 1170 (1996) .............................................................45

*Baral v. Schnitt*,
   376 P.3d 604 (Cal. 2016) ...................................................................16

*Barker v. Fox & Associates*,
   240 Cal. App. 4th 333 (2015) .............................................................45

*Bruce v. City of Colorado Springs*,
   252 P.3d 30 (Colo. App. 2010)...........................................................64

*Christian Research Inst. v. Alnor*,
   148 Cal. App. 4th 71 (2007) ..............................................................17

*Colorado Community Bank v. Hoffman*,
   338 P. 3d 390 (Colo. App. 2013).........................................................50

*Corporon v. Safeway Stores, Inc.*,
   708 P.2d 1385 (Colo. App. 1985).................................................10, 29

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967)...........................................................33, 34, 35

*Deatley v. Allard*,
   2015 WL 134271 (D. Colo. Jan. 9, 2015) .........................................31

*DiLeo v. Koltnow*,
   613 P.2d 318 (Colo. 1980).................................................................37

*Diversified Management, Inc. v. Denver Post, Inc.*,
   653 P.2d 1103 (Colo. 1982)..........................................................16, 45

*E-470 Public Highway Authority v. 455 Co.*,
   3 P.3d 18 (Colo. 2000) ...................................................................................60

*Ehrlich Feedlot, Inc. v. Oldenburg*,
   140 P.3d 265 (Colo. App. 2006) ...................................................................56

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017) ...........................................................................32

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ......................................................................................45

*Goebel v. Benton*,
   830 P.2d 995 (Colo. 1992) ............................................................................65

*Gomba v. McLaughlin*,
   504 P.2d 337 (Colo. 1972) .......................................................................41, 42

*Gordon v. Boyles*,
   99 P.3d 75 (Colo. App. 2004) .......................................................................37

*Green v. Qwest Servs. Corp.*,
   155 P.3d 383 (Colo. App. 2006) ...................................................................46

*Hall v. Time Warner, Inc.*,
   153 Cal. App. 4th 1337 (2007) .....................................................................23

*Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*,
   2018 WL 8755870 (C.D. Cal. Dec. 10, 2018) ..............................................17

*Hussain v. Palmer Commc'ns Inc.*,
   60 F. App'x 747 (10th Cir. 2003) .................................................................47

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ........................................................................................48

*Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*,
   2013 WL 212640 (D. Colo. Jan. 18, 2013) ..................................................29

*Irwin v. Elam Constr., Inc.*,
   793 P.2d 609 (Colo. App. 1990) ...................................................................62

*Jankovic v. Int'l Crisis Grp.*,
   494 F.3d 1080 (D.C. Cir. 2007) ...................................................................32, 33

*Johnson v. Dist. Ct. In & For Jefferson Cnty.*,
   674 P.2d 952 (Colo. 1984) ..................................................................................60

*Jones v. Scripps Media, Inc.*,
   2017 WL 1230481 (E.D. Mich. Apr. 4, 2017) ...................................................48

*Keading v. Keading*,
   60 Cal. App. 5th 1115 (2021) .............................................................................53

*Keohane v. Stewart*,
   882 P.2d 1293 (Colo. 1994)................................................................................45

*Klinck v. District Court*,
   876 P.2d 1270 (Colo. 1994)................................................................................65

*Korean New Life Methodist Church v. Korean Methodist Church of
   the Americas*, 474 P.3d 143 (Colo. App. 2020)................................................51

*Lawson v. Stow*,
   327 P.3d 340 (Colo. App. 2014)....................................................................28, 37

*Lewis v. McGraw-Hill Broadcasting Co.*,
   832 P.2d 1118 (Colo. App. 1992)........................................................................45

*Litinsky v. Kaplan*,
   40 Cal. App. 5th 970 (2019) ...............................................................................23

*L.S.S. v. S.A.P.*,
   2022 COA 123 ............................................................................15, 17, 19, 37

*People ex rel. Lockyer v. Brar*,
   115 Cal. App. 4th 1315 (2004) ...........................................................................57

*People v. Julien*,
   47 P.3d 1194 (Colo. 2002)..................................................................................60

*Mackall v. JPMorgan Chase Bank, N.A.*,
   356 P.3d 946 (Colo. App. 2014)..........................................................................46

*McIntyre v. Jones*,
194 P.3d 519 (Colo. App. 1988)..........................................................37

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ..............................................................55

*NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*,
879 P.2d 6 (Colo. 1994).......................................................................28

*Nelson v. Elway*,
908 P.2d 102 (Colo. 1995)....................................................................50

*Pedlow v. Stamp*,
776 P.2d 382 (Colo. 1989)...............................................................60, 62

*Pierce v. St. Vrain Valley Sch. Dist.*,
944 P.2d 646 (Colo. App. 1997)..........................................................41

*Salazar v. Pub. Tr. Inst.*,
2022 COA 109 ..........................................................................15, 16, 18

*Sanders v. Superior Court*,
34 Cal. App. 3d 270 (1973) ................................................................58

*Seelig v. Infinity Broad. Corp.*,
97 Cal. App. 4th 798 (2002) ...............................................................44

*SG Ints. I, Ltd. v. Kolbenschlag*,
452 P.3d 1 (Colo. App. 2019)..............................................................41

*St. Amant v. Thompson*,
390 U.S. 727 (1968).......................................................................33, 35

*Stump v. Gates*,
777 F. Supp. 808 (D. Colo. 1991)........................................................31

*Sumler v. Dist. Court*,
889 P.2d 50 (Colo. 1995).....................................................................56

*Swartzman v. Superior Court In and For Los Angeles County*,
231 Cal. App. 2d 195 (1964) ..............................................................58

*Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*,
434 P.3d 1152 (Cal. 2019) .................................................................22, 23

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
15 N.Y.S.3d 36 (2015) ..............................................................................32

*Tonnessen v. Denver Pub. Co.*,
5 P.3d 959 (Colo. App. 2000) .............................................................45, 47

*US Dominion, Inc. v. Herring Networks, Inc.*,
Case No. 1:21-cv-02130 (D.D.C.) ............................................................32

*US Dominion, Inc. v. MyPillow, Inc.*,
2022 WL 1597420 (D.D.C. May 19, 2022)...............................................50

*Varian Med. Sys., Inc. v. Delfino*,
106 P.3d 958 (Cal. 2005) ..........................................................................66

*Walters v. Linhof*,
559 F. Supp. 1231 (D. Colo. 1983)......................................................10, 29

*Weinstein v. Bullick*,
827 F. Supp. 1193 (E.D. Pa. 1993) ...........................................................48

*Wibby v. Boulder County Board of County Commissioners*,
409 P.3d 516 (Colo. App. 2016) ...............................................................52

*Zueger v. Goss*,
2014 COA 61 ............................................................................................29

**Statutes**

C.R.S. § 13-17-101 ........................................................................................62

C.R.S. § 13-20-1101 ..................................................................11, 16, 55, 67

C.R.S. § 13-17-103 ........................................................................................62

**Other Authorities**

Colorado Rule of Civil Procedure 11 ............................................................62

Colorado Rule of Civil Procedure 97 ....................................................................64

Jim Hoft, "BODY CAM FOOTAGE: Dominion Executive Eric
Coomer Cuffed and Arrested in Colorado – Video Appears to
Show He Drove Truck into Bar, Fled the Scene and Lied to
Police," *Gateway Pundit*, March 1, 2022, available at
https://www.thegatewaypundit.com/2022/03/body-cam-footage-
dominion-executive-eric-coomer-cuffed-arrested-colorado-video-
appears-show-drove-truck-bar-fled-scene-lied-police/ (last visited
October 21, 2022) ....................................................................................40

## IV.   STATEMENT OF ISSUES PRESENTED

1.     Whether the District Court reversibly erred in applying the wrong standard of proof in analyzing whether dismissal was appropriate under the Colorado anti-SLAPP statute.

2.     Whether the District Court reversibly erred by improperly substituting itself as fact finder and improperly judging credibility.

3.     Whether the District Court reversibly erred in relying on inadmissible evidence.

4.     Whether the District Court reversibly erred in denying anti-SLAPP relief on the defamation claim (Cause of Action A).

      a.     Whether the District Court reversibly erred in failing to apply the *in haec verba* doctrine.

      b.     Whether the District Court reversibly erred in failing to apply the "of and concerning" doctrine.

      c.     Whether the District Court reversibly erred in finding sufficient admissible evidence of actual malice.

      d.     Whether the District Court reversibly erred in finding sufficient evidence of falsity.

e.   Whether the District Court reversibly erred in failing to apply the substantial truth doctrine.

f.   Whether the District Court reversibly erred in finding certain statements capable of defamatory meaning.

g.   Whether the District Court reversibly erred in finding Coomer a private figure.

h.   Whether the District Court reversibly erred in finding Coomer's defamation claim not barred by the incremental harm doctrine.

i.   Whether the District Court reversibly erred in finding that actual damages had been adequately pled or supported by sufficient evidence.

5.   Whether the District Court reversibly erred in finding Coomer had pled or supported with admissible evidence sufficiently outrageous conduct for the intentional infliction of emotional distress claim (Cause of Action B).

6.   Whether the District Court reversibly erred in finding Coomer had sufficiently pled or submitted sufficient admissible evidence of a conspiracy (Cause of Action C).

7.   Whether the District Court reversibly erred in denying anti-SLAPP relief on Coomer's injunctive relief count (Cause of Action D).

2

8.    Whether the District Court reversibly erred in granting discovery and then in granting it in a one-way, inequitable fashion.

9.    Whether the District Court reversibly erred in *sua sponte* sanctioning OAN and Rion and in not recusing itself despite clear bias.

10.    Whether the District Court erred in refusing to fully stay the underlying case pending appeal.

## V.    STATEMENT OF THE CASE

### A.    Coomer's lawsuit

On December 23, 2020, plaintiff Eric Coomer sued 15 defendants, including Herring Networks, Inc., d/b/a One America News Network ("OAN"), and OAN reporter and Chief White House Correspondent Chanel Rion, claiming Coomer was defamed in news coverage, pleadings, podcasts, etc., that reported statements that someone claiming to be Coomer allegedly made on a conference call.   On February 4, 2021, Coomer filed his First Amended Complaint (CF p. 151, "Complaint" or "Compl."), asserting claims against OAN and Rion for defamation (Cause of Action A), intentional infliction of emotional distress ("IIED") (Cause of Action B), conspiracy (Cause of Action C), and injunctive relief (Cause of Action D).

3

Coomer alleges he was defamed by statements by defendant-appellant Joseph Oltmann that in late September 2020, Oltmann heard someone who was identified as "Eric from Dominion" say during a conference call among antifa leaders that the other callers should not worry about "[w]hat are we gonna do if f-ing Trump wins?" the upcoming presidential election because "Trump is not gonna win.  I made f-ing sure of that.  Hahahaha."  (Compl. ¶ 52).

Oltmann Google-searched for "Eric," "Dominion," and "Denver, Colorado" and discovered Coomer was the Director of Product Strategy and Security for Dominion Voting Systems.  (Compl. ¶ 52).  Dominion is one of the country's largest voting machine vendors; according to Coomer's lawsuit, "Dominion provided election related services to at least thirty different states during the 2020 presidential election."  (Compl. ¶ 45).

Coomer alleges that among many media appearances, Oltmann appeared on OAN in a report hosted by Rion in which Oltmann recounted the conference call and described his subsequent research into Coomer.  (Compl. ¶ 61).

## B.    Coomer in the public spotlight

Questions about the security of Dominion voting machines and software were publicly debated long before the 2020 presidential election.  In 2017, Georgia voters sued regarding the insecurity of Dominion machines, and in October 2020, a federal

judge credited testimony from an "array of experts and subject matter specialists [that] provided a huge volume of significant evidence regarding the security risks and deficits in the [Dominion] system," finding that those risks were neither "hypothetical nor remote." *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1278, 1341 (N.D. Ga. 2020). Similarly, in January 2020, the state of Texas refused to certify Dominion's system, questioning whether it "is safe from fraudulent or unauthorized manipulation."

In the context of these public controversies, Coomer invited public scrutiny. Coomer was and is a public figure who made numerous public appearances to advocate for Dominion and himself. Coomer appeared at election security forums, such as one hosted by the U.S. Cybersecurity & Infrastructure Security Agency.[1] Coomer was a public spokesman for Dominion, regularly making presentations to election officials in open meetings.[2] Coomer also "was invited to join the Cyber Security Task Force assembled by the National Association of Secretaries of State."

---

[1] *See* Agenda for 2nd Annual National Cybersecurity Summit, September 18-19, 2019, available at https://www.cisa.gov/uscert/sites/default/files/2019-09/2019_Cybersecurity_Summit_Agenda_S508C_13.pdf (last visited October 21, 2022), cited at CF p. 4,783.

[2] *See, e.g.,* "Dr. Eric Coomer VP at Dominion admits they don't update software to protect against voter fraud," YouTube, August 30, 2016, available at https://www.youtube.com/watch?v=BbCmq0jPUxY&t=447s (last visited October 21, 2022), cited at CF p. 2,187.

(Declaration of Eric Coomer, EX p. 36 ("Coomer Decl.") ¶ 4).  He has been "an active participant in the development of the Institute of Electrical and Electronics Engineers (IEEE) common data format for elections systems" and "developed Dominion's Coordinated Vulnerability Disclosure Program in conjunction with several third-party industry researchers in 2020." (*Id*.).  And during the October 13 and 14, 2021 hearing on the Motion, OAN and Rion played a clip from the HBO election insecurity documentary *Kill Chain* that showed Coomer in a Dominion promotional video.  *See* TR 10/14/21, 569:2-9.

## C.    The antifa call

Coomer's lawsuit is based in large part on his denial of having participated in the widely reported antifa call.  But Coomer has not presented clear and convincing admissible evidence to support his position, and evidence submitted to the District Court would allow a reasonable juror to conclude that a call matching Oltmann's description did occur.  Oltmann described listening via Zoom to a call in mid- to late-September 2020 among antifa leaders.  (Deposition of Joe Oltmann ("Oltmann Dep."), CF p. 11,486, 15:18-19, 51:16-24, 71:10-15).  He was not familiar with Coomer before the call, but rather joined the call to identify antifa journalists.  *Id*. at 50:7-10.  Oltmann noted that the call focused in part on right-wing activist Joey Camp.  *Id*. at 76:10-20.

The Declaration of Individual 1 (later publicly revealed to be Tay Anderson, a leader in the Black Lives Matter movement and member of the Denver School Board), attached as Exhibit U to Coomer's anti-SLAPP Response,[3] begins by noting that Anderson encountered Camp at a protest on September 23, 2020.  (Response, Exh. U ("Anderson Decl."), ¶ 8).   Anderson then admits that he hosted a Zoom conference call on September 25, 2020 that 15-20 left-wing activists joined to discuss escalating tactics from Camp.  (*Id*. ¶ 10).  This matches the call described by Oltmann, and the call occurred one day before Oltmann first Google searched for "Eric," "Dominion," and "Denver" on September 26, 2020.  (Oltmann Dep. 72:1-8). A reasonable juror could conclude that this is the call that formed the basis for Oltmann's future statements.

It's not surprising that Anderson and others on the call might deny that they are "antifa," but a collection of left-wing BLM activists discussing how to counter efforts by a right-wing activist fits Oltmann's definition of antifa.  *See* Oltmann Dep. 41:14-18 (describing an antifa member as "[a] radical leftist that communicates openly with other radical leftists that stand for antifa being antifascist . . . [t]ypically white extremist liberals").  Coomer has not provided clear and convincing evidence to disprove an antifa call (as that would be defined by Oltmann).  Moreover, Coomer

---

[3] CF p. 8,236 ("Response").

has maintained that he was not on any such call.  (Coomer Decl. ¶ 18).  If that's the case, he lacks personal knowledge about whether such a call occurred.

## D.    Coomer's Facebook posts

After the call in which Oltmann believes he heard someone identified as Coomer speak, Oltmann gained access to Coomer's Facebook page.  That Facebook page revealed numerous radical, profane, violent posts showing Coomer's deep loathing of Trump and sympathy for antifa.  *See* Deposition of Eric Coomer (CF p. 14,478 ("Coomer Dep.")), Exh. P23.  The Facebook posts confirmed that Coomer held views consistent with the comment Oltmann claims to have heard on the call. *See* Deposition of Chanel Rion (CF p. 13,530 ("Rion Dep.")), 118:11-20.   For instance, on July 21, 2016, Coomer published on Facebook to approximately 300 "friends" that "[o]nly an absolute FUCKING IDIOT could ever vote for that wind-bag fuck-tard FASCIST RACIST FUCK" and stated that his opinions were his own and "not necessarily the thoughts of my employer, though if not, I should probably find another job . . . Who wants to work for complete morons?"  Rion Dep., Exh. B, p. 0072.

On December 8, 2020, Coomer authored a guest editorial in *The Denver Post*. *See* EX p. 186.  He wrote: "***[A]ny posts*** on social media channels purporting to be from me ***have also been fabricated***."  *Id.*  (Emphasis added).  Coomer reiterated in

an *Ark Valley Voice* interview that "his Facebook account was dormant for about three and a half years, until the George Floyd murder.  At that point he began posting here and there.  ***He was not the author of the wild posts being circulated***."  *See* Jan Wondra, Court Filing Reveals Trump's Voter Fraud Claim Was a Big Lie From The Beginning,   ARK   VALLEY   VOICE,   Sept.   23,   2021,   available   at https://arkvalleyvoice.com/court-filing-reveals-trumps-voter-fraud-claim-was-a-big-lie-from-the-beginning/ (last visited October 21, 2022) (emphasis added), cited at CF p. 12,165.

But on August 24, 2021, *New York Times Magazine* published a devastating admission from Coomer in a profile about him: "***the Facebook posts were, in fact, authentic***."  *See* EX p. 192 (emphasis added).  Coomer told the *Times* that "he believed every word of what he said on Facebook, but when colleagues later asked him what he was thinking, he was frank: He ***had screwed up***."  *Id.*  (Emphasis added.)  This means not only that the Facebook posts providing factual background for the segments published by OAN and Rion were accurate, but also that Coomer had lied about them to curtail the fallout.

**E.**      **The statements made by OAN and/or Rion**

The Complaint identifies ***only the following three allegedly defamatory statements*** by OAN and/or Rion:[4]

1.      "On November 17, 2020, OANN Chief White House Correspondent Chanel Rion published false statements regarding Coomer, tweeting 'Dominion Director of Strategy and Security, #EricCoomer: "Trump won't win. I made F***ing sure of that."'" (Compl. ¶ 61).

2.      "Chanel Rion, Dominion-izing the Vote, Nov. 21, 2020, YOUTUBE (saying 'In Coomer's case, he was in a position of power to actually act on his rage against Trump and Trump voters. What does he mean when he says "Trump won't win. I made f-ing sure of that." Nothing?')." (Compl. n. 83).

3.      "Top Dominion Exec: Trump Is Not Going to Win. I Made F**ing Sure of That, Nov. 29, 2020, YOUTUBE (publishing Oltmann saying 'Eric Coomer was this, you know, he's not just Antifa, he was responsible for putting his finger on the scales of our election' and adding '***If*** Coomer is investigated and found to have

---

[4] Coomer's Response, through the "Defamatory Statement Spreadsheet," attempts to increase the number of allegedly defamatory statements at issue, but this is not appropriate.  The content of the allegedly defamatory statement must be ***pled*** with particularity in the complaint.  *See, e.g., Corporon v. Safeway Stores, Inc*., 708 P.2d 1385, 1390 (Colo. App. 1985); *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983).

indeed tampered with a presidential election, such an action could be tried for treason. Unfortunately, the question is, will the FBI step up to investigate?')." (Compl. n. 83) (emphasis added).

## F.    The District Court litigation

In late May 2021, Judge Marie A. Moses became the third judge assigned to this case.  By that time, the defendants had all filed special motions to dismiss pursuant to C.R.S. § 13-20-1101, Colorado's "anti-SLAPP statute," and Judge Sheila Ann Rappaport had denied Coomer's request to lift the automatic anti-SLAPP stay of discovery.  In one of her first actions, Judge Moses *sua sponte* reversed Judge Rappaport's May 21, 2021 Order rejecting discovery and allowed sweeping one-way discovery by Coomer that included significant document productions and depositions of every defendant.  *See* June 8, 2021 Order, CF p. 6,657.  Before even holding an evidentiary hearing, Judge Moses found "probable falsity" as to Oltmann's statements regarding the antifa call.  *See* TR 7/2/21, 39:2-4.  Judge Moses also sanctioned Oltmann and his counsel multiple times, sanctioned OAN and Rion for allegedly making too many evidentiary objections, and threatened OAN's out-of-state counsel with revocation of *pro hac vice* admissions.  *See* CF pp. 7,624, 8,066, 16,102, 18,090.  After denying the defendants an opportunity to conduct reciprocal discovery, Judge Moses conducted a two-day anti-SLAPP hearing that

11

proceeded more like a trial on the merits.  Although Judge Moses allotted 6.5 hours of argument to the ***single plaintiff***, she allotted only 7.5 hours to the ***14 remaining defendants***.  On May 13, 2022, Judge Moses entered a 136-page order (the "Order"), analyzing all of the defendants' anti-SLAPP motions jointly and denying all of the motions.  (CF p. 21,688).  This appeal followed.

## VI.   SUMMARY OF ARGUMENT

In denying OAN's and Rion's anti-SLAPP motion, the District Court was consumed by preconceived narratives about events in the national spotlight in late 2020 and early 2021.  But none of that has ***any*** relevance to determining whether Coomer can present clear and convincing admissible evidence that OAN and Rion defamed him.  The District Court, at Coomer's urging, apparently wanted to make this case about something more, attempting to draw tenuous connections to the events of January 6, 2021, and the so-called "Big Lie" while advancing an unsupported theme that the 15 defendants sued by Coomer worked in concert to carry out a conspiracy.  But as to OAN and Rion, the reality is that this case comes down to just ***three*** statements in a 12-day span alleged in the Complaint, none of which accuses Coomer of rigging voting machines or stealing the election.  The District Court should have looked at those three statements and evaluated whether Coomer had presented clear and convincing admissible evidence that he could

prevail on his claims.  Because the District Court did not do that, its Order should be overturned.

First, the District Court failed to apply the correct standard of proof under the anti-SLAPP statute, improperly accepting Coomer's allegations as true and usurping the role of the jury by opining on the credibility of witnesses and making findings of fact.   The District Court then magnified these failings by denying numerous objections to evidence by OAN and Rion simply because they allegedly made "too many" objections and by relying on inadmissible evidence.

The District Court also repeatedly reversibly erred in analyzing Coomer's claims under the anti-SLAPP statute.  First, the District Court made at least nine errors in denying anti-SLAPP relief on Coomer's defamation claim, failing to (1) apply the *in haec verba* doctrine, (2) apply the "of and concerning" doctrine, (3) recognize that Coomer could not present clear and convincing admissible evidence of actual malice, (4)  recognize that Coomer could not present clear and convincing admissible evidence of falsity, (5) apply the substantial truth doctrine, (6) recognize that certain statements were not capable of defamatory meaning, (7) find that Coomer was a public figure, (8) apply the incremental harm doctrine, and (9) recognize that Coomer did not present sufficient evidence of actual damages.

13

The District Court also erred in denying anti-SLAPP relief on the IIED claim. The conduct at issue here is not outrageous as a matter of law, Coomer cannot establish actual malice, and there is no meaningful evidence in the Record that Coomer suffered emotional distress.  Thus, this count should have been dismissed.

With respect to the conspiracy claim, the District Court erred in denying anti-SLAPP relief because the Record is entirely devoid of any evidence (much less admissible evidence) of an agreement among any of the defendants.

And with respect to the injunctive relief claim, the District Court's astonishing finding that Coomer (who never moved for injunctive relief) is entitled to injunctive relief — despite the fact that the parties never briefed these issues — must be overturned.

The District Court's Order is not surprising because it is the culmination of a pattern of bias and unfair prejudice in favor of the plaintiff that began from the moment Judge Moses took over this case and *sua sponte* overturned the prior judge's decision denying anti-SLAPP discovery.  Judge Moses only magnified this error by largely denying defendants the opportunity to conduct discovery.  If the Court doesn't reverse, it should at minimum order on remand that the District Court allow OAN and Rion to take reciprocal discovery.

Judge Moses also improperly and unfairly sanctioned OAN and Rion because they raised numerous good faith evidentiary objections.  If this case returns to the District Court, it can only proceed in a fair and balanced manner if the Court overturns the sanctions order and orders Judge Moses to recuse herself.

Finally, the District Court erred in not granting a full case stay pending this appeal.

## VII.   ARGUMENT

The District Court's March 13, 2022 Order is riddled with errors of both fact and law and should be reversed on any one of numerous grounds.

**A.    The District Court reversibly erred in applying the wrong standard of proof.**

**1.    The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies to an anti-SLAPP motion decision.  *See L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 19; *Salazar v. Pub. Tr. Inst.*, 2022 COA 109, ¶ 21.

OAN and Rion preserved this issue in their Motion at pp. 13, 19, and 22,[5] and in their Reply at pp. 8-9, 14-18, and 20.[6]  The District Court addressed this issue throughout the Order.

### 2. The District Court should have applied the clear and convincing standard of proof but did not.

The District Court relied on the reasoning of *Baral v. Schnitt*, 376 P.3d 604, 608-09 (Cal. 2016), and held that "Coomer's evidence is accepted as true." (Order ¶ 165).  But in *Salazar*, the court held that "[w]e neither simply accept the truth of the allegations nor make an ultimate determination of their truth."  2022 COA 109, ¶ 21.  Moreover, *Baral* and the other authorities cited by the District Court were not actual malice cases.[7]  The Colorado Supreme Court has not yet addressed the applicable anti-SLAPP standard in cases involving actual malice, but the court in

---

[5] OAN's and Rion's Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101 (CF p. 5,778, "Motion").

[6] OAN's and Rion's Reply in Support of Their Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101 (CF p. 13,376, "Reply").

[7] As discussed further *infra* p. 32, because the OAN Defendants' reporting addressed a matter of public concern and Coomer is a public figure, Coomer must establish actual malice.  *Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1106 (Colo. 1982).  Although the District Court erroneously found Coomer to be a private figure, it found that the reporting involved a matter of public concern, thus the actual malice standard applies.  (Order ¶ 147).

16

*L.S.S.* held that "to survive an anti-SLAPP motion, the plaintiff must establish a probability that they will be able to produce clear and convincing evidence of actual malice at trial." 2022 COA 123, ¶ 42; *see also Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, 2018 WL 8755870, *6 (C.D. Cal. Dec. 10, 2018); *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 84 (2007).[8]

Although the District Court referred superficially in the Order to a clear and convincing standard, the District Court repeatedly failed to apply it, effectively adopting a plausibility standard by accepting Coomer's allegations as true, disregarding contrary evidence (or erroneously claiming it didn't exist), and applying a purported *prima facie* case and/or reasonable probability standard. For example, the District Court largely ignored the highly inflammatory Facebook posts of Coomer — which show Coomer had opinions and a mentality consistent with Oltmann's allegations. *See*, *e.g.*, Order ¶ 25. By acting as if this evidence did not exist or did not matter, the District Court cleared a path to find that Coomer met the "*prima facie*" standard, which the District Court defined as only requiring "evidence that is sufficient to establish a fact unless disproved or rebutted." (Order ¶ 127).

---

[8] As the District Court acknowledged in the Order, "Colorado courts look to the more well-established body of authority interpreting the California law for guidance since the Anti-SLAPP Statute 'tracks California's statute almost exactly.'" (Order ¶ 118).

Because the District Court applied the wrong standard in evaluating the anti-SLAPP motion, improperly deferring to the plaintiff, the outcome of the Order was necessarily biased and erroneous.  For example, on the critical question of whether someone claiming to be Coomer participated in the antifa conference call, the District Court "accepted as true" the declaration by Coomer that the allegation was false and therefore deemed it "uncontroverted."  (Order ¶ 191).  Accordingly, the Order should be reversed.

**B.      The District Court reversibly erred by improperly substituting itself as fact finder and improperly judging credibility.**

**1.      The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies to a District Court's ruling on an anti-SLAPP motion.  *See supra* Section VII.A.1.

OAN and Rion preserved this issue in their Motion at pp. 13, 19, and 22, and in their Reply at pp. 8-9, 14-18, and 20.  The District Court addressed this issue throughout the Order.

**2.      The District Court viewed facts in Coomer's favor and judged credibility.**

Even if the District Court had applied the proper standard of proof (which it didn't), it reversibly erred by usurping the role of the jury, weighing disputed evidence, and making credibility determinations.  In *Salazar*, the court held that in

ruling on an anti-SLAPP motion, a court should not "make an ultimate determination of [the] truth," but rather, "ever cognizant that we do not sit as a preliminary jury, we assess whether the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff."  2022 COA 109, ¶ 22; *see also L.S.S.*, 2022 COA 123, ¶ 46 ("[I]t wasn't the court's role to weigh that evidence or evaluate the witnesses' credibility.").  Here, however, the District Court made nearly 60 pages of "Findings of Fact" despite having an incomplete factual record and one-sided discovery, after telling the parties that the District Court "will not be weighing the evidence presented by the parties or resolving conflicting factual claims."  (Order, pp. 6-66; October 11, 2021 Order, p. 2).

Paragraph 71 of the Order is illustrative.  The District Court assessed credibility, usurped the role of the jury, and disregarded the significance of the fact that Oltmann testified under oath that he was on the antifa call.  (Order ¶ 71). The District Court ignored that one of Coomer's own witnesses verified significant details of the call.  *See* Response, Exh. U.  Then, based ***only*** on the declaration of disgruntled former OAN non-management employee Martin Golingan (whom defendants were given no opportunity to cross-examine), the District Court found that OAN published "Dominion-izing the Vote" "knowing it was false."  *See* Order ¶ 71; Declaration of Martin Golingan (CF p. 10,868, "Golingan Decl.").  In this

19

paragraph, the District Court ***decided*** a fundamental element of the case without even considering evidence from OAN and Rion, or allowing OAN and Rion to conduct meaningful discovery.  A reasonable juror could easily find Coomer lacks sufficient evidence to support his claims, but the District Court foreclosed that possibility.

Paragraph 72 is similarly problematic.  The District Court, ***without any citation at all to the factual record***, concluded ***as part of its "Findings of Fact"*** that "OAN-Rion maliciously and consciously set out to conform their allegations against Coomer to that storyline, concealing their wholly unreasonable reliance on Oltmann, failure to investigate, and disregard of authoritative sources rejecting fraud allegations."  Meanwhile, the District Court adopted Coomer's declaration in full, without even acknowledging incontrovertible evidence that he is a liar.  *See, e.g.,* Order n. 29-34, 51, 64, 87, 113, 116, 129, 196, 385-87 (adopting, without criticism, Coomer's factual allegations); *supra* pp. 8-9 discussing Coomer's public lies about his social media account.  The District Court found repeatedly that Oltmann was not credible (*see, e.g.,* Order ¶¶ 26, 28, 44, 54, 61, 71, etc.) — a conclusion the District Court reached before any evidence was presented (TR 7/2/21, 39:2-4) — but brushed aside concerns about Coomer's lack of credibility in a single sentence with no citations on page 97 of the Order.  *See* Order ¶ 191.  The District Court, which should

have allowed Coomer's claims to survive dismissal only if supported by "clear and convincing evidence," substituted its own thoughts, opinions, and biases for evidence, stretching far beyond the factual record to make inappropriate credibility and factual determinations on disputed issues.

Indeed, rather than assessing the facts presented, the District Court constructed its own narrative unsupported by the Record. The District Court disregarded the defendants' evidence in favor of the District Court's *own* preconceived narrative and "feverish storyline" (Order ¶ 34), ultimately going so far as to claim —with no citation or factual justification whatsoever — that "[i]t is impossible not to draw a straight line from Oltmann's threats of violence on his November 5th and 6th podcasts, to his statements regarding Coomer on November 9, 2020 and thereafter, to the violent attack on democracy that occurred in Washington, D.C. on January 6, 2021." (Order n. 54).

No matter how much Coomer and the District Court may argue otherwise, this is *not* a case about the results of the 2020 presidential election or the events of January 6, 2021. Coomer's claims against OAN and Rion are pled in the Complaint as three alleged statements made by OAN and/or Rion about Coomer between November 17, 2020, and November 29, 2020 (a 12-day period). But according to the District Court, the claims against OAN and Rion were based on the same three

21

categories of statements that the District Court attributed to *all* defendants: "that Coomer was on an Antifa conference call, that Coomer stated on that call that he had rigged the election, and that Coomer did in fact rig the election." (Order ¶ 69). A review of the actual statements at issue shows no evidence that OAN or Rion ever said Coomer rigged the election, and OAN and Rion never said Coomer claimed to have rigged the election — they only repeated the ambiguous statement that "Trump is not gonna win. I made f-ing sure of that." (Compl. ¶ 52).

Because the District Court improperly substituted its judgment for that of the jury and made "Findings of Fact" that were not based on the evidence in the record, the Order should be reversed.

**C.    The District Court reversibly erred in relying on inadmissible evidence.**

**1.    The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies. *See supra* Section VII.A.1. This is particularly true when evaluating admissibility of evidence after denial of a defendant's anti-SLAPP motion. *See Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.,* 434 P.3d 1152, 1157 (Cal. 2019).

OAN and Rion preserved this issue in their Motion to Strike and for Extension (CF p. 11,238), Motion for Evidentiary Hearing (CF p. 16,164), Objections to Plaintiff's Alleged Evidence (CF p. 16,744), Response in Opposition to Plaintiff's

Motion for Expedited Relief (CF p. 17,970), Motion to Recuse (CF p. 18,756) and at the anti-SLAPP hearing (TR 10/13/21 198:3-199:10; 238:15-264:19; 267:7-274:21; 277:12-24).  The District Court addressed these issues in the November 21, 2021 Order (CF p. 18,090) and throughout the Order.

2.     **The District Court relied on inadmissible evidence.**

Despite holding that the evidence supporting the plaintiff's claims must be admissible (Order ¶ 127), the District Court relied on numerous pieces of inadmissible evidence.  This error is particularly glaring because OAN and Rion identified these evidentiary problems before the District Court's ruling but rather than evaluating these issues, the District Court summarily rejected most objections and improperly sanctioned OAN and Rion.

As the District Court acknowledged, when considering an anti-SLAPP motion, the trial court can consider only admissible evidence.  *Sweetwater*, 434 P.3d at 1157; *Litinsky v. Kaplan*, 40 Cal. App. 5th 970, 980 (2019).  Additionally, the trial court must rule on evidentiary objections before ruling on an anti-SLAPP motion. *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1348 (2007).

In his Response and at the anti-SLAPP hearing, Coomer relied on thousands of pages of deposition testimony, recordings, and other documents, as well as nine declarations of four purported experts and five fact witnesses that Coomer had never

23

previously disclosed.   OAN and Rion objected in pre-hearing motions and throughout the hearing.  *See* Motion to Strike and for Extension (CF p. 11,238), Motion for Evidentiary Hearing (CF p. 16,164), TR 10/13/21 198:3-199:10; 238:15-264:19; 267:7-274:21; 277:12-24.

Because of the volume of evidence and related objections, at the close of the anti-SLAPP hearing on October 14, 2021, the District Court developed a plan for submission of evidentiary objections.  *See* TR 10/14/21 584:18-585:13.  After the parties went off the record,[9] the District Court acknowledged that the objections would be voluminous.   Vedder Price attorney Blaine Kimrey noted that the objections would be "like 500 pages," to which the District Court responded, "I'm so looking forward to it."  The District Court then asked "how long is it going to take you all to make this ***gargantuan document***?"  (Kimrey Decl. ¶¶ 31-33).[10]

OAN and Rion followed the District Court's instructions and served Coomer with a chart identifying objections to Coomer's evidence, including citations to the Colorado Rules of Evidence.  *See* Exhibit A to Plaintiff's Motion for Expedited Relief from the OAN Defendants' Evidentiary Objections (CF p. 16,744, the "OAN

---

[9] Colorado Public Radio continued to record proceedings in the courtroom.  *See* Declaration of Blaine C. Kimrey (CF p. 18,778, "Kimrey Decl.") ¶ 30.

[10] Mr. Kimrey verified these statements against the Colorado Public Radio transcript. (Kimrey Decl. ¶ 30).

Defendants' Objections").  Despite knowing what was coming, the District Court claimed bad faith when Coomer sought relief from the District Court after receiving the objections from OAN and Rion.  And instead of considering the objections raised by OAN and Rion, the District Court mostly summarily overruled them and relied on inadmissible evidence in denying the Motion.

By way of example only, the District Court overruled objections by OAN and Rion that declarants lacked personal knowledge to support their testimony.  For instance, the District Court held that "OAN published 'Dominion-izing the Vote' segment, knowing it was false." (Order ¶ 71).  In so holding, the District Court relied on statements of Golingan, who was not involved in producing "Dominion-izing the Vote" and had no related personal knowledge.  OAN and Rion objected to the Golingan Declaration under C.R.E. 401, 402, 403, and 602.  (*See* OAN Defendants' Objections pp. 789-867.)  And because Golingan attempted to offer expert testimony regarding journalistic standards and the ultimate legal issue of actual malice, OAN and Rion objected under C.R.E. 701.  (*Id.*).  But the District Court summarily overruled these objections and relied on this improper testimony when ruling that there was *prima facie* evidence that OAN and Rion acted with actual malice.  *See* November 21, 2021 Order, pp. 4-6; Order ¶ 193.  Similar problems infect the testimony of purported experts Mike Rothschild and Fred Brown, whom the District

Court qualified as experts after overruling without explanation OAN's and Rion's objections. *See* November 21, 2021 Order, pp. 4-6; Order ¶¶ 31-32.

Additionally, after acknowledging at the anti-SLAPP hearing that "affidavits are hearsay" (TR 10/13/21 197:16), the District Court relied on inadmissible hearsay. For example, in his Declaration, Golingan attached an unauthenticated email and stated, "We were also told as producers to check Gateway Pundit and similar questionable sources to find content to be aired on OAN." (Golingan Decl. ¶ 14). OAN and Rion objected to this testimony as hearsay under C.R.E. 801. (OAN Defendants' Objections pp. 850-51). But the District Court summarily overruled OAN's and Rion's objections and relied on this testimony to conclude, "OAN published the 'Dominion-izing the Vote' segment, knowing it was false." (Order ¶ 71).

The District Court also repeatedly cited documents that did not support the proposition for which they were cited. For example, the District Court concluded that "[i]t is impossible not to draw a straight line from Oltmann's threats of violence on his November 5th and 6th podcasts, to his statements regarding Coomer on November 9, 2020 and thereafter, to the violent attack on democracy that occurred in Washington, D.C. on January 6, 2021." (Order n. 54). But the District Court

simply cited one of Oltmann's hourlong-plus podcasts without explaining how the podcast supported the District Court's conjecture. (*Id.*).

The District Court also found that "Rion has admitted that she had not investigated Oltmann's allegations nor attempted to contact Coomer or Dominion or any other alleged call participants." (Order ¶ 71). But in the corresponding footnotes 263 and 264, the District Court cited pages 89:13-90:20 of Rion's deposition transcript, where Rion testified that she "put[] an effort into finding" Coomer. This testimony directly contradicts the District Court's finding. And the District Court found that "OAN-Rion had political and financial motivations to delegitimize the results of the election." (Order ¶ 73). As support, the District Court cited the so-called "Defamatory Statements Spreadsheet," but that "Spreadsheet" was created by counsel for Coomer and itself cited unauthenticated Tweets and other sources that have nothing to do with the three allegedly defamatory statements at issue. The unauthenticated statements certainly did not stand for the proposition that OAN and Rion were politically or financially motivated to "delegitimatize" the election results. OAN and Rion therefore objected under C.R.E. 401, 402, 403 and 901, but the District Court summarily overruled the objections without explanation and relied on the so-called "Spreadsheet." *See* November 21, 2021 Order, pp. 4-6; *see generally* Order.

The above are only examples of the District Court's wholesale reliance on inadmissible evidence to support critical rulings in its Order. Because the District Court relied extensively on inadmissible evidence without explaining the reasons for overruling OAN's and Rion's evidentiary objections, this Court should reverse the District Court's Order and grant OAN's and Rion's anti-SLAPP motion. If, however, the Court reverses and remands, it should do so with instructions that the District Court cannot consider any inadmissible evidence and that to the extent the District Court intends to rely on any evidence submitted by Coomer, the District Court must allow OAN and Rion to cross-examine any witnesses as applicable and must rule **specifically** on every objection lodged by OAN and Rion before ruling on their Motion.

## D. The District Court reversibly erred in denying OAN and Rion anti-SLAPP relief on Coomer's defamation claim (Cause of Action A).

### 1. The standard of review is *de novo* on these preserved issues.

A *de novo* standard of review applies. *See supra* Section VII.A.1. Moreover, Colorado courts have held that the *de novo* standard is appropriate in reviewing various legal questions related to a defamation claim. *See NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 11 (Colo. 1994) (holding that whether a statement is capable of defamatory meaning is subject to *de novo* review); *Lawson v. Stow*, 327 P.3d 340, 347 (Colo. App. 2014) ("Whether allegedly defamatory

language is constitutionally privileged is a question of law and a reviewing court must review the record *de novo*. . . .”); *Zueger v. Goss*, 2014 COA 61, ¶ 26 (“We review *de novo* whether an individual is a public figure and whether a matter is of public concern for defamation purposes.”).

OAN and Rion preserved arguments related to Coomer’s defamation claim in their Motion at pp. 5, 8-10, 16-18, 20-22 and in their Reply at pp. 4-5, 9-17.  The District Court addressed these issues throughout the Order.

    **2.**    **The District Court reversibly erred in failing to apply the *in haec verba* doctrine, in considering allegedly defamatory statements not asserted in the operative complaint, and in lumping all allegedly defamatory statements by all defendants-appellants into three generalized and inaccurate categories.**

To adequately state a claim for defamation, the plaintiff must satisfy the *in haec verba* doctrine, setting forth with specificity in the complaint the alleged defamatory language.  “Each publication of a defamatory statement must be pled as a separate claim.  In addition, alleged defamation requires a certain degree of specificity.”  *Corporon*, 708 P.2d at 1390.  A defamation claim that fails to substantially set forth the words alleged to be defamatory and untrue “is vague and fails to state a claim.”  *Walters*, 559 F. Supp. at 1234; *see also Int’l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at n. 4 (D. Colo. Jan. 18, 2013)

(applying Colorado law, finding that defendant's failure to set forth the words that are allegedly defamatory warranted dismissal).

Here, Coomer pled in the operative complaint only ***three*** allegedly defamatory statements by OAN and Rion. *See supra* p. 10. But the District Court allowed Coomer to vaguely allege for the first time in his Response additional alleged categories of purportedly defamatory statements — in fact, the District Court ultimately adopted Coomer's vague, inadequate categories of statements. *Compare* Response, ¶ 188 *with* Order ¶ 69.

The District Court also embraced Coomer's claims that the statements alleged against ***all defendants*** in the Complaint (1) allege that Coomer was on an antifa call, (2) allege that Coomer threatened to undermine the integrity of the election, or (3) allege that Coomer actually did influence the election. The District Court's analysis is flawed because in the pursuit of its narrative, the District Court conflated all of the defendants, treating them as a monolith when in reality the facts are different for each party. In so doing, the District Court repeated the same three-part refrain for each defendant, without identifying the actual defamatory statements. *See, e.g.,* Order ¶¶ 55, 61, 69.

Because the District Court failed to apply the *in haec verba* doctrine and assess the three specific statements allegedly made by OAN and Rion, the Order should be overturned.

### 3. The District Court reversibly erred in failing to apply the "of and concerning" doctrine and deeming Coomer and Dominion to be synonymous.

A defamation plaintiff also must satisfy the "of and concerning" doctrine, establishing that the alleged defamatory statements were "of and concerning" the plaintiff. The District Court failed to adequately assess whether statements allegedly at issue were "of and concerning" Coomer.[11]  Even if, as Coomer argued in his Response and the District Court adopted, the Complaint could be read as alleging that all statements by OAN and/or Rion about Dominion were defamatory against Coomer, those claims would have to be dismissed because statements about **Dominion** are not defamatory as to **Coomer**. *See Stump v. Gates*, 777 F. Supp. 808, 826 (D. Colo. 1991); *Deatley v. Allard*, 2015 WL 134271, *5 (D. Colo. Jan. 9, 2015).

The District Court concluded that Coomer is "the face of the Dominion conspiracy theory." (Order ¶ 69).  But statements made about an organization do

---

[11] The District Court claimed that the "of and concerning" argument raised by OAN and Rion for the first time in its Reply was "untimely." (Order ¶ 190). That argument could not have been raised with the original Motion because Coomer **added** for the first time statements related to Dominion in his Response.  (CF p. 8,428).

not refer to its members.  *See, e.g., Three Amigos SJL Rest., Inc. v. CBS News Inc*.,
15 N.Y.S.3d 36, 41 (2015), *aff'd*, 28 N.Y.3d 82 (2016); *Elias v. Rolling Stone LLC*,
872 F.3d 97, 107-08 (2d Cir. 2017); *Jankovic v. Int'l Crisis Grp*., 494 F.3d 1080,
1089 (D.C. Cir. 2007).  In fact, Dominion has argued in litigation against OAN and
Rion in the U.S. District for the District of Columbia that Coomer and Dominion are
not the same.  *See US Dominion, Inc. v. Herring Networks, Inc.*, Case No. 1:21-cv-
02130 (D.D.C.), Docket Entry 45, pp. 8-9.  Simply put, allegedly defamatory
statements about Dominion are not "of and concerning" Coomer because Dominion
and Coomer are not synonymous and the Order should be overturned.

### 4.    The District Court reversibly erred in finding sufficient admissible evidence of actual malice.

The District Court correctly concluded that Coomer must prove actual malice
to prevail on his defamation claim.  (Order ¶ 147).  But the District Court erred in
finding that there was sufficient evidence of actual malice.

The District Court correctly held that "it is only when a plaintiff offers
evidence that 'a defendant has reason to doubt the veracity of its source' does 'its
utter failure to examine evidence within easy reach or to make obvious contacts in
an effort to confirm a story' demonstrate reckless disregard."  (Order ¶ 155).
"Absent such concerns, the defendant has no duty to corroborate the defamatory
allegation. . . .  Even 'ill will toward the plaintiff or bad motives are not elements of

actual malice,' and 'such evidence is insufficient by itself to support a finding of actual malice.'"   *Jankovic*, 822 F.3d at 590.   Additionally, the District Court correctly concluded that "actual malice is a ***subjective standard***."   (Order ¶ 157) (emphasis added).   But after laying out these standards, the District Court failed to apply them accurately.

The District Court's citations to *Curtis Publ'g Co. v. Butts,* 388 U.S. 130, 157-58 (1967), and *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968), ironically show what types of evidence would be needed to find actual malice, but there is no such evidence here.   In *Curtis*, the U.S. Supreme Court found sufficient evidence to support a finding of actual malice relating to allegations that a college athletic director conspired with a rival football coach to rig a game.   388 U.S. at 157-58.   The District Court found this case analogous to *Curtis* (Order ¶ 170), but the case is clearly distinguishable:

| **FACTS IN *CURTIS* SUPPORTING ACTUAL MALICE** | **FACTUAL DIFFERENCE IN RELATION TO OAN AND RION** |
|---|---|
| The source for the story was on probation because of bad check charges.  388 U.S. at 157. | At the time of OAN's reporting, Oltmann was not facing any criminal charges and was understood by OAN to be an upstanding entrepreneur and business owner.  Rion Dep. 86:22-87:8. |

| FACTS IN *CURTIS* SUPPORTING ACTUAL MALICE | FACTUAL DIFFERENCE IN RELATION TO OAN AND RION |
|---|---|
| The newspaper did not review the source's notes. *Id.* | Rion did not review Oltmann's handwritten notes before publication, but she was aware that he had taken them. The notes are consistent with the series of events Oltmann has described. Rion Dep. 159:10-160:4. |
| The newspaper did not interview an individual who was with the source when the phone call at issue was overheard. *Id.* | Rion was not aware of any other individuals by name (other than perhaps Coomer) on the antifa call when publication occurred, but Anderson's testimony has since confirmed key aspects of the call. And Rion tried unsuccessfully to find Coomer but couldn't because he was in hiding. Rion Dep. 89:16-24. |
| The newspaper did not review any background information related to the game in an effort to validate the allegations. *Id.* | Rion reviewed Coomer's Facebook posts and determined that they showed "he was very motivated and very anti-Trump in his sentiments, and he seemed to be acting upon those sentiments." Rion Dep. 75:16-18. |
| The reporter handling the story lacked knowledge and expertise in football. *Id.* at 158. | Rion was OAN's Chief White House Correspondent and was already reporting on Dominion Voting Systems when she became aware of Oltmann's allegations. |
| The individuals assisting the reporter were already "deeply involved in another libel action." *Id.* | No OAN reporters were involved in any other sort of libel action. |

Thus, this case is clearly distinguishable from *Curtis* in a way that shows a finding of actual malice would be inappropriate (particularly under the clear and convincing standard).

The District Court's biggest criticism of OAN and Rion was that they should have done more investigation of Oltmann's claims.  OAN and Rion did investigate. Rion Dep. 12:8-13:17, 18:22-19:7, 47:21-48:3, 115:2-7, 117:15-17, 159:14-161:20. But even if they hadn't, "[f]ailure to investigate does not in itself establish bad faith," *St. Amant*, 390 U.S. at 733, and Coomer has not presented clear and convincing admissible evidence of bad faith.  The District Court also repeatedly emphasized the impact of an "obvious reason to doubt" on the actual malice analysis (*see, e.g.,* Order ¶ 153), but again, Coomer has failed to provide clear and convincing admissible evidence that OAN and Rion had obvious reasons to doubt the veracity of Oltmann's statements **during the 12-day period when the three allegedly defamatory statements in the Complaint were published**.  In fact, there is evidence that Oltmann's statements about the antifa call are true (despite the District Court's insistence to the contrary), and Coomer's outrageous Facebook posts are entirely consistent with the statement allegedly made on that call.  Moreover, OAN and Rion understandably relied on President Trump's legal team, including Rudolph Giuliani — as the District Court acknowledged at Paragraph 89 of the Order, Giuliani was a

licensed lawyer, the former U.S. Attorney for the Southern District of New York, and the former mayor of New York City, and he served as "an authorized representative for [sitting President of the United States] Donald Trump as well as the Trump Campaign."[12]   Putting this evidence together, a reasonable juror could find that OAN and Rion did not act with actual malice, meaning Coomer has not met his burden to prove actual malice by clear and convincing admissible evidence.

The District Court repeatedly claimed that OAN and Rion should have known Oltmann's story was false because claims of election fraud had been disproven (Order ¶¶ 11, 19, 30, 72), but that's inaccurate (particularly as to the 12-day period of OAN's reporting regarding Coomer) and that's not what this case is about.  Most of the information the District Court referred to became public knowledge *after* publication of the three statements at issue as to OAN and Rion in November 2020. (Order ¶ 193).  And regardless, even if this evidence were relevant, it in no way demonstrates *subjective* knowledge of probable falsity by OAN or Rion when publication occurred during that 12-day period shortly after the election.  Because

---

[12] The District Court implied improper conduct by OAN arising from former reporter Christina Bobb's connections to Giuliani and the Trump Campaign.  (Order ¶ 72). But Bobb is not a defendant in this case, and there has never been any allegation that she did reporting related to Coomer (she did not).

Coomer failed to satisfy his evidentiary burden in the face of the anti-SLAPP motion, the Motion should have been granted.

### 5.    The District Court reversibly erred in finding the statements at issue false.

In a defamation case, "truth is a complete defense." *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). The burden of proving falsity is on the plaintiff, *McIntyre v. Jones*, 194 P.3d 519, 528 (Colo. App. 2008), and the plaintiff must show by clear and convincing evidence that a statement is false. *Lawson*, 327 P.3d at 348; *see also L.S.S.*, 2022 COA 123, ¶ 45. In a defamation case, "clear and convincing evidence" is "that evidence which is stronger than a 'preponderance of the evidence' and which is unmistakable and free from serious or substantial doubt." *DiLeo v. Koltnow*, 613 P.2d 318, 323 (Colo. 1980).

Coomer has failed to submit clear and convincing evidence demonstrating the falsity of the allegations about the antifa call. But applying the improper standards of proof discussed above, the District Court asserted that Coomer declared the statements false and that evidence was uncontroverted. (Order ¶ 191). That is not true. Starting with Coomer's testimony itself, he does not deny having been on the September 25, 2020 Black Lives Matter call. In fact, he acknowledges that he spent a portion of that day on "extensive conference calls" and says only that he did not "participate in any 'Antifa' conference call on that day." *See* Coomer Decl. ¶ 40.

And Anderson has confirmed that a call matching Oltmann's description occurred on September 25, 2020. *Supra*, pp. 6-7.

"Antifa" is not a defined term and there is confusion about what it means. *See* Oltmann Dep. 41:14-18; 54, 34:5-12, 108:1-23. Specifically, Coomer has said, "I don't know what Antifa refers to." Coomer Dep. 111:7-8. But the evidence revealed in discovery indicates that a call took place on September 25, 2020 that Oltmann would characterize as an antifa call, and Coomer has not met his burden of providing clear and convincing evidence the call didn't occur or that someone claiming to be Coomer didn't speak during the call.

The District Court cast doubt on the September 25, 2020 call being the antifa call by noting that Oltmann and his witnesses have, at various times, suggested that the call took place in mid-October, during the week of September 27, 2020, and between September 17 and September 21, 2020. (Order ¶ 27). But Oltmann explained this in his deposition, saying he could not pinpoint the date of the call because it was not on his calendar and "the only thing that I can do is get within a few days of the September 26th screenshot, which is when I did the information search related to Eric, Dominion, Denver, Colorado." (Oltmann Dep. 72:1-5). Notably, Oltmann testified under oath that the call occurred in mid- to late-September (Oltmann Dep. 71:10-72:15), and the Google search for the terms "Eric,"

"Dominion," and "Denver Colorado" occurred on September 26, 2020, one day *after* the September 25, 2020 call. (Compl. ¶ 52). Thus, Coomer failed to present clear and convincing evidence that no reasonable juror could conclude that the September 25, 2020 call was the antifa call.

Coomer similarly has not met his burden of demonstrating by clear and convincing evidence that Oltmann's statements about what occurred on the call were false. Oltmann (a percipient witness who testified that he kept and then produced contemporaneous notes) claims that someone on the call was identified as "Eric from Dominion." (Compl. ¶ 52). Coomer either was on the call — in which case, he is lying about not being on the call and should not prevail — or he was not on the call — in which case he has no personal knowledge of what was said on the call and his testimony is irrelevant to determining what Oltmann heard on the call. If Coomer wasn't on the call, his testimony cannot contradict Oltmann's testimony about what he heard, and it certainly does not constitute clear and convincing evidence that Oltmann's statements about what he heard are false.

Anderson, for his part, does not deny that Coomer was on the call. He only claims that "no one mentioned 'Eric from Dominion'" during the call and he does "not know Eric Coomer, nor have I ever met him." *See* Anderson Decl. ¶¶ 11-12. Of course, Anderson might not have known who all of the participants on the call

39

were, and he might not have been able to identify Coomer if Anderson did not even know Coomer, as Anderson attests.  Anderson Decl. ¶ 12.  Meanwhile, Coomer's Facebook posts are consistent in both message and tone with someone who would make the type of statement that Oltmann claims Coomer made during the antifa call.[13]  All of this creates the strong possibility that a reasonable jury could conclude that the antifa call did happen, meaning Coomer has failed to meet his burden of

---

[13] As discussed *supra* p. 18, the District Court should not have made credibility determinations in ruling on the anti-SLAPP motion.  But if it were appropriate to assess credibility, both Coomer and Anderson have significant credibility problems. Coomer has substantial motivation to lie about the statements made during the call, and he has already proven himself to be dishonest, having lied about his Facebook posts before coming clean in the *Times*.  Notably, after briefing on the Motion closed, Coomer was caught on video lying to police about his involvement in a hit-and-run accident in Salida, Colorado.  Police body cam footage captured Coomer repeatedly lying about the incident before eventually admitting he was the driver of a truck that smashed into a storefront in a busy commercial district in front of several witnesses. The video is publicly available.  *See* Jim Hoft, "BODY CAM FOOTAGE: Dominion Executive Eric Coomer Cuffed and Arrested in Colorado – Video Appears to Show He Drove Truck into Bar, Fled the Scene and Lied to Police," *Gateway Pundit*, March 1, 2022, available at https://www.thegatewaypundit.com/2022/03/body-cam-footage-dominion-executive-eric-coomer-cuffed-arrested-colorado-video-appears-show-drove-truck-bar-fled-scene-lied-police/ (last visited October 21, 2022).

As for Anderson, the same day his Declaration was submitted to the District Court, he was censured by the Denver school board after an investigation concluded Anderson had flirted online with a 16-year-old student and made coercive and intimidating social media posts.  *See* Exhibit K to Reply.  Days later, hundreds of students in Anderson's district staged a walkout to force his resignation and at least one editorial board for a Denver newspaper has called for his resignation.  *See* Exhibits L and M to Reply.

showing falsity by clear and convincing evidence and the District Court's defamation ruling should be overturned.

**6.   The District Court reversibly erred in failing to apply the substantial truth doctrine.**

Even if Coomer could present clear and convincing admissible evidence that the statements about the antifa call are not true (which he can't), he cannot meet the burden of showing that the statements about the occurrence of the antifa call were not ***substantially*** true. "It is sufficient if the substance, the gist, the sting, of the matter is true. . . .  Substantial truth is an absolute defense." *Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. 1972); *see also Pierce v. St. Vrain Valley Sch. Dist.*, 944 P.2d 646, 649 (Colo App. 1997); *SG Ints. I, Ltd. v. Kolbenschlag*, 452 P.3d 1, 7 (Colo. App. 2019).

The District Court erred in refusing to apply the substantial truth doctrine to dismiss the claims against OAN and Rion regarding whether the antifa call took place.  There can be no doubt that Coomer has failed to present clear and convincing evidence that the statements about the occurrence of the antifa call are not ***substantially*** true.  Even if the other participants on the call did not consider it to be an "antifa call," a reasonable juror could conclude that a call occurred on or around the time that Oltmann claimed, involving the parties Oltmann claimed, and discussing the topics Oltmann claimed.  Thus, the District Court should have applied

41

the substantial truth doctrine and dismissed the claims related to the antifa call on this additional basis.

Moreover, the substantial truth doctrine focuses on the "gist or sting" of the allegedly defamatory statements. *Gomba*, 504 P.2d at 339. Regardless of whether the antifa call occurred, whether Coomer participated in it, or whether someone other than Coomer said on the call that he was Coomer, the "gist or sting" of what Coomer has admitted or simply cannot refute is the same for his reputation. Coomer has admitted the incendiary Facebook posts were his, he's admitted to having lied about that, he's admitted he "screwed up" in making those statements given his former high-level role with a voting machine hardware and software company, he's smashed his truck into a building in Salida, he's lied to police about having been the driver of the truck, etc. *See supra* pp. 8-9; n. 13. Coomer is an admitted liar and Trump hater who denounced before the presidential election in 2020 anyone at his former employer who supported Trump. *See supra* p. 8. Given that the allegedly defamatory statements, even if not true (which they were), cast Coomer in the same reputational light as facts that Coomer has admitted to or simply can't deny, the substantial truth doctrine bars Coomer's claims. *See Gomba*, 504 P.2d at 339.

**7.    The District Court reversibly erred in finding statements capable of defamatory meaning.**

Even if the evidentiary record presented clear and convincing admissible evidence of falsity (which it does not) or the absence of substantial truth (which it does not), the statements attributed to OAN and Rion are not capable of defamatory meaning.  As set forth *supra* p. 22, despite the District Court's conclusory three-part narrative, there is no evidence in the Record demonstrating that OAN or Rion said that Coomer "rigged the election."  Thus, the defamation claims against OAN and Rion can proceed only if allegations regarding the antifa call and/or allegations that someone identified as Coomer said "Trump is not gonna win.  I made f-ing sure of that" are defamatory.

Saying someone participated in an antifa call is not defamatory.  Most Americans — including Coomer — consider themselves "antifascist."  *See* Coomer Dep., 108:1-2 ("Q: Are you antifascist? Dr. Coomer: Absolutely.").  Moreover, Coomer maintains that antifa is not an organization to which someone could be a member.  *Id.* at 34:5-12.  And he testified in his deposition that he does not know what antifa is.  *Id.* at 111:7-8 ("I don't know what Antifa refers to.").  It is difficult to imagine how Coomer can credibly claim to have been defamed by a word he cannot define.  What is or is not an "antifa call" is inherently subjective and not

capable of defamatory meaning.  *See, e.g., Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 810 (2002).

Similarly, what an individual could mean in saying "Trump is not gonna win. I made f-ing sure of that" is unclear — indeed, Rion asks that very question in "Dominion-izing the Vote."  (Compl. n. 74) ("What does he mean when he says 'Trump won't win. I made f-ing sure of that.' Nothing?").  The statement is too vague to be proven true or false.

Importantly, this is not an argument based on "opinion," as the District Court found.  (Order ¶ 191).  The issue here is that the statements allegedly made by OAN and Rion simply are not objective factual statements that can be proven true or false, thus they are not capable of defamatory meaning.  For that reason, the District Court's denial of the anti-SLAPP motion on defamation should be overturned.

### 8.    The District Court reversibly erred in deeming Coomer a private figure, finding Coomer's claim not barred by the incremental harm doctrine, and finding sufficient evidence of actual damages.

The District Court made several other errors in denying anti-SLAPP relief on the defamation count, but OAN and Rion have shortened those arguments to meet the Court's 15,000-word limit.   OAN and Rion incorporate by reference as if fully set forth herein the more detailed arguments to be made by defendant-appellant TGP Communications, LLC on these issues and briefly sets forth the arguments here.

First, given Coomer's public activities set forth *supra* pp. 4-6, the District Court erred in deeming Coomer a private figure — he is, at minimum, a limited purpose public figure.  *See Diversified*, 653 P.2d at 1107; *Lewis v. McGraw-Hill Broadcasting Co.*, 832 P.2d 1118, 1122 (Colo. App. 1992).  A hallmark of a public figure is access to the press and ability to counteract false statements. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974).  The fact that Coomer was regularly quoted on issues related to election security before the allegedly defamatory statements weighs strongly in favor of finding that he was a public figure.

Second, the District Court erred in holding that Coomer's claims were not barred by the incremental harm doctrine, *see Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 965 (Colo. App. 2000) — as discussed *supra* p. 42, Coomer's admitted activities irretrievably ruined his reputation, and the alleged defamatory statements by OAN and Rion during a 12-day period caused Coomer no harm (much less any harm beyond the harm Coomer caused himself).

Finally, the District Court erred in holding that Coomer adequately pled actual damages.  *See Diversified*, 653 P.2d at 1105-08; *Keohane v. Stewart*, 882 P.2d 1293, 1304 (Colo. 1994); *Tonnessen*, 5 P.3d at 963.  Failure to present evidence of damages is a valid basis to grant an anti-SLAPP motion.  *See, e.g., Barker v. Fox & Associates*, 240 Cal. App. 4th 333, 345 (2015); *Averill v. Superior Court*, 42 Cal. App. 4th 1170,

45

1176 (1996).  Coomer's conclusory declaration is not enough to establish actual damages.  (Order ¶ 117).

The Court should overturn the Order for these additional reasons as well.

**E.   The District Court reversibly erred in finding Coomer had pled or supported with admissible evidence sufficiently outrageous conduct for intentional infliction of emotional distress (Cause of Action B).**

**1.    The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies.  *See supra* Section VII.A.1.  Moreover, "whether reasonable persons could differ on the outrageousness issue is a question of law and is subject to *de novo* review."  *See Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006).

OAN and Rion preserved arguments related to the IIED claim in their Motion at pp. 22-23 and in their Reply at p. 20.  The District Court directly addressed this issue at p. 122 of the Order.

**2.    As a matter of law, the conduct of OAN and Rion was not outrageous, they did not act with actual malice, and Coomer has not demonstrated emotional distress.**

A claim for intentional infliction of emotional distress requires proof that "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress."  *Mackall v. JPMorgan Chase Bank, N.A.*, 356

P.3d 946, 955 (Colo. App. 2014).  Coomer failed to present admissible evidence to support any of these elements.

With respect to outrageousness, "[l]iability for outrageous conduct can be found only if the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Tonnessen*, 5 P.3d at 967.  The District Court's decision on outrageousness is untethered to the actual claims in the case. The District Court held that OAN and Rion engaged in "outrageous" conduct because they "falsely accused Coomer of overturning the presidential election" and "incited threats of real violence against Coomer."  (Order ¶ 244).  But OAN and Rion did no such thing.  Nowhere in the Record is there any evidence that OAN and Rion accused Coomer of overturning the election or made any insinuation of violent threats.  This holding appears to be the result of the District Court's improper practice of treating the many defendants as a monolith and attributing the same statements to all of the defendants, but whatever the reason, it is plainly wrong.

The actual statements at issue recount Oltmann's statements about the antifa call.  This conduct objectively is not "outrageous," and much more outrageous conduct has been found inadequate to assert an IIED claim.  *See, e.g., Hussain v. Palmer Commc'ns, Inc.,* 60 F. App'x 747, 754 (10th Cir. 2003) (broadcasting

plaintiff's photo and insinuating plaintiff was complicit in the Oklahoma City bombing was not outrageous); *Weinstein v. Bullick*, 827 F. Supp. 1193, 1195 (E.D. Pa. 1993) (police officer statements expressing skepticism over plaintiff's report of sexual assault were not outrageous); *Jones v. Scripps Media, Inc*., 2017 WL 1230481, at *14 (E.D. Mich. Apr. 4, 2017) (three reports suggesting that public employees received lucrative severance payments hidden from the public were not outrageous).  Accordingly, the District Court erred in finding clear and convincing evidence of outrageous conduct.

On the second prong, a public figure cannot recover IIED damages for defamatory statements unless the statements were made with actual malice.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-53 (1988).  As set forth *supra* p. 32, there is no evidence of actual malice (much less clear and convincing admissible evidence).  OAN and Rion had evidence to support their statements, in the form of a first-hand witness account, Facebook posts, and statements from high-ranking government officials.

Finally, in concluding that Coomer suffered emotional distress, the District Court did not cite *any* evidence.  (Order ¶ 246).  Based on citations elsewhere in the Order, the District Court's conclusion appears to be based on a single, unsupported paragraph in Coomer's declaration, which the parties were not allowed to address

when they deposed Coomer. *See* Order ¶ 117. This falls short of the clear and convincing standard and provides another basis to overturn the District Court's anti-SLAPP ruling as to the IIED claim.

**F.     The District Court reversibly erred in finding Coomer had sufficiently pled or submitted sufficient admissible evidence of a conspiracy (Cause of Action C).**

**1.     The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies. *See supra* Section VII.A.1.

OAN and Rion preserved arguments related to the conspiracy claim in their Motion at pp. 5, 23 and in their Reply at p. 21. The District Court directly addressed this issue at Paragraph 273 of the Order.

**2.     A conspiracy requires an agreement among the alleged co-conspirators, and no admissible evidence showed such an agreement.**

The District Court's conspiracy finding as to OAN and Rion is limited to a single paragraph, in which OAN and Rion are combined with "All Other Defendants" as the District Court summarily found that the defendants "cooperated and fed off one another." (Order ¶ 273). The District Court did not cite a single piece of evidence in support of this conclusion — because there is none. The most significant omission is any evidence of an agreement between OAN and/or Rion and any other defendant. To state a claim for civil conspiracy, Coomer must prove an

49

agreement on the course of conduct, and the District Court cannot "infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Notably, in another case arising from the 2020 election, the U.S. District Court for the District of Columbia dismissed a conspiracy claim where the counterclaimant "fail[ed] to adequately allege an agreement." *US Dominion, Inc. v. MyPillow, Inc.*, 2022 WL 1597420, *7 (D.D.C. May 19, 2022). "To survive a motion to dismiss, a plaintiff usually must point to some 'events, conversations, or documents' indicating an 'agreement or a meeting of the minds' among the alleged co-conspirators." *Id.* No such events, conversations, or documents exist in the Record.

Moreover, conspiracy is not an independently actionable claim. *See Colorado Community Bank v. Hoffman*, 338 P. 3d 390, 397 (Colo. App. 2013). Conspiracy claims are derivative of other actionable claims. *Id.* Thus, in *Hoffman*, when the underlying claims were disposed of at summary judgment, the civil conspiracy claims were dismissed as derivative. *Id.* Because the defamation and IIED claims should be dismissed, the derivative conspiracy claim should be dismissed as well.

Accordingly, the denial of the anti-SLAPP relief as to the conspiracy claim should be reversed.

**G.    The District Court reversibly erred in denying OAN and Rion anti-SLAPP relief on Coomer's injunctive relief claim (Cause of Action D).**

**1.    The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies.  *See supra* Section VII.A.1.  Moreover, "[r]eview of a permanent injunction order presents a mixed question of law and fact. . . .  We review questions of law *de novo*."  *Korean New Life Methodist Church v. Korean Methodist Church of the Americas*, 474 P.3d 143, 149 (Colo. App. 2020) (internal citations omitted).

OAN and Rion preserved arguments related to the injunctive relief claim in their Motion at p. 25 and in their Reply at p. 21.  The District Court directly addressed this issue at p. 133 of the Order.

**2.    Injunctive relief is not a separate claim, and Coomer never moved for or otherwise justified an injunction.**

The District Court's injunctive relief finding demonstrates the biased judicial overreach carried out in this case.  Coomer has not moved for injunctive relief.  OAN and Rion have not reported on Coomer as part of their broadcasts in more than a year and a half — there is no ongoing "harm."  OAN and Rion have not been able to argue their position or explain why the harm resulting from the injunctive relief would outweigh any harm to Coomer.  Accordingly, it is premature to substantively analyze injunctive relief.  But the District Court nonetheless did a full injunctive

relief analysis in the Order and ***found that Coomer is entitled to injunctive relief***. (Order ¶ 280).  Without even knowing what relief he is seeking or hearing how it would harm OAN and Rion, the District Court concluded that there is irreparable harm and that it outweighs the harm to OAN and Rion.  (Order ¶ 277).  The District Court also found that Coomer had established a likelihood of success in the case, going beyond the standards needed for an anti-SLAPP ruling and reaching conclusions of fact about the merits of the case.  (Order ¶ 275).  This is a shocking demonstration of inequitable treatment and should be overturned.

The question in the anti-SLAPP motion was not whether Coomer is entitled to injunctive relief — that issue was not briefed by the parties.  The question was whether the injunctive relief count should be allowed to stand as an independent cause of action.  It should not.  *See Wibby v. Boulder County Board of County Commissioners*, 409 P.3d 516, n. 2 (Colo. App. 2016).

Moreover, even if it were appropriate to consider injunctive relief in connection with this Motion, the relief that Coomer apparently seeks is not feasible. Although Coomer has not moved for injunctive relief, the Complaint "seeks permanent injunctive relief to remove all Defendants' defamatory statements upon final adjudication of the claims at issue." (Compl. ¶ 98).  Coomer repeats this in his prayer for relief, in which he requests a "[p]ermanent injunctive relief requiring

Defendants and their officers, agents, servants, employees, and attorneys to remove any and all defamatory publications made about Coomer."   It's not clear what this even means, but OAN and Rion do not have the ability to "remove" any and "all" statements in this digital age.  That Coomer has requested an impossibility, and the District Court found he is entitled to it, is yet another reason this Order should be overturned and this count should be dismissed.

**H.     The District Court reversibly erred in granting discovery and then in granting it in a one-way, inequitable fashion.**

**1.     The standard of review is abuse of discretion on these preserved issues.**

The Court should apply an abuse of discretion standard to its review of the District Court's anti-SLAPP discovery decisions.  *See, e.g., Keading v. Keading*, 60 Cal. App. 5th 1115, 1130 (2021) ("We review a trial court's denial of a motion to lift a discovery stay for abuse of discretion.").

OAN and Rion preserved arguments related to anti-SLAPP discovery and the one-way fashion in which it proceeded in their Response to Plaintiff's Motion for Reconsideration of Order Denying Plaintiff's Motion for Expedited Discovery (CF p. 6,598), Motion to Strike and for Extension of Reply Briefing Deadline and Hearing on Their Special Motion to Dismiss (CF p. 11,238), Motion for Partial Reconsideration of the Court's September 22, 2021 Order (CF p. 12,149), and Reply

53

in Support of Motion for Partial Reconsideration of the Court's September 22, 2021

Order (CF p. 13,126).  The District Court addressed these issues in its June 8, 2021

Order (CF p. 6,657), August 23, 2021 Order (CF p. 7,618), September 7, 2021 Order

(CF p. 8,113), September 22, 2021 Order (CF p. 11,301), and October 11, 2021

Order (CF p. 15,977).

> ### 2. The District Court erred in *sua sponte* reversing the prior judge's denial of discovery and then erred again in almost completely denying discovery to the defendants

Judge Moses abused her discretion when she *sua sponte* reversed Judge

Rappaport's denial of Coomer's request to lift the automatic discovery stay after the

defendants filed their anti-SLAPP motions.  Judge Moses then doubled down on that

error by largely refusing to allow discovery to the defendants, allowing anti-SLAPP

discovery to proceed in a one-way, inequitable fashion.  Thus, if the Court is

unwilling to grant OAN and Rion anti-SLAPP relief on the current factual record, it

should remand this case to the District Court with instructions to allow the

defendants to engage in further discovery, including but not limited to depositions

of the eight surprise declarants from Coomer's Response and a fulsome deposition

of Coomer to discuss in greater detail, among other things, his status as a public

figure, his activities in September 2020, the reasons for his departure from

Dominion, and his reputation in the community generally.

Judge Moses' decision to allow Coomer to take expansive anti-SLAPP discovery while largely denying discovery to the defendants turns the anti-SLAPP statute on its head, allowing Coomer to use it as a sword to obtain discovery when it is supposed to be a shield for defendants. Judge Moses subverted the entire purpose of the anti-SLAPP statute. This is why lifting the stay for "discovery [is] an exception, rather than the rule." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).

Judge Rappaport recognized this, which is why she denied Coomer's motion to lift the automatic stay of discovery. In her May 21, 2021 Order (CF p. 6,262), Judge Rappaport correctly held that "Anti-SLAPP laws are designed 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target.' The automatic stay of discovery, which begins as soon as a defendant files a special motion to dismiss under the anti-SLAPP Act, is the anti-SLAPP laws' primary mechanism for preventing SLAPP defendants from having to expend exorbitant amounts of money to defend themselves." She then held that "[b]ecause discovery inherently undermines the interests the statute is designed to protect, a plaintiff may obtain limited discovery only by establishing 'good cause' to lift the stay C.R.S. § 13-20-1101(6)" before concluding that Coomer had failed to meet the "good cause" standard.

55

Yet Judge Moses made the *sua sponte* suggestion that Coomer seek reconsideration of that ruling. (TR 5/27/2021, 10:8-10).  Judge Moses' reversal of Judge Rappaport's order is an abuse of discretion not only as a matter of anti-SLAPP law, but also as a matter of procedure.  A successor judge may modify a prior judge's rulings only "if '[s]ufficient new facts [are] alleged . . . to allow the second judge to enter a different ruling than that of the first judge, in the same manner that judge could have, had he been apprised of the new facts.' " *Sumler v. Dist. Court*, 889 P.2d 50, 54 (Colo. 1995).  This rule follows the principle that parties should generally be entitled to rely on the rulings of a trial court as governing the remainder of the case. *Ehrlich Feedlot, Inc. v. Oldenburg*, 140 P.3d 265, 272 (Colo. App. 2006).  Coomer proffered no new facts or law in his Motion for Reconsideration (CF p. 6,580) and Judge Moses pointed to none in her ruling.  Accordingly, Judge Moses substituted her own judgment for that of Judge Rappaport and impermissibly vacated and reversed the original ruling with no changed factual or legal basis.

After months of discovery, the bell cannot be unrung and the damage to OAN and Rion has been done — they have already been robbed of the primary protection afforded under the anti-SLAPP statute.  While Judge Moses belatedly allowed a two-hour severely constrained deposition of Coomer (in which neither OAN nor Rion was allowed to question Coomer), *see* September 7, 2021 Order, that does not

change the analysis because the deposition was too late in the process and too limited in time and scope to satisfy due process and the First Amendment. "The point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights." *People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th 1315, 1317 (2004). But that is exactly what Judge Moses did, ordering the defendants to sit for a total of 42 hours of depositions, and allowing Coomer to serve 32 separate requests for production of documents (with 56 separate sub-parts). *See* June 8, 2021 Order.

Judge Moses could, perhaps, have mitigated this harm if she had allowed the defendants to engage in reciprocal discovery. But she went the other way, repeatedly denying the opportunity for balanced discovery. (*See* Oltmann Defendants' Motion for Reciprocal Limited Discovery (CF p. 7,131); Oltmann Defendants' Amended Motion for Reciprocal Limited Discovery (CF p. 7,136); August 23, 2021 Order Denying Oltmann Defendants' Amended Motion for Reciprocal Limited Discovery (CF p. 7,618); Oltmann Defendants' Renewed Motion for Reciprocal Discovery (CF p. 8,046); Powell Defendants' Motion for Order Granting Limited Discovery (CF p. 8,052); September 7, 2021 Order (effectively denying the request for reciprocal discovery by limiting Coomer's deposition to only two hours and to only topics related to Coomer's Facebook posts)).

This is not just a problem in anti-SLAPP discovery — it is inconsistent with the function of all discovery.  "The rules of discovery contemplate two-way disclosure and do not envision that one party may sit back in idleness and savor the fruits which his adversary has cultivated and harvested in diligence and industry." *Sanders v. Superior Court*, 34 Cal. App. 3d 270, 278 (1973); *see also Swartzman v. Superior Court In and For Los Angeles County*, 231 Cal. App. 2d 195, 205 (1964) ("[O]ne-way discovery, no give and all take, would quickly drive fairness and mutuality out of pretrial investigation.").  If allowed to stand, the District Court's approach to discovery violates OAN's and Rion's due process rights and unduly prejudices them because they otherwise have no opportunity to question or cross-examine those testifying against them in connection with the anti-SLAPP proceeding.  *Aspen Props. Co. v. Preble*, 780 P.2d 57, 58 (Colo. App. 1989).

The District Court's most egregious inequitable discovery ruling came after Coomer filed his 150-page Omnibus Response to the defendants' anti-SLAPP motions, which included 5,100 pages of exhibits, 50 hours of audio and video files, and, most importantly, ***nine supporting declarations***.  OAN and Rion did not even know that the declarations existed (or that eight of the nine declarants existed) before the filing occurred.  But when OAN and Rion sought leave to depose those individuals, the District Court remarkably held that they should have sought

discovery sooner and they should have known that they needed to depose these individuals. (*See* September 22, 2021 Order; October 11, 2021 Order). Of course, multiple defendants had previously sought reciprocal discovery and been limited to a two-hour deposition of Coomer limited in scope to Coomer's Facebook posts. *Supra* p. 57. But according to the District Court, OAN and Rion were supposed to predict that Dr. Coomer intended to support his Omnibus Response with declarations of, by way of example, a purported QAnon expert (Mike Rothschild), a purported social media expert (Doug Bania), and a purported journalism ethics expert (Frederick Brown). There is no conceivable way OAN and Rion could have known that Coomer would even retain these purported experts, much less attempt to use their irrelevant and inadmissible testimony to oppose OAN's and Rion's anti-SLAPP motion.

Accordingly, the District Court abused its discretion with its inequitable discovery orders, and if this Court does not dismiss this case outright, it should find that OAN and Rion are entitled to reciprocal discovery on remand before further anti-SLAPP briefing and a corrected District Court decision.

I.   **The District Court reversibly erred in *sua sponte* sanctioning OAN and Rion and in not recusing itself despite clear bias.**

1.   **The standard of review is a mixed question on these preserved issues.**

On the question of whether award of attorneys' fees was proper, the Court should apply an abuse of discretion standard. *Pedlow v. Stamp*, 776 P.2d 382, 384-85 (Colo. 1989). As for recusal, legal conclusions related to recusal are reviewed *de novo. See People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002). Factual findings of the trial court, however, are given deference. *See E-470 Public Highway Authority v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000). "[W]here an attorney for one of the litigants signs a verified affidavit alleging conduct and statements on the part of a trial judge which, if true, show bias or prejudice or the appearance of bias or prejudice on the part of the trial judge, it is an abuse of discretion if that judge does not withdraw from the case, even though he or she believes the statements are false or that the meaning attributed to them by the party seeking recusal is erroneous." *Johnson v. Dist. Ct. In & For Jefferson Cnty.*, 674 P.2d 952, 955-56 (Colo. 1984) (internal citation omitted).

OAN and Rion preserved arguments related to the *sua sponte* award of sanctions in their Motion to Set Aside the Court's November 21, 2021 Order (CF p.

18,801).  The District Court addressed these issues in its November 21, 2021 Order (CF p. 18,090) and its February 14, 2022 Order (CF p. 21,637).

OAN and Rion preserved arguments related to recusal of Judge Moses in their Motion to Recuse (CF p. 18,756) and Petition to Show Cause Pursuant to C.A.R. 21 (CF p. 20,256).  The District Court directly addressed this issue in its December 12, 2021 Order (CF p. 18,883).

## 2.   The District Court improperly sanctioned OAN and Rion.

As already discussed *supra* pp. 23-24, Judge Moses' decision to *sua sponte* sanction OAN and Rion in response to their evidentiary objections was improper. The District Court understood at the anti-SLAPP hearing that the number of objections was dictated by the amount of purported evidence proposed by Coomer. Moreover, the District Court discussed in open court that the chart it was requesting would be "gargantuan."  OAN and Rion asserted specific objections to avoid argument from Coomer that "omnibus" objections were waived.  There is no evidence that OAN and Rion acted in bad faith — in fact, they stipulated to 248 pieces of evidence, *see* OAN Defendants' Objections, making clear that they did not assert every imaginable objection.  There was simply no justification for the District Court's sanctions order.

But even if there were a rationale for sanctions (which there wasn't), the award was procedurally defective.  First, Coomer's motion bringing these objections before the District Court did not seek sanctions.  Thus, it was inappropriate for the Court to award them *sua sponte*, without giving an opportunity to address the applicable statutory factors.  *See, e.g., Irwin v. Elam Constr., Inc.*, 793 P.2d 609, 611 (Colo. App. 1990).  Second, the District Court failed to evaluate the eight factors set forth in C.R.S. § 13-17-103.  Third, the District Court failed to hold a hearing before awarding fees, as is required under C.R.S. §§ 13-17-101, *et seq*.  *See Pedlow*, 776 P.2d at 385-86 (agreeing with various courts of appeals that a hearing is required).[14] Fourth, to the extent sanctions are based on C.R.C.P. 11, they are improper because Rule 11 sanctions relate to documents filed with the court, and OAN and Rion did not file the evidentiary objections — they were submitted to Coomer and then ***filed by Coomer*** as an attachment to a protective order motion. Thus, the sanctions were procedurally improper.

---

[14] Long after inappropriately awarding sanctions against OAN, the District Court belatedly offered a hearing.  *See* February 14, 2022 Order (CF p. 21,637).  OAN declined the hearing because an after-the-fact hearing was inadequate to remedy the issue.  The Court had already awarded sanctions.

### 3.    The District Court demonstrated clear bias requiring recusal.

Since becoming involved in this case, Judge Moses has repeatedly shown a clear and deeply unfair bias toward the plaintiff and against the defendants, displaying that bias in the District Court's rulings, discovery decisions, tone, threats, sanctions, and outright hostility.   The District Court has now gone even further, trying to transform this case from a defamation case focused on statements actually made by OAN and Rion during a 12-day period in November 2020 into a referendum on the events of January 6, 2021 (Order n. 54), QAnon (¶ 32), and the legitimacy of the 2020 election.  (*Id.*).  The Order is riddled with snide comments directed at the defendants — for example, referring sarcastically to "miraculous" or "spontaneous" events (Order ¶ 19) — despite the District Court's repeated emphasis on "civility" in the trial court.  *See, e.g.,* October 11, 2021 Civility Order (CF p. 15,971).

Judge Moses' feelings about this case are not a new revelation, which is why OAN and Rion previously moved for Judge Moses to recuse herself.  (CF p. 18,756).  She refused (CF p. 18,883), and the Colorado Supreme Court denied immediate review.  (CF p. 21,521).  But this Court should evaluate these issues because absent recusal, OAN and Rion cannot expect fair treatment on remand or moving forward in this case.

Disqualification of a judge is governed by Colorado Rule of Civil Procedure 97. It provides that "[a] judge shall be disqualified in an action in which [s]he is interested or prejudiced. . . ." C.R.C.P. 97. "The test for disqualification under this rule is whether the motion and supporting affidavits allege sufficient facts from which it *may reasonably be inferred* that the judge is prejudiced or biased, or appears to be prejudiced or biased, against a party to the litigation." *Bruce v. City of Colorado Springs*, 252 P.3d 30, 36 (Colo. App. 2010) (emphasis added). The judge must accept factual statements in the motion and affidavit as true, even if he or she believes they are false. *Id*.

OAN's and Rion's motion to recuse set forth, with supporting affidavits, a list of troubling actions taken by Judge Moses that demonstrated unfair prejudice and bias. Accepting those allegations as true, Judge Moses should have recused herself. In the interests of efficiency, OAN and Rion will not repeat the entire list of relevant facts here — a detailed timeline can be found at pages 2-7 of the motion to recuse (CF p. 18,756) — but Judge Moses placed her impartiality and credibility in question by, among other things, (1) allowing sweeping, largely unilateral discovery to the plaintiff to rebut the anti-SLAPP motions (after the prior judge denied discovery), (2) finding "probable falsity" as to Oltmann's statements before holding an evidentiary hearing, (3) repeatedly sanctioning multiple defendants and their

counsel, (4) threatening OAN's and Rion's out-of-state counsel with revocation of their *pro hac vice* admissions, (5) allowing the plaintiff considerably more time on the record and pages in briefing than the defendants, and (6) denying thousands of good faith objections based solely on the number of objections and accusing four of OAN's and Rion's lawyers of "misconduct."

Of particular concern to OAN and Rion are Judge Moses' repeated, *sua sponte* threats of revoking counsel's *pro hac vice* admissions, which are entirely unsupported and demonstrate a clear bias against OAN and Rion and their counsel. *See Klinck v. District Court*, 876 P.2d 1270, 1277 (Colo. 1994); *Goebel v. Benton*, 830 P.2d 995, 998 (Colo. 1992).  Judge Moses's actions are unprecedented in the experience of OAN's and Rion's counsel and unfairly prejudice OAN and Rion by making it impossible for counsel to fulfill their obligations to OAN and Rion without risking unwarranted censure of counsel and sanctions of their clients.

The most startling demonstration of Judge Moses' bias was her handling of OAN's and Rion's evidentiary objections, summarily rejecting thousands of good faith objections without analysis and *sua sponte* sanctioning OAN and Rion simply based on the ***number*** of objections.  *Supra* pp. 23-24.  Moreover, Judge Moses accused four Vedder Price attorneys of "misconduct" and again threatened to revoke the *pro hac vice* admissions of the Vedder Price attorneys (including a junior

associate).  *See* November 21 Order, p. 9.  Judge Moses also attempted to divide OAN and Rion's legal team by suggesting that junior lawyers should refuse to put their names on pleadings.  *Id.*  Given the accumulated evidence of bias, regardless of the outcome of the other issues on this appeal, Judge Moses should be required to recuse.

**J.      The District Court reversibly erred in failing to stay the underlying case.**

**1.      The standard of review is *de novo* on this preserved issue.**

A *de novo* standard of review applies. *See supra* Section VII.A.1.

OAN and Rion preserved arguments related to a stay pending appeal in their Motion to Stay (CF p. 22,152) and Reply in Support of Motion to Stay (CF p. 23,103).  The District Court directly addressed this issue in its July 7, 2022 Order (CF p. 23,895).

**2.      By staying OAN's and Rion's responsive pleading deadlines but not otherwise staying the case, the District Court reversibly erred.**

The District Court erred in refusing to stay the entire District Court case pending appeal.  *See* CF p. 23,895; *Varian Med. Sys., Inc. v. Delfino*, 106 P.3d 958, 967 (Cal. 2005) ("[A]n appeal from the denial of an anti-SLAPP motion automatically stays further trial court proceedings on the merits.").  OAN and Rion adopt and incorporate by reference as if set forth fully herein the argument to be made on this point by defendant-appellant Oltmann.

## VIII.  CONCLUSION

The District Court's denial of OAN's and Rion's Motion should be overturned, complete anti-SLAPP relief should be entered for OAN and Rion (including an award of fees and costs), and the *sua sponte* sanction and fee award against OAN and Rion should be overturned.  If the case is remanded without entry of complete anti-SLAPP relief for OAN and Rion, Judge Moses should be instructed to recuse and OAN and Rion should be allowed reciprocal discovery before further briefing on anti-SLAPP relief on any counts that survive the order of this Court.

## IX.    FEE REQUEST

The Colorado anti-SLAPP statute provides for fees and costs to a prevailing defendant.  *See* C.R.S. § 13-20-1101(4)(a).  Because the District Court erred in denying OAN's and Rion's Motion, the Order should be overturned, and OAN and Rion should be awarded their fees and costs in defending against this lawsuit, including in connection with this appeal.

Respectfully submitted October 26, 2022

By: /s/ Richard A. Westfall
    Richard A. Westfall, No. 15295
    5842 W. Marquette Drive
    Denver, Colorado 80235
    Telephone:  (720) 904-6022
    Email: rwestfall@westfall.law

By: /s/ Blaine C. Kimrey
    Blaine C. Kimrey, No. 57422
    Jeanah Park, No. 57301
    Vedder Price P.C.
    222 N. LaSalle Street, Suite 2600
    Chicago, Illinois 60601
    Telephone:  (312) 609-7865
    Facsimile:  (312) 609-5005
    Email:  bkimrey@vedderprice.com
    Email:  jpark@vedderprice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of October 2022, a true and correct copy of the foregoing was electronically served via the Integrated Colorado Courts E-Filing System (ICCES) and has been e-served via ICCES on all counsel of record.

/s/ Blaine C. Kimrey