IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., *et al.*,

        Plaintiffs,

    v.

HERRING NETWORKS, INC., *et al.*,

        Defendants.

No. 1:21-cv-02130-CJN

Judge Carl J. Nichols

## COUNTERCLAIMS/THIRD-PARTY COMPLAINT

Herring Networks, Inc., d/b/a One America News Network ("Herring"), Charles Herring, Robert Herring, Chanel Rion, and Christina Bobb (collectively, "Counterclaim Plaintiffs"), by and through their undersigned attorneys, bring this action against plaintiffs/counterclaim defendants US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Counterclaim Defendants"); Staple Street Capital LLC ("Staple Street"); and AT&T Services, Inc. ("AT&T Services"), and AT&T, Inc. Board Chairman and Staple Street Executive Board Chairman William Kennard ("Kennard") (collectively, "Third-Party Defendants"), alleging counts against some or all of them for tortious interference and contractual indemnity. In support of their Counterclaims/Third-Party Complaint, Counterclaim Plaintiffs state as follows:

## NATURE OF THE ACTION

1.    This is an action to redress the unchecked influence and power that Counterclaim Defendants, Staple Street, and Third-Party Defendants have wielded in an attempt to unlawfully destroy an independent, family-run business and torch First Amendment freedoms.

2.    Family-owned and operated Herring manages two television networks: One America News Network, or "OAN," and A Wealth of Entertainment, or "AWE." For the past

several years, Herring and AT&T Inc. ("AT&T") had enjoyed a profitable, mutually beneficial business relationship through which AT&T (through AT&T Services and DIRECTV, LLC ("DIRECTV")) carried OAN and AWE and was paid generous commissions via selling advertising on OAN and AWE.

3.       As a result of the contractual carriage and advertising arrangements, AT&T, AT&T Services, and DIRECTV profited financially, and Herring similarly thrived by growing OAN into one of the most popular cable channels offered on DIRECTV's platform.

4.       But in violation of a contract with and duties to Herring, AT&T, AT&T Services, and DIRECTV succumbed to self-serving bias and political pressure — including the unlawful influence of Kennard and Staple Street — and put their unlawful interests and the unlawful personal, political, and financial interests of their management ahead of contractual and legal obligations.

5.       The unlawful actions of AT&T, AT&T Services, Kennard, and DIRECTV in removing OAN and AWE from the airwaves are currently being litigated in the Superior Court of San Diego County, California in *Herring Networks, Inc. v. AT&T, Inc., et al.*, Case No. 37-2022-00008623-CU-BC-CTL (the "San Diego Litigation").

6.       In contrast to the San Diego claims, the Counterclaims asserted here focus on the unlawful efforts of Counterclaim Defendants to interfere with Herring's business relationships, contracts, and reasonable expectancies through their own unlawful influence and the unlawful influence of Staple Street and Kennard.

7.       The Counterclaims also seek to hold Staple Street liable for tortious interference with Herring's business relationships and reasonable expectancies, and the Third-Party Complaint

seeks to hold AT&T Services and Kennard liable for their contractual indemnity obligations to Herring.

8.      Counterclaim Defendants, together with Staple Street, and Third-Party Defendants have flouted the First Amendment in acting unlawfully to try to destroy a company based on Counterclaim Defendants' and Third-Party Defendants' viewpoint discrimination, political power, backroom handshake shenanigans, and improper manipulation of governmental influence.  In fact, Herring is confident discovery will reveal that one or more Dominion entities or Dominion-affiliated entities (including via Dominion Voting Systems Vice President of Government Affairs Kay Stimson) used governmental entities to unlawfully censor speech.  Counterclaim Defendants coordinated with the Mis-, Dis-, and Malinformation ("MDM") team at the Cybersecurity and Infrastructure Security Agency ("CISA") (among others) to attack speech that one or more Dominion entities found troubling for selfish business reasons.  This was part and parcel of the Counterclaim Defendants' and Third-Party Defendants' efforts to unlawfully interfere with, disparage, and destroy viewpoints detrimental to them, including those expressed via Herring.

9.      These wrongdoings are inextricably intertwined with a larger, coordinated, extremely well-financed political scheme to take down Herring and unlawfully destroy its ability to operate in the media business.

## THE PARTIES

10.      Herring is a California corporation with its principal place of business in San Diego, California.  It thus is a California citizen for purposes of diversity of citizenship.  *See* 28 U.S.C. § 1332(c)(1).

11.      Robert Herring is CEO of Herring and a California citizen for purposes of diversity jurisdiction.

12.     Charles Herring is President of Herring and a California citizen for purposes of diversity jurisdiction.

13.     Rion is an OAN reporter and Chief White House Correspondent and a Washington, D.C. citizen for purposes of diversity jurisdiction.

14.     Bobb is a former OAN reporter and a Florida citizen for purposes of diversity jurisdiction.

15.     US Dominion, Inc. is a for-profit Delaware with its principal place of business in Denver, Colorado.   It thus is a Delaware and Colorado citizen for purposes of diversity of citizenship.  *See* 28 U.S.C. § 1332(c)(1).  It is majority-owned by private equity firm Staple Street, whose principal place of business is in New York, New York.

16.     Dominion Voting Systems, Inc. is a for-profit Delaware corporation with its principal place of business in Denver, Colorado.  It thus is a Delaware and Colorado citizen for purposes of diversity of citizenship.  *See* 28 U.S.C. § 1332(c)(1).  It is a wholly owned subsidiary of US Dominion, Inc.

17.     Dominion Voting Systems Corporation is a for-profit Ontario corporation with its principal place of business in Toronto, Ontario.  It thus is a citizen of Canada for purposes of diversity of citizenship.  *See* 28 U.S.C. § 1332(a)(3), (c)(1).   It is a wholly owned subsidiary of US Dominion, Inc.

18.     AT&T Services is a Delaware corporation with its principal place of business in San Antonio, Texas.  It thus is a Delaware and Texas citizen for purposes of diversity of citizenship.  AT&T is the parent company of AT&T Services.

19.     Staple Street is a Delaware limited liability company.  Counterclaim Plaintiffs have thoroughly investigated Staple Street's membership, but have been unable to confirm with

certainty the identity of the members of the company.  On information and belief, Stephen D. Owens, who is a citizen of New York, and Hootan Yaghoobzadeh, who is a citizen of New York, are the members of Staple Street.  Thus, it is likely a citizen of New York for purposes of diversity of citizenship.  Staple Street is the majority owner of US Dominion, Inc., which in turn is the sole owner of Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation.

20.     Kennard is a resident, domiciliary, and citizen of South Carolina for purposes of diversity of citizenship.  Kennard is the Chairman of the Board of Directors of AT&T.  Kennard also serves on the Executive Board of Directors of Staple Street.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

22.     This Court can exercise specific personal jurisdiction over Counterclaim Defendants because they caused tortious injury in this District by an act or omission outside this District, harming Counterclaim Plaintiffs' reputations and business prospects in this District, where Rion resides, Herring has a news bureau, and the Court has held (but Counterclaim Plaintiffs dispute in part) that Counterclaim Plaintiffs have sufficient contacts for jurisdiction in this case. *See* D.C. Code § 13-432(a)(4).  Counterclaim Defendants also have engaged in a persistent course of conduct in this District by filing this and other lawsuits in the District related to the 2020 U.S. election.  Thus, Counterclaim Defendants have personally availed themselves of jurisdiction in this Court.

23.     This Court can exercise specific personal jurisdiction over AT&T Services because it caused tortious injury in this District by an act or omission outside this District, harming

Counterclaim Plaintiffs' reputations and business prospects in this District, where Rion resides, Herring has a news bureau, and the Court has held (but Counterclaim Plaintiffs dispute in part) that Counterclaim Plaintiffs have sufficient contacts for jurisdiction. *See* DC Code § 13-432(a)(4). Moreover, AT&T Services regularly does and solicits business in this District.

24.     This Court can exercise specific personal jurisdiction over Staple Street because it caused tortious injury in this District by an act or omission outside this District, harming Counterclaim Plaintiffs' reputations and business prospects in this District, where Rion resides, Herring has a news bureau, and the Court has held (but Counterclaim Plaintiffs dispute in part) that Counterclaim Plaintiffs have sufficient contacts for jurisdiction. *See* DC Code § 13-432(a)(4).

25.     This Court can exercise specific personal jurisdiction over Kennard because he possesses real property in the District of Columbia. *See* DC Code § 13-432(a)(5); *see also* Decl. of William Kennard in Support of Mot. to Quash, *Herring Networks, Inc. v. AT&T, Inc*., Case No. 37-2022-00008623-CU-BC-CTL, ¶ 11 (Cal. Super. Ct. Apr. 6, 2022) ("I primarily conduct my duties for AT&T Inc. from one of my two residences — in South Carolina and Washington, D.C."). Moreover, Kennard has caused tortious injury in this District by an act or omission outside this District, harming Counterclaim Plaintiffs' reputations and business prospects in this District, where Rion resides, Herring has a news bureau, and the Court has held (but Counterclaim Plaintiffs dispute in part) that Counterclaim Plaintiffs have sufficient contacts for jurisdiction. *See* D.C. Code § 13-432(a)(4).

26.     Venue is proper under 28 U.S.C. § 1391(b) because the Court has personal jurisdiction over all parties and a substantial part of the events giving rise to the counterclaims and third-party claims occurred in this District.

## FACTUAL BACKGROUND

A.      **Herring's business**

27.      Herring is an independent, family-owned media company headquartered in San Diego, California.  CEO Robert Herring Sr. ("Robert") started the company in 2003 with his sons, Charles Herring ("Charles") and Robert Herring Jr. ("Bobby").  Charles is the President of Herring, and Bobby is the General Manager.  Herring owns and operates two television networks: OAN and AWE.

28.      OAN, launched on July 4, 2013, is a news channel that delivers timely national and international news 24 hours a day throughout the United States.  It features political analysis programming, political talk shows, and special documentary-style reports.  OAN provides more live news than any other network.  As of the third quarter of 2021 (the last time this data was made available to Herring), AT&T's own data showed that OAN was a top performing network, ranked 24th (excluding broadcast networks) out of over 300 channels, putting OAN in the top 10 percent of channels offered via DIRECTV.  OAN outperformed CNBC, Fox Business, CNN Headline News, and Newsmax, as well as popular entertainment channels such as Paramount Network, Comedy Central, and Animal Planet.  Additionally, OAN's extensive live programming lineup, which preserves the linear experience for viewers, is an ideal genre moving forward to compete with streaming services that don't offer live programming experiences.

29.      AWE is a lifestyle and entertainment channel, which Herring launched in 2004. AWE airs a wide range of programming, including travel-related series, automotive shows, international news, documentaries, and live championship boxing.  AWE has demonstrated excellent performance since its inception.  It is distributed domestically on dozens of cable systems; it has received regional Emmy awards and nominations for its productions; its live

championship boxing programming has received multiple recognitions; and as of Q3 2021 (the last time this data was made available to Herring), AWE performed in the top 35 percent of the channel lineup according to AT&T's own data.

**B.      AT&T helped launch OAN.**

30.      AT&T is the largest combined telecommunications and entertainment company in the world.  It provides mobile telecommunications, broadband, and Internet subscription services throughout the United States and Latin America.  Between 2018 and April 2022, AT&T also ran a significant media business through its WarnerMedia division and owned and operated several networks, including CNN and HBO.  Herring and AT&T had been in business together since 2006, when AT&T began distributing AWE on its "U-Verse" network.  Through its then-WarnerMedia subsidiary, AT&T managed one of the world's largest TV and film studios and delivered streaming services through the HBO Max platform.  WarnerMedia also offered a significant portfolio of advertising solutions through Basic Networks, which sold advertising on WarnerMedia's networks and digital properties and through another wholly owned AT&T subsidiary called Xandr, Inc. ("Xandr") (which provides marketers with advanced advertising solutions).  As of the close of the 12-month period ending September 30, 2022, AT&T reported $155.65 billion in revenue.

31.      DIRECTV is the country's largest paid satellite TV provider.  AT&T acquired DIRECTV in 2015.  With a 70 percent ownership interest in DIRECTV, AT&T remains the majority owner of DIRECTV.

32.      AT&T Services is another wholly owned subsidiary of AT&T.

33.      Herring and AT&T have been in business together since June 2006, when AT&T began distributing AWE (formerly known as WealthTV) on its "U-Verse" network.  In 2013, at the urging of AT&T, which wanted to compete with Fox News Network with an alternative

conservative-leaning network, Herring launched OAN.  AT&T Services and OAN entered into a Network Affiliation Agreement on April 10, 2014.  AT&T was planning to take an equity stake in Herring to ensure that OAN gained carriage on DIRECTV (pursuant to a put-right agreement between AT&T and DIRECTV).  The plan was terminated as AT&T began targeting DIRECTV for a possible acquisition.

34.     AT&T announced its plan to acquire DIRECTV shortly thereafter and enlisted Herring's help to ensure that the Federal Communications Commission ("FCC") approved the acquisition.  Herring obliged by, among other things, hiring lobbyists, meeting with FCC officials, and signing filings in support of the acquisition that were ghostwritten by AT&T.  In exchange, AT&T promised to air OAN and AWE on U-Verse and DIRECTV.

35.     But when the FCC approved AT&T's acquisition of DIRECTV and the acquisition completed in July of 2015, AT&T and DIRECTV did not hold up their end of the bargain, forcing Herring to file suit.  AT&T Services, DIRECTV, and Herring subsequently entered into an Affiliation Agreement on March 9, 2017 ("Affiliation Agreement").  Upon information and belief, AT&T Services later fully assigned the Affiliation Agreement to DIRECTV.

**C.     Affiliation Agreement and subsequent violations**

36.     The Affiliation Agreement expanded the business relationship between AT&T and Herring and further extended the business relationship between DIRECTV and Herring.  The Affiliation Agreement demonstrates AT&T's desire for OAN to compete with Fox News Network, providing that OAN's programming was "designed to have broad appeal with special interest to viewers interested in independent and conservative political thought."

37.     The term of the Affiliation Agreement is five years.

38.     After execution of the Affiliation Agreement, OAN grew substantially, benefiting AT&T, AT&T Services, and DIRECTV.  As of 2021, a substantial amount of OAN's revenue came from the Affiliation Agreement.

39.     From April 2020 through mid-2021, AT&T Services' Representatives[1] openly disparaged OAN through CNN and HBO, which AT&T at the time owned via its WarnerMedia division.

40.     While DIRECTV was still 100 percent owned by AT&T, AT&T Services began breaching the non-disparagement provisions in the Affiliation Agreement through CNN, which competes with OAN.  On January 10, 2021, during CNN's *Reliable Sources* program, CNN chief media correspondent Brian Stelter interviewed CNN media reporter Oliver Darcy, who stated, "You have corporations and people that are profiting off of lies and conspiracy theories, whether that is big tech, whether that's Fox News, whether that's TV providers that beam OAN and Newsmax into homes."  Stelter responded, "Right.  This is a poisoned informational well.  That is the big story here."

41.     On January 17, 2021, CNN's Stelter continued promoting disparagement of OAN by inviting former Facebook Chief Security Officer Alex Stamos on his *Reliable Sources* program. During the program, Stamos advocated eliminating the capability of conservative programs such as OAN from reaching large audiences.  Stamos stated, "And then we're going to have to figure out the OANN and Newsmax problem, that these companies have freedom of speech, but I'm not sure we need Verizon, AT&T, Comcast, and such to be bringing them into tens of millions of homes. . . .   Allowing people to seek out information if they really want to, but not pushing it into

---

[1]The Affiliation Agreement defines "Representatives" as "any individual or entity over which a Party or an AT&T Related Party . . . exercises influence."

their faces, I think, is where we're going to have to do here."  CNN's Stelter thanked Stamos for his comments.

42.     On January 22, 2021, Bloomberg News Canada published an article quoting CNN's Darcy and CNN analyst Max Boot.   In the article, Darcy implied that conservative channels contributed to the unfortunate events of January 6, 2021 at the U.S. Capitol.  In that same article, Boot wrote that "cable providers should 'step in and kick Fox News off.'  If Newsmax and rival One America News Network 'continue to incite viewers, they, too, should be booted off,' [CNN analyst Boot] added."

43.     Throughout 2021, CNN steadily released a drumbeat of similar reports and commentary that falsely accused OAN of contributing to the events of January 6, 2021 and engaging in "disinformation" campaigns.

44.     AT&T Services also breached the non-disparagement provisions in the Affiliation Agreement on April 5, 2020, when HBO's *Last Week Tonight with John Oliver* dedicated an entire segment to OAN.  Host John Oliver made the following comments about OAN during the segment:

- "The whole selling point for OAN is that they are Fox News with even less shame and even fewer scruples."

- "And I know that it is easy to dismiss OAN as just a stupid, little watched, borderline self-parody.  The problem is if we're learning one thing right now it's that toxic things that start small can get big fast and it's dangerous to ignore them."

- "OAN's weird combination of far right-wing talking points and dirt stupid reporting is incredibly dangerous at a time like this."

- "It is more important than ever to be on the lookout for OAN's bullshit and to make sure no one that you know is falling for it either."

45.     Oliver doubled down in his October 10, 2021 episode, referring to OAN as a "ragtag band of fascists" and stating that "with [AT&T's] help, OAN has grown into the toxic network that is today — one that's happy to give a platform to batshit election fraud theories from America's most out-of-breath pillow fetishist."

46.     Around that same time, CNN also doubled down on its disparagement attack on OAN.  For example, on October 6, 2021, CNN anchor Don Lemon stated that OAN is "corrosive to our democracy" and CNN media reporter Oliver Darcy referred to OAN as a "far right-wing conspiracy channel" that "promotes all sorts of nonsense."  The next day when appearing on CNN's *New Day*, CNN chief media correspondent Brian Stelter called OAN "conspiracy laden" and accused OAN of putting "some of the worst of the worst content out there."  He went even further to state that "there's a difference between real news and conspiracy crap. . . .  [OAN] goes on the air and lies to people who for some reason want the lies."

47.     Additionally, when speaking with Oliver Darcy and Reuters reporter John Shiffman on an October 7, 2021 episode of *The Lead with Jake Tapper*, Tapper referred to OAN as "the ultra-far-right cable network that's a major source of lies masquerading as facts."

48.     These are mere examples of the ways in which AT&T Services has breached the non-disparagement provision in the Affiliation Agreement.

49.     Kennard himself also disparaged OAN openly to multiple individuals.

**D.      The links between Counterclaim Defendants and AT&T**

50.     AT&T Board Chairman Kennard also serves as a member of the Executive Board of Directors of Staple Street, which is the majority owner of US Dominion, Inc.

51.     Kennard was appointed as Chairman of AT&T's Board on November 6, 2020 — three days after the 2020 U.S. presidential election.  Around this same time, Staple Street's Web

site underwent a full transformation, and all information about Staple Street's investment in Dominion and Kennard's role as a member of Staple Street's Executive Board of Directors vanished.

52.     In addition to being Chairman of the Board of AT&T, Kennard also sits on AT&T's Public Policy and Corporate Reputation Committee, which has "the authority to review AT&T's management of its brands to ensure that the value and reputation of the Company's brand names is maintained and enhanced."

53.     Kennard, who is a registered Democrat, has deep ties to the Democratic Party, having been appointed in 1997 as Chairman of the FCC by President Bill Clinton and in 2009 as the U.S. Ambassador to the European Union by President Barack Obama.

54.     When Staple Street acquired US Dominion, Inc. in 2018, it announced that "[w]e are excited to partner with [Dominion CEO John Poulos] and the Dominion Voting team as they embark on their next phase of growth. . . ."  Like any private equity company, Staple Street's goal in acquiring US Dominion, Inc. as a portfolio company was presumably to make the company as profitable as possible so Staple Street could in turn sell it for a profit.

55.     On October 8, 2020, Staple Street's Form D Notice of Exempt Offering of Securities filed with the Securities and Exchange Commission disclosed that Staple Street had raised $400 million from unknown investors in an unusual "one and done" deal.  This additional capital raise suggests that Staple Street continues to invest in US Dominion, Inc.'s success.

56.     Kennard's role as Chairman of AT&T's Board gives Kennard significant influence over AT&T,  its subsidiaries, and the companies it owns majority stakes in.

E.     **Counterclaim Defendants sued Herring for defamation, seeking more than $1.6 billion in damages in an attempt to destroy Herring and silence OAN.**

57.     According to Counterclaim Defendants, OAN's coverage of President Trump's newsworthy allegations that the integrity of the 2020 presidential election was compromised, including allegations that Counterclaim Defendants' voting machines were unreliable and unsecure, harmed their reputations.

58.     Counterclaim Defendants began pursuing a public relations strategy to burnish Counterclaim Defendants' public image in early 2021 by unleashing a torrent of defamation lawsuits against multiple Trump campaign surrogates and media outlets including Fox News Network, Newsmax, Rudy Giuliani, Sidney Powell, Patrick Byrne, and Michael Lindell.

59.     As an Executive Board member of US Dominion, Inc.'s majority owner, Staple Street, Kennard is invested in helping to make the Dominion entities succeed and become as profitable as possible.  This includes ensuring that the Dominion entities silence their opponents such as Herring, which featured critics of the Counterclaim Defendants in the marketplace of ideas.

60.     In addition to being an Executive Board member of Staple Street, Kennard also is a direct investor in one or more Counterclaim Defendants.

61.     Kennard is an agent of both Staple Street and Counterclaim Defendants.

62.     At some point in or before August 2021, Counterclaim Defendants, through Staple Street and Kennard, determined that the destruction of Herring would be beneficial to their business interests.

63.     Accordingly, on August 10, 2021, Counterclaim Defendants, under the direction of Staple Street and Kennard, filed this lawsuit against Herring, Robert Herring, Charles Herring, Rion, and Bobb.  Counterclaim Defendants allege that Herring and the other defendants defamed

Counterclaim Defendants in connection with OAN's coverage of the 2020 presidential election and seek at least **$1.6 billion** in damages against Herring.

64.    In public interviews, Poulos has made clear that it is "[o]ne hundred percent correct" that Counterclaim Defendants will not accept a settlement in their defamation litigation and that they intend to take all of their cases to trial.[2]

65.    One way to hasten Herring's destruction was by cutting off Herring's ability to earn revenue to help fund speech, including speech critical of Counterclaim Defendants, and Herring's defense by pressuring carriers to take OAN off the air.

**F.    Liberal organizations pressured AT&T to "drop" OAN.**

66.    The prime opportunity for Counterclaim Defendants, through Staple Street and Kennard, to put pressure on AT&T to ensure that DIRECTV ceased carrying OAN arose in the fall of 2021.

67.    On October 6, 2021, Reuters published an article titled "How AT&T helped build far-right One America News."

68.    In response to that article, AT&T released the following statement, providing confidential information on how the Affiliation Agreement came to be (and implying that AT&T carried OAN only because OAN forced AT&T's hand by suing AT&T in 2016):

---

[2] *Dominion Voting Systems Sues Ex-Trump Lawyer Over False Claims*, NPR (Jan. 12, 2021, 5:06 AM), https://www.npr.org/2021/01/12/955938741/dominion-voting-systems-sues-ex-trump-lawyer-over-false-claims.



> AT&T has never had a financial interest in OAN's success and does not 'fund' OAN.  When AT&T acquired DIRECTV, we refused to carry OAN on that platform, and OAN sued DIRECTV as a result.  Four years ago, DIRECTV reached a commercial carriage agreement with OAN, as it has with hundreds of other channels and as OAN has done with the other TV providers that carry its programming.  DIRECTV offers a wide variety of programming, including many news channels that offer a variety of viewpoints, but it does not dictate or control programming on the channels. Any suggestion otherwise is wrong. The decision of whether to renew the carriage agreement upon its expiration will be up to DIRECTV, which is now a separate company outside of AT&T.

69.     Immediately upon release of the Reuters article, liberal and other organizations began publicly criticizing AT&T for its relationship with OAN.

70.     On October 6, 2021, NAACP President Derrick Johnson issued a public statement condemning AT&T for supporting OAN.  In that statement, the NAACP accused AT&T of causing "irreparable damage to our democracy," stating that it was "sickened by these revelations."[3]  The NAACP's statement was picked up and published throughout the media.[4]

71.     Media Matters of America ("Media Matters"), a politically left-wing organization founded by a prominent political operative within the Democratic Party, began a public Twitter

---

[3] Press Statement, NAACP, NAACP President and CEO, Derrick Johnson, Released the Following Statement Following the Revelation that AT&T Backs One America News (OAN) (Oct. 6, 2021), https://naacp.org/articles/naacp-president-and-ceo-derrick-johnson-released-following-statement-following-revelation.

[4] *See, e.g.*, Dominick Mastrangelo, *NAACP President blasts AT&T after report linking company to One America News*, THE HILL (Oct. 6, 2021, 2:51 PM), https://thehill.com/homenews/media/575604-naacp-president-blasts-att-after-report-linking-company-to-one-america-news/.

campaign criticizing OAN and AT&T.  On October 6, 2021, Media Matters President Angelo Carusone tweeted, "I want to just put a few things out there about OANN and ATT/DirecTV . . . on how absurd and odious this deal is.  ATT has been paying OANN. . . .  The amount of revenue they give OANN every month is massive.  But it's worse than that."[5]  Carusone went on to take AT&T to task for "propping up" OAN.

72.     Media Matters then published articles critical of AT&T's relationship with OAN. One such article published October 8, 2021, titled "Fact-checking AT&T's defense of single-handedly funding OAN," criticized AT&T, stating "AT&T is having a bad day after the first part of a bombshell Reuters exposé uncovered the company's extensive involvement in helping to create and fund the far-right conspiracy theory outlet One America News Network."

73.     On October 7, 2021, Ultraviolet, a women's advocacy group, joined the fray, calling on AT&T CEO John Stankey to either resign or immediately sever ties with OAN and fire Ed Gillespie, the former Chairman of the Republican National Committee who had joined AT&T as its senior vice president of external and legislative affairs.[6]  Ultraviolet also criticized AT&T for donating to Texas Republican lawmakers who facilitated the passage of recent legislation relating to abortions.

---

[5]     Angelo     Carusone     (@GoAngelo),     TWITTER     (Oct.     6,     2021,     4:07     PM), https://twitter.com/GoAngelo/status/1445858337673781249,                  *available                  at* https://tinyurl.com/MMtweet5.

[6] Press Release, UltraViolet, UltraViolet Says AT&T CEO John Stankey Should End Company's Relationship With Radical Right-Wing Media Outlet OAN, Stop Donations to Anti-Choice Politicians—or          Step          Down          (Oct.     7,     2021,     2:50     PM), https://www.commondreams.org/newswire/2021/10/07/ultraviolet-says-att-ceo-john-stankey-should-end-companys-relationship-radical.

74.     Other left-leaning publications and organizations followed suit.[7]

75.     Kennard — acting as an agent in the financial interests of Staple Street and Counterclaim-Defendants — saw this as an opportunity to weaken Herring and decided to offer up OAN as a sacrificial lamb to the NAACP and other groups, while Kennard and/or AT&T's representatives convinced Herring that there was no reason to be concerned.

76.     AT&T agreed to meet with the NAACP shortly after the Reuters article was published.  On information and belief, AT&T executives first met with the NAACP during the week of October 11, 2021 to address OAN.

77.     On October 20, 2021, the NAACP issued a press release stating that NAACP President Derrick Johnson would be meeting with AT&T leadership the next day, on October 21, in Washington, D.C.[8]  The release further stated, "The meeting will focus on the need for AT&T to drop OAN immediately."

78.     At least one more meeting with the NAACP related to the carriage of OAN occurred during the week of October 25, 2021.

79.     The meetings included Mr. Gillespie and others in AT&T's leadership.  During those meetings, the NAACP demanded that AT&T de-platform OAN from DIRECTV and AT&T U-Verse, which are both products directly owned by DIRECTV, not AT&T.  In other words, while AT&T publicly claimed on the one hand that it was not affiliated with DIRECTV and did not

---

[7] Charlie Cray, *How AT&T Funds Right Wing Extremism and Six More Scary Things You Need to Know About the Company*, GREENPEACE (Oct. 26, 2021), https://www.greenpeace.org/usa/how-att-funds-right-wing-extremism-and-six-more-scary-things-you-need-to-know-about-the-company/; November 8, 2021 letter to AT&T and DIRECTV at 1, *available at* https://tinyurl.com/oannletter (last visited Dec. 8, 2022) (emphasis in original).

[8] *See* Joseph Choi, *NAACP, AT&T to meet to discuss OANN*, THE HILL (Oct. 20, 2021, 5:42 PM), https://thehill.com/homenews/media/577669-naacp-att-to-meet-to-discuss-oann.

participate in programming decisions made by DIRECTV, AT&T took meetings with organizations such as the NAACP suggesting that AT&T in fact had the authority and ability to influence DIRECTV's programming decisions (which makes sense because AT&T is a majority owner of and controls the board of DIRECTV). And the chairman of AT&T's board was Kennard, whose fortunes are inextricably tied to Staple Street and Counterclaim Defendants.

80.     Kennard's dual roles with AT&T and Staple Street created a conflict of interest for him in anything having to do with AT&T's or DIRECTV's relationship with Herring because US Dominion, Inc., owned largely by Staple Street, is suing Herring for $1.6 billion.

81.     At least one journalist seemed to understand the conflict of interest facing Kennard — a *New York Times* reporter contacted Counterclaim Defendants on October 18, 2021, asking about Kennard's "affiliations on both sides of this legal dispute." Mysteriously, no related article ever ran in *The New York Times*. Notably, Kennard once served on the board of directors for New York Times Corporation.

82.     As AT&T and DIRECTV faced this criticism and mounting pressure to remove OAN from the airwaves, Kennard's and/or AT&T's representatives were in direct contact with Charles Herring and Robert Herring, lying to them by claiming that there was no reason to be concerned and continuing with business as usual, leading Herring to believe that carriage would continue on DIRECTV.

83.     If Herring had known the true motives of AT&T — driven by Kennard's desire to bolster Staple Street and Counterclaim Defendants and destroy Herring — it would have taken action much sooner to protect its interests and ensure that carriage continued.

G.     **AT&T caved and publicly announced that DIRECTV would "drop" OAN and AWE.**

84.     Given AT&T's sole ownership of AT&T Services and AT&T's majority ownership in DIRECTV, it is obvious that AT&T — through Kennard — induced DIRECTV to discontinue its relationship with Herring without legally adequate justification.

85.     On Friday, January 14, 2022, OAN President Charles Herring spoke with DIRECTV Senior Vice President of Content Rob Thun ("Thun").  Throughout much of Herring's relationship with AT&T, Thun has been Herring's primary contact with AT&T and DIRECTV. During that call, Thun informed Charles that DIRECTV decided not to renew the Affiliation Agreement.  Thun informed Charles that the decision was made ***at the board level*** and was "political," implying that outside forces, such as AT&T and/or Kennard (given his agency role with US Dominion, Inc.'s owner, Staple Street), had influenced the decision.  Indeed, Charles later learned that AT&T's CEO, John Stankey, knew at least two days before that OAN would not be renewed.  The news stunned Herring.

86.     That same day, Bloomberg News released an article titled "DirecTV to Drop One America News in Blow to Conservative Channel."[9]  DIRECTV provided confidential information regarding the parties' discussions on the non-renewal of the Affiliation Agreement to Bloomberg News, writing via email that it had "informed Herring Networks that, following a routine internal review, we do not plan to enter into a new contract when our current agreement expires."  Multiple news outlets such as *The Wall Street Journal, The New York Times* and *The Washington Post* picked up the article, and DIRECTV has since provided similar statements to other media outlets.

---

[9] *See* Gerry Smith, *DirecTV to Drop One America News in Blow to Conservative Channel*, BLOOMBERG (Jan. 14, 2022, 5:44 PM), https://www.bloomberg.com/news/articles/2022-01-14/directv-to-drop-one-america-news-in-blow-to-conservative-channel.

87.     The pre-announcement by DIRECTV to not renew OAN — more than 75 days in advance — is atypical in the industry.  There is no question that AT&T's strategy, overseen by Kennard, was intended to harm OAN.  By making the gratuitous announcement that breached the Affiliation Agreement, AT&T signaled to the public that something was wrong, hurting OAN's business and standing in the news media business.

88.     The gratuitous announcement by DIRECTV also constituted a breach of the confidentiality provision in the Affiliation Agreement, which DIRECTV has *admitted* in its answer in the San Diego Litigation.

89.     Concerns about OAN's viability directly sparked by DIRECTV's aggressive, well-in-advance notification approach, have significantly harmed OAN.

90.     Counterclaim Defendants' goal of destroying OAN — which is the stated goal of this litigation — was clearly served by the decision not to renew OAN, as was the unusual public notice of that decision.

91.     Limited jurisdictional discovery in the San Diego Litigation has already revealed that Kennard *directly* disparaged Herring.

92.     Herring is confident that discovery will further demonstrate that Kennard, working as an agent for both Staple Street and Counterclaim Defendants, was directly involved in DIRECTV's decision to non-renew OAN and that Kennard has personal, political, and financial interests in the destruction of OAN that are inconsistent with his fiduciary obligations to AT&T shareholders.

93.     The attacks on carriage of OAN and Counterclaim Defendants' stated goal of silencing the network are inextricably intertwined with the allegations Counterclaim Defendants have made in their Complaint.  The Complaint by the Dominion entities is not a typical defamation

case, seeking reasonable damages to remedy reputational harm.  It is a scorched-earth effort by the Dominion entities to use defamation law to silence critics and eliminate differing opinions, something that should be of concern to Americans across the political spectrum.

94.    Counterclaim Defendants' focus on muzzling OAN and similar voices is apparent from their discovery efforts in *US Dominion, Inc. v. Fox Corporation*, N21C-11-082 (Superior Court of Delaware), where Counterclaim Defendants have recently issued subpoenas to Altice USA Inc., Verizon Communications Inc., and Comcast Corp. seeking carriage information and related agreements, including discussions ***related to OAN*** (which is not a party in that case).

95.    Counterclaim Defendants are not satisfied with trying to extract a pound of flesh — they are clearly focused on trying to use their lawsuits and their disparagement of conservative voices to punish dissenting speech and drive it from the marketplace of ideas in an improper and tortious fashion.

96.    Indeed, Counterclaim Defendants, through the efforts of Kennard and Staple Street, have already achieved that goal with respect to carriage of OAN on DIRECTV and other carriers.

**H.    AT&T's accusations of defamation, followed by silence, confirm Kennard's involvement.**

97.    After DIRECTV announced it would not renew the Affiliation Agreement, OAN anchor Dan Ball reported on January 17, 2022, that Kennard pressured DIRECTV to drop OAN and not renew the Affiliation Agreement.  Herring CEO Robert Herring also gave a statement on January 20, 2022, in which he concluded that Kennard and the AT&T Board directed DIRECTV to remove OAN from DIRECTV's channel lineup.  On January 21, 2022, AT&T's counsel sent a letter to Robert Herring and Ball accusing them of defaming AT&T and Kennard by suggesting that AT&T and Kennard pressured DIRECTV to drop OAN from its channel lineup.  In that letter, AT&T's counsel demanded that OAN issue a retraction.

98.     That demand for retraction invoked the Texas Defamation Mitigation Act ("DMA"), Tex. Civ. Prac. & Rem. Code §§ 73.051-73.062.  The DMA states, in relevant part:

> A person who has been requested to make a correction, clarification, or retraction may ask the person making the request to provide reasonably available information regarding the falsity of the allegedly defamatory statement not later than the 30th day after the date the person receives the request.  Any information requested under this section must be provided by the person seeking the correction, clarification, or retraction not later than the 30th day after the date the person receives the request.

DMA § 73.056(a).

99.     The DMA further states, in relevant part:

> If a correction, clarification, or retraction is not made, a person who, without good cause, fails to disclose the information requested under Subsection (a) may not recover exemplary damages, unless the publication was made with actual malice.

DMA § 73.056(b).

100.     On February 2, 2022, Herring sent AT&T a letter responding to AT&T's accusations, noting that OAN's assertions that AT&T and Kennard were involved in DIRECTV's decision were not defamatory.

101.     Among other reasons, Herring's letter stated that the statements were true or substantially true because AT&T owns 70 percent of DIRECTV and it is likely irrefutable that Kennard, Chairman of the Board and a member of AT&T's Public Policy and Reputation Committee, provided input on how to respond to the demands to drop OAN.

102.     Herring also demanded, pursuant to the DMA, that AT&T produce information relating to AT&T's retraction demand, including but not limited to (i) communications relating to demands or complaints to AT&T about OAN, including requests that AT&T and/or DIRECTV drop OAN from carriage via DIRECTV; (ii) internal and external communications by Kennard about OAN; (iii) information and communications relating to Kennard's relationship with Staple

Street; (iv) internal and external communications about reporting by OAN regarding DIRECTV's non-renewal, AT&T's ownership interest in or control of DIRECTV, Kennard's role in non-renewal of OAN, and the AT&T Board of Directors' role in the non-renewal of OAN; and (v) Kennard's human resources file.  Under the DMA, AT&T was required to provide this information to Herring no later than March 2, 2022.

103.    Despite the statutory deadline of March 2, 2022, under the DMA — a statute first invoked by AT&T in its letter — AT&T has neither responded to Herring's letter nor produced any of the information requested as of filing this Third-Party Complaint.  Given AT&T's obvious familiarity with the DMA and the implications of failing to respond by the deadline, AT&T's lack of response shows that AT&T actually has no evidence of falsity as to Dan Ball's and Robert Herring's statements.

104.    Thus, Ball and Robert Herring were right that AT&T and Kennard, at minimum, were involved in the decision not to renew the Affiliation Agreement.

105.    Kennard was motivated to use his role and position of influence at AT&T to induce DIRECTV not to continue its carriage of OAN, to the benefit of Kennard, Staple Street, and Counterclaim Defendants and to the detriment of OAN — as well as the detriment of AT&T, which no longer receives advertising revenue from OAN.

I.      **AT&T Services and Kennard owe a contractual duty to indemnify Counterclaim Plaintiffs.**

106.    Section 8.2 of the Affiliation Agreement states:

Affiliate shall indemnify, defend and hold harmless each of [Herring], its parent company and its Affiliated Companies, contractors, subcontractors, authorized agents, each supplier to [Herring] of any portion of any Service under this Agreement and each participant therein and the directors, officers, employees and

agents of [Herring],[10] such Affiliated Companies, contractors, subcontractors, authorized agents, such suppliers and participants therein (collectively, the "**Programmer Indemnitees**") from, against and with respect to any and all claims, demands, actions, or causes of action, damages, liabilities, threatened claims, costs and expenses (including reasonable outside attorneys' and experts' fees) incurred in connection with any third-party claim against the Programmer Indemnitees to the extent arising out of (a) Affiliate's breach or alleged breach of any provision of this Agreement.

107.    "Affiliate" is defined to include AT&T Services, Inc. as well as any "Affiliated Companies." "Affiliated Companies" is defined to include "with respect to any person or entity, any other person or entity directly or indirectly controlling, controlled by or under common control (i.e., the power to direct affairs by reason of ownership of voting stock, by contract or otherwise) with such person or entity." This includes Kennard.

108.    AT&T Services and Kennard breached the non-disparagement provision in the Affiliation Agreement (Section 16.3) by disparaging Herring through their representatives at CNN and HBO.

109.    For his part, Kennard also directly disparaged Herring to others. Because this disparagement by Kennard and/or AT&T Services and the related motivations of Kennard to destroy OAN likely led to Counterclaim Defendants' lawsuit against the Counterclaim Plaintiffs, AT&T Services is obligated to defend and indemnify the Counterclaim Plaintiffs in this litigation.

110.    Given his role as a member of Staple Street's Executive Board and his financial investment in Counterclaim Defendants, Kennard's influence in Counterclaim Defendants' decision to bring suit "arises out of" his and AT&T Services' breaches of the non-disparagement provision in the Affiliation Agreement, triggering the indemnification provision.

---

[10] Charles Herring, Robert Herring, Rion, and Bobb were, at all relevant times, directors, officers, employees and/or agents of Herring.

## FIRST CAUSE OF ACTION

**Tortious Interference With Business Relationship/Contract
Herring Networks, Inc. v. Counterclaim Defendants**

111.   Herring incorporates Paragraphs 1-105 by reference as if fully set forth herein.

112.   Until April 2022, Herring had a mutually beneficial and mutually profitable relationship with DIRECTV and AT&T related to the carriage of OAN and AWE, including through the Affiliation Agreement.

113.   Counterclaim Defendants were certainly aware of this relationship — in addition to the fact that it is widely known to the public that OAN and AWE were carried on DIRECTV, Counterclaim Defendants had knowledge through their agent Kennard.

114.   Moreover, the business relationship and related contract between AT&T and OAN were widely reported in October 2021 and became a source of significant public discussion and controversy.

115.   Counterclaim Defendants, through the actions of their agent Kennard (which were violations of his fiduciary obligations to AT&T), sought to further their goal of destroying Herring by pressuring AT&T and DIRECTV to ensure non-renewal of OAN, breaching the disparagement and confidentiality provisions of the Affiliation Agreement in the process.

116.   As a result of the pressure imposed by Counterclaim Defendants, through their agent Kennard, AT&T and DIRECTV breached the confidentiality provision of the Affiliation Agreement by leaking the details of the carriage agreement in announcing non-renewal.

117.   Similarly, as a result of the pressure imposed by Counterclaim Defendants, through their agent Kennard, AT&T breached the non-disparagement provision in the Affiliation Agreement by repeatedly disparaging OAN.

118.    Counterclaim Defendants acted with intent, malice and willful disregard for Herring's rights through a wrongful act (Kennard's fiduciary breach) in attempting to undermine Herring's business relationships and destroy the company.

119.    As a result of Kennard's actions on behalf of Counterclaim Defendants, Herring was significantly damaged by the breaches of the Affiliation Agreement, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, counter plaintiff Herring Networks, Inc. respectfully requests that the Court enter judgment in its favor on Count I and award the following relief:

A.      Compensatory and other damages, in an amount to be determined at trial;

B.      Punitive damages;

C.      Pre-judgment and post-judgment interest;

D.      Costs of suit; and

E.      Such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

**Tortious Interference With Business Expectancy**
**Herring Networks, Inc. v. Counterclaim Defendants**

120.    Herring incorporates Paragraphs 1-105 by reference as if fully set forth herein.

121.    Until April 2022, Herring had a mutually beneficial and mutually profitable relationship with DIRECTV and various other cable television carriers related to the carriage of OAN and AWE.

122.    Counterclaim Defendants were certainly aware of these relationships — in addition to the fact that it is widely known to the public that OAN and AWE were carried on DIRECTV

and other carriers, Counterclaim Defendants had knowledge of the DIRECTV relationship through their agent Kennard.

123.     Counterclaim Defendants, through the actions of their agent Kennard, sought to further their goal of destroying Herring by disparaging OAN and bowing to the pressure of left-leaning organizations seeking the non-renewal of OAN.

124.     In dereliction of his fiduciary obligations to AT&T stockholders, Kennard (for the benefit of Counterclaim Defendants) used his influence at AT&T to persuade DIRECTV to change the status quo and non-renew the Affiliation Agreement, resulting in reduced revenue for both AT&T and DIRECTV.

125.     Before Kennard's exercise of his influence for the benefit of Counterclaim Defendants, Herring reasonably believed that DIRECTV and other carriers would renew carriage of OAN, and there was a reasonable probability that this could occur because carriage was mutually beneficial generating revenue for Herring and the carriers.

126.     Counterclaim Defendants acted with intent, malice and willful disregard for Herring's rights through a wrongful act (Kennard's fiduciary breach) in attempting to undermine Herring's business relationships and destroy the company.

127.     As a result of Kennard's actions on behalf of Counterclaim Defendants, Herring has been significantly damaged through the loss of its expected future business relationship with DIRECTV and the loss of carriage on DIRECTV, as well as carriage and future business relationships on other providers that followed DIRECTV's lead, including Verizon Fios and Frontier.

## PRAYER FOR RELIEF

WHEREFORE, counter plaintiff Herring Networks, Inc. respectfully requests that the Court enter judgment in its favor on Count II and award the following relief:

A.     Compensatory and other damages, in an amount to be determined at trial;

B.     Punitive damages;

C.     Pre-judgment and post-judgment interest;

D.     Costs of suit; and

E.     Such other and further relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Tortious Interference With Business Relationship/Contract
### Herring Networks, Inc. v. Staple Street Capital LLC

128.     Herring incorporates Paragraphs 1-105 by reference as if fully set forth herein.

129.     Until April 2022, Herring had a mutually beneficial and mutually profitable relationship with DIRECTV and AT&T related to the carriage of OAN and AWE, including through the Affiliation Agreement.

130.     Staple Street was certainly aware of this relationship — in addition to the fact that it is widely known to the public that OAN and AWE were carried on DIRECTV, Staple Street had knowledge through its agent Kennard.

131.     Moreover, the business relationship and related contract between AT&T and OAN were widely reported in October 2021 and became a source of significant public discussion and controversy.

132.     Staple Street, through the actions of its agent Kennard (which were violations of his fiduciary obligations to AT&T), sought to further its goal of destroying Herring by pressuring

AT&T and DIRECTV to ensure non-renewal of OAN, breaching the disparagement and confidentiality provisions of the Affiliation Agreement in the process.

133.    As a result of the pressure imposed by Staple Street, through its agent Kennard, AT&T and DIRECTV breached the confidentiality provision of the Affiliation Agreement by leaking the details of the carriage agreement in announcing non-renewal.

134.    Similarly, as a result of the pressure imposed by Staple Street, through its agent Kennard, AT&T breached the non-disparagement provision in the Affiliation Agreement by repeatedly disparaging OAN.

135.    Staple Street acted with malice, intent and willful disregard for Herring's rights through a wrongful act (Kennard's fiduciary breach) in attempting to undermine Herring's business relationships and destroy the company.

136.    As a result of Kennard's actions on behalf of Counterclaim Defendants, Herring was significantly damaged by the breaches of the Affiliation Agreement, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, counter plaintiff Herring Networks, Inc. respectfully requests that the Court enter judgment in its favor on Count III and award the following relief:

A.    Compensatory and other damages, in an amount to be determined at trial;

B.    Punitive damages;

C.    Pre-judgment and post-judgment interest;

D.    Costs of suit; and

E.    Such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Tortious Interference With Business Expectancy
### Herring Networks, Inc. v. Staple Street Capital LLC

137.     Herring incorporates Paragraphs 1-105 by reference as if fully set forth herein.

138.     Until April 2022, Herring had a mutually beneficial and mutually profitable relationship with DIRECTV and various other cable television carriers related to the carriage of OAN and AWE.

139.     Staple Street was certainly aware of these relationships — in addition to the fact that it is widely known to the public that OAN and AWE were carried on DIRECTV and other carriers, Staple Street had knowledge of the DIRECTV relationship through its agent Kennard.

140.     Staple Street, through the actions of its agent Kennard, sought to further its goal of destroying Herring by disparaging OAN and bowing to the pressure of left-leaning organizations seeking the non-renewal of OAN.

141.     In dereliction of his fiduciary obligations to AT&T stockholders, Kennard (for the benefit of Staple Street) used his influence at AT&T to convince DIRECTV to change the status quo and non-renew the Affiliation Agreement, resulting in reduced revenue for both AT&T and DIRECTV.

142.     Prior to Kennard's exercise of his influence for the benefit of Staple Street, Herring reasonably believed that DIRECTV and other carriers would renew carriage of OAN, and there was a reasonable probability that this could occur because carriage was mutually beneficial generating revenue for Herring and the carriers.

143.     Staple Street acted with malice, intent, and willful disregard for Herring's rights through a wrongful act (Kennard's fiduciary breach) in attempting to undermine Herring's business relationships and destroy the company.

144.    As a result of Kennard's actions on behalf of Staple Street, Herring has been significantly damaged through the loss of its expected future business relationship with DIRECTV and the loss of carriage on DIRECTV, as well as carriage and future business relationships on other providers that followed DIRECTV's lead, including Verizon Fios and Frontier.

## PRAYER FOR RELIEF

WHEREFORE, counter plaintiff Herring Networks, Inc. respectfully requests that the Court enter judgment in its favor on Count IV and award the following relief:

A.    Compensatory and other damages, in an amount to be determined at trial;

B.    Punitive damages;

C.    Pre-judgment and post-judgment interest;

D.    Costs of suit; and

E.    Such other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

**Contractual Indemnity**
**Counterclaim Plaintiffs v. AT&T Services, Inc. and William Kennard**

145.    Herring incorporates Paragraphs 1-110 by reference as if fully set forth herein.

146.    Pursuant to the Affiliation Agreement, AT&T Services owes a duty to indemnify, defend, and hold harmless Herring and any of its directors, officers, employees and agents for any breach of the Affiliation Agreement.

147.    Charles, Robert, Rion, and Bobb were, at all relevant times, directors, officers, employees and/or agents of Herring.

148.    This indemnity provision applies not only to AT&T Services, but also to Kennard. *See supra* ¶ 107.

149.    AT&T Services breached the non-disparagement provision in the Affiliation Agreement (Section 16.3) by disparaging the Counterclaim Plaintiffs through its representatives at CNN and HBO repeatedly from April 2020 through mid-2021, laying the groundwork for this lawsuit in August 2021.

150.    Kennard also directly disparaged Herring to others.

151.    Because this disparagement by AT&T Services and/or Kennard and the related motivations of Kennard to destroy OAN led to Counterclaim Defendants' lawsuit against the Counterclaim Plaintiffs, AT&T Services is obligated to defend and indemnify the Counterclaim Plaintiffs in this litigation.

152.    Given his role as a member of Staple Street's Executive Board and his financial investment in Counterclaim Defendants, Kennard's influence in Counterclaim Defendants' decision to bring suit "arises out of" his and AT&T Services' breaches of the non-disparagement provision in the Affiliation Agreement, triggering the defense and indemnification provision.

153.    Accordingly, under the Affiliation Agreement, AT&T Services and Kennard are required to indemnify, defend, and hold harmless the Counterclaim Plaintiffs against the claims, costs, and expenses (including attorneys' fees) arising out of the lawsuit brought by Counterclaim Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Herring Networks, Inc., Charles Herring, Robert Herring, Chanel Rion, and Christina Bobb respectfully request that the Court enter judgment in their favor on Count V and award them the following relief:

A.    Compensatory and other damages, in an amount to be determined at trial;

B.    Attorneys' fees, as provided in the Affiliation Agreement;

C.      Costs of suit;

D.      Pre-judgment and post-judgment interest; and

E.      Such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

### (All Claims)

WHEREFORE, Herring Networks, Inc., Charles Herring, Robert Herring, Chanel Rion, and Christina Bobb respectfully request that the Court enter judgment on all causes of action and award the following relief:

A.      Compensatory damages, in an amount to be determined at trial;

B.      Punitive damages against Counterclaim Defendants and Staple Street for tortious interference;

C.      Attorneys' fees against AT&T Services and Kennard pursuant to the Affiliation Agreement;

D.      Pre-judgment and post-judgment interest;

E.      Costs of suit incurred herein; and

F.      Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Herring Networks, Inc., Charles Herring, Robert Herring, Chanel Rion, and Christina Bobb demand a trial by jury on all claims and issues so triable and request that the jury consist of 12 members.

Dated: February 3, 2023

Respectfully submitted,

/s/ Blaine Kimrey
Blaine Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Counterclaim Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 3rd day of February 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the current parties of record.

/s/ Blaine C. Kimrey
Blaine C. Kimrey