# Exhibit B

**EXECUTION VERSION**

AFFILIATION AGREEMENT

**"One America News" and "AWE"**

DIRECTV, LLC
and
AT&T Services, Inc.

and

Herring Networks, Inc.

EXECUTION VERSION

AFFILIATION AGREEMENT

AGREEMENT, made as of March 9, 2017 (the "**Effective Date**"), by and among Herring Networks, Inc., a California corporation ("**Programmer**"), on the one hand and DIRECTV, LLC, a California limited liability company ("**DIRECTV**") and AT&T Services, Inc., a Delaware corporation, on behalf of itself and its Affiliated Companies other than AT&T, Inc., which is not a party to this Agreement, on the other hand ("**AT&T**" and collectively with DIRECTV, "**Affiliate**" and together with Programmer, each a "**Party**" and collectively the "**Parties**")). "**Affiliated Company(ies)**" means, with respect to any person or entity, any other person or entity directly or indirectly controlling, controlled by or under common control (i.e., the power to direct affairs by reason of ownership of voting stock, by contract or otherwise) with such person or entity. Notwithstanding anything to the contrary in this Agreement, AT&T is entering into this Agreement for all distribution (other than the DIRECTV Distribution System and the OTT Distribution System) and any other distribution platforms owned, operated and/or controlled by Affiliate or an Affiliated Company of Affiliate (including, as applicable, the Future Premium Content Video Product(s)) and DIRECTV is entering into this Agreement for the DIRECTV Distribution System and the OTT Distribution System (and, in each case, the associated authenticated delivery), including, as applicable, the Future Premium Content Video Product(s).



**CONFIDENTIAL AND PROPRIETARY INFORMATION**



CONFIDENTIAL AND PROPRIETARY INFORMATION

EXECUTION VERSION



CONFIDENTIAL AND PROPRIETARY INFORMATION



4

CONFIDENTIAL AND PROPRIETARY INFORMATION



5



CONFIDENTIAL AND PROPRIETARY INFORMATION



CONFIDENTIAL AND PROPRIETARY INFORMATION

EXECUTION VERSION



CONFIDENTIAL AND PROPRIETARY INFORMATION

EXECUTION VERSION



9

CONFIDENTIAL AND PROPRIETARY INFORMATION



10

CONFIDENTIAL AND PROPRIETARY INFORMATION



11



12



CONFIDENTIAL AND PROPRIETARY INFORMATION



CONFIDENTIAL AND PROPRIETARY INFORMATION



CONFIDENTIAL AND PROPRIETARY INFORMATION



16



17



18



19



20

EXECUTION VERSION



CONFIDENTIAL AND PROPRIETARY INFORMATION



22

CONFIDENTIAL AND PROPRIETARY INFORMATION



CONFIDENTIAL AND PROPRIETARY INFORMATION



CONFIDENTIAL AND PROPRIETARY INFORMATION



**8.**  <u>Indemnification; Limitation of Liability</u>.



CONFIDENTIAL AND PROPRIETARY INFORMATION

**8.2**     By Affiliate.   Affiliate shall indemnify, defend and hold harmless each of Programmer, its parent company and its Affiliated Companies, contractors, subcontractors, authorized agents, each supplier to Programmer of any portion of any Service under this Agreement and each participant therein and the directors, officers, employees and agents of Programmer, such Affiliated Companies, contractors, subcontractors, authorized agents, such suppliers and participants therein (collectively, the "**Programmer Indemnitees**") from, against and with respect to any and all claims, demands, actions, or causes of action, damages, liabilities, threatened claims, costs and expenses (including reasonable outside attorneys' and experts' fees) incurred in connection with any third-party claim against the Programmer Indemnitees to the extent arising out of (a) Affiliate's breach or alleged breach of any provision of this Agreement, (b) the distribution, exhibition and/or transmission by Affiliate of the Services and/or any Service Content via the DIRECTV Distribution System, the U-verse Distribution System and/or the OTT Distribution System from the point of authorized reception by Affiliate, including the insertion by Affiliate of commercial or other announcements pursuant to Section 1.2.6 (except with respect to claims relating to either of the Services and/or any Service Content and related materials for which Programmer is solely responsible pursuant to Section 8.1(b), Section 8.1(c), Section 8.1(d), and Section 8.1(e)), (c) Affiliate's advertising and marketing of the Services (except with respect to such advertising and marketing materials or content supplied or approved by Programmer), and (d) any other materials, including advertising or promotional copy, solely to the extent supplied by Affiliate and not approved by Programmer. In addition, Affiliate shall pay and hold Programmer harmless from any international, federal, state, or local taxes or fees, including any fees payable to local franchising authorities, which are based upon revenues derived by, or the operations of, Affiliate (except with respect to taxes or fees based upon revenues derived by, or the operations of, Programmer for which Programmer is solely responsible pursuant to Section 8.1).

**8.3**     Notice of Claim.   The Party wishing to assert its rights set forth in this Section 8 (the "**Indemnified Party**") shall promptly notify the other Party (the "**Indemnifying Party**") in writing of any claim or legal proceeding as to which such Party is asserting an indemnification right, describing in reasonable detail the facts giving rise to any claim for indemnification under this Agreement, the amount or method of computation of the amount of such claim (if known) and such other information with respect thereto as the Indemnifying Party may reasonably request.   The failure to provide such notice, however, shall not release the Indemnifying Party from any of its obligations under this Section 8 except to the extent that the Indemnifying Party is materially prejudiced by such failure to provide such notice.   The Indemnifying Party shall by written notice to the Indemnified Party within thirty (30) days of receipt of notice from the Indemnified Party of the commencement of such claim, assume the defense thereof at the expense of the Indemnifying Party with counsel selected by the Indemnifying Party and reasonably satisfactory to the Indemnified Party.   The Indemnified Party shall have the right to employ separate counsel and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Party.   The Indemnified Party shall reasonably cooperate with the Indemnifying Party in such defense and make available, at the Indemnifying Party's expense, to the Indemnifying Party all witnesses, pertinent records, materials and information in the Indemnified Party's possession or under the Indemnified Party's control relating thereto as is reasonably required by the Indemnifying Party.



26

EXECUTION VERSION



27

CONFIDENTIAL AND PROPRIETARY INFORMATION



28



**12.**    Binding Agreement; Assignment.    This Agreement, including both its obligations and benefits, shall pass to and be binding on the respective transferees, successors and permitted assigns of the Parties. This Agreement may not be assigned, in whole or in part, by either Party without the prior written consent of the other Party, which consent shall not be unreasonably delayed or withheld; provided, however, that, no consent shall be necessary in the event of assignment by a Party of its obligations and benefits under this Agreement to: (i) an Affiliated Company and/or (ii) a successor entity of such Party resulting from merger, acquisition or consolidation.

**13.**    Governing Law; Venue.    This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be fully performed therein, without regard to that state's choice-of-law provisions, except to the extent that the Parties' respective rights and obligations are subject to mandatory local, state and federal laws or regulations or to the extent that federal law preempts state or local law.



29

CONFIDENTIAL AND PROPRIETARY INFORMATION



**16.**     Confidentiality/Non-Disparagement/Joint Media Statement

**16.2**     Confidentiality.  The Parties agree that all terms and provisions of this Agreement (as well as all data, summaries, reports or information of all kinds, whether oral or written, acquired or devised or developed in any manner from the other Party (and/or the Programmer Related Parties or the AT&T Related Parties, as applicable, and/or their respective Representatives), or any proprietary or subscriber information, provided by one Party (and/or the Programmer Related Parties or the AT&T Related Parties, as applicable, and/or their respective Representatives) to the other Party), its negotiation, and any discussions or agreements related thereto, as well as information, testimony, documents or other data related to or concerning the Litigation, or provided and/or obtained in discovery in the Litigation (together, the "**Confidential Information**") shall be held strictly confidential by the Parties, the Programmer Related Parties, the AT&T Related Parties, and their respective Representatives. Notwithstanding the above, Confidential Information may be disclosed solely in the following circumstances: (i) to the extent necessary to comply with Law or as required by a judicial body, or arbitrator, or federal/state government, in which event, to the extent permitted by applicable law, the disclosing party shall so notify the party that produced the Confidential Information in writing as promptly as practicable (and, in any event, prior to making any disclosure) and shall cooperate with the party that produced the information  in the event that such party seeks to limit the scope of such disclosure and/or to make such disclosure subject to a protective order or similar device; provided that in all events the disclosing party shall seek confidential treatment of such information (including by redacting any such information to the greatest extent possible); (ii) to the Party's parent, subsidiary and Affiliated Companies, its auditors and its attorneys as part of its normal reporting or review procedures and such auditors and attorneys agree to be bound by the provisions of this Section 16.2; (iii) at the written direction of the party that produced the Confidential Information (with respect to that party's Confidential Information); (iv) in connection with any bona fide enforcement (e.g., legal proceeding) of any of its rights pursuant to this Agreement; (v) to potential investors, purchasers, insurers or financing entities provided, however, that such person described above agrees to be bound by the provisions of this Section 16.2; or (vi) if at the time of disclosure the Confidential Information is in the public domain through no fault of the party seeking to disclose the information. Upon no less than ten (10) business days prior written notice to Affiliate, Programmer may also disclose Confidential Information to the third party

CONFIDENTIAL AND PROPRIETARY INFORMATION

independent auditors of Other Distributors solely to the extent that disclosure of such Confidential Information is required by provisions in Programmer's agreements with such Other Distributors that are the same as or materially similar to Section 4.5 of this Agreement provided that no Confidential Information is shared with the Other Distributor itself and such third party independent auditors of the applicable Other Distributor(s) agree to be bound by the provisions of this Section 16.2.

**16.3** <u>Non-Disparagement</u>. The Parties further agree that the Parties, the AT&T Related Parties, the Programmer Related Parties, and their respective Representatives during the Term of this Agreement and for two (2) years thereafter, shall not directly or indirectly (or encourage, suggest or organize any other individual, entity or third party or their Representatives to) (1) disparage (including, without limitation, via the Services, blogging, social media, press interviews and/or any public statement) the other Party, the Programmer Related Parties, the AT&T Related Parties, and/or their respective Representatives; (2) protest, picket and/or engage in similar activity with respect to and/or at or near the commercial or residential locations of the other Party, the Programmer Related Parties, the AT&T Related Parties, and/or their respective Representatives; or (3) engage in any activity that impugns, or otherwise casts the other Party, the Programmer Related Parties, the AT&T Related Parties, and/or their respective Representatives in a negative light (the foregoing subsections (1)-(3), constituting the "**Prohibited Communications and Activity**"). The Parties acknowledge and agree that the Prohibited Communications and Activity could cause the other Party, the AT&T Related Parties, the Programmer Related Parties, and/or their respective Representatives significant harm. For that reason, the Parties agree that notwithstanding anything to the contrary in this Agreement that any violation of this Section 16.3 shall cease immediately upon written notice by one Party to the other Party. The Parties further agree that this Section 16.3 shall not apply (a) to the extent necessary to comply with the Law; (b) to any proceeding before any government, judicial, legislative or administrative body, or any arbitrator; or (c) to any governmental inquiry or request.



31



CONFIDENTIAL AND PROPRIETARY INFORMATION

EXECUTION VERSION



33

CONFIDENTIAL AND PROPRIETARY INFORMATION



CONFIDENTIAL AND PROPRIETARY INFORMATION

**EXECUTION VERSION**



35

**CONFIDENTIAL AND PROPRIETARY INFORMATION**

**25.2**    <u>Mutual Release and Waiver of All Claims</u>. Plaintiff, on behalf of itself, the Programmer Related Parties, and their respective Representatives hereby waives, releases and forever forgives any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which exist or have accrued prior to the Effective Date of this Agreement, which Programmer, Programmer Related Parties, and their respective Representatives, or any of them, has or might have (including, but not limited to, those claims that relate to, consist of, or comprise any of the allegations asserted by any Programmer Related Party against any AT&T Related Party in the Litigation or elsewhere) against Affiliate, the AT&T Related Parties, and their respective Representatives, or any of them, and all of their respective past, present and future parent entities, direct or indirect subsidiaries, affiliates, divisions, facilities, operators, partners, members, representatives, principals, officers, directors, shareholders, agents, employees, insurers, independent contractors, heirs, trusts, beneficiaries, successors-in-interest, assigns and attorneys (including, but not limited to, Gibson Dunn & Crutcher LLP and its past, present and future partners, associates, and employees) *excluding* claims arising under or with respect to this Agreement, provided for the avoidance of doubt that the immediately preceding exclusion shall not entitle Plaintiff or any or all of Programmer Related Parties to bring a court action, suit, appeal, cause of action, arbitration, or other legal proceeding of any type, or assert any claim, against Affiliate or the AT&T Related Parties relating to any asserted duty, liability, obligation or indebtedness, known or unknown, matured or unmatured, that relates to or arose under the provisions of the Existing U-Verse Agreement. Affiliate, on behalf of itself, the Defendants in the Litigation, the AT&T Related Parties, and their respective Representatives hereby waives, releases and forever forgives any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which exist or have accrued prior to the Effective Date of this Agreement, which Affiliate, the AT&T Related Parties, and their respective Representatives, or any of them, has or might have (including, but not limited to, those claims that relate to, consist of, or comprise any of the allegations asserted by any Programmer Related Party against any AT&T Related Party in the Litigation or elsewhere) against Programmer, the Programmer Related Parties, and their respective Representatives, or any of them, and all of their respective past, present and future parent entities, direct or indirect subsidiaries, affiliates, divisions, facilities, operators, partners, members, representatives, principals, officers, directors, shareholders, agents, employees, insurers, independent contractors, heirs, trusts, beneficiaries, successors-in-interest, assigns and attorneys (including, but not limited to, Miller Barondess LLP and its past, present and future partners, associates, and employees) *excluding* claims arising under or with respect to this Agreement, provided for the avoidance of doubt that the immediately preceding exclusion shall not entitle Affiliate or the AT&T Related Parties to bring a court action, suit, appeal, cause of action, arbitration, or other legal proceeding of any type, or assert any claim, against Plaintiff or the Programmer Related Parties relating to any asserted duty, liability, obligation or indebtedness, known or unknown, matured or unmatured, that relates to or arose under the provisions (including the most favored nations clause) of the Existing U-Verse Agreement. By way of example, as part of an MFN audit under Section 4.5, if Affiliate discovers it was entitled to a more favorable provision under the Existing U-verse Agreement, Affiliate shall have no claims for Programmer's failure to provide such more favorable provision at any time prior to the Effective Date.  The Parties intend that this mutual release and waiver will be construed and applied as broadly as possible.





EXECUTION VERSION



27. <u>Separate Entities.</u>  No officer, employee, agent, representative, or independent contractor of either Party hereto or their respective Affiliated Companies shall at any time be deemed to be an employee, representative, or agent of the other Party for any purpose whatsoever, and the Parties shall use commercially reasonable efforts to prevent any such misrepresentation.  Nothing in this Agreement shall be deemed to create any joint venture, partnership or principal-agent relationship between Programmer and Affiliate, and neither Party shall hold itself out in its advertising or in any other manner which would indicate any such relationship. Notwithstanding anything to the contrary in this Agreement, it is expressly understood and agreed by the Parties that each and every representation, undertaking and agreement made in this Agreement on the part of any of the Parties to this Agreement was not made nor intended to be made as a personal representation, undertaking or agreement on the part of any individual, incorporator, stockholder, director, officer or partner, past, present or future, or any of them, all of which recourse, whether in common law, in equity, by statute or otherwise, is hereby forever waived and released.



CONFIDENTIAL AND PROPRIETARY INFORMATION

CONFIDENTIAL AND PROPRIETARY INFORMATION

IN WITNESS WHEREOF, the undersigned parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

DIRECTV, LLC

By: _____

Name:  Robert D. Thun
Title:   SVP, Content & Programming
Date:   March 9, 2017


AT&T SERVICES, INC.

By: _____

Name:  Robert D. Thun
Title:   SVP, Content & Progarmming
Date:   March 9, 2017


PROGRAMMER

By: _____

Name:  Robert Herring
Title:   CEO
Date:

march 9, 2-17
8: p.m.

<u>EXHIBIT A</u>
(See Section 1.3)



EXHIBIT A-1
*(See Section 1.3.1)*





















EXHIBIT B



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

EXHIBIT C



<u>EXHIBIT D</u>

