# Exhibit P

**VedderPrice**

Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
veligerprice.com

February 2, 2022

Blaine C. Kimrey
Shareholder
+1 312 609 7865
bkimrey@vedderprice.com

**VIA EMAIL AND FEDERAL EXPRESS**

Joseph Tocco, Esq.
Senior Vice President & Assistant
General Counsel
AT&T Services, Inc.
208 South Akard Street
Dallas, TX 75202
Joseph.Tocco@att.com

**Re:    OAN response to your January 21, 2022 letter**

Dear Mr. Tocco:

As we discussed Friday, Vedder Price P.C. represents Herring Networks, Inc., d/b/a One America News Network ("Herring Networks" or "OAN"), in connection with your January 21, 2022 letter on behalf of AT&T Services, Inc. (collectively, with AT&T, Inc., "AT&T").  While this letter does address the allegedly defamatory statements made by Dan Ball and Robert Herring on the January 17 and 20, 2022 broadcasts, respectively, it also highlights the ways in which AT&T has breached the Affiliation Agreement entered into by DIRECTV, LLC, AT&T Services, Inc., and Herring Networks, Inc. on March 9, 2017 (the "Agreement").

Herring Networks and AT&T have been in business together since June 2006, when AT&T began distributing A Wealth of Entertainment ("AWE") on U-verse.  At the urging of AT&T (which wanted to compete with Fox News Network with its own conservative-leaning network), Herring Networks launched OAN in 2013.  While AT&T was initially going to take an equity stake in Herring Networks to ensure that OAN was carried on DIRECTV (pursuant to a Put-Right Agreement between AT&T and DIRECTV), the parties eventually entered into a Network Affiliation Agreement on April 10, 2014.  AT&T announced its plan to acquire DIRECTV shortly thereafter and enlisted OAN's help to ensure that the Federal Communications Commission ("FCC") approved the acquisition.  OAN obliged AT&T by, among other things, hiring a lobbyist, meeting with FCC officials, and signing filings in support of the acquisition that were ghostwritten by AT&T.  In exchange, AT&T promised to air OAN and AWE on U-verse and DIRECTV.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, and Vedder Price Pte. Ltd., which operates in Singapore.

Joseph Tocco, Esq.
February 2, 2022
Page 2

But when the FCC approved AT&T's acquisition of DIRECTV in July of 2015, AT&T and DIRECTV did not hold up their end of the bargain, forcing OAN to file suit.  The Agreement reflected a settlement reached in the litigation, which further expanded the business relationship between AT&T and OAN and created a business relationship between DIRECTV and OAN.  The Agreement demonstrates AT&T's desire for OAN to compete with Fox News Network, providing that OAN's programming was "designed to have broad appeal with special interest to viewers interested in independent and conservative political thought."  *See* Ex. A of the Agreement.

Since that time, OAN has grown substantially, thereby directly benefiting AT&T and DIRECTV.  Despite OAN's high performance and compliance with the Agreement for years, ***AT&T and DIRECTV began breaching the Agreement as early as April 2020*** when AT&T Related Parties (as defined in the Agreement) began making disparaging remarks against OAN.  AT&T and DIRECTV then further breached the Agreement in January 2022 when they divulged confidential information about the Agreement (and the renewal negotiations taking place) on social media platforms and to news outlets, including Bloomberg News.  The allegedly defamatory statements at issue in your letter then followed, although, as highlighted below, these statements do not defame or disparage AT&T.  Rather, many of the statements made by OAN (which were omitted from your letter) were complimentary of AT&T.

While AT&T's purported claims against OAN fail, OAN has strong claims against AT&T for its breaches of the Agreement.  Nonetheless, we are interested in discussing the possibility of an amicable business resolution given the overall success of OAN and AT&T's business relationship over the years.  To that end, in a show of good faith, the January 17 and 20, 2022 broadcasts have been removed from all OAN-controlled platforms.

I.      **The statements in AT&T's letter are not defamatory.**

The allegedly defamatory statements in your letter fall into two categories: (1) those relating to the non-renewal of OAN and (2) those relating to "everybody's [] dirty little sins and secrets" and whether William Kennard, Chairman of AT&T's Board of Directors, has any of his own to be exposed.  None of the statements in either category gives rise to an actionable defamation claim. OAN thus rejects AT&T's demand for retraction and an apology.

As you correctly write in your letter, "The First Amendment protects speech by the news media." Indeed, "where a media defendant is involved, a statement on matters of public concern must be provable as false before liability can be assessed, thus ensuring full constitutional protection for a statement of opinion having no provably false factual connotation."  *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 2 (1990) (internal citation omitted).  While you claim to find OAN's broadcasts "appalling" and "repulsive," they are nonetheless protected because of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Joseph Tocco, Esq.
February 2, 2022
Page 3


As you also correctly noted, AT&T would have the burden of proving that the allegedly defamatory statements were published with "actual malice" — i.e., "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not."  *Id.* at 280.  OAN is confident that AT&T would not be able to carry its burden by clear and convincing evidence (which is the applicable evidentiary standard).

## A.     The statements relating to non-renewal of OAN are not defamatory.

Regarding the first category of allegedly defamatory statements, your letter focuses on Dan Ball's stating in the January 17 broadcast that Mr. Kennard pressured DIRECTV to drop OAN from its lineup.  You also object that, in the January 20 broadcast, Robert Herring asserted that Mr. Kennard had communicated with Mr. Herring or OAN that Mr. Kennard and the AT&T Board of Directors no longer wanted to carry OAN, thereby "impl[ying] that Mr. Kennard and the AT&T Board of Directors play a role in and have authority over DIRECTV's decisions regarding its channel lineup and that the AT&T Board of Directors (including Mr. Kennard) control the business decisions by DIRECTV's management."

These statements cannot give rise an actionable defamation claim because OAN has **at least** the following elemental challenges and/or defenses available to it:

- **Truth/substantial truth:** AT&T's assertions of falsity do not withstand scrutiny, given that it is true that DIRECTV decided to not renew the Agreement with OAN, that AT&T is the majority owner of DIRECTV with a 70% equity stake in the company, and that Mr. Kennard is on the AT&T Board of Directors.  Further, Mr. Kennard serves on AT&T's public policy and corporate reputation committee, which has "the authority to review AT&T's management of its brands to ensure that the value and reputation of the Company's brand names is maintained and enhanced."  *See* Public Policy and Corporate Reputation Committee of the Board of Directors of AT&T Inc. Charter.  Accordingly, it is highly probable that the committee, including Mr. Kennard, provided input on how to respond to the calls to non-renew OAN in an attempt to burnish AT&T's reputation, thus leading to the non-renewal decision. As such, many of the statements at issue are not defamatory because they are true or substantially true.  *See, e.g., Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991) ("As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if she cannot 'justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.'"); *Vice v. Kasprzak*, 318 S.W.3d 1, 18 (Tex. App. 2009) ("If the article correctly conveys the story's gist but relayed certain details incorrectly, the article will be considered substantially true.").

- **Opinion:** Several of the statements are nonactionable opinions on matters of public concern, which are "[a]t the heart of the First Amendment."  *Hustler Mag.,*

Joseph Tocco, Esq.
February 2, 2022
Page 4

> *Inc. v. Falwell*, 485 U.S. 46, 50 (1988).  Specifically, it is the opinion of OAN that AT&T (and Mr. Kennard specifically) had a role in DIRECTV's decision to not renew the Agreement with OAN.  This is not a far-fetched opinion given that AT&T is the majority owner of DIRECTV and that AT&T had received calls by individuals, entities, and even the government to either drop OAN or explain its reason for carrying OAN (because they also think that AT&T has a role in DIRECTV's carriage decisions).

- **Statements not injurious to AT&T:** The statements have not injured AT&T or its Board of Directors, which is a required element to state a claim for defamation.  Conversely, AT&T has received positive press since the announcement of the decision to not renew the Agreement (while, on the other hand, OAN has been irreparably harmed).  *Compare* October 6, 2021 NAACP Press Release *with* January 15, 2022 NAACP Press Release.

- **Lack of actual malice:** AT&T will not be able to adequately plead, much less prove clearly and convincingly with admissible evidence, that OAN acted with actual malice (or even a lesser *mens rea*).  AT&T's threadbare denials that it does not control DIRECTV's carriage decisions fail to alter this analysis.  The Supreme Court has held that "the press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'"  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 n.37 (1989).

**B.    The statements relating to "dirty little sins and secrets" of the general public, including Mr. Kennard, are not defamatory.**

The second category of allegedly defamatory statements fares no better than the first.  Your letter focuses on the following statements made in the January 17, 2022 broadcast by Dan Ball:

> If you have any dirt on Mr. Kennard, I'd love to see it and put it on this program.  You bring me concrete evidence of whatever it may be: cheating on his taxes, cheating on his wife, saying racial slurs against white people.  Folks do that.  Whatever it may be.  Find it for me.  Bring it, and we will air it.  Everybody's got dirty little sins and secrets they're hiding and this man deserves to have his exposed for what he is doing to not only this network, the owners, the hundreds of employees, but you, the viewers, who want a fair and honest and truthful voice….

But none of these statements gives rise to an actionable defamation claim either because OAN has ***at least*** the following elemental challenges and/or defenses available to it:

Joseph Tocco, Esq.
February 2, 2022
Page 5

- **Statements incapable of defamatory meaning:** The statements at issue are not capable of defamatory meaning.  At least one of the statements involves rhetoric or hyperbole, and when the statements are perceived as a whole, no reasonable person would think that Mr. Ball claimed as a matter of fact that Mr. Kennard had cheated on his taxes or his wife or had said racial slurs.  *See Milkovich*, 497 U.S. at 2 (internal citation omitted) ("[S]tatements that cannot reasonably be interpreted as stating actual facts about an individual are protected, assuring that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation."); *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 202 (Tex. App. 2017) ("[A] communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts a person's feelings, is not actionable.").  Moreover, the request to find and disclose any secrets that Mr. Kennard may have is not a statement of fact, but a request which is not defamatory.  *See, e.g, Vice*, 318 S.W.3d at 22.

- **Statements not injurious to AT&T:** The statements have not injured AT&T or its Board of Directors, including Mr. Kennard, which is a required element to state a claim for defamation.

An omission of any argument from this letter is not intended to be, and should not be considered, an acknowledgment of the factual or legal basis for any allegation.  OAN expressly denies that AT&T has any cognizable claim against OAN for defamation (or any other related cause of action).

Further, nothing set forth in this letter, nor my silence as to anything in your letter, constitutes, or should be construed as, a waiver of any rights, remedies, claims or defenses at law or in equity available to OAN or anyone associated with OAN (including, but not limited to, the ability to recover attorneys' fees and costs under anti-SLAPP or similar laws).  OAN reserves all rights.

## II.   Conversely, AT&T has breached the non-disparagement provision of the Agreement.

While the statements at issue in your letter are not defamatory or disparaging, AT&T has disparaged OAN in breach of the Agreement.

The Agreement contains a non-disparagement provision that provides, in relevant part:

> [T]he Parties, the AT&T Related Parties, the Programmer Related Parties, and their respective Representatives during the Term of this Agreement and for two (2) years thereafter, shall not directly or indirectly (or encourage, suggest or organize any other individual, entity or third party or their Representatives to) (1) disparage (including, without limitation, via the Services, blogging, social media, press

Joseph Tocco, Esq.
February 2, 2022
Page 6

interviews and/or any public statement) the other Party, the Programmer Related
Parties, the AT&T Related Parties, and/or their respective Representatives . . .

Agreement § 16.3.  "AT&T Related Parties" is defined broadly to include AT&T and DIRECTV
"and all of their current, then-current and former members of the Board of Directors, officers,
representatives, agents, employees, attorneys, parent companies, subsidiaries, insurers,
partners, predecessors, contractors, successors and assigns including, but not limited to, AT&T
Inc., DIRECTV, LLC, AT&T Services, Inc. and AT&T Mobility LLC."  §§ 16.1.1, 16.1.3.

As such, the non-disparagement provision extends to networks such as HBO and CNN (which
are both owned by AT&T) and their representatives, agents, and employees.

In an October 10, 2021 episode of HBO's *Last Week Tonight with John Oliver*, the host stated,
"AT&T is still technically our business daddy, making OAN our business step-sibling — and not
in a hot way."  CNN employees have similarly confirmed that AT&T is the parent company of
CNN.

With this in mind, AT&T began breaching the non-disparagement provision of the Agreement **as
early as April 5, 2020** when HBO's *Last Week Tonight with John Oliver* dedicated an entire
segment to OAN.  Host John Oliver made the following comments about OAN during the
segment:

- "The whole selling point for OAN is that they are Fox News with even less shame
  and even fewer scruples."

- "And I know that it is easy to dismiss OAN as just a stupid, little watched, borderline
  self-parody.  The problem is if we're learning one thing right now it's that toxic
  things that start small can get big fast and it's dangerous to ignore them."

- "OAN's weird compilation of far right-wing talking points and dirt stupid reporting is
  incredibly dangerous at a time like this."

- "It is more important than ever to be on the lookout for OAN's bullshit and to make
  sure no one that you know is falling for it either."

Oliver doubled down in his October 10, 2021 episode, referring to OAN as a "ragtag band of
fascists" and stating that "with [AT&T's] help, OAN has grown into the toxic network that is today
— one that's happy to give a platform to batshit election fraud theories from America's most out-
of-breath pillow fetishist."

Around that same time, CNN began its disparagement attack on OAN.  For example, on October
6, 2021, CNN anchor Don Lemon stated that OAN is "corrosive to our democracy" and CNN
media reporter Oliver Darcy referred to OAN as a "far right-wing conspiracy channel" that
"promotes all sorts of nonsense."  The next day when appearing on CNN's *New Day*, CNN chief

Joseph Tocco, Esq.
February 2, 2022
Page 7


media correspondent Brian Stelter called OAN "conspiracy laden" and accused OAN of putting "some of the worst of the worst content out there."  He went even further to state that "there's a difference between real news and conspiracy crap. . . .  [OAN] goes on the air and lies to people who for some reason want the lies."

The above are mere examples of the ways in which AT&T has breached the non-disparagement provision of the Agreement.  OAN demands that AT&T cease and desist from further violations of the non-disparagement provision and reserves all rights in this regard.

**III.   AT&T and DIRECTV have otherwise breached the Agreement by making public statements regarding the Agreement and its non-renewal.**

The Agreement also contains a confidentiality provision, which provides, in relevant part:

> **The Parties agree that all terms and provisions of this Agreement** (as well as all data, summaries, reports or information of all kinds, whether oral or written, acquired or devised or developed in any manner from the other Party (and/or the Programmer Related Parties or the AT&T Related Parties, as applicable, and/or their respective Representatives), or any proprietary or subscriber information, provided by one Party (and/or the Programmer Related Parties or the AT&T Related Parties, as applicable, and/or their respective Representatives) to the other Party), **its negotiation, and any discussions or agreements related thereto, as well as information, testimony, documents or other data related to or concerning the Litigation**, or provided and/or obtained in discovery in the Litigation (together, the "Confidential Information") **shall be held strictly confidential by the Parties**, the Programmer Related Parties, the AT&T Related Parties, and their respective Representatives.

Agreement § 16.2 (emphasis added).

But neither AT&T nor DIRECTV have kept the information and discussions about the Agreement confidential.  Instead, on October 6, 2021 — the same day that the Reuters Special Report titled *How AT&T helped build far-right One America News* — AT&T released the following statement, providing confidential information on how the Agreement came to be (and implying that it only carried OAN because OAN forced its hand by filing suit):

Joseph Tocco, Esq.
February 2, 2022
Page 8



> AT&T has never had a financial interest in OAN's success and does not 'fund' OAN.  When AT&T acquired DIRECTV, we refused to carry OAN on that platform, and OAN sued DIRECTV as a result.  Four years ago, DIRECTV reached a commercial carriage agreement with OAN, as it has with hundreds of other channels and as OAN has done with the other TV providers that carry its programming.  DIRECTV offers a wide variety of programming, including many news channels that offer a variety of viewpoints, but it does not dictate or control programming on the channels. Any suggestion otherwise is wrong. The decision of whether to renew the carriage agreement upon its expiration will be up to DIRECTV, which is now a separate company outside of AT&T.

Thereafter, on January 14, 2022 — the same day that OAN was informed via telephone by Rob Thun, Chief Content Officer at DIRECTV, that the Agreement would not be renewed — an article titled *DirecTV to Drop One America News in Blow to Conservative Chanel* was released by Bloomberg News.  DIRECTV provided confidential information regarding the parties' discussions on the non-renewal of the Agreement to Bloomberg, writing via email that it had "informed Herring Networks that, following a routine internal review, we do not plan to enter into a new contract when our current agreement expires."  DIRECTV has since provided similar statements to other media outlets.

The Bloomberg News article also said that a "personal familiar with the matter" told Bloomberg that the Agreement expires in April.  OAN can only assume that this information came from someone at DIRECTV or AT&T given that the termination date of the Agreement was confidential and thus unknown to non-parties.

OAN demands that AT&T cease and desist from further violations of the confidentiality provision of the Agreement and reserves all rights in this regard.

**IV.   AT&T and Mr. Kennard have tortiously interfered with the Affiliation Agreement.**

To state a claim for intentional interference with contractual relations, a plaintiff must sufficiently allege the following: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  Interference with a contractual relationship may be actionable even where the contract is terminated according to its terms.  *Id*. ("The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or

Joseph Tocco, Esq.
February 2, 2022
Page 9

relationship so disrupted, whether it is written or oral, enforceable or not enforceable.").  OAN can easily satisfy each element.

The Agreement is a valid contract, and while AT&T Services, Inc. was a party at the time of its execution, it claims that it has since assigned its rights under the Agreement to DIRECTV.  AT&T, Inc. and Mr. Kennard have never been parties to the Agreement.  As highlighted above, DIRECTV's non-renewal decision was induced by and attributable to AT&T (the majority owner of DIRECTV) and Mr. Kennard (Chairman of AT&T's Board of Directors).

AT&T has received numerous calls by individuals, entities, and even the government to either drop OAN or explain its reason for carrying OAN, and part of Mr. Kennard's role involves "ensur[ing] that the value and reputation of [AT&T's] brand names is maintained and enhanced." Indeed, the non-renewal decision came only two months after Reuters' *How AT&T helped build far-right One America News* was released, and during that time, many attacked AT&T's reputation for its connection to OAN.  *See, e.g.,* MoveOn.org Petition to AT&T and CEO John T. Stankey titled *AT&T: Drop white supremacist propaganda One America News from DirecTV!* ("AT&T is fueling attacks on our democracy by propping up and enabling white supremacy propaganda and conspiracy theory network OAN…..").  OAN had received no indication that the Agreement might not be renewed before it was informed of the non-renewal decision, and, in fact, all indications by AT&T and DirectTV had been to the contrary (giving rise to other potential claims by OAN against AT&T and DIRECTV, including but not limited to negligent misrepresentation, intentional misrepresentation, fraudulent inducement, promissory estoppel, and breach of the covenant of good faith and fair dealing).

Lastly, given Mr. Herring's testimony in a separate action that monies paid to Herring Networks by AT&T account for 90% of Herring Networks' income, and an accountant's testimony that the network would be worth "zero" without the Agreement, damages would be easily provable. **In fact, if AT&T does not address and reverse its unlawful conduct against OAN in the very near future, damage to OAN will exceed $1 billion.**

## V.      Request for information pursuant to the Texas Defamation Mitigation Act ("DMA"), Tex. Civ. Prac. & Rem. Code §§ 73.051-73.062

Your letter invoked the DMA.  *See* p. 4 ("OANN has a limited amount of time to publish a retraction in a manner that is substantially as conspicuous as the manner in which it published the original error.  *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 73.057….").

The DMA provides:

> A person who has been requested to make a correction, clarification, or retraction may ask the person making the request to provide reasonably available information regarding the falsity of the allegedly defamatory statement not later than the 30th day after the date the person receives the request.  Any information

Joseph Tocco, Esq.
February 2, 2022
Page 10

requested under this section must be provided by the person seeking the correction, clarification, or retraction not later than the 30th day after the date the person receives the request.

§ 73.056(a).  Pursuant to the DMA, OAN is therefore entitled to information regarding the falsity of the allegedly defamatory statements in your letter within thirty (30) days (i.e. by March 2, 2022).  Accordingly, OAN requests the following by March 2, 2022:

(1) All external and internal AT&T communications (in any way recorded, including but not limited to hard-copy or digital writing, audio recording, or video recording) about complaints to AT&T and/or DIRECTV about OAN, including but not limited to requests that AT&T and/or DIRECTV drop OAN from carriage via DIRECTV.

(2) All external and internal communications (in any way recorded, including but not limited to hard-copy or digital writing, audio recording, or video recording) in AT&T's possession, custody, or control by Mr. Kennard about OAN or anyone associated with OAN, including but not limited to Mr. Ball or Mr. Herring.

(3) All information and communications (in any way recorded, including but not limited to hard-copy or digital writing, audio recording, or video recording) in AT&T's possession, custody, or control about Mr. Kennard's relationship with Staple Street Capital LLC, including but not limited to the nature and duration of his service on the board of directors of Staple Street Capital LLC and any ownership interest held by Staple Street Capital LLC in any Dominion Voting Systems entity and/or any Sequoia Voting Systems entity.

(4) All documents and communications (in any way recorded, including but not limited to hard-copy or digital writing, audio recording, or video recording) memorializing the assignment of AT&T's rights under the Agreement to DIRECTV.

(5) All internal and external AT&T communications (in any way recorded, including but not limited to hard-copy or digital writing, audio recording, or video recording) about reporting by OAN about DIRECTV's non-renewal of the carriage agreement, AT&T's ownership interest in and/or control over DIRECTV, Mr. Kennard's role in non-renewal of OAN, and the AT&T board of directors' role in non-renewal of OAN.

(6) Mr. Kennards' AT&T human resources file.

(7) All information and communications (in any way recorded, including but not limited to hard-copy or digital writing, audio recording, or video recording) in AT&T's possession, custody, or control supporting the allegations in your January 21, 2022 letter, including but not limited to any evidence of falsity or defamatory meaning of any statements made by Mr. Ball, Mr. Herring, or anyone else associated with OAN allegedly "of and concerning" AT&T.

Joseph Tocco, Esq.
February 2, 2022
Page 11


Subject to the above, OAN remains interested in discussing the possibility of an amicable business resolution.  I can be reached at the above number and email to discuss further.

Sincerely,

Blaine C. Kimrey

cc:   Bryan Clark (bclark@vedderprice.com)
      Brian Ledebuhr (bledebuhr@vedderprice.com)
      Jeanah Park (jpark@vedderprice.com)