**MCRAE EXHIBIT 2**

DATE: 01/13/2023  TIME: 10:30:00 AM  DEPT: C-64

JUDICIAL OFFICER PRESIDING: John S. Meyer
CLERK: Herlinda Chavarin
REPORTER/ERM: Candace Khorouzan CSR# 11579
BAILIFF/COURT ATTENDANT: S. Green

CASE NO: **37-2022-00008623-CU-BC-CTL**  CASE INIT.DATE: 03/07/2022
CASE TITLE: **Herring Networks Inc vs AT&T Inc [EFILE]**
CASE CATEGORY: Civil - Unlimited  CASE TYPE: Breach of Contract/Warranty

**EVENT TYPE**: SLAPP / SLAPPback Motion Hearing

**EVENT TYPE**: Demurrer / Motion to Strike

**APPEARANCES**
Rollin A Ransom, counsel, present for Defendant,Plaintiff(s).
Eric P Early, counsel, present for Plaintiff(s).
MARCELLUS A MCRAE, counsel, present for Defendant(s).
Stephen C Grebing, counsel, present for Defendant(s).
William B Monahan, counsel, present for Defendant(s).
Peter Scott, counsel, present for Plaintiff
Jeremy Gray, counsel, present for Plaintiff

All parties submit(s) on the Court's tentative ruling.

The Court CONFIRMS the tentative ruling as follows:

Defendant DIRECTV LLC's anti-SLAPP motion to strike Plaintiff Herring Networks Inc.'s complaint is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

DIRECTV's demurrer to the complaint is **OVERRULED** as to the single claim for breach of contract that survives the anti-SLAPP motion.

**Anti-SLAPP**

"Litigation of an anti-SLAPP motion involves a two-step process. First, the moving defendant bears the burden of establishing that the challenged allegations or claims 'arise from' protected activity in which the defendant has engaged. Second, for each claim that does arise from protected activity, the plaintiff

must show the claim has at least 'minimal merit.' If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) Courts "should analyze each claim for relief-each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action-to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Id.* at p. 1010.)

Step One – Arising from Protected Activity

For the first step, "courts are to consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability. The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

There are four causes of action alleged against DIRECTV: (1) breach of contract – confidentiality; (2) breach of the covenant of good faith and fair dealing; (3) violation of the UCL – unlawfulness; and (4) violation of the UCL – unfairness.

The breach of contract claim is based on a confidentiality provision in the Affiliation Agreement. Herring alleges that DIRECTV breached that provision by (1) informing Bloomberg News that it did not intend to enter into a new contract with Herring after the current Affiliation Agreement expired, and (2) informing Bloomberg News that the current Affiliation Agreement was set to expire in April 2022. The statements were allegedly given following OAN's coverage of the 2020 election and outcry among several liberal organizations about its carriage through DIRECTV. Bloomberg utilized the alleged statements by DIRECTV in an article it published on its website. After the article was published, Herring was flooded with emails and other communications from viewers expressing their dismay that they would no longer be able to watch OAN (which allegedly "delivers timely national and international news 24 hours a day" and "features political analysis programming, political talk shows, and special documentary-style reports" that are "matters of great public concern") through DIRECTV (allegedly the country's largest paid satellite TV provider). In other words, the conduct constituting the alleged breach are statements provided to a major news organization, concerning the availability of a political news station through a nationwide TV provider, which were given in the face of mounting political pressure and with knowledge that the statement/information provided would likely be included in a widespread media publication, and that was of significant interest to conservatives and liberal alike. This claim therefore arises from protected activity because DIRECTV's ongoing carriage of a popular (among the right) and controversial (among the left) political news station covering hot button issues is a matter of public interest, and DIRECTV's alleged statements to Bloomberg News contributed to the public discussion of that issue. (See Code Civ. Proc., § 425.16, subd. (e)(4); *Bishop v. Bishop's School* (2022) __ Cal.App.5th __ [2022 WL 17828330 at *8]; *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.)

The breach of the implied covenant of good faith and fair dealing claim is based on alleged duties "inherent in the Affiliation Agreement" and DIRECTV's alleged "interfere[nce] with Herring's rights to receive the benefits of the Advertising Agreement." Herring alleges that DIRECTV violated those duties and interfered with those rights by not renewing the Affiliation Agreement and continuing carriage of OAN and AWE for at least another two years (throughout the duration of the Advertising Agreement). In other words, the conduct constituting the alleged breach is DIRECTV's refusal to continue broadcasting Herring's political news stations. "There is a protected free speech right to report the news." (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 101.) There is also a protected free speech right to <u>not</u> report certain news. (See

*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 487–488; *Turner Broadcasting System, Inc. v. F.C.C.* (1994) 512 U.S. 622, 641–642.) This claim therefore arises from protected activity because DIRECTV is a media company that carries news stations with coverage of nationwide politics, and its decisions as to what specific stations it will or will not contract with for carriage is conduct in furtherance of its constitutional right of free speech in connection with issues of public interest. (See Code Civ. Proc., § 425.16, subd. (e)(4); *San Diegans for Open Government*, supra, 13 Cal.App.5th at pp. 105–106.)

The UCL claims are derivative and based on the same alleged conduct underlying the breach of contract claim and breach of the implied covenant claim. The UCL claims there also both arise from protected activity. (See *Healthsmart Pacific Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 427–430.)

Accordingly, all of the claims against DIRECTV arise from its protected activity.

Step Two – Minimal Merit

The second step is "a summary-judgment-like procedure. The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.) The "plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 36.) Declarations that are "argumentative, speculative, impermissible opinion, hearsay, or conclusory" are insufficient. (*Neurelis, Inc. v. Aquestive Therapeutics Inc.* (2021) 71 Cal.App.5th 769, 804.)

As to the breach of contract claim premised on DIRECTV informing Bloomberg News that it did not intend to enter into a new contract with Herring after the current Affiliation Agreement expired, the confidentiality provision only covered "all terms and provisions of <u>this Agreement</u> . . . [and] <u>its</u> negotiation, and any discussions, or agreements related thereto." (Emphasis added.) The plain meaning of the emphasized language refers to the 2017 Affiliation Agreement that the parties executed. Nothing in the confidentiality provision covers <u>different</u> agreements that the parties may or may not enter in the future. Herring did not submit any evidence or provide any argument as to how the confidentiality provision could be reasonably interpreted to encompass this disclosure. (See *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) The motion to strike this claim is therefore granted.

As to the breach of contract claim premised on DIRECTV informing Bloomberg News that the current Affiliation Agreement was set to expire in April 2022, DIRECTV argues that there is no evidence it (as opposed to someone else, such as Herring or AT&T) disclosed the April date. However, in addition to submitting evidence that the date was not leaked by Herring itself, Herring submitted an email from a DIRECTV executive to the company's board members indicating that the DIRECTV PR team had informed Bloomberg News that it would not be renewing the Affiliation Agreement, the stated reason for that decision, <u>and that the company "would be honoring the existing agreement which means the channel will be up until the April timeframe</u>." This email is prima facie evidence that the disclosure of the April date to Bloomberg News originated from DIRECTV. DIRECTV argues that there is no evidence that breach caused Herring any lost advertising revenue or business opportunities, but even if that were true, Herring would be entitled to at least recover nominal damages for the breach. (See *Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965–968; *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 275; CACI 360; Comp. at 26:1 [praying for compensatory "and other damages"].) Finally, Herring argues that any damages would be precluded by a limitation of liability provision in the Affiliation Agreement, Section 8.5. However, that section does not limit liability for <u>all</u>

damages, but rather only limits liability for "special, lost profits, incidental, punitive, consequential or similar damages, (including, without limitation, loss of profits or revenues, or damages to or loss of personal property)."  Absent is any limitation of liability for nominal damages, which are not "similar" to the types of damages listed and serve a different purpose-symbolic vindication as opposed to monetary compensation. (See *Price v. McComish* (1937) 22 Cal.App.2d 92, 100 [nominal damages "are given not as an equivalent for the wrong but in recognition of a technical injury"].)  The motion to strike this claim is therefore denied.

As to the breach of the implied covenant claim, to the extent it is based on the non-renewal of the Affiliation Agreement, the claim fails because the agreement contains a fixed expiration date and no provision entitling Herring to a renewal. (See *Pasadena Live LLC v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1094 ["The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract"].)  To the extent it is based on the Advertising Agreement, the claim fails because DIRECTV is not a party to that agreement. (See *Austero v. National Cas. Co.* (1976) 62 Cal.App.3d 511, 515 ["one who is not a party to the underlying contract may not be held liable for breach of an implied covenant of good faith and fair dealing for as to him no such implied covenant exists"]; *Pasadena Live*, *supra*, 114 Cal.App.4th at p. 1093 [implied covenant imposes duties upon "each contracting party"].)  The motion to strike this claim is therefore granted.

Finally, as noted above, the UCL claims are derivative.  To the extent the UCL claims are premised on the stricken breach of contract and breach of implied covenant claims, they are stricken for the same reasons.  (See *Medical Marijuana Inc. v. PRojectCBD.com* (2020) 46 Cal.App.5th 869, 896.)

The issue becomes whether the breach of contract claim premised on DIRECTV informing Bloomberg News that the current Affiliation Agreement was set to expire in April 2022 can support the UCL unlawfulness and unfairness claims.  "A breach of contract may form the predicate for Section 17200 claims, <u>provided it also constitutes conduct that is unlawful, or unfair</u>." (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 645, emphasis in original; but see *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 135 ["[W]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks"].)

As to the UCL – unlawfulness claim, a "violation of another law is a predicate for stating a cause of action." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 610.)  "Virtually any law-federal, state or local-can serve as a predicate." (*Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185.)  However, the plaintiff must in fact point to such a law and cannot rest solely on an allegation that the defendant breached its own "contractual promise."  (See *id.* at pp. 1185–1186.)  Here, Herring has not identified any statute that DIRECTV violated by disclosing the expiration date or otherwise shown how that alleged breach was "unlawful."  The motion to strike this claim is therefore granted.

As to the UCL – unfairness claim, the Fourth District Court of Appeal, Division One, has consistently held that "a plaintiff alleging an unfair business practice must show the defendant's conduct is tethered to an underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." (*Graham*, *supra*, 226 Cal.App.4th at p. 613.)  Herring fails to submit evidence showing that disclosure of the expiration date was "unfair" under this definition.  The motion to strike this claim is therefore granted.

Herring attempts to argue that it can state a UCL claim based on fraudulent conduct by DIRECTV.  The

UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200, emphasis added.) Here, however, Herring only alleged UCL claims based on the first two varieties of proscribed conduct-"unlawful" and "unfair." Herring did not allege a third UCL claim based on the third variety or proscribed conduct-"fraudulent." Nor does the complaint ever allege that DIRECTV engaged in "fraud." Herring cannot raise this new claim in an effort to overcome DIRECTV's anti-SLAPP motion. (See *Medical Marijuana*, *supra*, 46 Cal.App.5th at p. 900.)

**Demurrer**

DIRECTV argues that Herring has not adequately alleged that it breached the Affiliation Agreement by disclosing its expiration date to Bloomberg News. But the complaint alleges that the "only reasonable conclusion is that this information came from someone at DIRECTV or AT&T because the termination date of the Affiliation Agreement was confidential and thus unknown to non-parties." Notwithstanding DIRECTV's assertion that this allegation is "unsubstantiated", it must be accepted as true for purposes of a demurrer. (See *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 280 [in considering the merits of a demurrer, "the facts alleged in the pleading are deemed to be true, however improbable they may be"].)

DIRECTV argues that Herring has not alleged resulting damages. However, having adequately alleged a breach of the confidentiality provision, Herring would at a minimum be entitled to nominal damages. (See *Elation Systems*, *supra*, 71 Cal.App.5th at pp. 965–968.) An entitlement to nominal damages is sufficient to overcome a demurrer. (See *Levy v. Only Cremations for Pets, Inc.* (2020) 57 Cal.App.5th 203, 217; *Hotel & Restaurant Employees etc. Union v. Francesco's B. Inc.* (1980) 104 Cal.App.3d 962, 973; *Moody v. Peirano* (1906) 4 Cal.App. 411, 415.)

The demurrer is therefore overruled.

**Conclusion**

The anti-SLAPP motion is granted in part and denied in part. The court strikes all claims, with the exception of the breach of contract claim to the extent that claim is premised on DIRECTV disclosing the expiration date of the current Affiliation Agreement.

The demurrer to the remaining breach of contract claim is overruled.

DIRECTV shall file an answer within 10 days.

**IT IS SO ORDERED:**

_____
Judge John S. Meyer