IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| US DOMINION, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HERRING NETWORK, INC., *et al.*<br><br>Defendants | Case No. 1:21-cv-02130-CJN |

**DOMINION'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS OAN'S AMENDED COUNTERCLAIMS**

Throughout 2021, OAN faced "a drumbeat" of "reports and commentary" that "accused OAN of contributing to the events of January 6, 2021." (Am. Countercls. ¶ 60.)[1] For example, John Oliver, CNN, Bloomberg, HBO, Reuters, and conservative commentator Max Boot criticized OAN and its role in inciting the Capitol riot, opining that OAN is a "ragtag band of fascists" and a "far right-wing conspiracy channel" that "is corrosive to our democracy" and that if OAN "continue[s] to incite viewers" it "should be booted off" the air. (Am. Countercls. ¶¶ 59, 62-64.) After that outpouring of public criticism, DIRECTV, LLC chose not to renew its affiliation agreement with OAN. (*Id.* ¶ 120.) OAN now seeks to blame uninvolved third parties for ***DIRECTV***'s decision to drop OAN and to announce that decision, as well as attempts by ***AT&T Inc.*** ("AT&T") to distance itself from OAN in the wake of intense public criticism of OAN. OAN seeks to drag Dominion[2] into that dispute by baldly asserting—falsely and without a single

---

[1] "OAN" refers to Defendant Herring Network, Inc.
[2] "Dominion" refers to Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation.

1

supporting factual allegation—that William Kennard (former U.S. Ambassador to the European Union, former chairman of the Federal Communications Commission, and Chairman of AT&T) acted as Dominion's secret agent in supposedly orchestrating a vast conspiracy to destroy OAN.[3]

OAN's allegations about Kennard's connections to Dominion are false and rebutted by a document incorporated into its Amended Counterclaims. Kennard was never on any kind of "Board of Directors" for—and therefore never had any right to vote on any matters relating to the governance of—any Staple Street entity with an ownership interest in Dominion. Rather, as the biography cited in OAN's Amended Counterclaims makes clear, Kennard's position on Staple Street's "Operating Executive Board" was merely that of an "***advisor***," not a director. (Am. Countercls. p. 19 n. 4.) And OAN intentionally misrepresented Kennard's advisory role by changing the name from "Operating Executive Board" to "Operating Executive **Board of Directors**" (Am. Countercls. ¶¶ 78, 81), to give the false impression that Kennard was a director with the power to vote on matters concerning Staple Street. He was not.

But even taking OAN's false allegations as true, OAN's Counterclaims are doomed from the outset because, as a matter of settled law, directors and investors are not agents of a company by default, and OAN has pled no other factual allegations to support a finding of agency. Merely labeling someone an "agent"—as OAN has done here—is a bare legal conclusion which is not entitled to a presumption of truth. In addition, even if Kennard were an agent of Dominion (he was not), OAN's Counterclaims must be dismissed for separate and independent reasons set forth in detail below. In short, OAN's Amended Counterclaims are meritless, barely disguised

---

[3] OAN uses much of its Amended Counterclaim to attack Dominion as "professional litigants" who filed these defamation lawsuits "to destroy anyone who stood in their way" and "torch First Amendment freedoms." (Am. Countercls. ¶ 1, 5.) That is false. Dominion has no interest in "destroying" anyone. Dominion filed this lawsuit to recover damages because OAN repeatedly broadcast damaging lies about Dominion.

2

retaliation for Dominion exercising its constitutional right to petition the Court. OAN's Amended Counterclaims should be dismissed so that OAN can be held accountable without further delay or distraction.

## FACTUAL AND PROCEDURAL HISTORY

### A. OAN Defames Dominion and Dominion Sues OAN for Defamation.

After OAN repeatedly broadcast the lie that Dominion had rigged the 2020 election with a vote-flipping algorithm designed to rig elections for a Venezuelan dictator, Dominion sued OAN for defamation in this Court on August 10, 2021. OAN sought to dismiss, stay, or transfer the case under a *Colorado River* abstention theory and sought dismissal under Rule 12(b)(2). This Court denied the OAN Defendants' Motion to Dismiss on November 7, 2022.

### B. OAN Pleads a Conspiracy Theory in San Diego.

On March 7, 2022, after DIRECTV had opted not to renew its agreement with OAN following intense public criticism of OAN, OAN filed a lawsuit in San Diego Superior Court against DIRECTV, AT&T, AT&T Services, Inc., and AT&T's Board Chairman William Kennard (the "San Diego Lawsuit"). Because DIRECTV indisputably had the legal right not to renew the agreement, OAN strained to find another cause of action: it alleged that DIRECTV had breached a confidentiality provision by announcing that it was not renewing the agreement (San Diego Compl. ¶ 64-73) and that DIRECTV had somehow violated a non-disparagement obligation because John Oliver and other television personalities employed by other entities had criticized OAN on channels carried by DIRECTV (San Diego Compl. ¶ 74-82). OAN also alleged that AT&T and its chairman Kennard had tortiously interfered with OAN's business expectancy in having the agreement renewed, supposedly by engaging in a vast conspiracy with "liberal organizations" like the NAACP to get OAN kicked off the airwaves (San Diego Compl. ¶¶ 53-67). ***OAN did not name Dominion or any Staple Street entity as defendants in the San Diego***

3

*Lawsuit*. On January 13, 2023, the San Diego court dismissed the bulk of OAN's claims against DIRECTV, leaving OAN with little hope for anything more than nominal damages from DIRECTV. The San Diego court is expected to soon rule on OAN's similarly flawed claims against AT&T, AT&T Services, and Kennard.

### C. OAN Files a Third-Party Complaint / Counterclaims.

Finding little success in its San Diego Lawsuit, OAN decided to try its luck in this Court. On February 3, 2023, mere weeks after seeing the bulk of its claims against DIRECTV dismissed in San Diego, OAN filed nearly copy-and-paste Counterclaims against Dominion and a defunct entity—Staple Street Capital LLC—for the same acts alleged against Kennard in the San Diego Lawsuit. OAN also named DIRECTV, AT&T, and Kennard as Third-Party Defendants under the theory that they are obligated to indemnify OAN for defaming Dominion. After Kennard's counsel served a Rule 11 Motion for Sanctions on OAN's counsel, Defendant Christina Bobb withdrew her claims against Kennard to avoid being sanctioned, but OAN refused: on May 5, 2023, OAN filed substantially similar Third-Party Claims and Amended Counterclaims against Dominion and the defunct Staple Street entity, despite previously having been informed that the entity was defunct. Both of OAN's Amended Counterclaims against Dominion (Count 1 and Count 2) are for "tortious interference," and both are premised on the fanciful, implausible, and factually rebutted notion that while Kennard was supposedly trying to destroy OAN, he was not only acting as a secret agent for AT&T, but for Dominion and a (defunct) Staple Street entity as well.

Far from alleging any facts that could give rise to a plausible inference that Kennard was acting as Dominion's agent, OAN actually attached documents to its Amended Counterclaims that rebut that legal conclusion: a co-founder of Staple Street acknowledged in an email that Kennard had "never been involved in any decision-making or governance related to Dominion, Staple

4

Street, or any Dominion litigation" and Kennard told a reporter that he "can't speak for Dominion." Ex. J and Ex. L to Am. Countercls.

## LEGAL STANDARD

While a court must "accept the allegations of the complaint as true, and construe all facts and inferences in favor of the plaintiff" when deciding whether to dismiss a claim under Rule 12(b)(6), *In re Est. of Barfield*, 736 A.2d 991, 994 (D.C. 1999), "a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Boyd v. Chertoff*, 540 F. Supp. 2d 210, 215 (D.D.C. 2008).[4] Similarly, a court need not "accept as true a legal conclusion couched as a factual allegation," *Jenkins v. Jackson*, 538 F. Supp. 2d 31, 33 (D.D.C. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)), nor must it "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENTS AND AUTHORITIES

Both of OAN's counterclaims against Dominion must be dismissed under Rule 12(b)(6) because both depend on the bare legal conclusion, unsupported by any legally sufficient factual allegations, that Kennard was Dominion's agent. Count 1 also fails for an additional reason: OAN's conspiracy theory that Kennard supposedly orchestrated a campaign—to destroy OAN by pressuring the media and others to disparage and distance themselves from OAN—is not only legally and factually unsupported, but is actually ***rebutted*** by OAN's own factual allegations and the very documents OAN attaches to its Amended Counterclaims. And Count 2 must be dismissed

---

[4] All internal quotes and citations omitted, and all emphasis added, unless otherwise noted.

5

for the additional reason that OAN has failed to plead *facts* supporting an independent wrongful act, which is required to support a claim for interference with business expectancy.

I. **OAN Alleges No Facts to Support the Legal Conclusion That Kennard Is Dominion's Agent, Which Is Fatal to Both Causes of Action.**

OAN fails to allege any facts supporting a claim of tortious interference by Dominion itself, whether with the agreement's non-disparagement or confidentiality provisions (Count 1) or with DIRECTV's decision not to renew the agreement (Count 2).[5] Instead, both of OAN's claims against Dominion are premised on the (false) legal conclusion that Kennard tortiously interfered with OAN's agreement and business expectancy and that he did so as Dominion's "agent."[6] In support of its Kennard-as-agent theory, OAN alleges only that Kennard was a "founding investor" and "serves as a member of the Operating Executive Board of Directors of Staple Street, which is the majority owner of US Dominion, Inc." Am. Countercls. ¶¶ 78-79. Even if these allegations were true (they are not), they are insufficient to establish an agency relationship between Kennard and Dominion (or Staple Street) as a matter of law: directors are not even agents of the corporation on whose board they sit (much less agents of subsidiaries of that corporation, as OAN asserts with respect to Dominion). *See Mgmt. Techs., Inc. v. Morris*, 961 F. Supp. 640, 651 (S.D.N.Y. 1997) ("Directors are not agents of the corporation and have no authority as directors to act on its behalf."); *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) ("Directors, in

---

[5] OAN also asserts that Dominion "used governmental agencies to unlawfully censor speech" but does not bring a cause of action based on that meritless allegation. Am. Countercls. ¶ 13.

[6] *See* Am. Countercls. ¶ 154 ("Counterclaim Defendants, ***through the actions of their agent Kennard***…sought to further their goal of destroying Herring by pressuring AT&T and DIRECTV to ensure non-renewal of OAN, breaching the disparagement and confidentiality provisions of the Agreement in the process."); ¶ 155 ("As a result of the pressure imposed by Counterclaim Defendants, ***through their agent Kennard***, AT&T and DIRECTV breached the confidentiality provision of the Agreement by leaking the details of the carriage agreement in announcing non-renewal"); ¶ 156 ("as a result of the pressure imposed by Counterclaim Defendants, ***through their agent Kennard***, AT&T and its agents and affiliates breached the non-disparagement provision in the Agreement by repeatedly disparaging OAN"); ¶ 163 ("***Kennard (for the benefit of Counterclaim Defendants)*** used his influence at AT&T to persuade DIRECTV to change the status quo and non-renew the Agreement").

6

the ordinary course of their service as directors, do not act as agents of the corporation, however."). OAN's allegation that Kennard was an investor in Staple Street and that a reporter asked him about his relationship with Dominion are likewise wholly irrelevant because being an investor (let alone an investor in a different company) is also legally insufficient to render someone an agent. *See Wenske v. Blue Bell Creameries*, No. 2017-0699-JRS, 2018 WL 5994971, at \*6 n.44 (Del. Ch. Nov. 13, 2018) ("The mere ownership of the capital stock of one corporation by another does not create … the relationship of principal and agent, or representative, or alter ego between the two."); *Columbus Univ. v. Tummala*, No. 2:13-cv-5745, 2022 WL 1492167, at \*6 (C.D. Cal. Feb. 8, 2022) ("a shareholder is not an agent or representative of the corporation unless expressly or impliedly authorized as such"); *Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1270 (S.D.N.Y. 1976) ("As a general matter, the fact that a person is a shareholder does not give him authority to act for the corporation.").

Beyond the factually incorrect and legally insufficient factual allegations that Kennard invested in Staple Street and served on its "Operating Executive **Board of Directors**", OAN's allegations of "agency" consist of mere labels, not facts. *See* Am. Countercls. ¶¶ 96, 110, 127, 154-56, 169-73, and 178-79. "[A] plaintiff must plead facts that plausibly support an inference that an agency relationship existed in order to survive a Rule 12(b)(6) motion." *Jefferson v. Collins*, 905 F.Supp.2d 269, 285 (D.D.C. 2012). Merely asserting "the existence of an agency relationship is a legal conclusion, which the court need not accept unless it is supported by factual allegations." *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 31 (D.D.C. 2013); *FDS Rest., Inc. v. All Plumbing Inc.*, 241 A.3d 222, 237 (D.C. 2020) ("Whether a relationship is one of agency is a legal conclusion made after an assessment of the facts of the relationship and the application of the law of agency to those facts."); *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018)

7

("Courts evaluating a motion to dismiss must accept as true all of the complaint's factual allegations but need not do so for bare legal conclusions.").

Courts have repeatedly dismissed lawsuits like this one—where the claims depended on an agency finding but there were no facts pleaded to establish such a relationship. *See, e.g.*, *Jefferson*, 905 F. Supp. 2d at 285 (dismissing count that depended on the existence of an agency relationship where plaintiffs "advance[d] only a conclusory allegation" of agency and the complaint did "not give rise to a reasonable inference of an agency relationship."); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 112 (D.D.C. 2010) ("Because the plaintiffs have failed to adequately plead the essential element of control, their claim that the [] Defendants are liable under agency principles must be dismissed.").

In sum, OAN fails to allege any wrongdoing by Dominion itself and fails to allege any facts sufficient to support its agency theory. Standing alone, this requires dismissal of both Amended Counterclaims against Dominion (Counts 1 and 2).

## II. OAN Fails to Plead a Plausible Theory of Dominion Tortiously Interfering with Others' Contractual Non-Disparagement Obligation to OAN (Count 1).

In Count 1, OAN alleges that Dominion (wholly through Kennard-as-agent) interfered with the non-disparagement provision and the confidentiality provision of OAN's agreement with DIRECTV. *See, e.g.*, Am. Countercls. ¶ 115. Specifically, OAN alleges that "from April 2020 through mid-2021, AT&T Services' representatives openly disparaged OAN through CNN and HBO, which AT&T at the time owned via its WarnerMedia division." Am. Countercls. ¶ 56.[7] OAN lists examples such as CNN anchors calling OAN a "poisoned informational well," and John

---

[7] It is not entirely clear from the Amended Counterclaims whether OAN is alleging that Dominion is liable for the supposed breaches of the Agreement by AT&T Services. But as OAN has devoted multiple pages of both its original and Amended Counterclaims to this theory, Dominion addresses its flaws in an abundance of caution.

8

Oliver's description of OAN as "Fox News with even less shame and even fewer scruples." Am. Countercls. ¶¶ 57, 61. OAN asserts that Dominion and Staple Street are somehow responsible for John Oliver making fun of OAN on the air because "through the actions of their agent Kennard…[they] sought to further their goal of destroying [OAN] by pressuring AT&T and DIRECTV to ensure non-renewal of OAN, breaching the disparagement … provision[]." Am. Countercls. ¶ 115. This facially ridiculous and implausible theory is doomed for at least two separate reasons.

*First*, OAN fails to tie Dominion to this claim even under the "Kennard-as-agent" theory. OAN details how various television personalities criticized OAN, including for its role in inciting the Capitol riot on January 6th. Am. Countercls. ¶¶ 56-64. But OAN completely fails to link Dominion (or even Kennard-as-agent) in any way to the criticism leveled at OAN by various media personalities who are not even alleged to be employed by AT&T or DIRECTV.

*Second*, OAN's proposed contract construction conflicts with the text of the agreement and is commercially nonsensical. The agreement provides:

> [T]he Parties, the AT&T Related Parties, the Programmer Related parties, and their respective Representatives during the Term of this Agreement and for two (2) years thereafter, shall not directly or indirectly (or encourage, suggest or organize any other individual, entity or third party or their Representatives to) (1) disparage (including, without limitation, via the Services, blogging, social media, press interviews and/or any public statement) the other Party, the Programmer Related Parties, the AT&T Related parties, and/or their respective Representatives ….

Amended Countercls. Ex. B. For OAN's theory to work, TV personalities who are not employed by—and do not answer to—DIRECTV or AT&T must be deemed "AT&T Representatives." This is preposterous for several reasons.

*First*, the agreement simply does not state that CNN or HBO or their on-air personalities fall under the non-disparagement provision, nor does the definition of "Representatives" in the

9

Agreement. Contracts are interpreted under their plain meaning, and the plain meaning of this provision simply does not say what OAN urges. *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684 (Cal. App. 2000), as modified (Sept. 7, 2000) ("In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties."); *see AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 814, 799 P.2d 1253 (Cal. 1990) ("under established principles of contract interpretation, we construe policy language according to the mutual intentions of the parties and its 'plain and ordinary' meaning").[8] If OAN wanted to make the facially absurd—and constitutionally suspect—argument that AT&T's agreement somehow prohibits John Oliver, CNN, Reuters, Jake Tapper, Brian Stelter, Oliver Darcy, Max Boot, and the rest of the media from making fun of OAN or criticizing its role in inciting viewers to sack the United States Capitol, OAN was required to point to contractual provisions that can plausibly support that contention. It has not done so (and cannot do so).

***Second***, it is a fundamental principle of contract interpretation that the construction must account for the commercial purposes of the agreement. *Starlight Ridge S. Homeowners Ass'n v. Hunter-Bloor*, 177 Cal. App. 4th 440, 447, 99 Cal. Rptr. 3d 20, 25 (2009) ("The mutual intention of the contracting parties at the time the contract was formed governs…. We ascertain that intention solely from the written contract, if possible, but also consider the circumstances under which the contract was made and the matter to which it relates."). It makes no commercial sense that AT&T would expose itself to liability when any one of the thousands of on-air personalities (employed or contracted for by other entities) said anything negative about OAN. *Pro Water Sols., Inc. v. Angie's List, Inc.*, No. 2:19-cv-08704-ODW, 2021 WL 4288520, at *4 (C.D. Cal. Sept. 21, 2021) (dismissing breach of contract claim where "concluding that Defendants breached their

---

[8] The Agreement is governed by California law, and accordingly, Dominion cites principles of California law relating to its interpretation.

10

contracts" would "require[] an interpretation of the contracts that is unreasonable"); *see also Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000) (affirming dismissal of breach of contract claim where terms were unambiguous).

Following pages of allegations detailing how everyone in the media from John Oliver to Max Boot was criticizing OAN and its role in inciting January 6th, OAN alleges that AT&T's chairman, Kennard, received "lots of outraged emails and texts" about a story blaming AT&T "for the rise of pro-Trump One America News." Am. Countercls. ¶ 68. While OAN seeks to **characterize** Kennard's response to that outrage as disparaging OAN on behalf of Dominion and Staple Street in supposed breach of his fiduciary duty to AT&T (Am. Countercls. ¶ 154), the communications themselves—which are attached and incorporated into OAN's Amended Counterclaims—reveal just the opposite: Kennard, as AT&T's Chairman, was communicating privately with AT&T officers about damage control and responding privately to people who were threatening to cut ties with AT&T because they had already come to believe—from the extensive media criticism—that OAN was toxic. (*See* Exs. C, E, F, G, H, I to Am. Countercls.) In context, such communications can hardly be said to rise to the level of a breach of the non-disparagement provision by AT&T—let alone by non-parties Dominion or Staple Street, and courts do not hesitate to dismiss non-disparagement allegations against non-parties to the relevant agreement. *See, e.g., Guttenberg v. Emery*, 68 F.Supp.3d 184, 186-87 (D.D.C. 2014) ("The Court entirely removed Borg–Emery from the case on the ground that she was not a party to the dentists' settlement agreement (and hence was not bound by its non-disparagement clause)").

### III. OAN Fails to Plead a Plausible Theory of Dominion Tortiously Interfering with DIRECTV's Confidentiality Obligation to OAN (Count 1).

OAN's second tortious interference theory in Count 1 is that it was a breach of the confidentiality provision in the Agreement for "DIRECTV [to] provide confidential information

11

regarding the parties' discussions on the non-renewal of the Agreement to Bloomberg, writing via email that it had 'informed Herring Networks that, following a routine internal review, we do not plan to enter into a new contract when our current agreement expires.'" Am. Countercls. ¶ 121. OAN again depends on the factually unsupported legal conclusion that Kennard was Dominion's agent. But OAN also fails to allege any facts that would tie Dominion or Kennard-as-Dominion's-supposed-agent to this supposed leak of confidential information. And there are several other fatal flaws that independently doom this theory.

Most glaringly, OAN pleads that it was DIRECTV—which has its own board, of which Kennard is not a member—that allegedly made the decision to send information about the non-renewal to the press. Am. Countercls. ¶¶ 122, 123 ("The gratuitous announcement by DIRECTV also constituted a breach of the confidentiality provision in the Agreement, which DIRECTV has ***admitted*** in its answer in the San Diego Litigation.") (emphasis in original). OAN's Amended Counterclaims are written as if every decision by DIRECTV is automatically imputed to AT&T, (then to Kennard, then to a defunct Staple Street entity, and finally to Dominion), but that is not how it works. To impute decisions across separate companies, a plaintiff needs to allege facts supporting veil piercing or a related theory; but OAN alleges so such facts. *See, e.g.*, *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) (plaintiff failed to plausibly allege claims against parent; to overcome a presumption of separateness afforded to related corporations, "conclusory allegations of 'alter ego' status are insufficient"). Without allegations of action by Kennard or facts supporting a veil piercing theory, OAN cannot tie Kennard (let alone Dominion or Staple Street) to any action that DIRECTV took.

**IV. OAN Fails to Plead a "Wrongful Act" to Support Its Tortious Interference with Contractual Expectation Claim (Count 2).**

OAN's claim against Dominion for tortious interference with prospective contractual relationship (Count 2) fares no better. That claim fails because OAN cannot plead a legally-cognizable "wrongful act" to support a tortious interference claim. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59, 63 P.3d 937, 953 (Cal. 2003) ("To establish a claim for interference with prospective economic advantage[,] a plaintiff must plead that the defendant engaged in an independently wrongful act…. An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."). OAN simply asserts—without any supporting factual allegations—that Kennard breached his fiduciary duty to AT&T by supposedly pressuring DIRECTV to drop OAN. This assertion fails for several reasons.

*First*, OAN baldly asserts—without supporting factual allegations—that "Kennard's role as Chairman of AT&T's Board gives Kennard significant influence over AT&T, its subsidiaries, and the companies its own majority stakes in." Am. Countercls. ¶ 88. But OAN fails to allege any *facts* plausibly supporting an inference that Kennard actually had or exerted such alleged influence over DIRECTV. OAN has alleged no facts suggesting that, as a single director, Kennard had any power to dictate what AT&T's corporate policy would be, let alone to dictate the corporate decisions of a separate company like DIRECTV. In fact, the very portion of the AT&T bylaws included in OAN's Amended Counterclaims specifically states that Kennard will have authority to act on behalf of AT&T only in a "meeting of stockholders, or with respect to any action of stockholders"—very specific situations which OAN does not allege occurred at any relevant time. Am. Countercls. ¶ 88. Nor has OAN pleaded any facts to suggest that DIRECTV's board—who OAN itself alleges made the decision to not renew—was improperly influenced by Kennard, and

13

OAN pleads no veil piercing allegations or indicia of wrongful control. *See Gerritsen*, 116 F. Supp. 3d at 1137. Nor does OAN make any factual allegations to overcome the presumption of corporate separateness that companies are entitled to. OAN's legal conclusions are not substitutes for factual allegations.

*Second*, OAN tacitly admits that it has no facts to support its conspiracy theory, writing "Herring is confident that discovery will further demonstrate that Kennard, working as an agent for both Staple Street and [Dominion], was directly involved in DIRECTV's decision to non-renew OAN[.]" Am. Countercls. ¶ 127. But OAN's speculation about what discovery might reveal is insufficient to support a claim. *See, e.g.*, *Croton Watch Co. v. Nat'l Jeweler Mag., Inc.*, No. 06-CV-662, 2006 WL 2996449, at *2 (S.D.N.Y. Oct. 16, 2006) ("Plaintiff's mere, unsubstantiated hope that discovery may yield evidence [to support its claim] is insufficient to withstand a motion to dismiss."); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1398 (E.D. Cal. 1994) (plaintiff's "hope that discovery will somehow turn up favorable [evidence] is not sufficient to deprive defendants of their opportunity to avoid the burdens of discovery through a motion to dismiss"); *In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990) (party cannot "use discovery to support ... claims for which there is no [current] factual support").

*Finally*, above and beyond the fact that Kennard was not an agent for Dominion or Staple Street, OAN's pleadings do not come anywhere close to stating a claim that Kennard ever breached a fiduciary duty to AT&T. Notably, OAN does not allege that AT&T or its shareholders have ever filed a lawsuit alleging that Kennard pressured DIRECTV to drop OAN—let alone that doing so would have constituted a breach of fiduciary duty to AT&T. Legally, as a director of a Delaware corporation (AT&T), Kennard is entitled to the protection of the business judgment rule. The business judgment rule "is a presumption that in making a business decision the directors of a

14

corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Orman v. Cullman*, 794 A.2d 5, 19-20 (Del. Ch. 2002). "The burden is on the party challenging the decision to establish facts rebutting the presumption." *Id.* OAN's own factual allegations about the media firestorm over OAN's toxic brand and Kennard's private attempts to do damage control in response to people's outrage over AT&T's perceived connection to OAN do not support the plausible inference that Kennard was violating any fiduciary duty to AT&T, but that his actions were motivated by a desire to protect AT&T from OAN's toxic brand.

For all of the above reasons, OAN has failed to sufficiently plead a breach of fiduciary duty, and having failed to plead any other independently wrongful act, Count 2 must be dismissed.

## CONCLUSION

OAN's Amended Counterclaims fail to allege any wrongdoing by Dominion itself and fail to allege any facts to support a finding that Kennard was Dominion's agent, dooming both Counts. Counts 1 and 2 are also legally and factually unsupported for the reasons set forth above. OAN's Amended Counterclaims should be dismissed, and Dominion respectfully requests the Court's guidance on whether a motion for attorneys' fees and costs would be well-received.

Date: June 16, 2023

Respectfully Submitted,

Of Counsel:

/s/ Megan L. Meier
Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Justin A. Nelson (D.C. Bar No. 490347)
Megan L. Meier (D.C. Bar No. 985553)
Laranda Walker (D.C. Bar No. TX0028)
Dustin A. Pusch (D.C. Bar No. 1015069)
SUSMAN GODFREY LLP
CLARE LOCKE LLP
1000 Louisiana Street, #5100
10 Prince Street
Houston, Texas 77002
Alexandria, VA 22314
(713) 651-9366
Telephone: (202) 628-7400
jnelson@susmangodfrey.com
tom@clarelocke.com
lwalker@susmangodfrey.com
megan@clarelocke.com
dustin@clarelocke.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
SUSMAN GODFREY LLP
Rodney Smolla (Bar No. 6327)
1301 6th Avenue, 32nd Fl.
164 Chelsea Street
New York, NY 10019
South Royalton, VT 05068
(212) 336-8330
rodsmolla@gmail.com
sshackelford@susmangodfrey.com
(864) 373-3882

Davida Brook (D.C. Bar No. CA00117)
Attorneys for Plaintiffs-Counter Defendants
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com