# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., *et al.*,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>HERRING NETWORKS, INC., *et al.*,<br><br>    Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs,<br><br>v.<br><br>AT&T SERVICES, INC., *et al*.<br><br>    Third-Party Defendants. | Case No. 1:21-cv-02130-CJN<br><br>**Oral Hearing Requested**<br><br>Judge Carl J. Nichols |

**THIRD-PARTY DEFENDANT AT&T SERVICES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

    A.    Herring's Failure to Plausibly Allege Causation Is Fatal to Its Indemnification Claim ..................................................................................2

        1.    Herring's Amended Third-Party Complaint Does Not Plausibly Plead That Dominion's Suit Arose Out of AT&T Services' Alleged Defamatory Statements ................................................................3

        2.    Herring Cannot Use Discovery to Save Its Factually Unsupported Indemnity Claim ............................................................6

    B.    AT&T Services' Assignment of the Contract to DIRECTV Discharged AT&T Services' Obligations Under the Contract ..................................................8

    C.    Herring Fails To Plausibly Allege That It Was Disparaged by AT&T Services ..................................................................................................................10

        1.    Herring Concedes That Statements Made by Media Personalities on CNN and HBO Do Not Implicate the Contract's Non-Disparagement Provision ..........................................................................11

        2.    Mr. Kennard's Alleged Statements Post-Date Dominion's Lawsuit and Were Not Disparaging ........................................................13

CONCLUSION .....................................................................................................................14

i

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbas v. Foreign Policy Grp., LLC*,
  783 F.3d 1328 (D.C. Cir. 2015) ................................................................................................ 14

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
  406 F. Supp. 3d 72 (D.D.C. 2019) .............................................................................................. 7

*\*Automotive Industries Pension Trust Fund v. Ali*,
  2012 WL 4837427 (N.D. Cal. Oct. 10, 2012) ......................................................................... 8, 9

*Bell Atlantic Co. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 6, 7

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  68 Cal. App. 4th 445 (1998) ....................................................................................................... 9

*Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*,
  217 F. Supp. 3d 79 (D.D.C. 2016) ............................................................................................ 11

*Eaton Hydraulics Inc. v. Cont'l Cas. Co.*,
  132 Cal. App. 4th 966 (2005) ................................................................................................... 10

*Felder v. WMATA*,
  105 F. Supp. 3d 52 (D.D.C. 2015) ......................................................................................... 3, 6

*Florio v. Gallaudet Univ.*,
  619 F. Supp. 3d 36 (D.D.C. 2022) ............................................................................................ 13

*\*Fowler v. District of Columbia*,
  2020 WL 7014205 (D.D.C. Nov. 27, 2020) ........................................................................... 5, 7

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*,
  59 Cal. 4th 277 (2014) .............................................................................................................. 14

*Hellenic Petroleum v. Sacramento Energy Res.*,
  2019 WL 4747794 (E.D. Cal. Sept. 30, 2019) .................................................................... 13, 14

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ................................................................................................... 6

*Roden v. AmerisourceBergen Corp.*,
  186 Cal. App. 4th 620 (2010) ................................................................................................... 12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Shusha, Inc v. Century-National Ins. Co.*,
   87 Cal. App. 5th 250 (Cal. Ct. App. 2022) ................................................................. 4

*Snepp v. United States*,
   444 U.S. 507 (1980) ............................................................................................ 12, 13

*Valley Crest Landscape Dev., Inc. v. Mission Pools of Escondido, Inc.*,
   238 Cal. App. 4th 468 (2015) ................................................................................. 10

*Williams v. Biomedical Adv. Rsrch. & Dev. Authority*,
   2022 WL 971329 (D.D.C. Mar. 31, 2022) ................................................................. 6

## INTRODUCTION

This case is about Dominion's allegation that Herring defamed it. Herring's specious third-party indemnification claim against AT&T Services is a desperate attempt to gain settlement leverage, given the very likely dismissal of Herring's separate lawsuit against AT&T Services pending in San Diego. Indeed, Herring does not even dispute that it waited eighteen months to drag AT&T Services into this case because it seeks a more favorable venue than the California court that dismissed the bulk of its allegations against DIRECTV based on arguments that apply equally to AT&T Services' pending motions to dismiss.

Herring's claim for indemnification against AT&T Services should be dismissed for three independent reasons:

(1) *First*, Herring fails to plausibly allege that purportedly disparaging statements by news commentators on CNN and HBO, and by AT&T Inc. Board Chairman William Kennard, *caused* Dominion to sue Herring for defamation. Without such allegations, Herring has not stated a claim that *Dominion's lawsuit against Herring* "aris[es] out of" any disparaging statements by parties affiliated with AT&T Services, as required to implicate the indemnification clause of the carriage agreement (the "Contract"). Rather than identifying a single allegation from its Amended Third-Party Complaint that shows this required connection, Herring speculates that discovery *might* reveal Dominion's reasons for bringing the lawsuit. Speculation is not a substitute for sufficiently pled factual allegations.

(2) *Second*, AT&T Services has no obligations under the Contract, indemnification or otherwise, because it assigned the Contract to DIRECTV under a provision of the agreement expressly authorizing such assignment. Herring's argument that the assignment was not effective defies common sense and contradicts both the plain language of the Contract and California law.

(3) *Third*, AT&T Services made no disparaging statements as a matter of law. Herring now concedes that the alleged statements by media personalities on CNN and HBO are not subject to the Contract's non-disparagement provision and thus cannot be imputed to AT&T Services. As to Mr. Kennard, Herring does not dispute that his alleged statements were made *after* the filing of Dominion's complaint, making it logically impossible for this suit to have "aris[en] out of" those statements. Furthermore, Herring has not and cannot rebut that Mr. Kennard's statements were not disparaging.

In short, Herring's Amended Third-Party Complaint does not plausibly allege that this

lawsuit—or any harm—arose out of AT&T Services' alleged disparaging statements, that AT&T Services had any continuing obligations under the Contract after its assignment, or even that AT&T Services disparaged Herring at all. There is no realistic possibility that a further amendment could remedy these fatal flaws. Accordingly, Herring's contractual indemnity claim should be dismissed with prejudice.

## ARGUMENT

**A.   Herring's Failure to Plausibly Allege Causation Is Fatal to Its Indemnification Claim**

There is not a single well-pled factual allegation in Herring's Amended Third-Party Complaint that supports Herring's implausible theory that allegedly disparaging statements by Mr. Kennard or media personalities on CNN and HBO *caused* Dominion to sue Herring, thus purportedly giving rise to a claim for indemnification against AT&T Services. *See* ECF 113-1 at 10-14 ("MTD"); *see also* Contract § 8.2 (indemnification required only "in connection with any third-party claim against [Herring] to the extent **arising out of** (a) Affiliate's breach or alleged breach of any provision of this Agreement" (emphasis added)).[1] Indeed, Herring offers no well-pled facts indicating *any* link between the alleged disparagement and Dominion's lawsuit. *See* MTD at 10-14. Most glaringly, there are no alleged facts explaining why Dominion would be motivated to sue by a third party's allegedly disparaging statements about Herring (as opposed to by Herring's defamatory statements about Dominion), or why the statements of these particular third parties (Mr. Kennard, John Oliver on HBO, Jake Tapper on CNN) could plausibly have catalyzed Dominion's lawsuit. *Id.* The absence of such allegations is particularly damning in the case of Mr. Kennard, whose alleged statements were in private correspondence with individuals unaffiliated with Dominion. *Id.* at 6.

---

[1] The term "Affiliate" means AT&T Services and DIRECTV. Contract at p. 1; Am. Third-Party Compl. ¶ 45.

2

These pleading failures are unsurprising given Dominion's clear statement that it has sued Herring for defamation *per se* because it contends that Herring "manufactured, endorsed, repeated, and broadcast a series of verifiably false yet devasting lies about Dominion," including that "Dominion engaged in a colossal fraud" by "rigging the vote" in the 2020 presidential election. ECF No. 1 ¶¶ 1, 3. And Herring's facially implausible and deficiently pled theory is further undermined by the fact that *all* of Mr. Kennard's purportedly disparaging statements, like many of the alleged CNN and HBO statements, occurred *after* Dominion filed its lawsuit on August 10, 2021, so they could not have "caused" the lawsuit. *See* MTD at 10-11. The Amended Third-Party Complaint is nothing more than a compendium of naked conspiracy theories masquerading as a lawsuit, and it fails to provide even the "mere possibility" that purported disparagement by AT&T Services caused Dominion to sue Herring for defamation. *Felder v. WMATA*, 105 F. Supp. 3d 52, 59 (D.D.C. 2015) ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (cleaned up)). This alone compels dismissal of the indemnity claim.

Herring's opposition does not respond to any of this. Instead of pointing the Court to specific allegations in the Amended Third-Party Complaint and explaining how they state a plausible claim for indemnification, Herring (i) attempts to walk back from the allegations in its amended complaint and impermissibly amend (again) by opposition, and (ii) claims that discovery will provide support for its baseless allegations. Both maneuvers fail.

> 1. **Herring's Amended Third-Party Complaint Does Not Plausibly Plead That Dominion's Suit Arose Out of AT&T Services' Alleged Defamatory Statements**

Herring does not genuinely dispute that it has not pled any facts plausibly suggesting that it has suffered harm "arising out of" any statements by AT&T Services (or even by personalities on CNN or HBO or by Mr. Kennard). Indeed, its primary response is that the allegation is

3

unnecessary because AT&T Services' causation argument is effectively an argument that Herring has not pled damages for a breach of contract claim, and "nominal damages" are recoverable for breach of contract. *See* ECF 120 at 14-15 ("Opp.").

Herring misses the point; its failure to plausibly plead a link between AT&T Services' alleged actions and Dominion's lawsuit means that it has not plausibly pled that AT&T Services has a contractual obligation to indemnify it in the first place—which is the claim actually asserted in the Amended Third-Party Complaint. Herring's claim is not one for breach of contract, and AT&T Services' argument is not targeted at damages.[2] Unless the claimed harm to Herring, *i.e.*, Dominion's lawsuit, "aris[es] out of" a breach of the non-disparagement clause by AT&T Services, AT&T Services has no obligation to indemnify Herring, and the claim for indemnification fails. *See* Contract § 8.2. It is this "arising out of" link that Herring has failed to plausibly plead, and Herring does not point to a single factual allegation in the Amended Third-Party Complaint that makes this necessary connection. Accordingly, its indemnification claim must be dismissed for failure to plausibly plead an entitlement to indemnification, *regardless* of whether nominal damages are available for breach of contract.

Herring's argument that requiring it to plead that its damages arose out of AT&T Services' alleged statements effectively requires it to plead "scienter" is similarly misguided. Opp. at 15.

---

[2] Although the claim in the Amended Third-Party Complaint is one asserting a right to indemnification, Herring's opposition curiously claims that AT&T Services "breached its indemnity agreement." Opp. at 13. But Herring neither asserted a breach of contract claim, nor alleged the elements of that cause of action. *See Shusha, Inc v. Century-National Ins. Co.*, 87 Cal. App. 5th 250, 266 (Cal. Ct. App. 2022) ("The elements of a cause of action for breach of contract are [i] the existence of the contract, [ii] plaintiff's performance or excuse for nonperformance, [iii] defendant's breach, and [iv] the resulting damages to the plaintiff." (cleaned up)); *cf.* Am. Third-Party Compl. ¶¶ 184-191 (no allegations regarding Herring's performance or excuse for nonperformance under the Contract, AT&T Services' breach of the indemnification clause, or damages). The only claim against AT&T Services before this Court is for contractual indemnification.

AT&T Services is not contending that scienter is an element of any claim, simply that the "arising out of" requirement mandates a causal connection between the challenged conduct and the alleged harm. This requirement is explicit in the Contract itself, which provides for indemnification only when a breach of a provision of the Contract results in a third party asserting a claim against the non-breaching party. Contract § 8.2. To say that Herring cannot proceed with a claim for contractual indemnification when it cannot allege facts plausibly suggesting a right to indemnification does not imply an element of scienter.

Having failed to plead a factual basis for indemnification, Herring resorts to speculation *outside* the Amended Third-Party Complaint. Herring insists that it is plausible that "Dominion is moved by publicity" to sue Herring for defamation because Dominion is "aggressively represented by the world class PR firm Hamilton Place Strategies" and the "disparaging" comments on CNN, HBO, and by Mr. Kennard "may have influenced to some degree Dominion's motives." Opp. at 16. Herring speculates that Dominion may have thought that Herring would be "an easier settlement litigant" or "have less jury appeal" because of the supposed disparagement by AT&T Services. *Id.* But these assertions appear nowhere in the Amended Third-Party Complaint, so Herring's argument amounts to impermissible amendment by opposition. *Fowler v. District of Columbia*, 2020 WL 7014205, at *8 (D.D.C. Nov. 27, 2020) ("[A] plaintiff … cannot amend her complaint in a brief in opposition to a motion to dismiss.").

Further, these unpled allegations are inadequate to provide a plausible factual basis for Herring's indemnification claim because they are entirely speculative. Herring argues that statements by commentators on CNN and HBO and by Mr. Kennard "may have influenced to some degree" Dominion's decision to sue. Opp. at 16. But, of course, Herring offers no facts remotely suggestive of influence, and even if the Court were to accept this unpled allegation as true, that

5

would not be enough to save Herring's claim. *Felder*, 105 F. Supp. 3d at 59 ("Where the well-pleaded facts do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (emphasis added) (cleaned up)). Given the widespread media coverage criticizing Herring during the relevant period, there is no plausible basis to infer that "disparagement" on CNN and HBO moved the needle on whether Dominion was going to sue for an independent harm to its own business compared to if Herring had only experienced so-called "disparagement" from *The Washington Post*, *The New York Times*, and many other news organizations. *See* MTD at 13.

It is Herring's burden to allege facts sufficient to raise a right to relief "above the speculative level." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007). Herring's waffling "maybe they did, maybe they didn't" argument that statements on CNN and HBO possibly caused Dominion to sue does not come close to meeting this burden. *See Williams v. Biomedical Adv. Rsrch. & Dev. Authority*, 2022 WL 971329, at *3 (D.D.C. Mar. 31, 2022) ("Plaintiff cannot rely on conclusory allegations or mere speculation to survive a motion to dismiss."); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.").

> **2.     Herring Cannot Use Discovery to Save Its Factually Unsupported Indemnity Claim**

Herring's backup argument—that this Court should permit it to proceed beyond a motion to dismiss without any plausible basis to think it may have a valid claim just in case discovery provides that basis—is similarly unavailing. Herring characterizes its pleading burden as unfairly requiring "direct evidence," and argues that "Dominion's motives will certainly be the subject of discovery" and "[d]iscovery might reveal its motivations" for filing the lawsuit. Opp. at 15-16.

6

But Rule 12 requires that the plaintiff plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim, not simply assert that discovery could support its facially implausible claim. *Twombly*, 550 U.S. at 556. In other words, a plaintiff cannot "use discovery to obtain the facts necessary to establish a claim that is plausible on its face." *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 83 (D.D.C. 2019) (citation omitted). By arguing that the Court should not dismiss its indemnity claim because discovery "might" uncover the missing causal link, Herring effectively concedes that it does not *presently* have the requisite factual basis for its claim. Unsurprisingly, Herring cites no case law permitting a plaintiff to survive a motion to dismiss based on the assertion that "[d]iscovery might reveal" later the facts that Rule 12 requires be pled now. Opp. at 16. In short, absent facts making the claim plausible, "[Herring] is not entitled to open the door to discovery in the hopes of finding something that might support [its] suspicion." *Fowler v. District of Columbia*, 2020 WL 7014205, at *8 (D.D.C. Nov. 27, 2020).

*Fowler* is instructive. There, a plaintiff bringing a Title VII retaliation claim sought to plead the requisite causal link between her protected activity and her termination by asserting that her removal was "causally connected" to an EEOC complaint and lawsuit she filed against her employer. 2020 WL 7014205, at *7. The district court held that these conclusory allegations were not enough to survive dismissal, rejecting the plaintiff's argument in her opposition brief that "she [could not] establish the necessary causal link without discovery." *Id.* at *8. The court explained that the plaintiff was "not required to prove causation, but she [was] required to allege facts that, if accepted as true, plausibly state a claim." *Id.* And she could not "open the door to discovery" to help her meet that standard. *Id.* The same reasoning applies here: Herring may not rely on discovery to make its fanciful and speculative claim plausible; it must first allege facts plausibly

7

suggesting the requisite causal connection to show it is entitled to continue litigating its claim. Because such facts are totally absent from the Amended Third-Party Complaint, the indemnification claim fails.

## B. AT&T Services' Assignment of the Contract to DIRECTV Discharged AT&T Services' Obligations Under the Contract

Herring's concession that AT&T Services assigned the Contract (and its indemnification obligation) to DIRECTV provides an independent basis to dismiss the indemnification claim. *See* Am. Third-Party Compl. ¶ 42; *see also* MTD at 14-16. Herring argues that its advance consent to assignment is insufficient because it did not affirmatively consent when the assignment occurred. Opp. at 17. Under Herring's view, California Civil Code section 1457 ("Section 1457") requires affirmative, contemporaneous consent for an assignment to discharge the assignor's secondary liability for a contract, and since Herring only agreed that "no consent shall be necessary" for an assignment to DIRECTV, AT&T Services remains liable under the Contract. *Id.* This is utter non-sense. That which is not necessary is not required, Herring's double-speak notwithstanding.

In fact, Section 1457 permits parties to a contract to consent in advance to an assignment of that contract or to forfeit any need for future consent to an assignment, which is exactly what happened here. For example, in *Automotive Industries Pension Trust Fund v. Ali*, 2012 WL 4837427 (N.D. Cal. Oct. 10, 2012), the plaintiff (like Herring here) argued that the defendant's (Ali) assigning a purchase agreement to another defendant did not release Ali from liability because Section 1457 required Ali to obtain "consent" before assigning liability. *Id.* at *2-3. The court rejected that argument, noting that the purchase agreement already provided that Ali "shall have the right to assign its rights and obligations under this Agreement to an entity controlled by, controlling or under common ownership with [Ali]." *Id.* at *3. This constituted "explicit[]" consent sufficient to satisfy Section 1457 even though it was "advanced consent"—that is, consent

that preceded the assignment itself. *Id.* at *3-5.

The same principle holds here. AT&T Services and Herring agreed, under Section 12 of the Contract, that "no consent shall be necessary in the event of assignment by a Party of its obligations and benefits under" the Contract to "an Affiliated Company," like DIRECTV. AT&T Services then subsequently assigned its obligations and benefits under the Contract to DIRECTV. MTD at 14-15. There is no meaningful distinction between this Contract's provision that "no consent shall be necessary in the event of assignment" and the provision at issue in *Automotive Industries* that defendant "shall have the right to assign its rights and obligations." Both amount to an agreement that no additional consent is necessary for an assignment to be effective. Herring's argument that Section 1457 requires more is meritless.

Herring's argument also runs afoul of basic principles of contract interpretation. Under California law, "[c]ourts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998). Herring contends that Section 12—which provides that "no consent shall be necessary in the event of assignment" to an Affiliated Company like DIRECTV—actually means that consent *is*, in fact, necessary. But if that were so, the "no consent shall be necessary" clause would be meaningless. The Court should reject Herring's clearly erroneous interpretation.[3]

Herring's only other argument—that some of the allegedly disparaging comments by media personalities on CNN and HBO predate the assignment—does not address the fact that any claim for indemnification *still has not accrued* and would necessarily post-date the assignment.

---

[3] Herring's interpretation also runs counter to its argument that "rights can be altered by contract." Op. at 19.

*See* MTD at 16.  An indemnity claim accrues when the party seeking indemnification is held liable and makes a payment.  *Valley Crest Landscape Dev., Inc. v. Mission Pools of Escondido, Inc.*, 238 Cal. App. 4th 468, 481 (2015).  Thus, a purported indemnification claim would accrue only after Dominion prevailed in this litigation and Herring paid the judgment, neither of which has occurred.  *See* MTD at 16.  As to Herring's claim that AT&T Services must defend Herring in this litigation, such a claim does not accrue until the indemnitee makes a demand for defense and the indemnitor refuses to defend, none of which happened here, and which Herring fails to allege in any event.  *See Eaton Hydraulics Inc. v. Cont'l Cas. Co.*, 132 Cal. App. 4th 966, 973 (2005) ("A cause of action for refusal to defend accrues upon discovery of loss or harm, i.e., when the insurer refuses to defend." (cleaned up)).  Accordingly, Herring can never look to AT&T Services to "indemnify, defend, and hold harmless Herring" because AT&T Services is no longer a party to the Contract.  Am. Third-Party Compl. ¶ 189.  Indeed, AT&T Services assigned the Contract before this lawsuit was even filed.

**C.      Herring Fails To Plausibly Allege That It Was Disparaged by AT&T Services**

Herring's indemnification claim also fails for the independent reason that it has not alleged facts providing a basis to find that AT&T Services made disparaging statements in the first place.  The Amended Third-Party Complaint relies exclusively on statements by personalities on CNN and HBO and Mr. Kennard.  But Herring's opposition does not dispute that the CNN and HBO personalities who allegedly criticized Herring on air are not "Representatives" of AT&T Services—a necessary condition for their statements to implicate the non-disparagement clause at all—much less dispute that they were not "Representatives" when the Contract was signed.  And while Herring insists that parties can contract away First Amendment rights, it offers no defense for its argument that the routine non-disparagement provision in this Contract—negotiated and executed before AT&T Services' parent company owned CNN and HBO—can properly be

10

construed to cause the absurd result of drastically limiting the speech rights of media companies on matters of core public concern. As to Mr. Kennard, Herring has neither pled facts constituting disparaging statements nor identified any statements made publicly or before the filing of this lawsuit, as logically necessary to have motivated Dominion.

### 1. Herring Concedes That Statements Made by Media Personalities on CNN and HBO Do Not Implicate the Contract's Non-Disparagement Provision

Herring does not dispute AT&T Services' argument that there are no plausible allegations supporting Herring's contention that CNN and HBO news commentators are "Representatives" of AT&T Services—that is, individuals over which AT&T Services "exercises influence." *See* MTD at 19-20. That alone dooms Herring's claim that AT&T Services violated the non-disparagement clause through statements on CNN and HBO because Herring's allegations that those commentators were "Representatives" under the meaning of the Contract was its only basis for bringing those statements within Section 16.3 of the Contract. *See* Am. Third-Party Compl. ¶ 56 ("From April 2020 through mid-2021, AT&T Services' Representatives openly disparaged OAN through CNN and HBO, which AT&T at the time owned via its WarnerMedia division."); *id.* ¶ 187; *see also* Contract § 16.3 (non-disparagement clause). By failing to address AT&T Services' argument that CNN and HBO commentators are not "Representatives" of AT&T Services, Herring has conceded the point. *See Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79, 82 (D.D.C. 2016) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)). Accordingly, Herring has not adequately pled any basis to apply the Contract's non-disparagement provision to media personalities on CNN and HBO.

Notwithstanding its concession, Herring protests that AT&T Services can still be liable for

CNN and HBO personalities even though AT&T Inc. acquired CNN and HBO after AT&T Services signed the Contract with Herring because "nothing in the Agreement … states that only disparagement at the time of its signing triggers a breach." Opp. at 19. The Court need not reach AT&T Services' timing argument because of Herring's failure to contest that CNN and HBO personalities are not "Representatives." But Herring's statement also makes no sense. AT&T Services is not contending that disparagement had to be contemporaneous with signing to constitute breach, but rather that the Contract does not bind *future* affiliates. *See* MTD at 18-19. Herring offers no case law to rebut this argument, which provides a second and independent basis to dismiss Herring's claim that AT&T Services owes indemnification for statements made by media personalities on CNN and HBO.

Finally, Herring again misses the point of AT&T Services' argument that this Court should not construe the non-disparagement provision to have the absurd result of requiring AT&T Services to dictate the content on CNN and HBO to ensure that these media personalities were not saying anything disparaging about Herring. *See* MTD at 20-21. Rather than engage this canon of contract construction, Herring argues that First Amendment "rights can be altered by contract." Opp. at 19-20 (citing *Snepp v. United States*, 444 U.S. 507 (1980)). But the fact that parties *can* enter contracts that give up First Amendment rights says nothing at all about whether *this* Contract should be construed as eliminating vast swaths of core First Amendment rights through a routine non-disparagement clause. Under California law, which governs the Contract, contracts must be interpreted "in a manner that is reasonable and does not lead to an absurd result." *Roden v. AmerisourceBergen Corp.*, 186 Cal. App. 4th 620, 651 (2010). Herring's construction of the non-disparagement clause (which would require AT&T Services to censor CNN and HBO, and Herring to censor OAN (which it clearly did not do)) is unreasonable because it would lead to absurd

results. MTD at 20-21. *Snepp*, which dealt with the permissibility of a limitation on First Amendment rights in the context of an agreement requiring "specific prior approval" before publication due to national security interests, says nothing at all about contract construction, particularly in this context. 444 U.S. at 507-08.

### 2. Mr. Kennard's Alleged Statements Post-Date Dominion's Lawsuit and Were Not Disparaging

Herring also cannot rely on Mr. Kennard's alleged statements to support its indemnification claim. For one thing, all of the statements allegedly made by Mr. Kennard occurred *after* Dominion sued Herring, so they could not have *caused* the suit as required to trigger any indemnification obligation. MTD at 21. Herring never addresses this undeniable fact. Instead, Herring deflects by noting that the non-disparagement provision applies "during the Term of [the Contract] and for two (2) years thereafter" (Opp. at 17), and that "Kennard's comments admittedly fall within that time frame" (Opp. at 18). But the duration of the non-disparagement clause is beside the point. For Mr. Kennard's statements to trigger any indemnification obligation, those statements had to give rise to Dominion's lawsuit. *See* Contract at § 8.2. The statements alleged here, however, occurred between private individuals *after* the lawsuit was filed. *See* MTD at 21-22. Therefore, Mr. Kennard's statements could not have caused that suit or form the basis for any indemnity claim.

In addition, Mr. Kennard's alleged statements were not "disparagement," but rather "loose, figurative, or hyperbolic language … or the expression of opinion," which does not constitute "disparagement" as a matter of law. MTD at 22 (quoting *Hellenic Petroleum v. Sacramento Energy Res.*, 2019 WL 4747794, at *3 (E.D. Cal. Sept. 30, 2019)); *see also Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36, 46 (D.D.C. 2022) ("Whether [the defendants] made statements of 'fact' or of 'opinion' is a question of law for the court." (citation omitted) (alteration in original)).

13

Herring's assertion that AT&T Services "does not even discuss [the] definition" of disparagement, nor "argue that [Kennard's] comments do not qualify" belies even a cursory reading of AT&T Services' motion to dismiss. Opp. at 20; *cf.* MTD at 22. Not only did AT&T Services expressly argue that Mr. Kennard's statements do not constitute disparagement under California law, the federal district court case on which AT&T Services relies cites the exact same California Supreme Court decision that Herring suggests AT&T Services ignored. MTD at 22 (quoting *Hellenic Petroleum*, 2019 WL 4747794, at *3 (citing *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 299 (2014))). Herring cannot save its claim by wishing away arguments that AT&T Services plainly made. And as to the allegation that the filing of Dominion's lawsuit constitutes disparagement by Mr. Kennard, Herring's opposition does not dispute that the non-disparagement clause "shall not apply" to judicial proceedings. Contract § 16.3; *see also* MTD at 22-23.

## CONCLUSION

"Dismissal with prejudice is warranted when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015) (quotation omitted). Here, no amount of repleading can remedy any of the three independent bases to dismiss with prejudice the indemnification claim against AT&T Services. The core theory of the claim against AT&T Services—that Dominion brought a landmark defamation lawsuit against Herring because individuals on CNN and HBO criticized Herring—is utterly implausible, and no amount of wordsmithing in a further amended complaint can change that. Herring's effective concessions that AT&T Services assigned the Contract to DIRECTV prior to the accrual of any indemnity claim, and that statements on HBO and CNN are not subject to the Contract's non-disparagement clause, doom Herring's claim regardless of what other allegations Herring could possibly add. Finally, all alleged statements by Mr. Kennard post-date Dominion's lawsuit and therefore as a matter of common sense obviously

14

could not have caused the lawsuit.

For the foregoing reasons, and the reasons explained in AT&T Services' motion to dismiss, AT&T Services respectfully asks the Court to dismiss with prejudice Herring's claim for contractual indemnity.

Dated:  July 12, 2023            Respectfully submitted,

           GIBSON, DUNN & CRUTCHER LLP

           */s/* Howard S. Hogan
           Howard S. Hogan (D.C. Bar No. 492002)
           1050 Connecticut Avenue, N.W.
           Washington, D.C. 20036
           HHogan@gibsondunn.com

           Marcellus McRae (admitted *pro hac vice*)
           M. Theodore Takougang (admitted *pro hac vice*)
           333 South Grand Avenue
           Los Angeles, CA 90071
           MMcRae@gibsondunn.com
           TTakougang@gibsondunn.com

           Ashley E. Johnson (admitted *pro hac vice*)
           2001 Ross Avenue, Suite 2100
           Dallas, TX 75201
           AJohnson@gibsondunn.com

           *Attorneys for Third-Party Defendant AT&T Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

    /s/  Howard S. Hogan
Howard S. Hogan (D.C. Bar No. 492002)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
HHogan@gibsondunn.com

Marcellus McRae (admitted *pro hac vice*)
M. Theodore Takougang (admitted *pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
MMcRae@gibsondunn.com
TTakougang@gibsondunn.com

Ashley E. Johnson (admitted *pro hac vice*)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
AJohnson@gibsondunn.com

*Attorneys for Third-Party Defendant AT&T Services, Inc.*