# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 07/07/2023                TIME: 01:30:00 PM          DEPT:  C-72

JUDICIAL OFFICER PRESIDING: Timothy Taylor
CLERK:  Valerie Secaur
REPORTER/ERM: Robert Jameyson CSR# 8936
BAILIFF/COURT ATTENDANT:  S. Parriott

CASE NO: **37-2022-00008623-CU-BC-CTL**  CASE INIT.DATE: 03/07/2022
CASE TITLE: **Herring Networks Inc vs AT&T Inc [EFILE]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Breach of Contract/Warranty

---

**EVENT TYPE**: Civil Case Management Conference

---

**EVENT TYPE**: Motion Hearing (Civil)
MOVING PARTY: DIRECTV LLC
CAUSAL DOCUMENT/DATE FILED: Motion for Attorney Fees, 03/14/2023

---

**APPEARANCES**
Rollin A Ransom, counsel, present for Defendant,Plaintiff(s).
Eric P Early, counsel, present for Plaintiff(s).
MARCELLUS A MCRAE, counsel, present for Defendant(s).
Robert M W Smith, counsel, present for Defendant(s).
Stephen C Grebing, counsel, present for Defendant(s).
William B Monahan, counsel, present for Defendant(s).
Jeremy Gray, counsel, present for Plaintiff(s).

---

**HEARING ON MOTION FOR ATTORNEYS' FEES**

All parties submit(s) on the Court's tentative ruling.

The Court and counsel discuss the recalendaring of the remaining motions which were vacated upon case reassignment.

The Court informs counsel it will issue and serve a case management order after reviewing the various proposals of counsel.

---

Having reviewed counsel's proposed hearing schedules off the record, the Court now modifies the

---

tentative ruling to include a case management order and confirms it as follows:

**Ruling on Motion for Attorneys' Fees After Partially Successful Special Motion to Strike – CCP Section 425.16; Tentative Order for Sequencing of Future Motions; OSC re Discovery Referee**

*Herring Networks v. AT&T,* Case No. 2022-08623

July 7, 2023, 1:30 p.m., Dept. 72

## 1. <u>Overview and Procedural Posture</u>.

This case began as a contract/interference/UCL action involving the cable TV business. The complaint was filed in March of 2022, and the case was assigned to Judge Meyer. He presided over several hearings; he ultimately granted, in significant part, DirecTV's special motion to strike under CCP section 425.16. The court incorporates the minutes from Dept. 64 for January 13, 2023, for further background. ROA 361. Only contract claims survive as against DirecTV.

A few months after the SLAPP motion was granted, Judge Meyer retired from the Court after a long and distinguished career. His department was taken over by Judge Freestone. ROA 406. Judge Freestone then recused (ROA 407), and the case was reassigned to Dept. 72. ROA 427. The recusal had the effect of vacating numerous hearing dates that had theretofore been set in Dept. 64. ROA 409-426.

Dept. 72 scheduled a CMC for today, and the parties have re-calendared in Dept. 72 some of the motions that had been calendared in Dept. 64. ROA 428 - 453. Of this more below.

DirecTV now seeks an award of attorneys' fees for the partially successful special motion to strike. ROA 387-388, 434. Plaintiff filed opposition. ROA 461. DirecTV filed reply. ROA 463-464. The court reviewed the papers, and published a tentative ruling on the evening of July 6, 2023. The parties submitted on the tentative ruling on July 7.

## 2. <u>Applicable Standards</u>.

**A.** California follows the "American rule," under which each party to a lawsuit ordinarily must pay his, her or its own attorney fees. *Trope v. Katz* (1995) 11 Cal.4th 274, 278. Code of Civil Procedure section 1021 codifies the rule, providing that the measure and mode of attorney compensation is left to the agreement of the parties "[e]xcept as attorney's fees are specifically provided for by statute." One such statute is Code of Civil Procedure section 425.16(c), which provides for an award of attorney fees and costs to the prevailing defendant on a special motion to strike. "An award of attorney fees to a prevailing defendant on an anti-SLAPP motion properly includes attorney fees incurred to litigate the special motion to strike (the merits fees) plus the fees incurred in connection with litigating the fee award itself (the fees on fees)." *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 433.

**B.** The California Supreme Court has upheld the lodestar method for determining the appropriate amount of attorney fees for a prevailing defendant on an anti-SLAPP motion. *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136. Under this method, a court assesses attorney fees by first determining the time spent and the reasonable hourly compensation of each attorney. *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342. The lodestar figure may then be adjusted, based on factors specific to

CASE TITLE: Herring Networks Inc vs AT&T Inc [EFILE]    CASE NO: **37-2022-00008623-CU-BC-CTL**

the case, to fix the fee at the fair market value for the legal services provided. *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.

**C.** The party seeking fees bears the burden of documenting the appropriate hours expended and hourly rates. *Roth v. Pilkaytis* (2017) 15 Cal.App.5th 283, 290. The burden then shifts to the opposing party "to present specific objections, supported by rebuttal evidence." *Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472, 1494, disapproved on another ground as stated in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 287; *see Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 (noting the "party opposing the fee award can be expected to identify the particular charges it considers objectionable").

### 3. <u>Discussion and Ruling</u>.

The motion for attorneys' fees is granted in the reduced amount of $66,492.00.

**A.** "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." *Mann, supra*, 139 Cal.App.4th at 340. Here, it is undisputed that DirecTV successfully eliminated most of plaintiff's claims. While DirecTV may have failed to achieve its intended result of dismissing the entire complaint, its success was not trivial or a pyrrhic victory. The order striking part of the breach of contract claim, the entire breach of implied covenant claim, and both UCL claims has the practical benefit of substantially narrowing the scope of the litigation and the spe3cies of relief available. Accordingly, the court finds that DirecTV is the prevailing defendant under section 425.16(c)(1), and is entitled to reasonable attorney's fees and costs.

Relying on a "narrow exception" recognized in *Moran v. Endres* (2006) 135 Cal.App.4th 952, plaintiff disputes that DirecTV is the prevailing defendant. S*ee Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1446. But *Moran* is entirely distinguishable. In that case, the defendants succeeded in striking only one of eleven causes of action and that was a cause of action for civil conspiracy. The court found such a result to be "minimal and insignificant" because the civil conspiracy claim "included no specific factual allegations" and, as a legal matter, was not even a separate cause of action. *Moran*, 135 Cal.App.4th at 954. Thus, the dismissal of the civil conspiracy claim did not change the *Moran* complaint's factual allegations or the possible recovery against the defendants. The same simply cannot be said here, as the factual allegations – and plaintiff's potential recovery – have most definitely changed.

**B.** The total lodestar request in this case is $192,353.41. It is based on 182.95 hours of work – including the instant fees motion – and equates to a blended hourly rate of approximately $1,051.40 ($192,353.41 divided by 182.95). The court practiced law in San Diego for over 20 years prior to 2005 and, since being appointed to the bench, has ruled on hundreds of fee applications in a variety of settings. Based on this experience, the court considers the blended hourly rate to be unreasonable under the circumstances. *See Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1507 ("[T]he trial court may rely on its own experience and knowledge in determining the reasonable value of the attorney's services."). Special motions to strike have become commodity work in civil litigation. While DirecTV's motion was undoubtedly important, it did not involve complex factual or legal issues. Moreover, no discovery was requested or conducted pursuant to Code of Civil Procedure section 425.16(g). As such, the court must now determine a reasonable base lodestar amount for DirecTV.

"To determine the reasonable hourly rate, courts consider the rate prevailing in the community for similar

---

CASE TITLE: Herring Networks Inc vs AT&T Inc [EFILE]   CASE NO: **37-2022-00008623-CU-BC-CTL**

work." *Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1055. The relevant "community" is the one in which the court is located. *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 71. "The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009. Here, DirecTV's attorneys – who are based in Los Angeles and Washington, D.C. – seek the following hourly rates:

-Rollin A. Ransom (partner, 29 years in practice) – $1,237.50 per hour in 2022 and $1,305.00 per hour in 2023
-Joshua J. Fougere (partner, 13 years in practice) – $1,125 per hour in 2022 and $1,215 per hour in 2023
-Jillian S. Stonecipher (associate, 8 years in practice) – $1,057.50 per hour in 2022 and $1,147.50 per hour in 2023
-Giles Judd (associate, 6 years in practice) – $945 per hour in 2022 and $1,057.50 per hour in 2023
-Evan Medina (associate, 2 years in practice) – $585 per hour in 2022 and $747 per hour in 2023
-Dorielle Hammonds (paralegal) – $391.50 per hour in 2022 and $414 per hour in 2023

Plaintiff argues that the foregoing hourly rates are not reasonable. The court agrees. While there is evidence suggesting that the rates may be comparable to some San Diego attorneys (*see* Ransom Decl., Ex. 7), no showing has been made that any of these select attorneys engage in similar areas of practice as DirecTV's counsel. In the court's view, having ruled on dozens of similar motions in the last 15 years, hourly rates ranging from $850 to $400 are within the acceptable parameters for attorneys performing similar work in the San Diego legal community.

Turning to the second half of the lodestar analysis, "[t]he basis for the trial court's calculation must be the actual hours counsel has devoted to the case, less those that result from inefficient or duplicative use of time." *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 394. In this case, the court finds that certain billing entries reflect time spent unreasonably and/or on duplicative efforts. First, the court deletes those entries showing interoffice meetings and communications between firm members. Although strategy is an integral part of litigation, is not reasonable for both participants at the conference to bill an adversary for it. Second, the court elects to cut Mr. Medina's and Ms. Hammonds' time as they collectively billed less than 20 hours total on this matter. Some courts refer to timekeepers such as this as "transitory billers," and there is strong indicia here of inefficiency.

In sum, the court finds that a proper base lodestar amount for the anti-SLAPP motion and the instant fees motion is $83,115.00, which consists of (1) $11,220.00 for Mr. Ransom's services (13.2 hours at $850 per hour); (2) $16,660.00 for Mr. Fougere's services (23.8 hours at $700 per hour); (3) $34,595.00 for Ms. Stonecipher's services (62.9 hours at $550 per hour); and (4) $20,700.00 for Mr. Judd's services (51.75 hours at $400 per hour).

**C.** "[A] partially prevailing party is not necessarily entitled to all incurred fees even where the work on the successful and unsuccessful claims was overlapping." *Mann*, 139 Cal.App.4th at 344. Instead, the court must "consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate." *Id.* at 345. "This analysis includes factors such as the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion." *Id.* "The court should also consider any other applicable relevant factors, such as the experience and abilities of the attorney and the novelty and difficulty of the issues, to adjust the lodestar amount as appropriate." *Id.*

CASE TITLE: Herring Networks Inc vs AT&T Inc [EFILE]   CASE NO: **37-2022-00008623-CU-BC-CTL**

---

In this case, DirecTV sought to strike the complaint in its entirety, but Judge Meyer left one aspect of the breach of contract claim intact. DirecTV properly acknowledges its partial success, and suggests a reduction of no more than 20% of the base lodestar amount. Plaintiff, on the other hand, seeks a steeper discount of at least 25% (plus an additional 50% "due to DirecTV's conduct in bringing the anti-SLAPP motion").

The court is persuaded that DirecTV has the better argument. As Judge Meyer made clear in his ruling, although styled as a single cause of action, the breach of contract count essentially consisted of two separate claims – *i.e.*, one based on DirecTV informing Bloomberg News that it did not intend to enter into a new contract with plaintiff after the current Affiliation Agreement expired, and one based on DirecTV informing Bloomberg News that the current Affiliation Agreement was set to expire in April 2022. *See Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 ("A single cause of action defined in terms of the plaintiff's primary right may include more than one instance of alleged wrongdoing."). By eliminating the former category of conduct, DirecTV succeeded in striking 4 out of the 5 total claims alleged in the complaint. Consistent with this framework and applying the factors articulated in *Mann*, the court believes that a 20% reduction of the base lodestar amount is appropriate.

Accordingly, the court awards $66,492.00 (80% of $83,115.00) in attorneys' fees to DirecTV for partially prevailing on its anti-SLAPP motion.

**IT IS SO ORDERED.**

\*\*\*

### Case Management Orders

Upon the request of all parties, the court set the case for trial, and set the other litigation benchmarks, as follows:

Trial: 7/26/24, 8:30 a.m., 10 day jury
TRC: 7/12/24, 9:00 a.m.
Law and Motion/Discovery cutoff: 6/28/24
First expert exchange: 4/5/24
Second expert exchange: 4/26/24

In civil cases, continuances are disfavored, the assigned trial dates are firm, and parties and their counsel must regard the trial date as certain. (Cal. Rules of Court, rule 3.1332(a) & (c); further rule references are to the California Rules of Court.) A party seeking a continuance must make the request by a noticed motion or an ex parte application, with supporting declarations, as soon as reasonably practical once the need for the continuance is discovered. (Rule 3.1332(b).) The trial court must consider "all . . . [relevant] facts and circumstances" (rule 3.1332(d)) and "may grant a continuance only on an affirmative showing of good cause requiring the continuance." (Rule 3.1332(c).) We review the court's ruling on the motion to continue for an abuse of discretion. (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.) "The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court." (*Ibid.*)

### Tentative Case Management Orders

---

CASE TITLE: Herring Networks Inc vs AT&T Inc [EFILE]    CASE NO: **37-2022-00008623-CU-BC-CTL**

As already noted, some of the motions previously set in Dept. 64 were re-set in Dept. 72. There are 4 discovery motions calendared for July 21, and Herring's motion for attorneys' fees is set for August 4. Those will go forward as scheduled, with briefing per Code.

The parties disputed, in their CMC statements, what should happen next. Plaintiffs contend that AT&T's jurisdictional challenges should proceed next, while AT&T contends this court should take up the AT&T/Kennard demurrers/special motions to strike (which are fully briefed) before addressing the motions to quash service of the summons.

The court has now reviewed the CMC statements, as well as Judge Meyer's order of January 13, 2023 (ROA 379) and the submissions which led up to that ruling.

The court concludes Herring has the better argument on this fundamental question: the court should decide whether it has jurisdiction over parties challenging jurisdiction before it proceeds with decisions on matters of substance.

On the other hand, Herring's "proposed hearing and briefing schedule" attached to its CMC statement would essentially have this court working on this case, to the exclusion of the 1100 other cases assigned to Dept. 72, from now until Sept. 15. Herring may not think the other cases assigned to Dept. 72 are as important as this one is, but the court has a different view. Herring's "proposed hearing and briefing schedule" is <u>not</u> adopted by the court. The court's law and motion calendars in July and August are full.

The court invites AT&T/Kennard to re-calendar the motions to quash for a Friday in September by calling the calendar clerk and scheduling those matters for hearing (and serving an amended notice). AT&T and Kennard certainly have the option of withdrawing the jurisdictional challenges and re-noticing their demurrers/special motion to strike without a special appearance. They should be prepared to discuss this at the August 4 hearing. Absent this, however, the court intends to decide the jurisdictional challenges first.

The parties are ordered to show cause, if any there be, why discovery disputes in this case (other than the four already calendared for July 21) should not be referred to a discovery referee. This would include any further discovery plaintiffs contend is needed for the jurisdictional challenges. This OSC will be heard August 4, 2023 at 1:30 p.m. In ordering the parties to show cause why a discovery referee should not be appointed under CCP section 639(a)(5), the court provisionally makes the following observations and findings pursuant to CRC 3.922 and provisionally orders as follows:

1. It is clear to the court from the number and content of the motions already decided and brought and likely to be brought that little progress can be made in this case without continuous oversight. Further, it seems clear to the court that the pending and contemplated motions are only the most recent salvo in a fusillade of discovery disputes. In addition, the specially appearing defendants have filed a special motion to strike, which by law stays discovery absent court authorization.

2. The superior courts of California have in recent years faced unprecedented budget pressures which have already forced curtailments in hiring and business office hours, furloughs, as well as courtroom closures. Judicial caseloads increased, since the undersigned was assigned to Dept. 72, from just over 600 to well over 1100. This translates into a situation in which the court is not in a position to provide the kind of intensive oversight and particularized review necessary in this case and still pay appropriate attention to the other cases assigned to Dept. 72.

CASE TITLE: Herring Networks Inc vs AT&T Inc [EFILE]    CASE NO: **37-2022-00008623-CU-BC-CTL**

---

3. Since taking over Dept. 72 in October of 2008, this is one of a handful of cases (one or two per year on average; four so far this year) in which the court has appointed a discovery referee on its own motion. This case is therefore not similar to the situation described in *Jovine v. FHP, Inc.*, 64 Cal. App. 4th 1506, 1532 (1998).

4. Informal resolution of discovery disputes is a centerpiece of California civil practice. California law requires that civil litigants make "a serious attempt to obtain 'an informal resolution of each issue.' (CCP §2025, subd. (o)....) This rule is designed 'to encourage the parties to work out their differences informally so as to avoid the necessity for a formal order....' (*McElhaney v. Cessna Aircraft Co.* (1982) 134 Cal.App.3d 285, 289, 184 Cal.Rptr. 547.) This, in turn, will lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants through promotion of informal, extrajudicial resolution of discovery disputes. [Citations.]" *Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1435. A determination of whether an attempt at informal resolution is adequate involves the exercise of discretion. Among the factors the court should consider are the history of the litigation, the nature of the interaction between counsel, the nature of the issues, the type and scope of discovery requested, and the prospects for success. A trial judge's perceptions on such matters, inherently factual in nature at least in part, must not be lightly disturbed. *Stewart v. Colonial Western Agency, Inc.*, *supra*, (2001) 87 Cal.App.4th 1006, 1012-1013.

5. Courts of Appeal review discovery rulings under the abuse of discretion standard. "(*Union Bank of California v. Superior Court,* 130 Cal.App.4th at p. 388. "'Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court. [Citation.]' [Citation.] 'The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question.' [Citations.]" *Ombudsman Servs. of N. California v. Superior Court* (2007) 154 Cal.App.4th 1233, 1241.

6. "Judges ... have broad discretion in controlling the course of discovery and in making the various decisions necessitated by discovery proceedings. [Citations.] The trial judge's application of discretion in discovery matters is presumed correct, and the complaining party must show how and why the court's action constitutes an abuse of discretion in light of the particular circumstances involved. [Citations.]" *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431-432.

7. Under the circumstances, it is appropriate to order that the parties equally bear the cost of the discovery referee. This order will apply unless and until the referee recommends, and the court orders, a different allocation. Based on its review of the papers, the court finds that the parties have the ability to pay.

8. The court finds the circumstances exceptional and orders that all current and future discovery disputes shall be determined by the discovery referee in the first instance.

9. Defense counsel must submit Judicial Council form ADR-110, completed as set forth above and including either the name of the Referee agreed upon by the parties or with the name left blank. If the latter, the form shall be submitted at the same time as the six names of proposed discovery referees proposed by the parties.

10. In considering the appointment of a discovery referee, the court must consider CCP section 639(a)(5) as well as CRC 3.922. Such appointments may not be made routinely. *See Jovine v. FHP, Inc.*, 64 Cal. App. 4th 1506, 1532 (1998).

---

CASE TITLE: Herring Networks Inc vs AT&T Inc [EFILE]   CASE NO: **37-2022-00008623-CU-BC-CTL**

No further briefing on the AT&T/Kennard demurrers/special motion to strike is permitted without leave of court.

_____

Judge Timothy  Taylor