**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

US DOMINION, INC., et al.,

       Plaintiffs/Counterclaim
       Defendants

    v.

HERRING NETWORKS, INC., et al.,

       Defendants/Counterclaim
       Plaintiffs/Third-Party Plaintiffs

    v.

AT&T SERVICES, INC., et al.,

       Third-Party Defendants.

Case No. 1:21-cv-02130-CJN

Judge Carl J. Nichols

**MOTION FOR ENTRY OF THE DEFENDANTS' JOINT PROPOSED ORDER
GOVERNING DISCOVERY MATTERS**

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... ii

I.     Background and Summary of the Disputed Issues ........................................... 1

II.     Argument .......................................................................................................... 4

      A.     The federal rules unequivocally require parties to produce relevant, responsive documents. ........................................................... 4

      B.     Defendants' proposed discovery protocol ensures that the parties satisfy their discovery obligations. ........................................ 5

      C.     Rule 34 requires a party to produce responsive and relevant documents, and a party cannot solely rely on search chains. ........................ 6

      D.     Permitting Plaintiffs to ignore their obligation to review for responsive, relevant documents would improperly shift Plaintiffs' discovery obligation to Defendants. ........................................ 9

      E.     The parties should not be ordered to exchange hit count reports for agreed search chains. ......................................................... 9

      F.     The parties' document productions should be organized by discovery request as contemplated by Rule 34. ........................... 11

      G.     The parties should not dictate the other parties' custodial interviews. ........ 11

III.     Conclusion ...................................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Breaux v. Halliburton Energy Servs.*,
  2006 WL 8442584 (E.D. La. Oct. 27, 2006) ...........................................................6

*DR Distrib., LLC v. 21 Century Smoking, Inc.*,
  513 F. Supp. 3d 839 (N.D. Ill. 2021) .....................................................................11

*Haughton v. District of Columbia*,
  315 F.R.D. 424 (D.D.C. 2014)................................................................................6

*John B. v. Goetz*,
  2007 WL 301280 (M.D. Tenn. Oct. 10, 2007) .......................................................11

*Neale v. Coloplast Corp.*,
  2020 WL 6948361 (E.D. Tenn. Nov. 2, 2020) .........................................................7

*O'Donnell/Salvatori Inc. v. Microsoft Corp.*,
  339 F.R.D. 275 (W.D. Wash. 2021) .........................................................................7

*Palmer v. Cognizant Tech. Solutions Corp.*,
  2021 WL 3145982 (C.D. Cal. 2021).........................................................................6

*Rothman v. Emory Univ.*,
  1996 WL 377049 (N.D. Ill. July 1, 1996)................................................................7

*Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*,
  318 F.R.D. 44 (S.D. W. Va. 2016)...........................................................................7

*In re Thomas Consol. Indus., Inc.*,
  2005 WL 3776322 (N.D. Ill. May 19, 2005) ...........................................................6

*United States for Use & Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.*,
  2023 WL 5302371 (S.D.N.Y. Aug. 17, 2023)..........................................................6

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
  569 F. Supp. 3d 626 (E.D. Mich. 2021)..................................................................11

*Youngevity Int'l Corp. v. Smith*,
  2017 WL 6541106 (S.D. Cal. Dec. 21, 2017)....................................................5, 6, 7

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................2, 3

Fed. R. Civ. P. 26(b)(1)................................................................................................4, 11

Fed. R. Civ. P. 29(b) ........................................................................................................3

Fed. R. Civ. P. 34(b)(2)(C) ..............................................................................................4

**Other Authorities**

Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2213 (West Apr. 2023).........................5

The Federal Rules of Civil Procedure mean what they say.  Rather than applying these rules to control discovery in six different cases, Plaintiffs want the Court to modify dramatically FRCP 26 and 34.  Defendants Herring Networks, Inc., d/b/a One America News Network ("OAN"), Charles Herring, Robert Herring, Sr., and Chanel Rion (collectively, the "Herring Parties"), file this motion requesting entry of Defendants' joint proposed order governing discovery matters (attached as **Exhibit A**), which aligns with the Federal Rules. In support thereof, the Herring Parties respectfully show the Court as follows:

## I.     Background and Summary of the Disputed Issues

Over the objection of the Herring Parties, Plaintiffs asked the Court to consolidate this case with previously consolidated cases that Plaintiffs filed against 7 other defendants who Plaintiffs allege defamed Plaintiffs following the 2020 presidential election.  Plaintiffs assured the Court that consolidation would yield "efficiencies" in moving this case towards trial.[1]  The Court granted[2] Plaintiffs' request and subsequently ordered the parties in these consolidated cases to meet and confer about the entry of an agreed discovery stipulation.[3]  The Defendants were able to reach an agreement on all proposed discovery parameters in the proposed order attached herein as **Exhibit A**,[4] but Defendants could not reach an agreement with Plaintiffs on several fundamental

---

[1] ECF No. 86 at 4 (Dominion's Motion for Entry of a Scheduling Order & Consolidation).

[2] ECF No. 134 (Consolidation Order; July 24, 2023).

[3] Status Conference Hearing on Sept. 21, 2023; transcript not yet completed by the court reporter.

[4] This motion and the attached proposed discovery-protocol order (**Exhibit A**) govern certain protocols for written discovery. The proposed discovery protocol order incorporates two exhibits to which the Parties are in agreement **Exhibit 1** (ESI Protocol) and **Exhibit 2** (Expert Stipulation), and another exhibit to which Dominion and the Herring Parties agree, but to which Dominion and other defendants do not agree **Exhibit 3** (list of custodians provided in redline to show that limited disagreement). Parties continue to negotiate other matters, including depositions, per the Court's instructions.

parameters that should govern the discovery process in this litigation.[5]  Defendants' joint proposed order includes 10 sections.  The following sections are agreed to by both sides, thus these sections of Defendants' joint proposed order and Plaintiffs' proposed order are identical: Sections 1, 2, and 9 in **Exhibit A**.  The sides remain in dispute over the following sections in Defendants' joint proposed order: Sections 3, 4, 5, 6, 7, 8, and 10 in **Exhibit A**.

Defendants' proposed order seeks to adhere as closely as practicable to the Federal Rules of Civil Procedure.  Where the parties were unable to reach a consensus on the discovery protocol were the occasions in which Plaintiffs sought drastic departure from the straight-forward obligations imposed by the Rules that are designed "to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1.  And Plaintiffs' proposal would drastically undercut the "efficiencies" that it promised the Court would follow from consolidating this case with the previously consolidated cases.  Where Plaintiffs' proposed protocol departs so drastically from the Rules and settled discovery practices that it will impede upon Rule 1's promise of a just and speedy resolution of these complex cases, Defendants could not and would not agree, thus necessitating the filing of these motions.

Plaintiffs and Defendants diverge on three key issues:

***First,*** Plaintiffs ask the Court to rewrite Rules 26 and 34 by permitting the parties to produce ***any*** document that includes a party's agreed search chain, regardless of that document's relevance to these litigations or responsiveness to any document request.  Defendants, and the Federal Rules, reject this attempt to allow a party to engage in "document dumps" without attorney

---

[5] The parties satisfied the Court's October 6 deadline by conducting two meet and confers (October 3 and 5).

review for responsiveness and relevance of any and all documents that "hit" on a set of search chains, regardless whether that set of queries is an agreed-to list.

*Second,* Plaintiffs ask the Court to require parties, upon request, to disclose the number of documents that "hit" on agreed search chains.  Neither the Federal Rules nor caselaw require production of "hit counts."  And Plaintiffs' approach fails for the same reason as their request to omit responsiveness reviews of documents: simply because a document includes an agreed search chain does not make that document responsive.  This is because no set of search queries is perfect—it will likely fail to uncover some responsive documents that the party is obligated to produce, and it will certainly yield large quantities of documents that are neither responsive to the document requests nor relevant to the claims or defenses at issue in the litigation.  Plaintiffs, as they have done in other cases, want to weaponize these hit count reports in an attempt to declare that "something is wrong" with Defendants' document production, solely because the number of responsive and relevant documents produced is less than the number of documents that hit on Plaintiffs' requested search chains. This is a departure from what is required by the Rules and will only be used to manufacture unnecessary discovery disputes.

*Third*, Plaintiffs want to dictate the questions and topics used by the parties to interview their own custodial witnesses.

The Court should adopt the Defendants' proposed discovery protocol because Plaintiffs' approach is well beyond that provided for in the Federal Rules of Civil Procedure and would only yield additional, unnecessary discovery disputes.

## II.     Argument

**A.     The federal rules unequivocally require parties to produce relevant, responsive documents.**

Unless parties stipulate to a modification of discovery procedures, the Federal Rules "govern the procedure in all civil actions." Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 29(b) (Unless prohibited by the Court, "the parties may stipulate that . . . procedures governing or limiting discovery [may] be modified."). And in governing those proceedings, the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Rule 26(b)(1) addresses the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding **any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to **relevant information**, the parties' resources, **the importance of the discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Similarly, when parties object to a particular request for the production of documents, the objection "must state whether any **responsive materials** are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C) (emphasis added). By their plain terms, these Rules ensure that document review and production serves to limit the produced documents to those that are relevant to the case and responsive to a party's document requests.

4

**B.      Defendants' proposed discovery protocol ensures that the parties satisfy their discovery obligations.**

Defendants' joint discovery proposal ensures that the parties will satisfy their obligation to produce responsive, relevant documents that the receiving party can receive and review unencumbered by mountains of non-responsive or irrelevant documents. Specifically, Defendants' proposed order provides that "[a] producing party is obligated to produce only those documents or ESI that are responsive and relevant to a pending discovery request in accordance with Rules 26 and 34." **Exhibit A at § 6**. This is accomplished by requiring producing parties "to conduct a responsiveness and relevancy review pursuant to FRCP 26 before producing documents to ensure that only documents that are actually responsive and relevant to a pending request for production are produced." *Id.*

To be sure, these requirements merely track what the parties are obligated to do under the Federal Rules. Given the clear obligations set forth in the Rules, Defendants are surprised that they must be spelled out in this motion as disputed by Plaintiffs. Yet Plaintiffs' expressed view of their discovery obligations and their intent to produce documents *without conducting any review* for responsiveness or relevance necessitate Defendants' request that the Court adopt section 6 of their joint proposed order. Without such an order, Plaintiffs will violate their Rule 26 and 34 obligations.[6]

---

[6] In addition to Plaintiffs' refusal to abide by their obligations under Rules 26 and 34, Plaintiffs have indicated that they will propose a provision that even for search queries that parties run, review for responsiveness and relevancy, and produce documents, the receiving party should be permitted to subsequently seek production of the "hit" reports for all utilized search queries. Defendants oppose that provision as one not required by the Federal Rules, *see infra* Section E of this Motion, and the Herring Parties will address the specific problems with the provision Plaintiffs include in their proposed discovery-protocol order when the Herring Parties file their response to Plaintiffs' motion seeking entry of Plaintiffs' proposed discovery protocol.

**C.      Rule 34 requires a party to produce responsive and relevant documents, and a party cannot solely rely on search chains.**

The use of search chains does not amount to, nor is it a replacement for, a responsiveness and relevance review of documents prior to production.  *See, e.g.*, Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2213 (noting that "the producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34"); *id.* (cautioning that the use of "search terms could prove somewhat unwieldy in identifying genuinely responsive items"). The Herring Parties do not dispute that "[s]earch terms are an important tool parties *may use* to identify *potentially* responsive documents in cases involving substantial amounts of ESI. Search terms do not, however, replace a party's requests for production." *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) (emphasis added). Accordingly, it is improper to "conflate[] a hit on the parties' proposed search terms with responsiveness. The two are not synonymous." *Id.*; *see also United States for Use & Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.*, 2023 WL 5302371, at *4 (S.D.N.Y. Aug. 17, 2023) ("Search terms, even when narrowly tailored, may still produce some amount of non-responsive documents." Thus it is appropriate for the producing party to "review its documents to ensure that they are responsive to the discovery demands even if they hit on one or more of the parties' agreed-upon terms.").

Courts across the country, including this Court, have made clear that "document dumps" burying the responsive, relevant documents that were requested within large quantities of documents that were not requested is improper. For example:

- Document productions of "over 1000 pages of documents, many of which were unresponsive to the particular requests for which they were provided" were "insufficient under Rule 34" because the rule did not permit a party to produce "unnecessary documents so as to be unduly burdensome. *Haughton v. District of*

6

*Columbia*, 315 F.R.D. 424, 429–30 (D.D.C. 2014). "Although the documents Plaintiff requested were likely contained within these pages, Plaintiff should not have to sort through all of Defendant's records to find the responsive documents." *Id.* at 430.

- "The Rules require that when a party responds to a request for production, it should only produce those documents responsive to the document requests." *Breaux v. Halliburton Energy Servs.*, 2006 WL 8442584, at \*2 (E.D. La. Oct. 27, 2006).

- The producing party is "obligated to sort through the documents himself and then produce *only* those responsive to the document requests. It [is thus] insufficient for [a] plaintiff merely to provide defendants access to sort through plaintiff's documents in search of documents responsive to their document requests." *In re Thomas Consol. Indus., Inc.*, 2005 WL 3776322, \*8 (N.D. Ill. May 19, 2005).

- The Rule 26 standard for discovery (*i.e.*, "nonprivileged matter[s] that [are] relevant") is not satisfied through a production of all documents hitting upon a search term "without a responsiveness review," thus courts should not order a party to "produce any document simply because it contains a search term whether or not it is responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action." *Palmer v. Cognizant Tech. Solutions Corp.*, 2021 WL 3145982, at \*9 (C.D. Cal. 2021).

- Courts "have almost uniformly found that a relevance review, and the withholding of irrelevant documents, is appropriate" because to permit otherwise would to embrace the concept that "the relevance standard from the civil rules does not apply to document productions that are the result of the execution of search terms." *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275, 276 (W.D. Wash. 2021).

- A "document dump [of] voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests [is a] tactic [that] can bury relevant evidence and force the receiving party to expend considerable time and expense parsing through documents in order to glean information which may be relevant." *Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D. W. Va. 2016).

- "A 'document dump' . . . does not comply with a party's discovery obligations." *Neale v. Coloplast Corp.*, 2020 WL 6948361, at \*6 (E.D. Tenn. Nov. 2, 2020).

- The burden is on the producing party to sort through its documents and produce those that are responsive. *Rothman v. Emory Univ.*, 1996 WL 377049, \*2 (N.D. Ill. July 1, 1996).

- Production of "all documents hit upon without reviewing a single document prior to production . . . does not satisfy [a party's] discovery obligations," nor may a party "frustrate the spirit of the discovery rules by producing a flood of documents it never reviewed . . . and thus bury responsive documents among millions of

produced pages." *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at \*10 (S.D. Cal. Dec. 21, 2017).

These cases all stand for what should be a non-controversial principle under Rules 26 and 34: regardless whether producing parties use specified search queries at the outset of the document-review process, the required review is not accomplished solely through a production of "hits" from the search term list; rather, the party must actually review the documents and determine that they are indeed responsive to the production requests and relevant to the litigation before producing them.  Otherwise, the producing party will bury the responsive documents in a production filled with non-responsive and irrelevant documents. D.D.C. Local Rules, App'x A at 127 (providing "Lawyer's Duties to Other Counsel, Parties, and the Judiciary," which include the duty to "not produce documents in a manner designed to hide or obscure the existence of particular documents").

Even in the absence of a protocol or agreed search terms, the Herring Parties have been searching for, reviewing, and producing documents responsive to Plaintiffs' requests, so none of Plaintiffs' proposed discovery-protocol terms are necessary to ensure that the Herring Parties' comply with their discovery obligations.  The parties' negotiations on a discovery protocol (and ultimate impasse on the disputed issues raised in these competing motions) have not prevented the Herring Parties from undertaking their discovery obligations with respect to Plaintiffs' pending requests for the production of documents. To the contrary, the Herring Parties have searched for; reviewed for relevance, responsiveness, and privilege; and produced 9,376 responsive documents (consisting of 67,896 pages) to date.  The productions include ESI from 34 of the 35 agreed custodians.  The productions also include non-custodial documents.  Additionally, the Herring Parties are working on their next production of responsive documents.

8

**D.      Permitting Plaintiffs to ignore their obligation to review for responsive, relevant documents would improperly shift Plaintiffs' discovery obligation to Defendants.**

Plaintiffs have steadfastly maintained throughout the meet and confer process, and even before the Court, that the parties need not conduct a responsiveness review of documents that hit on agreed search chains.  This procedure is not contemplated by the Federal Rules nor is it consistent with widely followed discovery practice.  Defendants do not consent to conducting discovery that way.

As explained above, courts have routinely recognized that search terms are an imperfect tool for determining what documents must be produced because no matter how well-intentioned parties are in crafting terms, they will yield "hits" that are neither relevant to the litigation nor responsive to the specific requests for the production of documents. Thus, it is necessarily the case that a collection of document "hits" must be physically reviewed to arrive at the universe of responsive, relevant documents.  Accordingly, Plaintiffs' proposal for document discovery will not eliminate attorney review of Plaintiffs' documents, it will merely shift Plaintiffs' obligations with respect to their documents onto the Defendants.  The Court should not permit Plaintiffs to impose their discovery obligations on Defendants. This would run counter to Plaintiffs' promise that consolidation would be "efficient" for the parties and is inconsistent with the expectation that parties should not be bound by agreements that they did not make or agree to.

**E.      The parties should not be ordered to exchange hit count reports for agreed search chains.**

The Federal Rules do not require the exchange of hit count reports following a responsiveness and relevance review and production of documents that is based upon agreed search chains. Importantly, this is a different scenario entirely than the instances when the *producing* party seeks to use hit count reports as evidence of a proposed search chain's burden or over breadth. Yet Plaintiffs have indicated that they will demand Defendants provide hit reports

as a method of evaluating Defendants' responsiveness reviews. That would be an impermissible use of hit reports for a variety of reasons, including that a purportedly low production-to-hit-count percentage is far more likely to call into question the quality of the demanded search chain rather than the quality of the attorney-conducted responsiveness and relevance review.  And the fact that Plaintiffs have announced their intention to impermissibly weaponize hit reports before they have reviewed any produced documents is further indication of their nefarious purposes.

Plaintiffs' attempt to insert this provision is especially problematic in light of the breadth of their proposed search chains to the Herring Parties.  Plaintiffs purport to have requested the Herring Parties to run "210" proposed search chains.  Some of those chains are one word terms like "Dominion" and "Poulous".  But most others are much more complex. For example:

> (elect* OR fraud* OR rig* OR retract* OR Biden* OR president*
> OR "mailin" OR vot* OR rating* OR compet* OR fall* OR airtime
> OR conspir*) AND (Fox* OR OAN* OR "One America*" OR
> Newsmax* OR Hannity* OR Bartiromo* OR Pirro OR Tucker*
> OR Carlson* OR Dobbs* OR Murdoch* OR "Dick Morris*" OR
> Toensing* OR DiGenova* OR Robinson* OR Rechenberg* OR
> Childers* OR Stinchfield* OR Salcedo OR Spicer* OR Gorka* OR
> Hamill* OR Hussion* OR Aksalic* OR Elma* OR Myers* OR
> Bobb* OR Sellers* OR Schmitt* OR Lindell* OR Dinow* OR
> Sharp* OR Pearson* OR Bannon* OR Rion* OR Ball* OR
> "Weekly Briefing" OR "Absolute Proof" OR "Absolute
> Interference" OR "Absolutely 9-0" OR "Scientific Proof" OR
> Epshteyn* OR Kerik* OR Eastman* OR Paxton* OR rally* OR
> rallies* OR Herring* OR Charles* OR Robert*)

In reality, Plaintiffs have submitted to the Herring Parties more than **6,000 separate search chains**. Such overbroad search chains will undoubtedly "hit" on irrelevant and non-responsive documents and, thus, yield artificially high "hit counts" on the reports they are demanding.  Plaintiffs know this.  As they have done in at least one other case, Plaintiffs hope to misuse these loaded reports to complain about the quality of Defendants' responsiveness review.  Of course, the mere number of documents that are included within overbroad search chains are not evidence of an improper

responsiveness review.  But the Court should not even permit Plaintiffs to engage in this sort of discovery mischief.

**F.     The parties' document productions should be organized by discovery request as contemplated by Rule 34.**

In addition to requiring the Plaintiffs to conduct a responsiveness and relevancy review under the Rules, the Court should bar Plaintiffs from responding to Defendants' document requests with consolidated document dumps.  Plaintiffs will be producing documents in response to requests from numerous Defendants (some of whom were unwillingly consolidated for discovery at Plaintiffs' urging).  A production of comingled documents among all of the consolidated cases would—even if every single document is in fact responsive to *some particular* Defendant's request—have the effect of subjecting each Defendant to a document dump of documents that they have not requested comingled with the documents that they have requested.  A simple application of the Rules, however, would ameliorate this problem.  Rule 34(b)(2)(E)(i) requires producing parties to produce responsive documents and ESI materials as they are kept in the normal course of business or categorized according to the categories in the pending document requests. Defendants' joint proposed discovery protocol incorporates that standard and upon request, would obligate a producing party to "identify the specific discovery request to which the documents or ESI (by their Bates number) are responsive."  **Exhibit A at § 8.**

**G.     The parties should not dictate the other parties' custodial interviews.**

Finally, Plaintiffs want to dictate the precise questions that must be included in all custodial interviews for the parties.  Defendants object to the inclusion of such a provision as unnecessary and infringing on the attorney-work-product privilege.  It also fails to account for the fact that in many instances the custodial interviews have already occurred.  Instead, Defendants propose a provision that requires custodial interviews with "questions calculated to ascertain their knowledge

concerning the likely location of any information relevant to the claims and defenses in that party's particular case," **Exhibit A at § 4(b)**, which is all that is necessary to ensure that parties comply with their scope-of-discovery obligations under Rule 26(b)(1).  *See, e.g.*, *DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021) ("At the least, a reasonable custodian interview consists of locating the relevant people and the locations and types of ESI."); *cf. Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) (noting each party's responsibility in responding to discovery to take "a commanding role in developing the strategy to produce its responsive emails"); *John B. v. Goetz*, 2007 WL 301280 at *1 (M.D. Tenn. Oct. 10, 2007) (requiring defendant to certify that key custodians had not removed responsive information but declining to require the specific custodial interview question recommended by plaintiff's expert).  The Herring Parties will further address problems with Plaintiffs' proposed approach in their response to Plaintiffs' motion once they have submitted their proposed order.

## III.    Conclusion

The Court should enter the Defendants' joint proposed order governing discovery matters in this litigation, attached hereto as **Exhibit A**.

Dated: October 20, 2023                      Respectfully submitted,

By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Jonathan D. Neerman (D.C. Bar No. 90003393)
jneerman@jw.com
Charles L. Babcock (*admitted pro hac vice*)
cbabcock@jw.com
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
T: (214) 953-5664
F: (214) 661-6899

/s/ R. Trent McCotter
**BOYDEN GRAY PLLC**
R. Trent McCotter (D.C. Bar No. 1011329)
tmccotter@boydengray.com
801 17th St. NW, #350
Washington, DC 20006
T: (202) 706-5488

*Counsel for the Herring Parties*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of October 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will electronically mail notification of the filing to all counsel of record who are registered ECF users.

/s/ *R. Trent McCotter*
R. Trent McCotter