# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., et al.,

      Plaintiffs/Counterclaim
      Defendants

    v.

HERRING NETWORKS, INC., et al.,

      Defendants/Counterclaim
      Plaintiffs/Third-Party Plaintiffs

    v.

AT&T SERVICES, INC., et al.,

      Third-Party Defendants.

Case No. 1:21-cv-02130-CJN

Judge Carl J. Nichols

## HERRING PARTIES' RESPONSE IN OPPOSITION TO DOMINION'S MOTION FOR ENTRY OF DISCOVERY STIPULATION

## TABLE OF CONTENTS

Index of Authorities ............................................................................................................. ii

I.      Summary of Argument ............................................................................................ 1

II.     Background Facts and the Disputed Issues............................................................. 3

        A.      Because of multiple consolidations, the discovery protocol will govern
                five separate cases............................................................................................ 3

        B.      After the Court consolidated these cases for discovery purposes, the
                Herring Parties  and Defendants reached an impasse on a protocol for the
                use of search chains. ....................................................................................... 3

        C.      Discovery conducted to-date in the consolidated cases demonstrates
                critical failures in Plaintiffs' proposed protocol. ...................................... 5

III.    Argument ................................................................................................................. 6

        A.      Plaintiffs' proposed discovery protocol eviscerates the Federal Rules'
                requirement that parties produce relevant, responsive documents. ....................... 6

        B.      Plaintiffs' "Hit Reports" proposal should be rejected because the reports
                are no evidence of any defects in a parties' production, yet Plaintiffs seek
                to weaponize them. ....................................................................................... 11

        C.      Plaintiffs' demand for the Court to micro-manage the custodial interviews
                is unnecessary and improper. ......................................................................... 13

III.    Conclusion ............................................................................................................. 15

Certificate of Service ........................................................................................................ 17

i

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Breaux v. Haliburton Energy Servs.*,
    2006 WL 8442584 (E.D. La. Oct. 27, 2006) ...........................................................................8

*DR Distrib., LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021) .....................................................................................14

*FDIC v. Boggus*,
    2015 WL 11457700 (N.D. Ga. May 13, 2015)......................................................................10

*Haughton v. D.C.*,
    315 F.R.D. 424 (D.D.C. 2014)................................................................................................8

*John B. v. Goetz*,
    2007 WL 3012808 (M.D. Tenn. Oct. 10, 2007) ...................................................................14

*Neale v. Coloplast Corp.*,
    2020 WL 6948361 (E.D. Tenn. Nov. 2, 2020) .......................................................................9

*O'Donnell/Salvatori Inc. v. Microsoft Corp.*,
    339 F.R.D. 275 (W.D. Wash. 2021) .......................................................................................8

*Palmer v. Cognizant Tech. Sols. Corp.*,
    2021 WL 3145982 (C.D. Cal. 2021)........................................................................................8

*Rothman v. Emory Univ.*,
    1996 WL 377049 (N.D. Ill. July 1, 1996)...............................................................................9

*Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*,
    318 F.R.D. 44 (S.D. W. Va. 2016)..........................................................................................8

*In re Thomas Consol. Indus., Inc.*,
    2005 WL 3776322 (N.D. Ill. May 19, 2005) ..........................................................................8

*United States for Use & Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.*,
    2023 WL 5302371 (S.D.N.Y. Aug. 17, 2023).........................................................................7

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    569 F. Supp. 3d 626 (E.D. Mich. 2021).................................................................................14

*Youngevity Int'l Corp. v. Smith*,
    2017 WL 6541106 (S.D. Cal. Dec. 21, 2017).....................................................................7, 9

**Rules**

Fed. R. Civ. P. 1 ................................................................................................................6

Fed. R. Civ. P. 26(b)(1)......................................................................................................6

Fed. R. Civ. P. 34(b)(2)(C) ................................................................................................6

D.D.C. LCvR, App'x A ....................................................................................................10

**Other Authorities**

Wright & Miller, Federal Practice and Procedure § 2213 (West Apr. 2023) ........................7

Pursuant to the Court's Order, the Parties filed motions seeking entry of their respective proposed discovery protocols. Defendants Herring Networks, Inc., d/b/a One America News Network ("OAN"), Charles Herring, Robert Herring, Sr., and Chanel Rion (collectively, the "Herring Parties"), file this response in opposition to Dominion's Motion for Entry of Discovery Stipulation[1] (ECF No. 107 in case number 1:21-cv-00040-CJN) ("Plaintiffs' Mot."), Dominion's Memorandum of Law in Support (ECF No. 107-1) ("Plaintiffs' Mem."), and Dominion's proposed Order Regarding Discovery Matters (ECF No. 107-2) ("Plaintiffs' Protocol").  In support, the Herring Parties respectfully show the Court as follows:

## I.     Summary of Argument

The Court should deny Plaintiffs' motion and reject Plaintiffs' proposed discovery protocol because it conflicts with decades of litigation conducted under the Federal Rules of Civil Procedure.  As demonstrated in their motions, the Defendants in these cases—which were consolidated *at Plaintiffs' urging*—have reached agreement on a discovery protocol consistent with the discovery obligations imposed by the Rules and will facilitate the Court's ability to "secure the just, speedy, and inexpensive determination" of these cases.

While the Defendants each assert numerous objections to the Plaintiffs' protocol, the Herring Parties' response will focus on the three most crucial disputes, *i.e.*, the provisions in the Plaintiffs' proposal that would pose the greatest impediments to the impartial, just, and speedy resolution of Plaintiffs' lawsuits.

***First*,** the Court should reject Plaintiffs' invitation to rewrite the parties' obligations under Rules 26 and 34 by eliminating the requirement that document production be limited to those

---

[1] Because the Parties remain in disagreement over several crucial provisions of the discovery protocol, the Herring Parties disagree that whatever order the Court enters should be referred to as a "Discovery Stipulation."

documents that are relevant to the litigation and responsive to particular pending document requests.  Plaintiffs' Protocol § 4.  Plaintiffs' plan to (1) engage in document dumps of any document that hits upon a search term run by Plaintiffs (whether an agreed term or self-selected), rather than review and produce only those documents that are responsive and relevant and (2) refuse to specifically search for responsive documents contradicts the Rules and, if endorsed by the Court, will interfere substantially with the Herring Parties' (and the other Defendants') ability to defend against Plaintiffs' claims.  If permitted to do so by the Court, Plaintiffs will dump more than 2,000,000 documents on Defendants, requiring each Defendant group to conduct a review taking potentially tens of thousands of hours.

*Second*, the Court should reject Plaintiffs' premature, broad requirement that hit reports be produced for all search chains run by the parties.  Plaintiffs' Protocol § 5.  Neither the Rules nor the case law requires that parties produce hit counts in scenarios like this litigation; nor should they, simply because a document hits upon a particular search chain does not make that document responsive to any request or relevant to the litigation.  Search chains are necessarily imprecise, no matter how carefully crafted in an attempt to track the requests for production.  Yet Plaintiffs intend to capitalize on that imprecision to declare that Defendants have not produced enough documents merely because they have produced too few "hits."  This deviates from what the Rules require, will only result in Plaintiffs manufacturing unnecessary discovery disputes, and the Court should reject their attempt to do so.

*Third*, Plaintiffs want the Court to micromanage the custodial interview process by imposing precise questions that must be asked of all custodians, and without considering that most custodial interviews have likely already occurred.  Plaintiffs' Protocol § 3(b) and Exhibits 3 and

4. Again, the only upshot from this departure from the Rules will be opportunities for Plaintiffs to create discovery disputes for the Court to resolve. The Court should reject this provision also.

## II.    Background Facts and the Disputed Issues

### A.    Because of multiple consolidations, the discovery protocol will govern five separate cases.

Over the course of seven months in 2021, Plaintiffs filed five separate lawsuits against different defendant groups alleging that they published false and defamatory statements of fact about Plaintiffs following the 2020 presidential election.  *E.g.*, ECF No. 1 (Complaint at ¶ 305). These defendant groups include eight individuals, one law firm, a nonprofit organization, and a small family-owned broadcast media organization based in San Diego.  A year after three of the other cases were consolidated for discovery purposes,[2] Plaintiffs moved to consolidate the case against the Herring Parties with those cases.[3]  Despite the Herring Parties' objections that consolidation of their case with cases that were much further along in the discovery process, the Court granted the motion and consolidated Plaintiffs' case against the Herring Parties with the other cases in July 2023, ECF. No. 134.

### B.    After the Court consolidated these cases for discovery purposes, the Herring Parties and Defendants reached an impasse on a protocol for the use of search chains.

The Herring Parties worked in good faith to reach an agreement with Plaintiffs on a discovery protocol.  After consolidation of all five cases, the Defendants were ultimately able to reach an agreement, despite the differences in their cases and their varying needs to ensure their ability to mount a defense against claims seeking more than a billion dollars in damages.

---

[2] *See* ECF No. 121 in case number 1:21-cv-00445-CJN (consolidating Plaintiffs' cases against Powell, Lindell, and Giuliani).
[3] ECF No. 86 (May 18, 2023).

The Herring Parties made clear during their negotiations with Plaintiffs that a responsiveness review conducted by attorneys, as the federal rules require, was to be expected of all parties prior to production and any agreement to Dominion's search chains was predicated on that expectation.  At first, the Herring Parties were led to believe that Plaintiffs agreed.[4]  Given the Herring Parties' understanding that the use of search chains would be in tandem with a responsiveness review before production of documents, the Herring Parties agreed to most of Plaintiffs' requested search chains.[5]

Plaintiffs' counsel responded by asking for hit count reports "regardless whether or not [the Herring Parties] agree to a search term" and that they believed that a "[responsiveness] review [was not] required or even appropriate in the circumstances where agreed search terms are applied to agreed custodians, and further that all hit-upon documents are relevant and should be produced."[6]  Without an agreement on the basic parameters, the Herring Parties explained that "since we have a disagreement on the implementation of the search terms, we withdraw our agreements [to those terms].  Our agreements were based on a responsiveness review, as we stated clearly in my emails."[7]  Given the parties' divergent views on these critical aspects of their discovery obligations, they are at an impasse and in need of the Court's resolution.

---

[4] Neerman Decl. ¶ 3; Exhibit 1 to Neerman Decl. (Ross to Blaesche at 4:48 pm on Tuesday, July 11, 2023) and (Blaesche to Ross at 1:51 pm on Friday, July 14, 2023).

[5] Neerman Decl. ¶ 4; Exhibit 1 to Neerman Decl.  (various emails among Blaesche and Neerman (counsel for Herring Parties) and Levin and Ross (Plaintiffs' counsel) sent between July 21 and August 31).

[6] Exhibit 1 to Neerman Decl. (Ross to Neerman at 4:53 pm on August 31, 2023).

[7] Exhibit 1 to Neerman Decl. (Neerman to Ross at 5:21 pm on August 31, 2023) and (Neerman to Ross at 5:36 pm on August 31, 2023).

C.   **Discovery conducted to-date in the consolidated cases demonstrates critical failures in Plaintiffs' proposed protocol.**

The most critical disputes between the joint Defendants' proposal and the proposal offered by Plaintiffs are related to the parties' obligation to produce relevant and responsive documents. Plaintiffs insist that a mere search of a list of terms followed by a production of all non-privileged documents suffices to meet their obligations under the Rules to produce responsive and relevant documents.   But as already demonstrated in these consolidated cases, Plaintiffs' discovery proposal yields a massive document dump, rather than a production of responsive, relevant documents. *See, e.g.*, Powell Defendants' Motion for Order Adopting Discovery Protocol Jointly Proposed By All Defendants ("Powell Mot.") at 1, ECF No. 106 in case number 1:21-cv-00040-CJN (explaining that Plaintiffs have dumped on the Powell Defendants more than 8 million pages of documents, and that the Powell Defendants' review of more than 675,000 documents to-date indicates that only 3.5% of the documents reviewed are responsive and relevant).

Plaintiffs' production to the Powell Defendants highlights the flaws in both of Plaintiffs' proposals about the production of documents. *See* Plaintiffs' Protocol at § 4 Search Methodology and § 5 Hit Reports.   First, it shows that a production without an attorney-conducted responsiveness and relevance review will not meet the parties' obligation under the Rules.  Second, it reflects the impropriety of Plaintiffs' intent to use "hit reports" as a weapon to attack the Defendants' productions.   Courts have repeatedly stated that search term "hits" are not synonymous with responsiveness or relevance.   And the Powell Defendants' review of the production they have received from Plaintiffs to-date certainly confirms this to be true in this litigation.  Indeed, there is no need to order the parties to produce "hit reports" for searched and reviewed documents, because these reports would not in any way reflect whether the productions were incomplete.  The Court should adopt the Defendants' joint proposed discovery protocol and

require Plaintiffs to limit their document production to relevant, responsive documents as determined through an actual review of the documents before production.

### III.    Argument

**A.    Plaintiffs' proposed discovery protocol eviscerates the Federal Rules' requirement that parties produce relevant, responsive documents.**

The Federal Rules of Civil Procedure are intended to "secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1. Rule 26(b)(1) addresses the scope of discovery.  The Rules provide that:

> Parties may obtain discovery regarding **any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to **relevant information**, the parties' resources, **the importance of the discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).  Similarly, when parties object to a particular request for the production of documents, the objection "must state whether any **responsive materials** are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C) (emphasis added).  By their plain terms, the Rules ensure that document review and production serves to limit the produced documents to those that are relevant and responsive to a party's document requests.

Plaintiffs ask the Court to ignore these provisions and adopt instead a discovery protocol that permits Plaintiffs to evade their discovery obligations in favor of massive document dumps on the Defendants.  Specifically, Plaintiffs suggest that the "use of search terms, custodians, and time frames to identify responsive documents" is all that must be done.  And they suggest this approach is appropriate even when they use self-selected terms, in addition to when they run agreed terms.  Plaintiffs pejoratively describe the attorney review of documents for responsiveness and

relevance that litigants have employed for decades as a "secondary" and "supplemental review" that runs counter to "the best practice." Plaintiffs' Mem. at 26. Not so.

As demonstrated both by the case law and Plaintiffs' production to-date, search chains do not amount to, nor do they replace, a responsiveness and relevance review of the documents prior to production. *See, e.g.*, Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2213 (noting that "the producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of documents of unrequested materials onto the discovering party along with the items actually sought under Rule 34"); *id.* (cautioning that the use of "search terms could prove somewhat unwieldy in identifying genuinely responsive items").

At most, search terms can "identify *potentially* responsive documents in cases involving substantial amounts of ESI." *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) (emphasis added). It is thus improper to "conflate[] a hit on the parties' proposed search terms with responsiveness. The two are not synonymous." *Id. See also United States for Use & Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.*, 2023 WL 5302371, at *4 (S.D.N.Y. Aug. 17, 2023) ("Search terms, even when narrowly tailored, may still produce some amount of non-responsive documents." Thus it is appropriate for the producing party to "review its documents to ensure that they are responsive to the discovery demands even if they hit on one or more of the parties' agreed-upon terms.").

As the Herring Parties and the other Defendants demonstrated in their motions in support of Defendants' proposed discovery protocol, courts across the country have repeatedly made clear

that parties may not bury the responsive, relevant documents that were requested within large

"document dumps" of documents that were not requested.[8]  For example:

- Document productions of "over 1000 pages of documents, many of which were unresponsive to the particular requests for which they were provided" were "insufficient under Rule 34" because the rule did not permit a party to produce "unnecessary documents so as to be unduly burdensome."  *Haughton v. District of Columbia*, 315 F.R.D. 424, 429–30 (D.D.C. 2014). "Although the documents Plaintiff requested were likely contained within these pages, Plaintiff should not have to sort through all of Defendant's records to find the responsive documents." *Id.* at 430.

- "The Rules require that when a party responds to a request for production, it should only produce those documents responsive to the document requests." *Breaux v. Haliburton Energy Servs.*, 2006 WL 8442584, at *2 (E.D. La. Oct. 27, 2006).

- The producing party is "obligated to sort through the documents himself and then produce *only* those responsive to the document requests. It [is thus] insufficient for [a] plaintiff merely to provide defendants access to sort through plaintiff's documents in search of documents responsive to their document requests." *In re Thomas Consol. Indus., Inc.*, 2005 WL 3776322, *8 (N.D. Ill. May 19, 2005).

- The Rule 26 standard for discovery (*i.e.*, "nonprivileged matter[s] that [are] relevant") is not satisfied through a production of all documents hitting upon a search term "without a responsiveness review," thus courts should not order a party to "produce any document simply because it contains a search term whether or not it is responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action." *Palmer v. Cognizant Tech. Solutions Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. 2021).

- Courts "have almost uniformly found that a relevance review, and the withholding of irrelevant documents, is appropriate" because to permit otherwise would to embrace the concept that "the relevance standard from the civil rules does not apply to document productions that are the result of the execution of search terms." *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275, 276 (W.D. Wash. 2021).

- A "document dump [of] voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests [is a] tactic [that] can bury relevant evidence and force the receiving party to expend considerable time and expense parsing through documents in order to glean information which may be relevant." *Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D. W. Va. 2016).

---

[8] Herring Parties' Motion at 6–8 (collecting cases); Byrne Mem. at 5–7 (collecting cases); Powell Defendants' Memorandum of Law in Support of Motion for Order Adopting Discovery Protocol Jointly Proposed By All Defendants ("Powell Mem.") at 7–12 (collecting cases).

- "A 'document dump' . . . does not comply with a party's discovery obligations." *Neale v. Coloplast Corp.*, 2020 WL 6948361, at *6 (E.D. Tenn. Nov. 2, 2020).

- The burden is on the producing party to sort through its documents and produce those that are responsive. *Rothman v. Emory Univ.*, 1996 WL 377049, *2 (N.D. Ill. July 1, 1996).

- Production of "all documents hit upon without reviewing a single document prior to production . . . does not satisfy [a party's] discovery obligations," nor may a party "frustrate the spirit of the discovery rules by producing a flood of documents it never reviewed . . . and thus bury responsive documents among millions of produced pages." *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017).

These cases confirm that regardless whether producing parties use specified search terms at the outset of the document-review process, the required review is not accomplished *solely* through a production of "hits" from the search term list.  Unless all parties agree to an altered process—and the Defendants emphatically do not agree in these cases—parties must actually review the documents and determine that they are indeed responsive to the production requests before producing them.

Plaintiffs have already demonstrated fundamental flaws in their proposed approach to discovery.  For example, as the Powell Defendants explain, Plaintiffs have already told them that "Dominion is not affirmatively searching for documents responsive to [your] requests. Dominion will not specifically search for responsive documents."  Powell Mem.at 4; Powell Mem. Exh. B. Instead, Plaintiffs have selected search terms that they believe will only be  "broad enough to cover the vast majority of the documents that would be responsive to the requests you served."  Powell Mem. at 5; Powell Mem. Exh. B.

And the production to Powell to-date demonstrates just how improper this approach is, in practice, for these consolidated cases.  Powell Mot. at 1 (explaining that only 3.5% of Dominion's produced documents that Powell's counsel has reviewed so far are relevant and responsive under Rule 26).   Moreover, Plaintiffs' production of massive quantities of unreviewed documents

conflicts with the Court's Local Rules, which include the duty to "not produce documents in a manner designed to hide or obscure the existence of particular documents."  D.D.C. Local Rules, App'x A at 127 (providing "Lawyer's Duties to Other Counsel, Parties, and the Judiciary").

Now Plaintiffs seek the Court's blessing upon their abrogation of their discovery obligations.  Under Plaintiffs' proposed protocol, Plaintiffs need only "locate the *potentially responsive* ESI using . . . search terms, custodians, and time periods,"  Plaintiffs' Protocol at 5 (emphasis added), and then dump the contents of those searches on Defendants.

Unsurprisingly, Plaintiffs can point to no case in which that process was employed as Plaintiffs have begun to do so—much less do they offer cases to support the Court permitting them to do so across five consolidated cases, with Defendants unwilling to agree to such a departure from the Rules, and to permit a massive document dump of non-responsive documents.  For example, Plaintiffs (Plaintiffs' Mem. at 27–28) look to a Georgia case in which the court determined that a production based on *agreed* search terms (not the case here, with respect to at least some Defendants) would not yield "anything close to 150,000 documents," thus it would not require a manual responsiveness review (here, Plaintiffs proudly proclaim that they have already dumped on certain Defendants more than 828,000 documents, *see* Plaintiffs' Mem. at 6). *FDIC v. Boggus*, 2015 WL 11457700, at \*2 (N.D. Ga. May 13, 2015); *id.* (further noting that additional search queries could be used "to filter out irrelevant documents without a great deal of cost to either party," which Plaintiffs have not and cannot establish to be the case here).

Similarly, in *Outzen v. Kapsch Trafficcom USA, Inc.*, the district court for the Southern District of Indiana provided only that for "terms agreed upon by the parties," the producing party would not have to conduct a relevance or responsiveness review.  2021 WL 3673786, at \*8 (S.D. Ind. Aug. 19, 2021).  Moreover, the court in *Outzen* justified its result because the producing party

could elect either to "permit[] the requesting party to rummage through its files or incur[] the expense of culling the responsive documents from those files." But Plaintiffs here demand that they not be required to make either choice: first, they refuse to go through the expense of reviewing documents for responsiveness—indeed, they insist they won't even "specifically search for responsive documents," Powell Mem.at 4; Powell Mem. Exh. B—yet they also refuse to provide Defendants access to their files, instead they will select only a subset of their files maintained by certain custodians, review and cull them for asserted privileges, and then provide the Defendants whatever that deficient process yields.

The absurdity of Plaintiffs' proposal is highlighted by the fact that Plaintiffs are reviewing their mountain of documents for privileges but at the same time refusing to perform a responsiveness review. It is unlikely that a responsiveness review would take much more time than a thorough privilege review. And Plaintiffs' complaint that a responsiveness review is too difficult for them, because relevance may be measured differently between the five cases, ignores the fact that Plaintiffs asked the Court to consolidate the cases for discovery purposes. Plaintiffs created for themselves the burden they now complain of: Plaintiffs chose to file five separate billion-dollar lawsuits. And Plaintiffs demanded—over the strong objection of some Defendants—consolidation of all of these cases for the discovery process.

To be sure, what Plaintiffs seek is not a protocol that eliminates a burden. They seek a protocol that shifts Plaintiffs' obligations onto Defendants. But the Court should not permit Plaintiffs to impose their discovery obligations on Defendants.

**B.    Plaintiffs' "Hit Reports" proposal should be rejected because the reports are no evidence of any defects in a parties' production, yet Plaintiffs seek to weaponize them.**

Plaintiffs' protocol would require production of "a report of the total number of document hits that result from applying each search term . . . regardless of whether the search term or

custodian is agreed."  Plaintiffs' Protocol § 5.  That Plaintiffs are demanding hit reports for all searches at the outset of the process, rather than using targeted hit report requests after a parties' production has been completed if discrepancies arise, just shows that Plaintiffs are not interested in using hit reports for the limited uses for which they are traditionally used.  Even the cases cited by Plaintiffs do not support Plaintiffs' proposed provision.  In *Castle Aero Florida International, Incorporated v. Marketing and Financial Services, Incorporated*, *see* Plaintiffs' Mem. at 33, after documents were produced and depositions were taken, no documents were produced despite deposition testimony implying their existence.  2013 WL 12152475, *1 (D. Minn. Jan. 4, 2013). The court required the producing party to produce a hit report for ***one search term*** to assist the receiving party in resolving that discrepancy between the production and the testimony.  *Id.*  That is a far cry from what Plaintiffs' protocol requires.

And Plaintiffs' other case is even less supportive of Plaintiffs' proposal.  In *Sweeney v. Nationwide Mutual Insurance Company*, *see* Plaintiffs' Mem. at 34, the producing party raised a proportionality objection but without running a hit report for the proposed terms, "the Court was unable to evaluate the time and cost required to review documents returned by [the requesting party's] proposed searches."  2023 WL 2549549, at *2 (S.D. Ohio Mar. 17, 2023).  A party complaining that a search term is too burdensome must support the proportionality objection, and the hit report is one way to do so.  But that is not want Plaintiffs want to use hit reports for. Indeed, rather perversely, if Plaintiffs are permitted to demand hit reports for all searched terms, all they will really be showing the Court when they suggest that not enough documents have been produced for a particular search chain is that the search chain itself was not tailored to hit upon responsive and relevant documents (and so requiring it of Defendants imposed a burden that was disproportionate to the needs of Plaintiffs' case).

It is also telling that Plaintiffs cite this case to show that "this use of hit reports is *standard* across modern civil litigation," Plaintiffs Mem. at 34 (emphasis added), when "this use" of hit reports is to ensure that the forthcoming attorney-led review of documents prior to production would impose only a proportional burden. *Sweeney*, 2023 WL 2549549, at *2 (noting the objection the court was evaluating was "the time and cost required *to review documents returned by Plaintiffs' proposed searches*"). Plaintiffs' recognition that hit reports are routinely used to assess whether an attorney-conducted responsiveness and relevance review would be proportional to the case demonstrates that not even Plaintiffs believe their suggestion made earlier in their briefing that such a responsiveness and relevance review "is not the norm." Plaintiffs' Mem. at 29.

Unsurprisingly, Plaintiffs offer no case law to support the blanket demand for a hit report on every search query because there is no justification for such a demand, especially at the outset of the production process before Plaintiffs have reviewed the produced documents or even tried to explain what they believe might be missing in Defendants' productions. Moreover, the demand for hit reports in this context is obviously just the first step towards Plaintiffs demanding production of all documents that hit on a search chain. So in reality, this proposal is laying the foundation for demanding that the Court order parties to abandon responsiveness reviews altogether. The Court should not include this improper use of hit reports in the discovery protocol.

**C. Plaintiffs' demand for the Court to micro-manage the custodial interviews is unnecessary and improper.**

Plaintiffs seek a Court order requiring Defendants to conduct custodial interviews on 10 precise topics, and ask whether the custodians discussed any such topics on any one of 15 electronic applications. Plaintiffs' Exhibit 4, ECF No. 107-6 in case number 1:21-cv-00040 (list of required topics); Plaintiffs' Exhibit 5, ECF No. 107-7 in case number 1:21-cv-00040; *see also* Plaintiffs' Mem. at 4 ("In the interviews, the parties will specifically ask (1) whether the custodian

communicated with anyone about the topics in Exhibit 4 on any application, otherwise known as "Apps," including those identified in Exhibit 5.").  Nothing in the Rules or the case law requires the Court to micro manage the discovery process in this fashion. And to be sure, if the Court enters Plaintiffs' proposed provision, Plaintiffs' next step will be to burden the Court with manufactured disputes over compliance with this unnecessary provision.

Instead, the Court should adopt Defendants' proposal which requires that custodial interviews include "questions calculated to ascertain [custodians'] knowledge concerning the likely location of any information relevant to the claims and defenses in that party's particular case," *see* Exhibit A at § 4(b) to Herring Parties' Motion.  Nothing more is necessary to ensure compliance with the parties' scope-of-discovery obligations.  *See, e.g.*, *DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021) ("At the least, a reasonable custodian interview consists of locating the relevant people and the locations and types of ESI."); *cf. Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) (noting each party's responsibility in responding to discovery to take "a commanding role in developing the strategy to produce its responsive emails"); *John B. v. Goetz*, 2007 WL 3012808 at *1 (M.D. Tenn. Oct. 10, 2007) (requiring defendant to certify that key custodians had not removed responsive information but declining to require the specific custodial interview question recommended by plaintiff's expert).  Defendants' proposed protocol will ensure that the interviewees are questioned sufficiently to determine whether they were likely to have relevant electronic communications without bogging the Court down with policing the specific script used in each interview.

At the very least, if the Court decides it must micro-manage the questions to be asked in custodial interviews, the Court's order should reflect that many of the parties have likely already

conducted the custodial interviews (especially considering that many of the cases involve agreed-upon custodians). Any order regarding specific questions to be asked should apply only to custodians not yet interviewed; the Court should make clear that parties need not re-interview all previously interviewed custodians.

### III.    Conclusion

The Court should deny Plaintiffs' motion, and instead it should grant Defendants' respective motions for entry of Defendants' proposed discovery protocol and enter the order included as **Exhibit A** to the Herring Parties' motion. *See* ECF Nos. 142, 142-1 in case number 1:21-cv-02130.

Dated: October 31, 2023                     Respectfully submitted,


                                            By: */s/ R. Trent McCotter*_____

                                                **JACKSON WALKER LLP**
                                                Jonathan D. Neerman (D.C. Bar No. 90003393)
                                                jneerman@jw.com
                                                Charles L. Babcock (*admitted pro hac vice*)
                                                cbabcock@jw.com
                                                2323 Ross Avenue, Suite 600
                                                Dallas, TX 75201
                                                T: (214) 953-5664
                                                F: (214) 661-6899

                                                **BOYDEN GRAY PLLC**
                                                R. Trent McCotter (D.C. Bar No. 1011329)
                                                tmccotter@boydengray.com
                                                801 17th St. NW, #350
                                                Washington, DC 20006
                                                T: (202) 706-5488

                                                *Counsel for the Herring Parties*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October 2023, the foregoing was filed with the

Clerk of the Court using the CM/ECF system, which will electronically mail notification of the

filing to all counsel of record who are registered ECF users.

/s/ *R. Trent McCotter*
R. Trent McCotter