# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br>　　　　　*Plaintiffs/Counter-Defendants*,<br><br>　　v.<br><br>SIDNEY POWELL, et al.,<br><br>　　　　　*Defendants/Counter-Plaintiffs*. | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al.,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>RUDOLPH W. GIULIANI,<br><br>　　　　*Defendant*. | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al.,<br><br>　　　　　*Plaintiffs/Counter-Defendants*,<br><br>　　v.<br><br>MY PILLOW, INC., et al.,<br><br>　　　　*Defendants/ Counter- and Third-Party Plaintiffs*,<br><br>　　v.<br><br>SMARTMATIC USA CORP., et al.,<br><br>　　　　　*Third-Party Defendants.* | Civil Action No. 1:21-cv-00445 (CJN) |

US DOMINION, INC., et al.,
        *Plaintiffs*,

      v.

PATRICK BYRNE,

          *Defendant*.

                Civil Action No. 1:21-cv-02131 (CJN)

US DOMINION, INC., *et al.,*

      *Plaintiffs/Counter-Defendants*,

      v.

HERRING NETWORKS, INC. *et al.,*

      *Defendants/ Counter- and
        Third-Party Plaintiffs*,

      v.

AT&T SERVICES, *et al.,*

          *Third-Party Defendants.*

                Civil Action No. 1:21-cv-02130 (CJN)

## **DOMINION'S OPPOSITION TO DEFENDANTS OAN, POWELL, POWELL, P.C., BYRNE, AND BOBB'S MOTIONS FOR ENTRY OF DISCOVERY PROTOCOL**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD............................................................................................................4

ARGUMENT .........................................................................................................................5

I.     Defendants' Proposed Secondary Responsiveness and Relevance Review and Document Organization Provision Distort the Federal Rules and Prejudice Dominion. ..............................................................................................................5

     A.     Defendants' Brief Distorts Rule 34's Requirements. ...............................5

     B.     The Cases Defendants Cite Do Not Support Their Position....................7

     C.     Dominion's Production Consists Entirely of Responsive Documents. ................10

     D.     Defendants' Desire that Dominion Review for Responsiveness and Relevance Is Unsupported by the Federal Rules and Prejudicial. .........................13

II.     Defendants' Proposed Custodian Interview Process Should Not Be Entered Because It Lacks Thoroughness, Decreases Transparency, and Omits Relevant Personal Data. .......................................................................................................14

     A.     Defendants' Proposal Fails to Ensure Thorough Custodian Interviews. ..............15

     B.     Defendants' Arguments Against Transparency Lack Merit. ................16

           1.     Dominion's Proposal Does Not Infringe on Attorney Work Product. .................................................................................17

           2.     Dominion's Proposal Requires Efforts to Preserve But Does Not Require Interviews of Individuals Outside a Party's Control...................18

           3.     Defendants' Excuse that Interviews Have Occurred Is a Non-Starter. ............................................................................20

     C.     Defendants' Limitation of Collection to Work Data Is Improper.........................21

III.     Hit Reports Are Inexpensive, Clearly Needed, and Would Help Both Parties.................24

IV.     Dominion's Proposal's Other Terms Are Just, Efficient, and Unrebutted. .......................25

CONCLUSION.....................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Woodford*,
    No. CV-F-05-1104 OWW LJO, 2007 WL 309485 (E.D. Cal. Jan. 30, 2007) ......................23

*Attias v. CareFirst, Inc.*,
    No. 15-CV-882 (CRC), 2023 WL 5952052 (D.D.C. Sept. 13, 2023) ...................................25

*Barnes v. D.C.*,
    289 F.R.D. 1 (D.D.C. 2012).............................................................................................4, 8

*Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*,
    No. 11-2672, 2013 WL 12152475 (D. Minn. Jan. 4, 2013)...................................................24

*Chevron Corp. v. Salazar*,
    275 F.R.D. 437 (S.D.N.Y. 2011) ........................................................................................22

*City of Colton v. Am. Promotional Events, Inc.*,
    277 F.R.D. 578 (C.D. Cal. 2011) .................................................................................8, 9, 10

*Colonies Partners, L.P. v. County of San Bernardino*,
    No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)...................24

*County of Los Angeles v. Superior Court*,
    65 Cal. App. 5th 621 (Cal. Ct. App. 2021) .........................................................................23

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
    513 F. Supp. 3d 839 (N.D. Ill. 2021) .............................................................................15, 16

*F.D.I.C. v. Horn*,
    No. CV 12-5958 (DRH) (AKT), 2015 WL 1529824 (E.D.N.Y. Mar. 31, 2015) ...................19

*Federal Deposit Ins. Corp. v. Boggus*,
    No. 2:13-CV-00162-WCO, 2015 WL 11457700 (N.D. Ga. May 13, 2015) ...........................7

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
    103 F.3d 1007 (D.C. Cir. 1997) ...........................................................................................4

*Freeman v. Giuliani*,
    No. 21-3354 (BAH), 2023 WL 5600316 (D.D.C. Aug. 30, 2023) ...................................16, 17

*Goolsby v. County of San Diego*,
    No. 3:17-cv-564-WQH-NLS, 2019 WL 3891128 (S.D. Cal. Aug. 19, 2019) ........................22

*H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*,
No. 2:15-cv-00631-AJS, 2015 WL 12791338 (W.D. Pa. July 28, 2015) ..............................22

*Heartland Food Products, LLC v. Fleener*,
No. 18-cv-2250-JAR-TJJ, 2019 WL 2501862 (D. Kan. June 17, 2019) ...................................6

*Henson v. Turn, Inc.*,
No. 15-cv-01497-JSW (LB), 2018 WL 5281629 (N.D. Cal. Oct. 22, 2018)...................22, 24

*ID Ventures, LLC v. Chubb Custom Ins. Co.*,
No. 17-14182, 2018 WL 8807125 (E.D. Mich. Oct. 12, 2018).............................................22

*In re Skanska USA Civ. Southeast Inc.*,
No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239 (N.D. Fla. Aug. 5, 2021) .......................22

*John B. v. Goetz*,
No. 3:98-0168, 2007 WL 3012808 (M.D. Tenn. Oct. 10, 2007)............................................17

*Lamaute v. Power*,
339 F.R.D. 29 (D.D.C. 2021) ...............................................................................................13

*Lexington Luminance LLC v. Feit Elec. Co., Inc.*,
No. CV1810513PSGKSX, 2020 WL 10052403 (C.D. Cal. July 8, 2020) .........................9, 10

*Moore v. Chertoff*,
577 F. Supp. 2d 165 (D.D.C. 2008) .......................................................................................19

*Outzen v. Kapsch Trafficcom USA, Inc.*,
No. 1:20-cv-01286-TWP-MJD, 2021 WL 3673786 (S.D. Ind. Aug. 19, 2021)......................8

*Perkins v. City of Modesto*,
2020 WL 1333109 (E.D. Cal. Mar. 23, 2020) ..................................................................8, 18

*Raine Grp. LLC v. Reign Capital, LLC*,
2022 WL 538336 (S.D.N.Y. 2022)..........................................................................................9

*RG Abrams Ins. v. Law Offs. of C.R. Abrams*,
342 F.R.D. 461 (C.D. Cal. 2022) ..........................................................................................23

*Small v. University Medical Center*,
No. 2:13-CV-0298-APG-PAL, 2018 WL 3795238 (D. Nev. Aug. 9, 2018)..........................17

*Spilker v. Medtronic, Inc.*,
2015 WL 1643258 (E.D.N.C. Apr. 13, 2015)...........................................................................6

*State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*,
No. 19-10835, 2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) .........................................22, 23

*Treppel v. Biovail Corp.*,
 233 F.R.D. 363 ................................................................................................17

*Trevino v. Golden State FC LLC*,
 No. 1:18-cv-00120-DAD-BAM, 2019 WL 3892356 (E.D. Cal. Aug. 19, 2019) ...................24

*Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg. Co.*,
 2009 WL 1803216 (E.D. Mich. June 17, 2009) ........................................................6

*Washington v. Thurgood Marshall Acad.*,
 232 F.R.D. 6 (D.D.C. 2005) .............................................................................5, 9

*Waskul v. Washtenaw Cty. Cmty Mental Health*,
 569 F. Supp. 3d 626 (2021) .............................................................................16

*Williams v. Superior Ct.*,
 3 Cal. 5th 531 (Cal. 2017) ...............................................................................23

*Williams v. United States*,
 No. 17-445 (JDB), 2018 WL 11427942 (D.D.C. Sept. 27, 2018) ...........................23

*Youngevity Int'l Corp. v. Smith*,
 No. 16-CV-00704-BTM-JLB, 2017 WL 6541106 (S.D. Cal. Dec. 21, 2017) ...........9, 10, 13

*Zimmerman v. Al Jazeera Am., LLC*,
 No. 16-00013, 2018 WL 11411310 (D.D.C. Sept. 18, 2018) ...............................22

**Statutes**

Cal. Labor Code § 980 ......................................................................................24

**Rules**

Fed. R. Civ. P. 1 .............................................................................................4

Fed. R. Civ. P. 26 ..................................................................................... *passim*

Fed. R. Civ. P. 33 ...........................................................................................8

Fed. R. Civ. P. 34 ..................................................................................... *passim*

**Other Authorities**

David J. Kessler & Daniel L. Regard II, *Format of Production, The Federal
 Judges' Guide to Discovery Edition 3.0*, The Electronic Discovery Institute
 (2017) ..........................................................................................................6

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | Giuliani's First Set of Requests for Production to Dominion |
| 2 | Powell's First Set of Requests of Production to Dominion |
| 3 | Powell's Second Set of Requests for Production to Dominion |
| 4 | OAN's First Set of Requests for Production to Dominion |
| 5 | Lindell's First Set of Requests for Production to Dominion |
| 6 | October 31, 2023 Email from Mark Walker |
| 7 | Public Versions of Selected Exhibits to Dominion's Motion for Summary Judgment in *US Dominion, Inc. v. Fox News Network, et al.*, C.A. N21C-03-257 EMD (Del. Sup. Ct.) |

## INDEX OF ABBREVIATIONS

| ABBREVIATION | DESCRIPTION |
|---|---|
| Lindell Dkt. ## | ECF docket entry in *US Dominion, Inc. v. My Pillow, Inc., et al.*, 1:21-cv-00445-CJN (D.D.C.) |
| Powell Dkt. ## | ECF docket entry in *US Dominion, Inc. v. Sidney Powell et al.*, 1:21-cv-00040-CJN (D.D.C.) |
| Giuliani Dkt. ## | ECF docket entry in *US Dominion, Inc. v. Giuliani, Inc., et al.*, 1:21-cv-00213-CJN (D.D.C.) |
| Byrne Dkt. ## | ECF docket entry in *US Dominion, Inc. v. Patrick Byrne*, 1:21-cv-02131-CJN (D.D.C.) |
| OAN Dkt. ## | ECF docket entry in *US Dominion, Inc. v. Herring Networks, Inc. et al.*, 1:21-cv-02130-CJN (D.D.C.) |

All page references to Docket entries are to the ECF pagination.

## INTRODUCTION

This Court was right to order discovery to be consolidated across these four defamation cases, with the fifth voluntarily coordinating.  All arise from falsehoods published about Dominion Voting Systems in connection with the 2020 Presidential Election.  Defendants are all asserting similar and, in many cases, identical defenses against Dominion and are all looking for evidence from Dominion's files to prove them.  That is why most of the Defendants have served similar Requests for Production targeted at the value and prospects of Dominion going into the 2020 Presidential Election; the reach of defamatory statements against Dominion; whether and how Dominion incurred damages as a result of the defamatory statements; and how those damages should be allocated between and among the Defendants who made or repeated them.

As well, the defamatory statements Dominion is suing over overlap among Defendants. As a result, Defendants are each trying to prove the truth of those statements—most significantly that Dominion's voting machines were used to rig the 2020 Presidential Election.  Again, all Defendants are trying to prove those defenses with expansive requests for documents from Dominion's files about Dominion's operations, activities, and customers. ***Any evidence Dominion produces to one Defendant related to these defenses is the same evidence it would produce to the others asserting the same defenses***.  That is in no small part why consolidation of these cases makes sense and why discovery governed by a just, efficient discovery protocol is essential.

Against this backdrop, five Defendants have filed four separate motions supporting Defendants' joint proposed discovery protocol, repeating the same arguments.[1]  They primarily complain that Dominion has not and does not intend to conduct a "relevance" review of documents

---

[1] *See* OAN Dkt. 142 (OAN); OAN Dkt. 143 (Bobb); Powell Dkt. 106 (Powell/Powell, P.C.); Byrne Dkt. 66 (Byrne).  This brief in opposition to Defendants' motions is filed on each of those dockets. Defendants Giuliani, Lindell, My Pillow, and DTR did not file or join in any motion.

Dominion has and will produce in response to their 763 separate requests, nor does it intend to conduct a secondary responsiveness review separate from its use of custodians, time periods, and search terms to locate responsive custodial ESI.  They raise a couple of other issues as well.  Each of their arguments should be rejected and their proposal should not be entered.

*First*, Defendants repeatedly accuse Dominion of engaging in document dumps and cite cases that apply Rule 34, but Defendants disregard what Rule 34, those cases, and their own proposed protocol actual say.  Dominion produced custodial ESI as kept "in the usual course of business" and included metadata identifying the organization of documents, which courts have approved, and Defendants specifically included in their own proposed discovery protocol.  Indeed, Defendants ignore that most of the cases they cite do not involve search terms, custodians, and time periods at all.  Other cases they cite are not about *requiring* responsiveness review but about *permitting* responsiveness and relevance review on the facts of those cases.  None of Defendants' cases support entering their proposed provision requiring such review.

Defendants also ignore the facts of the subject cases and their own document requests.  Fox News ("Fox") sought discovery on the same defenses Defendants assert, which is no doubt why Defendants in these consolidated cases demanded that Dominion produce from the *Fox* case the depositions of its current and former employees, its expert reports, and even its exhibit list.  *It is also why five Defendants—a majority—all served specific requests for production requiring that Dominion produce every document Dominion produced to Fox*.

Defendants cannot now complain of a "document dump" when they received the documents exactly responsive to their requests.   Furthermore, as of October 26, 2023, Defendants have made 763 very broad document requests sweeping in virtually all the company's operations.  The entire production Dominion has made to date is responsive to these requests, and indeed was

tailored using custodians, search terms, and time periods.   Perhaps recognizing this fact, Defendants now also argue that Dominion (but not Lindell or My Pillow) should have to separately review each of those documents for their "relevance" to each Defendant's case.  The Federal Rules require nothing of the sort.  In any event, requiring secondary responsiveness and relevance review as to each document Defendants requested would be subjective, costly, disproportionately burdensome on Dominion, and likely to incentivize parties to gin up overbroad requests to force an opponent to weed out irrelevant material.  Sadly, it seems that is exactly what Defendants hope to accomplish.

*Second*, thorough custodian interviews are not optional.  Defendants acknowledge leading caselaw recognizing that they are a requirement of the Federal Rules, but Defendants then ignore that conducting a thorough interview requires detailed questioning.  They also ignore that transparency and clarity about custodian interviews now will cut down on disputes later.  Their excuses for not being transparent about those interviews are unfounded: Dominion's proposal does not violate attorney work product privilege, require interviewing custodians outside a party's control, or mandate re-doing correctly done interviews.  Finally, Defendants' unexplained restriction to "work" data is improper because most of the Defendants are individuals and for all Defendants the line between work and personal is blurry or non-existent.

*Third*, Defendants—really OAN and Powell, as all others have provided hit reports if requested—protest Dominion's proposed provision on hit reports.  They have no good reason why, as hit reports are inexpensive to create and provide important information to all parties.  Surprisingly, OAN refers obliquely to Dominion's use of hit reports in "another case," going so far as to characterize Dominion as causing "mischief" by using them.  Of course, the "other case" to which OAN alludes is *Fox*, in which Dominion appropriately used a hit report Fox produced to

show that Fox failed to comply with its discovery obligations by utilizing a responsiveness review to produce less than 5% of documents that hit on Dominion's search terms (and a very small fraction of documents that hit on the term "Dominion").  Following briefing and argument, the court agreed with Dominion that Fox's hit report demonstrated a problem with Fox's review process and ordered Fox to produce all non-privileged documents without responsiveness review.[2]

**Fourth**, Defendants offer no argument to support entry of the provisions in their protocol that differ from Dominion's proposal, apart from the three issues above, and have thus waived them.  Dominion has provided good cause and ample explanation of why its proposal protocol advances efficient, just resolution of the matter.  *See* Powell Dkt. 107 (Dominion's Motion).  This Court should enter Dominion's proposal.

At bottom, the core purpose of the proposed discovery protocol is to find a path forward that advances these cases to trial.  Defendants should not be allowed to withhold basic information about their approach to discovery, and then subject Dominion to lop-sided requirements that would impose a massive burden and require re-doing work, at enormous cost, for no good reason.

## LEGAL STANDARD

Courts exercise wide discretion in managing discovery.  *See Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).  Under Rule 1 of the Federal Rules of Civil Procedure, the rules governing discovery should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  When considering motions to compel, courts look at "the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) . . . ." *Barnes v. D.C.*, 289 F.R.D. 1, 5-6 (D.D.C. 2012).

---

[2] OAN knows this.  Its counsel, Jackson Walker, represented Fox until a few weeks after the order.

**ARGUMENT**

I.  **Defendants' Proposed Secondary Responsiveness and Relevance Review and Document Organization Provision Distort the Federal Rules and Prejudice Dominion.**

Dominion's proposal ensures that parties comply with Rule 34's requirements for the organization of documents and permits the identification of responsive documents through multiple means, including using custodians, search terms, and time periods, in addition to providing for collection and production of noncustodial documents using targeted searching. *See* Powell Dkt. 107-2 (Dominion's Proposed Order) at 6, 9. Defendants suggest Dominion's custodial search methodology is a "document dump" and propose onerous secondary responsiveness and relevance reviews, and a requirement that Dominion match documents produced to document requests upon request. OAN Dkt. 142-1 (Defendants' Proposed Order) at 5-6, 9. But contrary to Defendants' assertions, Dominion's production fully complies with the Federal Rules and the parties' stipulated ESI Protocol (Powell Dkt. 107-3; OAN Dkt. 142-2). And neither the language of the Federal Rules nor the caselaw they cite supports imposition of their proposal, particularly on the facts of this case, where Defendants have sought the entire *Fox* production and have propounded hundreds of broad document requests. Defendants' proposal would create perverse incentives anathema to Rule 26. *See* Powell Dkt. 107-1 (Dominion's Motion) at 40-41.[3]

A.  **Defendants' Brief Distorts Rule 34's Requirements.**

Defendants suggest that Rule 34 requires parties to match up each document produced with particular document requests. That is flat wrong. A "defendant is not required to identify to which requests the produced documents are responsive, if defendant produces them as they are kept in the usual course of business." *Washington v. Thurgood Marshall Acad.*, 232 F.R.D. 6, 10 (D.D.C.

---

[3] Dominion hereby incorporates by reference its entire Motion for Entry of Proposed Order Regarding Discovery, Memorandum of Law, Proposed Order, and exhibits filed in support. *See* Powell Dkt. 107. Dominion refers herein to Powell Dkt. 107-1 as "Dominion's Motion."

2005).   As stated in Dominion's Motion and reflected in the caselaw, Rule 34 governs the organization of documents and requires only that, "A party must produce documents as they are kept in the usual course of business ***or*** must organize and label them to correspond to the categories in the request."   Fed. R. Civ. P. 34(b)(2)(E)(i) (emphasis added).   Defendants' own proposal mirrors Rule 34's organization of document requirements, and even goes on to specify, "ESI is considered to be produced in the manner in which it is kept in the usual course of business when the ESI contains or is ***accompanied by original file path metadata***."   OAN Dkt. 142-1 at 9 (emphasis added).   Defendants' brief is out of step with Defendants' own proposed language, which contemplates the use of metadata to satisfy the "usual course of business" requirement.

And although Rule 34 does not specify what constitutes "the usual course" in the case of ESI, it is well-settled that "[g]enerally, a producing party produces emails in the usual course when it provides sufficient information about the email, typically including the custodian for the email, information to link emails with attachments, and the date and time the email was sent or received." *Heartland Food Products, LLC v. Fleener*, 2019 WL 2501862, at *3 (D. Kan. June 17, 2019) (quoting David J. Kessler & Daniel L. Regard II, *Format of Production, The Federal Judges' Guide to Discovery Edition 3.0*, The Electronic Discovery Institute (2017) at 186, 189).

Thus, in *Heartland*, the court rejected the opposing party's demand that the production be "label[ed] by document request" because the producing party met the "usual course" standard by producing "TIFF images with accompanying load files" which "preserves the metadata."  *See id.* at *2; *see also Spilker v. Medtronic, Inc.*, 2015 WL 1643258, at *5 (E.D.N.C. Apr. 13, 2015) ("Defendants provided Plaintiff with fully searchable documents, sortable by metadata fields, in a folder structure organized by custodian. This is sufficient to satisfy the requirements for document production of ESI under Rule 34.") (citing cases); *Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg.*

*Co.*, 2009 WL 1803216, at *2 (E.D. Mich. June 17, 2009) (ESI is produced "in the usual course" when it provides "information about where the documents were maintained, who maintained them, and whether the documents came from one single source or file or from multiple sources or files," e.g., by producing emails "by custodian, in chronological order and with attachments, if any").

The Federal Rules do not require parties to match documents with specific requests as long as they comply with Rule 34's requirement that documents are produced as kept in the usual course of business, just as both parties' proposals require, and just as Dominion has done.  *See* Powell Dkt. 107-2 (Dominion's Proposed Order) at 9 (providing that "a producing party must produce responsive documents and ESI as they are kept in the usual course of business," and further noting that ESI is considered to be produced as such "when the ESI contains or is accompanied by original file path metadata.").  Not all Defendants can say the same.[4]

### B.    The Cases Defendants Cite Do Not Support Their Position.

Defendants claim that the Federal Rules require a secondary responsiveness review on top of the use of search terms, custodians, and time periods.  That is wrong.  As explained in detail in Dominion's Motion, courts have repeatedly rejected the argument Defendants make about the need for a responsiveness review, and have held that it is enough for a party use search terms, custodians, and time periods and ensure their production complies with Rule 34 by producing ESI as kept in the usual course of business.  *See* Powell Dkt. 107-1 (Dominion's Motion) at 27-29 (discussing *Federal Deposit Ins. Corp. v. Boggus*, No. 2:13-CV-00162-WCO, 2015 WL 11457700, at *1 (N.D.

---

[4] Within days of the parties' agreement on and submission of an agreed ESI protocol, Dominion produced a metadata overlay to include a few additional fields listed in the final ESI protocol.  In contrast, Defendant DTR, for example, has produced a single PDF of 73 pages without any load files or metadata even though the agreed ESI protocol requires both.  Defendants also have not all identified which of their documents correspond to each of Dominion's requests.

Ga. May 13, 2015) and *Outzen v. Kapsch Trafficcom USA, Inc.*, No. 1:20-cv-01286-TWP-MJD, 2021 WL 3673786, at *7 (S.D. Ind. Aug. 19, 2021)).

Defendants nonetheless cherry-pick lines from dozens of cases they say stand for the proposition that "the party must actually review the documents and determine that they are indeed responsive to the production requests and relevant to the litigation before producing them." OAN Dkt. 142 at 12. But the decisions Defendants cite do not support their argument. The cases are largely inapposite to their point and if anything support Dominion, not Defendants:

- Defendants ignore that 4 of their cases do not involve Rule 34 at all, but rather are about Rule 33, governing interrogatory responses.[5]

- Defendants ignore that another 4 of their cases are about ***permitting*** a party to conduct a responsiveness or relevance review, ***not requiring it***.[6]

- Most significantly, Defendants ignore that 21 of the cases they cite—most of which do not concern responsiveness review at all and only pertain to document organization under Rule 34(b)(2)(E)(i)—***do not involve productions using custodians, search terms, and time periods***, and in some cases do not involve ESI at all.[7]

- Plus, the cases Defendants cite that do involve ESI and Rule 34 make clear that where a party has provided metadata of the exact sort both parties' proposal contemplates, the

---

[5] *See* OAN Dkt. 142 at 11 and Byrne Dkt. 66-1 at 6 (citing *Neale*); Powell Dkt. 106-1 at 11, 15, (citing *Graske, Minter,* and *Wonderland Switzerland*).

[6] *See* OAN Dkt. 142 at 10, 11 (citing *O'Donnel/Salvatori*, *Palmer*, *United States for Use & Benefit of M. Frank Higgins & Co.*) (permitting but not requiring relevance review); Powell Dkt. 106-1 at 13 (citing *Bombardier*) (same). Further emblematic of their confusion, Defendants quoted from a description of the litigant's argument in *HIRECounsel* and *Bombardier*, not the court's holding, *see* Powell Dkt. 106-1 at 11 and 13, and misrepresented the holding of *Palmer* by splicing together the court's words "without a responsiveness review" with their own language (saying Rule 26 "is not satisfied . . .") despite the court having held no such thing, *see* OAN Dkt. 142 at 11.

[7] *See* OAN Dkt. 142 at 10, 11 (citing *Breaux, Haughton, Rothman, Scott Hutchison Enters.*, *In re Thomas Consol. Indus.*); Powell Dkt. 106-1 (citing *Barnes, Breunlin, Burnett, City of Colton, D.L.*, *Excellent Home Care Servs.*, *Franco-Gonzalez, Haddad, HIRECounsel D.C., LLC, Jewish War Veterans of the U.S. of Am.*, *Kline, Perkins, S.E.C. v. Collins & Aikman Corp.*, *Stooksbury, Swan Global Invs., LLC, Westfall*); Byrne Dkt. 66-1 at 6 (citing *Rothman*). *Westfall* involves an individual, not a corporate party, such that the "usual course of business" provision was not at issue, and as far as counsel can tell, also did not involve search terms, custodians, and time periods.

custodial production satisfies Rule 34,[8] or simply state the uncontroversial fact that in addition to custodial ESI production using search terms and custodians, a party should also produce responsive noncustodial documents (just as Dominion has proposed and done).[9]

That leaves two out-of-circuit, unpublished cases from California district courts, *Youngevity* and *Lexington*. Defendants mistakenly cite these cases for the proposition that search terms and custodians are always insufficient without responsiveness and relevance review. They are wrong. Even if we set aside D.C. cases like *Washington* that suggest production of records as kept in the usual course of business alone suffices, neither case supports Defendants.

In *Youngevity*, the parties had agreed to an ESI production protocol, involving negotiating search terms and providing a hit report. Unlike Dominion, plaintiff Youngevity failed to abide by the parties' agreed ESI production process and agreement to provide hit reports. The court found, given Youngevity's noncompliance with the parties' agreement among other factors, that Youngevity would have to provide a hit report, negotiate terms, and then "screen the resulting documents for responsiveness and privilege." *Youngevity Int'l Corp. v. Smith*, No. 16-CV-00704-BTM-JLB, 2017 WL 6541106, at *12 (S.D. Cal. Dec. 21, 2017). The court did not hold that responsiveness review through search terms and custodians is per se insufficient; and the court also specifically declined to address, much less mandate, relevance review, *id.* at *10 n.11.

---

[8] *See*, *e.g.*, *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011) (explaining metadata fields such as "file name, attachment range, folder title and folder range among others" would readily show "ESI was produced as kept in the usual course of business" and giving the party the option to either "label all future ESI productions to correspond to the categories in the request or to produce the ESI in native format with metadata intact"). *City of Colton* does not address responsiveness review (case cited by Powell Dkt. 106-1 at 14).

[9] *See Raine Grp. LLC v. Reign Capital, LLC*, 2022 WL 538336 (S.D.N.Y. 2022) (cited by Byrne Dkt. 66-1 at 6) (stating that "in addition to the six custodian's emails and files, there may be other sources of data such as shared drives that are not particular to a specific custodian that should be searched"). *Raine* also does not address responsiveness review.

In *Lexington*, the plaintiff complained that defendant Feit had produced "thousands of pages of non-responsive documents, numerous documents that are unreadable," and had "shuffled into no discernable order" its production.  *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. CV1810513PSGKSX, 2020 WL 10052403, at *7 (C.D. Cal. July 8, 2020).  Unlike here, Feit failed to identify any metadata organizing the production.  The Court found, "here, there appears to be no organization of the Feit documents sufficient to indicate how those documents were maintained in the ordinary course of business," and concluded Feit had not complied with Rule 34(b)(2)(E)(i) and should label productions to match "the specific request to which the documents are responsive," *id.* at *12.  The court did not hold that responsiveness review is always required.

Further, Defendants here, unlike in either of those cases, have not and cannot offer evidence that Dominion's production does not comply with Rule 34.  Unlike Feit's production, Dominion's production contains the exact metadata that the parties' agreed ESI Stipulation requires, and that *City of Colton* (the case relied upon by the *Lexington* court) and other courts have found suffices. *See supra* pp. 6-7.  This alone satisfies Rule 34.  Defendants here also have no evidence that Dominion's production disregards the parties' agreements: unlike the plaintiff in *Youngevity*, Dominion did provide a hit report and has invited negotiation of search terms.

### C.   Dominion's Production Consists Entirely of Responsive Documents.

Defendants argue that their responsiveness provision is necessary because Dominion's ESI custodial production is "document dump."  That argument falls flat here for many reasons.

Dominion has given Defendants the exact responsive documents they requested.  The lion's share of documents Dominion has produced (about 780,000 of roughly 828,000) were previously produced in the Delaware *Dominion v. Fox* litigation.  As shown in Dominion's Motion, the entire *Fox* production is exactly what five Defendants explicitly requested.  *See* Powell Dkt. 107-1 at 17-18 (reprinting requests for the *Fox* production from Powell, Second Set of Requests, No. 1; Powell,

P.C. (same); Byrne, First Set of Requests, No. 13; and OAN, First Set of Requests, No. 65); *see also* Ex. 1 at RFP No. 1 (Giuliani's First Set of Requests for Production to Dominion) (requesting all documents produced "in response to any request for production in any litigation . . . where a material issue, claim, or defense involves election and/or voting technology or services").  And Lindell and My Pillow have not joined in any of Defendants' briefs.

Defendants cannot complain about receiving these documents.  To be clear, the production of *Fox* documents is not a search term, custodian, or time period issue.  Dominion produced to Defendants Powell, Powell, P.C., Giuliani, Byrne, and OAN the exact documents they requested, narrowed to emails and attachments for proposed custodians and time periods.[10]

The same applies to other documents Dominion has produced using search terms. Defendants ignore that the volume and breadth of their requests is staggering.  Some examples:

> **Giuliani's First Set of Requests for Production, No. 5:** All manuals, brochures, or other documents demonstrating the functionality, operations, and/or security of any Dominion machinery or software that was utilized in the 2020 Election.

> **Giuliani's First Set of Requests for Production, No. 9:** All communications between Dominion and any state or federal government agency or elected official.

> **Powell's First Set of Requests for Production, No. 19:** Each Document relating to the design, development and operation of Dominion's Voting Equipment from 2006 to date, including, plans, drawings, patents, source codes, manuals, marketing materials, marketing presentations, videos, and instruction materials.

> **Powell's Second Set of Requests for Production, No. 24:** Any documents concerning Dominion's Election Services, including but not limited to Dominion's after-market servicing of Election Machines and/or Election Software.[11]

---

[10] Dominion has offered Teams and OneDrive data, but no Defendant has taken up the offer.

[11] Ms. Powell's definition of "Election Services" states: "The term 'Services' shall mean services offered by Dominion to its customers, including but not limited to customer support, initial election project implementation, election set-up, ballot layout, multiple language audio, election machine set-up and system testing, election day support, training, preventative maintenance, project management and ongoing election consulting."  Ex. 3 at 3.

**OAN's First Set of Requests for Production, No. 27:** Documents and Communications relating to any Dominion Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the fully auditable paper trails referenced in Paragraph 56 of the Complaint.

**OAN's First Set of Requests for Production, No. 36:** Regardless of time frame, Documents and Communications related to any review, audit, or testing of any Dominion Entity's voting machines and/or software by any individual or entity, including but not limited to independent testing laboratories accredited by the U.S. Election Assistance Commission as referenced in the allegation contained in Paragraph 308 of the Complaint, any federal or state agency, election security expert, election machine expert, and/or white hat hacker.

**Lindell's First Set of Requests for Production, No. 55:** Documents concerning malfunctions, problems, deficiencies, defects, bugs, vulnerabilities, helpdesk and call logs, or glitches in any Dominion Voting Equipment and/or System used in or proposed to be used in the 2016 General Election, 2018 Election, and/or the 2020 General Election.

Ex. 1 (Giuliani's First Set of Requests for Production); Ex. 2 (Powell's First Set of Requests for Production); Ex. 3 (Powell's Second Set of Requests for Production); Ex. 4 (OAN's First Set of Requests for Production); Ex. 5 (Lindell's First Set of Requests for Production).

To state the obvious, Dominion is a voting technology company that sells equipment and services to governmental entities across the nation. Requests for "Any documents concerning Dominion's Election Services" *encompasses very nearly every document the company generates*. Dominion's production not only satisfies Rule 34 but is tailored to respond to those requests, using custodians, search terms, and time periods to target documents likely to satisfy the 763 requests.

Plus, contrary to Defendants' arguments, practically speaking it is unnecessary for Defendants to review all documents to locate ones they want. This is not the 1980s. Defendants are not reviewing documents one by one, by hand. Defendants are loading them into databases of their own, and because Dominion appropriately provided extensive metadata that allows Defendants to identify exactly the documents they want—through their own search terms, by time period, author, recipients, attachments, and all sorts of other criteria—their complaints ring hollow.

**D.      Defendants' Desire that Dominion Review for Responsiveness and Relevance Is Unsupported by the Federal Rules and Prejudicial.**

Defendants have hung albatrosses around their necks by serving an extraordinary number of broad and varied requests and proposing equally broad and varied search terms.  Defendants' proposal now is that Dominion must review responsive documents for relevance because Defendants now believe the documents responsive to their requests include some that are not relevant.  Defendants have no basis for shifting the consequence of their discovery onto Dominion.

The Federal Rules of Civil Procedure do not support Defendants' argument that Dominion must conduct a relevance review.  While Rule 26 allows a party to discover relevant documents, it does not purport to require the responding party to limit its production to those documents. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding nonprivileged matter this is relevant").  Similarly, Rule 34 says nothing about limiting production to relevant documents; it focuses entirely on a party's obligation is to produce responsive ones.  *See* Fed. R. Civ. P. 34 (requiring production of documents "**as requested**" or that the responding party "state whether any ***responsive*** materials are being withheld" on the basis of an objection) (emphasis added).

Defendants do not cite a single case that supports the duty they seek to impose on Dominion.  In fact, as far as counsel can tell, the single case they cite that actually involves compliance with Rule 34 in the context of ESI and search terms that discusses a relevance review specifically declined to rule on the issue.  *See Youngevity*, 2017 WL 6541106, at *10 n.11.

Defendant's proposal is not only unsupported by the Federal Rules but would substantially prejudice Dominion.  *See Lamaute v. Power*, 339 F.R.D. 29, 34 (D.D.C. 2021) (summarizing Rule 26(b)(1)'s proportionality factors).  Not only is it one-sided and unprincipled,[12] it also incentivizes

---

[12]  Indeed, Defendants' proposal excludes Defendant My Pillow/Lindell from all the responsiveness review requirements imposed on Dominion.  *See* OAN Dkt. 142-1 at 6, 8, 9.

parties to gin up completely irrelevant discovery to trap the other side into collecting responsive documents but then weeding through those same documents to eliminate irrelevant ones. And its practical effect would be to force Dominion (but not Lindell) to withdraw it production and then spend an astronomical $700,000 and $1,660,000 to review and re-produce the documents. Ex. 6.

Defendants' briefing proves Dominion's point. Powell's briefing claims that Powell has reviewed "678,195 documents," and "*only 3.5%* are relevant and responsive under Rule 26(b)."[13] Says who? Based on what? Powell offers no concrete, calculable evidence to support that claim. And that is exactly the problem: responsiveness review risks dictating relevance for the other side (which is why Dominion believes no party should engage in it, a position it has, in compromise, not pressed here). Relevance review, whatever that might mean, is likewise in the mind of the litigant. Especially here, where productions are coordinated across the cases, imposing a relevance requirement would be impossible. No review could simultaneously satisfy all parties, which of course would lead to even more disputes and incalculable delay.

To the extent Defendants seek to turn the Discovery Stipulation process into a motion to compel responsiveness review, they have failed their burden. This Court should not enter a provision requiring Dominion alone to engage in a secondary responsiveness review on top of its use of search terms, custodians, and time periods, or to engage in a "relevance" review.

## II.     Defendants' Proposed Custodian Interview Process Should Not Be Entered Because It Lacks Thoroughness, Decreases Transparency, and Omits Relevant Personal Data.

The crux of the parties' disagreement over custodian interviews is about basic thoroughness and transparency—in particular, whether to require the parties to ask custodians

---

[13] Powell's motion also mischaracterizes multiple factual points. Powell points to Dominion's Vol. 001-009 production and suggests it contains documents not responsive to a request for documents about Powell; but Powell requested the entire *Fox* production, which is what Vol. 001-009 contains. Powell also points to an email thread concerning Dominion's objections to eight RFPs and suggests Dominion's position pertained to all requests. *See* Dkt. 106-1 at 4-5 & Ex. B.

about their communications on commonly used Apps as to core case topics, including relevant personal data.  Under Defendants' proposal, Dominion has no idea who any party is interviewing or what they are asking.  Indeed, whereas Dominion's proposal provides guidance on custodians to interview, Apps to ask about, and topics to cover, Defendants' proposal provides no requirements at all.  Defendants' proposal also wrongly restricts questioning to "work" data.

This Court should reject Defendants' proposal for three reasons: (1) thorough custodian interviews are not optional but rather required by the Federal Rules, and one cannot complete a thorough interview in these defamation cases without asking custodians about the Apps and central case topics Dominion has proposed; (2) Defendants' proposal diminishes transparency and would increase future discovery disputes, for no good reason; and (3) by restricting questioning to "work habits and data," Defendants ignore their obligation to search personal devices in their possession, custody, or control, which would present a particularly unworkable condition here since most Defendants are individuals, the line between personal and professional is blurry as to all Defendants, and key evidence of actual malice may certainly lie in personal communications.

### A.    Defendants' Proposal Fails to Ensure Thorough Custodian Interviews.

In one breath, Defendants' motions admit as they must that the Federal Rules *require* custodian interviews, and yet then try to dismiss imposing guidelines to ensure thorough interviews as "micromanaged" and "unnecessary."  *See* Powell Dkt. 106-1 at 16; OAN Dkt. 142 at 15.  Their position makes no sense and flies in the face of the very caselaw on which they rely.  As stated in *DR Distributors*, which both OAN and Powell cite, "the custodian interview is not merely a theoretical best practice," but rather "*a proper and thorough custodian interview is mandated by the Federal Rules of Civil Procedure* and the Rules of Professional Conduct."  *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 926-927 (N.D. Ill. 2021) (emphasis added).  Put simply, the requirement is not just for any interview, but "a proper and thorough" one.

It is not enough, as Defendants wish, to ask generic questions about "the likely location of any information relevant to the claims and defenses."  OAN Dkt. 142-1 (Defendants' Joint Proposal) at 5.  Rather, as set forth in cases they cite, "[t]he client must be pushed, probed, even cross-examined to test the facts provided to counsel," *DR Distributors*, 513 F. Supp. 3d at 924, since "a reasonable custodian interview can require counsel to cross-examine the client and test the accuracy of the client's response," *id.* at 927; *see* OAN Dkt. 142 at 16 (citing *Waskul v. Washtenaw Cty. Cmty Mental Health*, 569 F. Supp. 3d 626, 636 (2021) (same)).

Here, Defendants cannot complete a thorough interview of individuals involved in these defamation cases without asking at minimum which Apps they used to communicate about Dominion, whether they communicated about fraud in the 2020 Presidential Election using those Apps, and if they have communications about other core case topics Dominion has proposed. Communications by text and other Apps may reveal critical evidence of actual malice.  *See Freeman v. Giuliani*, No. 21-3354 (BAH), 2023 WL 5600316 at *16 (D.D.C. Aug. 30, 2023) (observing the significance of text and other messages as "circumstantial evidence of Giuliani's state of mind").  Defendants' proposal offers no guarantee a custodian will be asked anything.  By contrast, Dominion's proposal accords with the Federal Rules by providing guidelines to ensure attorneys "elicit detailed, specific facts rather than being content with generalities . . . ."  *DR Distributors*, 513 F. Supp. 3d at 924.  Otherwise, as Dominion's Motion explained, important information may be missed simply due to fuzzy memories or misunderstanding the questioner. *See* Powell Dkt. 107-1 (Dominion's Motion) at 31.

## B.    Defendants' Arguments Against Transparency Lack Merit.

Defendants' proposal decreases visibility into the custodian interview process.  But decreasing transparency will only increase the need for back and forth between counsel about the

thoroughness of interviews and increase the likelihood of future motion practice and the need to re-open interviews and depositions down the line.  If Defendants are serious about the duty to complete thorough interviews, why would they resist clarity now when doing so will be more efficient and minimize future disputes?  Defendants offer no good reason in response.

### 1.   Dominion's Proposal Does Not Infringe on Attorney Work Product.

OAN asserts in a single sentence that Dominion's proposal would infringe on attorney-work product.  OAN Dkt. 142 at 15.  How?  OAN offers no explanation and cites no case that supports that proposition.  Nor could it.  Dominion's proposal does not require the parties to disclose their interview forms, attorney notes, or counsel's mental impressions.

Nor is information about what Apps a person regularly used to communicate about topics related to this litigation privileged.   To the contrary, when, what, and how custodians communicated about topics related to this litigation is highly relevant and discoverable and will be the subject of depositions.  *See Freeman*, 2023 WL 5600316 at *16.  Indeed, courts have required far greater disclosure about ESI than what Dominion's proposal provides.  For example, in one of the cases Defendants cite, a court recognized the need for clarity about certain ESI maintenance and preservation issues and ordered a party to answer a Document Retention Questionnaire that "set forth a series of inquiries about the manner in which the responding party maintained its electronic information."  *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373-374 (cited by Byrne Dkt. 66-1 at 5).[14]  *See also Small v. University Medical Center*, No. 2:13-CV-0298-APG-PAL, 2018 WL 3795238, at *45 (D. Nev. Aug. 9, 2018) (recounting party's inadequate completion

---

[14] OAN also represents that another case, *John B. v. Goetz*, "require[ed] defendant to certify that key custodians had not removed responsive information but declin[ed] to require the specific custodial interview question recommended by plaintiff's expert."  OAN Dkt. 142 at 16.  But that case does not mention any such "interview question," much less decline to require it.  No. 3:98-0168, 2007 WL 3012808 at *1 (M.D. Tenn. Oct. 10, 2007).

of special master's detailed chain-of-custody forms concerning ESI collected for each custodian). Dominion's proposal requires far less disclosure than other courts have ordered. It does not mandate a specific custodian interview form or require disclosure of the custodian's answers.

The lack of clear guidelines in Defendants' proposal risks more party disputes and more court intervention. By contrast, Dominion's proposal minimizes need for court intervention and adds virtually no burden—literally the time it takes to run through the list of Apps with a particular custodian already being interviewed. *See* Powell Dkt. 107-1 (Dominion's Motion) at 31.

## 2. Dominion's Proposal Requires Efforts to Preserve But Does Not Require Interviews of Individuals Outside a Party's Control.

Powell incorrectly asserts that under Dominion's proposal, Powell, P.C., "would be required to conduct mandatory interviews" for custodians "whom the law firm does not employ and has no control over." Powell Dkt. 106-1 at 17. Not so. Dominion's proposal does not require any party to interview someone outside their control at all. At this point, Dominion does not know which requested custodians Defendants have control over. Thus, Dominion's proposal provides:

> The inclusion of a custodian in this list does not necessarily mean that the identified party has possession, custody, or control of documents for the individual. Nor does it mean that the identified party will conduct a custodian interview of the individual or produce his or her documents, or that a party agrees the individual is likely to have generated or maintained discoverable information.

Powell Dkt. 107-2 (Dominion's Proposed Order) at 4-5. Dominion's proposal only requires parties to interview custodians "who are available for interview by the party (which at minimum includes all current employees)." *Id.* at 5. Even a case Defendants cite, *Perkins*, acknowledges that a party responding to discovery has "an affirmative duty to seek that information reasonable ***available***" to the party, meaning "information reasonably ***available*** to him from his employees, agents, or others subject to this control." *Perkins v. City of Modesto*, 2020 WL 1333109, *3 (E.D. Cal. Mar. 23,

2020) (citations omitted and emphasis added) (cited by Powell Dkt. 106-1 at 14); *see* Fed. R. Civ. P. 34(a)(1) (limiting production to documents within a party's possession, custody, or control).

Dominion's proposal, like Defendants' proposal, does require, however, that parties "reasonably attempt to include said individuals as part of their preservation, collection, and search efforts for likely discoverable information, as appropriate and as possible."  Powell Dkt. 107-2 (Dominion's Proposed Order) at 5.

Powell and Powell, P.C., seem to misunderstand that obligation and assert that requiring "preservation of documents" for the Kraken lawyers (Emily Newman, Brandon Johnson, and Julia Haller) and for Powell, P.C., Executive Assistant (Tricia Dale) is an effort by Dominion to "weaponize discovery."  Powell Dkt. 106-1 at 17.  But that argument makes no sense.  If Powell, P.C., has responsive information from the Kraken lawyers in its possession, custody, or control, then of course it has an obligation to preserve and produce that information, *see* Fed. R. Civ. P. 34, even if the individuals have left the company, *see F.D.I.C. v. Horn*, No. CV 12-5958 (DRH) (AKT), 2015 WL 1529824, at *8 (E.D.N.Y. Mar. 31, 2015) (finding employer had duty to preserve former employees' ESI); *Moore v. Chertoff*, 577 F. Supp. 2d 165, 168 (D.D.C. 2008) (affirming magistrate's order to produce documents of former employees in the defendant's possession, custody, or control).  That is the whole purpose of having custodians.

Dominion's proposal simply codifies the basic obligation to produce what *is* within the entity's control.  So, for example, under Dominion's proposal, if Powell, P.C., has possession or control of Ms. Tricia Dale's @federalappeals.com email, then it has an obligation to produce responsive documents from that account.  In fact, Powell, P.C.,'s counsel has already said it is producing Ms. Dale's emails, meaning it has control over them, and there is no valid basis to refuse

making her a custodian.  Notably, Defendants have sought to make Dominion former employees into custodians, and Dominion has agreed to produce emails for them in its possession.

By contrast, under Defendants' proposal, there is no obligation to search anywhere (not even a former employee's emails in a party's possession) for those individuals who Defendants have unilaterally rejected as custodians, or interview anyone (not even all current employees) given that Defendants' proposal only requires an interview where "possible and appropriate." OAN Dkt. 142-1 at 5; *see* Powell Dkt. 107-1 at 30 (discussing issues with this provision in detail).

### 3.    Defendants' Excuse that Interviews Have Occurred Is a Non-Starter.

Finally, Defendants' throw-away line that some interviews are already done is self-serving and should be rejected.  Defendants have been aware of the need to ask custodians about core case topics and regularly used Apps since the start of the litigation, at least. They have also been aware for weeks or months that Dominion sought to make that process transparent.  Dominion proposed a list of core topics and Apps to most Defendants in June 2023.  If interviews were conducted properly, then nothing more is required.  But if they were not, and instead Defendants improperly restricted their questions to "work habits and data," or failed to ask about core case topics, or did not probe into Apps like Telegram or Parler (which we know Defendants used during the relevant time period),[15] then that flaw in the foundation of their custodial collection must be remedied. Doing so now is certainly much better and less costly than waiting any longer.

---

[15]        *See*        @michaeljlindell,        Instagram        (Jan.    9,    2021), https://www.instagram.com/p/CJ1zabqA4Z2/?hl=en (encouraging Lindell's Instagram followers to follow his Parler page); Sheera Frenkel, *After Election, Cautious Optimism That Few False Narratives    Took    Hold*,    NY    Times    (Nov.    9,    2022), https://www.nytimes.com/2022/11/09/technology/midterms-election-misinformation.html (discussing Lindell's use of Gab, Truth Social, and other livestream platforms); @joshtpm, Twitter (Jan. 7, 2021), https://twitter.com/joshtpm/status/1347319634907844610 (sharing a post Powell made on Parler about January 6th); @PatrickMByrne, Telegram, https://t.me/s/PatrickMByrne.

**C.      Defendants' Limitation of Collection to Work Data Is Improper.**

Defendants do not address in their motion and make no effort to justify their improper exclusion of personal information and data.  As stated in Dominion's Motion, several Defendants are being sued as individuals, so their "work habits" are the wrong paradigm by which to think about their communications.  That is an independent and sufficient reason to reject Defendants' proposed "work habits and data" limitation.  Including that restriction would make no sense and would improperly limit searches for the individual Defendants.

But even for corporate Defendants, Defendants' proposal is flawed to the extent it suggests a lack of obligation to collect ESI from current employees that does not relate to their "work habits," in no small part because Defendants have failed even to articulate how they are drawing the line between work and personal.  Are custodians unilaterally deciding?  Counsel?

Here, the problem is particularly acute because these are not cases where a bright line separates business from personal.  Dominion's Motion provided examples of how that line is blurred to the point of non-existence.  *See* Powell Dkt. 107-1 (Dominion's Motion) at 33-34.  For a media entity like OAN, a central question is whether OAN's media professionals expressed, behind the scenes, disbelief about the election-related lies the network was airing publicly.  *Id.* Likewise, Defendants Christina Bobb (OAN reporter) and Michael Lindell (My Pillow CEO) readily blended their professional and personal advocacy to overturn the results of the 2020 Presidential Election.  *See id.* at 34, 35; Powell Dkt. 54 at 27 n.13 (Order Denying Motion to Dismiss, summarizing allegations of Lindell and My Pillow's interrelationship and holding My Pillow may be liable for its CEO's conduct).

Even if such a line could be drawn, the corporate Defendants still have an obligation to search personal data—including Apps on personal cell phones.  Dominion's Motion provided several examples of courts that have held that employees and all their documents are within a

corporate employer's possession, custody, or control.  *See* Powell Dkt. 107-1 (Dominion's Motion) at 32-33 (citing cases).  Those cases do not stand alone.  *See also In re Skanska USA Civ. Southeast Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021) ("As an initial matter, an employer has 'control' of a current employee and the legal right to obtain business communications from a current employee regardless of whether the communication is located on a personal cell phone."); *Goolsby v. County of San Diego*, No. 3:17-cv-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019).

"Courts have repeatedly found that employers have control over their employees and can be required to produce documents in the employees' possession." *ID Ventures, LLC v. Chubb Custom Ins. Co.*, No. 17-14182, 2018 WL 8807125, at *2 n.2 (E.D. Mich. Oct. 12, 2018) (quoting *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448–49 (S.D.N.Y. 2011)); *see Zimmerman v. Al Jazeera Am., LLC*, No. 16-00013 (KBJ/RMM), 2018 WL 11411310, at *4 (D.D.C. Sept. 18, 2018) ("The fact that [the employee] used personal accounts to conduct some of his work would not defeat [the employer's] ownership of his work product."); *see State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2020 WL 7056039, at *6 n.4 (E.D. Mich. Dec. 2, 2020) ("The fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment."); *Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 WL 5281629, at *6 (N.D. Cal. Oct. 22, 2018) (collecting cases ordering production from personal devices); *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, No. 2:15-cv-00631-AJS, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015) (compelling plaintiff to produce voicemails and texts saved on the personal mobile device).

Although Defendants' motions do yet raise the argument, to be clear, privacy concerns are not a sufficient justification for a corporate defendant to refuse to search so-called personal data.

Otherwise, corporations could have their employees use personal devices to shield against discovery.  "Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits."  *See State Farm*, 2020 WL 7056039, at *6 n.4.  Indeed, the way to account for privacy interests is through a confidentiality or protective order, not barring relevant discovery.  *See Williams v. United States*, No. 17-445 (JDB), 2018 WL 11427942, at *3 (D.D.C. Sept. 27, 2018).

To the extent OAN cites to California privacy law (an issue it has raised during discussions on these issues), the argument is unpersuasive.  California law supports the proposition that privacy is not a complete bar to civil discovery but rather requires a balancing test, where the individual's privacy interest is weighed against the legitimate needs of the party seeking information, in light of available safeguards—such as a confidentiality or protective order—that limit public disclosure. *See Williams v. Superior Ct.*, 3 Cal. 5th 531, 557 (Cal. 2017).  The party asserting the privacy interest bears the burden of establishing "a legally protected privacy interest, an objectively reasonable expectation of privacy in the given circumstances, and a threatened intrusion that is serious." *County of Los Angeles v. Superior Court*, 65 Cal. App. 5th 621, 629 (Cal. Ct. App. 2021); *see RG Abrams Ins. v. Law Offs. of C.R. Abrams*, 342 F.R.D. 461, 498–99 (C.D. Cal. 2022); *see also Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309485, at *6 (E.D. Cal. Jan. 30, 2007) ("Unlike a privilege, the right of privacy is not an absolute bar to discovery.").

Here, the balance favors Dominion's proposed discovery, as Dominion's proposal limits the scope of personal data to only information that is responsive and concerns the core case topics outlined in its proposal, based upon the custodian's own answers during custodian interviews.  *See* Powell Dkt. 107-2 (Dominion's Proposed Order) at 5-6.  And anything turned over will be subject to redactions for highly personal information under Dominion's proposal, *see id.* at 8 (listing

categories, including health, financial, romantic, and familial information), and would be subject to the existing protective order, so that "confidential information [will be] carefully shielded from disclosure except to those who have a legitimate need to know." *Hill, supra*, 7 Cal. 4th at 38.

And likewise, any reliance on Section 980 of the California Labor Code would be misplaced. Dominion has not found a state or federal court opinion that has denied or limited a request for production of relevant personal data based on Section 980. Were Defendants correct about Section 980, decisions like *Colonies Partners, L.P. v. County of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *11, 13 (C.D. Cal. Feb. 27, 2020), *Trevino v. Golden State FC LLC*, No. 1:18-cv-00120-DAD-BAM, 2019 WL 3892356, at *6 (E.D. Cal. Aug. 19, 2019), and *Henson*, 2018 WL 5281629, at *6, which approved discovery of personal data after the passage of Section 980, would have been decided differently. Those cases confirm rejection of the argument we anticipate Defendants may raise but failed to raise in their Motion.

## III.    Hit Reports Are Inexpensive, Clearly Needed, and Would Help Both Parties.

Hit reports are an inexpensive tool that enables both parties to evaluate burden of search queries and "to conduct a relatively unobtrusive quality control" of the other side's responsiveness review. *Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*, No. 11-2672 (PAM/JJG), 2013 WL 12152475, at *2 (D. Minn. Jan. 4, 2013) (quoting prior discovery order). All parties except OAN and Powell have exchanged hit reports upon request. OAN's argument for why it should not have to provide hit reports boils down to flashy rhetoric: "discovery mischief" and "nefarious purposes." OAN's motion fails to cite a single case that suggests hit reports should not be used to evaluate responsiveness review or are otherwise inappropriate.

What is more, OAN has it backwards. What OAN fails to mention in arguing that Dominion misused hit reports in "one other case" is that the case is *Fox*. OAN Dkt. 142 at 14. And that Dominion was able to determine using Fox News' hit report that Fox News'

responsiveness review resulted in production of less than 5% of documents that hit on its search terms and a fraction of documents that hit on the term "Dominion."  Following briefing presenting that evidence and argument, the court ordered Fox to produce all documents that hit on Dominion's proposed search terms without further responsiveness review.  Some of the documents produced pursuant to the Court's order became cornerstone evidence at summary judgment and trial.[16]

OAN's argument that hit reports are inappropriate because of search terms being broad or numerous is likewise unsound.  If search terms need narrowing, the parties can negotiate the terms. The number of search queries is a non-sequitur.  Whether there are 6 search terms or 6,000, a hit report enables the parties to see how many documents hit on terms.  It would be premature and unfair to Dominion to conclude that Dominion will somehow use a hit report in an improper way.

## IV. Dominion's Proposal's Other Terms Are Just, Efficient, and Unrebutted.

Defendants' motion does not address other disputed terms of their proposal and thus waives any argument concerning their entry.  *See Attias v. CareFirst, Inc.*, No. 15-CV-882 (CRC), 2023 WL 5952052, at *13 (D.D.C. Sept. 13, 2023) (argument not raised in opening brief is waived). Disputed provisions that Defendants do not address include Defendants' Section 3, 4(a), 5, 7, 8(d), 9, and 10 (which roughly correspond with Dominion's Sections 6, 3(a), 4, 7, 8(d), 9, and 11, respectively).  Dominion has addressed the issues raised in those provisions, as well as all others, and has explained why good cause exists to enter each of its proposed provisions.  *See* Powell Dkt. 107-1 (Dominion's Motion) at 26-52.

## CONCLUSION

Dominion respectfully asks the Court to enter Dominion's Proposed Order Regarding Discovery Matters.

---

[16] *See* Ex. 7 (Exhibits 150, 151, 155, 165 to Dominion's Motion for Summary Judgment in the Delaware *Fox* litigation that were all produced after the court ordered no responsiveness review).

Dated: October 31, 2023                 Respectfully submitted,

By:   */s/ Laranda Walker*
       Laranda Walker (D.C. Bar No. TX0028)
       Mary K. Sammons (D.C. Bar No. TX0030)
       Jonathan Ross (D.C. Bar No. TX0027)
       Elizabeth Hadaway (*Admitted pro hac vice*)
       **SUSMAN GODFREY L.L.P.**
       1000 Louisiana St., Suite 5100
       Houston, TX 77002
       Tel: (713) 651-9366
       Fax: (713) 654-6666
       lwalker@susmangodfrey.com
       ksammons@susmangodfrey.com
       jross@susmangodfrey.com
       ehadaway@susmangodfrey.com

       Stephen Shackelford, Jr.
       (D.C. Bar No. NY0443)
       Eve Levin (D.C. Bar No. 1672808)
       Mark Hatch-Miller (*Admitted pro hac vice*)
       Christina Dieckmann (*Admitted pro hac vice*)
       **SUSMAN GODFREY L.L.P.**
       1301 Avenue of the Americas, 32nd Fl.
       New York, NY 10019
       Tel: (212) 336-8330
       sshackelford@susmangodfrey.com
       elevin@susmangodfrey.com
       mhatch-miller@susmangodfrey.com
       cdieckmann@susmangodfrey.com

       Davida Brook (D.C. Bar No. CA00117)
       **SUSMAN GODFREY L.L.P.**
       1900 Avenue of the Stars, Suite 1400
       Los Angeles, CA 90067
       Tel: (310) 789-3100
       dbrook@susmangodfrey.com

       Edgar Sargent (*Admitted pro hac vice*)
       Katherine Peaslee (*Admitted pro hac vice*)
       **SUSMAN GODFREY L.L.P.**
       401 Union Street, Suite 3000
       Seattle, WA 98101
       Tel: (206) 516-3880
       esargent@susmangodfrey.com
       kpeaslee@susmangodfrey.com

Thomas A. Clare, P.C. (D.C. Bar No. 461964)
**CLARE LOCKE LLP**
10 Prince Street
Alexandria, VA 22314
Tel: (202) 628-7400
tom@clarelocke.com

*Attorneys for Plaintiffs/Counter-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

/s/ Elizabeth B. Hadaway
Elizabeth B. Hadaway (*pro hac vice*)
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
(713) 651-9366
ehadaway@susmangodfrey.com