# Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC.<br>DOMINION VOTING SYTEMS, INC.<br>DOMINION VOTING SYSTEMS CORPORATION<br><br>              Plaintiffs,<br><br>-against-<br><br>SIDNEY POWELL<br>SIDNEY, POWELL, P.C.<br>DEFENDING THE REPUBLIC, INC.<br><br>              Defendants. | 919 1:21-Cv-00040<br><br>SIDNEY POWELL AND SIDNEY POWELL, P.C.'S SECOND REQUEST TO PRODCUE (FED. R. CIV. P. 34) |

**TO:** US DOMINION, INC.
    DOMINION VOTING SYTEMS, INC.
    DOMINION VOTING SYSTEMS CORPORATION

Sidney Powell and Sidney Powell, P.C. (the "Powell Defendants"), by their attorney, Kennedys, make the following requests pursuant to Rule 34 of the Federal Rules of Civil Procedure. Under Rule 34(b), you are required to serve a written response to this request, indicating whether you will comply with each request listed below, no later than 30 days after the date this request was served on you.

## DEFINITIONS

A. The following definitions apply:

Local Rule 26.3 (and corresponding paragraphs thereof) of the Southern and Eastern Districts governs the definitions that follow. In addition, to the extent that any definition set forth below is narrower than the definitions set forth in Local Rule 26.3, such definition shall be deemed Request to Produce shall be as though the definition under the foregoing rule is fully set forth herein.

1

1. **Communication**: The term "communication" means the transmission of information (in the form of facts, ideas, inquiries or otherwise), regardless of the form of said transmission.

2. **Documents**: The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.  As used herein, the term "documents" is used in its broadest sense and means, without limitation, any kind of written, typewritten, printed, recorded, computer generated or graphic material, however produced, reproduced, or stored.  Such term includes Any original writings of any nature whatsoever, and Any non-identical copies thereof, in your possession, custody, or control, regardless of where located, including, but not limited to, contracts, agreements, records, papers, computer printouts or displays, notices, forms, video and audio tape recordings, photographs, correspondence, communications, reports, studies, statements, summaries, memoranda, calendars, diaries, handwritten notes, schedules, agendas, mock-ups, telegrams, teletypes, telefax or telecopy transmissions and any other thing from which information can in any manner be obtained. In Any cases where originals and/or non-identical copies are not available, "documents" also means copies of original documents and copies of non-identical copies.

3. **Parties**: The terms "Plaintiff" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4. **Person**: The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

5. **Powell Defendants**: The term Powell Defendants shall refer to Sidney Powell and/or Sidney Powell, P.C.

6. **Dominion:** The term "Dominion" shall mean Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation.

7. **Election Machines**: The term "Election Machines" shall mean any machine, device or apparatus sold, leased or rented by Dominion for use in an election.

8. **Election Software:** The term "Election Software" shall mean any computer software, computer code or computer program sold, leased or rented by Dominion for use in an election.

9. **Election Services**: The term "Services" shall mean services offered by Dominion to its customers, including but not limited to customer support, initial election project implementation, election set-up, ballot layout, multiple language audio, election machine set-up and system testing, election day support, training, preventative maintenance, project management and ongoing election consulting.

10. **Vulnerability**: The term "Vulnerability" shall mean a security flaw, glitch, or weakness found in Election Machines, Election Software or Services.

11.

12. **Concerning**: The term "concerning" means relating to, referring to, describing, evidencing or constituting.

13. **Time Period**: Unless otherwise indicated, the time period covered by the requests to produce set forth herein includes the period from November 1, 2010 through the date hereof.

B. The following rules of construction apply:

1. **Any/ Each**: The term "Any" and "each" shall be construed as Any and each.

3

2. **And/ Or**: The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request Any responses that might otherwise be construed to be outside of its scope.

3. **Number**: The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1. Unless otherwise indicated herein, any and Any documents responsive to the document requests set forth herein, which are in the possession, custody or control of Dominion must be produced.

2. If more than one copy of a document responsive to the document requests set forth herein exists, each non-identical copy of the document shall be produced for inspection and copying.

3. Any documents shall be produced in both original and draft form and with Any attachments, exhibits and appendices.

4. Any documents responsive to the document requests set forth herein that are not in hard copy form (such as data compiled or stored electronically) shall be put into a form that can readily be inspected and copied by Plaintiff.

5. The document requests set forth herein are of a continuing nature and require supplemental production if additional responsive documents are created, received, found or discovered after the date of your initial production of documents responsive to such requests and before the final disposition of this action.

6. If any document (or portion thereof) responsive to the document requests set forth herein is withheld from production for any reason, you shall immediately provide the undersigned with a written statement setting forth the following information with respect to each such withheld document: (i) a general description of the contents of the document; (ii)

each date appearing on the document; (iii) each author of the document; (iv) each individual who assisted in the preparation of the document; (v) each individual who at any time had possession, custody or control of the document or a copy or draft thereof; and (vi) the specific basis, in law and fact, upon which the document was withheld. If you claim that only part of a document is privileged or otherwise need not be produced, produce the remaining part of the document.

## DOCUMENTS REQUESTED

Please produce the following documents for inspection and copying:

1. Any documents produced or received in the matter of *US Dominion Inc., et al v. Rudolph Giuliani* (1:21-cv-00213) (D.D.C); *US Dominion Inc., et al v. My Pillow, Inc. et al.* (1:21-cv-00445) (D.D.C); *US Dominion Inc., et al v. Fox News Network et al.* (C.A. No. N21C-03-257 (Del. Sup. Court); *US Dominion Inc., et al v. Fox Corporation* (C.A. No. N21C-11-082) (Del. Sup. Court); (D.D.C); and *Curling et al v. Dominion Voting Systems, Inc*. (1:21-164 (District of Colorado) (collectively the "Dominion Litigations").

2. Any Expert Reports submitted in the Dominion Litigations.

3. Any Declarations, in unredacted form, submitted by J. Alex Halderman in the matter *Curling v. Rafensperger* (1:17-cv-2989 (N.D. GA).

4. Any deposition transcripts in the Dominion Litigations.

5. Any documents contained in the Dominion's human resources or employee file of Eric Coomer.

6. Any documents concerning any governmental investigation of Dominion.

7. Any documents concerning allegations that Dominion engaged in anti-trust activities, including but not limited to governmental orders concerning the divestiture or acquisition of Dominion assets.

8. Any documents relating to the physical security of Dominion personnel from November 1, 2020 to the present.

9. Any documents concerning any Vulnerabilities in Dominion's Election Machines and/or Election Software.

10. Any Documents that mention or refer to the Powell Defendants or "Kracken."

11. Any Documents concerning any alleged harm caused to Dominion by defamatory statements made by persons or entities other than the Powell Defendants since November 1, 2020.

12. Any documents concerning correspondence sent by Dominion to the Powell Defendants.

13. Any correspondence sent by Dominion to any person or entity other than the Powell Defendants concerning allegedly defamatory statements made by such persons or entities since November 1, 2020.

14. Any social media posts (including but not limited Twitter), Facebook made by Dominion concerning the 2020 United States Presidential Election.

15. Any social media posts (including but not limited Twitter), Facebook made by Dominion concerning any alleged harm caused to Dominion by defamatory statements made by persons or entities other than the Powell Defendants since November 1, 2020.

16. Any documents Plaintiffs agreed to produce in response to Defendant Powell's Interrogatory No. 3 ("Plaintiffs will also produce documents supporting the costs detailed in Exhibit A".)

17. Any documents concerning the expenditures identified by Dominion in response to Defendant Powell's Interrogatory No. 3.

18. Any documents concerning the "examples of bids and proposals not awarded and opportunities lost" for each of the forty-four (44) jurisdictions identified response to Defendant Powell's Interrogatory No. 7. These documents should include, but are not limited to, request for

6

proposal documents, bid packages prepared by Dominion, and any related communications with any of the identified jurisdictions.

19. The Spreadsheet identified in response to Defendant Powell's Interrogatory No. 8.

20. Any documents concerning the loss or non-renewal of contracts for each of the eighteen (18) jurisdictions identified in response to Defendant Powell's Interrogatory No. 10.

21. Any "emails and text messages reflecting communications from customer jurisdictions" identified by Dominion in response to Defendant Powell's Interrogatory No. 11.

22. Any documents provided to Dominion's Board of Directors by Dominion in connection with Dominion Board of Director meetings.

23. Any documents concerning Dominion's voting machine and/or voting software market share in the United States 2018 to present.

24. Any documents concerning Dominion's Election Services, including but not limited to Dominion' safter-market servicing of Election Machines and/or Election Software.

25. Documents sufficient to identify Any dates on which any Dominion employees was purportedly stalked, harassed or was the recipient of harassing telephone calls.

26. Any documents containing financial projections prepared by, or on behalf of Dominion since 2010.

27. Documents sufficient to identify the compensation packages and/or compensation structure for Dominion's C-Suite Executives since 2010, including but not limited to the Head of Sales.

28. Documents sufficient to identify Any Dominion customer's since 2010.

29. Documents sufficient to identify the Average Contract Value (by month) and Total Contract Value (by month) of Any contracts entered into by Dominion since 2010 for the provision of Election Machines, Election Software and/or Election Services.

30. Documents sufficient to identify Any members of Dominion's sales team since 2010.

31. Documents sufficient to identify Any revenue generated by per month by Dominion's sales team since 2010.

32. Documents sufficient to identify Dominion's average revenue per employee and average revenue per customer each month since 2010.

33. Documents sufficient to identify any incentive compensation structure, including quotas, for members of Dominion's sales team since 2010.

34. Any contracts entered into by Dominion through which Dominion was provided equity or credit, including but not limited to operating agreements, bank loans, credit agreements, term loan documents or underwriting credit facilities.

**Dated: May 10, 2023**

**KENNEDYS CMK LLP**

**/s/ Marc Casarino**
919 N. Market Street
Suite 1550
Wilmington, DE 19801
302.308.6647
Marc.Casarino@kennedyslaw.com

**Attorneys for Defendants Sidney Powell and Sidney Powell, P.C.**