Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., *et al.*, | |
| Plaintiffs/Counterclaim Defendants, | No. 1:21-cv-02130-CJN |
| v. | |
| HERRING NETWORKS, INC., *et al.*, | Judge Carl J. Nichols |
| Defendants/ Counterclaim Plaintiffs/ Third-Party Plaintiffs, | |
| v. | |
| AT&T Services, Inc., *et al.*, | |
| Third-Party Defendants. | |

## DEFENDANTS' FIRST SET OF REQUESTS
## FOR PRODUCTION TO DOMINION VOTING SYSTEMS CORPORATION

Defendants/counterclaim plaintiffs Herring Networks, Inc., Charles Herring, Robert Herring, Sr., and Chanel Rion, through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 34, hereby request that plaintiff Dominion Voting Systems Corporation produce the following Documents within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.      "2020 U.S. local, state, and federal elections" shall mean the U.S. presidential election that occurred on November 3, 2020, as well as the related down-ballot elections and preceding primary elections of any candidate for any race in any jurisdiction in the United States.

2.      "Advertising Agreement" shall mean the Exclusive Sales Representation Agreement executed between AT&T Services, Inc., a/k/a Xandr, and Herring Networks, Inc. on April 15, 2019.

3.      "Alleged Defamatory Statements" shall mean the statements contained in

Paragraph 305, including subparagraphs (a) through (y), inclusive, of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

4.      "AT&T" shall mean AT&T, Inc. as well as all parents, subsidiaries, related and affiliated entities, successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of AT&T, Inc.

5.      "AT&T Services" shall mean AT&T Services, Inc. as well as all parents, subsidiaries, related and affiliated entities, successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of AT&T Services, Inc.

6.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and." Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neutral form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

7.      "Carriage Agreement" shall mean the Affiliation Agreement among DIRECTV, AT&T Services, Inc. and Herring with an Effective Date of March 9, 2017.

8.      "CISA" shall mean the Cybersecurity and Infrastructure Security Agency, as well as all parents, subsidiaries, related and affiliated entities, successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of CISA, including, but not limited to, the Mis-, Dis-, and Malinformation ("MDM") team.

9.      "Communication" shall mean any written, electronic, or verbal transmission of

words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks, software, source code, and reports, whether transmitted orally, in writing, or by any electronic device.

10.    "Complaint" shall mean the original Complaint filed in the above-captioned action by the Dominion Entities (defined below), as well as any subsequent amendments thereto.

11.    "Counterclaim" shall mean the Amended Counterclaim/Third-Party Complaint filed in the above-captioned action by Defendants (defined below), as well as any subsequent amendments thereto.

12.    "Defendants" shall mean defendants Herring Networks, Inc., Charles Herring, Robert Herring, Sr., Chanel Rion, and Christina Bobb.

13.    "DIRECTV" shall mean DIRECTV, LLC as well as all parents, subsidiaries, related and affiliated entities, successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of DIRECTV.

14.    "Document" shall mean any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined above) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, videotapes, computer hard drives or disks, voting machines and technology, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records

of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants, or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any way different from the original now in Your possession, custody, or control, or the possession, custody, or control of any counsel, investors, agents, employees, and/or Persons acting on Your behalf.

15.    "Dominion Entity(ies)" shall mean plaintiffs/counterclaim defendants US Dominion, Inc. (defined below), Dominion Voting Systems, Inc. (defined below), and Dominion Voting Systems Corporation (defined below), as well as all parents, subsidiaries, related and affiliated entities, successors, and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Person acting, or purporting to act, on behalf of Dominion Entity(ies).

16.    "Dominion Voting Systems Corporation," "You," and "Your" shall mean plaintiff/counterclaim defendant Dominion Voting Systems Corporation, as well as all successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

17.    "Dominion Voting Systems, Inc." shall mean plaintiff/counterclaim defendant Dominion Voting Systems, Inc., as well as all successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

18.    "DVSorder Vulnerability" shall mean the voter privacy flaw first discovered by J. Alex Halderman affecting Dominion ImageCast Evolution (ICE) tabulators.

19.     "Electronically stored information" or "ESI" refers to any portion of data available on a computer or other device capable of storing electronic data. "Electronically stored information" includes, but is not limited to, e-mail, spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, software, source code, and all other files present on any type of device capable of storing electronic data. Devices capable of storing electronically stored information include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and any other forms of online or offline storage, whether on or off company premises. ESI includes instant messages (such as but not limited to Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, and similar types of messages. ESI includes any records of such communications or messages, including phone records. ESI includes any social media communication (such as but not limited to Twitter, Facebook, Instagram, YouTube, Parler, Gab, and Periscope), including any direct messages.  For any document kept in electronic form, the term "document" includes any metadata associated with the document.

20.     "GDI" shall mean Global Disinformation Index or Disinformation Index Ltd. as well as all successors, predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of GDI.

21.     "Herring" shall mean defendant/third-party plaintiff Herring Networks, Inc.

22.     "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue produced by Herring, including but not limited to Patrick Byrne, Rudy Giuliani, Mike

Lindell, Joe Oltmann, Sidney Powell, Edward Solomon, and Ron Watkins.

23.     "Herring Representatives" shall mean and include all Herring employees that appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Robert Herring Sr., Chanel Rion, Christina Bobb, Dan Ball, Patrick Hussion, Stephanie Hamill, Stephanie Myers, Shane Althaus, Natalie Harp, Elma Aksalic, Mike Dinow, Emily Finn, and Lilia Fifield.

24.     "Kennard" shall mean third-party defendant AT&T, Inc. Board Chairman and Staple Street Capital LLC Executive Board member and founding investor William Kennard.

25.     "Lindell Guests" shall mean and include the guests who appeared on programs produced by Mike Lindell, including but not limited to, Shiva Ayyadurai, Matthew DePerno, Mary Fanning, Douglas Frank, Douglas McInerney, Russel Ramsland, and Phil Waldron.

26.     "Litigation" shall mean the case captioned *US Dominion, Inc. et al. v. Herring Networks, Inc. v. AT&T Services, Inc., et al.* (Case No. 21-cv-02130 (CJN)).

27.     "Media Matters" shall mean the organization known as Media Matters for America and anyone acting on its behalf.

28.     "OAN" shall mean One America News Network.

29.     "Other Media Organizations" shall mean other news, media, and other similar organizations, including, but not limited to *The Wall Street Journal, The New York Times,* MSNBC, *The Washington Post*, Fox News, Newsmax, *The Associated Press*, CNN, C-SPAN, NBC News, *Business Insider, The Daily Beast*, Reuters, and NPR.

30.     "Person" shall mean a natural person or any business, company, corporation, association, partnership, organization, or other legal entity.

31.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to

contain any of the Alleged Defamatory Statements, including but not limited to *Breaking News Live with Patrick Hussion*, *Dominion-izing the Vote*, *Evening News with Shane Althaus*, *In Focus with Stephanie Hammill*, *News Room*, *OAN News 8am with Stephanie Myers*, *Real America with Dan Ball*, *The Real Story with Natalie Harp*, *Tipping Point with Kara McKinney*, *Weekly Briefing with Christina Bobb*, the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*, and *A Screening and Conversation of Absolute Proof with Steve Bannon*.

32.     "Reuters Article" shall mean the October 6, 2021 article published by Reuters entitled "How AT&T helped build far-right One America News."

33.     The terms "relating to," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence, or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

34.     "Retraction Demands" shall mean the ten (10) retraction demand letters from Dominion Entities to Herring dated December 18, 2020, December 22, 2020, December 29, 2020, February 4, 2021, February 12, 2021, April 16, 2021, May 12, 2021, June 18, 2021, July 13, 2021 and August 4, 2021.

35.     "Smartmatic Entity(ies)" shall mean Smartmatic USA Corporation, Smartmatic International Holding B.V., and SGO Corporation Limited, as well as all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Smartmatic Entities.

36.     "Software" references inherently include source code.

37.     "Staple Street" shall mean counterclaim defendant Staple Street Capital LLC, as

well as all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Staple Street, including but not limited to Staple Street Capital II LP and Staple Street Capital II-A LP.

38.     "Third-Party Defendants" shall mean Kennard and AT&T Services, Inc., as well as all related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on their behalf.

39.     "TPG" shall mean TPG Capital as well as all related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on TPG's behalf.

40.     "US Dominion, Inc." shall mean plaintiff/counterclaim defendant US Dominion, Inc., as well as all successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

41.     "Xandr" shall mean the entity formerly known as Xandr/AT&T Services, Inc. that executed the Advertising Agreement with Herring.

42.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Dominion Voting Systems Corporation shall, in its answer or objection, identify the nature of the privilege (including work product) which is being claimed. When any privilege is claimed, Dominion Voting Systems Corporation shall, as to the Documents and/or information requested, state whether:

(a)     Any Documents exist or any Communications took place; and

(b)     Provide the following format for each such Document or Documents in a "privilege log" or similar format:

(i)     the type of Document or Communication;

(ii)    the general subject matter of the Document or Communication;

(iii)   the date of the Document or Communication;

(iv)    the author(s) of the Document or participants in the Communication;

(v)     the addressee(s) and other recipients of the Document or Communication; and

(vi)    the custodian of the Document, where applicable.

43.     These Requests are continuing in nature and require supplemental response if Dominion Voting Systems Corporation obtains further information between the time of compliance and any hearing or trial in all actions between any of the Dominion Entities and any other party concerning the U.S. 2020 local, state, and federal elections, including but not limited to the above-captioned action, as well as *US Dominion, Inc., et al. v. Newsmax Media, Inc.*, C.A. No. N21-C-08-063 (Del. Super. Court); *US Dominion, Inc., et al. v. Byrne*, C.A. No. 1:21-cv-02131-CJN (D.D.C.); *US Dominion, Inc., et al. v. MyPillow, Inc., et al.*, Case No. 1:21-cv-00445 (D.D.C.); *US Dominion, Inc., et al. v. Powell, et al.*, Case No. 1:21-cv-00040 (D.D.C.); and *US Dominion, Inc., et al. v. Giuliani*, Case No. 1:21-cv-00213 (D.D.C.), including, without limitation all matters set forth in the Complaint, any answers, affirmative defenses, or counterclaims, and all additional pleadings, motions, discovery, affidavits, or other matter related thereto in each such case.

## **REQUESTS FOR PRODUCTION**

## **REQUEST NO. 1:**

Documents identified in Your Answers to the First Set of Interrogatories propounded upon You

contemporaneously with this First Set of Requests for Production, as well as any and all Documents reviewed or relied upon in answering those Interrogatories.

**RESPONSE:**

**REQUEST NO. 2:**

Documents relating to, referenced in, and/or providing a basis for Your responses to the First Set of Requests for Admission propounded on You contemporaneously with this First Set of Requests for Production.

**RESPONSE:**

**REQUEST NO. 3:**

All discovery requests and responses of any type (i.e., interrogatories and answers, document requests and responses, requests to admit and responses, deposition transcripts and videos, deposition errata sheets, subpoenas and responses, Open Records Act requests and responses, and any other form of discovery request or response) produced by anyone from January 1, 2000 to the present in any litigation between any Dominion Entity and any Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 4:**

Documents regarding Defendants, OAN, and/or the Herring Representatives.

**RESPONSE:**

**REQUEST NO. 5:**

Documents regarding the Herring Guests and/or the Lindell Guests.

**RESPONSE:**

**REQUEST NO. 6:**

Communications to, from, and/or between Dominion Voting Systems Corporation and any Person, including but not limited to Media Matters, Other Media Organizations, governmental entities,

and/or government officials, regarding Defendants, OAN, and/or the Herring Representatives.

**RESPONSE:**

**REQUEST NO. 7:**

Communications to, from, and/or between any Dominion Entity and any past or present Herring employees, including but not limited to Martin Golingan, and/or the Herring Representatives.

**RESPONSE:**

**REQUEST NO. 8:**

Documents and Communications regarding the formation of any Dominion Entity from January 1, 2000 to the present.

**RESPONSE:**

**REQUEST NO. 9:**

Documents and Communications demonstrating any Dominion Entity's corporate governance and ownership structure, inclusive of all parent and subsidiary companies, from the formation of any Dominion Entity to the present. This Request includes but is not limited to the corporate governance structure of Dominion Intermediate Holdings, Inc., SSC Dominion Holdings, LLC, US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, and subsidiaries Sequoia Voting Systems and Premier Election Solutions f/k/a Diebold Election Systems, Inc.

**RESPONSE:**

**REQUEST NO. 10:**

Documents, including but not limited to contracts, and Communications related to any direct or indirect interest the "private equity firm whose principal place of business is in New York, New York" identified in Paragraph 14 of the Complaint, as the majority owner of US Dominion, Inc., has in any judgment or settlement obtained by Dominion in the above-captioned action.

**RESPONSE:**

**REQUEST NO. 11:**

All versions of any website of any and all Dominion Entities from creation of any Dominion Entity to the present.

**RESPONSE:**

**REQUEST NO. 12:**

Documents and Communications related to all contracts or agreements between any Dominion Entity and any state, county, and/or local governments from the formation of any Dominion Entity to the present, whereby any Dominion Entity has "provide[d] its voting systems and services in a majority of states across the country" as alleged in Paragraph 55 of the Complaint, including any contracts entered into by any Dominion Entity and any state, county, and/or local government before the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 13:**

Documents and Communications that concern the July 2009 procurement referenced in Paragraph 52 of the Complaint, including the contract itself and communications and documents related to any Dominion Entity's obligations under the contract and payment received by any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 14:**

All contracts or agreements between any Dominion Entity and the United States federal government or any of its agencies from January 1, 2000 to the present.

**RESPONSE:**

**REQUEST NO. 15:**

Documents and Communications related to any Dominion Entity's role as a member of the "Sector Coordinating Council" of CISA, including but not limited to any contracts or agreements between any Dominion Entity and CISA, from January 1, 2018 to the present.

**RESPONSE:**

**REQUEST NO. 16:**

Documents and Communications with or related to CISA from January 1, 2018 to the present, including but not limited to those related to CISA's Coordinated Vulnerability Disclosure (CVD) process that began on February 10, 2022 in Georgia related to any Dominion Entities' BMD system.

**RESPONSE:**

**REQUEST NO. 17:**

Regardless of time frame, Documents and Communications regarding the CISA publication "ICS Advisory (ICSA-2-154-01)" entitled "Vulnerabilities Affecting Dominion Voting Systems ImageCast X," including, but not limited to, those related to steps taken by any Dominion Entity to mitigate the vulnerabilities identified therein.

**RESPONSE:**

**REQUEST NO. 18:**

Regardless of time frame, Communications with any governmental agency, including but not limited to CISA and any of its representatives (including Brian Scully), and related Documents regarding alleged mis-information, dis-information, or mal-information related to any Dominion Entity and/or any Dominion Entity's voting systems, software, hardware, technology, and/or services.

-13-

**RESPONSE:**

**REQUEST NO. 19:**

Regardless of time frame, Communications with any governmental agency, including CISA or

any CISA representative (including Brian Scully), and related Documents regarding OAN,

Herring Representatives, or any Allegedly Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 20:**

Regardless of time frame, Documents and Communications with CISA that relate or refer to

alleged "Mis-," "Dis-," or "Mal-information" relating to OAN, Herring, or Dominion Entities.

**RESPONSE:**

**REQUEST NO. 21:**

Regardless of time frame, Documents and Communications with any social media company

(including, but not limited to, Twitter, Meta, Facebook, Instagram, YouTube, LinkedIn,

Pinterest, or ByteDance) that relate or refer to any Allegedly Defamatory Statements or any

alleged "Mis-," "Dis-," or "Mal-information" relating to OAN or Herring.

**RESPONSE:**

**REQUEST NO. 22:**

Regardless of time frame, all contracts between any Dominion Entity and any subcontractor or

service provider related to any Dominion Entity's voting equipment, software, and/or services,

including any third party software and/or hardware utilized with or in any Dominion Entity's

voting equipment or software.

**RESPONSE:**

**REQUEST NO. 23:**

Documents and Communications demonstrating or related to the location of all voting machines,

hardware, software, servers, and/or software that are or have been affiliated with, developed, facilitated, or funded by any Dominion Entity from the formation of any Dominion Entity to the present.

**RESPONSE:**

**REQUEST NO. 24:**

Manuals and policies for all voting machines, equipment, hardware, software, and/or servers used during the U.S. 2020 local, state, and federal elections, whether owned, rented, or licensed by any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 25:**

Documents that support Your contention that "the performance of Dominion's machines was a huge success in the 2020 election because they accurately counted the votes in literally thousands of different jurisdictions in challenging circumstances," as alleged in Paragraph 57 of the Complaint.

**RESPONSE:**

**REQUEST NO. 26:**

Documents and Communications relating to any agreements between any Dominion Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of drives, servers and/or data uploads or downloads related to any Dominion Entity's voting machines or software and related storage servers or devices used in elections in the United States, including but not limited to the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 27:**

Documents and Communications relating to any Dominion Entity's involvement in the U.S. 2020

local, state, and federal elections, including but not limited to the fully auditable paper trails referenced in Paragraph 56 of the Complaint.

**RESPONSE:**

**REQUEST NO. 28:**

Documents and Communications relating to or otherwise reflecting any complaints about the performance, functionality, accuracy, or security of any Dominion Entity's voting equipment or software from the formation of any Dominion Entity to the present, including any irregularities, vulnerabilities, software or hardware malfunctions, double counting, or issues with verification.

**RESPONSE:**

**REQUEST NO. 29:**

Documents and Communications relating to any recount(s) of ballots (electronic, paper, or otherwise) cast utilizing any Dominion Entity's voting equipment or software during the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 30:**

Documents and Communications related to the allegation in Paragraph 10 of the Complaint that "OAN *knew* the statements it repeatedly broadcast about Dominion were lies" (emphasis in original).

**RESPONSE:**

**REQUEST NO. 31:**

Documents and Communications related to the allegation in Paragraph 10 of the Complaint that "OAN knew the vote tallies from Dominion machines had been confirmed by numerous independent audits and hand recounts of paper ballots following the election."

**RESPONSE:**

**REQUEST NO. 32:**

Documents and Communications related to the allegation in Paragraph 10 of the Complaint that "OAN also knew the lies it was promoting and endorsing about Dominion had been debunked by an increasingly long list of bipartisan election officials, election security experts, judges, then-Attorney General William Barr, then-Director of the U.S. Cybersecurity and Infrastructure Security Agency Chris Krebs, Election Assistance Commissioner Ben Hovland, Republican Georgia Governor Brian Kemp, Republican Georgia Secretary of State Brad Raffensperger, and Republican former Colorado Secretary of State Wayne Williams."

**RESPONSE:**

**REQUEST NO. 33:**

Documents and Communications related to the allegation in Paragraph 10 of the Complaint that "OAN also knew or recklessly disregarded that there was no evidence whatsoever to support its claims that Dominion was created in Venezuela by Hugo Chavez for the purpose of rigging elections."

**RESPONSE:**

**REQUEST NO. 34:**

Documents and Communications related to the allegation in Paragraph 8 of the Complaint that OAN "made the conscious decision to manufacture and spread the fantastical lie that Dominion stole the election from Donald Trump."

**RESPONSE:**

**REQUEST NO. 35:**

Regardless of time frame, Documents and Communications that support Your contention that any Dominion Entity's "voting systems are certified under standards promulgated by the EAC" as set forth in Paragraph 308 of the Complaint.

**RESPONSE:**

**REQUEST NO. 36:**

Regardless of time frame, Documents and Communications related to any review, audit, or testing of any Dominion Entity's voting machines and/or software by any individual or entity, including but not limited to independent testing laboratories accredited by the U.S. Election Assistance Commission as referenced in the allegation contained in Paragraph 308 of the Complaint, any federal or state agency, election security expert, election machine expert, and/or white hat hacker.

**RESPONSE:**

**REQUEST NO. 37:**

Documents and Communications related to the allegation in Paragraph 77 of the Complaint that "Dominion's tabulation of votes in Antrim County were in fact accurate right from the very first tabulation."

**RESPONSE:**

**REQUEST NO. 38:**

Documents and Communications related to the allegation in Paragraph 78 of the Complaint that "Dominion was not to blame for the human error in Antrim County, Michigan."

**RESPONSE:**

**REQUEST NO. 39:**

Documents and Communications related to the allegation in Paragraph 80 that "OAN set about to further secure those viewers [ . . . ] by concocting its own alternate reality and embracing its preconceived narrative falsely blaming Dominion for President Trump's loss by rigging the election."

**RESPONSE:**

**REQUEST NO. 40:**

Documents and Communications related to the allegation contained in Paragraph 95 of the Complaint that "OAN chose to prioritize its profits over the truth."

**RESPONSE:**

**REQUEST NO. 41:**

Documents and Communications, including but not limited to marketing materials, reflecting any Dominion Entity's efforts (or those made on its behalf) to solicit contracts with U.S. federal, state, or local election commissions for the use of any Dominion Entity's voting equipment and/or software for the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 42:**

Documents and Communications with federal, local, or state agencies in the United States related to any Dominion Entity's voting equipment and/or software relating to the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 43:**

Communications between any Dominion Entity and Defendants related to any of the Alleged Defamatory Statements, including but not limited to the Retraction Demands.

**RESPONSE:**

**REQUEST NO. 44:**

Documents and Communications related to the allegation in Paragraph 264 of the Complaint that "[T]he harm to Dominion is unprecedented and irreparable."

**RESPONSE:**

**REQUEST NO. 45:**

Documents and Communications related to the allegation in Paragraph 276 of the Complaint that Dominion's "employees' lives have been put in danger."

**RESPONSE:**

**REQUEST NO. 46:**

Documents and Communications related to the allegations contained in Paragraph 286 and 287 of the Complaint referencing Dominion's "significant expenditures to protect its people from harm."

**RESPONSE:**

**REQUEST NO. 47:**

Documents and Communications related to any contract that any Dominion Entity alleges it lost or did not obtain as a result of the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 48:**

Documents and Communications related to any "sham audit" as alleged in Paragraph 297 of the Complaint.

**RESPONSE:**

**REQUEST NO. 49:**

Documents and Communications related to the allegation in Paragraph 297 of the Complaint referencing OAN's "[direct] funding" of the Arizona "sham audit."

**RESPONSE:**

**REQUEST NO. 50:**

Documents and Communications related to the allegation in Paragraph 302 that "potential investors have been deterred from dealing with Dominion."

**RESPONSE:**

**REQUEST NO. 51:**

Documents and Communications that reflect any Dominion Entity's "historical financial track record" as alleged in Paragraph 303 of the Complaint.

**RESPONSE:**

**REQUEST NO. 52:**

Documents and Communications that reflect any Dominion Entity's "new business capture rate" as alleged in Paragraph 303 of the Complaint.

**RESPONSE:**

**REQUEST NO. 53:**

Documents and Communications related to any and all profit projections performed for any Dominion Entity from the investment by Staple Street to the present, including but not limited to the projections specifically referenced in Paragraph 303 of the Complaint.

**RESPONSE:**

**REQUEST NO. 54:**

Regardless of time frame, Documents and Communications related to the potential valuation of any Dominion Entity, including but not limited to the $1 billion valuation as referenced in Paragraph 303 of the Complaint.

**RESPONSE:**

**REQUEST NO. 55:**

Regardless of time frame, Documents and Communications related to any relationship between any Dominion Entity and any Smartmatic Entity, including but not limited to any agreement(s), contractual relationship(s), licensing relationship(s), consulting relationship(s), or similar.

**RESPONSE:**

**REQUEST NO. 56:**

Those portions of the personnel files of all employees and personnel of Dominion Entities who have worked on any Dominion Entity's voting equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems, or concerns relating to: (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the U.S. 2020 local, state, or federal elections.

**RESPONSE:**

**REQUEST NO. 57:**

Regardless of time frame, the Dominion Entity-related personnel files for the following persons: (i) Eric Coomer; (ii) Frederico Arnao; (iii) Paul Babic; (iv) Jason Cook; (v) Jeffrey Scott; and (vi) Jorge M. Vasquez, including but not limited to performance reviews, discussions of promotions, raises, demotions, terminations, pay increases or decreases, or any other changes in employment status.

**RESPONSE:**

**REQUEST NO. 58:**

Regardless of time frame, Documents and Communications related to Eric Coomer, including but not limited to his job responsibilities and performance at any voting machine, software, or technology company (including but not limited to any Dominion Entity or Sequoia Voting Systems or related entity); his design, invention, updating, or patching of any voting-related source code, software, or other technology; discussion of his statements on social media as publicly revealed in November 2020; concerns expressed about Coomer by individuals inside and outside US Dominion, Inc.; the termination of his employment by any Dominion Entity; any Dominion Entity-related severance or other employment-related or non-employment-related agreement(s) with

Coomer; any litigation funding agreement involving, associated with, or related to Coomer; and any agreement with Coomer related to this or any other litigation.

**RESPONSE:**

**REQUEST NO. 59:**

Regardless of time frame, Documents and Communications related to publications from Other Media Organizations, governmental entities, government officials, and court opinions and/or orders before or after the publication of the Alleged Defamatory Statements that You contend have damaged Your reputation.

**RESPONSE:**

**REQUEST NO. 60:**

Documents and Communications regarding any reputational harm suffered by any Dominion Entity in connection with the 2020 U.S. local, state, and federal elections as a result of statements and publications by non-OAN media organizations, including but not limited to Other Media Organizations, federal government officials, state government officials, or other public figures.

**RESPONSE:**

**REQUEST NO. 61:**

Documents sufficient to identify all employees, contractors, representatives, or agents of Dominion Voting Systems Corporation, including, but not limited to, employee lists and organizational charts.

**RESPONSE:**

**REQUEST NO. 62:**

All Communications with Newsmax concerning or in any way related to the U.S. 2020 local, state, and federal elections or Newsmax's coverage of the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 63:**

All Communications with Fox News Network, LLC concerning or in any way related to the U.S. 2020 local, state, and federal elections or Fox News Network, LLC's coverage of the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 64:**

All Communications from November 3, 2020 to present that any Dominion Entity had with any individual or media entity other than Herring, including but not limited to the Other Media Organizations, regarding a publication by that media entity that any Dominion Entity alleged to be defamatory of any Dominion Entity, whether in print, televised, or web-based format.

**RESPONSE:**

**REQUEST NO. 65:**

All discovery and transcripts (including, but not limited to, written discovery requests, written discovery responses, subpoena responses, Open Records Act requests, Open Records Act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed by any Dominion Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *US Dominion, Inc., et al. v. Powell, et al.*, No. 1:21-cv-00040 (D.D.C.); *US Dominion, Inc., et al. v. Giuliani, et al.*, No. 1:21-cv-00213 (D.D.C.); *US Dominion, Inc., et al. v. MyPillow, Inc., et al.*, No. 1:21-cv-00445 (D.D.C.); *US Dominion, Inc., et al. v. Fox News Network, LLC*, No. N21C-03-257-EMD (Del. Super. Ct.); *US Dominion, Inc., et al. v. Newsmax Media, Inc.*, No. N21C-08-063-EMD (Del. Super. Ct.); *US Dominion, Inc., et al. v. Patrick Byrne*, No. 1:21-cv-02131 (D.D.C.); and *US Dominion, Inc., et al. v. Fox Corporation, et al.*, No. N21C-11-082 (Del. Super. Ct.).

**RESPONSE:**

**REQUEST NO. 66:**

Documents exchanged with defendants or presented to the Court during any hearing or at trial in the case styled *US Dominion, Inc., et al. v. Fox News Network, LLC*, C.A. No. N21-C-03-257 (Del. Super. Court); *US Dominion, Inc., et al. v. Fox Corporation, et al.*, CA No. N21-C-11-082 (Del. Super. Court) (including the PowerPoint presentation used at the March 21-22, 2023 hearing on motions for summary judgment) and any related Communications.

**RESPONSE:**

**REQUEST NO. 67:**

From January 1, 2000, to the present, Documents and Communications related to any vendors or other contractors, including but not limited to those based outside of the United States, that manufacture or produce any hardware parts or components used in any Dominion Entity's voting equipment, systems, and/or machines.

**RESPONSE:**

**REQUEST NO. 68:**

Regardless of time frame, Documents and Communications that support Your contention that the Alleged Defamatory Statements are not true, are not substantially true, are not accurate, are misleading, and/or are defamatory.

**RESPONSE:**

**REQUEST NO. 69:**

Regardless of time frame, Documents and Communications that support Your contention that "OAN and its agents, including Charles Herring, Robert Herring Sr., Chanel Rion, Christina Bobb, Dan Ball, Patrick Hussion, Stephanie Hamill, Stephanie Myers, Shane Althaus, Natalie Harp, Elma Aksalic, Mike Dinow, and Emily Finn (among others), actually knew and recklessly disregarded that [the statements] were false" as alleged in Paragraph 306 of the Complaint.

**RESPONSE:**

**REQUEST NO. 70:**

Regardless of time frame, Documents and Communications that support Your allegation that Defendants "knowingly lied about Dominion in order to vastly increase OAN's viewers, including its most important viewer then-President Trump" as alleged in Paragraph 324 of the Complaint.

**RESPONSE:**

**REQUEST NO. 71:**

Regardless of time frame, Documents and Communications that support Your contention that Defendants acted with actual malice.

**RESPONSE:**

**REQUEST NO. 72:**

Regardless of time frame, Documents and Communications related to parts, materials, and/or components of any Dominion Entity's hardware or software manufactured, supplied from, or shipped through the People's Republic of China or the Russian Federation utilized in any Dominion Entity's voting machines, equipment, and/or related software.

**RESPONSE:**

**REQUEST NO. 73:**

Documents and Communications related to any cybersecurity measures You employed in connection with the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 74:**

Regardless of time frame, Documents, including but not limited to reports, memoranda, notes, or other memorialization, and Communications related to any investigation performed by You related to the security (including cybersecurity) of any Dominion Entity's voting machines, software,

and/or services, inclusive of hardware and/or software components and subcomponents manufactured by other entities, in connection with any U.S. local, state, or federal elections.

**RESPONSE:**

**REQUEST NO. 75:**

Regardless of time frame, Documents, including but not limited to any reports, memoranda, notes, or other memorialization, and Communications related to any investigation performed by any third party related to the security (including cybersecurity) of any Dominion Entity's voting machines, software, and/or services, inclusive of hardware and/or software components and subcomponents manufactured by other entities, in connection with any U.S. local, state, or federal elections.

**RESPONSE:**

**REQUEST NO. 76:**

Documents and Communications related to the retention of the MITRE Corporation's National Election Security Lab by any Dominion entity to perform an evaluation of the July 1, 2021 report of J. Alex Halderman in the litigation *Curling v. Raffensperger* (N.D. Ga., Case No. 1:17-cv-02989-AT), including but not limited to the report prepared by MITRE Corporation's National Election Security Lab in March of 2022.

**RESPONSE:**

**REQUEST NO. 77:**

The July 1, 2021 report of J. Alex Halderman in the litigation *Curling v. Raffensperger* (N.D. Ga., Case No. 1:17-cv-02989-AT).

**RESPONSE:**

**REQUEST NO. 78:**

Documents and Communications related to the findings and/or conclusions contained in the July 1, 2021 report of J. Alex Halderman in the litigation *Curling v. Raffensperger* (N.D. Ga., Case No.

1:17-cv-02989-AT).

**RESPONSE:**

**REQUEST NO. 79:**

Communications with J. Alex Halderman, including but not limited to those related to his July 1, 2021 report in the litigation *Curling v. Raffensperger* (N.D. Ga., Case No. 1:17-cv-02989-AT) or the CISA Coordinated Vulnerability Disclosure Process (CVD) that began in Georgia on or about February 10, 2022.

**RESPONSE:**

**REQUEST NO. 80:**

Regardless of time frame, Documents and Communications regarding the DVSorder Vulnerability.

**RESPONSE:**

**REQUEST NO. 81:**

Regardless of time frame, all transcripts of depositions and/or hearing testimony by J. Alex Halderman related in any way to any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 82:**

Regardless of time frame, all published materials by or quoting J. Alex Halderman related in any way to any Dominion Entity, including but not limited to expert reports, declarations, and public statements at presentations or to the media.

**RESPONSE:**

**REQUEST NO. 83:**

Regardless of time frame, Communications with J. Alex Halderman, including but not limited to those related to the DVSorder Vulnerability or any other flaw, issue, or vulnerability of any

Dominion Entity's voting machines, software, and/or hardware.

**RESPONSE:**

**REQUEST NO. 84:**

Regardless of time frame, Documents and Communications with the California Secretary of State regarding the DVSorder Vulnerability.

**RESPONSE:**

**REQUEST NO. 85:**

Regardless of time frame, Documents and Communications with the San Francisco Elections Commission regarding the DVSorder Vulnerability.

**RESPONSE:**

**REQUEST NO. 86:**

Regardless of time frame, Documents and Communications regarding any Dominion Entity's failure to timely notify the California Secretary of State and/or the City of San Francisco Elections Commission regarding the DVSorder Vulnerability or otherwise failing to comply with California Elections Code § 19210 and/or § 19215.

**RESPONSE:**

**REQUEST NO. 87:**

Regardless of time frame, Documents produced by any party in *Curling v. Raffensperger* (N.D. Ga., Case No. 1:17-cv-02989-AT) relating to the security and reliability of voting machines or software produced by any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 88:**

Regardless of time frame, Documents and Communications addressing the impact of *Curling v. Raffensperger* (N.D. Ga., Case No. 1:17-cv-02989-AT) on the reputation of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 89:**

Regardless of time frame, Documents and Communications related to the *Kill Chain: The Cyber War on America's Elections*, including but not limited to any discussions of the documentary's impact on the reputation of any Dominion Entity and/or the appearance of Eric Coomer in the documentary.

**RESPONSE:**

**REQUEST NO. 90:**

Regardless of time frame, Documents and Communications related to NBC News publication *"Online and vulnerable": Experts find nearly three dozen U.S. voting systems connected to internet*, including but not limited to any discussions of the publication's impact on the reputation of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 91:**

Documents and Communications related to the PBS NewsHour segment with Miles O'Brien dated October 26, 2020, including but not limited to any discussions of the publication's impact on the reputation of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 92:**

Regardless of time frame, Documents and Communications related to the December 6, 2019 letter from Senators Elizabeth Warren (D-MA), Amy Klobuchar (D-MN), and Ron Wyden (D-OR), and Representative Mark Pocan (D-WI) to private equity firms that invest in election technology vendors, including but not limited to any response by any Dominion Entity and any discussions of the letter's impact on the reputation of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 93:**

Communications with social media platforms, including but not limited to Facebook, Twitter, YouTube, or Instagram, related to the removal, revision, or flagging of any posts, videos, or other content referencing any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 94:**

Documents and Communications related to complaints or concerns about statements made regarding any Dominion Entity related to the 2020 U.S. local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Dominion Entity to any third party.

**RESPONSE:**

**REQUEST NO. 95:**

Documents and Communications related to Your efforts to oversee, monitor, or otherwise protect the supply chain process of parts or materials utilized in any Dominion Entity's voting machines and/or software used in the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 96:**

Documents and Communications related to the use of any Dominion Entity's voting machines during the first statewide recount performed in Georgia in the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 97:**

Documents and Communications concerning or related to the use of any Dominion Entity's voting

machines during the second statewide recount performed in Georgia by request of the Trump Campaign in the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 98:**

Documents and Communications concerning or related to irregularities, vulnerabilities, software or hardware malfunctions, double counting, and/or other tabulation errors in any precinct in Georgia, including, but not limited to, precincts in Fulton County, Coffee County, DeKalb County, Charlton County, Gwinnett County, and Haralson County, in the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 99:**

Documents and Communications concerning or related to any maintenance, updates, troubleshooting, and/or changes to any Dominion Entity's software and/or hardware undertaken in any precinct in Georgia, including, but not limited to, precincts in Fulton County, Coffee County, DeKalb County, Charlton County, Gwinnett County, and Haralson County, in the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 100:**

Documents and Communications concerning or related to the identity of any Dominion Entity's personnel who performed any maintenance, updates, troubleshooting, and/or changes to any Dominion Entity's software and/or hardware undertaken in any precinct in Georgia, including, but not limited to, precincts in Fulton County, Coffee County, DeKalb County, Charlton County, Gwinnett County, and Haralson County, in the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 101:**

Documents demonstrating the ongoing certification of any Dominion Entity's voting machines in Georgia used in relation to the 2020 U.S. local, state, and federal elections from the date of initial certification until the election was certified on December 7, 2020 by Georgia Secretary of State Brad Raffensperger.

**RESPONSE:**

**REQUEST NO. 102:**

Documents, including but not limited to travel logs and/or flight manifests, related to the presence of any Dominion Entity's personnel in any Georgia precinct, including, but not limited to any precinct in Gwinnett County, during the 2020 U.S. local, state, and federal elections, through and including December 7, 2020, the date on which the election was certified by Georgia Secretary of State Brad Raffensperger.

**RESPONSE:**

**REQUEST NO. 103:**

Documents and Communications related to Georgia Voting System Implementation Manager Gabriel Sterling's statement of November 9, 2020 that "nothing was done to the . . . system after [October 31]" as set forth in Paragraph 87 of the Complaint.

**RESPONSE:**

**REQUEST NO. 104:**

Regardless of time frame, Documents and Communications reflecting all revenue generated by any Dominion Entity by "selling voting technology, licensing software, and providing related services to elected officials from both political parties" as alleged in Paragraph 288 of the Complaint.

**RESPONSE:**

**REQUEST NO. 105:**

Regardless of time frame, Documents and Communications reflecting or in any way related to the allegation contained in Paragraph 55 of the Complaint that "Dominion's contracts have historically been long-term with high renewal rates."

**RESPONSE:**

**REQUEST NO. 106:**

Regardless of time frame, Documents and Communications reflecting any U.S. state's "review and reassess[ment]" of its contract(s) with any Dominion Entity as alleged in Paragraph 290 of the Complaint.

**RESPONSE:**

**REQUEST NO. 107:**

Documents and Communications reflecting the purported non-receipt of "numerous contracts as a result of the lies spread by OAN and others," including but not limited to the bid for such contracts and the negotiation of such contracts, as alleged in Paragraph 293 of the Complaint.

**RESPONSE:**

**REQUEST NO. 108:**

Documents and Communications related to statements by election officials to any Dominion Entity that "have told Dominion that Dominion is losing business 'because of the Dominion name'" as alleged in Paragraph 293 of the Complaint.

**RESPONSE:**

**REQUEST NO. 109:**

Documents and Communications related to any possible agreement or contract between any Dominion Entity and any state or local entity of Louisiana to provide voting systems for the 2020 U.S. local, state, and federal elections and "beyond," including those related to the alleged "Intent

-34-

to Award Letter" and "Notice of Cancellation" referenced in Paragraph 291 of the Complaint.

**RESPONSE:**

**REQUEST NO. 110:**

Documents and Communications regarding Your contention in Paragraph 291 of the Complaint that Louisiana "essentially reneg[ed] on awarding Dominion the $100-million-plus contract with the state," including but not limited to any Documents or Communications suggesting that Louisiana's decision was based on statements made by Defendants.

**RESPONSE:**

**REQUEST NO. 111:**

Documents and Communications related to the calculation that "[t]ogether with the Louisiana contract, these [lost contracts] add up to at least $70 million in net profits lost" as alleged in Paragraph 293 of the Complaint.

**RESPONSE:**

**REQUEST NO. 112:**

Documents and Communications related to the decision of San Luis Obispo County, California to "[revert] to paper ballots over Dominion machines," including but not limited to the email from an election official referenced in Paragraph 295 of the Complaint and any Documents or Communications suggesting that the decision was based on statements made by Defendants.

**RESPONSE:**

**REQUEST NO. 113:**

Documents and Communications related to any Dominion Entity's contracting with San Francisco Elections Department for the provision of voting machines, technology, and/or software from the formation of any Dominion Entity to present.

**RESPONSE:**

**REQUEST NO. 114:**

Communications between any Dominion Entity and San Francisco Elections Director John Arntz from 2007 to present.

**RESPONSE:**

**REQUEST NO. 115:**

Communications between Steven Bennett and San Francisco Elections Director John Arntz from 2007 to present.

**RESPONSE:**

**REQUEST NO. 116:**

Regardless of time frame, Communications with the San Francisco Elections Department related to any Dominion Entity's bids, future contracts, or agreements for the provision of voting machines, technology, and/or software.

**RESPONSE:**

**REQUEST NO. 117:**

Regardless of time frame, Documents and Communications related to the March 26, 2019 letter from United States Senators Amy Klobuchar, Mark Warner, Jack Reed, and Gary Peters to Dominion Voting Systems President and Chief Executive Officer John Poulos, including but not limited to any report, investigation, memorandum, or correspondence compiled in response to said letter, and any discussions of the letter's impact on the reputation of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 118:**

Documents and Communications related to the April 2020 letter sent by John Poulos on behalf of any Dominion Entity to the United States House of Representatives Committee on House Administration wherein Mr. Poulos represented to the Committee that Dominion is 75.2 percent

owned by a New York-based private equity firm Staple Street.

**RESPONSE:**

**REQUEST NO. 119:**

Documents and Communications related to or referring to testimony given by, appearances made by, or meetings had by Mr. Poulos with any U.S. state or federal voting regulators from January 1, 2016 to the present.

**RESPONSE:**

**REQUEST NO. 120:**

Regardless of time frame, Documents and Communications reflecting any actions taken by You as a result of Your appearance before the United States House of Representatives Committee on House Administration at a January 9, 2020 hearing titled "2020 Election Security — Perspectives From Voting System Vendors and Experts."

**RESPONSE:**

**REQUEST NO. 121:**

Regardless of time frame, Documents and Communications, including but not limited to the loan agreement and any addenda thereto, related to the acquisition of any Dominion Entity by Staple Street.

**RESPONSE:**

**REQUEST NO. 122:**

Documents and Communications sent to, or received from, Hamilton Place Strategies LLC and Tony Fratto in connection with the 2020 U.S. local, state, and federal elections and any subsequent news reporting, broadcast, or other events related thereto.

**RESPONSE:**

**REQUEST NO. 123:**

Regardless of time frame, Documents and Communications sent to, or received from, Hamilton Place Strategies LLC and Tony Fratto referring or relating to Herring, the Herring Representatives; OAN; the Reuters Article; Kennard; the Carriage Agreement; carriage of OAN by AT&T, AT&T Services, DIRECTV, Verizon Fios, Charter Communications, or any other carrier; the Counterclaim; and/or this litigation.

**RESPONSE:**

**REQUEST NO. 124:**

Regardless of time frame, Documents and Communications, including all intra-office Communications (whether by email, text message, instant message, Slack, or other similar instant messaging software, memoranda, etc.) between or among any Dominion Entity and any Person or entity not a party to the above-captioned case (including, but not limited to, John Stankey, Bill Morrow, Rob Thun, TPG, AT&T (including any member of its Board of Directors from January 1, 2020 to the present), DIRECTV (including any member of its Board of Directors from January 1, 2020 to the present), Verizon Fios, Charter Communications, Hootan Yaghoobzadeh, Stephen Owens, Hamilton Place Strategies, LLC, Tony Fratto and/or the NAACP) relating to any Defendant; OAN; the Herring Representatives; the Herring Guests, the Lindell Guests; the Alleged Defamatory Statements; the Retraction Demands; the Complaint; the Counterclaim; the Reuters Article; the Carriage Agreement; the Advertising Agreement; carriage of OAN on any platform owned or controlled by AT&T, DIRECTV, Verizon Fios, Charter Communications, or any other carrier; the above-captioned case; and/or the subject matter of the above-captioned case.

**RESPONSE:**

**REQUEST NO. 125:**

Regardless of time frame, Documents and Communications related to any effort to sell all or any

stake of any Dominion Entity, including any efforts to become a publicly traded company.

**RESPONSE:**

**REQUEST NO. 126:**

Regardless of time frame, Documents and Communications between any potential investor and any Dominion Entity that discuss any Dominion Entity's voting systems, software, machines, equipment, vendors, or subcontractors.

**RESPONSE:**

**REQUEST NO. 127:**

Documents and Communications related to any formal complaints, informal complaints, or administrative or legal actions filed with any local, state, or federal administrative body or tribunal reflecting allegations of vote flipping, rigging, irregularities, tampering, corruption, fraud, or similar problems related to the effectiveness or accuracy of any Dominion Entity's voting machines and/or software in connection with the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 128:**

Documents and Communications related to any formal complaints, informal complaints, or administrative or legal actions filed with any local, state, or federal administrative body or tribunal reflecting allegations of vote flipping, rigging, irregularities, tampering, corruption, fraud, or similar problems related to the effectiveness or accuracy of any Dominion Entity's voting machines and/or software in connection with the 2016 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 129:**

Regardless of time frame, Documents and Communications reflecting the termination or other non-renewal of any contract between any U.S. State or locality and any Dominion Entity for the

provision of any Dominion Entity's voting machines and/or software.

**RESPONSE:**

**REQUEST NO. 130:**

Documents and Communications related to the renewal of any contract between any U.S. State or locality and any Dominion Entity for the provision of any Dominion Entity's voting machines and/or software occurring after November 3, 2020.

**RESPONSE:**

**REQUEST NO. 131:**

Documents and Communications evidencing any prior or current ownership interest in, employment, or other affiliation with any Dominion Entity by any United States federal, state, or local elected official at any time from the founding of any Dominion Entity to present.

**RESPONSE:**

**REQUEST NO. 132:**

Regardless of time frame, Documents and Communications related to or reflecting Your knowledge of irregularities or security vulnerabilities of any Dominion Entity's voting software.

**RESPONSE:**

**REQUEST NO. 133:**

Regardless of time frame, Documents and Communications related to the accuracy and/or security of any Dominion Entity's ballot marking devices used in any Dominion Entity's voting equipment and software.

**RESPONSE:**

**REQUEST NO. 134:**

Regardless of time frame, Documents and Communications that evince or reference any efforts by foreign governments, related entities, and/or non-state actors to monitor, intercept, hack, corrupt,

tamper with, or otherwise disrupt or interfere with any Dominion Entity's voting equipment, software, or employees related to the 2020 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 135:**

Regardless of time frame, Documents and Communications that evince or reference any efforts by foreign governments, related entities, and/or non-state actors to monitor, hack, corrupt, tamper with, or otherwise disrupt or interfere with any Dominion Entity's voting equipment, software, or employees related to the 2016 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 136:**

From January 1, 2018 to the present, Documents and Communications related to the March 7, 2018 letter from United States Senators Amy Klobuchar (D-MN) and Jeanne Shaheen (D-NH) to Dominion Voting Systems, Inc. regarding access or information-sharing related to its voting machines, software, and/or source code information with Russia, including but not limited to any report, investigation, memorandum, or correspondence compiled in response to said letter.

**RESPONSE:**

**REQUEST NO. 137:**

Regardless of time frame, Documents and Communications compiled and/or submitted to the United States Senate Intelligence Committee in connection with any investigation by the Committee related to the 2016 U.S. local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 138:**

Regardless of time frame, Documents and Communications reflecting concerns, including but not limited to cybersecurity concerns, related to the ImageCast X BMD system.

**RESPONSE:**

**REQUEST NO. 139:**

Regardless of time frame, Documents and Communications reflecting the accuracy and security of ballot marking devices (BMD) and related software of any Dominion Entity used within the states of Georgia, Arizona, Pennsylvania, Michigan, Wisconsin, Nevada, and Texas since January 1, 2016.

**RESPONSE:**

**REQUEST NO. 140:**

Regardless of time frame, Documents and Communications related to the software modification developed and implemented by any Dominion Entity in Georgia in October 2020 to address the system-wide ballot display issue on any Dominion Entity's BMDs used in Georgia in relation to the U.S. 2020 local, state, and federal election.

**RESPONSE:**

**REQUEST NO. 141:**

Regardless of time frame, Documents and Communications related to the EAC certification of the software modification referenced in Request No. 131.

**RESPONSE:**

**REQUEST NO. 142:**

Regardless of time frame, Documents and Communications related to the method, manner, procedure, and/or formulation by which You calculate Your economic damages in this litigation.

**RESPONSE:**

**REQUEST NO. 143:**

Documents and Communications with any insurance carrier regarding the alleged harm and/or damages for which You seek recovery in this litigation.

**RESPONSE:**

**REQUEST NO. 144:**

Insurance policies or other related Documents and Communications that in any way relate to the damages You are seeking in this litigation, including but not limited to claims and documents relating to such claims.

**RESPONSE:**

**REQUEST NO. 145:**

Financial statements, including periodic and annual statements, of Dominion Voting Systems Corporation including but not limited to any reports reflecting Dominion Voting Systems Corporation's financial condition from January 1, 2015 to the present.

**RESPONSE:**

**REQUEST NO. 146:**

Financial audits and related documents and correspondence from accounting professionals related to Dominion Voting Systems Corporation from January 1, 2015 to the present.

**RESPONSE:**

**REQUEST NO. 147:**

All U.S. and foreign tax returns for Dominion Voting Systems Corporation, including but not limited to U.S. federal tax returns and state tax returns from the inception of Dominion Voting Systems Corporation  to the present.

**RESPONSE:**

**REQUEST NO. 148:**

Regardless of time frame, all meeting minutes and other documents related to any meeting(s) of any Dominion Entity's Board of Directors.

**RESPONSE:**

**REQUEST NO. 149:**

Regardless of time frame, Documents related to projections of any Dominion Entity's future business plans, including but not limited to prospective contracts and clients.

**RESPONSE:**

**REQUEST NO. 150:**

All of Dominion Voting Systems Corporation's general ledgers for the past eight (8) years.

**RESPONSE:**

**REQUEST NO. 151:**

Documents and Communications related to the decision to distribute $8 million to Dominion Entity shareholders in 2021, $5 million to Dominion Entity shareholders in 2022, and any other distributions to shareholders of Staple Street or shareholders of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 152:**

Documents and Communications referring or relating to the Reuters Article; the Carriage Agreement; the Advertising Agreement; any decision not to renew the Carriage Agreement or to terminate the Advertising Agreement; carriage of OAN by DIRECTV, Verizon Fios, Charter Communications or any other carrier; or the Counterclaim.

**RESPONSE:**

**REQUEST NO. 153:**

Documents and Communications between the Dominion Entities and Staple Street referring or relating to Herring, Herring Representatives, OAN, the Reuters Article, the Carriage Agreement, the Advertising Agreement, carriage of OAN on any platform owned or controlled by AT&T or DIRECTV, the Counterclaim, or this litigation.

**RESPONSE:**

**REQUEST NO. 154:**

Regardless of time frame, Documents and Communications between the Dominion Entities and AT&T (including any current or former Board member of AT&T), AT&T Services, and/or DIRECTV (including any current or former Board member of DIRECTV) that relate to or refer to Herring, Herring Representatives, OAN, the Reuters Article, the Carriage Agreement, the Advertising Agreement, or carriage of OAN on any platform owned or controlled by AT&T or DIRECTV.

**RESPONSE:**

**REQUEST NO. 155:**

Regardless of time frame, Documents and Communications between the Dominion Entities and TPG that relate to or refer to Herring, Herring Representatives, OAN, the Reuters Article, the Carriage Agreement, the Advertising Agreement, carriage of OAN on any platform owned or controlled by AT&T or DIRECTV, the Counterclaim, or this litigation.

**RESPONSE:**

**REQUEST NO. 156:**

Regardless of time frame, Documents and Communications between the Dominion Entities and TPG that relate to or refer to Herring, Herring Representatives, OAN, the Reuters Article, the Carriage Agreement, the Advertising Agreement, carriage of OAN on any platform owned or controlled by AT&T or DIRECTV, the Counterclaim, or this litigation.

**RESPONSE:**

**REQUEST NO. 157:**

Documents and Communications between Staple Street and Ken Vogel, *The New York Times*, any Other Media Organization, or any other reporter or media entity that relate or refer to Herring, Herring Representatives, OAN, the Carriage Agreement, Kennard, the Reuters Article, or this

-45-

litigation.

**RESPONSE:**

**REQUEST NO. 158:**

Documents and Communications relating to AT&T's, AT&T Services', and/or DIRECTV's

decision to not renew the Carriage Agreement.

**RESPONSE:**

**REQUEST NO. 159:**

Documents and Communications between any Dominion Entity and Staple Street or any Third-

Party Defendant related to the Reuters Article, any Defendant, the Herring Representatives, and/or

OAN.

**RESPONSE:**

**REQUEST NO. 160:**

Documents and Communications between any Dominion Entity, on one hand, and Staple Street or

any Third-Party Defendant regarding the decision to file this litigation.

**RESPONSE:**

**REQUEST NO. 161:**

Regardless of time frame, Documents and Communications between any Dominion Entity and

Staple Street or any Third-Party Defendant regarding the Affiliation Agreement, the Advertising

Agreement, carriage of OAN and/or A Wealth of Entertainment by DIRECTV, Verizon Fios,

Charter Communications, or any other carrier.

**RESPONSE:**

**REQUEST NO. 162:**

Documents and Communications between any Dominion Entity and Staple Street or any Third-

Party Defendant related to any of the claims and defenses asserted by any of the parties to this

litigation.

**RESPONSE:**

**REQUEST NO. 163:**

Documents and Communications referring or relating to the Reuters Article, the Carriage Agreement, the Advertising Agreement, any decision not to renew the Carriage Agreement or to terminate the Advertising Agreement, carriage of OAN by DIRECTV, Verizon Fios, Charter Communications or any other carrier, or the Counterclaim.

**RESPONSE:**

**REQUEST NO. 164:**

Documents related to or Communications with GDI referring or related to any Defendant, the Herring Representatives, OAN, the Advertising Agreement, advertisements placed on OAN, and/or any alleged "dynamic exclusion lists" that refer or relate to Herring or OAN.

**RESPONSE:**

**REQUEST NO. 165:**

Regardless of time frame, Communications with Open Society Foundations or Mark Malloch Brown referring or relating to Herring, OAN, the Carriage Agreement, carriage of OAN on any platform, the Advertising Agreement, the Complaint, the Counterclaim, or this litigation and Documents related thereto.

**RESPONSE:**

**REQUEST NO. 166:**

Regardless of time frame, Documents and Communications regarding any Dominion Entity's relationship with Kennard, including, but not limited to, Kennard's investments in Staple Street or any Dominion Entity, Kennard's service as a board member of AT&T or any other organization, or the nature and duration of Kennard's service on the Executive Board of Staple

Street.

**RESPONSE:**

**REQUEST NO. 167:**

Regardless of time frame, Documents and Communications related to Kennard's role as a "founding investor" in Staple Street.

**RESPONSE:**

**REQUEST NO. 168:**

Regardless of time frame, Documents and Communications related to the corporate structure of Staple Street, including, but not limited to, documents sufficient to show which corporate entities own the majority share of any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 169:**

Documents and Communications relating to any request for indemnification, contribution, or advancement of fees related to the Counterclaims or any other claim asserted by any Defendant.

**RESPONSE:**

**REQUEST NO. 170:**

Documents and Communications discussing or referencing OAN's requests that the Dominion Entities or any of their representatives make a statement to be broadcast on OAN, or otherwise appear on an OAN broadcast, to discuss, reject, or refute allegations of voter fraud or voting irregularities involving any Dominion Entity-associated voting machines or software.

**RESPONSE:**

**REQUEST NO. 171:**

Regardless of time frame, Documents and Communications relating to, referencing, or discussing any Dominion Entity's acquisition of Sequoia Voting Systems.

**RESPONSE:**

**REQUEST NO. 172:**

All Communications between, among, or including both Dominion Entity employees or personnel and Staple Street employees or personnel regarding Dominion's currently pending lawsuits about the 2020 presidential election, including but not limited to communications about the monetary damages Dominion seeks in the lawsuit(s).

**RESPONSE:**

**REQUEST NO. 173:**

Documents and Communications discussing any Dominion Entity's distribution to third parties of purported fact-checking statements related to the 2020 presidential election, including but not limited to communications discussing, referencing, or analyzing inaccuracies in any Dominion Entity's fact-checking statements.

**RESPONSE:**

**REQUEST NO. 174:**

Regardless of time frame, Documents and Communications to, from, referencing, or discussing Antonio Mugica and corruption, hardware insecurity, software insecurity, or the efficacy or lack thereof of vote counting and results.

**RESPONSE:**

**REQUEST NO. 175:**

Documents and Communications relating to, referencing, or discussing a Staple Street Valuation Document dated September 30, 2020, and produced in *US Dominion, Inc., et al. v. Fox News Network, LLC*, C.A. No. N21-C-03-257 (Del. Super. Court) as SS_002041.

**RESPONSE:**

**REQUEST NO. 176:**

Documents and Communications relating to, referencing, or discussing Plaintiffs' Responses and Objections to Defendant Fox News Networks, LLC's Interrogatories in *US Dominion, Inc., et al. v. Fox News Network, LLC*, C.A. No. N21-C-03-257 (Del. Super. Court).

**RESPONSE:**

**REQUEST NO. 177:**

Documents and Communications relating to, referencing, or discussing a Dominion Financial Review document dated December 2022, as referenced in *US Dominion, Inc., et al. v. Fox News Network, LLC*, C.A. No. N21-C-03-257 (Del. Super. Court).

**RESPONSE:**

**REQUEST NO. 178:**

A copy of the settlement agreement and any related correspondence between the parties in the action of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 179:** Documents and Communications sufficient to show the beneficiaries of the reported $787.5 million dollar settlement reached in the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.), including but not limited to the corporate or individual identity of each beneficiary and the exact dollar amount paid or to be paid to each beneficiary.

**RESPONSE:**

**REQUEST NO. 180:**

Documents and Communications with mediator Jerry P. Roscoe, and documents related thereto, regarding the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-

-50-

03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 181:**

Documents and Communications relating to, referencing, or discussing the settlement agreement reached in the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 182:**

Documents and Communications relating to, referencing, or discussing interviews with, or press appearances by, anyone acting on behalf of a Dominion Entity, including counsel, following the settlement of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 183:**

Documents and Communications related to the fee structure, fee arrangement, or contingency structure between Plaintiffs and law firm Susman Godfrey LLP for Plaintiffs' representation in the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 184:**

Documents and Communications related to the total fee award to be paid to law firm Susman Godfrey LLP, including but not limited to the total "success fee" Susman Godfrey LLP is entitled to via the settlement of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.), as reported by Reuters in the article "Lawyers win big in $787.5 million

Fox defamation case" on April 20, 2023.

**RESPONSE:**

**REQUEST NO. 185:**

Documents and Communications related to the fee structure, fee arrangement, or contingency structure between Plaintiffs and law firm Clare Locke LLP for Plaintiffs' representation in the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 186:**

Documents and Communications related to the total fee award to be paid to law firm Clare Locke LLP, including but not limited to the total "success fee" Clare Locke LLP is entitled to via the settlement of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.), as reported by Reuters in the article "Lawyers win big in $787.5 million Fox defamation case" on April 20, 2023.

**RESPONSE:**

**REQUEST NO. 187:**

Documents and Communications related to the fee structure, fee arrangement, or contingency structure between Plaintiffs and law firm Farnan LLP for Plaintiffs' representation in the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 188:**

Documents and Communications related to the total fee award to be paid to law firm Farnan LLP, including but not limited to the total "success fee" Farnan LLP is entitled to via the settlement of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.), as

reported by Reuters in the article "Lawyers win big in $787.5 million Fox defamation case" on April 20, 2023.

**RESPONSE:**

**REQUEST NO. 189:**

Documents and Communications related to the fee structure, fee arrangement, or contingency structure between Plaintiffs and attorney Rodney Smolla for Plaintiffs' representation in the matter of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.).

**RESPONSE:**

**REQUEST NO. 190:**

Documents and Communications related to the total fee award to be paid to attorney Rodney Smolla, including but not limited to the total "success fee" Rodney Smolla is entitled to via the settlement of *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.), as reported by Reuters in the article "Lawyers win big in $787.5 million Fox defamation case" on April 20, 2023.

**RESPONSE:**

**REQUEST NO. 191:**

Documents and Communications related to efforts by Media Matters to influence public opinion regarding *U.S. Dominion, Inc., et al. v. Fox News Network, et al.*, C.A. No. N21C-03-257 (Del. Sup. Ct.), or any other litigation involving the Dominion Entities.

**RESPONSE:**

**REQUEST NO. 192:**

Documents and Communications produced pursuant to any subpoena, public information request, lawsuit, arbitration, or other proceeding related to Smartmatic Entities,  Election Systems & Software, Hart InterCivic or Premier Election Solutions, f/k/a Diebold Election Systems, Inc. from

2004 to the present.

**RESPONSE:**

**REQUEST NO. 193:**

Regardless of timeframe, Documents and Communications obtained (now or in the future) by You pursuant to any subpoena or discovery relating to this Litigation.

**RESPONSE:**

**REQUEST NO. 194:**

Regardless of timeframe, Documents referenced in, identified by, responsive to, or relied upon in preparing Your Complaint, Answer to Amended Counterclaim/Third Party Complaint, Your responses to any Defendant's Interrogatories to You, and Your responses to any other discovery requests, including to a Rule 30(b)(6) request.

**RESPONSE:**

**REQUEST NO. 195:**

Regardless of timeframe, any joint defense, cooperation, confidentiality, or similar agreement between You and any other party or non-party related to the Litigation.

**RESPONSE:**

**REQUEST NO. 196:**

Regardless of timeframe, any joint defense, cooperation, confidentiality, or similar agreement between You and any Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 197:**

Documents and Communications related to any policy regarding Document or data retention and/or preservation that You adopted, implemented, or followed including, but not limited to, any policy related to Document or data retention and/or preservation adopted in response to document

preservation requests from Herring.

**RESPONSE:**

**REQUEST NO. 198:**

All source code present in any Dominion Entity-owned, controlled, or licensed voting machines or technology utilized in the 2020 U.S. presidential election.

**RESPONSE:**

**REQUEST NO. 199:**

All source code versions and patches implemented in relation to any Dominion Entity-owned, controlled, or licensed voting machines or technology from January 1, 2016 to the present.

**RESPONSE:**

**REQUEST NO. 200:**

Documents and Communications related to or arising out of any source code development/"sandbox"/beta-testing environment used, owned, or controlled by any Dominion Entity from January 1, 2016 to the present.

**RESPONSE:**

**REQUEST NO. 201:**

Documents and Communications related to the source code version history and storage environment for any source code used by any Dominion Entity from January 1, 2016 to the present.

**RESPONSE:**

**REQUEST NO. 202:**

Regardless of time frame, Documents and Communications related to Dominion Entity-controlled, owned, or licensed source code, voting machines, or voting technology that originated, was developed by, or was invented by a non-Dominion Entity, including but not limited to a Smartmatic Entity, Sequoia Voting Systems or any related entity, or Diebold Election Systems,

Inc. or any related entity.

**REQUEST NO. 203:**

Documents and Communications preserved in response to, as described in, or in relation to Eric

P. Early's December 23, 2020 letter on behalf of Herring Networks, Inc., d/b/a One America News

Network, to Thomas A. Clare and Megan L. Meier of Clare Locke LLP, including but not limited

to voting machines, voting technology, and voting software/source code, preserved as they existed

immediately after the 2020 U.S. presidential election in light of the Dominion Entities' duty to

retain without destruction as soon as the Dominion Entities began considering this litigation.

**REQUEST NO. 204:**

All litigation hold notices sent by any Dominion Entity related to or arising out of this litigation,

including but not limited to internal litigation hold notices and third-party litigation hold notices,

as well as any related Documents and Communications.

**RESPONSE:**


Dated:  May 12, 2023                                    By: */s/ Blaine C. Kimrey*

                                                               Blaine C. Kimrey, Bar No. IL0091
                                                               bkimrey@vedderprice.com
                                                               Jeanah Park, Bar No. IL0094
                                                               jpark@vedderprice.com
                                                               Bryan Clark, Bar No. IL0090
                                                               bclark@vedderprice.com
                                                               Brian Ledebuhr, Bar No. IL0093
                                                               bledebuhr@vedderprice.com
                                                               VEDDER PRICE P.C.
                                                               222 North LaSalle Street
                                                               Chicago, IL 60601
                                                               T:  +1 312 609 7500
                                                               F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for defendants Herring Networks, Inc.,
Robert Herring, Charles Herring, and Chanel
Rion*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of May 2023, I served the foregoing document on the following counsel of record by hand-delivery:

CLARE LOCKE LLP
Thomas A. Clare
10 Prince Street
Alexandria, VA 22314

SUSMAN GODFREY L.L.P.
Stephen Shackelford, Jr.
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
GIBSON, DUNN & CRUTCHER, LLP
Ashley E. Johnson
AJohnson@gibsondunn.com
2001 Ross Avenue, Suite 2100
Dallas, TX 75201

SULLIVAN & CROMWELL LLP
William B. Monahan
monahanw@sullcrom.com
125 Broad Street
New York, New York 10004

and on the following counsel of record by e-mail:

CLARE LOCKE LLP
Thomas A. Clare
tom@clarelocke.com
Dustin Andrew Pusch
dustin@clarelocke.com
Megan Lambart Meier
Megan@clarelocke.com
10 Prince Street
Alexandria, VA 22314

SUSMAN GODFREY L.L.P.
Stephen Shackelford, Jr.
sshckelford@susmangodfrey.com
1301 Avenue of the Americas
32nd Floor
New York, NY 10019

SUSMAN GODFREY L.L.P.
Katherine Marie Peaslee
kpeaslee@susmangodfrey.com
401 Union Street, Suite 3000
Seattle, WA 98101

SUSMAN GODFREY L.L.P.
Davida Brook
dbrook@susmangodfrey.com
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

SUSMAN GODFREY L.L.P.
Mary Kathryn Sammons
ksammons@susmangodfrey.com
Laranda Moffett Walker
lwalker@susmangodfrey.com
Justin A. Nelson
jnelson@susmangodfrey.com
1000 Louisiana St., Suite 5100
Houston, TX 77002

GIBSON, DUNN & CRUTCHER, LLP
Howard Sean Hogan
hhogan@gibsondunn.com
1050 Connecticut Avenue, NW
Washington, DC 20036

GIBSON, DUNN & CRUTCHER, LLP
M. Theodore Takougang
ttakougang@gibsondunn.com
Marcellus McRae
MMcRae@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071

GIBSON, DUNN & CRUTCHER, LLP
Ashley E. Johnson
AJohnson@gibsondunn.com
2001 Ross Avenue, Suite 2100
Dallas, TX 75201

SULLIVAN & CROMWELL LLP
Amanda Flug Davidoff
davidoffa@sullcrom.com
1700 New York Avenue NW, Suite 700

Washington, DC 20006

SULLIVAN & CROMWELL LLP
William B. Monahan
monahanw@sullcrom.com
125 Broad Street
New York, New York 10004

SULLIVAN & CROMWELL LLP
Robert M.W. Smith
smithrob@sullcrom.com
1888 Century Park East
Los Angeles, CA 90067

JOHN F. LAURO, P.A.
John F. Lauro
jlauro@laurolawfirm.com
400 N Tampa Street, 15th Floor
Tampa, FL 33602

*/s/ Blaine C. Kimrey*
Blaine C. Kimrey