**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>SIDNEY POWELL, et al.,<br><br>*Defendants/Counter-Plaintiffs*. | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>*Defendant*. | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>MY PILLOW, INC., et al.,<br><br>*Defendants/Counter-Plaintiffs, and Third-Party Plaintiffs*,<br><br>v.<br><br>SMARTMATIC USA CORP., et al.,<br><br>*Third-Party Defendants*. | Civil Action No. 1:21-cv-00445 (CJN) |

US DOMINION, INC., et al.,

*Plaintiffs*,

v.

PATRICK BYRNE,

*Defendant*.

Civil Action No. 1:21-cv-02131 (CJN)

US DOMINION, INC., et al.,

*Plaintiffs/Counter-Defendants*,

v.

HERRING NETWORKS, INC., et al.,

*Defendants/Counter-Plaintiffs, and Third-Party Plaintiffs*,

v.

AT&T SERVICES., et al.,

*Third-Party Defendants*.

Civil Action No. 1:21-cv-02130 (CJN)

**DEFENDANT CHRISTINA BOBB'S RESPONSE IN OPPOSITION TO DOMINION'S MOTION FOR ENTRY OF ORDER ON DISCOVERY MATTERS**

Defendants' proposed discovery protocol (Doc. 142-1, the "Defendants' Proposal") provides a sensible framework for organizing discovery in these document-intensive cases that is both consistent with Rules 26 and 35 and drafted to minimize burdens on all parties.

Plaintiffs US Dominion, Inc., et al., (collectively "Dominion") disagrees with this reasonable proposal, and instead requests the Court adopt a competing protocol that would improperly shift Dominion's burden of complying with numerous fundamental Rules to the

consolidated Defendants, including individuals such as Bobb. (*Dominion* v. *Powell, et al.,* No. 1:21-cv-00040, Doc. 107 ("Dominion's Motion"), Doc. 107-1 ("Dominion's Proposal")). For the reasons set forth below, and in her Motion (Doc. 143), Bobb requests the Court reject Dominion's Proposal and adopt Defendants' Proposal.

**DISCUSSION**

On page 27 of Dominion's Motion, it claims that the Defendants' proposal "omits the search terms that the parties have agreed to run whereas Dominion's proposal includes them." Dominion goes on to say that the Defendants' Proposal "suggests that the parties are just starting negotiations when most negotiations for most parties have actually been going on four over four months." (Doc. 107-1, at 27). Bobb cannot speak for any other defendant, but she has not agreed to any search terms nor has Dominion even contacted her about her objections to Dominion's discovery requests. Defendants' Proposal accounts for this reality by, among other things, ensuring no production will occur until objections to discovery requests are resolved by agreement or by the Court. Dominion's Proposal, meanwhile, treats all Defendants alike when they are anything but. Accordingly, the Court should adopt Defendants' Proposal.

Additionally, Dominion's Motion, identifies certain topics where the parties' competing protocols diverge, including (1) processes for custodian interviews, (2) relevance and responsiveness reviews, (3) hit reports, (4) date ranges, and (5) parameters for searching and producing text messages and other similar communications. Bobb addresses each in turn as follows.

**I. Custodian Interviews**

Much of the custodian protocol is of less burden to Bobb than other defendants because she is her only custodian. However, Dominion still overreaches with the requirements of this section. Dominion's supposed need for these rules dictating custodian interviews and procedures

is based on Dominion's speculation that the defendants may not produce all relevant documents. But, at this stage, Dominion offers no basis for that supposition.

"[A] reasonable custodian interview consists of locating the relevant people and the locations and types of ESI." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021). Bobb's counsel is aware of the requirements of Rule 37 to preserve and produce ESI, and contrary to Dominion's accusation, has every intention of conducting a reasonable custodian interview and responsive discovery search.[1] A formal custodian interview protocol is unnecessary. Its only purpose is to trap a defendant into failing to check every box in the protocol regardless of necessity.

Ordinarily, when documents are produced in discovery, whether they be produced electronically or otherwise, the receiving party does not have a "right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process." *Franck v. New York Health Care Inc.*, 2022 WL 471333, at *2 (S.D.N.Y. Feb. 16, 2022) (citing *Lightsquared Inc. v. Deere & Co.*, 2015 WL 8675377, at *8 (S.D.N.Y. Dec. 10, 2015)). "It is only if a party can articulate a good faith basis to do so by identifying some deficiency in the production, that an inquiry into the producing party's methodology would be appropriate." *Id*. (citing *Grant v. Witherspoon*, 2019 WL 7067088, at *1-2 (S.D.N.Y. Dec. 23, 2019)). "Moreover, such an inquiry must be proportional to the facts and circumstances of the case." *Id*. Dominion has not articulated a good faith basis to believe Bobb will not conduct a reasonable custodian interview and search, so their extensive protocol is unwarranted.

[1] "A party that has been served with a request for ESI is charged with finding and disclosing all responsive documents or properly setting forth why the documents are being withheld." *Zhulinska v. Niyazov L. Grp., P.C.*, 2021 WL 5281115, at *2 (E.D.N.Y. Nov. 12, 2021) (cleaned up).

There is no reason to set a floor and a ceiling for these interviews when the Federal Rules of Procedure already provide a standard and enforcement mechanism. Dominion's argument that this custodian protocol will bring finality to the process is far from the likely outcome because this just invites disputes over whether the protocol was complied with regardless of whether it has any practical effect on the discovery produced.

Dominion is also critical of the Defendants' Protocol for summarizing the scope of the information to be gleaned from custodians as "work habits and data or documents storage practices." Dominion reads this as an employment limitation on ESI collection. There is an "and" between work habits and data or documents storage practices, so Dominion's reading is too constrained. The wording sufficiently captures what is required.

## II. Relevance and Responsiveness Review

While Dominion baselessly accuses Bobb and the other defendants of future discovery violations, it does not take responsibility for its own discovery production. Dominion wants to simply give every defendant the same production, regardless of whether they ask for it or not. The Complaint alleges that Bobb made just three public broadcasts about Dominion (Bobb Compl. ¶ 305(n), 305(o), 305(v)), yet Dominion plans to foist on Bobb the same discovery production it gave Fox News. It is critical to Bobb that Dominion only produce relevant and responsive documents to Bobb's narrowly tailored requests for production ("RFPs"). Bobb is not interested in taking on the document dump that Dominion gave Fox News. Bobb, an individual litigant, cannot review or meaningfully use such a production in her defense.[2]

[2] Fed. R. Civ. P. 1. Rule 26(b)(1) addresses the scope of discovery. The Rule provides that: "Parties may obtain discovery regarding any nonprivileged matter that is <u>relevant</u> to any party's claim or defense and <u>proportional</u> to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, <u>the parties' resources</u>, the <u>importance</u> of the discovery in resolving the issues, and whether <u>the burden or expense</u> of the proposed discovery <u>outweighs</u> its likely benefit." (emphasis added).

Relevance and responsiveness are important considerations under the Federal Rules of Civil Procedure. *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) (citing Fed. R. Civ. P. 26(b)(1)) ("[P]laintiffs' argument that compelling defendants to produce all documents that contain only one search term without a responsiveness review would speed the production and be fairer, is not the standard under Rule 26 for discovery, which provides that discovery may be obtained "regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case" (emphasis in original)). "After all, the scope of discovery under Federal Rule of Civil Procedure 26(b)(1) begins with relevance." *Willmore v. Savvas Learning Co. LLC*, 2023 WL 6124045, at *9 (D. Kan. Sept. 19, 2023). "[N]ot only do the Rules permit parties to screen ESI and documents for relevancy prior to production, but the law encourages relevancy screening in an effort to avoid large, largely nonresponsive document dumps meant to obscure and cloak relevant documents." *Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, 2014 WL 10714011, at *14 (D. Minn. Dec. 5, 2014).

Dominion complains that the Defendants have collectively served 639 RFPs on Dominion, which is burdensome for Dominion to respond with only responsive, relevant documents. (Doc. 107-1, at 13). First, Dominion chose to sue numerous defendants, so it should not be surprising that it is receiving RFPs from each party. There can be "little doubt that [Dominion] knew at the outset the costs of ESI discovery would be high, and the review process would be extensive." *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 2022 WL 16630821, at *4 (D.N.J. Oct. 25, 2022). Second, not to speak for the other defendants, but it is incumbent upon Bobb, as a defendant, to serve targeted RFPs if she wants targeted responses. The number of RFPs is usually reflective of an attempt to narrowly define the scope of the response. If Bobb was simply interested

in getting a mass of discovery from Dominion, a handful of RFPs may suffice. That is not the goal.[3]

Moreover, Dominion's support for its Proposal is largely based on statistical or analytical factors like the number of RFPs or hit reports that fail to account the practicalities at issue. While 639 requests is a lot, Dominion is suing for $1.6 billion and its Complaint in this case alone is over 200 pages plus hundreds more pages of exhibits. Each other consolidated case has similarly massive complaints. Such expansive pleadings will naturally generate numerous document requests aimed at revealing the support for each accusation. Ultimately, other than focusing on the raw number of requests, Dominion does not complain that any of the requests so overbroad that it is unable to locate responsive documents—it certainly has not established that with respect to Bobb's narrowly tailored RFPs. Nor does Dominion argue that it lacks resources or is incapable of conducting a responsiveness review. Its primary argument ultimately reduces to an improper desire to shift the burden of its responsiveness review to Bobb, rather than complying with the Rules and carrying that burden itself.

And with respect to individual defendants such as Bobb, Dominion's attempt at burden shifting is particularly problematic. She is but a single person, opposed to a large company, supported by an army of lawyers and effectively unlimited financing. "The 2015 amendment to Rule 26(b)(1) restored the proportionality factors to their original place in defining the scope of discovery." To do these amendments justice, any proportionality analysis must consider the difference between individual defendants like Bobb and larger entities. *Penn Eng'g & Mfg. Corp.*

---

[3] By contrast, Dominion served 76 requests on Bobb, which is only 8 fewer than served on OAN. The number of requests is a poor indicator of anything related to this protocol other than that Dominion is trying to impose the same discovery burden on Bobb, who plays a relatively small part in Dominion's Complaint, as every other consolidated defendant, regardless of role.

*v. Peninsula Components, Inc.*, No. 19-CV-513, 2021 WL 1224112, at *2 (E.D. Pa. Apr. 1, 2021) (citation omitted). Dominion's Proposal does not and therefore should be rejected.

Next, Dominion's Motion tries to minimize the importance of a responsiveness and relevancy review by casually arguing that its protocol neither requires nor prohibits a party from performing a responsiveness review if they desire. (Doc. 107-1, at 26). This argument, however, misses the point. Dominion seeks to overload Bobb with documents she neither needs, nor could possibly review. "Responding parties are not permitted to mingle responsive documents with large numbers of unresponsive documents for the purpose of overwhelming the opposing party." *Wilcox v. Changala*, 2012 WL 12844083, at *3 (E.D. Wash. Jan. 18, 2012) (citing *Hagemeyer N. A., Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wisc. 2004)).

Dominion tries to justify this production tactic by arguing its production is in compliance with Rule 34 because it is producing records as they are kept in the usual course of business. Perhaps that is so, but Dominion's argument, even if true, misses the mark.[4] Dominion never explains why it needs to give Bobb all of that unnecessary discovery. Dominion's position would permit a party to produce as much discovery as it wanted as long as it was organized by custodians or could be searched. Producing countless irrelevant documents that may otherwise be "kept in the usual course of business" is not in the letter or the spirit of Rule 34.

The Court should not countenance the litigation tactic of forcing Bobb to search through mountains of unrelated discovery to find the few documents that may be relevant to her. "The days of ambushing one's opponent are gone, and were, in fact, never really in effect under the Federal

---

[4] In reality, what Dominion is doing is just running broad searches in different custodian files and producing anything that hits.

Rules when properly applied." *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 530 (S.D.W. Va. 2007). As the Central District of California found,

> [Defendant's] objection that its production is sufficient merely because it searched the agreed custodians and used the agreed search terms misses the point. Regardless of where it collects documents and from whom, it is [defendant's] obligation to assure that it is producing document responsive to the particular discovery requests. [Defendant's] objections seem to suggest that [defendant] did not conduct the necessary review for responsiveness but simply rested on the custodians, search terms, and collection assistance of its e-discovery vendor. *This is wholly insufficient.* As courts in this district have emphasized the rule allowing for production in the ordinary course of business presupposes that there be some sort of organization that will be maintained throughout the production.

*Lexington Luminance LLC v. Feit Elec. Co., Inc.*, 2020 WL 10052403, at *8 (C.D. Cal. July 8, 2020) (citations and internal quotation marks omitted) (emphasis added); *see also Darmer v. State Farm Fire & Cas. Co.*, No. 17-CV-4309-JRT-KMM, 2018 WL 4846759, at *2 (D. Minn. Oct. 5, 2018) (ordering plaintiff to "review the documents produced to identify which documents are relevant and responsive to which of defendant's document requests"); *see also Masimo Corp. v. Apple Inc.*, 2022 WL 2182708, at *5 (C.D. Cal. May 13, 2022) (citing Fed. R. Civ. P. 26(b)(1)) (cautioning parties that "[a]ny such request must show that it complies with Rule 26(b)(1) and does not run afoul of the Special Master's concerns about ESI data dumps and notions of basic trust in complex litigations."); *Advanced TeleMedia, L.L.C. v. Charter Commc'ns, Inc.*, 2006 WL 3422669, at *12 (N.D. Ga. Nov. 27, 2006) (directing defendant to "search its own records" and "produce only the relevant information" because "[p]roducing extraneous information that falls outside the parameters set by this court is not compliance."); *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 266 (E.D. Pa. 2015) (data dump is "not accepted in normal discovery practice by a party producing documents in commercial litigation" under Rule 34(b)(2)(E)); *Maki v. Bremerton Sch. Dist.*, 2020 WL 2494676, at *3 (W.D. Wash. May 14, 2020) ("[P]roduction should

be tailored to [parties'] requests," and a "party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request").

The "kept in ordinary course of business" provision "was born out of the disfavor shown by courts to the dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary, to prevent parties from deliberately mixing critical documents with others in the hope of obscuring significance." *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008) (citations and internal quotation marks omitted). Given the narrow scope of Bobb's requests, it is highly unlikely that Dominion producing every record that hits on a search term could be anything other than an effort to obscure relevant documents. Dominion's Proposal strays from the intended purpose of the Rule.

> The committee note accompanying the rule indicates that the reason [the kept in usual course of business] sentence was added was to prevent production of critical documents in a manner that might obscure their significance. Clearly, the underlying assumption was that production of records as kept in the usual course of business ordinarily will make their significance pellucid. That is the overarching purpose of the rule.

*CooperVision, Inc. v. Ciba Vision Corp.*, 2007 WL 2264848, at *4-5 (E.D. Tex. Aug. 6, 2007) (finding plaintiff's "assertion that it produced documents as kept in the ordinary course of business is unsupported *ipse dixit*" and ordering it to "provide more individualized responses to the requests, as numbered and identified therein").[5]

---

[5] "[I]t is the producing party's burden to demonstrate that documents are produced as kept in the usual course of business." *Id.* at *5 (citing *Johnson v. Kraft Foods North America,* 236 F.R.D. 535 (D.Kan.2006)). "To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained." *Pass & Seymour, Inc.*, 255 F.R.D. at 334. "[T]he rule contemplates that a party selecting this option disclose information to the requesting party regarding how the documents are organized in the party's ordinary course of business." *Id.* at 335. "[T]he overwhelming weight of authority counsels

Dominion cites to *Washington v. Thurgood Marshall Acad.*, 232 F.R.D. 6, 10 (D.D.C. 2005), for the proposition that a party is not required to identify to which requests the produced documents are responsive, if the party produces them as they are kept in the ordinary course of business. But Dominion's plan is to do neither. Dominion's Proposal makes no commitment to producing the records as they are kept in the usual course of business, rather its plan is to simply produce documents that hit on search terms. *See* Doc. 107-1 at pg. 27 ("ESI is considered to be produced [in the usual course of business] when the ESI contains or is accompanied by original file path metadata."). That will only result in a large, disorganized, and non-responsive production that bears little relation to actual records sought by Bobb.

Importantly, the *Washington* court qualified its holding by pointing out that "given the breadth and duplicative nature of plaintiff's requests, it would be difficult and not very useful for defendant to identify to which requests each document was responsive." 232 F.R.D. at 10. That is not the case here. Bobb's requests are very specific, but Dominion wants to give the Fox News document dump in response. As Dominion agrees, the primary issue here is Bobb's mental state, and her requests very narrowly seek the evidence Dominion has of Bobb's mental state and the alleged damages to Dominion arising from Bobb's specific conduct.

Another case Dominion relies upon, *Fed. Deposit Ins. Corp. v. Boggus*, 2015 WL 11457700, at *1 (N.D. Ga. May 13, 2015), did not "soundly reject the argument Defendants make for a secondary responsiveness review" as Dominion claims. The court in *Boggus* actually recognized in the opinion that in a prior case the court came to the opposite conclusion: "In that case, the court found that the FDIC's proposal did not satisfy Rule 34 because the proposal did not

---

that more in the way of organization is required in order to make the document production meaningful, and thus proper." *Id*.

call for discovery to be kept as produced in the usual course of business and the FDIC *failed to demonstrate* why requiring the FDIC to organize and label the production amounted to an *undue burden*." *Id*. at *1 (emphasis added). The court went on to acknowledge "other cases where this court and others required a responsiveness review," but ultimately concluded "this is one area of discovery where the near infinite number of variables and factual differences counsel against any hard and fast rules." *Id*. at *2. Of the infinite number of variables possible here, letting Dominion awash Bobb in discovery entirely unrelated to her discrete requests for production is unduly burdensome to Bobb. Particularly where Dominion has "failed to demonstrate why requiring [it] to organize and label the production amounted to an undue burden" to Dominion. *Id*. at *1.

Ultimately, the *Boggus* court was persuaded under the factual circumstances of that case that "[p]roduction without a subsequent manual review encourages defendants to not be too gluttonous in their initial requests, and requiring defendants' preferred production format similarly incentivizes plaintiff to make an efficient and generally relevant production." *Id*. Bobb's requests are the furthest thing from gluttonous, but Dominion wants to feed us two million mostly irrelevant records. Contrary to the reasoning of *Boggus*, Dominion's proposed protocol wholly fails to incentivize them "to make an efficient and generally relevant production." *Id*.[6]

Additionally, Dominion cites *Outzen v. Kapsch Trafficcom USA, Inc.*, 2021 WL 3673786, at *5 (S.D. Ind. Aug. 19, 2021), for the same point.[7] *Outzen* was clear that "[e]ssentially, the

[6] *Boggus* was an action by the FDIC against the officers and directors of a failed bank. The court was also persuaded that a responsiveness review was unnecessary because the case only involved six failed loans, about $14 million in losses, and the court expected the discovery production would be adequately limited. *Boggus*, 2015 WL 11457700, at *2. Those limitations are hardly present in this case where Dominion wants to treat Bobb like she is in the same position as a company as large as Fox News.

[7] It was clear that the *Outzen* court's decision was influenced by the prior history of that case. The court devoted considerable ink to recounting a number of discovery status reports and conferences

Federal Rules of Civil Procedure require that the producing party give some structure to its production: a party may not dump voluminous, poorly organized documents on its adversary and force him or her to rummage through piles of paper in search of what is relevant. To comply with the rule, a party must rationally organize its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to [the] production requests." *Id.* at *6 (quoting *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at * 8 (M.D. Fla. Oct. 25, 2013)) (internal quotation marks omitted). "The underlying assumption of Fed. R. Civ. P. 34(b)(2)(E)(i) is that businesses have an incentive to maintain their documents in a manner that allows the 'systemized retrieval of relevant documents' when needed, so a production of documents as kept in the ordinary course of business will allow the opposing party to utilize that system and locate responsive documents." *Id.* (citing *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 630 (M.D. Pa. 1997)). Dominion makes no such representation as to how Bobb will be able to navigate the Fox News production to uncover relevant documents.

The portion of *Outzen* cited by Dominion comparing electronic discovery to a filing cabinet, while accurate, fails to take into account that the sheer number of pages at issue in the present litigation does not compare to what historically may have been maintained by a relevant employee in a filing cabinet. 2021 WL 3673786, at *7. In this case, Dominion does not want to produce a filing cabinet, it wants to produce a warehouse and asks Bobb to find the documents that relate to her without telling her where in the warehouse they might be.

Dominion's last case on this topic, *In re Actavis Holdco U.S.*, Inc., 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019), is equally distinguishable. *Actavis Holdco U.S.* was a denial of a petition

---

to make the point that "[t]he discovery disputes between Plaintiffs and Kapsch remain a moving target." *Outzen*, 2021 WL 3673786, at *5.

for mandamus where the appellate court noted that "even if the District Court's order constituted an abuse of discretion (which we do not decide), such an error would not support mandamus relief." *Id.* The court did not decide the merits of the responsiveness review argument. Furthermore, as the dissent discusses, the issue in that case was that a party wanted to do a relevance and responsiveness before producing, but the district court did not permit it. *Id.* at *2, n.1 ("[N]othing in the civil rules permits a court to compel production of non-responsive and irrelevant documents at any time, much less before the producing party has had an opportunity to screen those documents."). That is the opposite of situation in this case where Bobb wants Dominion to perform a relevancy and responsiveness review in order to avoid being compelled to take non-responsive, irrelevant documents.

Finally, Dominion argues that having to conduct a responsiveness and relevancy review is "make-work." But Dominion's solution is to shift that "make-work" to Bobb. That solution does not satisfy Rule 26's proportionality requirement. Dominion's similar concerns about gamesmanship are equally unfounded because they still maintain the ability to object to any discovery request by a defendant. If they believe a particular request or search term is overbroad, burdensome, or irrelevant, they remain free to attempt to narrow that through cooperation or seek Court intervention. As Dominion argues, "the rules governing discovery should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." (Doc. 107-1 at 24 (quoting Fed. R. Civ. P. 1) (emphasis added)). There is nothing just, speedy, or inexpensive about producing two million documents to Bobb and forcing her to try to find the handful that are probably relevant to her. Dominion is doing exactly what it argues it is trying to avoid: "seeking to invert the balance of discovery." (Doc. 107-1, at 25).

**III. Hit Reports**

Dominion argues that the defendants have given no valid reason to refuse to provide hit reports. To the contrary, the defendants gave Dominion an entirely valid reason. Hit reports bear so statistical relationship to discovery that is actually responsive and relevant and are usually only valuable to a party who wants to litigate an opposing party's discovery responses. *See Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) ("[T]he Court determines that plaintiffs' arguments that the statistics are 'surprisingly low,' or that 'most custodians have inexplicably low production rates considering the relevance of the search terms,' and other such statements, lack foundation"). Far from being a helpful tool to streamline discovery, hit reports only serve to gin up discovery disputes, usually unsupported accusations of withholding discoverable information, and create more work for the producing party to justify the reasonableness of its discovery production.

Dominion is incorrect that hits reports are necessary for parties to negotiate search terms or that we can expect the hit reports to be merely a "data point" in determining if a party met discovery obligations. (Doc. 107-1, at 13). If Bobb finds that search terms are producing a large number of nonresponsive records, it is enough for Bobb to revise searches or conduct a manual review to find the responsive discovery to produce. Generally, "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) (quoting *The Sedona Principles, Best Practices, Recommendations & Principles for Addressing Electronic Document* Production, 19 Sedona Conf. J. 1, Principle 6 (2018)); *see also Livingston v. City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020)). "As the court in *Livingston* aptly observed, plaintiff's 'insistence

that the [defendant] must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules governing discovery.'" *Franck v. New York Health Care Inc.*, 2022 WL 471333, at *2 (S.D.N.Y. Feb. 16, 2022) (quoting *Livingston*, 2020 WL 5253848, at *3). If Bobb has trouble producing relevant and responsive discovery through the methodology she employs, she can seek Dominion's input. Dominion does not need a hit report for that. What Dominion really wants hit reports for it its second reason, to second guess if a party has met its discovery obligation. Right now, Dominion has not articulated even a speculative basis to believe that Bobb will not comply with her discovery obligations. Far from being a "data point," Dominion will use an inconclusive hit report to burden Bobb with discovery motions and additional unjustified discovery tasks.

**IV. Date Ranges for Searches**

Dominion proposes a date range of January 1, 2020 to December 31, 2021 for all parties. By contrast, Bobb requests a date range of November 3, 2020 (the date of the election) through August 10, 2021 (the date Dominion filed its Complaint against Bobb). Dominion fails to articulate how any records prior to the 2020 election would be relevant to its case against Bobb. Dominion does not allege that Bobb made any statements about Dominion prior to the election. Further, Dominion did not become a news-worthy topic until after the election. To the extent that Dominion believes that certain pre-election materials are relevant, Dominion and Bobb can confer on those specific topics rather than setting an arbitrary pre-election date for which Bobb must provide discovery.

Dominion's only reason why it should be entitled to discovery of records for a period of time after it filed its Complaint is its speculation that documents may contain admissions of falsity. Where Bobb is not alleged to have made any public statements during that time, Dominion's

speculation does not justify expanding the scope of relevant discovery. Again, if there are post-election matters which Dominion has interest, Dominion and Bobb can confer. In

Dominion also claims it is entitled to post-Complaint communications that continue to disparage Dominion. Dominion has not alleged any public statements by Bobb after the Complaint, of which Dominion would be aware, so there would be no need to conduct discovery on that.

Lastly, Dominion's argument that it should be subject to the same date range as the defendants is misplaced. The issues relevant to Dominion are much different than those relevant to the defendants. As Dominion articulates, discovery from the defendants should be limited to direct and circumstantial evidence of their mental state, that is, what they knew at the time they made the public statements alleged in the Complaint. On the other hand, what is relevant to Dominion is truth or falsity of any of the public statements. So, for example, prior incidents of malfunction or irregularities may be relevant. Additionally, Dominion is asking for damages which are ultimately based on things like lost contracts and a reduction in value of the company. Those items can only be proven by examining their business performance both before and after the statements.

The parties also disagree about the date range for text messages. Bobb proposes the text message range as November 3, 2020 through April 30, 2021. Dominion appears to be fine with an end date of April 30, 2021, but wants a beginning date of September 1, 2020. Like above, Bobb asserts there is no good reason to conduct discovery for a period before the 2020 election but is

available to confer on specific requests. And, the date range applicable to Dominion should be broader to allow for discovery regarding business operations and damages.[8]

Ultimately, as Dominion has not yet conferred with Bobb regarding Bobb's objections to Dominion's RFPs, litigation on this topic is premature. Bobb agrees to a time frame including post-election, pre-complaint documents. To the extent Dominion seeks a more expansive time frame, it should proceed as any other litigant and attempt to reach a consensus with Bobb on a request-by-request basis, and if no agreement can be reached, apply to the Court for relief.

**V. Text Message Production**

The parties are not far apart on this issue. Dominion wants to narrowly define the reasons a party may redact a text to specific categories of information. That list is too narrow and fails to take into account the realities of how people communicate via text. Particularly when the parties have agreed to produce a text chain for an entire 24-hour period. If, after having reviewed the redactions in the context of the text chain, Dominion feels like a redaction is unjustified, it can raise that issue. But, defendants should not be required to produce personal or irrelevant text messages simply because they do not fall into one of Dominion's narrow categories for redaction. The only reason Dominion would want those is to embarrass the texter.

What Dominion is really suggesting here is that the defendants have no right to withhold irrelevant information that might appear somewhere within the 24-hour period of a text chain. That would improperly limit Bobb's right to withhold irrelevant documents. *See O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275, 277 (W.D. Wash. 2021) (an agreement to run search terms does not waive the producing party's right to object based on

[8] Dominion has not articulated that Bobb would have any non-custodial documents, so it is likely that provision would not apply to her.

relevance nor acquiesce to produce all resulting documents); *FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*, 2016 WL 6522807, at *7-8 (S.D. Cal. Nov. 3, 2016) (same); *SinglePoint Direct Solar LLC v. Solar Integrated Roofing Corp.*, 2023 WL 2585296, at *3 (D. Ariz. Mar. 21, 2023) (same); *Livingston*, 2020 WL 5253848, at *3 (same); *Willmore v. Savvas Learning Co. LLC*, 2023 WL 6124045, at *10 (D. Kan. Sept. 19, 2023) ("[Defendant] is therefore entitled to cull for relevance."); *Palmer*, WL 3145982, at *9 (C.D. Cal. July 9, 2021) ("The Court will not compel defendants to produce any document simply because it contains a search term."); *BancPass, Inc. v. Highway Toll Admin., LLC*, No. 14-CV-1062, 2016 WL 4031417, at *3 (W.D. Tex. July 26, 2016) (holding the parties' agreement to run search terms was a way to simplify and limit the scope of production, but it did not obligate the parties to produce non-responsive documents).

## CONCLUSION

The Defendants' Proposal is a much more sensible framework that accounts for the relative positions of parties and does not unreasonably burden the individual defendants. It also gives due deference to the Federal Rules of Civil Procedure and allows flexibility among the different cases. It is understandable that Dominion wants to make discovery easy and cost-effective for itself, but that should not come at the expense of the Defendants. For these reasons, Bobb respectfully requests the Court adopt the Defendants' Proposal.

Dated: October 31, 2023

Respectfully submitted,

*/s/Gregory M. Singer*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
*Counsel for Defendant Christina Bobb*