# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al., | |
| Plaintiffs/Counterclaim Defendants | |
| v. | Case No. 1:21-cv-02130-CJN |
| HERRING NETWORKS, INC., et al., | |
| Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs | Judge Carl J. Nichols |
| v. | |
| AT&T SERVICES, INC., et al., | |
| Third-Party Defendants. | |

**REPLY IN SUPPORT OF MOTION FOR ENTRY OF THE DEFENDANTS' JOINT PROPOSED ORDER GOVERNING DISCOVERY MATTERS**

## I.      Introduction

The Court should reject Plaintiffs' invitation to rewrite the parties' obligations under Rules 26 and 34—rules that require document production be limited to those documents *relevant* to a lawsuit and responsive to a document request, as has been required under the Rules since 2000 to the 2015 amendments in effect today.[1] *See* Plaintiffs' Protocol § 4. The Court should also reject Plaintiffs' plan to impose the premature, broad requirement that hit reports be produced for all search chains run by the parties. *See* Plaintiffs' Protocol § 5. Finally, the Court should deny Plaintiffs' request for the Court to micromanage the custodial interview process by imposing precise questions that must be asked of all custodians, and without considering that most custodial interviews have likely already occurred. *See* Plaintiffs' Protocol § 3(b). Plaintiffs' objective to depart from the Rules will provide the opportunity for Plaintiffs to create numerous discovery disputes for the Court to resolve, taxing the Court's time and resources, and drastically undercutting the "efficiencies" that Plaintiffs promised the Court would follow after consolidating this case with the previously consolidated cases.

Instead, Defendants' proposed order seeks to adhere as closely as practicable to the Rules "to secure the just, speedy, and inexpensive determination of every action" by continuing to move this case efficiently and swiftly as possible by the close of fact discovery on May 30, 2024.  Fed. R. Civ. P. 1. Therefore, the Court should enter Defendants' joint proposed order governing discovery matters in this litigation.

---

[1] The 2000 amendments sought to prevent the misinterpretation of the scope of discovery by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision . . . ." Fed. R. Civ. P. 26 Advis. Comm. Notes to 2000 Amendment.

## II.     Argument

Section 6 of Defendants' joint proposed order requires producing parties "to conduct a responsiveness and relevancy review pursuant to FRCP 26 before producing documents to ensure that only documents that are actually responsive and relevant to a pending request for production are produced" as the parties must do under Rule 26 and 34 of Federal Rules of Civil Procedure. In the response to the motion to enter Defendants' joint proposed order, Plaintiffs accuse Defendants of distorting the Federal Rules of Civil Procedure, but in reality it is Plaintiffs' proposal that seeks to change the Rules so that the parties can produce documents *without conducting any review* for responsiveness or relevance, clearly violating their obligations under the Rules.

### A.     Plaintiffs cannot rely solely on search chains.

Defendants do not dispute that "[s]earch terms are an important tool parties *may use* to identify *potentially* responsive documents in cases involving substantial amounts of ESI. Search terms do not, however, replace a party's requests for production." *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) (emphasis added). But Plaintiffs "conflate[] a hit on the parties' proposed search terms with responsiveness. The two are not synonymous." *Id.*; *see also United States for Use & Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.*, 2023 WL 5302371, at *4 (S.D.N.Y. Aug. 17, 2023) ("Search terms, even when narrowly tailored, may still produce some amount of non-responsive documents." Thus it is appropriate for the producing party to "review its documents to ensure that they are responsive to the discovery demands even if they hit on one or more of the parties' agreed-upon terms."). Producing "all documents hit upon without reviewing a single document prior to production . . . does not satisfy [a party's] discovery obligations," nor may a party "frustrate the spirit of the discovery rules by producing a flood of documents it never reviewed . . . and thus bury responsive documents among millions of produced pages." *Youngevity Int'l Corp., 2*017 WL 6541106, at *10. The burden is on the producing party

to sort through its documents and produce those that are responsive. *Rothman v. Emory Univ.*, 1996 WL 377049, *2 (N.D. Ill. July 1, 1996).

Under Plaintiffs' proposed protocol, Plaintiffs need only "locate the *potentially responsive* ESI using . . . search terms, custodians, and time periods,"  Plaintiffs' Protocol at §4 (emphasis added). The absurdity of Plaintiffs' proposal is highlighted by the fact that Plaintiffs are reviewing their documents for privileges but at the same time refusing to perform a responsiveness and relevancy review that would not take much more time than a thorough privilege review. Thus, Plaintiffs' complaint that a responsiveness and relevancy review is too difficult for them because relevance might be measured differently between the consolidated cases ignores the fact that Plaintiffs created the burden they now complain of because Plaintiffs demanded consolidation of all these cases for discovery purposes.[2]

Moreover, Plaintiffs assertions in their response to the motion that "responsiveness review risks dictating relevance for the other side" and "[r]elevance review, whatever that might mean, is likewise in the mind of the litigant" suggests that no party can ever challenge discovery requests on relevance grounds. *See* Dominion Opposition at 14 (Dkt. 146). Not only have these assertions been ignored by Plaintiffs' own actions in objecting to many of the Herring Parties' Requests for Production, in part, on the basis of relevance; but they also wholly contradict Plaintiffs' position that search terms, custodians, and date limits constitute a responsiveness review.

In contrast, the Herring Parties are already searching for, reviewing, and producing thousands of custodial and non-custodial documents responsive to Plaintiffs' requests. Even

---

[2] Plaintiffs' response to the motion to enter Defendants' joint proposed order includes a multi-page argument against labeling production by document request, asserting that Plaintiffs need only produce documents as they are kept in the usual course of business. *See* Dominion's Opposition at 5-7 (Dkt. 146). But, the Herring Parties have not requested that Plaintiffs produce labeled documents. Thus, Plaintiffs' lengthy complaint is unwarranted.

without Plaintiffs' proposed discovery-protocol terms, the Herring Parties have made a good-faith effort in producing 15,864 relevant documents totaling 104,359 pages to date. OAN's responsiveness and relevancy review is even more important because a media organization's production of documents based solely on search chains without further review would likely lead to the production of privileged documents that could subject OAN to waiver of its privilege. *See generally*, *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 271 F.R.D. 125, 127 (S.D.W. Va. 2010) (finding careless production in case of "classic 'document dump'"). And Plaintiffs' production of massive quantities of unreviewed documents conflicts with the Court's Local Rules, which include the duty to "not produce documents in a manner designed to hide or obscure the existence of particular documents." D.D.C. Local Rules, App'x A at 127 (providing "Lawyer's Duties to Other Counsel, Parties, and the Judiciary").

**B.    Plaintiffs' proposal burdens Defendants with Plaintiffs' discovery obligations.**

Because search terms are an imperfect tool for determining what documents must be produced as they will yield "hits" that are neither relevant to the litigation nor responsive to the specific requests for production, it is necessary to physically review the collection of document hits to locate truly responsive, relevant documents. Thus, Plaintiffs' proposal will not eliminate a responsiveness and relevancy review of Plaintiffs' documents; rather, it will shift Plaintiffs' obligations onto Defendants. The Court should not permit Plaintiffs to shift their discovery obligations on Defendants that would unduly burden Defendants that conflicts with Plaintiffs' promise of efficiency for the parties.

**C.    Hit count reports for all searches are not required.**

Plaintiffs' response to the motion to enter Defendants' joint proposed order simply asserts that "hit reports are an inexpensive tool" to evaluate search queries, proposing the use of such hit reports without any limitations. *See* Dominion Opposition at 24 (Dkt. 146). Plaintiffs' proposal

does not rely on any of the Federal Rules of Civil Procedure in its demand to require hit count reports for all searches because they are not required under the Rules. Plaintiffs' proposal would require production of "a report of the total number of document hits that result from applying each search term . . . regardless of whether the search term or custodian is agreed." Plaintiffs' Protocol § 5.

And Plaintiffs offer no case law to support the blanket demand for a hit report on every search query because there is no justification for such a demand, especially at the outset of the production process before Plaintiffs have reviewed the produced documents or even tried to explain what they believe might be missing in Defendants' productions. Plaintiffs' demand for hit reports in this context is the first step towards Plaintiffs demanding production of all documents that hit on a search chain, laying the foundation for demanding that the Court order the parties to abandon responsiveness reviews altogether.

Moreover, Plaintiffs' proposal that Defendants provide hit reports will be used as a method of evaluating Defendants' responsiveness and relevancy reviews—an impermissible use of hit reports for a variety of reasons, including that a purportedly production-to-hit-count percentage is far more likely to call into question the quality of the demanded search chain rather than the quality of the attorney-conducted responsiveness and relevancy review. Plaintiffs have submitted to the Herring Parties more than 6,000 separate search chains that are guaranteed to hit on irrelevant and non-responsive documents and yield artificially high hit counts on the reports they are demanding. Indeed, the Herring Parties' review of even the most basic search term, "Dominion," has resulted in fewer than 80 percent responsive hits. Clearly, Plaintiffs intend to misuse these hit reports to complain about Defendants' responsiveness and relevancy review despite the fact that the number of documents that are included within overbroad search chains are not evidence of an improper

responsiveness and relevancy review. The Court should not include this improper use of hit reports in the discovery protocol.

### D.     Plaintiffs should not dictate Defendants' custodial interviews.

Plaintiffs' proposal dictates a precise list of questions to be included in all custodial interviews for the parties that infringe on Defendants' attorney-work-product privilege and fails to consider that most of the custodial interviews have already occurred. Nothing in the Federal Rules of Civil Procedure or the case law requires the Court to micro manage the discovery process in this fashion, which will burden the Court with Plaintiffs' manufactured disputes over compliance.

Defendants propose requiring custodial interviews with "questions calculated to ascertain their knowledge concerning the likely location of any information relevant to the claims and defenses in that party's particular case," which is all that is necessary to ensure that parties comply with their scope-of-discovery obligations under Rule 26(b)(1).[3] Plaintiffs absurdly asserts in the response to the motion to enter Defendants' joint proposed order that Defendants' proposal offers no guarantee a custodian will be asked anything. *See* Dominion's Opposition at 16 (Dkt. 146). To the contrary, Defendants' proposal will ensure that the interviewees are questioned sufficiently to determine whether they were likely to have relevant electronic communications without bogging the Court down with policing the specific script used in each interview. Therefore, the Court should not allow Plaintiffs to burden the Court with micro-managing a complex discovery process that far exceeds the requirements under the Rules.

---

[3] *See, e.g.*, *DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021) ("At the least, a reasonable custodian interview consists of locating the relevant people and the locations and types of ESI."); *cf. Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) (noting each party's responsibility in responding to discovery to take "a commanding role in developing the strategy to produce its responsive emails"); *John B. v. Goetz*, 2007 WL 301280 at *1 (M.D. Tenn. Oct. 10, 2007) (requiring defendant to certify that key custodians had not removed responsive information but declining to require the specific custodial interview question recommended by plaintiff's expert).

### III.    Conclusion

The Court should reject Plaintiffs' proposed discovery protocol that seeks only to change the scope of the Federal Rules of Civil Procedure and enter Defendants' joint proposed order governing discovery matters in this litigation.

Dated: November 7, 2023                          Respectfully submitted,

By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Jonathan D. Neerman (D.C. Bar No. 90003393)
jneerman@jw.com
Charles L. Babcock (*admitted pro hac vice*)
cbabcock@jw.com
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
T: (214) 953-5664
F: (214) 661-6899

/s/ R. Trent McCotter
**BOYDEN GRAY PLLC**
R. Trent McCotter (D.C. Bar No. 1011329)
tmccotter@boydengray.com
801 17th St. NW, #350
Washington, DC 20006
T: (202) 706-5488

*Counsel for the Herring Parties*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will electronically mail notification of the filing to all counsel of record who are registered ECF users.

/s/ *R. Trent McCotter*
R. Trent McCotter