IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al., | |
|     Plaintiffs/Counterclaim Defendants | |
| v. | Case No. 1:21-cv-02130-CJN |
| HERRING NETWORKS, INC., et al., | |
|     Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs | Judge Carl J. Nichols |
| v. | |
| AT&T SERVICES, INC., et al., | |
|     Third-Party Defendants. | |

**THE HERRING PARTIES' RESPONSE IN OPPOSITION TO DOMINION'S MOTION
FOR ENTRY OF FACT WITNESS DEPOSITION PROTOCOL**

    Defendants Herring Networks, Inc., d/b/a One America News Network, Charles Herring, Robert Herring, Sr., and Chanel Rion (collectively, the "Herring Parties"), file this Response in Opposition to Dominion's Motion for Entry of Fact Witness Deposition Protocol and respectfully show the Court as follows:

**I.
INTRODUCTION**

    Dominion does not get to decide how the Herring Parties—and the numerous other Defendants in these consolidated proceedings—prepare its defense. Yet, by requesting that all depositions be conducted remotely, absent good cause, that is precisely what Dominion wants. This is backwards, as the default for depositions is in person, unless a particular deposition is ordered by the Court to be taken remotely. Dominion, however, cannot *specifically* show why any *particular* deposition should be conducted remotely, let alone every deposition. Indeed, its motion

1

is filled with speculative, hypothetical, and vague concerns that are plainly insufficient to warrant the broad relief it seeks. Further, many of these concerns were caused by Dominion's decision to file—and then consolidate discovery across—numerous lawsuits. Defendants should not be forced to suffer because of Dominion's decision to proceed in that manner.

The Herring Parties' position is that the Court should enter a deposition protocol that gives the noticing party, in coordination with the witness, the authority to determine whether to conduct the deposition in person or remotely, as is standard practice in federal litigation, and which would still allow remote attendance by attorneys who are not taking depositions. Thus, for the reasons set forth below and in the Herring Parties' Motion for Entry of Opposed Deposition Protocol, the Court should deny Dominion's motion and enter Defendants' proposed deposition protocol providing that the default for location of depositions is in-person, as set forth by the Federal Rules.

## II.
## APPLICABLE LAW

The Federal Rules of Civil Procedure empower the party issuing a notice of deposition to determine the medium and location of that deposition. *See* Fed. R. Civ. P. 30. Under Rule 30(b)(4) of the Federal Rules of Civil Procedure, the Court may on motion order that a deposition be taken by telephone or other remote means. Fed. R. Civ. P. 30(b)(4). Rule 30(b)(4) does not specify the standard to be considered in determining whether to grant a request for a remote deposition. *Id.*

In analyzing requests under Rule 30(b)(4), some courts employ a two-step analysis that first requires the movant to articulate a "legitimate reason" for seeking a remote deposition. If the movant does so, the burden then shifts to the opposing party to show that it would be prejudiced by conducting a remote deposition. *See, e.g.*, *Lewis v. CoreCivic of Tennessee, LLC*, No. 21-CV-01385-JAH-BGS, 2023 WL 5944279, at *1 (S.D. Cal. Sept. 12, 2023). Other courts are directed to "balance the claims of prejudice and those of hardship" and "conduct a careful weighing of the

relevant facts." *See, e.g.*, *Stapleton v. Prince Carpentry, Inc.*, No. 22-CV-004044-JSJ-MW, 2023 WL 1785547, at *1 (E.D.N.Y. Feb. 6, 2023); *see also Tsien v. Bd. of Regents of Univ. Sys. of Georgia*, No. CV 121-008, 2021 WL 6617307, at *1 (S.D. Ga. Nov. 12, 2021) (holding that a movant under Rule 30(b)(4) "must show necessity through legitimate reasons, weighed against particularized showings of prejudice by the opposing party"). In either case, courts weigh a party's proffered rationale for conducting a remote deposition against the prejudice incurred by the opposing party should it be denied an in-person deposition.

Still, Rule 30(b)(4) "is permissive, not mandatory," thus a court "must exercise its discretion whether the moving party has shown good cause for the issuance of a protective order requiring that the deposition be taken remotely." *Manley v. Bellendir*, No. 18-cv-1220-EFM-TJJ, 2020 WL 2766508, at *2 (D. Kan. May 28, 2020). Dominion's protocol dispenses with all of this, and it should be rejected.

### III.
### ARGUMENT

**A.  Dominion fails to present a legitimate reason for conducting every deposition remotely.**

During the parties' numerous meet-and-confers, Dominion offered no justification for its demand that every deposition in these consolidated proceedings be conducted remotely. Now, however, Dominion has scrounged up three purported reasons: (1) increased efficiency; (2) the reduction of costs; and (3) the promotion of safety. *See* Dkt. 114-1 at 11–16. None of these *post hoc* justifications offers a compelling—much less, legitimate—reason for stripping the Herring Parties and the other Defendants of the well-established benefits of conducting in-person depositions.

3

### 1. Dominion's concerns regarding efficiency and cost are not a legitimate reason.

Citing the number of parties and lawyers in these consolidated proceedings, Dominion contends that remote depositions will promote efficiency and reduce costs. Dkt. 114-1 at 11–15.[1] Dominion's claim in this regard—*i.e.* that the "complicated" nature of consolidated discovery warrants remote depositions—is reminiscent of "the child who murders his parents and then asks for mercy because he is an orphan." *Fog Cutter Capital Grp. Inc. v. S.E.C.*, 474 F.3d 822, 826 (D.C. Cir. 2007). Indeed, it was Dominion who chose to file numerous lawsuits and then moved to consolidate discovery (over OAN's objection), knowing full well that such consolidation would lead to the circumstances it now bemoans.

Dominion's purported concerns regarding scheduling difficulties and finding a suitable location for depositions are equally meritless. *See* Dkt. 114-1 at 12. As an initial matter, these concerns are completely speculative—Dominion has no idea who will be deposed, or when and where those depositions will occur. *See* Dkt. 114-1 at 12 (admitting that the number of depositions that will be taken "is not known"). Regardless, the eight different law firms representing parties in these consolidated proceedings can surely find times and locations suitable to the needs of each deposition, and Dominion offers no argument to the contrary.

Dominion further notes that videoconferencing technology has become more widely used since the COVID-19 pandemic. *See* Dkt. 114-1 at 12–13. But that fact alone does not justify the blanket order Dominion seeks. As one court noted, the growing use of videoconferencing technology "does not, standing alone, give [a court] a basis to compel a litigant to take a remote

---

[1] Dominion filed its motion only in *U.S. Dominion, Inc. v. Powell*, No. 1:21-cv-40, and the docket numbers cited herein are to that docket.

4

deposition when that litigant has reasonably elected otherwise." *In re Deepwater Horizon Belo*, No. 3:19-CV-1535, 2021 WL 6882434, at *3 (N.D. Fla. July 12, 2021).

As for cost, Dominion claims that "airfare and hotel accommodations" will be an "enormous expense." Yet again, these concerns are speculative—Dominion does not know where and when it will be traveling. In any event, travel expenses associated with attending in-person depositions are routine litigation costs that are insufficient to warrant the taking of every deposition remotely. *See, e.g.*, *Shvartser v. Lekser*, 292 F. Supp. 3d 272, 274 (D.D.C. 2018) (traveling to an in-person deposition was not an "undue burden or expense"); *see also Tsien v. Bd. of Regents of Univ. Sys. of Ga.*, 2021 WL 6617307, at *2 (S.D. Ga. Nov. 12, 2021), *aff'd*, 2021 WL 6617308 (S.D. Ga. Dec. 20, 2021) (holding that expenses associated with in-person depositions "do not constitute 'legitimate reasons' or 'good cause' to avoid an in-person deposition" and rejecting plaintiff's efforts to avoid in-person depositions on those grounds: "Plaintiff chose to pursue complex, high-stakes litigation in this Court and must bear the burden associated with such litigation."); *Huddleston v. Bowling Green Inn of Pensacola,* 333 F.R.D. 581, 585 (N.D. Fla. 2019) (noting plaintiff is required to bear reasonable burden and inconvenience its civil action presents); *United States v. Rock Springs Vista Dev.*, 185 F.R.D. 603, 604 (D. Nev. 1999) (finding plaintiff who commences litigation to obtain substantial monetary gain or benefit cannot invoke mere inconvenience or expense as legitimate reason to refuse in-person deposition). Indeed, Dominion presents no argument or evidence that it—a company with "operations across North America and the globe"—cannot shoulder routine litigation costs associated with in-person depositions. Dkt. 114-1 at 14.

### 2. Dominion's generalized concerns regarding communicable illnesses and other vague safety issues are not a legitimate reason.

Dominion's claim that COVID-19 and other communicable illnesses warrant a blanket remote deposition order has no basis.  First, the COVID-19 pandemic is over.  On April 10, 2023, President Biden signed into law House Joint Resolution 7, "which terminate[d] the national emergency related to the COVID-19 pandemic." Pub. L. No. 118-3, 137 Stat. 6 (2023).  Tellingly, Dominion cites a slew of cases from 2020 and 2021 to bolster its claim that COVID-19 concerns warrant the taking remote depositions. *See* Dkt. 114-1 at 15.  But the world is vastly different now than it was when these cases were penned. *See, e.g.*, *United States v. Merise*, No. CR 06-42-1 (JDB), 2023 WL 6847034, at *8 (D.D.C. Oct. 17, 2023).

At bottom, Dominion's vague and speculative concerns about supposedly "ris[ing]" COVID-19 cases and "predicti[ons]" about the severity of COVID-19 and other viruses do not justify the relief it seeks. *See, e.g.*, *United States v. Balega*, No. 19-CV-2959 (JRT/LIB), 2022 WL 20100634, at *3 (D. Minn. Mar. 10, 2022) ("The existence of the COVID-19 pandemic alone is insufficient to demonstrate good cause"; instead, the party requesting permission to conduct a deposition remotely must provide some context for the effects of the COVID-19 pandemic as applied to a specific deposition."); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *8 (N.D. Ill. June 25, 2020) (refusing to enter blanket ruling "that the COVID-19 pandemic alone justifies the taking of remote depositions in all cases and under all circumstances").  Nor does Dominion's vague—and unsupported—fear of reprisals against its witnesses. *See* Dkt. 114-1 at 16.

**B.     The Herring Parties will be greatly prejudiced if denied their right to take in-person depositions.**

Even if Dominion could offer a legitimate reason or demonstrate good cause for conducting depositions remotely, its blanket request should further be denied because it would prejudice the Herring Parties' ability to defend their interests in this case. As this Court (and others) recognize, "live testimony remains markedly preferable to remote testimony." *Roh v. Schultz*, No. CV 21-2560 (BAH), 2022 WL 2132559, at *6 (D.D.C. June 14, 2022); *see also Guy v. Vilsack*, 293 F.R.D. 8, 13 (D.D.C. 2013) (noting there is a "benefit and convenience" associated with in-person depositions); *In re Deepwater Horizon Belo*, 2021 WL 6882434, at *3 (recognizing that in-person depositions are "generally superior" to remote depositions). Indeed, even in the post-pandemic world, courts understand that in-person depositions are "crucial to assessing a witness's potential presentation at trial, veracity, and credibility." *Rubio v. City of Visalia*, No. 1:21-CV-00286-DAD-SAB, 2022 WL 193072, at *2 (E.D. Cal. Jan. 21, 2022). In this regard, a Zoom screen is not a perfect substitute. As one court noted,

> [a] significant [a]mount of nonverbal information is gained through an in-person deposition and such information may not be as easily ascertained through a Zoom deposition. Non-verbal cues are less evident, and the exchange of documents is more difficult.

*L.D.M. by & through Matheny v. LMH Health*, No. 20-2491-DDC-GEB, 2021 WL 5906039, at *4 (D. Kan. Dec. 14, 2021). Furthermore, in-person depositions would enable the Herring Parties to ascertain whether someone is coaching the deponent or providing the deponent with answers to the questions posed. *See BioConvergence LLC v. Attariwala*, No. CV 20-MC-101 (RC), 2023 WL 2086078, at *7 (D.D.C. Feb. 17, 2023) (recognizing that messages exchanged between deponent and his attorney during a video deposition "could [not] have occurred had the deposition taken place in person"); *Barksdale Sch. Portraits, LLC v. Williams*, 339 F.R.D. 341, 344–45 (D. Mass.

7

2021) (sanctioning counsel who coached witness "[b]y exploiting the remote nature of the deposition").

As it stands, the Herring Parties face a multi-billion dollar lawsuit that threatens One America News Network's very existence. In a case with such high stakes, it is imperative that the Herring Parties be afforded the benefits associated with in-person depositions, as mentioned above. Should a deponent's unique circumstances counsel in favor of holding a remote deposition, Dominion will be entitled to seek such relief on a case-by-case basis, as is standard practice in federal litigation. That, however, should be the rare exception—not the default rule that Dominion seeks here.

## IV.
## CONCLUSION

For these reasons, the Herring Parties respectfully request that the Court deny Dominion's motion and enter the Defendants' proposed deposition protocol providing that the default for location of depositions is in-person, as set forth by the Federal Rules.

Dated: November 15, 2023                    Respectfully submitted,

                                                     By: */s/ R. Trent McCotter*

**JACKSON WALKER LLP**
Jonathan D. Neerman (D.C. Bar No. 90003393)
jneerman@jw.com
Charles L. Babcock (*admitted pro hac vice*)
cbabcock@jw.com
2323 Ross Avenue, Suite 600
Dallas, TX 75201
T: (214) 953-5664
F: (214) 661-6899

**BOYDEN GRAY PLLC**
R. Trent McCotter (D.C. Bar No. 1011329)
tmccotter@boydengray.com
801 17th St. NW, #350
Washington, DC 20006
T: (202) 706-5488

*Counsel for the Herring Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will electronically mail notification of the filing to all counsel of record who are registered ECF users.

                                                    /s/ *R. Trent McCotter*
                                                    R. Trent McCotter