**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| US DOMINION, INC., et al., | |
| *Plaintiffs,* | No. 21-cv-02130-CJN-MAU |
| v. | |
| HERRING NETWORKS, INC., et al., | |
| *Defendants.* | |

**DEFENDANT CHRISTINA BOBB'S MOTION FOR PARTIAL STAY AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION AND SUMMARY OF ARGUMENT……………………………4

II.  STATEMENT OF RELEVANT FACTS………………………………………………..6

    A.  Arizona Criminal Case Allegations……………………………………………6

    B.  Allegations In This Case Demonstrating a Significant Factual Overlap with the
        Criminal Case …………………………………………………………………8

    C.  Status of Criminal Case ………………………………………………………..9

    D.  Status of Discovery Relating to Bobb ………………………………………9

III.  THE COURT HAS AUTHORITY TO ISSUE THIS NARROWLY TAILORED STAY
REQUESTED……………………………………………………………………………...13

    A.  The Close Relationship Between the Civil and Criminal Actions Favors A Stay…. 15

    B.  The Absence of Burden On the Court Weighs In Favor of A Stay……………….....17

    C.  The Weight of Any Hardship or Inequities if Stay is Granted Is Minimal…………18

    D.  The Brief Duration of the Stay Bodes In Its Favor…………………………………19

IV.  CONCLUSION………………………………………………………………………..19

**TABLE OF AUTHORITIES**

Page

Cases

*Doe v. Sipper*, 869 F. Supp.2d 113, 117 (D.D.C. 2012) ...........................................5, 14, 15, 18, 19

*Estate of Aaither ex rel Gaither v. D.C.*, 2005 WL 3272130, at *4 (D.D.C. 2005) ...............15, 17

*Fid. Funding of California v. Reinhold,* 190 F.R.D. 45, 52 (E.D.N.Y. 1997)..............................15

*Gala Enters., Inc. v. Hewlett Packard Co.*, 1996 WL 732636, at *2 ............................................14

*Kurd v. Republic of Turkey*, 2022 WL 17961245, at *1 (D.D.C. 2022)..........13, 14, 15, 17, 18, 19

*Landis v. North American Co.*, 288 U.S. 248, 254 (1936) ...........................................................13

*Lee v. Trump*, 2024 WL 1872489, at *1 (D. D.C. 2024) ...............................................................6

*Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F. 3d 83, 98 (2nd Cir. 2012) ...........................18

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980) ...................4

*Securities and Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375
   (D.C. Cir. 1980) ........................................................................................................14, 15

*State of Arizona v. Kelli Ward, et al.,* Case No. CR2024-006850-016 (Superior Court, County of
Maricopa)...............................................................................................................................4

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp.
1134, 1139 (S.D.N.Y. 1995)..................................................................................................15

*United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970) ..................................................................14

*Wheling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088-89 (5th Cir. 1979)..............................5, 18

Rule & Statutes

A.R.S. § 13-1003……………………………………………………………………..………..7
A.R.S. § 13-2002(A)………...…………………………………………………………………7
A.R.S. § 12-751……………………………………………………………………….………..9
A.R.S. § 13-2310(A)………………………………………………………………….…………7
A.R.S. § 13-2311……………………………………………………………………….…………7

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

When confronted with parallel criminal proceedings, the court retains broad discretion to issue an order staying the civil action in the interest of justice and based on the circumstances of the case. (*Sec. & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980).) In the present matter, the significant factual overlap between this civil action and the recent criminal indictment against defendant Christina Bobb ("Defendant") merits a partial stay of discovery in this case.

On April 23, 2024, defendant Christina Bobb was indicted, along with 17 others, on felony charges in the Arizona criminal case titled *State of Arizona v. Kelli Ward, et al.,* Case No. CR2024-006850-016 (Superior Court, County of Maricopa) (the "Criminal Case"). Ms. Bobb and her alleged co-conspirators are accused of organizing efforts to prevent the lawful transfer of the presidency in order to keep former president Donald J. Trump in office by various means, including challenging the voting machines used in Arizona (i.e., the Dominion voting machines). (Exh. A, pgs. 29-30.)

Similarly, in this case, plaintiffs allege that Ms. Bobb defamed them by promulgating narratives of election fraud by Dominion while working for OAN. (Doc. 1 – Complaint, pg. 4, ¶ 6.) Additionally, plaintiffs allege that Ms. Bobb was simultaneously consulting with the Trump Campaign, Rudolph Giuliani (an indicted co-conspirator in the Criminal Case) and the Trump legal team on how to overturn the 2020 Presidential election, precisely what she is accused of doing in Arizona. (Doc. 1 – Complaint, pg. 5, ¶ 9; 10-11, ¶ 22; 70, ¶ 141.) Plaintiffs also allege that Ms. Bobb raised money to challenge the election results specifically in Maricopa County, Arizona, the venue of the Criminal Case. (Id.)

In short, there exists a factual overlap between the criminal indictment and this civil action, as both contain allegations regarding Ms. Bobb's post-election conduct in challenging the results of the 2020 Presidential Election. Considering the substantial factual overlap between these cases, coupled with the issues inherent to contemporaneous criminal and civil litigation, Ms. Bobb respectfully moves this court for a partial stay of discovery for **120 days** with the option to renew should the criminal proceeding remain unresolved upon expiration of this initial stay. Specifically, Ms. Bobb moves for an Order temporarily staying her discovery obligations in this action, including all written demands or deposition notices issued to her, and precluding further or compelled responses to any previously served discovery, including without limitation, plaintiffs' first set of requests for production, which, notably, plaintiffs waited until after Ms. Bobb was indicted and ***nearly a year after service of her responses*** to pursue meet and confer efforts.

Absent a stay, Ms. Bobb is faced with a substantial dilemma – either fully defend this civil action by waiving her Fifth Amendment rights and responding to discovery, thereby potentially jeopardizing her criminal defense, or invoke her Fifth Amendment privilege and consequently undermine her prospects in this civil action. This predicament places Defendant in the untenable position of having to choose between jeopardizing her criminal case or jeopardizing her defense in this case.  It is "not fair to force [a] party to choose between [the] Fifth Amendment privilege and the civil action." (*Doe v. Sipper*, 869 F. Supp.2d 113, 117 (D.D.C. 2012) (citing *Wheling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088-89 (5th Cir. 1979).)

In deciding whether to impose a stay, this Court has identified four factors to consider, all of which favor Ms. Bobb's request for a stay. They are:

1. **Close Relationship**. There is a significant factual overlap between the two actions warranting a stay.

2. **Burden on the Court (i.e., judicial efficiency).** A brief and limited stay would prevent unnecessary litigation (e.g., avoid a constant stream of privilege battles) and promote better judicial efficiency.

3. **Hardship on the Parties.** There is minimalnam hardship on plaintiffs or any other party if the stay is granted because the duration of the stay is brief and discovery may continue as between the remaining parties. However, the hardship on Ms. Bobb will be great if she is forced to choose between her Fifth Amendment privilege and defending this suit.

4. **Duration of Stay Requested.** Ms. Bobb's request for a brief 120-day stay is "relatively insignificant" and allows for discovery to continue as between the other parties.

(*See Lee v. Trump*, 2024 WL 1872489, at *1 (D. D.C. 2024).)

Based on the foregoing, Defendant respectfully requests that the Court grant this motion and stay Ms. Bobb's discovery obligations for **120 days**, with the option to renew if necessary.

## II.     STATEMENT OF RELEVANT FACTS

### A.  Arizona Criminal Case Allegations

The criminal indictment against Defendant and the allegations set forth in the present civil complaint share factual parallels – namely, Ms. Bobb's efforts to contest the outcome of the 2020 Presidential Election, including challenges to the results tallied by the Dominion voting machine.

On April 23, 2024, defendant Christina Bobb was indicted, along with 17 others, on charges of conspiracy, fraud and forgery in the Criminal Case. (See Exh. A.)[1] After the general election on November 3, 2020, the criminal defendants allegedly raised "claims of widespread election fraud in Arizona to pressure election officials to change the outcome of a democratic election" in favor of Donald J. Trump.[2] (Exh. A, pg. 13.) The indictment, like the complaint in this action, references Christina Bobb's position as an attorney for the Trump Campaign, and her work with Rudy Giuliani, an alleged co-conspirator and defendant in this case.[3] (Exh. A, pg. 20.)

The factual underpinnings of the nine counts further demonstrate the overlap between the criminal and civil case. For example, the indictment references, as the civil complaint does, Ms. Bobb's claims of election fraud in Arizona. (Exh. A, pg. 32.) In December 2020, some of the co-conspirators joined efforts to obtain access to Maricopa County's voting machines and ballots. (Exh. A, pg. 29-30.) Additionally, lawsuits were filed by various indicted and unindicted co-conspirators challenging, among other things, the accuracy of the votes tallied in Arizona. (See, e.g., Exh. A, pgs. 25-26.) The indictment goes on to detail plans to contest the election results in six other states. (Exh. A, pg. 38-39.)

---

[1] Christina Bobb has been indicted on nine felony counts: count one for conspiracy in violation of A.R.S. § 13-1003; count two for fraudulent schemes and artifices in violation of A.R.S. § 13-2310(A); count three for fraudulent schemes and practices in violation of A.R.S. § 13-2311 and counts four through nine for forgery in violation of A.R.S. § 13-2002(A). (See Exh. A.)

[2] Unidentified Co-conspirator 1 is former President Donald J. Trump. (See, e.g., Exh. A, pg. 14 "Unidentified Co-conspirator 1 ran for reelection with then-Vice President Pence against now-President Biden and now Vice-President Harris", see also, pg. 21.)

[3] Defendant "(012)" is described as "the Mayor" and is known to be Rudy Giuliani. (Exh. A, pg. 20)

### B.  Allegations In This Case Demonstrating a Significant Factual Overlap with the Criminal Case

Plaintiffs' allegations of defamation against Ms. Bobb in this case arise out of her work as a television broadcaster for the OAN network after the November 2020 Presidential election. Plaintiffs allege that between November 2020 and January 2021, ***the same time frame at issue in the Criminal Case***, OAN, Ms. Bobb and Ms. Rion began raising money to fund an audit of the voting machines used during the 2020 Presidential election in Maricopa County, Arizona, the venue at issue in the Criminal Case. (Doc. 1, pg. 5, ¶ 9.) Plaintiffs contend that OAN and Ms. Bobb helped fund activities, such as those in Arizona, that generated false claims about Dominion. (Id. at pg. 122-123, ¶ 230.) Ms. Bobb and Ms. Rion also launched Voices & Votes, an organization formed to fight for an Arizona election audit. (Id. pg. 125, ¶ 234.) Ms. Bobb's efforts to challenge the election results in Maricopa County, Arizona are at the heart of the Criminal Case, as detailed above.

Plaintiffs reference Ms. Bobb's role as an advisor to the Trump Campaign in their complaint. Plaintiffs allege that Ms. Bobb was advising the Trump Campaign on how to overturn the 2020 election while simultaneously making statements on OAN about Dominion rigging the election and sowing the seeds of doubt in the election results. (Doc. 1, pg. 70, ¶141, pg. 121-122, ¶ 228.) [4]

These are some of the allegations demonstrating the significant factual overlap between the allegations in this case and the criminal action.

---

[4] The complaint contains allegations that are immaterial and extraneous to plaintiffs' claim of defamation, such as Ms. Bobb's efforts to raise money for an audit of the election results. To the extent such allegations are referenced herein, Defendant does not concede their relevance or ultimate admissibility.

### C.  Status of Criminal Case

Ms. Bobb was indicted on April 23, 2024, served on May 4, 2024, and arraigned on May 21, 2024. (Jacobs Dec., ¶ 3.) A decision has yet to be made whether Ms. Bobb will pursue a speedy trial. (Id.) Pursuant to Arizona Rules of Criminal Procedure, the deadline for a speedy trial is October 2024. (Id.) However, Thomas Jacobs, Ms. Bobb's criminal attorney, intends to file a dispositive anti-SLAPP motion pursuant to A.R.S. § 12-751 by the end of June 2024, which is expected to be heard by the end of September 2024. (Id. at ¶ 4.) If successful, Ms. Bobb will be dismissed from the Criminal Case. (Id.) If unsuccessful, given the nature of the allegations and the number of defendants, trial could proceed as late as January 2025. (Id. at ¶ 3.)

### D.  Status of Discovery Relating to Bobb

Minimal prejudice will result if a partial stay of discovery is imposed in this case. Ms. Bobb has already provided responses to plaintiffs' first and second sets of interrogatories (served on July 14 and August 30, 2023), plaintiffs' first set of requests for admission (served on August 30, 2023), and plaintiff's first and second sets of requests for production of documents (served on June 22 and August 30, 2023). (Haggerty Dec., ¶ 2.) There are no known outstanding issues concerning the sufficiency of the foregoing responses, aside from Ms. Bobb's responses to plaintiffs' first set of requests for production (the "RFPs"), the response to which was served on June 22, 2023, *a year ago*. (Id.)

Indeed, it was not until *after* Ms. Bobb was indicted that plaintiffs sought to meet and confer in earnest regarding the sufficiency of Ms. Bobb's RFP responses. (See Exh. B; Haggerty Dec., ¶ 3.)

On May 17, 2024, Ms. Bobb's new attorney, William C. Haggerty, conferred telephonically with plaintiffs' counsel regarding the RFPs. During the call and subsequently

confirmed in writing, Mr. Haggerty raised concerns about the impact of the RFPs on Ms. Bobb's pending criminal case and the need to confer with Ms. Bobb's criminal counsel before producing any materials, given the clear impact of some of the requests on Ms. Bobb's Fifth Amendment rights. (Haggerty Dec., ¶ 4 and Exh. C.)

After conferring with Ms. Bobb's criminal counsel, Thomas Jacobs, Mr. Haggerty sent a letter to plaintiffs' counsel on May 28, 2024, advising that Ms. Bobb would seek an order staying discovery. (Haggerty Dec., ¶ 5 and Exh. C.) Mr. Haggerty explained that Mr. Jacobs expressed concern about the negative impact of the discovery process in this case, including the RFPs, on Ms. Bobb's pending criminal case. (Id.) Mr. Jacobs believes that if a discovery stay is not granted, the scope of discovery in this case, including the RFPs, could and likely would impair Ms. Bobb's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth by Arizona law, potentially expose Ms. Bobb's theory to the prosecution in advance of trial, and otherwise prejudice her criminal case. (Jacobs Dec., ¶ 5.) Despite the intention to stay the matter, Mr. Haggerty continued efforts to meet and confer regarding the scope of the RFPs to facilitate a response when given. (Exh. C.)

On June 6, 2025, Christina Dieckmann, plaintiffs' counsel, responded, stating unequivocally that the Dominion plaintiffs would not consent to stay proceedings against Ms. Bobb. (Exh. D.) Ms. Dieckmann demanded dates for Ms. Bobb's deposition and production of documents immediately. (Id.) Ms. Dieckmann refused to meet and confer regarding narrowing the scope of the production, as requested by Mr. Haggerty, absent a blanket agreement to produce documents immediately. (Id.)

Thereafter, the parties continued to confer, culminating with an email on June 21, 2024, wherein Mr. Haggerty provided the authority requested and made a final attempt to reach an

agreement regarding the requested stay. (Haggerty Dec., ¶ 7 and Exh. D.) As of the time of filing this motion, no response had been received. (Haggerty Dec., ¶ 7.)

The discovery sought by plaintiffs in this case relates directly to the issues raised in the Criminal Case and potentially implicates Ms. Bobb's Fifth Amendment rights. For example, plaintiffs' RFPs include the following:

- **No. 71:** All Documents and Communications with or concerning any member of the Arizona State Senate, including but not limited to Karen Fann, from January 1, 2020 to the Present.

- **No. 72:** All Documents and Communications with or concerning any member of the Arizona Republican Party, including but not limited to Kelli Ward, from January 1, 2020 to the Present.

- **No. 31:** Documents and Communications between Christina Bobb, Donald Trump, and the TRUMP ADMINISTRATION, including but not limited to call logs, from January 1, 2020 to the present. This request includes all Documents and Communications related to Christina Bobb's role as advisor or consultant to the Trump Campaign or Trump Legal Team, whether that role was formal or informal in nature.

- **No. 7:** All Documents and Communications with or concerning Rudolph Giuliani, and any agreements or draft agreements with Rudolph Giuliani, from January 1, 2018 to the Present.

- **No. 44:** Documents and Communications concerning evidence or lack thereof that DOMINION deleted, lost, changed, or compromised votes in connection with the 2020 PRESIDENTIAL ELECTION or any other election, including all sources for

such evidence, and including statements from the Trump Administration Cybersecurity & Infrastructure Security Agency, the Trump Administration Election Assistance Commission, the Michigan Secretary of State, the Georgia Secretary of State, the Maricopa County Board of Supervisors, then-United States Attorney General William Barr, Sean Spicer, Chris Christie, any election security expert, and DOMINION. There is no time limit on this Request.

- **No. 45:** Documents and Communications concerning the alleged disappearance of President Trump's early voting leads in the 2020 PRESIDENTIAL ELECTION. There is no time limit on this Request.

- **No. 52:** Documents that YOU contend support, establish, demonstrate, or show that the DEFAMATORY STATEMENTS are substantially true, accurate, not misleading, and/or not defamatory. There is no time limit on this Request.

- **No. 53:** Documents and Communications concerning any investigations undertaken by OAN[5] relating to DOMINION, THE 2020 PRESIDENTIAL ELECTION, or voter fraud. There is no time limit on this request.

- **No. 55:** Documents on which you intend to rely at any hearing or trial of this ACTION. There is no time limit on this Request.

- **No. 58:** Documents and Communications concerning DOMINION provided to OAN by any OAN ON-AIR PERSONALITIES, the TRUMP ADMINISTRATION, Rudolph Giuliani, Sidney Powell, Michael Lindell, Patrick Byrne, Russell Ramsland, Joe Oltmann, Edward Solomon, Ron Watkins, any source, or any of their counsel. There is no time limit on this Request.

---

[5] "OAN" is defined in the RFPs to include Christina Bobb. (Exh. E, pg. 6, No. 15.)

- **No. 67:** All Documents and Communications regarding any fundraising efforts undertaken by OAN, Christina Bobb, or Chanel Rion on behalf of, or for the benefit of, VOICES AND VOTES, or any efforts related to any CyberNinjas' audit relating to the 2020 PRESIDENTIAL ELECTION.

- **No. 69:** All Documents and Communications with or concerning any PERSON who donated or contributed money to VOICES AND VOTES between January 1, 2020 and the Present.

- **No. 70:** All Documents and Communications sufficient to show all monies received or collected by OAN, Christina Bobb, or Chanel Rion to support any efforts to investigate or challenge DOMINION voting machines and technology or the results of the 2020 PRESIDENTIAL ELECTION from January 1, 2020 to the Present.

(Exh. E.)

These represent a sample of the requests that implicate the Criminal Case and potentially Ms. Bobb's Fifth Amendment rights.

## III.   THE COURT HAS AUTHORITY TO ISSUE THIS NARROWLY TAILORED STAY REQUESTED

"It is well established that a district court has discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require." (*Kurd v. Republic of Turkey*, 2022 WL 17961245, at *1 (D.D.C. 2022); see also *Landis v. North American Co.*, 288 U.S. 248, 254 (1936) (court has inherent power to control disposition of causes).) This authority allows a court "to stay civil proceedings, postpone civil discovery, or impose protective orders or conditions 'when the interests of justice…require such

action.' " (*Securities and Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C. Cir. 1980) (*Dresser*) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)).)

Generally, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." (*Dresser, supra,* 628 F.2d at 1375-76.) This is because "the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." (*Kurd, supra,* 2022 WL 17961245, at *1.)

In determining whether to stay a civil proceeding pending the outcome of parallel criminal litigation, courts in this District weigh the following four factors: " '1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay.' " (*Id.*, citing *Doe v. Sipper*, 869 F. Supp.2d 113, 116 (D.D.C. 2012) (*Sipper*).) "The factors serve as only a 'rough guide' for a court as it exercises its discretion. The Court may give each factor as much weight as it determines to be necessary." (*Sipper,* 869 F. Supp.2d at 116 (internal citations omitted).) Each of these factors, individually and collectively, weigh in favor of the requested stay here.

It is important to note that Ms. Bobb's request is narrowly tailored and of a limited duration to prevent any unnecessary hindrance or delay of discovery processes between the remaining parties involved in the Dominion litigations, ensuring plaintiffs can continue pursuing prosecution of those action unimpeded. (See *Gala Enters., Inc. v. Hewlett Packard Co.*, 1996 WL 732636, at *2 (court reasoned that individually tailored relief, allowing discovery to proceed

against uninvolved litigants, better balanced the needs of the criminal defendant, other litigants and the court); see also *Fid. Funding of California v. Reinhold,* 190 F.R.D. 45, 52 (E.D.N.Y. 1997) (granting stay of discovery for one party following his criminal indictment but permitting discovery to proceed for other litigants); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995) (staying civil case following party's indictment).)

### A.  The Close Relationship Between the Civil and Criminal Actions Favors A Stay

"[T]he D.C. Circuit Court has recognized that 'the strongest case for deferring civil proceedings until after completion of criminal proceedings is where,' as here, 'a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.'" (*Kurd* at *2, cutting *Dresser, supra,* 628 F.2d at 1375-1376.) "If both cases proceeded at the same time, this could implicate Defendant's Fifth Amendment rights." (*Sipper, supra,* 869 F.Supp.2d at 116.) Where there is a "close relationship" between the civil and criminal actions that implicates a defendant's Fifth Amendment rights, the necessity of a stay is most compelling. (*Sipper, supra,* 869 F.Supp.2d at 116.) This first factor is "often viewed as the most significant factor in the balancing test," (*See Estate of Aaither ex rel Gaither v. D.C.*, 2005 WL 3272130, at *4 (D.D.C. 2005) (*Gaither*)), and it weighs heavily in favor of a stay.

First, as a threshold matter, it is important to note that Ms. Bobb has already been indicted. (*See Gaither, supra,* 2005 WL 3272130, at *4 (where "there has been an indictment secured against criminal defendants…the case for a stay [is] a stronger one than had that not been the case.").) This bodes heavily in favor a stay.

Furthermore, as detailed above, there is a significant factual overlap between the civil and criminal matters, demonstrating a "close relationship" between the case. The Criminal Case

alleges that Ms. Bobb conspired with Rudy Giuliani, Trump, the Trump Campaign and others to overturn the 2020 Presidential Election and, in doing so, targeted Dominion voting machines in Maricopa County, Arizona. At issue in both cases is Ms. Bobb's communications and conduct after the November 2020 Presidential Election, particularly the time period between November 3, 2020 and January 6, 2021, as it relates to the results of the 2020 election. This presents a significant factual overlap between the two cases.

Moreover, many of the acts identified in the indictment to substantiate the nine felony counts against Ms. Bobb have been identified in plaintiffs' complaint. For example, the indictment details the efforts by various alleged co-conspirators, including Giuliani, to access Dominion voting machines in Maricopa County, Arizona as part of an effort to overturn the 2020 election. (Exh. A, pg. 29-30.) Similarly, the complaint alleges that Ms. Bobb sought to access the voting machines and raised money for an audit of the 2020 Presidential Election in Maricopa County, Arizona. (Doc. 1, ¶¶9, 243.)

The indictment and the complaint also both highlight Ms. Bobb's role as advisor to the Trump Campaign and her work with Rudy Giuliani. (Exh. A, pg. 20; Doc. 1, ¶¶ 141, 228.) Plaintiffs allege that Ms. Bobb worked in concert with Giuliani (a co-conspirator in the indictment) and the Trump Campaign to promote a false narrative about the 2020 election in an effort to overturn the election, including allegations that Dominion rigged the election. (Doc. 1, ¶¶ 141, 213, 228, 243.) Indeed, the complaint details specific acts taken by Ms. Bobb in concert with, or at the behest of, Giuliani to obtain an audit of the Presidential Election in Arizona. (Doc. 1, ¶ 243 ("Bobb was not only working with the Trump Campaign to generally overturn the election, but was working directly with Giuliani to encourage and facilitate the sham Arizona audit.").) These allegations clearly overlap factually with the allegations of the Criminal Case.

The "close relationship" between the two cases is further demonstrated by the scope of the discovery Plaintiffs seek from Ms. Bobb. (See RFPs listed above.) Not only do the RFPs factually overlap the Criminal Case, but any deposition of Ms. Bobb would also undoubtedly touch on issues material to Ms. Bobb's criminal case and implicate her Fifth Amendment rights.

Plaintiffs' allegations and the discovery they have propounded and will propound to Ms. Bobb (e.g., a deposition notice) overlap factually with and implicate the Criminal Case and her Fifth Amendment rights. Given the "close relationship" between the civil and criminal actions, this factor weighs in favor of the requested stay.

**B.  The Absence of Burden On the Court Weighs In Favor of A Stay**

The brief and narrowly tailored stay requested promotes judicial economy and preserves judicial resources. Employing a stay will avoid anticipated discovery disputes, assertions of privilege and protective orders. (*Gaither,* 2005 WL 3272130, at *5 (maintaining stay when lifting it "would – in all likelihood—result in a significant amount of discovery-related litigation relating to motions for protective orders, claims of privilege, and conflicts over witness availability").)

Furthermore, "a stay of discovery in a civil case until resolution of a criminal case may well later streamline discovery in the civil case." (*Kurd,* at *2; *see also Sipper*, 869 F. Supp.2d at 117.) Here, some of the discovery plaintiffs' seek may be produced in the criminal litigation, thereby removing related disputes.

Thus, there is no additional burden on the court by granting the stay and this factor weighs in favor of a stay.

### C.  The Weight of Any Hardship or Inequities if Stay is Granted Is Minimal

The balance of the hardships faced by the parties should a stay be granted favors Ms.

Bobb for one main reason: discovery in this case could impact the criminal case to a significant

degree. (*See Kurd* at *2 (finding balance of hardship in favor of defendant where the discovery

could significantly impact the criminal case).) The discovery in this case could implicate Ms.

Bobb's Fifth Amendment rights, which courts have recognized to be a "significant dilemma."

(*Sipper*, 869 F. Supp.2d at 117; see Jacobs Dec., ¶ 5.) Having to respond to discovery and sit for

deposition in this case requires Ms. Bobb to choose whether to waive or assert her rights under

the Fifth Amendment; in other words, Ms. Bobb would be forced to choose between jeopardizing

her defense in this case or the criminal case. If Ms. Bobb were to invoke her Fifth Amendment

right and decline to answer, for example, deposition questions, her invocation could be used

against her to establish civil liability. (*Sipper,* 869 F. Supp.2d at 117-118, citing *Louis Vuitton*

*Malletier S.A. v. LY USA, Inc.,* 676 F. 3d 83, 98 (2nd Cir. 2012).) Courts have recognized that

placing a defendant in this position is unfair. (*Wehling v. Columbia Broad. Sys.,* 608 F2d 1084,

1088-1089 (5th Cir. 1979) (concluding it is unfair to force a party to choose between Fifth

Amendment privilege and civil action).)

Additionally, satisfying Ms. Bobb's current discovery obligations in this matter would

require Ms. Bobb and her criminal defense attorney to divert their attention from the quickly

approaching criminal trial to prepare responses and testimony in this case, which poses yet

another hardship.

Furthermore, allowing discovery to proceed would not only implicate Ms. Bobb's Fifth

Amendment rights, it would improperly extend criminal discovery beyond the limits set forth by

Arizona law, could expose the defense's theory to the prosecution in advance of trial, or

otherwise prejudice the criminal case. (*Kurd, supra,* 2022 WL 17961245, at *1; Jacobs Dec., ¶ 5.)

On the other hand, the brief 120-day stay requested by Ms. Bobb is narrowly tailored and will result in little harm to any other party. Indeed, discovery may proceed among all other parties. Many of the documents sought from Ms. Bobb have already been produced by OAN and Ms. Bobb has already responded to all other discovery.[6] (Haggerty Dec., ¶ 2.)

Any argument by plaintiffs that a delay harms their case falls flat. Plaintiffs waited nearly a year to meet and confer regarding the sufficiency of Ms. Bobb's responses to their first set of requests for production. (Haggerty Dec., ¶ 2-3 and Exh. B.) Indeed, plaintiffs waited until Ms. Bobb was indicted before attempting to meet and confer in earnest regarding the responses. (Id.) Therefore, any claim of harm resulting from further delay would be disingenuous.

The requested 120-day stay is brief and does not result in any undue hardship or prejudice. This factor weighs in favor of the requested stay.

### D.  The Brief Duration of the Stay Bodes In Its Favor

The final factor, the duration of the stay requested, also bodes in favor of granting a stay. Ms. Bobb requests a brief and finite stay for 120-days. (*See, Kurd,* 2022 WL 17961245, at *4 (court finding short duration of stay requested weighed in favor of granting stay); *Sipper,* 896 F. Supp.2d at 118 ("A stay with a limited duration, as presented here, is more likely to be granted than an indefinite one.").)

### IV.    CONCLUSION

Based on the foregoing, Ms. Bobb respectfully requests that the Court grant this motion and stay Ms. Bobb's discovery obligations for 120 days, precluding any party from propounding

---

[6] Plaintiffs served an identical set of requests for production on OAN, Rion and Ms. Bobb.

any discovery or deposition notices on Ms. Bobb, compelling responses to any outstanding

discovery and relieving Ms. Bobb of any obligations to respond to any outstanding or previously

served discovery until termination of the stay. Ms. Bobb requests leave to renew the stay should

the Criminal Case remain ongoing at the conclusion of 120 days.

> **FORD, WALKER, HAGGERTY & BEHAR**
> By:  _/s/_   _William C. Haggerty_ _____
> William C. Haggerty, CA Bar No. 76652
> (admitted *pro hac vice*)
> Katherine M. Harwood, CA Bar No. 225202
> (admitted *pro hac vice*)
> One World Trade Center, 27th Floor
> Long Beach, California 90831
> Tel: (562) 983-2500
> Fax: (562) 983-2555
> bill@fwhb.com
> kharwood@fwhb.com
>
> *Attorneys for Defendant Christina Bobb*

## CERTIFICATION PURSUANT TO LCvR 7(m)

Pursuant to LCvR 7(m), the undersigned counsel contacted counsel for plaintiffs and conferred regarding this motion to stay. Plaintiffs do not consent to the relief requested in this motion for a partial stay.

_/s/ *William C. Haggerty* _____
William C. Haggerty, Esq. (*pro hac vice*)
FORD, WALKER, HAGGERTY &
BEHAR
One World Trade Center, 27th Floor
Long Beach, California 90831
Tel: (562) 983-2500
Fax: (562) 983-2555
bill@fwhb.com
kharwood@fwhb.com

*Attorneys for Defendant Christina Bobb*

<u>**CERTIFICATION OF SERVICE**</u>

I hereby certify that on this 24th day of June 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically serves email notification of such filing to all attorneys of record.

/s/__*William C. Haggerty* _
    William C. Haggerty, Esq. (*pro hac vice*)