**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| US DOMINION, INC., *et al.* | ) |
| *Plaintiffs,* | ) Civil Action No. 1:21-cv-02130-CJN-MAU |
| v. | ) Judge Carl J. Nichols |
| HERRING NETWORKS, INC., *et al.,* | ) |
| *Defendants.* | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT CHRISTINA BOBB'S MOTION FOR PARTIAL STAY**

## **TABLE OF CONTENTS**

Introduction ................................................................................................................1

Procedural Background .............................................................................................2

    **I.**      Legal Standard .................................................................................4

    **II.**    Ms. Bobb Has Not Established Facts Sufficient to Support the Requested Stay ....................................................................................5

             A.    There is Limited Overlap Between the Defamation Claims in Dominion's Suit and the Charges in the Arizona Indictment .....................5

             B.    Ms. Bobb has Advanced no Additional Concrete Facts that Support a Broad Stay of Discovery ..........................................................11

             C.    The Requested Stay is Neither Narrow Nor Time-Limited .....................12

    **III.**   The Requested Stay Should be Denied .................................................13

             A.    Document Production Must Proceed Immediately ...................................13

             B.    The Burden of a Stay on the Court and Other Parties will be Significant ................................................................................................14

             C.    Ms. Bobb's Deposition is Highly Relevant to the other OAN Defendants' Cases and to the Consolidated Cases, and Can Proceed without Prejudice to Her ..............................................................15

Conclusion ..............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Clinton v. Jones*,
520 U.S. 681 (1997)..................................................................................................4

*Doe v. Sipper*,
869 F. Supp. 2d 113 (D.D.C. 2012) ...................................................................4, 10

*Estate of Gaither ex rel Gaither v. D.C.*,
2005 WL 3272130 (D.D.C. 2005) ..........................................................................10

*Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*,
2006 WL 2585612 (S.D.N.Y. Sept. 8, 2006)......................................................9, 15

*Fidelity Funding of California v. Reinhold*,
190 F.R.D. 45 (E.D.N.Y. 1997) ........................................................................15, 16

*Fisher v. United States*,
425 U.S. 391 (1976)................................................................................................13

*Gala Enters., Inc. v. Hewlett Packard Co.*,
1996 WL 732636 (S.D.N.Y. 1996)....................................................................10, 12

*Gordon v. Fed. Deposit Ins. Corp.*,
427 F.2d 578 (D.C. Cir. 1970) .................................................................................5

*Harbour Town Yacht Club Boat Slip Owners Ass'n v. Safe Berth Mgmt., Inc.*,
411 F. Supp. 2d 641 (D.S.C. 2005)..........................................................................10

*Horn v. District of Columbia*,
210 F.R.D. 13 (D.D.C. 2002)................................................................................4, 9

*In re Grand Jury Subpoena Issued June 18, 2009*,
593 F.3d 155 (2d Cir. 2010)....................................................................................13

*In re Syncor ERISA Litig.*,
229 F.R.D. 636 (C.D. Cal. 2005) ............................................................................13

*Kurd v. Republic of Turkey*,
2022 WL 17961245 (D.D.C. 2022) .........................................................................10

*Lee v. Trump*,
2024 WL 1872489 (D. D.C. 2024) ........................................................................5, 9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F. 3d 83 (2nd Cir. 2012)..................................................................5

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004)...................................................................4

*Securities and Exch. Comm'n v. Dresser Indus., Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980)..........................................................4, 5

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005) ..................................................14

*State of Arizona v. Kelli Ward, et al.*,
    Case No. CR2024-006850-016 (Sup. Ct. Maricopa Co, filed Apr. 23, 2024)................ *passim*

*Tatneft v. Ukraine*,
    301 F. Supp. 3d 175 (D.D.C. 2018), *aff'd*, 771 F. App'x 9 (D.C. Cir. 2019)...........................4

*Thomas v. Tyler*,
    841 F. Supp. 1119 (D. Kan. 1993) .......................................................13

*Travelers Cas. & Sur. Co. v. Vanderbilt Grp., LLC*,
    No. 01 CIV. 10695 (DLC), 2002 WL 844345 (S.D.N.Y. May 2, 2002) ................10

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
    886 F.Supp. 1134 (S.D.N.Y. 1995) ......................................................10

*United States v. Doe*,
    465 U.S. 605 (1984)............................................................................13

*United States v. Hubbell*,
    530 U.S. 27 (2000)..............................................................................13

*Weil v. Markowitz*,
    829 F.2d 166 (D.C. Cir. 1987) ..........................................................5, 12

**Statutes**

A.R.S. §§ 13-301 ...................................................................................7

A.R.S. §§ 13-302 ...................................................................................7

A.R.S. §§ 13-303 ...................................................................................7

A.R.S. § 13-2002(A)(1) ..........................................................................6

A.R.S. § 13-2002(A)(3) ..........................................................................6

A.R.S. § 13-2310(A) ..............................................................................6

A.R.S. § 13-2311(A)................................................................................................................6

**Constitional Provisions**

Fifth Amendment...........................................................................................3, 11, 13, 15

**INTRODUCTION**

After the 2020 Presidential election, Christina Bobb and her co-defendants at One America News Network (OAN) promoted the false narrative that Dominion Voting Systems (Dominion) was a company founded to steal elections for Hugo Chavez and had done just that in this country as well: namely, steal the 2020 Presidential Election. Bobb and OAN placed Dominion at the center of their lies, broadcasting a stream of demonstrably false claims that Dominion had rigged the election.

In this case, Dominion has sued Bobb, her former OAN coworker Chanel Rion, the network's owners Robert Herring, Sr. and his son Charles Herring, and OAN (collectively, "OAN Defendants") to redress the harms it suffered as a result of OAN's defamatory campaign. It is in this dual role as an individual defendant and as an agent of OAN that Bobb possesses knowledge and information relevant to Dominion's claims—both against Bobb herself as well as her co-defendants. Dominion also believes Bobb possesses knowledge and information potentially relevant to the other discovery-consolidated defamation actions, which involve defendants who were guests on OAN: *US Dominion, Inc. et al. v. Sidney Powell, et al.*, 1:21-cv-00040 (CJN), *US Dominion, Inc. et al. v. My Pillow, Inc. et al.*, 1:21-cv-00445 (CJN), *US Dominion, Inc. et al. v. Patrick Byrne*, 1:21-cv-02131 (CJN), and *US Dominion, Inc. et al. v. Rudolph Giuliani*, 1:21-cv-00213 (CJN).

Forty-one months after Dominion brought its case, in April 2024, Bobb was indicted by the Arizona Attorney General in Maricopa County, Arizona. The 9-count indictment does not so much as mention the word "Dominion." Instead, it charges Bobb and 17 co-defendants with a conspiracy to submit a fraudulent slate of Trump/Pence electors from Arizona to Congress on January 6, 2021. *See* ECF No. 182-4, *State of Arizona v. Kelli Ward, et al.*, Case No. CR2024-006850-016 (Sup. Ct. Maricopa Co, filed Apr. 23, 2024) (Bobb Exhibit A). The time period alleged

in the indictment spans from early November, 2020 to early January, 2021. *Id.* The indicted charges and acts underlying them, of both Bobb and her co-conspirators, involve actions targeted toward and impacting the state of Arizona.

In contrast, Dominion's civil complaint concerns the campaign of defamatory statements broadcast by Bobb and others over OAN's cable and social media networks about Dominion Voting Systems—a voting technology company that has no part in Bobb's indictment. The reach and effect of the defamatory campaign spanned the whole United States and beyond, and the time period extends from the period before the 2020 election to the present.

Bobb now seeks a complete stay of all further discovery from her in this case, nominally for 120 days, but in reality pending resolution of the Arizona criminal charges. Bobb does so despite being served with Dominion's requests some fourteen months ago, having produced ***zero*** documents to date, and having agreed to many of Dominion's requests. Dominion opposes this stay. Ms. Bobb's right against self-incrimination can be protected with significantly narrower relief than the requested stay, avoiding substantial prejudice to Dominion.

## PROCEDURAL BACKGROUND

On May 9, 2023, Dominion served its first Requests for Production on all OAN Defendants. Bobb served responses and objections on June 22, 2023. Document productions began later that year. Though Dominion did not receive any productions directly from Bobb, Plaintiffs did receive custodial documents bearing Bobb's name as custodian from OAN; these documents were mostly emails sent from or received by Bobb's oann.com email address. However, Dominion received numerous text message threads from Rion and Charles Herring as custodians on which Bobb was a recipient and/or sender, which shows that Bobb was exchanging text messages relevant to Dominion's claims.

On March 13, 2024, Dominion sent a request to schedule Bobb's deposition to her then-attorney of record, Greg Singer. *See* Exhibit 1. Dominion received no response to that request, nor to the follow-up request Plaintiffs sent on May 1, 2024. *See* Exhibit 2.

On April 26, 2024, the parties' agreed substantial completion deadline passed. Bobb served no documents on or before the substantial completion deadline. Dominion then sought a meet and confer with Bobb's counsel, which, after some back and forth between transitioning law firms, occurred on May 17, 2024 with Bobb's new counsel, William Haggarty and Katherine Harwood. At that meeting, counsel for Bobb agreed to search for documents responsive to numerous of Dominion's Requests, and to begin rolling productions with a goal to substantially complete productions in approximately one month. Counsel for Bobb did raise the concern that certain RFPs, especially Nos. 31, 57, and 67-69, may implicate Ms. Bobb's Fifth Amendment privilege, and Dominion confirmed that it was not seeking privileged documents, so long as anything withheld was properly recorded on a privilege log provided to Dominion. Notably, counsel for Bobb was unable to confirm at this meeting—and has not subsequently confirmed—that any of Bobb's devices have been collected, *or even preserved*. Dominion memorialized this conversation in an email to Bobb on May 20, 2024. Exhibit 3.

Bobb did not directly respond to Dominion's May 20, 2024 email. Instead, Bobb sent a letter on May 28, 2024, informing Dominion that Bobb's criminal defense counsel had expressed general concerns about proving *any* discovery in the civil case and that Bobb intended to move for a stay of proceedings. ECF No. 182-6 (Bobb Exhibit C). Dominion responded that it did not believe a stay was appropriate, requested legal support for Bobb's position, and expressed a willingness to meet and confer regarding a narrowing of the scope of certain RFPs. ECF No. 182-7 at 1-2 (Bobb

Exhibit D). On June 21, 2024, Bobb responded to Dominion's request for caselaw and asked that Dominion consent to a stay. *Id.* at 1. Bobb filed this motion shortly thereafter.

**ARGUMENT**

**I.      Legal Standard**

The decision to grant or deny a stay of proceedings is left to the discretion of the trial court. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Horn v. District of Columbia*, 210 F.R.D. 13, 15 (D.D.C. 2002). The court's decision is reviewable only for an abuse of that discretion. *See Clinton*, 520 U.S. at 707; *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 197–98 (D.D.C. 2018), *aff'd*, 771 F. App'x 9 (D.C. Cir. 2019), *and aff'd*, 21 F.4th 829 (D.C. Cir. 2021); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004).

When considering a request to stay civil proceedings in light of a parallel criminal case the court must weigh the following factors: "1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay." *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012) (internal citations omitted).

It is a fact-specific inquiry dependent on the particular circumstances of the case. *Securities and Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). "Moreover, the mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay." *Horn*, 210 F.R.D. at 15 (internal quotations omitted). As the D.C. Circuit observed in *Dresser Indus.*:

> The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence.

4

*Id.* at 1374. *See also Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987) ("A total stay of civil discovery pending the outcome of related criminal matters is an extraordinary remedy"); *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970) ("[t]he fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation."); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F. 3d 83, 98 (2nd Cir. 2012) ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim.") (internal quotation omitted).

## II.   Ms. Bobb Has Not Established Facts Sufficient to Support the Requested Stay

The party moving for a stay in light of parallel criminal proceedings has the burden of establishing that it is warranted. *See Lee v. Trump*, 2024 WL 1872489, at *1 (D. D.C. 2024) (citing *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)). Bobb has not met this burden here.

### A.   There is Limited Overlap Between the Defamation Claims in Dominion's Suit and the Charges in the Arizona Indictment

Bobb goes to great lengths to argue that there are "factual parallels", a "significant factual overlap", and a "close relationship" between the civil and criminal cases. ECF No. 182 ("Bobb Mem.") at 6, 8, 15. In reality, however, overlap between the two cases is limited at best.

#### 1.   The Arizona Indictment

In April 2024, Bobb was indicted by prosecutors in Maricopa County, Arizona. The 9-count indictment charges Bobb and 17 co-defendants with a conspiracy to submit a fraudulent slate of Trump/Pence electors from Arizona to Congress on January 6, 2021, with the goal of overturning the certified election results in Arizona. *See* ECF No. 182-4, *State of Arizona v. Kelli Ward, et al.*, Case No. CR2024-006850-016 (Sup. Ct. Maricopa Co, filed Apr. 23, 2024) (Bobb Exhibit A). Indeed, co-defendants 1-11 are the eleven false Arizona Trump/Pence electors. *Id.* at 17-19.

In this indictment, Bobb and her 17 co-defendants are also charged with crimes committed in furtherance of this conspiracy. Count 1 of the indictment charges the conspiracy; Counts 2-9 charge the crimes underlying it. Specifically, Count 2 charges all 18 co-defendants with "Fraudulent Schemes and Artifices" pursuant to A.R.S. § 13-2310(A) ("Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony."). Count 3 charges all defendants with "Fraudulent Schemes and Practices" under A.R.S. § 13-2311(A) ("Notwithstanding any provision of the law to the contrary, in any matter related to the business conducted by any department or agency of this state or any political subdivision thereof, any person who, pursuant to a scheme or artifice to defraud or deceive, knowingly falsifies, conceals or covers up a material fact by any trick, scheme or device or makes or uses any false writing or document knowing such writing or document contains any false, fictitious or fraudulent statement or entry is guilty of a class 5 felony."). Counts 4 through 9 charge all defendants with Forgery for making, completing, altering, offering, or presenting six different forged instruments[1] related to the Arizona fake elector scheme, pursuant to A.R.S. § 13-2002(A)(1) & (A)(3) ("A person commits forgery if, with intent to defraud, the person: 1. Falsely makes, completes or alters a written instrument; or . . . 3. Offers or presents, whether accepted or not, a forged instrument or one that contains false information.").

---

[1] The six forged instruments are alleged as follows: <u>Count 4</u>: "a certificate of votes for President Donald J. Trump and Vice President Michael Pence, filed by the Arizona Republican electors with the President of the United States Senate"; <u>Counts 5 and 6</u>: "one of two" [Count 5] and "the second of two" [Count 6] "certificates of votes for President Donald J. Trump and Vice President Michael Pence, filed by the Arizona Republican electors with the Arizona Secretary of State"; <u>Counts 7 & 8</u>: "one of two" [Count 7] and "the second of two [Count 8] "certificates of votes for President Donald J. Trump and Vice President Michael Pence, filed by the Arizona Republican electors with the Archivist of the United States"; <u>Count 9</u>: a certificate of votes for President Donald J. Trump and Vice President Michael Pence, filed by the Arizona Republican electors with the Chief Judge of the Federal District Court for the District of Arizona". Bobb Exhibit A at 7-12.

Section II of the indictment lays out the Attorney General's narrative of facts underlying the conspiracy, and specifies the overt acts the defendants are alleged to have undertaken in furtherance of the conspiracy. Bobb Exhibit A at 13-58. All nine counts of the indictment appear to rely on theories of accomplice liability, as many of the co-defendants—Ms. Bobb among them— are alleged to have committed relatively few overt acts in furtherance of the conspiracy, yet all are charged with every count of the indictment, and all nine counts charge sections of the Arizona Revised Statutes addressing the bounds of accomplice liability: A.R.S. §§ 13-301, 13-302, 13-303, 13-304. *See* Bobb Exhibit A at 3-12. In Ms. Bobb's case, there are just four direct references to her in the entire factual recitation: (1) the Attorney General's summary of Bobb's involvement in the case, as follows: "BOBB (016) was an attorney for the Trump Campaign and worked closely with [redacted] (012).[2] BOBB (016) lobbied Arizona's Republican legislators after the 2020 presidential election to disregard the popular vote in Arizona. She additionally helped organize the false Arizona Republican electors' votes on December 14, 2020." *Id.* at 21. (2) A December 6, 2020 post she made to social media that was then re-posted by Kelli Ward, in which Bobb criticizes the Speaker of the Arizona House for "refusing to call a session and examine the fraud in his state." *Id.* at 32. (3) An email she received from Boris Epshteyn seeking advice about preparing a sample ballot in Wisconsin, allegedly in furtherance of Rudy Giuliani's effort to have the slate of fake Republican electors vote in Arizona in early December 2020. *Id.* at 39-40. And (4) a text message sent by Jason Miller to others in the Trump Administration on December 13, 2020, suggesting that Bobb was working with Epshteyn on "coordinating the state elector whip effort". *Id.* at 42-43.

The name "Dominion" appears nowhere in the Arizona indictment. Nor does the indictment include an allegation related to defamation. Only one small section of the indictment

---

[2] Context reveals that co-defendant number 12 is Rudy Giuliani. *See id.* at 18.

mentions voting machines in Maricopa County, which recounts efforts in December 2020 by Rudy Giuliani and others—*but not Bobb*—to gain access to Maricopa County's voting machines and ballots. *See id.* at 29-30. The Arizona indictment does not charge or allege any facts related to the sham audit that began in Maricopa County in April 2021. *Id.* (entire document). Nor, most crucially, does the Arizona indictment refer, even obliquely, to the on-air statements made by Ms. Bobb and others at OAN that are the crux of Dominion's claims against the civil co-defendants. *Id.*

### 2.    Dominion's Civil Claims

Dominion's defamation lawsuit filed against OAN, Bobb, Rion, and the two Herrings centers around OAN's defamatory broadcasts that accused Dominion of rigging, and participating in the rigging of, the 2020 presidential election, and the harms Dominion suffered because of that defamation. Dominion accuses twenty-five separate OAN broadcasts or rebroadcasts that make these election-rigging claims against Dominion. ECF No. 1 (Complaint) ¶ 305(a)-(y). Bobb is known and alleged to be an on-air participant in three of them, *id.* ¶ 305(n), (o), (v); the extent of her off-air participation in the other defamatory broadcasts is the subject of ongoing discovery in this litigation. The lies Bobb and OAN spread about Dominion concerned all Dominion voting machines used in 28 different states—not just the Dominion equipment in Arizona. *See, e.g.*, *id.* ¶ 305(n) (concerning Dominion machines in Michigan); 305(o) (relating to Dominion equipment in Georgia); 305(v) (suggesting that Dominion participated in voter fraud "in every state").

While it is true that the extent to which OAN's newsroom departed from journalistic standards in pursuit of its efforts to promote the false narrative that Dominion rigged the election is relevant to the claims against Bobb and OAN, this is but a small part of the larger puzzle. Bobb's role as an undisclosed advisor to the Trump Campaign, *see id.* ¶¶ 6, 22, 141, and Bobb's, Rion's, and OAN's efforts in support of the Maricopa County sham "audit", *id.* ¶¶ 9, 22, 230, 234, 235,

238-39, are examples of this departure, but by no means are they the chief examples. And they are only relevant to Dominion's claims because of the OAN Defendants' defamatory statements; these departures give rise to no freestanding claims on their own.

More importantly, none of Dominion's allegations concern Bobb's participation in a conspiracy in Arizona to submit a slate of false electors to the United States Congress on January 6, 2021. Indeed, the words "false electors" appear nowhere in Dominion's TK page complaint. *See id.* (entire document). Similarly, Dominion's civil complaint has nothing to say about forged documents presented to federal and Arizona state officials in furtherance of this conspiracy. *Id.* And none of Bobb's co-defendants in the D.D.C. action are her co-defendants in Arizona. *Id.*

### 3.    Lack of Factual Similarity Between Dominion's Civil Claims and the Charges in the Arizona Indictment

Dominion's civil complaint concerns a nationwide effort by Bobb, OAN, and her individual co-defendants to defame Dominion, in furtherance of increased viewership and profits for OAN. The Arizona Attorney General's indictment focuses on a conspiracy to promote a slate of false Trump/Pence electors to the United States congress on January 6, 2021. Clearly, both charging documents concern false claims regarding the 2020 presidential election, but the scope and nature of acts alleged against Bobb and her codefendants in each bear little but those superficial similarities.

A lack of significant factual overlap is an important reason that courts deny motions to stay a civil case on the ground of parallel criminal proceedings. *See Horn v. District of Columbia*, 210 F.R.D. 13, 15-16 (D.D.C. 2002) (holding the proponent of the stay had failed to establish that the civil and criminal proceedings were substantially similar); *Lee v. Trump*, 2024 WL 1872489 (D.D.C. 2024) (denying a stay and finding that the similarity of the facts at issue was overstated by the defendant); *Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, No. 06 CIV. 0243 JESMHD,

2006 WL 2585612, at *2 (S.D.N.Y. Sept. 8, 2006) ("even if there is some overlap—or indeed identity—between the factual underpinnings of the cases, a stay may justifiably be denied in favor of more limited relief"); *Harbour Town Yacht Club Boat Slip Owners Ass'n v. Safe Berth Mgmt., Inc.*, 411 F. Supp. 2d 641, 645 (D.S.C. 2005) (denying stay when asserted parallel criminal proceeding involved same dredging equipment at issue in civil dispute, but allegations related to that equipment were not the same); *Travelers Cas. & Sur. Co. v. Vanderbilt Grp., LLC*, No. 01 CIV. 10695 (DLC), 2002 WL 844345, at *3 (S.D.N.Y. May 2, 2002) (denying stay despite the fact that "there will be some overlap between the criminal charges and the civil litigation").

The cases cited by Bobb in which a court granted a stay do not advance her position in this respect: the majority of these cases address situations where the allegations in the two cases are identical or concern the same discrete incident. *See, e.g.*, *Kurd v. Republic of Turkey*, 2022 WL 17961245 (D.D.C. 2022) (plaintiffs sued various entities and individuals associated with the Republic of Turkey following altercations related to protests over President Erdogan's visit to D.C. in 2017; some of the civil defendants were also indicted for crimes involving the exact same incident); *Doe v. Sipper*, 869 F. Supp.2d 113 (D.D.C. 2012) (the plaintiff's cause of action related to allegations of a sexual assault against her by the defendant, and those allegations were identical to the allegations against the defendant in a pending criminal case); *Estate of Gaither ex rel Gaither v. D.C.*, 2005 WL 3272130 (D.D.C. 2005) (civil and criminal cases both based on stabbing death of plaintiff's son while in custody in the D.C. jail; plaintiff also initially *consented* to the stay); *Gala Enters., Inc. v. Hewlett Packard Co.*, 1996 WL 732636 (S.D.N.Y. 1996) (both sides agreed that the criminal proceedings were based on the same transaction); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134 (S.D.N.Y. 1995) (criminal and civil cases alleged same wrongful course of conduct, involving failure to pay dues

under a collective bargaining agreement, failure to pay workers at contractual wages, and deliberate misrepresentations on reports).

### B. Ms. Bobb has Advanced no Additional Concrete Facts that Support a Broad Stay of Discovery

On top of the lack of factual overlap, Bobb asserts no other facts that support the broad relief she requests. The Declaration of Thomas F. Jacobs, Esq., Ms. Bobb's Arizona criminal counsel, is notable in this respect. *See* ECF No. 182-2. Mr. Jacobs states that he has reviewed the civil complaint and Dominion's First RFPs to Bobb, and then makes the following conclusory assertion:

> Based on my understanding of the nature and scope of the civil case, my review of the complaint in this action and the criminal charges against Ms. Bobb, I have concluded that there exists a factual overlap between this civil case and the pending Criminal Case. In my professional opinion, if a discovery stay is not granted, the scope of discovery in this civil case, particularly but without limitation, the requests for production and any deposition of Ms. Bobb, could and likely would impair Ms. Bobb's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth by Arizona law, potentially expose Ms. Bobb's theory to the prosecution in advance of trial, and otherwise prejudice her criminal case.

*Id.* ¶ 5. Nowhere does Mr. Jacobs—or Mr. Haggerty in his own declaration, *see* ECF No. 182-3— say that he has actually looked at Ms. Bobb's potentially responsive documents and has seen documents that could implicate Bobb's Fifth Amendment privilege. Neither Mr. Jacobs nor Mr. Haggerty says that they discussed with Ms. Bobb her potential testimony in the civil case and determined that she was likely to need to invoke the privilege.

In short, the requested stay rests on nothing more than general similarities between certain aspects of the civil and criminal cases, and entirely conclusory assertions regarding the potential that Bobb's Fifth Amendment privilege against self-incrimination could be implicated by Dominion's requests. This is not enough to support the relief requested.

### C.       The Requested Stay is Neither Narrow Nor Time-Limited

Although Bobb terms the stay requested here as "partial" and time-limited, it is neither. In fact, Bobb has requested a complete stay of *all* discovery moving forward: she seeks to "preclud[e] any party from propounding any discovery or deposition notices on Ms. Bobb, compelling responses to any outstanding discovery and relieving Ms. Bobb of any obligations to respond to any outstanding or previously served discovery until termination of the stay." Bobb Mem. at 19-20. Similarly, Bobb acknowledges that the current 120-day request will likely be renewed "should the criminal proceeding remain unresolved upon expiration of this initial stay." *Id*. at 5. The stay Bobb seeks is exactly the sort of "extraordinary remedy" disfavored by courts deciding these issues. *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987); *see Gala Enterprises, Inc. v. Hewlett Packard Co.*, 1996 WL 732636, at *3 (S.D.N.Y. 1996) ("Indeed, a general stay of all civil discovery is not by any means the best option available to the court or to the litigants. Stays can and should be tailored to avoid undue prejudice.") (internal quotation omitted).

And although Bobb emphasizes that she has previously provided written responses to Dominion's discovery requests, the reality is that Bobb has provided no meaningful discovery in this case to date. Bobb has not produced a single document in this litigation, and simply ignored Dominion's attempts to schedule a date for her deposition, including attempts made well before the Arizona indictment. The fact that OAN has produced custodial documents from her employment at the network does not relieve Ms. Bobb of her own burden to produce documents and communications in her personal possession (particularly where OAN is refusing to produce these documents).

III.     **The Requested Stay Should be Denied**

A.     **Document Production Must Proceed Immediately**

There is simply no basis in law for the stay of *all* document production obligations that Bobb seeks. To be sure, a civil litigant has the right to assert the Fifth Amendment privilege against self-incrimination in response to a request for production. *In re Syncor ERISA Litig.,* 229 F.R.D. 636, 649 (C.D. Cal. 2005); *Thomas v. Tyler*, 841 F. Supp. 1119, 1125-27 (D. Kan. 1993).

However, this privilege is narrow. The question is not whether the documents are incriminating, but whether their compelled production is testimonial—because the fifth amendment only protects a person from being compelled to appear as a witness against herself in a criminal case. The mere fact that a document is incriminating, therefore, is not by itself enough to resist its production, even in the context of a grand jury investigation. *Fisher v. United States*, 425 U.S. 391, 410-11 (1976); *see also In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 157 (2d Cir. 2010) (Fifth Amendment privilege can be invoked only when production of documents is "both incriminating and testimonial"); *Thomas*, 841 F. Supp. at 1125-27 (upholding civil defendant's claim of Fifth Amendment privilege on certain interrogatories, while finding the privilege does not apply to the production of certain documents).

As is relevant here, the privilege does not apply to the contents of voluntarily prepared documents. *United States v. Doe*, 465 U.S. 605, 611 (1984). "[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." *United States v. Hubbell*, 530 U.S. 27, 35–36 (2000). It can be generally assumed that documents responsive to Dominion's requests in Bobb's possession were voluntarily prepared by her or a third party. Therefore, it is difficult to imagine why any responsive documents would be subject to a valid assertion of the Fifth Amendment privilege.

The operative protective order in this case provides an additional barrier between Bobb and the possibility that documents produced by her could be used in the criminal case, whether they are incriminating or not. *See* ECF No. 163. The order provides: "Any Discovery Material produced in the Litigation will be used, except by the Producing Party, solely for purposes of this Litigation". *Id.* ¶ 1. Documents marked "Confidential" or "Attorneys' Eyes Only" must be filed under seal and cannot be made public absent order of the Court, *id.* ¶¶ 12-14, and any party that receives a subpoena or other compulsory process seeking production of Confidential or Attorneys' Eyes Only materials is obliged to object to production on the grounds of the protective order. *Id.* ¶ 26. Thus, in addition to the fact that documents produced here by Bobb would not be privileged, they are unlikely to be disseminated outside of this litigation at any time prior to trial of this case.

**B.     The Burden of a Stay on the Court and Other Parties will be Significant**

Bobb's assertion that the requested stay will impose no burden on the Court and have minimal impact on Dominion, the co-defendants, and the other discovery-consolidated cases is demonstrably incorrect. Even the initial 120-day period would mean that Bobb would not be required to produce a single document or sit for a deposition prior to the September 30, 2024 fact discovery cutoff. This would impose significant burdens on Dominion, which would be almost entirely denied timely discovery from a named defendant and witness in possession of information relevant to other defendants' cases. But a blanket stay—especially in light of the fact that Bobb is likely to come back to this Court and seek further extensions of unknown duration—will also derail the coordinated discovery regime by putting Bobb on a different timeline than her co-defendants and the coordinated cases. It is proper for a court to consider the effect a stay of one defendant's case will have upon the cases of other parties to the litigation. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 157 (E.D.N.Y. 2005) (approving magistrate's denial

of stay when "[a] stay with respect to [one defendant] would, in effect, impede discovery related to other parties in this action").

This is a very different situation than the Court encountered in *Fid. Funding of California v. Reinhold*, which Bobb relies upon in support of this point. There, discovery was already "substantially complete" and summary judgement was fully briefed and decided by the time the motion for a stay was filed. 190 F.R.D. 45 (E.D.N.Y. 1997). In contrast, Bobb has not produced *one single document* in response to Dominion's requests, no deposition has occurred, and fact discovery in all cases is ongoing. The broad stay of all future discovery for an as-yet unknown length of time should not be granted under these circumstances.

**C.    Ms. Bobb's Deposition is Highly Relevant to the other OAN Defendants' Cases and to the Consolidated Cases, and Can Proceed without Prejudice to Her**

As described in Section II(A), above, the factual overlap between the civil and criminal cases is not significant. Therefore, it is not a foregone conclusion that Bobb will need to invoke her Fifth Amendment privilege during a deposition at all. To the extent Bobb is concerned that Dominion intends to ask questions about fake electors in Arizona, Dominion is willing to engage in good-faith discussions regarding reasonable limitations on that topic.

Any decision by Bobb to invoke the privilege in a deposition here will occur long before this Court would need to make a decision about whether such testimony could be used against her at summary judgment or trial. The issue is complicated by the extent to which any invocation of the privilege by Ms. Bobb is relevant and admissible against the other OAN Defendants, including her former employers at OAN. Those questions are not ripe for decision in this motion. Understanding that both Ms. Bobb and Dominion reserve all rights, there is no need for a stay now when other remedies are available to Bobb in the future, particularly in light of the prejudice a stay would cause to Dominion. *See Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, No. 06 CIV. 0243

JESMHD, 2006 WL 2585612, at *2 (S.D.N.Y. Sept. 8, 2006); *Fidelity Funding of California v. Reinhold*, 190 F.R.D. 45, 52 (E.D.N.Y. 1997).

## CONCLUSION

For the reasons stated, Dominion asks the Court to deny the 120-day stay of all discovery sought by Bobb, and order Bobb to provide document discovery and appear for a deposition consistent with the existing scheduling order of this case.

Dated: July 8, 2024                              Respectfully submitted,

By:   */s/ Laranda Walker*
Laranda Walker (D.C. Bar No. TX0028)
Mary K. Sammons (D.C. Bar No. TX0030)
Jonathan Ross (D.C. Bar No. TX0027)
Elizabeth Hadaway (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
jross@susmangodfrey.com
ehadaway@susmangodfrey.com

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443)
Eve Levin (D.C. Bar No. 1672808)
Mark Hatch-Miller (*Admitted pro hac vice*)
Christina Dieckmann (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Tel: (212) 336-8330
sshackelford@susmangodfrey.com
elevin@susmangodfrey.com
mhatch-miller@susmangodfrey.com
cdieckmann@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400

Los Angeles, CA 90067
Tel: (310) 789-3100
dbrook@susmangodfrey.com

Edgar Sargent (*Admitted pro hac vice*)
Katherine Peaslee (*Admitted pro hac vice*)
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 516-3880
esargent@susmangodfrey.com
kpeaslee@susmangodfrey.com

*Attorneys for Plaintiffs/Counterclaim Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of July, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Davida Brook*
Davida Brook