IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br> *Plaintiffs,*<br><br>v.<br><br>HERRING NETWORKS, INC., et al.,<br><br> *Defendants.* | No. 21-cv-02130-CJN-MAU |

**DEFENDANT CHRISTINA BOBB'S REPLY IN SUPPORT OF MOTION FOR PARTIAL STAY OF DISCOVERY**

1

**TABLE OF CONTENTS**

I. INTRODUCTION………………………………………………………………….2
II. A PARTIAL STAY IS WARRANTED GIVEN THE SIGNIFICANT FACTUAL OVERLAP BETWEEN THE CRIMINAL AND CIVIL CASES AND THE NARROW SCOPE OF RELIEF REQUESTED………………………………… 4
   A. There Is A Substantial Factual Overlap Between The Cases……………………………………………………………………….4
   B. Ms. Bobb Requests a Narrowly Tailored Stay of Limited and Finite Duration………………………………………………………………… 7
III. MS. BOBB HAS MADE A SUFFICIENT FACTUAL SHOWING TO SUPPORT IMPOSITION OF A PARTIAL STAY OF DISCOVERY UNDER THE CIRCUMSTANCES………………………………………………………… 9
IV. THE BURDEN ON THE COURT AND OTHER PARTIES IS MINIMAL AND FAVORS A STAY…………………………………………………………… 10
V. CONCLUSION……………………………………………………………………12

## TABLE OF AUTHORITIES

Page(s)

Cases

*Ayasli v. Korkmaz*,
  2022 WL 16972484 (C.D. Cal. 2022) ................................................................................. 5

*Chao v. Fleming,*
  498 F. Supp.2d 1034, 1037 (W.D.Mich. 2007) .................................................................. 4

*Doe v. Sipper*,
  869 F. Supp. 2d 113, 116 (D.D.C. 2012 ............................................................................. 7

*Kurd v. Republic of Turkey,*
  2022 WL 17961245, at *1 (D.D.C. 2022) ......................................................................... 10

*In re Kowalski*,
  633 B.R. 822, 827-828 (Bankr. N.D. Ill.2021) ................................................................... 4

*S.E.C. v. Dresser Industries, Inc.*,
  628 F.2d 1368, 1375-1376 (D.C. Cir. 1980 ........................................................................ 4

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum*
  (C.D.Cal.2009) 2009 WL 2136986 at *6 ............................................................................ 8

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
  886 F. Supp. 1134 (S.D.N.Y. 1995 ............................................................................. 4,7,12

*Wehling v. Columbia Broad. Sys.,*
  608 F2d 1084, 1088-1089 (5th Cir. 1979)……………………………………………….7

Defendant CHRISTINA BOBB ("Ms. Bobb") respectfully submits the following memorandum of points and authorities in reply to plaintiffs' opposition to Ms. Bobb's motion for a partial stay of discovery due to a pending parallel criminal case.

## I. INTRODUCTION

Ms. Bobb has never promoted a false narrative that Dominion Voting Systems was founded to steal elections for Hugo Chavez. This is the first of many mischaracterizations.

Contrary to plaintiffs' opposition, Ms. Bobb seeks a narrowly tailored, partial stay of discovery solely as it relates to her, including her deposition. The limited 120-day stay requested is designed to protect Ms. Bobb's constitutional rights while minimizing any potential prejudice to other parties.

Notably, Dominion has previously recognized the importance of such a stay in similar circumstances. When the Powell defendants moved for a stay of discovery pending resolution of Powell's criminal case, Dominion conceded that a "reasonably tailored stay of discovery" was appropriate. (*U.S. Dominion, Inc., et al. v. Sidney Powell, et al.,* Case No. 1:21-cv-00040-CJN, Doc. 105 at 5.) Ms. Bobb seeks precisely this type of limited, tailored relief in the present case.

Nonetheless, in an effort to thwart such protection, Plaintiffs' opposition mischaracterizes the extent of the overlap between the Arizona indictment and this case. In fact, there is a substantial factual connection between the two matters that supports the requested stay. The complaint references "Maricopa County" and "Arizona" 25 and 74 times respectively, demonstrating significant geographical and contextual overlap. Moreover, no one disputes that Dominion voting machines were used in Arizona, including Maricopa County, during the 2020 presidential election. While the Arizona indictment does not explicitly name Dominion, it does

reference challenges to voting machines used in the state. This connection is crucial, as both cases center on allegations and actions surrounding the integrity of the 2020 election results in Arizona, particularly involving Dominion voting machine systems. The frequency of these references in the complaint, coupled with the indictment's focus on challenges to Arizona's election processes and equipment, establishes a clear factual nexus between the civil and criminal proceedings that justifies the limited stay Ms. Bobb seeks.

Plaintiffs's characterization of the Arizona indictment as solely relating to a conspiracy to promote false electors is overly narrow and misleading. (Doc. 185 at 9.) This interpretation disregards the significance of Section II of the indictment, which provides the factual framework underpinning the nine felony counts against Ms. Bobb and her alleged co-conspirators. This section details a broader scope of alleged activities aimed at preventing the lawful transfer of the presidency, including: (1) challenges to the voting machines (which were Dominion systems) used in Arizona; (2) Ms. Bobb's work with the Trump Campaign to overturn the 2020 presidential election; (3) Ms. Bobb's involvement with Trump's legal team in the same regard; and (4) her collaborations with Rudy Giuliani and other alleged co-conspirators to overturn the 2020 presidential election results.

The civil complaint's scope closely mirrors these aspects of the criminal indictment. It extends beyond the specific allegedly defamatory statements, encompassing Ms. Bobb's wider activities related to the 2020 presidential election, such as: (1) raising questions about election irregularities in Arizona; (2) pursuing an audit of the voting machines and 2020 presidential election results in Maricopa County, Arizona; (3) advising the Trump Campaign and legal team on efforts to challenge election results; and (4) collaborating with Rudy Giuliani on election-related matters.

This parallel scope underscores the substantial overlap between the civil and criminal proceedings, further justifying the limited stay Ms. Bobb requests to protect her constitutional rights while allowing the broader case to proceed. Given the minimal burden to the court and other parties resulting from the stay, Ms. Bobb requests the court grant her motion and impose a partial 120-day stay of discovery as requested.

## II.     A PARTIAL STAY IS WARRANTED GIVEN THE SIGNIFICANT FACTUAL OVERLAP BETWEEN THE CRIMINAL AND CIVIL CASES AND THE NARROW SCOPE OF RELIEF REQUESTED

The parties agree on the legal standard for staying civil proceedings in light of a parallel criminal action. Courts must weigh four factors: 1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay. (Doc. 185, pg. 4.) As detailed in the moving papers and herein, all four factors weigh in favor of a stay.

### A.     There Is A Substantial Factual Overlap Between The Cases

As the D.C. Circuit has recognized, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." (*S.E.C. v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375-1376 (D.C. Cir. 1980) (*Dresser*). Importantly, the matters need not be identical; even partial overlap of related facts can warrant a stay. (*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995) (granting stay where criminal and civil cases alleged same general course of conduct); *Chao v. Fleming,* 498 F. Supp.2d 1034, 1037 (W.D.Mich. 2007); see also *In re Kowalski*, 633 B.R. 822, 827-828 (Bankr. N.D. Ill.2021) (finding sufficient overlap to support a

4

stay of the adversary proceeding despite the criminal case involving a non-party and not being factually identical, but only related).)

The recent case of *Ayasli v. Korkmaz*, 2022 WL 16972484 (C.D. Cal. 2022) (*Ayasli*) is instructive. There, the court granted a stay based on a partial factual overlap between civil and criminal proceedings. The civil case involved racketeering, fraud, and defamation claims related to the sale of an airline. (*Id.* at *1.) The criminal case focused on a renewable fuel tax credit scheme. (*Id.*) While these cases were not identical, the court found sufficient overlap because the indictment alleged that proceeds from the criminal scheme were laundered through the airline purchase. (*Id.* at *3.) This partial overlap was enough for the court to conclude that the defendant's Fifth Amendment rights were significantly implicated, warranting a stay. (*Id.*)

Here, contrary to Dominion's assertions, there is a significant factual overlap between the criminal indictment against Christina Bobb in Arizona and Dominion's civil allegations. Dominion's attempt to characterize the overlap between the civil and criminal case as "limited at best" ignores the substantive connections between the cases. Both revolve around Ms. Bobb's actions and statements in the aftermath of the 2020 election, particularly regarding challenges to election integrity in Arizona. The fact that the civil case may be broader in scope does not negate the significant factual overlap that exists.

For instance, Dominion contends that the "name 'Dominion' appears nowhere in the Arizona indictment." (Doc. 185 at 7.) This argument is specious. While the Arizona indictment does not explicitly name Dominion, it specifically references efforts to challenge voting machines (which were Dominion systems) and election results in Maricopa County. (Doc. 182-4 at 29-30.) The absence of Dominion's name in the indictment does not negate the substantial factual connections between the criminal and civil cases.

5

This substantial factual overlap is further demonstrated by the following:

1. Both the complaint and the indictment reference Ms. Bobb's collaboration with the Trump Campaign, the Trump legal team and Rudy Giuliani, whether directly or via conspiracy theories, to overturn the results of the 2020 presidential election in Arizona and other key states. (Doc. 182-4 at 13-58; Doc. 1 at ¶¶ 6, 22 (Bobb was consulting with the Trump campaign and specifically Rudolph Giuliani and the Trump legal team), 141 ("Bobb was advising the Trump Campaign on how to overturn the 2020 election), 180 (Bobb had been working with Giuliani to overturn the 2020 election), 184, 185, 213, 228 (Bobb had been advising the Trump campaign in trying to overturn the election for more than four months, while pushing claims that Dominion rigged the 2020 election), 243 (emails related to sham audit released by Arizona Senate showed Bobb was working with the Trump Campaign and Giuliani to encourage and facilitate the Arizona audit).)

2. Both the complaint and indictment reference efforts to obtain an audit of the voting machines used in Maricopa County, Arizona and efforts to encourage Arizona officials to investigate the voting irregularities and election results. (Doc. 182-4 at 29-30; Doc. 1 at ¶¶ 9 (OAN, Bobb and Rion began raising money to fund movements aimed at hiring sham auditors to attack and harm Dominion's business, resulting in a sham "audit" of the 2020 presidential election in Maricopa County, Arizona), 230 (Bobb helped fund audits in Maricopa County, Arizona "designed to generate false claims about Dominion"), 231-233, 234 (Bobb launched Voices and Votes to fight for the Arizona election audit and overturn the Arizona 2020 election results), 238, 239, 243 ("Bobb was not only working with the Trump Campaign to generally overturn the election, ***but was working directly with Giuliani to encourage and facilitate the sham AZ audit***. 'Specifically, on Dec. 4, 2020, Bobb emailed affidavits to Arizona

6

Senate President Karen Fann that Bobb said Giuliani asked her to send: 'Mayor Giuliani asked me to send you these declarations. He will follow up with you as well. I will have one more email to follow this one.'") (Emphasis in original).)

The scope of the Arizona indictment and the civil complaint demonstrate substantial similarity. All of these topics are likely to be extensively explored during Ms. Bobb's deposition by Dominion. Each area of inquiry is directly connected to the allegations in the criminal indictment. Consequently, Ms. Bobb would be compelled to invoke her Fifth Amendment rights repeatedly throughout the deposition, which could be detrimental to her position in this civil case.

Courts have long recognized the dilemma faced by defendants in parallel civil and criminal proceedings. A defendant should not be forced to choose between asserting their Fifth Amendment rights and defending themselves in a civil action. (*Wehling v. Columbia Broad. Sys.,* 608 F2d 1084, 1088-1089 (5th Cir. 1979) (concluding it is unfair to force a party to choose between Fifth Amendment privilege and civil action).)

This substantial overlap satisfies the first factor courts consider when deciding whether to grant a stay: "the relationship between the civil and criminal actions." (*Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012).) While the cases are not identical, they need not be for a stay to be warranted. (See *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995) (granting stay where criminal and civil cases alleged same general course of conduct). Therefore, the significant factual overlap between the civil and criminal cases strongly supports granting the requested partial stay of discovery.

  **B.**  **Ms. Bobb Requests a Narrowly Tailored Stay of Limited and Finite Duration**

Plaintiffs' contention that the stay requested by Ms. Bobb is neither narrow, nor time-limited is without merit. Ms. Bobb has requested a precisely defined and limited stay of 120 days, which is narrowly tailored to protect her constitutional rights while minimizing any potential prejudice to others.

First, the stay is narrow in scope. It applies only to discovery directed to Ms. Bobb, allowing all other aspects of the case to proceed unimpeded. This targeted approach ensures that the overall progress of the litigation is not unnecessarily hindered.

Second, the stay is time-limited. The 120-day duration is based on a reasonable estimate provided by Ms. Bobb's criminal attorney, who believes the criminal case could resolve by October 2024. (Doc. 182-2 at ¶3.) This timeframe is not arbitrary but grounded in the professional assessment of counsel familiar with the criminal proceedings.

Plaintiffs' speculation about potential extensions of the stay is premature and unwarranted. If the criminal case resolves sooner than anticipated, Ms. Bobb would promptly request that the stay be lifted. Conversely, if circumstances arise necessitating an extension, Ms. Bobb would be required to petition the Court, providing a full explanation and justification for any additional time requested. The court would then have the opportunity to reassess the situation based on the circumstances at that time.

Moreover, the possibility of a future extension request does not negate the current time-limited nature of the stay. Courts routinely grant stays of limited duration in similar circumstances, recognizing that the landscape of parallel civil and criminal proceedings can evolve. (See, e.g., *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D.Cal.2009) 2009 WL 2136986 at *6 (granting a six-month stay).)

Plaintiffs' argument that Ms. Bobb has not provided meaningful discovery to date is misleading. As detailed in Mr. Haggerty's declaration, Ms. Bobb has already responded to multiple sets of interrogatories and requests for admission, in response to which plaintiffs have raise no issues. (Doc. 182-3 at ¶2.) Furthermore, as plaintiffs concede in their opposition, they have already received documents from OAN relating to Ms. Bobb, including emails to and from Ms. Bobb's OAN email address. (Doc. 185 at 2.) To say plaintiffs have been deprived documents from or relating to Ms. Bobb is incorrect and misleading.

In sum, the requested 120-day stay is both narrow in scope and limited in duration. It represents a balanced approach that protects Ms. Bobb's fundamental rights while allowing the broader litigation to continue. The Court retains full discretion to modify or lift the stay as circumstances warrant, ensuring that the interests of all parties are appropriately safeguarded.

## III. MS. BOBB HAS MADE A SUFFICIENT FACTUAL SHOWING TO SUPPORT IMPOSITION OF A PARTIAL STAY OF DISCOVERY UNDER THE CIRCUMSTANCES

Plaintiffs erroneously argue that Ms. Bobb has not provided concrete facts to support the relief she requests – a partial stay of discovery for 120 days. This argument ignores the substantial factual overlap already demonstrated between the civil and criminal cases via the indictment and the complaint and the two declarations submitted in support of the moving papers. Ms. Bobb's criminal attorney has declared in his professional opinion that "the scope of discovery in this civil case, particularly but without limitation, the requests for production and any deposition of Ms. Bobb, could and likely would impair Ms. Bobb's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth by

Arizona law, potentially expose Ms. Bobb's theory to the prosecution in advance of trial, and otherwise prejudice her criminal case." (ECF No. 182-2, ¶ 5).

The professional assessment, combined with the detailed analysis of the overlap between the civil and criminal cases provided, constitutes sufficient concrete facts to support the requested stay. The law does not require Ms. Bobb to further incriminate herself by providing additional specific examples of how her Fifth Amendment rights might be impacted. Such a requirement would defeat the very purpose of seeking a stay to protect those rights. Nor does the law require Ms. Bobb or her attorneys to disclose attorney-client communications to support this motion. Plaintiff has made a sufficient factual showing that allowing discovery to proceed would not only implicate Ms. Bobb's Fifth Amendment rights, it would improperly extend criminal discovery beyond the limits set forth by Arizona law, could expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case. (*Kurd v. Republic of Turkey,* 2022 WL 17961245, at *1 (D.D.C. 2022); Doc. 182-2 at ¶ 5.)

## IV. THE BURDEN ON THE COURT AND OTHER PARTIES IS MINIMAL AND FAVORS A STAY

Contrary to plaintiffs' assertions, the burden on the court and other parties of granting a limited stay is minimal and outweighed by the potential harm to Ms. Bobb if discovery is allowed to proceed. As the court in *Kurd v. Republic of Turkey*, 2022 WL 17961245 (D.D.C. 2022) recognized, the issue is not merely whether the Fifth Amendment is implicated, but also the broader harm and injustice that results from allowing discovery to proceed in parallel with criminal proceedings.

Allowing discovery to continue would place an undue burden on Ms. Bobb's criminal defense. Her criminal attorney would need to review every document before production,

10

diverting crucial time and resources away from defending her in the criminal case. This review is necessary to protect Ms. Bobb's constitutional rights and to ensure that her criminal defense strategy is not compromised.

While Plaintiffs argue that the protective order in place makes it unlikely that the government would obtain documents produced in this case, this does not eliminate the risk of prejudice to Ms. Bobb's criminal defense. The mere act of producing documents could provide insights into Ms. Bobb's defense strategy or potentially lead to the discovery of information that could be used against her in the criminal case.

It is worth noting that 19,224 complete documents, comprising 83,571 pages, have already been produced by OAN in discovery. These documents relate to Ms. Bobb and include emails to and from her OAN email address. This substantial production, combined with the discovery responses Ms. Bobb has already provided to interrogatories and admissions, significantly mitigates any potential prejudice to plaintiffs from a limited stay of discovery directed at Ms. Bobb personally. While plaintiffs correctly note that some non-privileged documents could potentially be produced, fashioning a remedy that does not unduly burden Ms. Bobb's criminal counsel is challenging. Any document production would require a comprehensive review by her criminal attorney to protect her constitutional rights and legal privileges.

To address concerns about the impact on the overall case schedule, Ms. Bobb agrees to an extension of the discovery cut-off as it relates to her, in direct proportion to the amount of time remaining. For example, if 90 days remain before the current September 30, 2024 cut-off, the cut-off for discovery related to Ms. Bobb could be extended by 90 days. This proposal ensures that plaintiffs and other parties will have ample time to conduct discovery related to Ms.

Bobb once the stay is lifted, while also protecting her constitutional rights during the pendency of her criminal case.

The burden on the court of granting this stay is minimal. In fact, a stay may reduce the court's burden by avoiding piecemeal litigation and repeated disputes over the scope of Ms. Bobb's Fifth Amendment invocations. As is already evident from plaintiffs' opposition, they will contest the invocation of the Fifth Amendment in connection with production of documents, and the court will need to decide whether production each document is "testimonial." (Doc. 185 at 13-14.) This process would likely result in numerous discovery disputes and motions, creating inefficiencies and delays that a stay would avoid. As noted in Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc., granting a stay can promote judicial economy by allowing the criminal case to resolve or progress significantly before civil discovery resumes. 886 F. Supp. 1134 (S.D.N.Y. 1995). By granting the stay, the Court can avoid the time-consuming and potentially complex task of making document-by-document determinations about the applicability of the Fifth Amendment privilege.

In conclusion, the limited burden on the court and other parties of granting a stay is far outweighed by the potential harm to Ms. Bobb if discovery is allowed to proceed. The proposed stay is narrowly tailored, time-limited, and includes provisions to mitigate any potential prejudice to plaintiffs. Therefore, this factor weighs strongly in favor of granting the requested stay.

## V. CONCLUSION

For reasons stated, Ms. Bobb respectfully requests that the court grant this motion for a partial stay of discovery as outlined in the moving papers.

Dated: July 15, 2024

By: *William C. Haggerty*

**FORD, WALKER, HAGGERTY & BEHAR**
William C. Haggerty
(admitted *pro hac vice*)
Katherine M. Harwood
(admitted *pro hac vice*)
One World Trade Center, 27th Floor
Long Beach, California 90831
Tel: (562) 983-2500
Fax: (562) 983-2555
bill@fwhb.com
kharwood@fwhb.com

Counsel for Defendant CHRISTINA BOBB

## CERTIFICATION OF SERVICE

I hereby certify that on this 15th day of July 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically serves email notification of such filing to all attorneys of record.

/s/  *William C. Haggerty*
William C. Haggerty, Esq. (*pro hac vice*)