1        UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF COLUMBIA
2

3   US DOMINION, INC., et al.,      )
                                    )
4            Plaintiffs,            )
                                    )
5        vs.                        ) CASE NO. 1:21-cv-00040-CJN
                                    )           1:21-cv-02130-CJN
6   SIDNEY POWELL, et al.,          )           1:21-cv-02131-CJN
                                    )           1:21-cv-00445-CJN
7            Defendants,            )           1:21-cv-00213-CJN
    _____ )
8

9        TRANSCRIPT OF REMOTE PROCEEDINGS VIA VIDEOCONFERENCE
              DISCOVERY CONFERENCE AND STATUS HEARING
10      **BEFORE THE HONORABLE MOXILA A. UPADHYAYA, U.S. MAGISTRATE**
                        August 20, 2024
11               10:54 a.m. - 12:59 p.m.

12  **FOR THE PLAINTIFFS:**
         Susman Godfrey LLP
13       BY:  DAVIDA BROOK, STEPHEN SHACKELFORD, JR.,
         LARANDA WALKER, EDGAR SARGENT and CHRISTINA DIECKMANN
14       1900 Avenue of the Stars, Suite 1400
         Los Angeles, California 90067
15       (310) 789-3100

16  **FOR SIDNEY POWELL and SIDNEY POWELL, P.C.:**
         Kennedys CMK LLP
17       BY:  JOSHUA A. MOONEY and MARC CASARINO
         1600 Market Street, Suite 1410
18       Philadelphia, Pennsylvania 19103
         (267) 479-6719

19

20

21

22                    **SONJA L. REEVES**
                 **Registered Diplomate Reporter**
23               **Certified Realtime Reporter**
                 **Federal Official Court Reporter**
24                333 Constitution Avenue, NW
                     Washington, DC 20001
25          Transcript Produced from the Digital Record

 1   **FOR HERRING NETWORKS, INC., CHARLES HERRING, ROBERT HERRING,**
     **SR. and CHANEL RION:**
 2       Jackson Walker, LLP
         BY:   JOHN K. EDWARDS, CARL C. BUTZER, JONATHAN NEERMAN,
 3       MINOO BLAESCHE and R. TRENT McCOTTER
         1401 McKinney Street, Suite 1900
 4       Houston, Texas 77010
         (713) 752-4319
 5
     **FOR DEFENDING THE REPUBLIC, INC.:**
 6       Coburn & Greenbaum PLLC
         BY:   MARC JASON EISENSTEIN
 7       1710 Rhode Island Avenue, NW, 2nd Floor
         Washington, DC 20036
 8       (202) 470-2695

 9       Tobin, O'Connor & Ewing
         BY:   DAVID C. TOBIN
10       5335 Wisconsin Avenue, NW, Suite 400
         Washington, DC 20015
11       (202) 362-5903

12   **FOR CHRISTINA BOBB:**
         Ford, Walker, Haggerty & Behar
13       BY:   WILLIAM C. HAGGERTY and KATHERINE HARDWOOD
         One World Trade Center, 27th Floor
14       Long Beach, California 90831
         (714) 335-2101
15
     **FOR MY PILLOW, INC. and MIKE J. LINDELL:**
16       McSweeney, Cynkar & Kachouroff PLLC
         BY:   CHRISTOPHER IVAN KACHOUROFF
17       13649 Office Place, #101
         Woodbridge, Virginia 22192
18       (703) 365-9900

19   **FOR RUDOLPH GIULIANI:**
         Camara & Sibley LLP
20       BY:   JOSEPH D. SIBLEY, IV
         1108 Lavaca Street, Suite 110263
21       Austin, Texas 78701
         (713) 966-6789

22

23

24

25

1          (Call to Order of the Court at 10:54 a.m.)

2          DEPUTY CLERK:  This is Civil Case 21-40, *U.S. Dominion*

3 *Inc., et al. versus Powell, et al.*

4          This is Civil Case 21-2130, *U.S. Dominion, Inc., et*

5 *al. versus Herring Networks, Inc., et al.*

6          This is Civil Case 21-2131, *U.S. Dominion, Inc., et*

7 *al. versus Byrne*.

8          This is Civil Case 21-445, *U.S. Dominion, Inc., et al.*

9 *versus My Pillow, Inc., et al.*

10          And this is Civil Case 21-213, *U.S. Dominion, Inc., et*

11 *al. versus Giuliani*.

12          These matters are set for a Discovery/Status Hearing.

13          Parties, please introduce yourselves for the record,

14 starting with plaintiffs' counsel.

15          MS. BROOK:  Good morning, Your Honor.  This is Davida

16 Brook of Susman Godfrey on behalf of the plaintiffs Dominion.

17 And with me today are my colleagues Stephen Shackelford,

18 Laranda Walker, Edgar Sargent and Christina Dieckmann.

19          THE COURT:  Good morning, Ms. Brook.

20          MS. BROOK:  Good morning.

21          MR. MOONEY:  Good morning, Your Honor.  Joshua Mooney

22 on behalf of Sidney Powell and Sidney Powell, P.C.  I'm here

23 with my partner Marc Casarino.

24          MR. CASARINO:  Good morning, Your Honor.

25          THE COURT:  Good morning, Mr. Mooney and Mr. Casarino.

1          MR. EDWARDS:  Good morning, Your Honor.  John Edwards

2    on behalf of Herring Networks, Inc., Charles Herring, Robert

3    Herring, Sr. and Chanel Rion.  Joined with me from Jackson

4    Walker as well is Minoo Blaesche, Jonathan Neerman and Carl

5    Butzer, and also Mr. Trent McCotter.

6          And Mr. Babcock sends his regrets for not being here.

7    He's in the throes of trial right now.

8          THE COURT:  Okay.  Good morning, Mr. Edwards, and

9    counsel.  And please send my thanks to Mr. Babcock for his

10   message.

11         MR. EISENSTEIN:  Good morning, Your Honor.  Marc

12   Eisenstein and Dave Tobin, counsel for Defending the Republic.

13         THE COURT:  I'm sorry, just a moment, please.  Could I

14   just have counsel identify themselves.

15         Mr. Tobin, I believe it was?

16         MR. TOBIN:  Yes, Your Honor.  David Tobin and Marc

17   Eisenstein on behalf of Defending the Republic in 21-cv-40.

18         THE COURT:  Yes.  Okay.  Good morning, Mr. Tobin.

19   Nice to see you.  Good morning, Mr. Eisenstein.

20         MR. HAGGERTY:  Good morning, Your Honor.  This is

21   William Haggerty on behalf of the defendant Christina Bobb.

22   And I'm here with my partner, Katherine Hardwood.  It's on the

23   Herring matter.

24         THE COURT:  Okay.  Just a moment, please.  Okay.  Good

25   morning, Counsel.

1        MR. HAGGERTY:  Good morning.

2        MR. SIBLEY:  Good morning, Your Honor.  This is Joe

3 Sibley on behalf of Defendant Giuliani.

4        THE COURT:  Okay.  Good morning, Mr. Sibley.

5        MR. KACHOUROFF:  Good morning, Your Honor.  Chris

6 Kachouroff for Mike Lindell and My Pillow.

7        THE COURT:  Okay.  Good morning, Counsel.

8        Do I have anyone else who has either not been

9 introduced by their colleagues or who have not introduced

10 themselves on the line?

11       Okay.  Do I have Mr. Byrne or anyone representing

12 Mr. Byrne on the line?

13       Okay.  I will note that pursuant to former Chief Judge

14 Howell's standing orders 20-20, and also pursuant to the rule

15 of this Court, I will just note for everyone's benefit that --

16 and anyone in the courtroom -- that recording and rerecording

17 of this hearing is strictly prohibited and any violation of

18 this order will be met with sanctions and potential further

19 prohibitions, whether it is press, counsel, parties or anyone

20 else who is present.

21       Okay.  I know there are a number of discovery issues

22 that have been presented to the Court and some of which have

23 been pending for a few months.  I had to handle some other

24 matters, of course, first before handling some of the discovery

25 issues, so that is done.

1          My intention today -- and I appreciate the parties'

2     joint status report teeing everything up.  My intention today

3     is to do what the parties have asked in that at least to hear

4     and hopefully resolve the disputed areas or the areas that are

5     disputed between the parties in the discovery protocol order

6     and to try to get the final controlling document set and

7     entered on the docket.  So that's the number one goal for

8     today.

9          I would like to ensure, for purposes of efficiency,

10    because this will not be a multi-hour hearing -- if anyone

11    wants that, I'm sorry to disappoint.  We're going to move

12    through these quickly.  You all know what these issues are.  I

13    have some questions, and I'm going to make the decisions and

14    send you on your way so that you can keep going, hopefully

15    diligently, through discovery and getting discovery done.

16         I expect when I'm asking for any positions on behalf

17    of a party that only one attorney for that party is going to be

18    addressing the Court during this hearing.  So if you need to

19    take a moment to just suggest amongst yourselves, that's

20    standard practice, and so I do not want what I have had in the

21    past in other hearings where I have two or three different

22    lawyers for the same party chiming in trying to make a point.

23         So you all do the work to coordinate amongst

24    yourselves, please, and let me know the party's position

25    represented by one person.

1          I will just note for the record that I did issue a

2    memorandum opinion last week granting Dominion's emergency

3    motion to disqualify Mr. Byrne's counsel, Ms. Lambert.  I did

4    just want to note for the record that a copy of the order

5    setting this hearing was mailed, as is the Court's procedure,

6    when a party is not represented.  That was mailed to Mr. Byrne

7    personally pursuant to the address he has on the docket.

8          And in order to try to just send the Zoom link in

9    another way, belt and suspenders, the Court did send a note to

10   the McGlinchey Firm, copying plaintiffs' counsel.  I understand

11   that the McGlinchey Firm, although they have withdrawn their

12   appearance in this case, represent Mr. Byrne in other cases at

13   the moment.  And so the Court also sent the Zoom link to the

14   McGlinchey Firm asking them to forward the Zoom link to

15   Mr. Byrne, as the Court did not have Mr. Byrne's email address.

16   Okay.  So for that purpose, I just wanted to make sure that was

17   on the record.

18         I will also just briefly address a motion which is at

19   ECF 127.  On August -- as I mentioned before, the Court issued

20   an order last week granting Dominion's motion to disqualify

21   Ms. Lambert.  I believe Ms. Lambert filed at ECF 127 a motion

22   seeking to extend the status conference and seeking to extend

23   deadline to file a joint -- or to join in the joint status

24   report that I ordered all parties to file by late Friday night.

25         I'm striking that request, because pursuant to the

1    immediately preceding order, Ms. Lambert was disqualified

2    effective immediately, as I said in my memorandum.  So I am

3    just going to note for the record that those requests are --

4    I'm striking that motion and denying those requests.  There is

5    another request in that motion that she filed, which I will

6    handle regarding her own obligations to the Court that I have

7    ordered her to do, and I will address that in a separate order.

8            Okay.  I want to just confirm that no one else is on

9    the line, on this videoconference, other than the individuals

10   who have introduced themselves or have been introduced.

11           Okay.  With respect to the parties' joint status

12   report, which was filed on August 16th, I understand that there

13   are a number of discovery disputes that remain between the

14   parties.  And as you all -- as I had asked you to do, you all

15   prioritized them for me, and I appreciate that, into three

16   categories.

17           I believe that the issue that really should be handled

18   forthwith is the issue of the discovery protocol order, and

19   that is category one, and that is what I'm going to go through

20   today.

21           Again, just addressing the issue of the fact that

22   Mr. Byrne is not present despite the fact that he was

23   ordered -- received this order, I will just note that these are

24   issues -- the issues with respect to the discovery protocol

25   order are issues that were teed up long ago, long before I

 1    issued my memorandum opinion last week disqualifying

 2    Ms. Lambert, and at the time that all of these issues were teed

 3    up for the Court with respect to the discovery protocol order,

 4    Mr. Byrne was represented.  He had a full and fair opportunity,

 5    as far as I can tell from the record, to contribute to the meet

 6    and confer and to state his positions.

 7          And there has not been, as far as the Court can see,

 8    any specifically identified change in any of his positions on

 9    the matters with respect to the discovery protocol order prior

10    to last week.  And so these issues are ripe for the Court, as

11    far as the Court sees it.

12          Okay.  I'm going to go through topic by topic of the

13    discovery protocol order and ask a few questions and see if I

14    can get some clarification on some of the disputes that you all

15    are having.  Just give me a moment, please.

16       (Pause)

17          THE COURT:  Okay.  My understanding is that the first

18    dispute with respect to the discovery protocol order is with

19    respect to the issue of hit reports; is that correct?

20          MS. BROOK:  Good morning, Your Honor, this is Davida

21    Brook of Susman Godfrey again.  That is correct.

22          One brief clarification so that we are sure to proceed

23    as Your Honor prefers.  We had divided it up so that there is

24    one attorney from our team handling each specific issue,

25    meaning hit reports versus the next issue, date ranges.  Is

1    that amenable to the Court, or would the Court prefer that

2    there be one attorney who handle the entire discovery dispute?

3         THE COURT:  No, that's fine.  I just didn't -- I would

4    just prefer that more than one person is not chiming in on one

5    issue.

6         MS. BROOK:  Understood.  Then yes, hit reports was the

7    first issue.  My colleague, Stephen Shackelford, will be

8    speaking on behalf of Dominion on that point.

9         THE COURT:  Okay.  Thank you.  Just a moment.

10   (Pause)

11        THE COURT:  Okay.  My understanding is that the

12   dispute with respect to hit reports is found in paragraph five

13   of Dominion's proposed discovery order protocol.  Is it -- am I

14   correct in understanding that because the defendants do not

15   have a proposed -- a counterproposal on this issue that this is

16   an issue that Dominion would like to incorporate into the order

17   and defendants are objecting to incorporate, and that would be

18   paragraph five of Dominion's proposed discovery protocol order?

19        MR. SHACKELFORD:  That's my understanding, Your Honor,

20   although some of the defendants have agreed to provide hit

21   reports or have provided hit reports -- (indiscernible).  There

22   is not unanimity among defendants as to their approach for

23   that.

24        THE COURT:  Let me just ask any defendant -- you don't

25   have to answer if you don't have an objection.  Does any

1  defendant currently have any objection to paragraph five being

2  incorporated if you have already been doing this?

3          MS. BLAESCHE:  Your Honor, this is Minoo Blaesche on

4  behalf of the Herring defendants.  We do have an objection to

5  providing the hit count reports as set forth in paragraph five.

6          THE COURT:  Okay.  Anyone other than Herring Networks?

7          MR. CASARINO:  Yes, Your Honor.  Marc Casarino on

8  behalf of Sidney Powell and Sidney Powell, P.C.  We likewise

9  object to this inclusion.

10         THE COURT:  Well, enough people have chimed in, so I'm

11  going to consider it a disputed -- if someone wants to enter

12  their objection, I'll just note that the defendants object to

13  the inclusion of paragraph five.  We don't need to go down the

14  line.  I just didn't know if it had been resolved by now

15  amongst everybody.

16         Okay.  Mr. Shackelford, what is the point of this

17  provision?

18         MR. SHACKELFORD:  It's very -- (indiscernible) -- Your

19  Honor.  A large part of every party's productions in these

20  cases is of ESI, custodial emails, custodial text messages.

21  And the way the parties agreed to produce ESI was to do our

22  best to agree on search terms that each party provided, this

23  custodial collection of documents that they collected for -- we

24  hopefully agreed upon custodians.

25         And the parties largely agreed, almost entirely

1    agreed, on which custodians we would search emails for and what

2    search terms to rely on against those email -- (indiscernible).

3         We ran our searches that we were asked to run and we

4    produced documents, and we produced hit count reports so people

5    could see.  Some of the other defendants did the same.  OANN in

6    particular ran for a very long time, it's still not entirely

7    clear what search terms they agreed to run, and they ultimately

8    ran that.  But they ultimately produced documents without --

9    and refused steadfastly to tell us how many documents that they

10   did not produce that hit on certain terms.

11        THE COURT:  Why do you need that, Mr. Shackelford?  If

12   counsel are reviewing their ESI and producing what's responsive

13   to a request that Dominion has propounded, why do you need to

14   know how many documents were returned on that search term?

15        MR. SHACKELFORD:  Based on the production to date from

16   OANN, we strongly -- we have good reason to believe that

17   whatever secondary responsiveness review OANN has been engaging

18   in has withheld a large number of documents responsive to our

19   requests, whether intentionally negligent -- (indiscernible).

20        We presented to Your Honor in our filings proof of

21   documents, for instance, that we had received from other

22   defendants, from other parties that were not produced by OANN,

23   and we think that's just the tip of the iceberg of examples as

24   to why OANN has not produced nearly all of their responsive

25   documents.

1    They have also produced a large number of junk

2  documents and approximately only 55,000 non-junk documents to

3  date.  And that's covering more than a year and a half time

4  period with 35 custodians.  It seems abnormally small in terms

5  of the amount of production that its sent, and we think we have

6  an entitlement, we would like to see how many documents hit on

7  very unique terms, like "Poulos" or "Dominion" or "Giuliani" or

8  "Sidney Powell."

9    There are all sorts of terms that are very unique to

10  this dispute.  And if it turns out, as we have seen in other

11  cases, that over the key time period of three to six months

12  there are 40,000 documents that hit on the term "Poulos," that

13  have not been produced by OANN, that is very strong evidence

14  that their secondary responsiveness review is broken.

15    So, Your Honor, we put some -- (indiscernible) -- that

16  we have so far, but we are hamstrung in the end to fully

17  address this issue until we get the hit reports.  There is

18  no burden argument of the hit reports.  They can run these

19  easily, they have them.  The only argument they make -- that

20  OANN makes on this is that they think we will misuse the hit

21  reports.  I take that to mean we'll file a motion and Your

22  Honor will somehow be bamboozled by our arguments.

23    Your Honor is fully capable of deciding whether the

24  fact that they have only produced 1,000 out of 20,000 hits on

25  the word "Poulos" is indicative of a likely problem of their

1  responsiveness review or not.  But it's a simple request.  We

2  are disappointed that they have had us bring this to Your

3  Honor.  We had this request in a year ago.  It has proven very

4  useful in other cases to ascertain whether a secondary

5  responsiveness review has been proper or has held a large

6  number of responsive documents.

7          Given just what we have seen so far in production, we

8  think we have certainly made good cause to get it.  Given how

9  easy it is, we would ask Your Honor to have them produce it to

10 us, and we can then take it under advisement.  We could ask

11 them, what's up with this, why are there only 2,000 out of

12 14,000 Poulos documents produced, how could it possibly be that

13 you have 12,000 nonresponsive documents with the word "Poulos"

14 in them from this three-month time period, and they could

15 explain to us.

16          "Actually turns out that Mr. Herring's favorite niece

17 is named Poulos."  Those are the types of conversations you

18 normally have in discovery disputes to avoid coming to the

19 Court, and all we're asking for is to get that information so

20 we can further meet and confer.  And if it turns out that

21 information in the case, a big problem with OAN's production,

22 as we suspect given the numerous documents we received from

23 other sources that they haven't produced, then we'll come back

24 to Your Honor with a proper motion.

25          The last thing I'll say, Your Honor, is the way that

1    OANN's production happened, we originally got productions

2    straight from OANN, approximately 30,000-something documents

3    that they produced for our purposes here, OANN then produced

4    250,000 documents that they had previously produced in the

5    Smartmatic case and the -- (indiscernible).

6         A huge number of those documents hit on our search

7    terms, but had not been produced by OANN back when --

8    (indiscernible) -- responsiveness review for our purposes.

9         Now, OANN sort of hides the ball a little bit saying,

10   well, look, you just weren't produced with an OANN

11   underscore -- (indiscernible) -- we'll do it, but that's not

12   the point.  The point is when they were doing their secondary

13   responsiveness review for our case, they only produced

14   approximately 32,000 documents.

15        When we then convinced them to produce what they had

16   produced in Smartmatic, that showed there is further evidence

17   that something is broken in their responsiveness review.  Now,

18   they can argue with us about that, but the best evidence of

19   that will be how the unique terms show up in their documents

20   that they haven't produced over the very relevant time period,

21   November 2020, for instance, through mid 2021, when they were

22   still publishing -- (indiscernible) -- material about Dominion.

23        That's very basic information we think, Your Honor,

24   we're entitled to.  They do not show how -- (indiscernible) --

25   and if they think that we somehow -- if they disagree with the

1    arguments we're going to make to Your Honor, they can just

2    submit those arguments when we brief them, but it's not ripe

3    for us not to have that basic data in the first place.

4        THE COURT:  Mr. Shackelford, the hit report does not

5    contain any substantive information.  It's simply how many

6    documents or family members came back with the search term that

7    Dominion is requesting, correct?

8        MR. SHACKELFORD:  Your Honor, I would --

9    (indiscernible).  It doesn't contain information about how they

10   performed their secondary responsiveness review, but, for

11   instance, if they show us that they had 10,000 documents in

12   November and December of 2020, which is the --

13   (indiscernible) -- the hit on the word "Poulos," that to me --

14   Your Honor, it's hard for me to fathom how all of those

15   documents will be responsive if they are talking about Don

16   Poulos.

17       If they have explanation, there were two other

18   Pouloses they were talking about, that's fair to discuss, but I

19   think it is absolutely substantive if documents from the key

20   time period hit on key terms that are very unique like

21   "Giuliani," who was one of their sources for some of their

22   broadcasts or "Sidney Powell," who was another one of their

23   sources for their broadcast.

24       What they were saying about Giuliani or Poulos or the

25   word "Dominion" or about Dominion in that time period is

1   extremely likely to be responsive and certainly not --

2   (indiscernible).

3          So I think it is both substantive information and

4   relevant to our ability to ascertain whether they have done a

5   proper secondary responsiveness review.

6          THE COURT:  Okay.  Mr. Edwards, do you want to just

7   respond on behalf of OANN to this issue?

8          I'm sorry, Ms. Blaesche, yes, please.

9          MS. BLAESCHE:  No problem.  Yes, a couple key points.

10  I don't want to belabor what we have already briefed.

11         Mr. Shackelford keeps calling our review a secondary

12  responsiveness review.  Our position is -- (indiscernible) --

13  hits, as you rightfully noted are not substantive.  They do

14  not -- (indiscernible) -- for a responsiveness review.  So I

15  just wanted to note that.

16         Second, I want to correct the record a little bit.  We

17  didn't only produce Smartmatic documents after they raised the

18  issue.  Per your order a while ago, we produced to Dominion

19  everything we produced on Smartmatic and -- (indiscernible).

20  We just didn't re-Bates label them.

21         And as everyone knows, you can in a doc review system

22  exclude what you've already produced.  So we just didn't

23  re-review them.  There was no need to re-review the documents

24  that we had already produced for another responsiveness review.

25         So that's why the new Dominion documents produced were

 1    a smaller subset because we knew we had already produced them

 2    to Smartmatic and Dominion -- or Smartmatic and --

 3           THE COURT:  Have you shared that list of Bates --

 4    those Bates-numbered documents with Dominion to explain the

 5    point?

 6           MS. BLAESCHE:  Yes.  They know this.  And we re-Bates

 7    labeled them for the Dominion ones once they -- we met and

 8    conferred about this issue before sending additional

 9    correspondence.

10           In addition, we just don't see at this juncture the

11    utility of a hit count report other than to manufacture

12    discovery disputes.  There is no basis for wondering about the

13    fulsomeness of our production.  Just because Dominion feels

14    like the number is lower than they think it should be or that

15    they have had in other cases with other defendants is not

16    sufficient.

17           They have already deposed six of our witnesses, and

18    they are going to depose more.  They have asked them about how

19    they communicate.  Again, small family media company, a lot of

20    in-person communications, a lot of picking up the phone, they

21    have an intercom system, and a lot of that explains what they

22    perceive as a lack of documents.

23           In addition, they reference some documents that they

24    say they've received from other parties.  We have either

25    produced them or they were outside the date range we agreed to,

1  and this is another point that is important in the Dominion

2  case, we agreed to 35 custodians from a shorter timeframe.  In

3  the Smartmatic case, we had almost twice as many custodians for

4  a longer timeframe, so there were obviously more documents

5  produced, and they already have all of those documents.  We

6  just don't --

7          THE COURT:  Okay.

8          MR. SHACKELFORD:  Your Honor --

9          THE COURT:  No, no, no, hold on just a second.

10  Mr. Shackelford, have you taken a 30(b)(6) --

11          First of all, Ms. Blaesche, are you done?

12          MS. BLAESCHE:  Yes, I am done.  Thank you, Your Honor.

13          THE COURT:  Okay.  Mr. Shackelford, have you taken the

14  30(b)(6) deposition on document retention, search and

15  production of OANN?

16          MR. SHACKELFORD:  We have requested it, but we haven't

17  taken any, Your Honor.

18          THE COURT:  Okay.

19          MR. SHACKELFORD:  But, Your Honor, please give me two

20  minutes.  I think there is --

21          THE COURT:  You have got 20 seconds.

22          MR. SHACKELFORD:  Your Honor, this is -- the

23  Smartmatic production, we ran our search terms and our specific

24  time frames across that production and there are a huge number

25  of documents that hit our search terms from our agreed

1    timeframes that they have never produced before.  There are

2    also approximately 30,000 documents in that production they

3    have produced before, so this is not a matter of --

4    (indiscernible).

5        That was one of many different proofs that they are

6    not producing all responsive documents.  All we're asking for

7    is the hit count reports.  It's a very basic request in

8    litigation.  And they are free to argue that we --

9        THE COURT:  Mr. Shackelford -- Mr. Shackelford, I

10   understand what a hit report is, and I think you're starting to

11   go into your argument.  I'm sorry to interrupt you, sir, but if

12   we keep doing this, we're not going to finish.  So I'm not

13   going to keep hearing repetitive arguments.

14       I agree with OANN's view generally on the utility or

15   frankly in this situation at least, the non utility of hit

16   reports.  And so I'm going to reject Dominion's request to

17   include paragraph five into the discovery protocol order.  That

18   said, if there is a specific issue that you can tee up after

19   diligent meet and confer process, which I'm going to get to

20   later in the hearing, and point to something very specific that

21   you think a hit report, which is non-substantive, which is -- I

22   just find that hit reports often, and I have heard nothing to

23   dissuade me of this view in this case so far, just really

24   aren't -- usually aren't helpful, because your precise reason

25   that one of the custodians might have a doctor named

1    "Dr. Dominion."  That's kind of a silly example, but they are

2    not required to tell you, "Oh, all of those aren't responsive

3    because Mr. Poulos has a niece with the -- or there is a niece

4    with the same name," or someone has a doctor with the same name

5    as Giuliani or Dominion or whatever.  Their obligation is to

6    produce responsive documents to you.

7          And I think to have a hit report obligation as a

8    matter of course, just generally is inefficient.  It does

9    create more problems.  That said, I will not -- I will not

10   prohibit any party from coming to the Court if there is a

11   specific issue that you can identify that you think you need

12   the hit report for that isn't just, frankly, we just want to

13   know more.

14         I have heard from the parties as to why the hit report

15   or why the production from OAN was smaller, but,

16   Mr. Shackelford, if you can tee something up with a little bit

17   more specificity, I'm happy to hear it, but I'm not going to

18   order a hit count obligation as a matter of course.

19         All right.  Thank you.  So I will just note as we go

20   through the line, with any rulings I do make, I'm going to

21   expect the parties to submit one final discovery -- to confer

22   and to incorporate my rulings into one final discovery protocol

23   order, so I'm assuming and hoping that you all are keeping

24   track of these as I am.

25         Okay.  The next issue is the issue of date ranges, and

1    that is incorporated in Dominion's paragraph 6 of its proposal

2    and defendants' paragraph 3(a) of defendants' proposal.  I

3    don't need to hear from Dominion on this, but I simply do not

4    understand from the defendants why there is any material

5    argument as to these proposed date ranges and date -- cutoff

6    dates.

7         Frankly, it is a billion -- over a billion dollar

8    case.  The range that Dominion is requesting is two years,

9    which, frankly, I think is proportional to this particular

10   dispute.  And with respect to each defendant, each defendant

11   wants their own cutoff date.  Not only do they each want their

12   own cutoff date, they want their own cutoff date for different

13   categories of documents.

14        And those cutoff dates are off of Dominion's request

15   by, like, in some cases, a month to three or four months.  So

16   if someone having heard this -- having heard my view on this

17   has a specific argument as to why their client -- this is on

18   the defendants' side -- needs a particular cutoff date, let me

19   hear it now, but my ruling tentatively is that there will be

20   one range for the production of documents, and I'm inclined to

21   adopt Dominion's paragraph 6, because I simply just do not see

22   the utility of having so many various cutoff dates for various

23   categories of documents for the defendants, particularly where

24   the date ranges, in my view, are reasonable for this particular

25   dispute.

1    If any defendant, having heard that, wants to raise an

2  objection and tell me why they want a different cutoff date

3  adopted, I'll hear them now, but keep it brief, please.

4    MR. HAGGERTY:  Your Honor, this is William Haggerty on

5  behalf of Christina Bobb.  She is under indictment in Arizona,

6  and we brought a motion for a stay, which I have talked to

7  plaintiffs' counsel about and I think we have reached an

8  agreement, but I can withdraw that motion, because in all

9  likelihood, that criminal proceeding is going to be over with

10  by December, so we are working diligently.

11    We have only had a month or two here to go through

12  thousands and thousands of documents.  And right now, every

13  document that is produced has to be reviewed by criminal

14  counsel for Fifth Amendment protection.  So I am very

15  appreciative of plaintiffs working with me on this.  It was

16  late last night when we were back and forth, and I said, you

17  know, I'll withdraw the motion for stay of proceedings if we

18  can push out her deposition and production of documents to

19  December 13th, and they agreed to that.

20    So with the Court's grace, maybe there would be good

21  cause with respect to Defendant Bobb.

22    THE COURT:  Okay.  Mr. Haggerty, I can certainly

23  understand having to jump into this case and the complications

24  that are inherent in having to balance the document productions

25  and reviews with respect to the civil and the criminal cases at

1   at same time, so I certainly appreciate the parties working

2   together on this.

3           And with respect to -- so with respect to the cutoff

4   date, are you simply stating, sir, that you all have reached an

5   agreement whereby Ms. Bobb will withdraw her motion for stay

6   and Dominion will hold in abeyance its request for its cutoff

7   date for her documents or how -- what's the agreement

8   specifically?

9           MR. HAGGERTY:  I think the agreement is that we will

10  produce documents before December 13th and her deposition will

11  be set before that date.  Documents will be produced in such a

12  way that they will have them for her deposition.

13          THE COURT:  Okay.

14          MS. BROOK:  Your Honor --

15          THE COURT:  Yes, Mr. Haggerty.

16          MS. BROOK:  That was Ms. Brook, Your Honor.  If I may

17  briefly respond.

18          THE COURT:  Yeah, I just want to make sure

19  Mr. Haggerty was done.

20          MR. HAGGERTY:  I'm done, Your Honor.  I think that's

21  the gist of what we were agreeing to.

22          THE COURT:  Thank you, sir.

23          Ms. Brook?

24          MS. BROOK:  Yes.  And I appreciate Ms. Haggerty's

25  efforts -- Mr. Haggerty's efforts to meet and confer with us

1    last night and work this out.  We were able to make some good

2    progress.  Just to mostly clarify I think what we're both

3    saying -- though I invite Mr. Haggerty to jump in if I get any

4    of it wrong -- the suggestion that was worked out amongst the

5    parties, but it requires Court blessing, is the clarity I

6    wanted to make, is that we push out the overall deadline, not

7    for the production -- not for the date range for the production

8    of documents, which is where the Court is started here, but for

9    the discovery schedule.  We push out the date by which Ms. Bobb

10   has to produce her documents and to sit for deposition to allow

11   for some time for a criminal proceeding.

12           This was part of a larger conversation, Your Honor,

13   that the parties have been jointly participating in since the

14   order came down disqualifying Ms. Lambert to try to come to the

15   Court today with a proposal for small shifts to the overarching

16   schedule in this case that would allow everything to continue

17   to run smoothly and result in the least disruption to these

18   overall coordinated proceedings.

19           So I agree with what Mr. Haggerty is saying, that we

20   have reached a tentative agreement that he says would allow him

21   to withdraw the motion on behalf of his client to stay, but I

22   just wanted to be clear with the Court that our tentative

23   agreement, the parties' tentative agreement would require that

24   the Court bless the agreement between the parties to push out

25   some deadlines.

1          THE COURT:  Why are you guys always asking me to do

2     things?  I'm just kidding, obviously.

3          MS. BROOK:  We figured you don't have enough on your

4     plate.

5          THE COURT:  I know.  No, obviously, I'm joking.

6          I think -- okay.  So first of all, I understand the

7     agreement, and I very much appreciate that agreement.  And this

8     is the type of discussions, ongoing meet and confers that I'm

9     expecting you all to be doing as this case continues.

10          I think technically that is an issue that Judge

11    Nichols probably needs to bless because it is an exception to

12    the cutoff date on discovery.  However, this is the easiest and

13    fastest way to get this done.  Can I have you all file -- I

14    mean, it truly can be a one- or two-page joint motion

15    explaining that Ms. Bobb and Dominion has reached agreement and

16    that -- and what the terms of those agreement -- what that

17    agreement is, specifically, she's going to withdraw her motion

18    for stay in exchange for her deposition being taken beyond the

19    discovery cutoff date, and that she will produce those

20    documents in sufficient time for Dominion to prepare for and

21    take her deposition.

22          I will ensure that Judge Nichols knows that I have

23    discussed it with you all.  I think technically he just needs

24    to refer that to me and I will bless it.

25          So if you can -- the sooner you get that on the

1    docket, the better.

2         MS. BROOK:  We agree to that, Your Honor.  And again,

3    just for fulsomeness and clarity, all of the parties are also

4    working toward a similar goal, which is to put before you a

5    simple and short as possible joint proposal for shifting some

6    of other deadlines in this case, again, to just account for

7    this month-long period where Mr. Byrne has been given to

8    provide new counsel, and so if the Court is amenable to it, I'm

9    happy to sketch out what that proposal is now, or perhaps later

10   after the Court has had a chance to get through the discovery

11   protocol or we can just take the Court's blessing to submit a

12   similar one- to two-page joint proposal on the overarching

13   discovery issues.

14        And to the extent we can't -- hopefully, we'll get

15   full agreement, but to the extent we can't get full agreement,

16   we'll just put in redline the dueling proposal, so it's all in

17   there in one document for the Court's consideration.

18        THE COURT:  I really hope there are not dueling

19   proposals on this, you all, so, please, please, please come to

20   an agreement.  I commend Mr. Haggerty and Ms. Brook for working

21   out this particular issue.

22        So I think the best way to proceed is for you all, if

23   there are some requests, put this in a joint motion.  Judge

24   Nichols, I will again alert him that there is going to be a

25   request to make some adjustments to the discovery cutoff to

1  account for this period of time.  Now, Ms. Bobb has a very

2  valid reason for needing to take her deposition later.

3  Mr. Byrne is just one defendant.  So I'm hoping I'm not seeing

4  a lot of requests by Dominion to extend the deadline with

5  respect to defendants who you all should have been and are

6  working with quite some time.  Mr. Byrne is one person, and so

7  that -- when I see that, just know that that's how I'm going to

8  be looking at those requests, which I'm sure -- which I'm not

9  sure, but I suspect that Judge Nichols will refer to me, but

10  technically those issues about discovery cutoff are not in

11  my -- in the scope of his referral.

12          So just know that that's how I see things, and so

13  there shouldn't be a lot of requests to be extending and

14  adjusting deadlines that have nothing to do with Mr. Byrne or

15  Ms. Bobb, but if there are, I will certainly look at them, but

16  you know, that's how I see it.

17          Okay.  So if you all -- let me put it this way:  If

18  the Bobb issue is teed up and agreed to and you can get that on

19  the docket today or tomorrow, I can tell Judge Nichols about

20  that and get you all -- get the blessing that you need for that

21  ASAP.

22          If the other adjustments are taking time and you all

23  are meeting and conferring, I'm okay with you putting that in a

24  separate filing.  Frankly, if Judge Nichols is going to refer

25  this issue to me, I would rather have that sooner rather than

1    later so I can note that the Bobb stay order -- stay motion has

2    been withdrawn and get that at least off the Court's to-do

3    list.  So just noting that if the other adjustments and getting

4    a joint motion for the other adjustments, that you all -- that

5    you all are working toward agreement on is going to take two

6    weeks, you might as well just get that Bobb issue filed as long

7    as, Mr. Haggerty and Ms. Brook, you all agree with that.

8             MR. HAGGERTY:  Yes, I would like to do that.  Thank

9    you, Your Honor.

10            MS. BROOK:  Understood, Your Honor.  There is some

11   interrelatedness between the two pieces, but we will work to

12   get them both done as quickly as possible.

13            THE COURT:  Okay.  Thank you very much.

14            Okay.  The next issue -- okay.  So then anyone have --

15   any other defendant have anything to say about the discovery --

16   or about the document cutoff dates that I was talking about,

17   knowing what I said about how I view this issue?

18            Okay.  Having heard no objection from any of the

19   defendants as to why they want a different cutoff date, then

20   I'm going to adopt with respect to the date ranges dispute, I'm

21   going to adopt Dominion's paragraph 6.

22            All right.  The next issue is the question of text

23   messages and other non-email communication redactions.  My

24   understanding is that this is teed up in Dominion's paragraph 7

25   of its proposed order and defendants' paragraph 7 of its

1    proposed order.  Unless I am incorrect, let me just tell you

2    what my understanding of the dispute is, and then if I don't

3    have this right, then you can let -- you all can let me know.

4          My understanding is that Dominion would like -- of the

5    dispute -- is that Dominion would like it if a text message

6    communication is found to be responsive by the opposing party

7    or the party on whom Dominion has propounded a specific

8    request, then Dominion is requesting that the text message --

9    that all text messages between that party on that string, so to

10   speak, for a 24-hour period be produced, and that defendants

11   object to the production of 24 hours of a string of that text

12   communication, so to speak.

13         So in other words, say there are two -- there is a

14   text message that's responsive that happened at 1:00 p.m.,

15   Dominion wants -- and a defendant produces that text message as

16   being responsive to one of Dominion's document requests.

17   Dominion wants everything on that string from midnight the

18   night before to midnight the next day.  And the defendants'

19   position is that they object to it, unless there is responsive

20   material in that other 24-hour period, which by the way you

21   should be producing anyway.

22         Do I -- and I know that Dominion has offered some

23   exceptions to this for, for example, PII, any sort of sensitive

24   familial, personal matters, but other than that, do I

25   understand the dispute generally correctly?  Ms. Brook, or

1    whoever is going to be speaking on behalf of Dominion?

2            MS. BROOK:  It is Ms. Brook, Your Honor.  Thank you.

3    And yes, I think you have set forth the general nature of the

4    dispute.  I would have some comments on it, but I will bite my

5    tongue unless the Court has questions.

6            THE COURT:  Okay.  Thank you.

7            Defendants, anyone disagree with my understanding of

8    this dispute?  Okay.

9            All right.  I am going to reject Dominion's request.

10   I don't believe that it is proportional to the needs of this

11   case.  In fact, I think it is disproportional to the needs of

12   the case to require that if a text message communication occurs

13   that is responsive to a document request, that you have to

14   produce all 24 hours encompassing that communication.

15           I don't truly understand the reason for it, and,

16   frankly, if there are responsive communications, defendants

17   better be producing those.

18           And it is true, Ms. Brook, I don't want to put words

19   in your mouth, but I'm guessing that you would tell me that

20   sometimes you need context between people and that a

21   communication in isolation in some instances doesn't tell you

22   the story.  But if there is context, defendants and Dominion,

23   that's responsive.  Okay.  I consider that a response to a text

24   communication that is a direct response to a text that is

25   dealing with the same issue, if the original communication was

1  responsive, most likely the response to that text is going to

2  be responsive.

3         I don't think however just as a matter of course

4  across the board having a blanket obligation to produce

5  24 hours encompassing that text communication is proportional

6  to the needs of the case.

7         Does anyone have any questions, comments, objections?

8         MS. BROOK:  Just for the record, Your Honor, and I'll

9  keep it very brief, Dominion's counterproposal would be to make

10  a shorter period, make it five hours.  The issue is that

11  Dominion believes that it and OAN have a fundamentally

12  different understanding of what is responsive and what would

13  provide context.

14         And so what we were trying to do was create an

15  objective measure versus a subjective one, so that would be the

16  only counterproposal I could offer, is that if there is

17  something responsive, you produce five hours before or after.

18         THE COURT:  Okay.  Is five hours acceptable to the

19  defendants?

20         MS. BLAESCHE:  Your Honor, this is Minoo Blaesche.

21  Again, this is the first time I'm hearing about this

22  fundamental difference in responsiveness when it comes to the

23  text messages, but I can tell you how we have been reviewing.

24         THE COURT:  Ms. Blaesche, I just want -- I don't mean

25  to interrupt.  Do you have an objection to the five hours

1  proposal?  Ms. Brook is trying to --

2        MS. BLAESCHE:  Yes.

3        THE COURT:  Ms. Brook is trying to see if she can

4  reach a compromise here, and that's all I'm asking.  I don't

5  need further argument on how well you're doing in your doc

6  review.  Okay.

7        MS. BLAESCHE:  No problem.  Yes, we would -- same

8  objection.  It is not responsive.

9        THE COURT:  Okay.  I'm going to not accept -- I'm not

10  going to adopt the request for the 24 hours or the five hours.

11  However, Ms. Brook, again, I will say if there is a dispute as

12  to whether responsive documents have or have not been produced,

13  bring that to the Court after a diligent meet and confer, but a

14  blanket obligation to produce 24 hours of each single text

15  message in this case is so -- is so wildly disproportional to

16  the needs of this case.

17        But again, I will say to the defendants, let me just

18  make it clear as to what I see as responsive and what I don't

19  see as responsive so you have this from me going forward and

20  you are on notice if anything is being withheld.  If someone is

21  sending a text message to someone else that is directly

22  responsive to a request and the person responds on the same

23  topic, as most people do, and there is some discussion back and

24  forth on that topic and it's responsive to the request, that I

25  would say, unless there is some unique reason why it's not,

1  that is a responsive text string communication, until one

2  person goes off topic and says, "What do you want from

3  Starbucks, I'm going to head down the street," or "Let's go

4  grab lunch.  Do you still want pasta or sandwiches or salads,"

5  okay, but if someone -- so that's -- I shouldn't have to give

6  this guidance to sophisticated counsel, but I'm making that

7  very clear.

8          So if I do get something brought to me later by

9  Dominion where I see that a defendant has not produced

10  documents that are -- text messages that are responsive in this

11  manner, then anything will be on the table.  Okay.  So no game

12  playing here, people.

13         All right.  The next issue is -- okay.  So that is

14  the -- just to be clear, let me just take a quick look at the

15  adoption of defendants' paragraph 7, I believe.

16         Ms. Brook, was there any difference in the paragraph

17  7s other than just the 24-hour period that was in dispute?

18         MS. BROOK:  There is lots of differences in

19  language -- (indiscernible).  That was the core substantive

20  issue.  You hit the nail on the head.  I'm happy to work with

21  counsel for OAN to confirm the other aspects of the dueling

22  section 7s.  I think the real thing we needed the Court's

23  guidance on was this issue of when and on what circumstances

24  it's proper to redact for something other than privilege.

25         THE COURT:  Okay.  I appreciate that.  I'm expecting

1    defendants -- any defendants on paragraph 7 to work

2    cooperatively.  In other words, take the win and come up with a

3    paragraph 7 between the both of you that encompasses what you

4    all believe should happen with respect to text messages.

5         So, Ms. Brook, I appreciate you taking the lead on

6    trying to get that done and marrying the language.

7         MS. BROOK:  Will do.

8         THE COURT:  Number four, as far as the discovery

9    protocol order, is the issue of custodians.  And I have to say

10   this is one of the issues that I'm a little perplexed as to

11   what you're asking me to do.  So just a moment.

12        MS. BROOK:  I was able to narrow it down last night,

13   Your Honor.  (Indiscernible).

14        THE COURT:  Well, that is amazing, because the way I

15   understood it teed up, let me just say I'm happy to hear you

16   say that.

17        So can you just -- let me just put it in front of me

18   and then if you could please explain your -- Dominion's

19   position and if there is any dispute, of course, I'll hear it,

20   but just a moment.  Let me grab the documents first.

21        Okay.  I have what's before me Exhibit 3 to both

22   parties, have the same exhibit number of custodians.

23        MS. BROOK:  That's exactly what you need, Your Honor.

24        THE COURT:  So, Ms. Brook, what is the dispute as

25   Dominion sees it as narrowed?

1          MS. BROOK:  I won't speak for my friends on the other

2    side here.  I actually think it's a very discrete issue.  As

3    you can tell by these two Exhibit 3s, the parties worked really

4    hard many, many moons ago to come up with a list of agreed upon

5    custodians and what a party has to do vis-à-vis custodians is

6    discussed in the dueling discovery proposal.

7          The only issue here is that there are four, just four

8    custodians across all those pages of Exhibit 3 where one party

9    refused to object to the other party's proposal, and those four

10   custodians are four individuals that Dominion had reason to

11   believe to understand were associated with Powell, P.C., so

12   Ms. Powell's law firm, and that Ms. Powell's counsel refused to

13   treat as a custodian during these negotiations.

14         Those four individuals are Julia Haller, Brandon

15   Johnson --

16         THE COURT:  I'm sorry, before you list the names,

17   Ms. Brook, these are not in your Exhibit 3, these four names,

18   correct?  I see Sidney Powell, P.C.

19         MS. BROOK:  They are, yes.  So they are in our

20   Exhibit 3 as folks that we want included, but they are not in

21   the other Exhibit 3.

22         THE COURT:  Just a moment.  Yes, I am with you.  Just

23   for the record, I'm at ECF 194-6, at page 6, I believe.  Please

24   continue.

25         MS. BROOK:  So again, the parties, collectively

1  speaking, did a lot of work here to come to agreement on a

2  whole slew of custodians as evidenced by these two Exhibit 3s.

3  There is a just a list of handful of additional four

4  individuals that Dominion asks that Sidney Powell treat as a

5  custodian, along with Ms. Powell herself.  And all that would

6  require them to do is if the documents are in their possession,

7  it doesn't require to go out and get the documents, but if the

8  documents are in possession to run searches for them, et

9  cetera, and again those individuals are Julia Haller, Brandon

10  Johnson, Emily Newman and Tricia Dale.

11         I'm happy to provide one sentence on each for the

12  Court as to why we believe these folks -- great, I see the

13  Court nodding.

14         Julia Haller, Brandon Johnson and Emily Newman, all

15  three of them are attorneys who, to the best of Dominion's

16  knowledge, were working with Ms. Powell when she filed the

17  series of lawsuits that she filed after the 2020 election to

18  try to challenge the results of that election and where she

19  made many of the allegations about Dominion and gathered what

20  she purported to be evidence of Dominion's wrongs there.

21         So our understanding is that these three people were

22  working with Powell, P.C., if not for Powell, P.C. with regard

23  to those lawsuits, and that, again, to the extent Powell, P.C.

24  therefore has possession of any of their files, they should be

25  searched and handed over as appropriate.

1          And Tricia Dale --

2          THE COURT:  Were they --

3          MS. BROOK:  Sorry.

4          THE COURT:  No, no, go ahead.

5          MS. BROOK:  Tricia Dale, our understanding, is was

6    Ms. Powell's assistant during the relevant time period, and so,

7    again, we propose that she be a custodian for Powell, P.C.  And

8    that is who these four people are.

9          And, again, the request is just that Powell, P.C.

10   treat them as custodians, and so to the extent that they have

11   any documents for them, they be searched and produced pursuant

12   to the other requirements of the discovery protocol.

13         THE COURT:  Are Ms. Haller, Mr. Johnson, or Ms. Newman

14   counsel of record in any of those cases that Ms. Powell filed?

15         MS. BROOK:  I don't know the answer off the top of my

16   head, Your Honor.  I believe though that they were on certain

17   of the pleadings.

18         THE COURT:  Okay.  So Dominion has reason to believe,

19   through either their appearance in the cases or through

20   representations made or based on a good faith belief in

21   discovery thus far, that those individuals were working on

22   those cases, and Dominion's position is that those cases led to

23   the making and filing of allegedly defamatory statements

24   against Dominion?  That's the thread?

25         MS. BROOK:  Correct, Your Honor.

1           THE COURT:  Okay.  Mr. Mooney or Mr. Casarino for

2    Ms. Powell, if there is an objection to the custodians, what's

3    the basis?

4           MR. CASARINO:  Good morning, Your Honor.  Marc

5    Casarino for Ms. Powell.  So the basis of the objection is

6    several fold.  One, these folks, while affiliated with

7    Ms. Powell at one point, are no longer, and have not for a long

8    time, been affiliated with Ms. Powell.  They are independent

9    attorneys, Julia Haller, Brandon Johnson and Emily Newman.

10   Ms. Dale has not worked with Ms. Powell for some time.

11          And it is our understanding that each of these people

12   has been independently subpoenaed for deposition, document

13   production by Dominion.  They each have, as far as we know,

14   their own counsel who is addressing those subpoenas.  At least

15   some of them have produced documents.  I believe we just

16   received a tranche of documents that Dominion circulated from

17   Ms. Dale in response to the subpoena to Ms. Dale.

18          And so each of these persons independently controls

19   their documents, their information.  They have been subpoenaed.

20   They can be deposed.  Their own counsel, private counsel, are

21   addressing those issues.  We don't believe they are

22   appropriately custodians.

23          And moreover, this leads to perhaps a bigger problem,

24   which might be an issue to be addressed later in this hearing.

25   Dominion is not just seeking, as they portrayed here today, to

1    review documents from each of these people and produce what's

2    responsive and relevant and not privileged.  What they are also

3    asking for is that we conduct interviews of these people and

4    engage in Dominion's specified question and answer from these

5    folks in a custodial interview, which we believe is entirely

6    inappropriate.

7         So this is a little bit of a lead-in to identifying

8    these people as custodians; the next shoe to fall is Dominion

9    is going to be asking that we have to interview them in a way

10   that Dominion requests and report back to Dominion the

11   information that we learn from those interviews.  We think that

12   is all entirely inappropriate.

13        We have Ms. Powell.  She is the custodian for herself,

14   of course, and for her law firm, where she's the only attorney

15   and we have got the records.  We have produced everything.

16        Unlike Dominion, we have gone through these

17   appropriately under the federal rules.  We have produced what

18   is responsive, what is relevant and non-privileged.  We have

19   set eyeballs on these things and then produced them.

20        THE COURT:  Okay.  Thank you, sir.

21        Ms. Brook, if each of these -- well, Ms. Dale doesn't

22   fit the category, so with respect to the three attorneys,

23   Haller, Johnson and Newman, if they have all been individually

24   subpoenaed, can you not ask the custodial questions of them --

25   let's leave the documents aside for a second -- can you not ask

 1    the custodial questions of them during the depositions?

 2         MS. BROOK:  Not necessarily, Your Honor, because,

 3    first of all, the only reason we subpoenaed these folks is

 4    because we were trying to -- we were trying to get what we are

 5    entitled to under the law when Powell refused to give it to us

 6    herself.  So we went out and we subpoenaed these people, but to

 7    say we just subpoenaed them in passing is -- honestly, it's a

 8    little difficult to hear.

 9         It has been an incredibly burdensome and cumbersome

10    process to try to go out and chase down these folks who are not

11    working cooperatively with us to accept subpoenas or to produce

12    documents or to sit for depositions.

13         THE COURT:  But my question -- I'm sorry, Ms. Brook,

14    my question was different.  My question was different.  Can't

15    you just -- I understand you're frustrated and you have had to

16    do a lot of work.

17         My question was directly:  Can't you ask them those

18    questions during their deposition?

19         MS. BROOK:  Sorry, Your Honor.  I was trying to answer

20    by saying I don't know if I'm going to get their depositions,

21    because they are not cooperating, they are not agreeing to sit.

22    Again, we are going to have to likely file, or at least

23    threaten to file motions to compel in multiple different

24    jurisdictions besides this court, when, again, all we're asking

25    Powell, P.C. to do here is to say if you have, from working

1    together, documents from these folks -- (indiscernible) -- we

2    still may go out and subpoena them, because we appreciate that

3    they may have documents that Powell, P.C. doesn't possess, but

4    if Powell, P.C. does possess them, then search through them and

5    produce them.

6        And I'll just note for the record, we disagree that

7    Powell's production has been fulsome, but we will tee up

8    individual disputes as needed following the meet and confer.

9        THE COURT:  Mr. Casarino -- thank you, Ms. Brook --

10   were Mr. -- were Haller, Johnson and Newman members or

11   employees of the firm at the time of the underlying allegations

12   in this case?

13       MR. CASARINO:  My understanding is that they were at

14   best independent contractors.  They were attorneys working

15   collaboratively with Ms. Powell.

16       THE COURT:  Okay.  I'm going to adopt Dominion's

17   request and include Ms. Haller, Mr. Johnson, Ms. Newman and

18   Ms. Dale to the list of custodians and the obligations that

19   follow as being a custodian in this case.

20       Specifically, when an attorney is working with a firm

21   and then they leave, they often leave behind documents.  In

22   fact, most firms require you to leave client documents behind,

23   and so I don't necessarily see the fact that they have left as

24   relevant to absolving them of duties as a, quote-unquote,

25   "custodian" in this case, because it's Sidney Powell, P.C. that

1  might be the entity in possession, custody or control of those

2  documents, and the fact that the attorneys have left doesn't

3  necessarily -- and are independently subpoenaed -- doesn't

4  necessarily mean that they have the same -- that the documents

5  that they have in their current possession, custody or control

6  are the same as what Sidney Powell, P.C. would have.

7          And moreover, I have heard a sufficient proffer from

8  Dominion as to their involvement in the case, and so I will

9  include all four individuals -- all four additional individuals

10  under Sidney Powell, P.C. to the custodian list.

11          Is there anything else on the issue of custodians, or

12  can we move on?

13          MS. BROOK:  Not from Dominion's perspective, Your

14  Honor.

15          THE COURT:  Okay.  I'm going to skip the custodian

16  interview process for a moment and go to topic number six,

17  which is responsiveness and relevance review.

18          Okay.  Just a moment, please.

19      (Pause)

20          THE COURT:  Okay.  I'm not entirely sure what the

21  dispute is here, because I see from defendants in their

22  paragraph six a pretty reasonable description of how one would

23  do a responsiveness and relevancy review, although I'm not

24  really sure why the words "relevancy" and "responsiveness" are

25  being used.  I just -- I think documents are responsive to

1    requests or not, so if one of the defendants who drafted this

2    has -- thinks that the two have like term-of-art meanings that

3    are different or you were just simply trying to encompass all

4    responsive documents in the case, you can explain that to me.

5         But I don't see a competing provision by Dominion.  So

6    I guess whoever -- let's start with Dominion, whoever is going

7    to be speaking on behalf of Dominion, what exactly is the

8    dispute here?

9         MR. SHACKELFORD:  Your Honor, Stephen Shackelford for

10   Dominion.  I think the only dispute here is over the language

11   in the defendants' proposed order, specifically for ESI, for

12   emails and text messages, would require Dominion, after running

13   the exact search terms with custodians that the defendants

14   ordered us to, require Dominion to review every single document

15   for what they call responsiveness and relevance.

16        I will say I think the documents that we produced have

17   been responsive to their requests, even though we haven't had

18   an attorney lay eyes on every single one of them for a number

19   of reasons.

20        And for relevance, I agree with Your Honor, relevance

21   is not the burden of the producing party to producing documents

22   responsive to a request.  They may have a right to withhold

23   certain documents as completely irrelevant, but you don't have

24   an obligation to say, well, we don't think that these documents

25   are relevant so we're going to review them -- (indiscernible).

1    We think a lot of what they requested is irrelevant to this --

2    (indiscernible) -- and we'll seek to exclude it from trial.

3    (Indiscernible).

4            THE COURT:  Which sentence of paragraph six are you

5    taking issue with, sir?

6            MR. SHACKELFORD:  The use of search queries and --

7    (indiscernible) -- and means by which the universe of documents

8    needing responsiveness and relevancy review can be reduced, but

9    it is not a substitute for such responsiveness and relevancy

10   review or any other requirement under the Federal Rules of

11   Civil Procedure.

12           If queries -- and earlier in this paragraph, it says,

13   "The queries and custodians are used to locate potentially

14   responsive documents or ESI, a producing party is required to

15   conduct a responsiveness and relevancy review personal to that

16   RCP 26 and 34 before producing documents to ensure that only

17   documents that are actually responsive and relevant to a

18   pending request for production are produced."

19           And, Your Honor, we have -- our proposal is simpler.

20   Our proposal is in paragraph four, which is disclosing the

21   search methodologies that each party would use.  And in

22   paragraph six, which is time periods for production of

23   communications and -- (indiscernible).

24           THE COURT:  Okay, but that was not -- that was not in

25   your joint status report.  So what are the two paragraphs that

1    you're asking me to compare six to of the defendants?

2          MR. SHACKELFORD:  Paragraph four is our paragraph.

3          THE COURT:  Okay.

4          MR. SHACKELFORD:  Specifically permits parties to use

5    a -- (indiscernible) -- manual review, search terms, custodians

6    and time periods or any other method reasonably expected to

7    identify the ESI that is responsive to pending discovery

8    requests.  That's our proposal.  And we specified no party is

9    using technology assist to review, which I think all parties

10    confirmed they are not.

11          So our methodology is more flexible in keeping with

12    both the rules themselves, which both specify a particular

13    methodology for responsiveness review, and which don't specify

14    that you have to conduct a, quote-unquote, "relevancy review."

15    That's not a requirement imposed on a party producing

16    documents.

17          Although I think, Your Honor, that the documents we

18    produced in response to their requests, their 700-plus

19    requests, are responsive.  I would be happy to explain to Your

20    Honor why that is so.

21          THE COURT:  Can I just -- who drafted this paragraph

22    six on defendants' side?

23          MR. CASARINO:  Your Honor, this is Marc Casarino.  I'm

24    not sure if -- I'm not sure which on the defense side was the

25    genesis of that.  It may have a been a group or collaborative

1    effort, but I'm happy to jump in for the defendants if Your

2    Honor is amenable to that.

3         THE COURT:  Of course, and I appreciate that, sir.

4    Was "relevancy" and "responsiveness" meant to mean two

5    different things here, or was it just kind of a casual use of

6    the language?  Because it is a bit confusing, at least just

7    those two terms.  I'll address Mr. Shackelford's argument about

8    the specific search query procedure in a second.

9         MR. CASARINO:  Sure, Your Honor.  And from my

10   perspective, I do think it's purposeful, and if I may just lay

11   a bit of background for why.

12        So although I don't think the Dominion's counsel has

13   intended to misrepresent this, the Powell parties have never

14   agreed that Dominion may just simply use search terms and dump

15   on us whatever hits or result from those search terms.  We have

16   never -- we have made that very clear to them that has not ever

17   been our agreement.  So to the extent that is suggested during

18   this hearing, that's just simply inaccurate.

19        So what is happening, by way of background, Your

20   Honor, is Dominion is running search terms and then literally

21   just dumping on us, on the Powell parties, whatever hits they

22   get, whatever they deem responsive to those hit results, they

23   dump on us.  But the result of that is a complete document

24   dump.  And so what we have laid out in our papers, so we have

25   asked for Dominion, any relevant, responsive document regarding

1   Powell, and they have produced hundreds of thousands of pages,

2   literally hundreds of thousands of pages of documents that

3   include the surname "Powell" that have nothing to do with

4   Sidney Powell, that have nothing to do with Sidney Powell,

5   P.C., that have nothing to do -- are entirely irrelevant to

6   this case.

7           So it's polling lists where all the surnames in a

8   state are "Powell," or where a polling place is named like

9   "Powell Middle School."  They produced all of those records.

10  And from their perspective, they think that that is responsive

11  to our discovery requests.

12          And again, another red herring -- (indiscernible) --

13  and it was slipped in there by Mr. Shackelford is they plan to

14  respond to 700 requests, Your Honor, not from the Powell

15  parties, we have been very searchable with our requests.  We

16  have issued very searchable requests and we have asked for them

17  to produce documents responsive to those specific requests.

18          That's what the federal rules require.  I'm referring

19  to particularly Rule 26(b)(1), that talks about we are entitled

20  to production, non-privileged matter that is relevant to our

21  claims and defenses.  And so to address their position that

22  they can just simply run a search term and dump any hit on us,

23  just back up the truck and dump the documents and say, "Figure

24  out where the answer is, it's somewhere in these nine million

25  documents," it's inappropriate.

1        And so that's why we specified it has to be both

2   responsive to our specific discovery requests.  I don't care

3   what the other defendants have asked for, we have been very

4   searchable with our requests.  We want documents responsive to

5   our specific requests, and they have to do some level of review

6   to make sure that's the case before just dumping documents on

7   us.

8        We don't want polling place registries that are

9   hundreds of thousands of pages of Powells that have nothing to

10  do with Sidney Powell.  And that's just one example.  There are

11  many such examples in our production list.  By our count, I

12  think less than 4 percent of their documents are actually

13  responsive to our requests, and a few have --

14       THE COURT:  Okay.  I get the point.  But does -- so I

15  understand the -- I understand the argument, but does

16  responsiveness and relevancy in that paragraph really -- do the

17  words "and relevancy" really need to be there, or can it just

18  be "responsiveness review," because the relevancy review, it's

19  causing more confusion I think.

20       And I will address though the problem that you're

21  identifying.  I'm just saying do those words need to be there?

22       MR. CASARINO:  No, Your Honor.  I mean, presumably,

23  counsel should be doing that already, right.  You mentioned --

24       THE COURT:  Exactly.

25       MR. CASARINO:  -- you have experienced, learned

1    counsel here.

2            THE COURT:  Right.

3            MR. CASARINO:  Unfortunately, that's not been our

4    experience in the case, so maybe it was a bit of overkill.  But

5    I appreciate Your Honor's -- (indiscernible).

6            THE COURT:  I need to take a quick break.  And I also

7    have another matter to tend to, so we need to -- I'm going to

8    take a break, and then I need everyone to use the break to get

9    as efficient and organized as possible with respect to the

10   remaining issues.

11           Let me say this on review of documents:  Search terms

12   were meant to help.  When ESI became so prominent, search terms

13   were meant to help parties to agree on and use as a tool to

14   identify potentially responsive documents.  I have never seen

15   authority, but if someone has it, you can send it to me, that

16   search terms are meant to supplant a responsiveness review.

17           And the way that it works, in my experience, and the

18   way that I expect it to work in this case, is you take the

19   search terms that you all have agreed upon, you put them into

20   your databases, you get hits back, and then usually a large

21   team of first or second year associates and then attorneys for

22   the, quote, "hotter documents" are reviewing those results.

23           If that isn't happening in this case, we got a

24   problem.  So I don't have a problem with paragraph six in

25   defendants' proposal, except that that relevancy language is

1    throwing me off and I would like that to be removed.  But there

2    should be no substitute for a responsiveness review in this

3    case.  And by the same --

4              MR. SHACKELFORD:  Your Honor --

5              THE COURT:  I'm not done.  And by the same token, if a

6    defendant knows, or any party, frankly, knows of a responsive

7    document that's out there that did not -- that for whatever

8    reason, a search term -- it doesn't contain a search term, you

9    still have that obligation to produce that document.

10             So that's why I have always had a problem with the

11    view that search terms are somehow meant to substitute the

12    attorney's critical role in the review and production of

13    documents.

14             Okay.  So Mr. Shackelford?

15             MR. SHACKELFORD:  Your Honor, I think there is

16    misimpression as to what we did.  We spent a tremendous amount

17    of attorney time searching for specifically responsive

18    documents to a number of their requests.  We dug up a lot of

19    financial documents to be produced without using search terms.

20    We dug up technical documents.  We have given access to our

21    technical databases.  We dug up sales-related documents and

22    spreadsheets.  We dug up contracts.

23             We have done a ton of work to try to find the most

24    responsive documents outside of literally 15 years worth of

25    emails they have asked us to review, Your Honor.  They are

1    asking us for documents from 2006 to 2021 and 2022.  For the

2    emails and the text messages -- multiple defendants, including

3    Ms. Powell and OAN, asked us in a request for production to

4    produce what we produced in the Fox case.  In the Fox case the

5    Court specifically ordered we were to produce without a

6    secondary responsiveness review, and we did that.  We have

7    produced that.

8         I assume Your Honor would be suggesting them to go

9    back and re-review that, since that is a production that they

10   asked for and we gave them.  On top of the Fox production,

11   which I believe is the lion's share that we produced, we have

12   produced additional documents using the search terms requested

13   by the defendants, but, Your Honor, the requests that we would

14   be asking to do a secondary responsiveness review are extremely

15   broad.

16        Ms. Powell, for instance, asked for each document

17   relating to the design, development and operation of Dominion's

18   voting equipment from 2006 to date, the design, development and

19   operation -- (indiscernible) -- that's the entire business.

20   And OAN asked for documents and communications --

21   (indiscernible) -- documents and communications relating to any

22   Dominion entities' involvement in the U.S. 2020 local, state

23   and federal elections.

24        Again, that's our entire business around the 2020

25   election, which is critical here.  So I believe that what we

1    produced in the search terms, putting aside the fact that the

2    Fox production was requested and produced, the additional

3    documents we produced are responsive to these incredibly broad

4    requests.

5         It is ironic to me that the defendants have said

6    repeatedly publicly, including on their shows, that they

7    just -- if they can just get into Dominion's files, they can

8    prove all these false conspiracy theories.  We have a

9    completely open book here.  We have produced enormous access to

10   our databases, to our technical documents, and solely for ESI,

11   for emails and texts, after all the other work we have done, we

12   have produced a large number of documents responsive to the

13   incredibly broad requests.

14        Like, look, each and every document and communication

15   concerning or related to the performance or liability of --

16        THE COURT:  Sir, I don't mean to cut you off, but I

17   think I have got your point.  Have you said everything you need

18   to say for the record?

19        MR. SHACKELFORD:  I think so.

20        MR. CASARINO:  Your Honor, if I may --

21        THE COURT:  Very briefly.  Very briefly, sir.

22        MR. CASARINO:  Mark Casarino for the Powell parties.

23   We take much issue with what Mr. Shackelford just said about

24   the Fox production.  That was not the agreement again.  That's

25   a misrepresentation of the agreement.

 1          And also, I'll direct Your Honor to page 1 of our

 2   pleading in support of the defendants' discovery protocol where

 3   we quote emails from Dominion to us that say, quote, "As stated

 4   in our responses and confirmed in past conferences, Dominion is

 5   not affirmatively searching for documents responsive to those

 6   requests," meaning the -- (indiscernible) -- parties' requests.

 7          "Dominion will not specifically search for responsive

 8   documents."  They go on to say, "Nor are we engaging in a

 9   second level manual responsiveness review."

10          THE COURT:  Okay.

11          MR. CASARINO:  "If the document hits on search terms

12   and is not privileged, we are producing it."  That's the

13   document dump.  So I would invite Mr. Shackelford to explain

14   how he just represented to the Court that they were doing a

15   responsiveness review when they have told us all along they

16   were refusing to do that.

17          MR. SHACKELFORD:  Mr. Casarino well knows --

18          THE COURT:  Okay.  Excuse me.  Excuse me.  This is

19   over.  Okay.  I'm taking a break.  I will be back with my

20   ruling.  I understand the issue.  And I think you all

21   understand what I expect happens when in the ESI world how to

22   produce and review documents.

23          Okay.  And Mr. Shackelford, if you have a brief

24   statement to say in response, you can, but I do not want a long

25   explanation of how everything -- one side has done right and

1    everything is done wrong.  If you have something that you need

2    to say just to state it for the record, state it, but this is

3    going past this one paragraph, which is such a basic, basic

4    obligation of how we deal with ESI and producing documents in

5    the ESI world that I can't even believe that we're having to

6    have this discussion.

7         So go ahead and say what you need to say for the

8    record, sir, but I'm taking a break right afterwards.

9         MR. SHACKELFORD:  Request for production number --

10   (indiscernible) -- Ms. Powell requested the documents --

11   (indiscernible).

12        THE COURT:  Okay.  And for that request, as I hear how

13   it's phrased, I agree with you, sir, that you should be

14   producing the entire production from the Fox case.  And if the

15   Powell parties have a problem with that, if Mr. -- if Dominion

16   had modified that production, I'm sure I would have heard about

17   it from an objection from the Powell parties, so

18   Mr. Shackelford, if that is what is asked of you and you

19   produced the entire Fox production in the way that the judge in

20   the Fox case blessed the review to happen, then that's fine.

21   But beyond that, we're going to do things differently here.

22        Okay.  So I'll be back.  I'll be back in five minutes.

23   Thank you.

24        (Recessed from 12:15 p.m. to 12:26 p.m.)

25        THE COURT:  Okay.  So we were talking about the issue

1  of the search methodology, paragraph six of defendants'

2  proposal.  To the extent there is daylight between paragraph

3  four of Dominion's proposal and paragraph six of Defendants'

4  proposal, I believe the only issue is whether or not an

5  attorney needs to review documents or whether there needs to

6  be -- sorry, let me rephrase -- a responsiveness review after

7  search terms are applied to the ESI.

8        To the extent that is the dispute, I'm rejecting

9  Dominion's argument on that and adopting paragraph six, but I

10  do think there are provisions in paragraph four that don't --

11  that aren't completely -- of Dominion's proposal that aren't

12  completely in conflict with paragraph six of defendants'

13  proposal, if that makes sense.

14        So what I would like you all to do is to take a stab

15  at marrying those, but, again, Mr. Casarino, if Ms. Powell has

16  asked for all documents that Dominion produced in the Fox case

17  and the judge in the Fox case -- Dominion v. Fox case in

18  Delaware told Dominion that it could -- it didn't have to do a

19  responsiveness review, then that's what you have asked for, so

20  you have to live with that.

21        But in this case, I do believe that the language of

22  defendants' paragraph six is reasonable, except I think that

23  having the word "relevancy" in there is throwing everything

24  off.  Whether you produce a document is whether it is

25  responsive or not.  There is not a separate term of art of

1   relevancy and responsiveness.  So is it responsive?  Produce

2   it.

3           MR. CASARINO:  Yeah, Your Honor.  If I may address

4   that Fox production issue.  So at the start of -- just to

5   clarify with the backstory here.  Again, I think it was a

6   little bit cheated by Dominion.  So --

7           THE COURT:  Mr. Casarino -- Mr. Casarino, I don't mean

8   to cut you off.  I don't really need the backstory, because you

9   have made a document request, Dominion has produced what it

10  believes is responsive to your request, and what was before me

11  is whether or not paragraph six of defendants' proposal is a

12  reasonable one.

13          And I have said largely I believe it is, and I have

14  already told you all how I believe -- not how I believe, but

15  how ESI and document review goes.  It's not just my opinion.

16  So I don't know what backstory I really need, because I need to

17  move on.

18          MR. CASARINO:  Your Honor, that's not our only

19  document request though.  That was 1 of 51, as Mr. Shackelford

20  pointed out, so the other 50 are -- (indiscernible) -- requests

21  for very specific documents, and those are the ones where there

22  was not any type of responsiveness review, just nine million

23  documents, and now they are taking the position that the

24  response to specific document requests are somewhere in the Fox

25  production, go find it, defendants.  That's what we take

1    umbrage with.  That's the issue.

2          We asked at the beginning of discovery for, as a way

3    to try and bridge the gap here, let's see what you produced in

4    Fox and we'll go from there, and, if it's not sufficient, then

5    we'll move on with specific requests.  We made specific

6    requests, and included among them, just to confirm that what

7    they voluntarily said they produced to us was the Fox

8    production, that that was in fact true, but we have specific

9    requests that they still need to respond to that they haven't.

10          THE COURT:  Okay.  Well, then that's something you all

11    need to present to me and tee up in a way that is not so

12    haphazard as what you're saying today is about this Fox

13    production.  I don't have enough information to give you

14    guidance.

15          What I do have enough information on is the fact that

16    every party should be doing a responsiveness review, of course,

17    after you put your search terms into your ESI.  If any party is

18    not doing that, then you got to go back and start over and do

19    it, or talk to the other side and come up with an agreement.

20          But I never blessed, ever blessed in this case a

21    procedure whereby search terms supplanted the attorney's

22    obligation to review for responsiveness.

23          So please incorporate into the discovery protocol a

24    provision that reflects my ruling.  Take out that word

25    "relevancy," because I do think it's throwing it off.  And I

1   just will say with respect to the last sentence of paragraph

2   six of defendants' proposed discovery order that says, "No

3   party shall be required to produce any documents or ESI until

4   its objections for a particular request for production are

5   resolved by agreement or by the Court," I just want to make

6   sure that to the extent, as is common in discovery, that a

7   party makes general objections and then they produce subject to

8   those general objections, I just want to make sure you're

9   not -- you all aren't reading it that way.

10          This is what -- how I interpret this provision, and I

11  want to make sure everyone interprets this provision the same

12  way, is this a document that would be subject to possibly a

13  dispute that might lead to a motion to compel.  This isn't like

14  I'm going to withhold all my documents pursuant to a general or

15  specific objection.  If anyone has a different view of that,

16  just say so now.  Okay.

17          All right.  The next issue is the organization of

18  documents, issue number seven.  Dominion's proposal is at

19  paragraph 8(a) and defendants' proposal is at paragraph 8(a).

20  My understanding of the dispute is that the defendants are

21  simply requesting that pursuant to Rule 34 that Dominion in

22  producing its documents categorize by Bates number the requests

23  to which the documents are -- requests to which those documents

24  are responsive.  Am I misunderstanding that this is the nature

25  of this dispute?

1          MS. BROOK:  Your Honor, if I may.  I honestly don't

2     understand myself the nature of this dispute.  This is one of

3     those ones where the passage of time I think has sort of mooted

4     this.  No party has done what has been proposed by defendants

5     in their version.

6          Both parties have been following what both parties

7     agreed to in the ESI protocol which is attached as Exhibit 1,

8     which is just produce the documents in the normal course in

9     which they are kept.  Again, that's agreed in the ESI protocol.

10    All parties have been following that procedure.  They have just

11    produced in the normal course.

12         We have been taking depositions and it has been

13    working just fine.  So this is one where I think with the

14    passage of time, the dispute has largely been worked out and

15    not everyone has been following Dominion's version of this

16    protocol.

17         THE COURT:  Okay.

18         MR. CASARINO:  Yeah.  I don't necessarily agree with

19    that, Your Honor.  This harkens back to the last point we were

20    talking about.

21         We have asked -- the Powell parties at least have

22    asked very specific document requests, surgical and specific to

23    Ms. Powell's claims and defenses.  And we are entitled to

24    response to those specific requests, not just, "It's somewhere

25    in the Fox production" or "It's somewhere in nine million

1    documents, see document production."  We should -- the federal

2    rules require them to direct us to at least by Bates range or

3    some other identification what is responsive to our requests,

4    because otherwise we don't know whether they have actually

5    responded to our request or not to be candid.

6        THE COURT:  That's kind of a dramatic -- excuse me.

7    That's kind of a dramatic comment, Mr. Casarino, but I do take

8    your point about Rule 34.

9        Ms. Brook?

10       MS. BROOK:  I was going to say if Mr. Casarino has any

11   specific concerns about any specific RFP issue, we're happy to

12   talk to him about any concerns that he has.  I don't think

13   Mr. Casarino would agree with my point that I made which is

14   that the Powell defendants haven't produced in this way either.

15       Everyone has just been -- they have been responding to

16   our RFPs, with here is the specific Bates number in our

17   production that are responsive to each RFP.  That was my point,

18   is that there is an ESI protocol attached.  All sides agree to

19   it, and that has been the way in which the parties have been

20   producing documents in this case.

21       THE COURT:  Okay.

22       MR. CASARINO:  (Indiscernible) -- not only ESI, but

23   also documents, so I understand the ESI point.  I'm talking

24   about just documents.

25       THE COURT:  Okay.  I'm going to make this very simple

1  for you all.  Rule 34(b)(2)(E)(i) controls in this case.

2  That's my ruling.

3       Okay.  What's the next issue?

4       MS. BROOK:  The only two issues left, Your Honor, are

5  search methodology, which I believe is largely duplicative of

6  the review and responsiveness issues that the Court has already

7  taken up, and so I'm not sure it requires much more of the

8  Court's attention.

9       I think given the guidance we have gotten from the

10  Court on that, we're probably okay to meet and confer and work

11  it out, but Mr. Shackelford was going to handle that one, so

12  Mr. Shackelford, am I missing anything of search methodology?

13       MR. SHACKELFORD:  I think it's quite the same as --

14  (indiscernible) -- Your Honor, and we'll -- (indiscernible).

15       THE COURT:  Okay.

16       MS. BROOK:  So I think that one is taken up in that,

17  Your Honor.

18       So then the last one was issue number five in our

19  chart, which is the custodian interview process.

20       THE COURT:  Before I move on, I assume that all the

21  defendants are in agreement with me moving on from that topic

22  number eight as well, because I have already ruled on the

23  issue?  Okay.  Great.

24       Mr. Tobin, I think you dropped off for a minute.  Did

25  you miss anything?  You're going to get notes.

1          MR. TOBIN:  I have been back for a while.

2          THE COURT:  All right.  I just learned that you were

3     trying to get back in for a second.  Okay.

4          So then we have got the custodian interview process

5     and that's the last issue.  I would love for someone to explain

6     to me what this dispute is.  Anyone?  Dominion first.

7          MS. BROOK:  Sure, Your Honor.  Davida Brook on behalf

8     of Dominion.

9          I guess to place this in context, this was something

10    that the parties were trying to work out towards the beginning

11    of the discovery process, right.  Again, with Dominion's effort

12    being transparency.  We believe we have a different

13    understanding of what's responsive in this case than

14    defendants, so we said let's get on the same page, generally

15    speaking, about what both sides are going to do with their

16    custodians, without disclosing any work product or

17    attorney-client privilege, so that we can avoid bothering the

18    Court with numerous disputes down the line.

19         So to that end, Dominion's proposal -- everyone agrees

20    they should do custodial interviews.  The defendants' proposal

21    is largely we'll do custodial interviews in accordance with the

22    rules, but we don't want to provide any specifics.  We don't

23    believe we're entitled -- we have to provide any specifics

24    about what that means that we're doing.

25         Dominion's proposal was one of transparency instead.

1    We made some specific requests based on what we learned in the

2    cases.  For example, we made specific requests that the

3    defendants ask about certain applications, some Signal and

4    What's App and various text message applications.  We made

5    certain requests about the topics that they've asked the

6    custodians about, so that it's not just going to lay people,

7    because Dominion's concern, Your Honor, is that they are going

8    to go to lay people who have heard about this case in the media

9    and are going to say, "Do you have communications responsive to

10   this request?  Are you going to have communications relevant to

11   this dispute?"  And those non lawyers are going to make

12   determinations about whether they do or don't, and then defense

13   counsel is using that as a basis to not collect, let's be

14   clear, if they do their custodian interview and the person

15   says, "We don't think we have responsive stuff," then they tell

16   us we won't collect and we won't search.

17        So given that drop-off, that -- (indiscernible) --

18   following the custodial interview process, which we don't

19   object to in theory, we still have to get on the same page.

20   Instead of just saying to someone, "Do you have responsive

21   communications," make sure you ask, "Do you have texts, do you

22   have What's App, do you have Signal," because they may not know

23   they are under an obligation to produce that stuff.

24        So there is competing proposals, Your Honor, about

25   what to ask folks for so that they then can -- every attorney

1    can then do its job under the rules to do a thorough

2    production, search, et cetera.

3            The other sort of big dispute, Your Honor, is again

4    whether or not they get to limit their custodial interviews to

5    work-related messages.  The defendants want to limit their

6    collection, their search and their production to work issues.

7    We think that is a recipe for defining responsiveness for

8    Dominion, a recipe for not producing all of the responsive

9    information in these cases.

10           First of all, a lot of the defendants are individuals.

11   Second of all, even for -- (indiscernible) -- defendants, I

12   don't know how OAN, for example, defines Chanel Rion's decision

13   to go out and help fund and raise money for the Cyber Ninjas

14   audit.  Is that a personal activity outside of her work at OAN?

15   We would beg to differ.  We say it's part and parcel of the

16   same.

17           So those are the two big issues, Your Honor.  And,

18   again, just to summarize them, one is can we be a little bit

19   more transparent as to what topics, what devices, what types of

20   applications we are asking the custodians about, and then

21   number two is can we all agree that there isn't this arbitrary

22   personal versus work divide and we're going to ask them whether

23   they have information that's responsive to the lawsuits.  Those

24   are the two big issues.

25           Dominion did not wait for the Court to rule.  We went

1    ahead and conducted our custodial interviews in that way.  We

2    went ahead and produced in that way.  My understanding is that

3    defendants went ahead and did it in the way that they outlined

4    in their competing proposal.

5         THE COURT:  Okay.  I really don't need much argument

6    on this from defendants, but I do want to give any defendants

7    who want to weigh in beyond what's been presented to me a

8    chance, very briefly to say something, if someone wants to

9    speak on behalf of the defendants, but I'm ready to give you

10   all some guidance here.

11        Okay.  I have heard no objection -- yes?

12   Ms. Blaesche?

13        MS. BLAESCHE:  Sorry.  I just wanted to note that, at

14   least from the Herring defendants, we didn't artificially limit

15   it to just work.  We know our obligation to the Court on its

16   responses, and they deposed our witnesses, so far six of them,

17   about it.  They contest what we have done.

18        THE COURT:  Okay.  Other than that, I don't believe I

19   have heard any comment or objection from defendants, so I'm

20   going to go ahead and tell you all how this needs to work.

21        First and foremost, you all -- it seems you all have

22   an agreement as to the apps that need to be searched, correct?

23        MS. BROOK:  No, Your Honor.  Dominion submitted an

24   exhibit with the apps and the defendants said we will not tell

25   you what apps we're asking about.

1          THE COURT:  Well, the Federal Rules of Civil Procedure

2    actually impose upon each and every one of you the obligation

3    to discuss ESI and what ESI you're searching.  And so that's

4    done.  Okay.

5          You need to, defendants or whoever -- and I really

6    honestly don't want to hear who has been on their best behavior

7    and who hasn't.  Each and every one of you needs to be

8    transparent about which apps and what your sources of ESI are,

9    because the rules require it.  And so please do share the apps

10   that are being searched and give that information to the

11   requesting party.

12         With respect to this issue of an artificial

13   work-related versus personal, that is to me not the point at

14   all, and so to the extent any party is directing its custodians

15   to only search for some, you know, subset of documents or

16   work-related versus non-work-related, the scope is whether or

17   not the information is in that custodian's possession, custody

18   or control.  Rule 26, that's the question, okay.

19         I don't want an artificial work versus personal.

20   There may very well be good reasons for some of you defendant

21   counsel to be just asking someone, one of your custodians about

22   work related, because their role was so limited.  So I don't --

23   I can see in some way that that -- why that might be happening

24   with respect to some witnesses, but an across-the-board only

25   asking custodians about work-related activities is an

1    insufficient search and insufficient custodial interviews.

2        Also custodial interviews sounds like we're in

3    criminal land, so I'm going to call them custodian's

4    interviews, because I'm not on crim duty today.

5        So with respect to the -- I think that's it, right?  I

6    mean, does that cover everything?

7        MS. BROOK:  Your Honor, there are two other things,

8    Your Honor, one of which I will admit I didn't flag in my -- I

9    did flag it.  There was also a list of proposed topics that

10   should guide questioning.

11       So Dominion understands, for example, that -- and I'm

12   not picking on any particular defendant here -- that OAN is not

13   going to ask every custodian to read the 100-plus page

14   complaint and then say, "Do you have documents responsive to

15   this litigation," and so instead what we did is we came up with

16   a list of distilled topics and asked for their -- they would

17   ask their custodians do you have documents relevant to this.

18       Again, just in the interest of transparency, their

19   position has been we don't -- we're not required to provide you

20   with such transparency and so we're going to do it the way we

21   see fit.  So that was the one I did raise.

22       THE COURT:  I understand that.  And I understand -- I

23   certainly understand why Dominion would want that sort of

24   protocol entered and why defendants don't want to have to deal

25   with that or do it in the way Dominion wants it done.  But I'm

1    going to reject Dominion's proposal because I don't think

2    Dominion is entitled is control how defendants ask their own

3    witnesses or their own custodians questions to get at

4    potentially responsive documents in the custodian's possession

5    or custody or control.

6         If I hear of, and a dispute is brought before me, that

7    defendants did not do sufficient searches, believe me, we will

8    have a problem, especially after this hearing.  So I'm not

9    going to adopt this list of topics whereby each person has to

10   ask all these questions of their defendants.  Each one of you

11   is a professional lawyer.  Each one of you has your own

12   obligations, ethical obligations.  I think by now you all

13   understand how seriously I take your ethical obligations to

14   this court.  By now you should know that.

15        And so -- but I'm not going to create this like

16   standard list of questions that everyone has to ask their

17   custodians.  That's everyone's job, and you do it as you see

18   fit, as you see fit to your custodians, but certainly there is

19   no work versus personal artificial and shouldn't be artificial

20   separation.

21        So I will not adopt this like question -- this

22   questionnaire list of topics, but will require counsel all to

23   share what apps and ESI searches they are doing across which

24   platforms, and certainly will accept and adopt Dominion's

25   request to do away with this work versus personal distinction.

1    It's possession, custody or control, work -- and each and every

2    one of you when you're talking to your custodians, make sure

3    that this means -- explain to your custodians what possession,

4    custody or control means and make sure you are telling them

5    this goes beyond work-related, work habits or whatever words

6    are being put forth here.

7          MS. BROOK:  Your Honor, there was one other issue

8    under custodial documents -- (indiscernible) -- I think with

9    the Court's guidance on the other ones, the parties should be

10   able to work it out themselves and submit the --

11   (indiscernible).

12         THE COURT:  I appreciate that.

13         Okay.  So what I would like -- and I believe that

14   takes care of all the issues in the discovery protocol, and

15   thank you all for teeing those up.

16         How long do you all need to incorporate my rulings and

17   submit the final version, agreed upon version for me to sign?

18         MS. BROOK:  Your Honor, just given the number of

19   depositions going on in these cases right now, if we could have

20   until the end of the week, that would be -- (indiscernible) --

21   to make sure we can get it done.

22         THE COURT:  Sure.  And I -- and it's music to my ears

23   that there are depositions going on.  So that's good.  And yes,

24   absolutely, until the end of the week, that's fine, unless any

25   of the defendants have an issue.

1   So then I will order that the final agreed upon

2 discovery protocol order that incorporates my rulings is filed

3 with the Court by end of the day Friday.

4   Okay.  Just a few more things.  I'm not going to be

5 handling category two and category three disputes today, but I

6 will set a further hearing on this.  We have already dealt with

7 Bobb's stay request, so Ms. Brook and Mr. Haggerty, you all

8 will get something on file regarding that.

9   Let me address however one issue which I am seeing and

10 want to put a stop to now about how parties are communicating

11 with chambers about discovery disputes.

12   First and foremost, no attorney should be contacting

13 my chambers at all without everyone copied on the case.  And if

14 a party is unrepresented, as Mr. Byrne appears to currently be,

15 then Mr. Byrne should be copied.  Okay.

16   I have received communications about various manner of

17 things that are not substantive, but chambers is not here to

18 answer your questions about administrative issues.  So I ask

19 that if there are any questions, you contact my courtroom

20 deputy, and she's going to put her email address in the Zoom

21 chat right now.  But no attorney should be contacting chambers

22 with any questions whatsoever without everyone on the line.

23   And also, the only time you should be contacting

24 chambers is when you have a discovery dispute and I'm going to

25 tell you how you're going to tee it up.  If I get any

communication that doesn't meet the following standards, it will not be responded to and I will not act on it.

So if you have any further discovery disputes, after conducting the diligent meet and confer obligations you have, both under the federal rules and then the additional obligation that I'm imposing on you all to have either an in-person or videoconference meet and confer, after your email letter writing campaign, that you will no doubt likely do, you still have to have a -- have to have a videoconference or an in-person meeting to try to settle this.

Then, if you can't settle a discovery dispute, the way that you tee it up to me is you send one email from everybody, so you have to work out the language of the email between yourselves before you email chambers, telling the Court very briefly -- and we're talking no more than two paragraphs, and not long paragraphs, because I'll give you further guidance after I just generally know what the dispute is -- that you have a dispute, this is who is involved, these are the two parties, or three, whichever parties that are involved, about this issue or request or deposition, and that you're seeking the Court's guidance.

Anything other than that, the Court will not be responding to. And so that is how you're going to please communicate with me in the future about any discovery disputes that arise. If there are any disputes that can be saved -- if

1    there is a pending hearing and there are any disputes that can

2    be saved to that hearing, just send a note -- still send the

3    note, but say, "Your Honor, we don't need you to make a

4    separate hearing for this, we just ask to raise it at the next

5    hearing," or something to that effect.

6        Okay.  But this practice that is developing with one

7    side writing and then the other side responding, and then back

8    and forth, back and forth emails with a discovery dispute is

9    not how I would like these things teed up.  Okay.

10        All right.  With respect to -- I know earlier in the

11   hearing we talked about adjustments of dates.  I have noticed

12   that Judge Nichols has kept the parties generally on the same

13   discovery deadlines across the five cases, so I would just note

14   that as -- I know that Ms. Brook had mentioned potentially

15   adjusting some dates to give Mr. Byrne a chance if he so wishes

16   to obtain new counsel and that there are some dates that would

17   be objected -- dates to be adjusted.  Please just note that I

18   think that Judge -- it's clear that Judge Nichols' preference

19   is that the dates are consistent throughout the five cases, and

20   so anything that should be presented should be consistent

21   across the five cases.  Okay.

22        MS. BROOK:  Understood, Your Honor.

23        THE COURT:  All right.  Just a moment, please.

24      (Pause)

25        THE COURT:  That's all I have got for today.  I will

1    see your final discovery protocol order at the end of the week.

2    I will let Judge Nichols know about the agreement between

3    Ms. Bobb and Dominion and just flag for him that either he, if

4    he so wishes, or if he wishes to refer it to me, and then I

5    will adopt whatever agreement that -- as long as it's

6    consistent with what's been represented to me today, I will do

7    that if it's referred to me, and then I will set further

8    hearing.

9    There are also a number of discovery-related or other

10    motions that I believe have become moot or have been addressed

11    or overcome by other events.  I'm going to address those, but I

12    don't need to have any argument right now.

13    And then I will set a further hearing on the

14    category two disputes and the category three disputes.

15    Is there anything further at this time?

16    MS. BROOK:  Your Honor, if I can impose upon the Court

17    for two minutes of guidance, and if it's more than two minutes,

18    then I'll withdraw the request.  It has to do with something

19    that the Court -- the Court opened with today.

20    Since we have been on this hearing, Ms. Lambert has

21    filed another motion.  It's a motion to stay.  And I honestly

22    have never been in a situation before where an attorney who was

23    immediately disqualified is filing motions on the docket.  And

24    so I am just seeking some guidance whether Dominion should

25    prepare an opposition to a motion filed by any disqualified

1    attorney or whether we should sit tight and wait for the Court

2    to provide some guidance as to how we should proceed.

3            THE COURT:  Okay.  Just a moment, please.

4            MS. BROOK:  Thank you so much.

5        (Pause)

6            THE COURT:  Okay.  Well, I'm not -- I will just say

7    that you all read my order.  I believe it was clear when I said

8    she was disqualified effective immediately.  However, she does

9    have an appeal right, of course, to, I believe to Judge

10   Nichols, but I will issue a further order.  So you'll see my

11   order when you see it, probably very soon.  Okay.

12           MS. BROOK:  Thank you, Your Honor.  We appreciate it.

13           THE COURT:  Is there anything further?

14           Okay.  Thank you all for your hard work.  And I also

15   would just like to commend you for having -- I know this is a

16   large case and so we have gotten through a lot of issues today,

17   but I also recognize that there were a lot of issues that

18   weren't presented to me that could have been, so I would like

19   to just say that on the record and encourage you all to

20   continue to try to work through things.

21           And if there was anything that was brought to my

22   attention that becomes -- this is one area in which I will say

23   I have had experience and it does really frustrate the Court.

24   If there was anything that you all had raised, so say, let's

25   just take for example category two or category three documents,

1    and then next week you all narrow or resolve the issue, that

2    is, please, a time that it is perfectly appropriate to send the

3    joint email to chambers saying, "We have resolved this,"

4    because I have had, you would not believe how many instances in

5    other cases, where I have actually spent hours and days

6    preparing on motions only to come to the hearing to tell me

7    that the parties had resolved the dispute.

8         And so I'm just going to order you all to, if

9    something becomes narrowed, moot or you agree on something that

10   you had previously presented, to notify the Court within one

11   business day of that, so that the Court can allocate its

12   resources to the disputes that actually need resolving.

13        But again, I thank you all for your arguments and your

14   time, and you will see further orders from me.  Thank you.

15        (Proceedings concluded at 12:59 p.m.)

16                        CERTIFICATE

17      I, Sonja L. Reeves, Federal Official Court Reporter in and
     for the United States District Court of the District of
18   Columbia, do hereby certify that the foregoing transcript is a
     true and accurate transcript from the digital record in the
19   above-entitled matter and that the transcript page format is in
     conformance with the regulations of the Judicial Conference of
20   the United States.

21      Dated this 21st day of August, 2024.

22

23                        /s/ Sonja L. Reeves
                          SONJA L. REEVES, RDR-CRR
24                        FEDERAL OFFICIAL COURT REPORTER

25

## #

**#101** [1] - 2:17

## /

**/s** [1] - 76:23

## 1

**1** [3] - 54:1, 57:19, 60:7
**1,000** [1] - 13:24
**10,000** [1] - 16:11
**100-plus** [1] - 68:13
**10:54** [2] - 1:11, 3:1
**110263** [1] - 2:20
**1108** [1] - 2:20
**12,000** [1] - 14:13
**127** [2] - 7:19, 7:21
**12:15** [1] - 55:24
**12:26** [1] - 55:24
**12:59** [2] - 1:11, 76:15
**13649** [1] - 2:17
**13th** [2] - 23:19, 24:10
**14,000** [1] - 14:12
**1400** [1] - 1:14
**1401** [1] - 2:3
**1410** [1] - 1:17
**15** [1] - 51:24
**1600** [1] - 1:17
**16th** [1] - 8:12
**1710** [1] - 2:7
**1900** [2] - 1:14, 2:3
**19103** [1] - 1:18
**194-6** [1] - 36:23
**1:00** [1] - 30:14
**1:21-cv-00040-CJN** [1] - 1:5
**1:21-cv-00213-CJN** [1] - 1:7
**1:21-cv-00445-CJN** [1] - 1:6
**1:21-cv-02130-CJN** [1] - 1:5
**1:21-cv-02131-CJN** [1] - 1:6

## 2

**2,000** [1] - 14:11
**20** [2] - 1:10, 19:21
**20,000** [1] - 13:24
**20-20** [1] - 5:14
**20001** [1] - 1:24
**20015** [2] - 2:10
**20036** [1] - 2:7
**2006** [2] - 52:1, 52:18

**202** [2] - 2:8, 2:11
**2020** [5] - 15:21, 16:12, 37:17, 52:22, 52:24
**2021** [2] - 15:21, 52:1
**2022** [1] - 52:1
**2024** [2] - 1:10, 76:21
**21-213** [1] - 3:10
**21-2130** [1] - 3:4
**21-2131** [1] - 3:6
**21-40** [1] - 3:2
**21-445** [1] - 3:8
**21-cv-40** [1] - 4:17
**21st** [1] - 76:21
**22192** [1] - 2:17
**24** [5] - 30:11, 31:14, 32:5, 33:10, 33:14
**24-hour** [3] - 30:10, 30:20, 34:17
**250,000** [1] - 15:4
**26** [2] - 45:16, 67:18
**26(b)(1** [1] - 48:19
**267** [1] - 1:18
**27th** [1] - 2:13
**2nd** [1] - 2:7

## 3

**3** [5] - 35:21, 36:8, 36:17, 36:20, 36:21
**3(a** [1] - 22:2
**30(b)(6** [2] - 19:10, 19:14
**30,000** [1] - 20:2
**30,000-something** [1] - 15:2
**310** [1] - 1:15
**32,000** [1] - 15:14
**333** [1] - 1:24
**335-2101** [2] - 2:14
**34** [3] - 45:16, 59:21, 61:8
**34(b)(2)(E)(i** [1] - 62:1
**35** [2] - 13:4, 19:2
**362-5903** [1] - 2:11
**365-9900** [1] - 2:18
**3s** [1] - 36:3, 37:2

## 4

**4** [1] - 49:12
**40,000** [1] - 13:12
**400** [1] - 2:10
**470-2695** [1] - 2:8
**479-6719** [1] - 1:18

## 5

**50** [1] - 57:20

**51** [1] - 57:19
**5335** [1] - 2:10
**55,000** [1] - 13:2

## 6

**6** [4] - 22:1, 22:21, 29:21, 36:23

## 7

**7** [5] - 29:24, 29:25, 34:15, 35:1, 35:3
**700** [1] - 48:14
**700-plus** [1] - 46:18
**703** [1] - 2:18
**713** [2] - 2:4, 2:21
**714** [1] - 2:14
**752-4319** [1] - 2:4
**77010** [1] - 2:4
**78701** [1] - 2:21
**789-3100** [1] - 1:15
**7s** [1] - 34:17, 34:22

## 8

**8(a** [1] - 59:19
**8(a)** [1] - 59:19

## 9

**90067** [1] - 1:14
**90831** [1] - 2:14
**966-6789** [1] - 2:21

## A

**a.m** [2] - 1:11, 3:1
**abeyance** [1] - 24:6
**ability** [1] - 17:4
**able** [3] - 25:1, 35:12, 70:10
**abnormally** [1] - 13:4
**above-entitled** [1] - 76:19
**absolutely** [2] - 16:19, 70:24
**absolving** [1] - 42:24
**accept** [3] - 33:9, 41:11, 69:24
**acceptable** [1] - 32:18
**access** [2] - 51:20, 53:9
**accordance** [1] - 63:21
**account** [2] - 27:6, 28:1
**accurate** [1] - 76:18
**across-the-board** [1]

- 67:24
**act** [1] - 72:2
**activities** [1] - 67:25
**activity** [1] - 65:14
**addition** [2] - 18:10, 18:23
**additional** [6] - 18:8, 37:3, 43:9, 52:12, 53:2, 72:5
**address** [12] - 7:7, 7:15, 7:18, 8:7, 13:17, 47:7, 48:21, 49:20, 57:3, 71:9, 71:20, 74:11
**addressed** [2] - 39:24, 74:10
**addressing** [4] - 6:18, 8:21, 39:14, 39:21
**adjusted** [1] - 73:17
**adjusting** [2] - 28:14, 73:15
**adjustments** [5] - 27:25, 28:22, 29:3, 29:4, 73:11
**administrative** [1] - 71:18
**admit** [1] - 68:8
**adopt** [9] - 22:21, 29:20, 29:21, 33:10, 42:16, 69:9, 69:21, 69:24, 74:5
**adopted** [1] - 23:3
**adopting** [1] - 56:9
**adoption** [1] - 34:15
**advisement** [1] - 14:10
**affiliated** [2] - 39:6, 39:8
**affirmatively** [1] - 54:5
**afterwards** [1] - 55:8
**ago** [4] - 8:25, 14:3, 17:18, 36:4
**agree** [13] - 11:22, 20:14, 25:19, 27:2, 29:7, 44:20, 50:13, 55:13, 60:18, 61:13, 61:18, 65:21, 76:9
**agreed** [18] - 10:20, 11:21, 11:24, 11:25, 12:1, 12:7, 18:25, 19:2, 19:25, 23:19, 28:18, 36:4, 47:14, 50:19, 60:7, 60:9, 70:17, 71:1
**agreeing** [2] - 24:21, 41:21
**agreement** [27] - 23:8, 24:5, 24:7, 24:9,

25:20, 25:23, 25:24, 26:7, 26:15, 26:16, 26:17, 27:15, 27:20, 29:5, 37:1, 47:17, 53:24, 53:25, 58:19, 59:5, 62:21, 66:22, 74:2, 74:5
**agrees** [1] - 63:19
**ahead** [6] - 38:4, 55:7, 66:1, 66:2, 66:3, 66:20
**al** [10] - 1:3, 1:6, 3:3, 3:5, 3:7, 3:8, 3:9, 3:11
**alert** [1] - 27:24
**allegations** [2] - 37:19, 42:11
**allegedly** [1] - 38:23
**allocate** [1] - 76:11
**allow** [3] - 25:10, 25:16, 25:20
**almost** [2] - 11:25, 19:3
**amazing** [1] - 35:14
**amenable** [3] - 10:1, 27:8, 47:2
**Amendment** [1] - 23:14
**amount** [2] - 13:5, 51:16
**AND** [1] - 1:9
**Angeles** [1] - 1:14
**answer** [6] - 10:25, 38:15, 40:4, 41:19, 48:24, 71:18
**anyway** [1] - 30:21
**App** [2] - 64:4, 64:22
**appeal** [1] - 75:9
**appearance** [2] - 7:12, 38:19
**applications** [3] - 64:3, 64:4, 65:20
**applied** [1] - 56:7
**appreciate** [12] - 6:1, 8:15, 24:1, 24:24, 26:7, 34:25, 35:5, 42:2, 47:3, 50:5, 70:12, 75:12
**appreciative** [1] - 23:15
**approach** [1] - 10:22
**appropriate** [2] - 37:25, 76:2
**appropriately** [2] - 39:22, 40:17
**apps** [6] - 66:22, 66:24, 66:25, 67:8, 67:9, 69:23
**arbitrary** [1] - 65:21
**area** [1] - 75:22
**areas** [2] - 6:4

**argue** [2] - 15:18, 20:8
**argument** [11] - 13:18, 13:19, 20:11, 22:5, 22:17, 33:5, 47:7, 49:15, 56:9, 66:5, 74:12
**arguments** [5] - 13:22, 16:1, 16:2, 20:13, 76:13
**arise** [1] - 72:25
**Arizona** [1] - 23:5
**art** [2] - 44:2, 56:25
**artificial** [4] - 67:12, 67:19, 69:19
**artificially** [1] - 66:14
**ASAP** [1] - 28:21
**ascertain** [2] - 14:4, 17:4
**aside** [2] - 40:25, 53:1
**aspects** [1] - 34:21
**assist** [1] - 46:9
**assistant** [1] - 38:6
**associated** [1] - 36:11
**associates** [1] - 50:21
**assume** [2] - 52:8, 62:20
**assuming** [1] - 21:23
**attached** [2] - 60:7, 61:18
**attention** [2] - 62:8, 75:22
**attorney** [14] - 6:17, 9:24, 10:2, 40:14, 42:20, 44:18, 51:17, 56:5, 63:17, 64:25, 71:12, 71:21, 74:22, 75:1
**attorney's** [2] - 51:12, 58:21
**attorney-client** [1] - 63:17
**attorneys** [6] - 37:15, 39:9, 40:22, 42:14, 43:2, 50:21
**audit** [1] - 65:14
**August** [4] - 1:10, 7:19, 8:12, 76:21
**Austin** [1] - 2:21
**authority** [1] - 50:15
**Avenue** [4] - 1:14, 1:24, 2:7, 2:10
**avoid** [2] - 14:18, 63:17

**B**

**Babcock** [2] - 4:6, 4:9
**background** [2] - 47:11, 47:19
**backstory** [3] - 57:5, 57:8, 57:16
**balance** [1] - 23:24
**ball** [1] - 15:9
**bamboozled** [1] - 13:22
**based** [3] - 12:15, 38:20, 64:1
**basic** [5] - 15:23, 16:3, 20:7, 55:3
**basis** [4] - 18:12, 39:3, 39:5, 64:13
**Bates** [7] - 17:20, 18:3, 18:4, 18:6, 59:22, 61:2, 61:16
**Bates-numbered** [1] - 18:4
**Beach** [1] - 2:14
**became** [1] - 50:12
**become** [1] - 74:10
**becomes** [2] - 75:22, 76:9
**BEFORE** [1] - 1:10
**beg** [1] - 65:15
**beginning** [2] - 58:2, 63:10
**behalf** [17] - 3:16, 3:22, 4:2, 4:17, 4:21, 5:3, 6:16, 10:8, 11:4, 11:8, 17:7, 23:5, 25:21, 31:1, 44:7, 63:7, 66:9
**Behar** [1] - 2:12
**behavior** [1] - 67:6
**behind** [2] - 42:21, 42:22
**belabor** [1] - 17:10
**belief** [1] - 38:20
**believes** [2] - 32:11, 57:10
**belt** [1] - 7:9
**benefit** [1] - 5:15
**best** [6] - 11:22, 15:18, 27:22, 37:15, 42:14, 67:6
**better** [2] - 27:1, 31:17
**between** [10] - 6:5, 8:13, 25:24, 29:11, 30:9, 31:20, 35:3, 56:2, 72:13, 74:2
**beyond** [4] - 26:18, 55:21, 66:7, 70:5
**big** [4] - 14:21, 65:3,

65:17, 65:24
**bigger** [1] - 39:23
**billion** [2] - 22:7
**bit** [9] - 15:9, 17:16, 21:16, 40:7, 46:6, 47:11, 50:4, 57:6, 65:18
**bite** [1] - 31:4
**BLAESCHE** [9] - 2:3, 11:3, 17:9, 18:6, 19:12, 32:20, 33:2, 33:7, 66:13
**Blaesche** [7] - 4:4, 11:3, 17:8, 19:11, 32:20, 32:24, 66:12
**blanket** [2] - 32:4, 33:14
**bless** [2] - 25:24, 26:11, 26:24
**blessed** [3] - 55:20, 58:20
**blessing** [2] - 25:5, 27:11, 28:20
**board** [2] - 32:4, 67:24
**BOBB** [1] - 2:12
**Bobb** [12] - 4:21, 23:5, 23:21, 24:5, 25:9, 26:15, 28:1, 28:15, 28:18, 29:1, 29:6, 74:3
**Bobb's** [1] - 71:7
**book** [1] - 53:9
**bothering** [1] - 63:17
**Brandon** [4] - 36:14, 37:9, 37:14, 39:9
**break** [5] - 50:6, 50:8, 54:19, 55:8
**bridge** [1] - 58:3
**brief** [5] - 9:22, 16:2, 23:3, 32:9, 54:23
**briefed** [1] - 17:10
**briefly** [6] - 7:18, 24:17, 53:21, 66:8, 72:15
**bring** [2] - 14:2, 33:13
**broad** [3] - 52:15, 53:3, 53:13
**broadcast** [1] - 16:23
**broadcasts** [1] - 16:22
**broken** [2] - 13:14, 15:17
**BROOK** [40] - 1:13, 3:15, 3:20, 9:20, 10:6, 24:14, 24:16, 24:24, 26:3, 27:2, 29:10, 31:2, 32:8, 34:18, 35:7, 35:12, 35:23,

36:1, 36:19, 36:25, 38:3, 38:5, 38:15, 38:25, 41:2, 41:19, 43:13, 60:1, 61:10, 62:4, 62:16, 63:7, 66:23, 68:7, 70:7, 70:18, 73:22, 74:16, 75:4, 75:12
**Brook** [3] - 3:16, 9:21, 63:7
**brook** [21] - 3:19, 24:16, 24:23, 27:20, 29:7, 30:25, 31:2, 31:18, 33:1, 33:3, 33:11, 34:16, 35:5, 35:24, 36:17, 40:21, 41:13, 42:9, 61:9, 71:7, 73:14
**brought** [4] - 23:6, 34:8, 69:6, 75:21
**burden** [2] - 13:18, 44:21
**burdensome** [1] - 41:9
**business** [3] - 52:19, 52:24, 76:11
**Butzer** [1] - 4:5
**BUTZER** [1] - 2:2
**BY** [8] - 1:13, 1:17, 2:2, 2:6, 2:9, 2:13, 2:16, 2:20
**Byrne** [15] - 3:7, 5:11, 5:12, 7:6, 7:12, 7:15, 8:22, 9:4, 27:7, 28:3, 28:6, 28:14, 71:14, 71:15, 73:15
**Byrne's** [2] - 7:3, 7:15

**C**

**California** [2] - 1:14, 2:14
**Camara** [1] - 2:19
**campaign** [1] - 72:8
**candid** [1] - 61:5
**capable** [1] - 13:23
**care** [2] - 49:2, 70:14
**CARL** [1] - 2:2
**Carl** [1] - 4:4
**CASARINO** [17] - 1:17, 3:24, 11:7, 39:4, 42:13, 46:23, 47:9, 49:22, 49:25, 50:3, 53:20, 53:22, 54:11, 57:3, 57:18, 60:18, 61:22
**Casarino** [15] - 3:23, 3:25, 11:7, 39:1, 39:5, 42:9, 46:23, 53:22,

54:17, 56:15, 57:7, 61:7, 61:10, 61:13
**case** [43] - 7:12, 14:21, 15:5, 15:13, 19:2, 19:3, 20:23, 22:8, 23:23, 25:16, 26:9, 27:6, 31:11, 31:12, 32:6, 33:15, 33:16, 42:12, 42:19, 42:25, 43:8, 44:4, 48:6, 49:6, 50:4, 50:18, 50:23, 51:3, 52:4, 55:14, 55:20, 56:16, 56:17, 56:21, 58:20, 61:20, 62:1, 63:13, 64:8, 71:13, 75:16
**CASE** [1] - 1:5
**Case** [5] - 3:2, 3:4, 3:6, 3:8, 3:10
**cases** [18] - 7:12, 11:20, 13:11, 14:4, 18:15, 22:15, 23:25, 38:14, 38:19, 38:22, 64:2, 65:9, 70:19, 73:13, 73:19, 73:21, 76:5
**casual** [1] - 47:5
**categories** [3] - 8:16, 22:13, 22:23
**categorize** [1] - 59:22
**category** [8] - 8:19, 40:22, 71:5, 74:14, 75:25
**causing** [1] - 49:19
**Center** [1] - 2:13
**certain** [5] - 12:10, 38:16, 44:23, 64:3, 64:5
**certainly** [8] - 14:8, 17:1, 23:22, 24:1, 28:15, 68:23, 69:18, 69:24
**CERTIFICATE** [1] - 76:16
**Certified** [1] - 1:23
**certify** [1] - 76:18
**cetera** [2] - 37:9, 65:2
**challenge** [1] - 37:18
**chambers** [7] - 71:11, 71:13, 71:17, 71:21, 71:24, 72:14, 76:3
**chance** [3] - 27:10, 66:8, 73:15
**CHANEL** [1] - 2:1
**Chanel** [2] - 4:3, 65:12

**change** [1] - 9:8
**CHARLES** [1] - 2:1
**Charles** [1] - 4:2
**chart** [1] - 62:19
**chase** [1] - 41:10
**chat** [1] - 71:21
**cheated** [1] - 57:6
**Chief** [1] - 5:13
**chimed** [1] - 11:10
**chiming** [2] - 6:22, 10:4
**Chris** [1] - 5:5
**CHRISTINA** [2] - 1:13, 2:12
**Christina** [3] - 3:18, 4:21, 23:5
**CHRISTOPHER** [1] - 2:16
**circulated** [1] - 39:16
**circumstances** [1] - 34:23
**civil** [1] - 23:25
**Civil** [7] - 3:2, 3:4, 3:6, 3:8, 3:10, 45:11, 67:1
**claims** [2] - 48:21, 60:23
**clarification** [2] - 9:14, 9:22
**clarify** [2] - 25:2, 57:5
**clarity** [2] - 25:5, 27:3
**clear** [9] - 12:7, 25:22, 33:18, 34:7, 34:14, 47:16, 64:14, 73:18, 75:7
**CLERK** [1] - 3:2
**client** [4] - 22:17, 25:21, 42:22, 63:17
**CMK** [1] - 1:16
**Coburn** [1] - 2:6
**collaborative** [1] - 46:25
**collaboratively** [1] - 42:15
**colleague** [1] - 10:7
**colleagues** [2] - 3:17, 5:9
**collect** [2] - 64:13, 64:16
**collected** [1] - 11:23
**collection** [2] - 11:23, 65:6
**collectively** [1] - 36:25
**Columbia** [1] - 76:18
**COLUMBIA** [1] - 1:1
**coming** [2] - 14:18, 21:10

**commend** [2] - 27:20, 75:15
**comment** [2] - 61:7, 66:19
**comments** [2] - 31:4, 32:7
**common** [1] - 59:6
**communicate** [2] - 18:19, 72:24
**communicating** [1] - 71:10
**communication** [12] - 29:23, 30:6, 30:12, 31:12, 31:14, 31:21, 31:24, 31:25, 32:5, 34:1, 53:14, 72:1
**communications** [9] - 18:20, 31:16, 45:23, 52:20, 52:21, 64:9, 64:10, 64:21, 71:16
**company** [1] - 18:19
**compare** [1] - 46:1
**compel** [2] - 41:23, 59:13
**competing** [3] - 44:5, 64:24, 66:4
**complaint** [1] - 68:14
**complete** [1] - 47:23
**completely** [4] - 44:23, 53:9, 56:11, 56:12
**complications** [1] - 23:23
**compromise** [1] - 33:4
**concern** [1] - 64:7
**concerning** [1] - 53:15
**concerns** [2] - 61:11, 61:12
**concluded** [1] - 76:15
**conduct** [3] - 40:3, 45:15, 46:14
**conducted** [1] - 66:1
**conducting** [1] - 72:4
**confer** [10] - 9:6, 14:20, 20:19, 21:21, 24:25, 33:13, 42:8, 62:10, 72:4, 72:7
**Conference** [1] - 76:19
**CONFERENCE** [1] - 1:9
**conference** [1] - 7:22
**conferences** [1] - 54:4
**conferred** [1] - 18:8
**conferring** [1] -

28:23
**confers** [1] - 26:8
**confirm** [1] - 8:8, 34:21, 58:6
**confirmed** [2] - 46:10, 54:4
**conflict** [1] - 56:12
**conformance** [1] - 76:19
**confusing** [1] - 47:6
**confusion** [1] - 49:19
**consider** [2] - 11:11, 31:23
**consideration** [1] - 27:17
**consistent** [3] - 73:19, 73:20, 74:6
**conspiracy** [1] - 53:8
**Constitution** [1] - 1:24
**contact** [1] - 71:19
**contacting** [3] - 71:12, 71:21, 71:23
**contain** [3] - 16:5, 16:9, 51:8
**contest** [1] - 66:17
**context** [4] - 31:20, 31:22, 32:13, 63:9
**continue** [3] - 25:16, 36:24, 75:20
**continues** [1] - 26:9
**contractors** [1] - 42:14
**contracts** [1] - 51:22
**contribute** [1] - 9:5
**control** [7] - 43:1, 43:5, 67:18, 69:2, 69:5, 70:1, 70:4
**controlling** [1] - 6:6
**controls** [2] - 39:18, 62:1
**conversation** [1] - 25:12
**conversations** [1] - 14:17
**convinced** [1] - 15:15
**cooperating** [1] - 41:21
**cooperatively** [2] - 35:2, 41:11
**coordinate** [1] - 6:23
**coordinated** [1] - 25:18
**copied** [2] - 71:13, 71:15
**copy** [1] - 7:4
**copying** [1] - 7:10
**core** [1] - 34:19
**correct** [8] - 9:19,

9:21, 10:14, 16:7, 17:16, 36:18, 38:25, 66:22
**correctly** [1] - 30:25
**correspondence** [1] - 18:9
**counsel** [25] - 3:14, 4:9, 4:12, 4:14, 5:19, 7:3, 7:10, 12:12, 23:7, 23:14, 27:8, 34:6, 34:21, 36:12, 38:14, 39:14, 39:20, 47:12, 49:23, 50:1, 64:13, 67:21, 69:22, 73:16
**Counsel** [2] - 4:25, 5:7
**count** [6] - 11:5, 12:4, 18:11, 20:7, 21:18, 49:11
**counterproposal** [3] - 10:15, 32:9, 32:16
**couple** [1] - 17:9
**course** [11] - 5:24, 21:8, 21:18, 32:3, 35:19, 40:14, 47:3, 58:16, 60:8, 60:11, 75:9
**Court** [49] - 1:23, 3:1, 5:15, 5:22, 6:18, 7:9, 7:13, 7:15, 7:19, 8:6, 9:3, 9:7, 9:10, 9:11, 10:1, 14:19, 21:10, 25:5, 25:8, 25:15, 25:22, 25:24, 27:8, 27:10, 31:5, 33:13, 37:12, 37:13, 52:5, 54:14, 59:5, 62:6, 62:10, 63:18, 65:25, 66:15, 71:3, 72:14, 72:22, 74:16, 74:19, 75:1, 75:23, 76:10, 76:11, 76:17, 76:17
**court** [2] - 41:24, 69:14
**COURT** [94] - 1:1, 3:19, 3:25, 4:8, 4:13, 4:18, 4:24, 5:4, 5:7, 9:17, 10:3, 10:9, 10:11, 10:24, 11:6, 11:10, 12:11, 16:4, 17:6, 18:3, 19:7, 19:9, 19:13, 19:18, 19:21, 20:9, 23:22, 24:13, 24:15, 24:18, 24:22, 26:1, 26:5, 27:18, 29:13, 31:6, 32:18, 32:24, 33:3, 33:9, 34:25, 35:8, 35:14, 35:24, 36:16, 36:22, 38:2, 38:4, 38:13,

38:18, 39:1, 40:20, 41:13, 42:9, 42:16, 43:15, 43:20, 45:4, 45:24, 46:3, 46:21, 47:3, 49:14, 49:24, 50:2, 50:6, 51:5, 53:16, 53:21, 54:10, 54:18, 55:12, 55:25, 57:7, 58:10, 60:17, 61:6, 61:21, 61:25, 62:15, 62:20, 63:2, 66:5, 66:18, 67:1, 68:22, 70:12, 70:22, 73:23, 73:25, 75:3, 75:6, 75:13, 76:24
**Court's** [9] - 7:5, 23:20, 27:11, 27:17, 29:2, 34:22, 62:8, 70:9, 72:21
**courtroom** [2] - 5:16, 71:19
**cover** [1] - 68:6
**covering** [1] - 13:3
**create** [3] - 21:9, 32:14, 69:15
**crim** [1] - 68:4
**criminal** [5] - 23:9, 23:13, 23:25, 25:11, 68:3
**critical** [2] - 51:12, 52:25
**CRR** [1] - 76:23
**cumbersome** [1] - 41:9
**current** [1] - 43:5
**custodial** [14] - 11:20, 11:23, 40:5, 40:24, 41:1, 63:20, 63:21, 64:18, 65:4, 66:1, 68:1, 68:2, 70:8
**custodian** [12] - 36:13, 37:5, 38:7, 40:13, 42:19, 42:25, 43:10, 43:15, 62:19, 63:4, 64:14, 68:13
**custodian's** [3] - 67:17, 68:3, 69:4
**custodians** [34] - 11:24, 12:1, 13:4, 19:2, 19:3, 20:25, 35:9, 35:22, 36:5, 36:8, 36:10, 37:2, 38:10, 39:2, 39:22, 40:8, 42:18, 43:11, 44:13, 45:13, 46:5, 63:16, 64:6, 65:20, 67:14, 67:21, 67:25, 68:17, 69:3, 69:17, 69:18, 70:2, 70:3
**custody** [6] - 43:1,

43:5, 67:17, 69:5, 70:1, 70:4
**cut** [2] - 53:16, 57:8
**cutoff** [16] - 22:5, 22:11, 22:12, 22:14, 22:18, 22:22, 23:2, 24:3, 24:6, 26:12, 26:19, 27:25, 28:10, 29:16, 29:19
**Cyber** [1] - 65:13
**Cynkar** [1] - 2:16

# D

**Dale** [8] - 37:10, 38:1, 38:5, 39:10, 39:17, 40:21, 42:18
**data** [1] - 16:3
**databases** [3] - 50:20, 51:21, 53:10
**date** [23] - 9:25, 12:15, 13:3, 18:25, 21:25, 22:5, 22:11, 22:12, 22:18, 22:24, 23:2, 24:4, 24:7, 24:11, 25:7, 25:9, 26:12, 26:19, 29:19, 29:20, 52:18
**Dated** [1] - 76:21
**dates** [9] - 22:6, 22:14, 22:22, 29:16, 73:11, 73:15, 73:16, 73:17, 73:19
**Dave** [1] - 4:12
**DAVID** [1] - 2:9
**David** [1] - 4:16
**DAVIDA** [1] - 1:13
**Davida** [3] - 3:15, 9:20, 63:7
**daylight** [1] - 56:2
**days** [1] - 76:5
**DC** [3] - 1:24, 2:7, 2:10
**deadline** [3] - 7:23, 25:6, 28:4
**deadlines** [4] - 25:25, 27:6, 28:14, 73:13
**deal** [2] - 55:4, 68:24
**dealing** [1] - 31:25
**dealt** [1] - 71:6
**December** [4] - 16:12, 23:10, 23:19, 24:10
**deciding** [1] - 13:23
**decision** [1] - 65:12
**decisions** [1] - 6:13
**deem** [1] - 47:22
**defamatory** [1] - 38:23

**defendant** [13] - 4:21, 10:24, 11:1, 22:10, 23:1, 28:3, 29:15, 30:15, 34:9, 51:6, 67:20, 68:12
**Defendant** [2] - 5:3, 23:21
**defendants** [53] - 10:14, 10:17, 10:20, 10:22, 11:4, 11:12, 12:5, 12:22, 18:15, 22:4, 22:23, 28:5, 29:19, 30:10, 31:7, 31:16, 31:22, 32:19, 33:17, 35:1, 43:21, 44:1, 44:13, 46:1, 47:1, 49:3, 52:2, 52:13, 53:5, 57:25, 59:20, 60:4, 61:14, 62:21, 63:14, 64:3, 65:5, 65:10, 65:11, 66:3, 66:6, 66:9, 66:14, 66:19, 66:24, 67:5, 68:24, 69:2, 69:7, 69:10, 70:25
**Defendants** [1] - 1:7
**defendants'** [17] - 22:2, 22:18, 29:25, 30:18, 34:15, 44:11, 46:22, 50:25, 54:2, 56:1, 56:12, 56:22, 57:11, 59:2, 59:19, 63:20
**Defendants'** [1] - 56:3
**Defending** [2] - 4:12, 4:17
**DEFENDING** [1] - 2:5
**defense** [2] - 46:24, 64:12
**defenses** [2] - 48:21, 60:23
**defines** [1] - 65:12
**defining** [1] - 65:7
**Delaware** [1] - 56:18
**denying** [1] - 8:4
**depose** [1] - 18:18
**deposed** [3] - 18:17, 39:20, 66:16
**deposition** [11] - 19:14, 23:18, 24:10, 24:12, 25:10, 26:18, 26:21, 28:2, 39:12, 41:18, 72:20
**depositions** [6] - 41:1, 41:12, 41:20, 60:12, 70:19, 70:23
**deputy** [1] - 71:20
**DEPUTY** [1] - 3:2
**description** [1] -

43:22
**design** [2] - 52:17, 52:18
**despite** [1] - 8:22
**determinations** [1] - 64:12
**developing** [1] - 73:6
**development** [2] - 52:17, 52:18
**devices** [1] - 65:19
**DIECKMANN** [1] - 1:13
**Dieckmann** [1] - 3:18
**differ** [1] - 65:15
**difference** [2] - 32:22, 34:16
**differences** [1] - 34:18
**different** [13] - 6:21, 20:5, 22:12, 23:2, 29:19, 32:12, 41:14, 41:23, 44:3, 47:5, 59:15, 63:12
**differently** [1] - 55:21
**difficult** [1] - 41:8
**Digital** [1] - 1:25
**digital** [1] - 76:18
**diligent** [3] - 20:19, 33:13, 72:4
**diligently** [2] - 6:15, 23:10
**Diplomate** [1] - 1:22
**direct** [3] - 31:24, 54:1, 61:2
**directing** [1] - 67:14
**directly** [2] - 33:21, 41:17
**disagree** [3] - 15:25, 31:7, 42:6
**disappoint** [1] - 6:11
**disappointed** [1] - 14:2
**disclosing** [2] - 45:20, 63:16
**DISCOVERY** [1] - 1:9
**discovery** [52] - 5:21, 5:24, 6:5, 6:15, 8:13, 8:18, 8:24, 9:3, 9:9, 9:13, 9:18, 10:2, 10:13, 10:18, 14:18, 18:12, 20:17, 21:21, 21:22, 25:9, 26:12, 26:19, 27:10, 27:13, 27:25, 28:10, 29:15, 35:8, 36:6, 38:12, 38:21, 46:7, 48:11, 49:2, 54:2, 58:23, 59:2, 59:6, 63:11, 70:14, 71:2,

71:11, 71:24, 72:3, 72:11, 72:24, 73:8, 73:13, 74:1, 74:9
**discovery-related** [1] - 74:9
**Discovery/Status** [1] - 3:12
**discrete** [1] - 36:2
**discuss** [2] - 16:18, 67:3
**discussed** [2] - 26:23, 36:6
**discussion** [2] - 33:23, 55:6
**discussions** [1] - 26:8
**disproportional** [2] - 31:11, 33:15
**dispute** [35] - 9:18, 10:2, 10:12, 13:10, 22:10, 22:25, 29:20, 30:2, 30:5, 30:25, 31:4, 31:8, 33:11, 34:17, 35:19, 35:24, 43:21, 44:8, 44:10, 56:8, 59:13, 59:20, 59:25, 60:2, 60:14, 63:6, 64:11, 65:3, 69:6, 71:24, 72:11, 72:17, 72:18, 73:8, 76:7
**disputed** [3] - 6:4, 6:5, 11:11
**disputes** [15] - 8:13, 9:14, 14:18, 18:12, 42:8, 63:18, 71:5, 71:11, 72:3, 72:24, 72:25, 73:1, 74:14, 76:12
**disqualified** [4] - 8:1, 74:23, 74:25, 75:8
**disqualify** [2] - 7:3, 7:20
**disqualifying** [2] - 9:1, 25:14
**disruption** [1] - 25:17
**dissuade** [1] - 20:23
**distilled** [1] - 68:16
**distinction** [1] - 69:25
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 76:17
**divide** [1] - 65:22
**divided** [1] - 9:23
**doc** [2] - 17:21, 33:5
**docket** [5] - 6:7, 7:7, 27:1, 28:19, 74:23
**doctor** [2] - 20:25,

21:4
**document** [26] - 6:6, 19:14, 23:13, 23:24, 27:17, 29:16, 30:16, 31:13, 39:12, 44:14, 47:23, 47:25, 51:7, 51:9, 52:16, 53:14, 54:11, 54:13, 56:24, 57:9, 57:15, 57:19, 57:24, 59:12, 60:22, 61:1
**documents** [128] - 11:23, 12:4, 12:8, 12:9, 12:14, 12:18, 12:21, 12:25, 13:2, 13:6, 13:12, 14:6, 14:12, 14:13, 14:22, 15:2, 15:4, 15:6, 15:14, 15:19, 16:6, 16:11, 16:15, 16:19, 17:17, 17:23, 17:25, 18:4, 18:22, 18:23, 19:4, 19:5, 19:25, 20:2, 20:6, 21:6, 22:13, 22:20, 22:23, 23:12, 23:18, 24:7, 24:10, 24:11, 25:8, 25:10, 26:20, 33:12, 34:10, 35:20, 37:6, 37:7, 37:8, 38:11, 39:15, 39:16, 39:19, 40:1, 40:25, 41:12, 42:1, 42:3, 42:21, 42:22, 43:2, 43:4, 43:25, 44:4, 44:16, 44:21, 44:23, 44:24, 45:7, 45:14, 45:16, 45:17, 46:16, 46:17, 48:2, 48:17, 48:23, 48:25, 49:4, 49:6, 49:12, 50:11, 50:14, 50:22, 51:13, 51:18, 51:19, 51:20, 51:21, 51:24, 52:1, 52:12, 52:20, 52:21, 53:3, 53:10, 53:12, 54:5, 54:8, 54:22, 55:4, 55:10, 56:5, 56:16, 57:21, 57:23, 59:3, 59:14, 59:18, 59:22, 59:23, 60:8, 61:1, 61:20, 61:23, 61:24, 67:15, 68:14, 68:17, 69:4, 70:8, 75:25
**dollar** [1] - 22:7
**Dominion** [78] - 3:2, 3:4, 3:6, 3:8, 3:10, 3:16, 10:8, 10:16, 12:13, 13:7, 15:22, 16:7, 16:25, 17:18, 17:25, 18:2, 18:4,

18:7, 18:13, 19:1, 21:5, 22:3, 22:8, 24:6, 26:15, 26:20, 28:4, 30:4, 30:5, 30:7, 30:8, 30:15, 30:22, 31:1, 31:22, 32:11, 34:9, 35:25, 36:10, 37:4, 37:19, 38:18, 38:24, 39:13, 39:16, 40:8, 40:10, 40:16, 43:8, 44:5, 44:6, 44:7, 44:10, 44:12, 44:14, 47:14, 47:20, 47:25, 52:22, 54:3, 54:4, 55:15, 56:16, 56:17, 56:18, 57:6, 57:9, 59:21, 63:8, 65:8, 68:11, 68:23, 68:25, 69:2, 74:3, 74:24

**DOMINION** [1] - 1:3
**dominion** [2] - 21:1, 30:17, 39:25, 54:7, 63:6, 65:25, 66:23
**dominion's** [2] - 59:18, 63:25
**Dominion's** [32] - 7:2, 7:20, 10:13, 10:18, 20:16, 22:1, 22:14, 22:21, 29:21, 29:24, 30:16, 31:9, 32:9, 35:18, 37:15, 37:20, 38:22, 40:4, 42:16, 43:13, 47:12, 52:17, 53:7, 56:3, 56:9, 56:11, 60:15, 63:11, 63:19, 64:7, 69:1, 69:24
**Don** [1] - 16:15
**done** [20] - 5:25, 6:15, 17:4, 19:11, 19:12, 24:19, 24:20, 26:13, 29:12, 35:6, 51:5, 51:23, 53:11, 54:25, 55:1, 60:4, 66:17, 67:4, 68:25, 70:21
**doubt** [1] - 72:8
**down** [6] - 11:13, 25:14, 34:3, 35:12, 41:10, 63:18
**Dr** [1] - 21:1
**drafted** [1] - 44:1, 46:21
**dramatic** [2] - 61:6, 61:7
**drop** [1] - 64:17
**drop-off** [1] - 64:17
**dropped** [1] - 62:24
**dueling** [4] - 27:16, 27:18, 34:21, 36:6

**dug** [4] - 51:18, 51:20, 51:21, 51:22
**dump** [6] - 47:14, 47:23, 47:24, 48:22, 48:23, 54:13
**dumping** [2] - 47:21, 49:6
**duplicative** [1] - 62:5
**during** [6] - 6:18, 36:13, 38:6, 41:1, 41:18, 47:17
**duties** [1] - 42:24
**duty** [1] - 68:4

# E

**ears** [1] - 70:22
**easiest** [1] - 26:12
**easily** [1] - 13:19
**easy** [1] - 14:9
**ECF** [3] - 7:19, 7:21, 36:23
**Edgar** [1] - 3:18
**EDGAR** [1] - 1:13
**Edwards** [3] - 4:1, 4:8, 17:6
**EDWARDS** [2] - 2:2, 4:1
**effect** [1] - 73:5
**effective** [2] - 8:2, 75:8
**efficiency** [1] - 6:9
**efficient** [1] - 50:9
**effort** [2] - 47:1, 63:11
**efforts** [2] - 24:25
**eight** [1] - 62:22
**Eisenstein** [3] - 4:12, 4:17, 4:19
**EISENSTEIN** [2] - 2:6, 4:11
**either** [6] - 5:8, 18:24, 38:19, 61:14, 72:6, 74:3
**election** [3] - 37:17, 37:18, 52:25
**elections** [1] - 52:23
**email** [9] - 7:15, 12:2, 29:23, 71:20, 72:7, 72:12, 72:13, 72:14, 76:3
**emails** [8] - 11:20, 12:1, 44:12, 51:25, 52:2, 53:11, 54:3, 73:8
**emergency** [1] - 7:2
**Emily** [3] - 37:10, 37:14, 39:9
**employees** [1] - 42:11

**encompass** [1] - 44:3
**encompasses** [1] - 35:3
**encompassing** [2] - 31:14, 32:5
**encourage** [1] - 75:19
**end** [6] - 13:16, 63:19, 70:20, 70:24, 71:3, 74:1
**engage** [1] - 40:4
**engaging** [2] - 12:17, 54:8
**enormous** [1] - 53:9
**ensure** [3] - 6:9, 26:22, 45:16
**enter** [1] - 11:11
**entered** [2] - 6:7, 68:24
**entire** [5] - 10:2, 52:19, 52:24, 55:14, 55:19
**entirely** [4] - 11:25, 12:6, 40:5, 40:12, 43:20, 48:5
**entities** [1] - 52:22
**entitled** [7] - 15:24, 41:5, 48:19, 60:23, 63:23, 69:2, 76:19
**entitlement** [1] - 13:6
**entity** [1] - 43:1
**equipment** [1] - 52:18
**ESI** [24] - 11:20, 11:21, 12:12, 44:11, 45:14, 46:7, 50:12, 53:10, 54:21, 55:4, 55:5, 56:7, 57:15, 58:17, 59:3, 60:7, 60:9, 61:18, 61:22, 61:23, 67:3, 67:8, 69:23
**especially** [1] - 69:8
**et** [12] - 1:3, 1:6, 3:3, 3:4, 3:5, 3:6, 3:8, 3:9, 3:10, 37:8, 65:2
**ethical** [2] - 69:12, 69:13
**events** [1] - 74:11
**evidence** [4] - 13:13, 15:16, 15:18, 37:20
**evidenced** [1] - 37:2
**Ewing** [1] - 2:9
**exact** [1] - 44:13
**exactly** [3] - 35:23, 44:7, 49:24
**example** [7] - 21:1, 30:23, 49:10, 64:2, 65:12, 68:11, 75:25

**encompass** [2] - 12:23, 49:11
**except** [2] - 50:25, 56:22
**exception** [1] - 26:11
**exceptions** [1] - 30:23
**exchange** [1] - 26:18
**exclude** [2] - 17:22, 45:2
**excuse** [3] - 54:18, 61:6
**Exhibit** [8] - 35:21, 36:3, 36:8, 36:17, 36:20, 36:21, 37:2, 60:7
**exhibit** [1] - 35:22, 66:24
**expect** [4] - 6:16, 21:21, 50:18, 54:21
**expected** [1] - 46:6
**expecting** [2] - 26:9, 34:25
**experience** [3] - 50:4, 50:17, 75:23
**experienced** [1] - 49:25
**explain** [8] - 14:15, 18:4, 35:18, 44:4, 46:19, 54:13, 63:5, 70:3
**explaining** [1] - 26:15
**explains** [1] - 18:21
**explanation** [2] - 16:17, 54:25
**extend** [3] - 7:22, 28:4
**extending** [1] - 28:13
**extent** [9] - 27:14, 27:15, 37:23, 38:10, 47:17, 56:2, 56:8, 59:6, 67:14
**extremely** [2] - 17:1, 52:14
**eyeballs** [1] - 40:19
**eyes** [1] - 44:18

# F

**fact** [10] - 8:21, 8:22, 13:24, 31:11, 42:22, 42:23, 43:2, 53:1, 58:8, 58:15
**fair** [2] - 9:4, 16:18
**faith** [1] - 38:20
**fall** [1] - 40:8
**false** [1] - 53:8
**familial** [1] - 30:24
**family** [2] - 16:6,

18:19
**far** [10] - 9:5, 9:7, 9:11, 13:16, 14:7, 20:23, 35:8, 38:21, 39:13, 66:16
**fastest** [1] - 26:13
**fathom** [1] - 16:14
**favorite** [1] - 14:16
**federal** [6] - 1:23, 40:17, 48:18, 52:23, 61:1, 72:5
**Federal** [3] - 45:10, 67:1, 76:17
**FEDERAL** [1] - 76:24
**few** [4] - 5:23, 9:13, 49:13, 71:4
**Fifth** [1] - 23:14
**Figure** [1] - 48:23
**figured** [1] - 26:3
**file** [7] - 7:23, 7:24, 13:21, 26:13, 41:22, 41:23, 71:8
**filed** [10] - 7:21, 8:5, 8:12, 29:6, 37:16, 37:17, 38:14, 71:2, 74:21, 74:25
**files** [2] - 37:24, 53:7
**filing** [3] - 28:24, 38:23, 74:23
**filings** [1] - 12:20
**final** [6] - 6:6, 21:21, 21:22, 70:17, 71:1, 74:1
**financial** [1] - 51:19
**fine** [4] - 10:3, 55:20, 60:13, 70:24
**finish** [1] - 20:12
**firm** [4] - 36:12, 40:14, 42:11, 42:20
**Firm** [3] - 7:10, 7:11, 7:14
**firms** [1] - 42:22
**first** [14] - 5:24, 9:17, 10:7, 16:3, 19:11, 26:6, 32:21, 35:20, 41:3, 50:21, 63:6, 65:10, 66:21, 71:12
**fit** [4] - 40:22, 68:21, 69:18
**five** [16] - 10:12, 10:18, 11:1, 11:5, 11:13, 20:17, 32:10, 32:17, 32:18, 32:25, 33:10, 55:22, 62:18, 73:13, 73:19, 73:21
**flag** [3] - 68:8, 68:9, 74:3
**flexible** [1] - 46:11
**Floor** [2] - 2:7, 2:13
**fold** [1] - 39:6

**folks** [8] - 36:20, 37:12, 39:6, 40:5, 41:3, 41:10, 42:1, 64:25
**follow** [1] - 42:19
**following** [6] - 42:8, 60:6, 60:10, 60:15, 64:18, 72:1
**FOR** [8] - 1:1, 1:12, 1:16, 2:1, 2:5, 2:12, 2:15, 2:19
**Ford** [1] - 2:12
**foregoing** [1] - 76:18
**foremost** [2] - 66:21, 71:12
**format** [1] - 76:19
**former** [1] - 5:13
**forth** [7] - 11:5, 23:16, 31:3, 33:24, 70:6, 73:8
**forthwith** [1] - 8:18
**forward** [2] - 7:14, 33:19
**four** [16] - 22:15, 35:8, 36:7, 36:9, 36:10, 36:14, 36:17, 37:3, 38:8, 43:9, 45:20, 46:2, 56:3, 56:10
**Fox** [16] - 52:4, 52:10, 53:2, 53:24, 55:14, 55:19, 55:20, 56:16, 56:17, 57:4, 57:24, 58:4, 58:7, 58:12, 60:25
**fox** [1] - 56:17
**frames** [1] - 19:24
**frankly** [7] - 20:15, 21:12, 22:7, 22:9, 28:24, 31:16, 51:6
**free** [1] - 20:8
**Friday** [2] - 7:24, 71:3
**friends** [1] - 36:1
**front** [1] - 35:17
**frustrate** [1] - 75:23
**frustrated** [1] - 41:15
**full** [3] - 9:4, 27:15
**fully** [2] - 13:16, 13:23
**fulsome** [1] - 42:7
**fulsomeness** [2] - 18:13, 27:3
**fund** [1] - 65:13
**fundamental** [1] - 32:22
**fundamentally** [1] - 32:11
**future** [1] - 72:24

**G**

**game** [1] - 34:11
**gap** [1] - 58:3
**gathered** [1] - 37:19
**general** [4] - 31:3, 59:7, 59:8, 59:14
**generally** [6] - 20:14, 21:8, 30:25, 63:14, 72:17, 73:12
**genesis** [1] - 46:25
**gist** [1] - 24:21
**GIULIANI** [1] - 2:19
**Giuliani** [6] - 3:11, 5:3, 13:7, 16:21, 16:24, 21:5
**given** [8] - 14:7, 14:8, 14:22, 27:7, 51:20, 62:9, 64:17, 70:18
**goal** [2] - 6:7, 27:4
**Godfrey** [3] - 1:12, 3:16, 9:21
**grab** [2] - 34:4, 35:20
**grace** [1] - 23:20
**granting** [2] - 7:2, 7:20
**great** [2] - 37:12, 62:23
**Greenbaum** [1] - 2:6
**group** [1] - 46:25
**guess** [2] - 44:6, 63:9
**guessing** [1] - 31:19
**guidance** [11] - 34:6, 34:23, 58:14, 62:9, 66:10, 70:9, 72:16, 72:21, 74:17, 74:24, 75:2
**guide** [1] - 68:10
**guys** [1] - 26:1

**H**

**habits** [1] - 70:5
**Haggerty** [11] - 2:12, 4:21, 23:4, 23:22, 24:15, 24:19, 25:3, 25:19, 27:20, 29:7, 71:7
**HAGGERTY** [7] - 2:13, 4:20, 5:1, 23:4, 24:9, 24:20, 29:8
**Haggerty's** [2] - 24:24, 24:25
**half** [1] - 13:3
**Haller** [8] - 36:14, 37:9, 37:14, 38:13, 39:9, 40:23, 42:10, 42:17

**hamstrung** [1] - 13:16
**handed** [1] - 37:25
**handful** [1] - 37:3
**handle** [4] - 5:23, 8:6, 10:2, 62:11
**handled** [1] - 8:17
**handling** [3] - 5:24, 9:24, 71:5
**haphazard** [1] - 58:12
**happy** [8] - 21:17, 27:9, 34:20, 35:15, 37:11, 46:19, 47:1, 61:11
**hard** [3] - 16:14, 36:4, 75:14
**HARDWOOD** [1] - 2:13
**Hardwood** [1] - 4:22
**harkens** [1] - 60:19
**head** [3] - 34:3, 34:20, 38:16
**hear** [11] - 6:3, 21:17, 22:3, 22:19, 23:3, 35:15, 35:19, 41:8, 55:12, 67:6, 69:6
**heard** [11] - 20:22, 21:14, 22:16, 23:1, 29:18, 43:7, 55:16, 64:8, 66:11, 66:19
**HEARING** [1] - 1:9
**hearing** [20] - 5:17, 6:10, 6:18, 7:5, 20:13, 20:20, 32:21, 39:24, 47:18, 69:8, 71:6, 73:1, 73:2, 73:4, 73:5, 73:11, 74:8, 74:13, 74:20, 76:6
**Hearing** [1] - 3:12
**hearings** [1] - 6:21
**held** [1] - 14:5
**help** [3] - 50:12, 50:13, 65:13
**helpful** [1] - 20:24
**hereby** [1] - 76:18
**Herring** [8] - 3:5, 4:2, 4:3, 4:23, 11:4, 11:6, 66:14
**herring** [1] - 48:12
**HERRING** [1] - 2:1
**Herring's** [1] - 14:16
**herself** [3] - 37:5, 40:13, 41:6
**hides** [1] - 15:9
**hit** [32] - 9:19, 9:25, 10:6, 10:12, 10:20, 10:21, 11:5, 12:4, 12:10, 13:6, 13:12, 13:17, 13:18, 13:20,

15:6, 16:4, 16:13, 16:20, 18:11, 19:25, 20:7, 20:10, 20:15, 20:21, 20:22, 21:7, 21:12, 21:14, 21:18, 34:20, 47:22, 48:22
**hits** [1] - 13:24, 17:13, 47:15, 47:21, 50:20, 54:11
**hold** [2] - 19:9, 24:6
**honestly** [4] - 41:7, 60:1, 67:6, 74:21
**Honor** [90] - 3:15, 3:21, 3:24, 4:1, 4:11, 4:16, 4:20, 5:2, 5:5, 9:20, 9:23, 10:19, 11:3, 11:7, 11:19, 12:20, 13:15, 13:22, 13:23, 14:3, 14:9, 14:24, 14:25, 15:23, 16:1, 16:8, 16:14, 19:8, 19:12, 19:17, 19:19, 19:22, 23:4, 24:14, 24:16, 24:20, 25:12, 27:2, 29:9, 29:10, 31:2, 32:8, 32:20, 35:13, 35:23, 38:16, 38:25, 39:4, 41:2, 41:19, 43:14, 44:9, 44:20, 45:19, 46:17, 46:20, 46:23, 47:2, 47:9, 47:20, 48:14, 49:22, 51:4, 51:15, 51:25, 52:8, 52:13, 53:20, 54:1, 57:3, 57:18, 60:1, 60:19, 62:4, 62:14, 62:17, 63:7, 64:7, 64:24, 65:3, 65:17, 66:23, 68:7, 68:8, 70:7, 70:18, 73:3, 73:22, 74:16, 75:12
**Honor's** [1] - 50:5
**HONORABLE** [1] - 1:10
**hope** [1] - 27:18
**hopefully** [4] - 6:4, 6:14, 11:24, 27:14
**hoping** [2] - 21:23, 28:3
**hotter** [1] - 50:22
**hour** [1] - 6:10
**hours** [1] - 30:11, 31:14, 32:5, 32:10, 32:17, 32:18, 32:25, 33:10, 33:14, 76:5
**Houston** [1] - 2:4
**Howell's** [1] - 5:14
**huge** [2] - 15:6, 19:24

**hundreds** [3] - 48:1, 48:2, 49:9

**I**

**iceberg** [1] - 12:23
**identification** [1] - 61:3
**identified** [1] - 9:8
**identify** [4] - 4:14, 21:11, 46:7, 50:14
**identifying** [2] - 40:7, 49:21
**immediately** [4] - 8:1, 8:2, 74:23, 75:8
**important** [1] - 19:1
**impose** [2] - 67:2, 74:16
**imposed** [1] - 46:15
**imposing** [1] - 72:6
**in-person** [3] - 18:20, 72:6, 72:10
**inaccurate** [1] - 47:18
**inappropriate** [3] - 40:6, 40:12, 48:25
**INC** [4] - 1:3, 2:1, 2:5, 2:15
**Inc** [8] - 3:3, 3:4, 3:5, 3:6, 3:8, 3:9, 3:10, 4:2
**inclined** [1] - 22:20
**include** [4] - 20:17, 42:17, 43:9, 48:3
**included** [1] - 36:20, 58:6
**including** [2] - 52:2, 53:6
**inclusion** [2] - 11:9, 11:13
**incorporate** [5] - 10:16, 10:17, 21:22, 58:23, 70:16
**incorporated** [2] - 11:2, 22:1
**incorporates** [1] - 71:2
**incorrect** [1] - 30:1
**incredibly** [3] - 41:9, 53:3, 53:13
**independent** [2] - 39:8, 42:14
**independently** [3] - 39:12, 39:18, 43:3
**indicative** [1] - 13:25
**indictment** [1] - 23:5
**indiscernible** [25] - 11:18, 13:15, 15:8, 15:11, 15:22, 15:24, 16:13, 17:12, 17:14, 42:1, 45:2, 45:7, 46:5,

48:12, 52:19, 52:21,
54:6, 55:10, 57:20,
61:22, 62:14, 64:17,
65:11, 70:8, 70:20
**indiscernible)** [17] -
10:21, 12:2, 12:19,
15:5, 16:9, 17:2,
17:19, 20:4, 34:19,
35:13, 44:25, 45:3,
45:23, 50:5, 55:11,
62:14, 70:11
**individual** [1] - 42:8
**individually** [1] -
40:23
**individuals** [9] - 8:9,
36:10, 36:14, 37:4,
37:9, 38:21, 43:9,
65:10
**inefficient** [1] - 21:8
**information** [14] -
14:19, 14:21, 15:23,
16:5, 16:9, 17:3,
39:19, 40:11, 58:13,
58:15, 65:9, 65:23,
67:10, 67:17
**inherent** [1] - 23:24
**instance** [4] - 12:21,
15:21, 16:11, 52:16
**instances** [2] -
31:21, 76:4
**instead** [3] - 63:25,
64:20, 68:15
**insufficient** [2] - 68:1
**intended** [1] - 47:13
**intention** [2] - 6:1,
6:2
**intentionally** [1] -
12:19
**intercom** [1] - 18:21
**interest** [1] - 68:18
**interpret** [1] - 59:10
**interprets** [1] - 59:11
**interrelatedness** [1]
- 29:11
**interrupt** [2] - 20:11,
32:25
**interview** [7] - 40:5,
40:9, 43:16, 62:19,
63:4, 64:14, 64:18
**interviews** [9] - 40:3,
40:11, 63:20, 63:21,
65:4, 66:1, 68:1, 68:2,
68:4
**introduce** [1] - 3:13
**introduced** [4] - 5:9,
8:10
**invite** [2] - 25:3,
54:13
**involved** [2] - 72:18,
72:19

**involvement** [2] -
43:8, 52:22
**ironic** [1] - 53:5
**irrelevant** [3] - 44:23,
45:1, 48:5
**Island** [1] - 2:7
**isolation** [1] - 31:21
**issue** [58] - 7:1, 8:17,
8:18, 8:21, 9:19, 9:24,
9:25, 10:5, 10:7,
10:15, 10:16, 13:17,
17:7, 17:18, 18:8,
20:18, 21:11, 21:25,
26:10, 27:21, 28:18,
28:25, 29:6, 29:14,
29:17, 29:22, 31:25,
32:10, 34:13, 34:20,
34:23, 35:9, 36:2,
36:7, 39:24, 43:11,
45:5, 53:23, 54:20,
55:25, 56:4, 57:4,
58:1, 59:17, 59:18,
61:11, 62:3, 62:18,
62:23, 63:5, 67:12,
70:7, 70:25, 71:9,
72:20, 75:10, 76:1
**issued** [3] - 7:19,
9:1, 48:16
**issues** [22] - 5:21,
5:25, 6:12, 8:24, 8:25,
9:2, 9:10, 27:13,
28:10, 35:10, 39:21,
50:10, 62:4, 62:6,
65:6, 65:17, 65:24,
70:14, 71:18, 75:16,
75:17
**IV** [1] - 2:20
**IVAN** [1] - 2:16

**J**

**Jackson** [2] - 2:2,
4:3
**JASON** [1] - 2:6
**job** [2] - 65:1, 69:17
**Joe** [1] - 5:2
**JOHN** [1] - 2:2
**John** [1] - 4:1
**Johnson** [8] - 36:15,
37:10, 37:14, 38:13,
39:9, 40:23, 42:10,
42:17
**join** [1] - 7:23
**joined** [1] - 4:3
**joint** [11] - 6:2, 7:23,
8:11, 26:14, 27:5,
27:12, 27:23, 29:4,
45:25, 76:3
**jointly** [1] - 25:13
**joking** [1] - 26:5

**Jonathan** [1] - 4:4
**JONATHAN** [1] - 2:2
**JOSEPH** [1] - 2:20
**JOSHUA** [1] - 1:17
**Joshua** [1] - 3:21
**JR** [1] - 1:13
**judge** [2] - 55:19,
56:17
**Judge** [12] - 5:13,
26:10, 26:22, 27:23,
28:9, 28:19, 28:24,
73:12, 73:18, 74:2,
75:9
**Judicial** [1] - 76:19
**Julia** [4] - 36:14,
37:9, 37:14, 39:9
**jump** [3] - 23:23,
25:3, 47:1
**juncture** [1] - 18:10
**junk** [2] - 13:1, 13:2
**jurisdictions** [1] -
41:24

**K**

**Kachouroff** [2] -
2:16, 5:6
**KACHOUROFF** [2] -
2:16, 5:5
**Katherine** [1] - 4:22
**KATHERINE** [1] -
2:13
**keep** [5] - 6:14,
20:12, 20:13, 23:3,
32:9
**keeping** [2] - 21:23,
46:11
**keeps** [1] - 17:11
**Kennedys** [1] - 1:16
**kept** [2] - 60:9, 73:12
**key** [4] - 13:11,
16:19, 16:20, 17:9
**kidding** [1] - 26:2
**kind** [4] - 21:1, 47:5,
61:6, 61:7
**knowing** [1] - 29:17
**knowledge** [1] -
37:16
**knows** [5] - 17:21,
26:22, 51:6, 54:17

**L**

**label** [1] - 17:20
**labeled** [1] - 18:7
**lack** [1] - 18:22
**laid** [1] - 47:24
**Lambert** [7] - 7:3,
7:21, 8:1, 9:2, 25:14,
74:20

**land** [1] - 68:3
**language** [7] - 34:19,
35:6, 44:10, 47:6,
50:25, 56:21, 72:13
**Laranda** [1] - 3:18
**LARANDA** [1] - 1:13
**large** [7] - 11:19,
12:18, 13:1, 14:5,
50:20, 53:12, 75:16
**largely** [5] - 11:25,
57:13, 60:14, 62:5,
63:21
**larger** [1] - 25:22
**last** [12] - 7:2, 7:20,
9:1, 9:10, 14:25,
23:16, 25:1, 35:12,
59:1, 60:19, 62:18,
63:5
**late** [2] - 7:24, 23:16
**Lavaca** [1] - 2:20
**law** [3] - 36:12,
40:14, 41:5
**lawsuits** [3] - 37:17,
37:23, 65:23
**lawyer** [1] - 69:11
**lawyers** [2] - 6:22,
64:11
**lay** [4] - 44:18, 47:10,
64:6, 64:8
**lead** [3] - 35:5, 40:7,
59:13
**lead-in** [1] - 40:7
**leads** [1] - 39:23
**learn** [1] - 40:11
**learned** [2] - 49:25,
63:2, 64:1
**least** [10] - 6:3,
20:15, 25:17, 29:2,
39:14, 41:22, 47:6,
60:21, 61:2, 66:14
**leave** [4] - 40:25,
42:21, 42:22
**led** [1] - 38:22
**left** [3] - 42:23, 43:2,
62:4
**less** [1] - 49:12
**letter** [1] - 72:7
**level** [2] - 49:5, 54:9
**liability** [1] - 53:15
**likelihood** [1] - 23:9
**likely** [5] - 13:25,
17:1, 32:1, 41:22,
72:8
**likewise** [1] - 11:8
**limit** [3] - 65:4, 65:5,
66:14
**limited** [1] - 67:22
**Lindell** [1] - 5:6
**LINDELL** [2] - 2:15
**line** [7] - 5:10, 5:12,

8:9, 11:14, 21:20,
63:18, 71:22
**link** [3] - 7:8, 7:13,
7:14
**lion's** [1] - 52:11
**list** [13] - 18:3, 29:3,
36:4, 36:16, 37:3,
42:18, 43:10, 49:11,
68:9, 68:16, 69:9,
69:16, 69:22
**lists** [1] - 48:7
**literally** [3] - 47:20,
48:2, 51:24
**litigation** [2] - 20:8,
68:15
**live** [1] - 56:20
**LLP** [4] - 1:12, 1:16,
2:2, 2:19
**local** [1] - 52:22
**locate** [1] - 45:13
**look** [4] - 15:10,
28:15, 34:14, 53:14
**looking** [1] - 28:8
**Los** [1] - 1:14
**love** [1] - 63:5
**lower** [1] - 18:14
**lunch** [1] - 34:4

**M**

**MAGISTRATE** [1] -
1:10
**mailed** [2] - 7:5, 7:6
**manner** [2] - 34:11,
71:16
**manual** [2] - 46:5,
54:9
**manufacture** [1] -
18:11
**MARC** [2] - 1:17, 2:6
**Marc** [6] - 3:23, 4:11,
4:16, 11:7, 39:4,
46:23
**mark** [1] - 53:22
**Market** [1] - 1:17
**marrying** [2] - 35:6,
56:15
**material** [5] - 15:22,
22:4, 30:20
**matter** [8] - 4:23,
20:3, 21:8, 21:18,
32:3, 48:20, 50:7,
76:19
**matters** [4] - 3:12,
5:24, 9:9, 30:24
**McCotter** [2] - 2:3,
4:5
**McGlinchey** [2] -
7:10, 7:11, 7:14
**McKinney** [1] - 2:3

**McSweeney** [1] - 2:16
**mean** [9] - 13:21, 26:14, 32:24, 43:4, 47:4, 49:22, 53:16, 57:7, 68:6
**meaning** [2] - 9:25, 54:6
**meanings** [1] - 44:2
**means** [4] - 45:7, 63:24, 70:3, 70:4
**meant** [5] - 47:4, 50:12, 50:13, 50:16, 51:11
**measure** [1] - 32:15
**media** [2] - 18:19, 64:8
**meet** [11] - 9:5, 14:20, 20:19, 24:25, 26:8, 33:13, 42:8, 62:10, 72:1, 72:4, 72:7
**meeting** [2] - 28:23, 72:10
**members** [2] - 16:6, 42:10
**memorandum** [3] - 7:2, 8:2, 9:1
**mentioned** [3] - 7:19, 49:23, 73:14
**message** [9] - 4:10, 30:5, 30:8, 30:14, 30:15, 31:12, 33:15, 33:21, 64:4
**messages** [9] - 11:20, 29:23, 30:9, 32:23, 34:10, 35:4, 44:12, 52:2, 65:5
**met** [2] - 5:18, 18:7
**method** [1] - 46:6
**methodologies** [1] - 45:21
**methodology** [5] - 46:11, 46:13, 56:1, 62:5, 62:12
**mid** [1] - 15:21
**Middle** [1] - 48:9
**midnight** [2] - 30:17, 30:18
**might** [6] - 20:25, 29:6, 39:24, 43:1, 59:13, 67:23
**Mike** [1] - 5:6
**MIKE** [2] - 2:15
**million** [3] - 48:24, 57:22, 60:25
**Minoo** [3] - 4:4, 11:3, 32:20
**MINOO** [1] - 2:3
**minute** [1] - 62:24

**minutes** [4] - 19:20, 55:22, 74:17
**misimpression** [1] - 51:16
**misrepresent** [1] - 47:13
**misrepresentation** [1] - 53:25
**miss** [1] - 62:25
**missing** [1] - 62:12
**misunderstanding** [1] - 59:24
**misuse** [1] - 13:20
**modified** [1] - 55:16
**moment** [13] - 4:13, 4:24, 6:19, 7:13, 9:15, 10:9, 35:11, 35:20, 36:22, 43:16, 43:18, 73:23, 75:3
**money** [1] - 65:13
**month** [4] - 14:14, 22:15, 23:11, 27:7
**month-long** [1] - 27:7
**months** [3] - 5:23, 13:11, 22:15
**Mooney** [3] - 3:21, 3:25, 39:1
**MOONEY** [2] - 1:17, 3:21
**moons** [1] - 36:4
**moot** [2] - 74:10, 76:9
**mooted** [1] - 60:3
**moreover** [2] - 39:23, 43:7
**morning** [20] - 3:15, 3:19, 3:20, 3:21, 3:24, 3:25, 4:1, 4:8, 4:11, 4:18, 4:19, 4:20, 4:25, 5:1, 5:2, 5:4, 5:5, 5:7, 9:20, 39:4
**most** [4] - 32:1, 33:23, 42:22, 51:23
**mostly** [1] - 25:2
**motion** [22] - 7:3, 7:18, 7:20, 7:21, 8:4, 8:5, 13:21, 14:24, 23:6, 23:8, 23:17, 24:5, 25:21, 26:14, 26:17, 27:23, 29:1, 29:4, 59:13, 74:21, 74:25
**motions** [4] - 41:23, 74:10, 74:23, 76:6
**mouth** [1] - 31:19
**move** [5] - 6:11, 43:12, 57:17, 58:5, 62:20
**moving** [1] - 62:21

**MOXILA** [1] - 1:10
**MR** [47] - 3:21, 3:24, 4:1, 4:11, 4:16, 4:20, 5:1, 5:2, 5:5, 10:19, 11:7, 11:18, 12:15, 16:8, 19:8, 19:16, 19:19, 19:22, 23:4, 24:9, 24:20, 29:8, 39:4, 42:13, 44:9, 45:6, 46:2, 46:4, 46:23, 47:9, 49:22, 49:25, 50:3, 51:4, 51:15, 53:19, 53:20, 53:22, 54:11, 54:17, 55:9, 57:3, 57:18, 60:18, 61:22, 62:13, 63:1
**MS** [47] - 3:15, 3:20, 9:20, 10:6, 11:3, 17:9, 18:6, 19:12, 24:14, 24:16, 24:24, 26:3, 27:2, 29:10, 31:2, 32:8, 32:20, 33:2, 33:7, 34:18, 35:7, 35:12, 35:23, 36:1, 36:19, 36:25, 38:3, 38:5, 38:15, 38:25, 41:2, 41:19, 43:13, 60:1, 61:10, 62:4, 62:16, 63:7, 66:13, 66:23, 68:7, 70:7, 70:18, 73:22, 74:16, 75:4, 75:12
**multi** [1] - 6:10
**multi-hour** [1] - 6:10
**multiple** [2] - 41:23, 52:2
**music** [1] - 70:22
**MY** [1] - 2:15

## N

**nail** [1] - 34:20
**name** [2] - 21:4
**named** [3] - 14:17, 20:25, 48:8
**names** [2] - 36:16, 36:17
**narrow** [2] - 35:12, 76:1
**narrowed** [2] - 35:25, 76:9
**nature** [3] - 31:3, 59:24, 60:2
**nearly** [1] - 12:24
**necessarily** [5] - 41:2, 42:23, 43:3, 43:4, 60:18
**need** [31] - 6:18, 11:13, 12:11, 12:13,

17:23, 21:11, 22:3, 28:20, 31:20, 33:5, 35:23, 49:17, 49:21, 50:6, 50:7, 50:8, 53:17, 55:1, 55:7, 57:8, 57:16, 58:9, 58:11, 66:5, 66:22, 67:5, 70:16, 73:3, 74:12, 76:12
**needed** [2] - 34:22, 42:8
**needing** [2] - 28:2, 45:8
**needs** [11] - 22:18, 26:11, 26:23, 31:10, 31:11, 32:6, 33:16, 56:5, 66:20, 67:7
**Neerman** [1] - 4:4
**NEERMAN** [1] - 2:2
**negligent** [1] - 12:19
**negotiations** [1] - 36:13
**Networks** [3] - 3:5, 4:2, 11:6
**NETWORKS** [1] - 2:1
**never** [6] - 20:1, 47:13, 47:16, 50:14, 58:20, 74:22
**new** [3] - 17:25, 27:8, 73:16
**Newman** [7] - 37:10, 37:14, 38:13, 39:9, 40:23, 42:10, 42:17
**next** [11] - 9:25, 21:25, 29:14, 29:22, 30:18, 34:13, 40:8, 59:17, 62:3, 73:4, 76:1
**nice** [1] - 4:19
**Nichols** [9] - 26:11, 26:22, 27:24, 28:9, 28:19, 28:24, 73:12, 74:2, 75:10
**Nichols'** [1] - 73:18
**niece** [3] - 14:16, 21:3
**night** [5] - 7:24, 23:16, 25:1, 30:18, 35:12
**nine** [3] - 48:24, 57:22, 60:25
**Ninjas** [1] - 65:13
**NO** [1] - 1:5
**non** [8] - 13:2, 20:15, 20:21, 29:23, 40:18, 48:20, 64:11, 67:16
**non-email** [1] - 29:23
**non-junk** [1] - 13:2
**non-privileged** [2] - 40:18, 48:20

**non-substantive** [1] - 20:21
**non-work-related** [1] - 67:16
**nonresponsive** [1] - 14:13
**normal** [2] - 60:8, 60:11
**normally** [1] - 14:18
**note** [17] - 5:13, 5:15, 7:1, 7:4, 7:9, 8:3, 8:23, 11:12, 17:15, 21:19, 29:1, 42:6, 66:13, 73:2, 73:3, 73:13, 73:17
**noted** [1] - 17:13
**notes** [1] - 62:25
**nothing** [6] - 20:22, 28:14, 48:3, 48:4, 48:5, 49:9
**notice** [1] - 33:20
**noticed** [1] - 73:11
**notify** [1] - 76:10
**noting** [1] - 29:3
**November** [2] - 15:21, 16:12
**number** [24] - 5:21, 6:7, 8:13, 12:18, 13:1, 14:6, 15:6, 18:14, 19:24, 35:8, 35:22, 43:16, 44:18, 51:18, 53:12, 55:9, 59:18, 59:22, 61:16, 62:18, 62:22, 65:21, 70:18, 74:9
**numbered** [1] - 18:4
**numerous** [2] - 14:22, 63:18
**NW** [3] - 1:24, 2:7, 2:10

## O

**O'Connor** [1] - 2:9
**OAN** [8] - 21:15, 32:11, 34:21, 52:3, 52:20, 65:12, 65:14, 68:12
**OAN's** [1] - 14:21
**OANN** [14] - 12:5, 12:16, 12:17, 12:22, 12:24, 13:13, 13:20, 15:2, 15:3, 15:7, 15:9, 15:10, 17:7, 19:15
**OANN's** [2] - 15:1, 20:14
**object** [6] - 11:9, 11:12, 30:11, 30:19, 36:9, 64:19
**objected** [1] - 73:17

**objecting** [1] - 10:17
**objection** [14] -
10:25, 11:1, 11:4,
11:12, 23:2, 29:18,
32:25, 33:8, 39:2,
39:5, 55:17, 59:15,
66:11, 66:19
**objections** [4] - 32:7,
59:4, 59:7, 59:8
**objective** [1] - 32:15
**obligation** [13] -
21:5, 21:7, 21:18,
32:4, 33:14, 44:24,
51:9, 55:4, 58:22,
64:23, 66:15, 67:2,
72:5
**obligations** [6] - 8:6,
42:18, 69:12, 69:13,
72:4
**obtain** [1] - 73:16
**obviously** [3] - 19:4,
26:2, 26:5
**occurs** [1] - 31:12
**OF** [2] - 1:1, 1:9
**offer** [1] - 32:16
**offered** [1] - 30:22
**Office** [1] - 2:17
**OFFICIAL** [1] - 76:24
**Official** [2] - 1:23,
76:17
**often** [2] - 20:22,
42:21
**once** [1] - 18:7
**one** [58] - 6:7, 6:17,
6:25, 8:8, 8:19, 9:22,
9:24, 10:2, 10:4,
16:21, 16:22, 20:5,
20:25, 21:21, 21:22,
22:20, 26:14, 27:12,
27:17, 28:3, 28:6,
30:16, 32:15, 34:1,
35:10, 36:8, 37:11,
39:6, 39:7, 43:22,
44:1, 44:18, 49:10,
54:25, 55:3, 57:12,
60:2, 60:13, 62:11,
62:16, 62:18, 63:25,
65:18, 67:2, 67:7,
67:21, 68:8, 68:21,
69:10, 69:11, 70:2,
70:7, 71:9, 72:12,
73:6, 75:22, 76:10
**One** [1] - 2:13
**ones** [4] - 18:7,
57:21, 60:3, 70:9
**ongoing** [1] - 26:8
**open** [1] - 53:9
**opened** [1] - 74:19
**operation** [2] -
52:17, 52:19

**opinion** [3] - 7:2, 9:1,
57:15
**opportunity** [1] - 9:4
**opposing** [1] - 30:6
**opposition** [1] -
74:25
**order** [35] - 5:18, 6:5,
7:4, 7:8, 7:20, 8:1,
8:7, 8:18, 8:23, 8:25,
9:3, 9:9, 9:13, 9:18,
10:13, 10:16, 10:18,
17:18, 20:17, 21:18,
21:23, 25:14, 29:1,
29:25, 30:1, 35:9,
44:11, 59:2, 71:1,
71:2, 74:1, 75:7,
75:10, 75:11, 76:8
**Order** [1] - 3:1
**ordered** [5] - 7:24,
8:7, 8:23, 44:14, 52:5
**orders** [2] - 5:14,
76:14
**organization** [1] -
59:17
**organized** [1] - 50:9
**original** [1] - 31:25
**originally** [1] - 15:1
**otherwise** [1] - 61:4
**outlined** [1] - 66:3
**outside** [3] - 18:25,
51:24, 65:14
**overall** [2] - 25:6,
25:18
**overarching** [2] -
25:15, 27:12
**overcome** [1] - 74:11
**overkill** [1] - 50:4
**own** [9] - 8:6, 22:11,
22:12, 39:14, 39:20,
69:2, 69:3, 69:11

**P**

**P.C** [17] - 1:16, 3:22,
11:8, 36:11, 36:18,
37:22, 37:23, 38:7,
38:9, 41:25, 42:3,
42:4, 42:25, 43:6,
43:10, 48:5
**p.m** [5] - 1:11, 30:14,
55:24, 76:15
**page** [8] - 26:14,
27:12, 36:23, 54:1,
63:14, 64:19, 68:13,
76:19
**pages** [4] - 36:8,
48:1, 48:2, 49:9
**papers** [1] - 47:24
**paragraph** [38] -
10:12, 10:18, 11:1,

11:5, 11:13, 20:17,
22:1, 22:2, 22:21,
29:21, 29:24, 29:25,
34:15, 34:16, 35:1,
35:3, 43:22, 45:4,
45:12, 45:20, 45:22,
46:2, 46:21, 49:16,
50:24, 55:3, 56:1,
56:2, 56:3, 56:9,
56:10, 56:12, 56:22,
57:11, 59:1, 59:19
**paragraphs** [3] -
45:25, 72:15, 72:16
**parcel** [1] - 65:15
**part** [3] - 11:19,
25:12, 65:15
**participating** [1] -
25:13
**particular** [8] - 12:6,
22:9, 22:18, 22:24,
27:21, 46:12, 59:4,
68:12
**particularly** [2] -
22:23, 48:19
**parties** [41] - 3:13,
5:19, 6:3, 6:5, 7:24,
8:14, 11:21, 11:25,
12:22, 18:24, 21:14,
21:21, 24:1, 25:5,
25:13, 25:24, 27:3,
35:22, 36:3, 36:25,
46:4, 46:9, 47:13,
47:21, 48:15, 50:13,
53:22, 55:15, 55:17,
60:6, 60:10, 60:21,
61:19, 63:10, 70:9,
71:10, 72:19, 73:12,
76:7
**parties'** [4] - 6:1,
8:11, 25:23, 54:6
**partner** [2] - 3:23,
4:22
**party** [25] - 6:17,
6:22, 7:6, 11:22,
21:10, 30:6, 30:7,
30:9, 36:5, 36:8,
44:21, 45:14, 45:21,
46:8, 46:15, 51:6,
58:16, 58:17, 59:3,
59:7, 60:4, 67:11,
67:14, 71:14
**party's** [3] - 6:24,
11:19, 36:9
**passage** [2] - 60:3,
60:14
**passing** [1] - 41:7
**past** [3] - 6:21, 54:4,
55:3
**pasta** [1] - 34:4
**Pause** [5] - 9:16,

10:10, 43:19, 73:24,
75:5
**pending** [4] - 5:23,
45:18, 46:7, 73:1
**Pennsylvania** [1] -
1:18
**people** [14] - 11:10,
12:4, 31:20, 33:23,
34:12, 37:21, 38:8,
39:11, 40:1, 40:3,
40:8, 41:6, 64:6, 64:8
**per** [1] - 17:18
**perceive** [1] - 18:22
**percent** [1] - 49:12
**perfectly** [1] - 76:2
**performance** [1] -
53:15
**performed** [1] -
16:10
**perhaps** [2] - 27:9,
39:23
**period** [13] - 13:4,
13:11, 14:14, 15:20,
16:20, 16:25, 27:7,
28:1, 30:10, 30:20,
32:10, 34:17, 38:6
**periods** [4] - 45:22,
46:6
**permits** [1] - 46:4
**perplexed** [1] - 35:10
**person** [10] - 6:25,
10:4, 18:20, 28:6,
33:22, 34:2, 64:14,
69:9, 72:6, 72:10
**personal** [8] - 30:24,
45:15, 65:14, 65:22,
67:13, 67:19, 69:19,
69:25
**personally** [1] - 7:7
**persons** [1] - 39:18
**perspective** [3] -
43:13, 47:10, 48:10
**Philadelphia** [1] -
1:18
**phone** [1] - 18:20
**phrased** [1] - 55:13
**picking** [2] - 18:20,
68:12
**pieces** [1] - 29:11
**PII** [1] - 30:23
**PILLOW** [1] - 2:15
**Pillow** [2] - 3:9, 5:6
**place** [4] - 16:3, 48:8,
49:8, 63:9
**Place** [1] - 2:17
**Plaintiffs** [1] - 1:4
**plaintiffs** [2] - 3:16,
23:15
**PLAINTIFFS** [1] -
1:12

**plaintiffs'** [3] - 3:14,
7:10, 23:7
**plan** [1] - 48:13
**plate** [1] - 26:4
**platforms** [1] - 69:24
**playing** [1] - 34:12
**pleading** [1] - 54:2
**pleadings** [1] - 38:17
**PLLC** [2] - 2:6, 2:16
**point** [17] - 6:22,
10:8, 11:16, 15:12,
18:5, 19:1, 20:20,
39:7, 49:14, 53:17,
60:19, 61:8, 61:13,
61:17, 61:23, 67:13
**pointed** [1] - 57:20
**points** [1] - 17:9
**polling** [3] - 48:7,
48:8, 49:8
**portrayed** [1] - 39:25
**position** [8] - 6:24,
17:12, 30:19, 35:19,
38:22, 48:21, 57:23,
68:19
**positions** [3] - 6:16,
9:6, 9:8
**possess** [2] - 42:3,
42:4
**possession** [9] -
37:6, 37:8, 37:24,
43:1, 43:5, 67:17,
69:4, 70:1, 70:3
**possible** [3] - 27:5,
29:12, 50:9
**possibly** [2] - 14:12,
59:12
**potential** [1] - 5:18
**potentially** [4] -
45:13, 50:14, 69:4,
73:14
**Poulos** [10] - 13:7,
13:12, 13:25, 14:12,
14:13, 14:17, 16:13,
16:16, 16:24, 21:3
**Pouloses** [1] - 16:18
**Powell** [51] - 3:3,
3:22, 11:8, 13:8,
16:22, 36:11, 36:18,
37:4, 37:5, 37:16,
37:22, 37:23, 38:7,
38:9, 38:14, 39:2,
39:5, 39:7, 39:8,
39:10, 40:13, 41:5,
41:25, 42:3, 42:4,
42:15, 42:25, 43:6,
43:10, 47:13, 47:21,
48:1, 48:3, 48:4, 48:8,
48:9, 48:14, 49:10,
52:3, 52:16, 53:22,
55:10, 55:15, 55:17,

56:15, 60:21, 61:14
**POWELL** [3] - 1:6,
1:16
**Powell's** [5] - 36:12,
38:6, 42:7, 60:23
**Powells** [1] - 49:9
**practice** [2] - 6:20,
73:6
**preceding** [1] - 8:1
**precise** [1] - 20:24
**prefer** [2] - 10:1, 10:4
**preference** [1] -
73:18
**prefers** [1] - 9:23
**prepare** [2] - 26:20,
74:25
**preparing** [1] - 76:6
**present** [3] - 5:20,
8:22, 58:11
**presented** [6] - 5:22,
12:20, 66:7, 73:20,
75:18, 76:10
**press** [1] - 5:19
**presumably** [1] -
49:22
**pretty** [1] - 43:22
**previously** [2] - 15:4,
76:10
**prioritized** [1] - 8:15
**private** [1] - 39:20
**privilege** [2] - 34:24,
63:17
**privileged** [4] - 40:2,
40:18, 48:20, 54:12
**problem** [11] - 13:25,
14:21, 17:9, 33:7,
39:23, 49:20, 50:24,
51:10, 55:15, 69:8
**problems** [1] - 21:9
**Procedure** [2] -
45:11, 67:1
**procedure** [4] - 7:5,
47:8, 58:21, 60:10
**proceed** [3] - 9:22,
27:22, 75:2
**proceeding** [2] -
23:9, 25:11
**Proceedings** [1] -
76:15
**PROCEEDINGS** [1] -
1:9
**proceedings** [2] -
23:17, 25:18
**process** [7] - 20:19,
41:10, 43:16, 62:19,
63:4, 63:11, 64:18
**produce** [27] - 11:21,
12:10, 14:9, 15:15,
17:17, 21:6, 24:10,
25:10, 26:19, 31:14,

32:4, 32:17, 33:14,
40:1, 41:11, 42:5,
48:17, 51:9, 52:4,
52:5, 54:22, 56:24,
57:1, 59:3, 59:7, 60:8,
64:23
**produced** [61] - 12:4,
12:8, 12:22, 12:24,
13:1, 13:13, 13:24,
14:12, 14:23, 15:3,
15:4, 15:7, 15:10,
15:13, 15:16, 15:20,
17:18, 17:19, 17:22,
17:24, 17:25, 18:1,
18:25, 19:5, 20:1,
20:3, 23:13, 24:11,
30:10, 33:12, 34:9,
38:11, 39:15, 40:15,
40:17, 40:19, 44:16,
45:18, 46:18, 48:1,
48:9, 51:19, 52:4,
52:7, 52:11, 52:12,
53:1, 53:2, 53:3, 53:9,
53:12, 55:19, 56:16,
57:9, 58:3, 58:7,
60:11, 61:14, 66:2
**Produced** [1] - 1:25
**produces** [1] - 30:15
**producing** [15] -
12:12, 20:6, 30:21,
31:17, 44:21, 45:14,
45:16, 46:15, 54:12,
55:4, 55:14, 59:22,
61:20, 65:8
**product** [1] - 63:16
**production** [42] -
12:15, 13:5, 14:7,
14:21, 15:1, 18:13,
19:15, 19:23, 19:24,
20:2, 21:15, 22:20,
23:18, 25:7, 30:11,
39:13, 42:7, 45:18,
45:22, 48:20, 49:11,
51:12, 52:3, 52:9,
52:10, 53:2, 53:24,
55:9, 55:14, 55:16,
55:19, 57:4, 57:25,
58:8, 58:13, 59:4,
60:25, 61:1, 61:17,
65:2, 65:6
**productions** [3] -
11:19, 15:1, 23:24
**professional** [1] -
69:11
**proffer** [1] - 43:7
**progress** [1] - 25:2
**prohibit** [1] - 21:10
**prohibited** [1] - 5:17
**prohibitions** [1] -
5:19

**prominent** [1] -
50:12
**proof** [1] - 12:20
**proofs** [1] - 20:5
**proper** [4] - 14:5,
14:24, 17:5, 34:24
**proportional** [3] -
22:9, 31:10, 32:5
**proposal** [27] - 22:1,
22:2, 25:15, 27:5,
27:9, 27:12, 27:16,
33:1, 36:6, 36:9,
45:19, 45:20, 46:8,
50:25, 56:2, 56:3,
56:4, 56:11, 56:13,
57:11, 59:18, 59:19,
63:19, 63:20, 63:25,
66:4, 69:1
**proposals** [2] -
27:19, 64:24
**propose** [1] - 38:7
**proposed** [10] -
10:13, 10:15, 10:18,
22:5, 29:25, 30:1,
44:11, 59:2, 60:4,
68:9
**propounded** [2] -
12:13, 30:7
**protection** [1] -
23:14
**protocol** [24] - 6:5,
8:18, 8:24, 9:3, 9:9,
9:13, 9:18, 10:13,
10:18, 20:17, 21:22,
27:11, 35:9, 38:12,
54:2, 58:23, 60:7,
60:9, 60:16, 61:18,
68:24, 70:14, 71:2,
74:1
**prove** [1] - 53:8
**proven** [1] - 14:3
**provide** [8] - 10:20,
27:8, 32:13, 37:11,
63:22, 63:23, 68:19,
75:2
**provided** [2] - 10:21,
11:22
**providing** [1] - 11:5
**provision** [5] - 11:17,
44:5, 58:24, 59:10,
59:11
**provisions** [1] -
56:10
**publicly** [1] - 53:6
**publishing** [1] -
15:22
**purported** [1] - 37:20
**purpose** [1] - 7:16
**purposeful** [1] -
47:10

**purposes** [3] - 6:9,
15:3, 15:8
**pursuant** [7] - 5:13,
5:14, 7:7, 7:25, 38:11,
59:14, 59:21
**push** [2] - 23:18,
25:6, 25:9, 25:24
**put** [12] - 13:15, 27:4,
27:16, 27:23, 28:17,
31:18, 35:17, 50:19,
58:17, 70:6, 71:10,
71:20
**putting** [2] - 28:23,
53:1

# Q

**queries** [2] - 45:6,
45:12, 45:13
**query** [1] - 47:8
**questioning** [1] -
68:10
**questionnaire** [1] -
69:22
**questions** [13] -
6:13, 9:13, 31:5, 32:7,
40:24, 41:1, 41:18,
69:3, 69:10, 69:16,
71:18, 71:19, 71:22
**quick** [2] - 34:14,
50:6
**quickly** [2] - 6:12,
29:12
**quite** [2] - 28:6,
62:13
**quote** [5] - 42:24,
46:14, 50:22, 54:3
**quote-unquote** [2] -
42:24, 46:14

# R

**raise** [4] - 23:1,
65:13, 68:21, 73:4
**raised** [2] - 17:17,
75:24
**ran** [4] - 12:3, 12:6,
12:8, 19:23
**range** [5] - 18:25,
22:8, 22:20, 25:7,
61:2
**ranges** [5] - 9:25,
21:25, 22:5, 22:24,
29:20
**rather** [2] - 28:25
**RCP** [1] - 45:16
**RDR** [1] - 76:23
**RDR-CRR** [1] - 76:23
**re** [5] - 17:20, 17:23,
18:6, 52:9

**re-Bates** [2] - 17:20,
18:6
**re-review** [3] - 17:23,
52:9
**reach** [1] - 33:4
**reached** [4] - 23:7,
24:4, 25:20, 26:15
**read** [2] - 68:13, 75:7
**reading** [1] - 59:9
**ready** [1] - 66:9
**real** [1] - 34:22
**really** [12] - 8:17,
20:23, 27:18, 36:3,
43:24, 49:16, 49:17,
57:8, 57:16, 66:5,
67:5, 75:23
**Realtime** [1] - 1:23
**reason** [9] - 12:16,
20:24, 28:2, 31:15,
33:25, 36:10, 38:18,
41:3, 51:8
**reasonable** [4] -
22:24, 43:22, 56:22,
57:12
**reasonably** [1] - 46:6
**reasons** [2] - 44:19,
67:20
**received** [6] - 8:23,
12:21, 14:22, 18:24,
39:16, 71:16
**Recessed** [1] - 55:24
**recipe** [2] - 65:7,
65:8
**recognize** [1] - 75:17
**record** [16] - 3:13,
7:1, 7:4, 7:17, 8:3,
9:5, 17:16, 32:8,
36:23, 38:14, 42:6,
53:18, 55:2, 55:8,
75:19, 76:18
**Record** [1] - 1:25
**recording** [1] - 5:16
**records** [2] - 40:15,
48:9
**red** [1] - 48:12
**redact** [1] - 34:24
**redactions** [1] -
29:23
**redline** [1] - 27:16
**reduced** [1] - 45:8
**Reeves** [1] - 76:17,
76:23
**REEVES** [2] - 1:22,
76:23
**refer** [4] - 26:24,
28:9, 28:24, 74:4
**reference** [1] - 18:23
**referral** [1] - 28:11
**referred** [1] - 74:7
**referring** [1] - 48:18

**reflects** [1] - 58:24
**refused** [4] - 12:9,
36:9, 36:12, 41:5
**refusing** [1] - 54:16
**regard** [1] - 37:22
**regarding** [3] - 8:6,
47:25, 71:8
**Registered** [1] - 1:22
**registries** [1] - 49:8
**regrets** [1] - 4:6
**regulations** [1] -
76:19
**reject** [2] - 20:16,
31:9, 69:1
**rejecting** [1] - 56:8
**related** [10] - 51:21,
53:15, 65:5, 67:13,
67:16, 67:22, 67:25,
70:5, 74:9
**relating** [2] - 52:17,
52:21
**relevance** [4] -
43:17, 44:15, 44:20
**relevancy** [14] -
43:23, 43:24, 45:8,
45:9, 45:15, 46:14,
47:4, 49:16, 49:17,
49:18, 50:25, 56:23,
57:1, 58:25
**relevant** [12] - 15:20,
17:4, 38:6, 40:2,
40:18, 42:24, 44:25,
45:17, 47:25, 48:20,
64:10, 68:17
**rely** [1] - 12:2
**remain** [1] - 8:13
**remaining** [1] - 50:10
**REMOTE** [1] - 1:9
**removed** [1] - 51:1
**repeatedly** [1] - 53:6
**repetitive** [1] - 20:13
**rephrase** [1] - 56:6
**report** [12] - 6:2,
7:24, 8:12, 16:4,
18:11, 20:10, 20:21,
21:7, 21:12, 21:14,
40:10, 45:25
**Reporter** [4] - 1:22,
1:23, 1:23, 76:17
**REPORTER** [1] -
76:24
**reports** [14] - 9:19,
9:25, 10:6, 10:12,
10:21, 11:5, 12:4,
13:17, 13:18, 13:21,
20:7, 20:16, 20:22
**represent** [1] - 7:12
**representations** [1] -
38:20
**represented** [5] -

6:25, 7:6, 9:4, 54:14,
74:6
**representing** [1] -
5:11
**REPUBLIC** [1] - 2:5
**Republic** [2] - 4:12,
4:17
**request** [33] - 7:25,
8:5, 12:13, 14:1, 14:3,
20:7, 20:16, 22:14,
24:6, 27:25, 30:8,
31:9, 31:13, 33:10,
33:22, 33:24, 38:9,
42:17, 44:22, 45:18,
52:3, 55:9, 55:12,
57:9, 57:10, 57:19,
59:4, 61:5, 64:10,
69:25, 71:7, 72:20,
74:18
**requested** [5] -
19:16, 45:1, 52:12,
53:2, 55:10
**requesting** [5] -
16:7, 22:8, 30:8,
59:21, 67:11
**requests** [42] - 8:3,
8:4, 12:19, 27:23,
28:4, 28:8, 28:13,
30:16, 40:10, 44:1,
44:17, 46:8, 46:18,
46:19, 48:11, 48:14,
48:15, 48:16, 48:17,
49:2, 49:4, 49:5,
49:13, 51:18, 52:13,
53:4, 53:13, 54:6,
57:20, 57:24, 58:5,
58:6, 58:9, 59:22,
59:23, 60:22, 60:24,
61:3, 64:1, 64:2, 64:5
**require** [11] - 25:23,
31:12, 37:6, 37:7,
42:22, 44:12, 44:14,
48:18, 61:2, 67:9,
69:22
**required** [4] - 21:2,
45:14, 59:3, 68:19
**requirement** [2] -
45:10, 46:15
**requirements** [1] -
38:12
**requires** [2] - 25:5,
62:7
**rerecording** [1] -
5:16
**resolve** [2] - 6:4,
76:1
**resolved** [4] - 11:14,
59:5, 76:3, 76:7
**resolving** [1] - 76:12
**resources** [1] - 76:12

**respect** [22] - 8:11,
8:24, 9:3, 9:9, 9:18,
9:19, 10:12, 22:10,
23:21, 23:25, 24:3,
28:5, 29:20, 35:4,
40:22, 50:9, 59:1,
67:12, 67:24, 68:5,
73:10
**respond** [4] - 17:7,
24:17, 48:14, 58:9
**responded** [2] -
61:5, 72:2
**responding** [3] -
61:15, 72:23, 73:7
**responds** [1] - 33:22
**response** [8] - 31:23,
31:24, 32:1, 39:17,
46:18, 54:24, 57:24,
60:24
**responses** [2] - 54:4,
66:16
**responsive** [67] -
12:12, 12:18, 12:24,
14:6, 16:15, 17:1,
20:6, 21:2, 21:6, 30:6,
30:14, 30:16, 30:19,
31:13, 31:16, 31:23,
32:1, 32:2, 32:12,
32:17, 33:8, 33:12,
33:18, 33:19, 33:22,
33:24, 34:1, 34:10,
40:2, 40:18, 43:25,
44:4, 44:17, 44:22,
45:14, 45:17, 46:7,
46:19, 47:22, 47:25,
48:10, 48:17, 49:2,
49:4, 49:13, 50:14,
51:6, 51:17, 51:24,
53:3, 53:12, 54:5,
54:7, 56:25, 57:1,
57:10, 59:24, 61:3,
61:17, 63:13, 64:9,
64:15, 64:20, 65:8,
65:23, 68:14, 69:4
**responsiveness** [38]
- 12:17, 13:14, 14:1,
14:5, 15:8, 15:13,
15:17, 16:10, 17:5,
17:12, 17:14, 17:24,
32:22, 43:17, 43:23,
43:24, 44:15, 45:8,
45:9, 45:15, 46:13,
47:4, 49:16, 49:18,
50:16, 51:2, 52:6,
52:14, 54:9, 54:15,
56:6, 56:19, 57:1,
57:22, 58:16, 58:22,
62:6, 65:7
**result** [3] - 25:17,
47:15, 47:23

**results** [3] - 37:18,
47:22, 50:22
**retention** [1] - 19:14
**returned** [1] - 12:14
**review** [52] - 12:17,
13:14, 14:1, 14:5,
15:8, 15:13, 15:17,
16:10, 17:5, 17:11,
17:12, 17:14, 17:21,
17:23, 17:24, 33:6,
40:1, 43:17, 43:23,
44:14, 44:25, 45:8,
45:10, 45:15, 46:5,
46:9, 46:13, 46:14,
49:5, 49:18, 50:11,
50:16, 51:2, 51:12,
51:25, 52:6, 52:9,
52:14, 54:9, 54:15,
54:22, 55:20, 56:5,
56:6, 56:19, 57:15,
57:22, 58:16, 58:22,
62:6
**reviewed** [1] - 23:13
**reviewing** [3] -
12:12, 32:23, 50:22
**reviews** [1] - 23:25
**RFP** [2] - 61:11,
61:17
**RFPs** [1] - 61:16
**Rhode** [1] - 2:7
**rightfully** [1] - 17:13
**RION** [1] - 2:1
**Rion** [1] - 4:3
**Rion's** [1] - 65:12
**ripe** [2] - 9:10, 16:2
**ROBERT** [1] - 2:1
**Robert** [1] - 4:2
**role** [2] - 51:12,
67:22
**RUDOLPH** [1] - 2:19
**Rule** [3] - 48:19,
59:21, 61:8
**rule** [4] - 5:14, 62:1,
65:25, 67:18
**ruled** [1] - 62:22
**rules** [8] - 40:17,
46:12, 48:18, 61:2,
63:22, 65:1, 67:9,
72:5
**Rules** [2] - 45:10,
67:1
**ruling** [4] - 22:19,
54:20, 58:24, 62:2
**rulings** [4] - 21:20,
21:22, 70:16, 71:2
**run** [6] - 12:3, 12:7,
13:18, 25:17, 37:8,
48:22
**running** [2] - 44:12,
47:20

**S**

**salads** [1] - 34:4
**sales** [1] - 51:21
**sales-related** [1] -
51:21
**sanctions** [1] - 5:18
**sandwiches** [1] -
34:4
**SARGENT** [1] - 1:13
**Sargent** [1] - 3:18
**saved** [2] - 72:25,
73:2
**schedule** [2] - 25:9,
25:16
**School** [1] - 48:9
**scope** [2] - 28:11,
67:16
**search** [43] - 11:22,
12:1, 12:2, 12:7,
12:14, 15:6, 16:6,
19:14, 19:23, 19:25,
42:4, 44:13, 45:6,
45:21, 46:5, 47:8,
47:14, 47:15, 47:20,
48:22, 50:11, 50:12,
50:16, 50:19, 51:8,
51:11, 51:19, 52:12,
53:1, 54:7, 54:11,
56:1, 56:7, 58:17,
58:21, 62:5, 62:12,
64:16, 65:2, 65:6,
67:15, 68:1
**searchable** [3] -
48:15, 48:16, 49:4
**searched** [4] - 37:25,
38:11, 66:22, 67:10
**searches** [2] - 12:3,
37:8, 69:7, 69:23
**searching** [3] -
51:17, 54:5, 67:3
**second** [8] - 17:16,
19:9, 40:25, 47:8,
50:21, 54:9, 63:3,
65:11
**secondary** [9] -
12:17, 13:14, 14:4,
15:12, 16:10, 17:5,
17:11, 52:6, 52:14
**seconds** [1] - 19:21
**section** [1] - 34:22
**see** [29] - 4:19, 9:7,
9:13, 12:5, 13:6,
18:10, 22:21, 28:7,
28:12, 28:16, 33:3,
33:18, 33:19, 34:9,
36:18, 37:12, 42:23,
43:21, 44:5, 58:3,
61:1, 67:23, 68:21,
69:17, 69:18, 74:1,

75:10, 75:11, 76:14
**seeing** [2] - 28:3, 71:9
**seek** [1] - 45:2
**seeking** [5] - 7:22, 39:25, 72:20, 74:24
**sees** [2] - 9:11, 35:25
**send** [9] - 4:9, 6:14, 7:8, 7:9, 50:15, 72:12, 73:2, 76:2
**sending** [2] - 18:8, 33:21
**sends** [1] - 4:6
**sense** [1] - 56:13
**sensitive** [1] - 30:23
**sent** [2] - 7:13, 13:5
**sentence** [3] - 37:11, 45:4, 59:1
**separate** [4] - 8:7, 28:24, 56:25, 73:4
**separation** [1] - 69:20
**series** [1] - 37:17
**seriously** [1] - 69:13
**set** [9] - 3:12, 6:6, 11:5, 24:11, 31:3, 40:19, 71:6, 74:7, 74:13
**setting** [1] - 7:5
**settle** [2] - 72:10, 72:11
**seven** [1] - 59:18
**several** [1] - 39:6
**SHACKELFORD** [19] - 1:13, 10:19, 11:18, 12:15, 16:8, 19:8, 19:16, 19:19, 19:22, 44:9, 45:6, 46:2, 46:4, 51:4, 51:15, 53:19, 54:17, 55:9, 62:13
**Shackelford** [21] - 3:17, 10:7, 11:16, 12:11, 16:4, 17:11, 19:10, 19:13, 20:9, 21:16, 44:9, 48:13, 51:14, 53:23, 54:13, 54:23, 55:18, 57:19, 62:11, 62:12
**Shackelford's** [1] - 47:7
**shall** [1] - 59:3
**share** [3] - 52:11, 67:9, 69:23
**shared** [1] - 18:3
**shifting** [1] - 27:5
**shifts** [1] - 25:15
**shoe** [1] - 40:8
**short** [1] - 27:5
**shorter** [2] - 19:2, 32:10

**show** [3] - 15:19, 15:24, 16:11
**showed** [1] - 15:16
**shows** [1] - 53:6
**Sibley** [3] - 2:19, 5:3, 5:4
**SIBLEY** [2] - 2:20, 5:2
**side** [8] - 22:18, 36:2, 46:22, 46:24, 54:25, 58:19, 73:7
**sides** [2] - 61:18, 63:15
**Sidney** [14] - 3:22, 11:8, 13:8, 16:22, 36:18, 37:4, 42:25, 43:6, 43:10, 48:4, 49:10
**SIDNEY** [3] - 1:6, 1:16
**sign** [1] - 70:17
**Signal** [2] - 64:3, 64:22
**silly** [1] - 21:1
**similar** [2] - 27:4, 27:12
**simple** [3] - 14:1, 27:5, 61:25
**simpler** [1] - 45:19
**simply** [9] - 16:5, 22:3, 22:21, 24:4, 44:3, 47:14, 47:18, 48:22, 59:21
**single** [3] - 33:14, 44:14, 44:18
**sit** [4] - 25:10, 41:12, 41:21, 75:1
**situation** [2] - 20:15, 74:22
**six** [17] - 13:11, 18:17, 43:16, 43:22, 45:4, 45:22, 46:1, 46:22, 50:24, 56:1, 56:3, 56:9, 56:12, 56:22, 57:11, 59:2, 66:16
**sketch** [1] - 27:9
**skip** [1] - 43:15
**slew** [1] - 37:2
**slipped** [1] - 48:13
**small** [3] - 13:4, 18:19, 25:15
**smaller** [2] - 18:1, 21:15
**Smartmatic** [8] - 15:5, 15:16, 17:17, 17:19, 18:2, 19:3, 19:23
**smoothly** [1] - 25:17
**solely** [1] - 53:10

**someone** [11] - 11:11, 21:4, 22:16, 33:20, 33:21, 34:5, 50:15, 63:5, 64:20, 66:8, 67:21
**sometimes** [1] - 31:20
**somewhere** [4] - 48:24, 57:24, 60:24, 60:25
**Sonja** [2] - 76:17, 76:23
**SONJA** [2] - 1:22, 76:23
**soon** [1] - 75:11
**sooner** [2] - 26:25, 28:25
**sophisticated** [1] - 34:6
**sorry** [10] - 4:13, 6:11, 17:8, 20:11, 36:16, 38:3, 41:13, 41:19, 56:6, 66:13
**sort** [5] - 15:9, 30:23, 60:3, 65:3, 68:23
**sorts** [1] - 13:9
**sounds** [1] - 68:2
**sources** [4] - 14:23, 16:21, 16:23, 67:8
**speaking** [5] - 10:8, 31:1, 37:1, 44:7, 63:15
**specific** [25] - 9:24, 19:23, 20:18, 20:20, 21:11, 22:17, 30:7, 47:8, 48:17, 49:2, 49:5, 57:21, 57:24, 58:5, 58:8, 59:15, 60:22, 60:24, 61:11, 61:16, 64:1, 64:2
**specifically** [9] - 9:8, 24:8, 26:17, 42:20, 44:11, 46:4, 51:17, 52:5, 54:7
**specificity** [1] - 21:17
**specifics** [2] - 63:22, 63:23
**specified** [3] - 40:4, 46:8, 49:1
**specify** [2] - 46:12, 46:13
**spent** [2] - 51:16, 76:5
**spreadsheets** [1] - 51:22
**Sr** [1] - 4:3
**SR** [1] - 2:1
**stab** [1] - 56:14
**standard** [2] - 6:20,

69:16
**standards** [1] - 72:1
**standing** [1] - 5:14
**Starbucks** [1] - 34:3
**Stars** [1] - 1:14
**start** [3] - 44:6, 57:4, 58:18
**started** [1] - 25:8
**starting** [2] - 3:14, 20:10
**state** [5] - 9:6, 48:8, 52:22, 55:2
**statement** [1] - 54:24
**statements** [1] - 38:23
**STATES** [1] - 1:1
**States** [2] - 76:17, 76:20
**stating** [1] - 24:4
**status** [5] - 6:2, 7:22, 7:23, 8:11, 45:25
**STATUS** [1] - 1:9
**stay** [3] - 23:6, 23:17, 24:5, 25:21, 26:18, 29:1, 71:7, 74:21
**steadfastly** [1] - 12:9
**Stephen** [3] - 3:17, 10:7, 44:9
**STEPHEN** [1] - 1:13
**still** [9] - 12:6, 15:22, 34:4, 42:2, 51:9, 58:9, 64:19, 72:8, 73:2
**stop** [1] - 71:10
**story** [1] - 31:22
**straight** [1] - 15:2
**street** [1] - 34:3
**Street** [3] - 1:17, 2:3, 2:20
**strictly** [1] - 5:17
**striking** [2] - 7:25, 8:4
**string** [4] - 30:9, 30:11, 30:17, 34:1
**strong** [1] - 13:13
**strongly** [1] - 12:16
**stuff** [2] - 64:15, 64:23
**subject** [2] - 59:7, 59:12
**subjective** [1] - 32:15
**submit** [5] - 16:2, 21:21, 27:11, 70:10, 70:17
**submitted** [1] - 66:23
**subpoena** [2] - 39:17, 42:2
**subpoenaed** [7] - 39:12, 39:19, 40:24, 41:3, 41:6, 41:7, 43:3

**subpoenas** [2] - 39:14, 41:11
**subset** [2] - 18:1, 67:15
**substantive** [7] - 16:5, 16:19, 17:3, 17:13, 20:21, 34:19, 71:17
**substitute** [3] - 45:9, 51:2, 51:11
**sufficient** [5] - 18:16, 26:20, 43:7, 58:4, 69:7
**suggest** [1] - 6:19
**suggested** [1] - 47:17
**suggesting** [1] - 52:8
**suggestion** [1] - 25:4
**Suite** [5] - 1:14, 1:17, 2:3, 2:10, 2:20
**summarize** [1] - 65:18
**supplant** [1] - 50:16
**supplanted** [1] - 58:21
**support** [1] - 54:2
**surgical** [1] - 60:22
**surname** [1] - 48:3
**surnames** [1] - 48:7
**Susman** [3] - 1:12, 3:16, 9:21
**suspect** [2] - 14:22, 28:9
**suspenders** [1] - 7:9
**system** [2] - 17:21, 18:21

**T**

**table** [1] - 34:11
**talks** [1] - 48:19
**team** [2] - 9:24, 50:21
**technical** [3] - 51:20, 51:21, 53:10
**technically** [3] - 26:10, 26:23, 28:10
**technology** [1] - 46:9
**tee** [6] - 20:18, 21:16, 42:7, 58:11, 71:25, 72:12
**teed** [6] - 8:25, 9:2, 28:18, 39:24, 35:15, 73:9
**teeing** [2] - 6:2, 70:15
**tend** [1] - 50:7
**tentative** [3] - 25:20, 25:22, 25:23
**tentatively** [1] -

22:19

**term** [8] - 12:14, 13:12, 16:6, 44:2, 48:22, 51:8, 56:25

**term-of-art** [1] - 44:2

**terms** [31] - 11:22, 12:2, 12:7, 12:10, 13:4, 13:7, 13:9, 15:7, 15:19, 16:20, 19:23, 19:25, 26:16, 44:13, 46:5, 47:7, 47:14, 47:15, 47:20, 50:11, 50:12, 50:16, 50:19, 51:11, 51:19, 52:12, 53:1, 54:11, 56:7, 58:17, 58:21

**Texas** [2] - 2:4, 2:21

**text** [22] - 11:20, 29:22, 30:5, 30:8, 30:9, 30:11, 30:14, 30:15, 31:12, 31:23, 31:24, 32:1, 32:5, 32:23, 33:14, 33:21, 34:1, 34:10, 35:4, 44:12, 52:2, 64:4

**texts** [2] - 53:11, 64:21

**THE** [96] - 1:1, 1:10, 1:12, 2:5, 3:19, 3:25, 4:8, 4:13, 4:18, 4:24, 5:4, 5:7, 9:17, 10:3, 10:9, 10:11, 10:24, 11:6, 11:10, 12:11, 16:4, 17:6, 18:3, 19:7, 19:9, 19:13, 19:18, 19:21, 20:9, 23:22, 24:13, 24:15, 24:18, 24:22, 26:1, 26:5, 27:18, 29:13, 31:6, 32:18, 32:24, 33:3, 33:9, 34:25, 35:8, 35:14, 35:24, 36:16, 36:22, 38:2, 38:4, 38:13, 38:18, 39:1, 40:20, 41:13, 42:9, 42:16, 43:15, 43:20, 45:4, 45:24, 46:3, 46:21, 47:3, 49:14, 49:24, 50:2, 50:6, 51:5, 53:16, 53:21, 54:10, 54:18, 55:12, 55:25, 57:7, 58:10, 60:17, 61:6, 61:21, 61:25, 62:15, 62:20, 63:2, 66:5, 66:18, 67:1, 68:22, 70:12, 70:22, 73:23, 73:25, 75:3, 75:6, 75:13

**themselves** [5] - 4:14, 5:10, 8:10,

46:12, 70:10

**theories** [1] - 53:8

**theory** [1] - 64:19

**therefore** [1] - 37:24

**they've** [2] - 18:24, 64:5

**thinks** [1] - 44:2

**thorough** [1] - 65:1

**thousands** [5] - 23:12, 48:1, 48:2, 49:9

**thread** [1] - 38:24

**threaten** [1] - 41:23

**three** [12] - 6:21, 8:15, 13:11, 14:14, 22:15, 37:15, 37:21, 40:22, 71:5, 72:19, 74:14, 75:25

**three-month** [1] - 14:14

**throes** [1] - 4:7

**throughout** [1] - 73:19

**throwing** [3] - 51:1, 56:23, 58:25

**tight** [1] - 75:1

**timeframe** [2] - 19:2, 19:4

**timeframes** [1] - 20:1

**tip** [1] - 12:23

**to-do** [1] - 29:2

**Tobin** [6] - 2:9, 4:12, 4:15, 4:16, 4:18, 62:24

**TOBIN** [3] - 2:9, 4:16, 63:1

**today** [15] - 3:17, 6:1, 6:2, 6:8, 8:20, 25:15, 28:19, 39:25, 58:12, 68:4, 71:5, 73:25, 74:6, 74:19, 75:16

**together** [2] - 24:2, 42:1

**token** [1] - 51:5

**tomorrow** [1] - 28:19

**ton** [1] - 51:23

**tongue** [1] - 31:5

**tool** [1] - 50:13

**top** [2] - 38:15, 52:10

**topic** [7] - 9:12, 33:23, 33:24, 34:2, 43:16, 62:21

**topics** [6] - 64:5, 65:19, 68:9, 68:16, 69:9, 69:22

**toward** [2] - 27:4, 29:5

**towards** [1] - 63:10

**track** [1] - 21:24

**Trade** [1] - 2:13

**tranche** [1] - 39:16

**transcript** [3] - 76:18, 76:18, 76:19

**Transcript** [1] - 1:25

**TRANSCRIPT** [1] - 1:9

**transparency** [4] - 63:12, 63:25, 68:18, 68:20

**transparent** [2] - 65:19, 67:8

**treat** [3] - 36:13, 37:4, 38:10

**tremendous** [1] - 51:16

**Trent** [1] - 4:5

**TRENT** [2] - 4:7, 45:2

**trial** [2] - 4:7, 45:2

**Tricia** [3] - 37:10, 38:1, 38:5

**truck** [1] - 48:23

**true** [3] - 31:18, 58:8, 76:18

**truly** [2] - 26:14, 31:15

**try** [9] - 6:6, 7:8, 25:14, 37:18, 41:10, 51:23, 58:3, 72:10, 75:20

**trying** [11] - 6:22, 32:14, 33:1, 33:3, 35:6, 41:4, 41:19, 44:3, 63:3, 63:10

**turns** [3] - 13:10, 14:16, 14:20

**twice** [1] - 19:3

**two** [28] - 6:21, 16:17, 19:19, 22:8, 23:11, 26:14, 27:12, 29:5, 29:11, 30:13, 36:3, 37:2, 44:2, 45:25, 47:4, 47:7, 62:4, 65:17, 65:21, 65:24, 68:7, 71:5, 72:15, 72:18, 74:14, 74:17, 75:25

**two-page** [2] - 26:14, 27:12

**type** [2] - 26:8, 57:22

**types** [2] - 14:17, 65:19

**U**

**U.S** [7] - 1:10, 3:2, 3:4, 3:6, 3:8, 3:10, 52:22

**ultimately** [2] - 12:7, 12:8

**umbrage** [1] - 58:1

**unanimity** [1] - 10:22

**under** [10] - 14:10, 23:5, 40:17, 41:5, 43:10, 45:10, 64:23, 65:1, 70:8, 72:5

**underlying** [1] - 42:11

**underscore** [1] - 15:11

**understood** [4] - 10:6, 29:10, 35:15, 73:22

**unfortunately** [1] - 50:3

**unique** [5] - 13:7, 13:9, 15:19, 16:20, 33:25

**United** [2] - 76:17, 76:20

**UNITED** [1] - 1:1

**universe** [1] - 45:7

**unless** [5] - 30:1, 30:19, 31:5, 33:25, 70:24

**unlike** [1] - 40:16

**unquote** [2] - 42:24, 46:14

**unrepresented** [1] - 71:14

**up** [29] - 6:2, 8:25, 9:3, 9:23, 14:11, 15:19, 18:20, 20:18, 21:16, 28:18, 29:24, 35:2, 35:15, 36:4, 42:7, 48:23, 51:18, 51:20, 51:21, 51:22, 58:11, 58:19, 62:7, 62:16, 68:15, 70:15, 71:25, 72:12, 73:9

**UPADHYAYA** [1] - 1:10

**US** [1] - 1:3

**useful** [1] - 14:4

**utility** [4] - 18:11, 20:14, 20:15, 22:22

**V**

**valid** [1] - 28:2

**various** [4] - 22:22, 64:4, 71:16

**version** [4] - 60:5, 60:15, 70:17

**versus** [13] - 3:3, 3:5, 3:7, 3:9, 3:11, 9:25, 32:15, 65:22, 67:13, 67:16, 67:19, 69:19, 69:25

**VIA** [1] - 1:9

**videoconference** [3]

- 8:9, 72:7, 72:9

**VIDEOCONFEREN CE** [1] - 1:9

**view** [7] - 20:14, 20:23, 22:16, 22:24, 29:17, 51:11, 59:15

**violation** [1] - 5:17

**Virginia** [1] - 2:17

**vis-à-vis** [1] - 36:5

**voluntarily** [1] - 58:7

**voting** [1] - 52:18

**vs** [1] - 1:5

**W**

**wait** [2] - 65:25, 75:1

**WALKER** [1] - 1:13

**Walker** [4] - 2:2, 2:12, 3:18, 4:4

**wants** [8] - 6:11, 11:11, 22:11, 23:1, 30:15, 30:17, 66:8, 68:25

**Washington** [3] - 1:24, 2:7, 2:10

**week** [8] - 7:2, 7:20, 9:1, 9:10, 70:20, 70:24, 74:1, 76:1

**weeks** [1] - 29:6

**weigh** [1] - 66:7

**whatsoever** [1] - 71:22

**whereby** [3] - 24:5, 58:21, 69:9

**whichever** [1] - 72:19

**whole** [1] - 37:2

**wildly** [1] - 33:15

**William** [2] - 4:21, 23:4

**WILLIAM** [1] - 2:13

**win** [1] - 35:2

**Wisconsin** [1] - 2:10

**wishes** [3] - 73:15, 74:4

**withdraw** [6] - 23:8, 23:17, 24:5, 25:21, 26:17, 74:18

**withdrawn** [2] - 7:11, 29:2

**withheld** [2] - 12:18, 33:20

**withhold** [2] - 44:22, 59:14

**witnesses** [4] - 18:17, 66:16, 67:24, 69:3

**wondering** [1] - 18:12

**Woodbridge** [1] -

2:17

**word** [6] - 13:25, 14:13, 16:13, 16:25, 56:23, 58:24

**words** [7] - 30:13, 31:18, 35:2, 43:24, 49:17, 49:21, 70:5

**work-related** [5] - 65:5, 67:13, 67:16, 67:25, 70:5

**works** [1] - 50:17

**World** [1] - 2:13

**world** [2] - 54:21, 55:5

**worth** [1] - 51:24

**writing** [2] - 72:8, 73:7

**wrongs** [1] - 37:20

## Y

**year** [3] - 13:3, 14:3, 50:21

**years** [2] - 22:8, 51:24

**yourselves** [4] - 3:13, 6:19, 6:24, 72:14

## Z

**Zoom** [4] - 7:8, 7:13, 7:14, 71:20