<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   US DOMINION, INC., et al.,      )
                                     )
 4            Plaintiffs,            )
                                     )
 5        vs.                        )   1:21-cv-00040-CJN
                                     )   1:21-cv-02130-CJN
 6   SIDNEY POWELL, et al.,          )   1:21-cv-02131-CJN
                                     )   1:21-cv-00445-CJN
 7            Defendants.            )   1:21-cv-00213-CJN
     _____    )
 8

 9      TRANSCRIPT OF REMOTE PROCEEDINGS VIA VIDEOCONFERENCE
                     DISCOVERY CONFERENCE
10   BEFORE THE HONORABLE MOXILA A. UPADHYAYA, U.S. MAGISTRATE JUDGE
                       October 8, 2024
11                 2:11 p.m. - 4:41 p.m.
                     Washington, DC
12

13   FOR THE PLAINTIFFS:
          Susman Godfrey LLP
14        BY:  DAVIDA BROOK, STEPHEN SHACKELFORD, JR.,
          JONATHAN ROSS and EDGAR SARGENT
15        1900 Avenue of the Stars, Suite 1400
          Los Angeles, California 90067
16        (310) 789-3100

17   FOR SIDNEY POWELL and SIDNEY POWELL, P.C.:
          Kennedys CMK LLP
18        BY:  JOSHUA MOONEY, TERESA CINNAMOND and MARC
          CASARINO
19        1600 Market Street, Suite 1410
          Philadelphia, Pennsylvania 19103
20        (267) 479-6719

21
     _____
22                        SONJA L. REEVES
                     Registered Diplomate Reporter
23                    Certified Realtime Reporter
                    Federal Official Court Reporter
24                   333 Constitution Avenue, NW
                        Washington, DC 20001
25        Transcript Produced from the Stenographic Record
</pre>

1   **FOR HERRING NETWORKS, INC., CHARLES HERRING, ROBERT HERRING, SR. and CHANEL RION:**
2       Jackson Walker, LLP
        BY:  CHARLES BABCOCK, JOHN K. EDWARDS, CARL C. BUTZER,
3       JONATHAN NEERMAN, MINOO BLAESCHE and JOSHUA ROMERO
        1401 McKinney Street, Suite 1900
4       Houston, Texas 77010
        (713) 752-4319
5
    **FOR DEFENDING THE REPUBLIC, INC.:**
6       Coburn & Greenbaum PLLC
        BY:  MARC JASON EISENSTEIN
7       1710 Rhode Island Avenue, NW, 2nd Floor
        Washington, DC 20036
8       (202) 470-2695
9       Tobin, O'Connor & Ewing
        BY:  DAVID C. TOBIN
10      5335 Wisconsin Avenue, NW, Suite 400
        Washington, DC 20015
11      (202) 362-5903
12  **FOR CHRISTINA BOBB:**
        Ford, Walker, Haggerty & Behar
13      BY:  WILLIAM C. HAGGERTY and KATHERINE HARDWOOD
        One World Trade Center, 27th Floor
14      Long Beach, California 90831
        (714) 335-2101
15
    **FOR MY PILLOW, INC. and MIKE J. LINDELL:**
16      McSweeney, Cynkar & Kachouroff PLLC
        BY:  CHRISTOPHER IVAN KACHOUROFF
17      13649 Office Place, #101
        Woodbridge, Virginia 22192
18      (703) 365-9900
19
20
21
22
23
24
25

1              (Call to Order of the Court at 2:11 p.m.)

2          DEPUTY CLERK:  Good afternoon, Your Honor.  This is

3    Civil Case 21-2130, *US Dominion, Inc., et al. versus Herring*

4    *Networks, Inc., et al.*; Civil Case 21-40, *US Dominion, Inc., et*

5    *al. versus Powell, et al.*; Civil Case 21-445, *US Dominion,*

6    *Inc., et al. versus My Pillow, Inc., et al.*; Civil Case

7    21-2131, *US Dominion, Inc., et al. versus Byrne*; and Civil Case

8    21-213, *US Dominion, Inc., et al. versus Giuliani*.

9          All matters are set for a discovery hearing.  Parties,

10   please introduce yourself for the record, starting with

11   plaintiffs' counsel.

12         MS. BROOK:  Good afternoon, Your Honor.  This is

13   Davida Brook from Susman Godfrey on behalf of the plaintiffs.

14   With me today are my colleagues Stephen Shackelford, Jonathan

15   Ross and Edgar Sargent.

16         THE COURT:  Good afternoon, Counsel.

17         For Herring Networks?

18         MR. BABCOCK:  Good afternoon, Your Honor.  This is

19   Charles Babcock, along with Carl Butzer, Jonathan Neerman, John

20   Edwards and Minoo Blaesche, for Herring Networks, Robert

21   Herring, Sr., Charles Herring and Chanel Rion.

22         THE COURT:  Good afternoon, Counsel.

23         MR. HAGGERTY:  Good afternoon, Your Honor.  It's

24   William Haggerty on behalf of defendant Christina Bobb.

25         THE COURT:  Good afternoon, Mr. Haggerty.

1          MS. CINNAMOND:  Good afternoon, Judge.  Teresa

2     Cinnamond with Kennedys for the defendants Ms. Sidney Powell

3     and Sidney Powell, PC.  And I believe my partners, Josh Mooney,

4     Marc Casarino and Daniel Marvin are joining us as well.

5          THE COURT:  Good afternoon.

6          MR. TOBIN:  Good afternoon, Your Honor.  David Tobin

7     and Marc Eisenstein.

8          THE COURT:  Good afternoon.  Is that everyone?

9          Okay.  I would just like to remind everyone that

10    pursuant to former chief Judge Howell's standing order 20-20,

11    recording or rebroadcasting of this hearing is strictly

12    prohibited.  That includes if anyone is a party to this

13    videoconference and has their phone on in order to allow

14    someone else who is not a party to this videoconference to

15    listen, that is strictly prohibited.

16         And so by virtue of the fact that all counsel have

17    heard this and are not objecting -- I'll give you a chance to

18    object -- then I'm going to assume that you are complying with

19    my order, and if I hear that my order has not been complied

20    with, believe me, all sanctions will be on the table.  Okay.

21         So I have a number of discovery disputes that have

22    been pending in the consolidated cases, and my understanding is

23    that some of the issues that were previously submitted to me

24    the parties have been able to resolve.  My law clerk emailed to

25    all of you the list of disputes that the Court believes are

1   still at issue, and I'm going to take them each one by one.

2          There is one issue relating to a deposition, which I

3   will handle last, because it will be under seal, and I'm going

4   to seal the courtroom when we discuss that dispute.  And I

5   believe all counsel know what dispute I'm referring to.

6          Okay.  So the first issue is whether to extend

7   pretrial deadlines.  And my understanding is that -- actually,

8   before we move on to that, I just want to note that I don't

9   believe that anyone is here on behalf of Mr. Lindell or My

10  Pillow or Mr. Giuliani or Mr. Byrne.  I will just note that

11  there was proper notice of this hearing that was entered on

12  each and every one of the dockets, and so those parties have

13  received notice of this hearing and the Court is not going to

14  hold up the hearing due to any of those parties not being here

15  as they were all duly notified of this hearing.

16         In any event, I think most or all of the disputes

17  actually deal with the parties who are here, so I'm going to go

18  ahead and proceed to handle those issues.

19         Okay.  The first issue deals with the pretrial

20  deadlines.  I would like to just hear very briefly from

21  Dominion and from the defendants, any of the defendants who are

22  opposing the extension of pretrial deadlines on this issue

23  simply just to tell me what the status is of discovery.  My

24  understanding, and this is what I expect to be the case, is

25  that the only depositions that have not been taken or discovery

1    that's not been taken are ones about which I should have been

2    notified prior to September 30th.

3           And so fact discovery should otherwise be completed,

4    but Ms. Brook, let me hear from you or one of your colleagues

5    on this issue.

6           MS. BROOK:  Good afternoon, Your Honor.  Davida Brook

7    from Susman Godfrey on behalf of the plaintiffs.  Before I do

8    that I will say for the record that Dominion also separately

9    emailed Mr. Byrne the correspondence setting this conference

10   and provided him notice that way as well.

11          Regarding the schedule, Dominion thinks it should be

12   relatively straightforward.  At the top, let me summarize our

13   argument with three points.

14          One, this is not a request to push off the fact

15   discovery cutoff.  Fact discovery, as the Court noted, is

16   largely done I would say in two out of the five cases.  For the

17   others, the parties have all agreed, or at least recognized the

18   need for some additional time, not to receive new discovery,

19   but simply to wrap up previously requested discovery.

20          So for example, Mr. Lindell has not been set for a

21   deposition, nor has Mr. Giuliani or Mr. Byrne, but that's all

22   been by agreement of the parties with the understanding that

23   would happen in the coming months.

24          Number two, this is not a request to push out the

25   trial date; rather, Dominion and several of the defendants are

1    seeking an approximately two-month extension to take previously

2    requested depositions and to comply with expert and summary

3    judgment deadlines.  While no trial date has been set, Dominion

4    would be surprised if that length of an extension impacted any

5    setting.

6         And number three, Dominion believes there is good

7    cause for granting this request for the record shows that the

8    parties have been diligently litigating these cases.  Indeed, I

9    believe there have been 86 depositions in the last four months

10   alone.

11        And Dominion also believes that denying this request

12   will prejudice its ability to litigate these very important

13   lawsuits.  I'll start very briefly with the agreement and then

14   I'll get to the disagreement.

15        Dominion, Giuliani, Lindell, My Pillow, and, to some

16   extent, Mr. Byrne have all agreed to push out deadlines by

17   approximately two months.

18        As to Mr. Giuliani, Mr. Lindell, My Pillow, they have

19   agreed to the precise schedule that Dominion emailed to Your

20   Honor on September 10th of this year.  We put that same

21   schedule to Mr. Byrne.  He has not responded, but his actions

22   seem to indicate that he agrees that some additional time is

23   warranted.

24        That additional time makes sense because again, Your

25   Honor, while everyone has been diligently pursuing discovery,

1    there were some delays, not of Dominion's making, that require

2    the need for some additional time.  As just one example,

3    Lindell and My Pillow had a lot of trouble with producing their

4    documents.  Rather than coming to the Court with that dispute

5    and raising heck, we worked it out with My Pillow and Lindell,

6    and they did eventually give us their documents, but in a

7    rather untraditional format that has taken some time to process

8    and review.

9           And we haven't taken all of the My Pillow and Lindell

10   depositions yet, but we have agreed with them to work

11   cooperatively to do them on the schedule that we put before

12   Your Honor.  Same thing with Giuliani; his case was recently

13   unstayed.  And of course, the Court is familiar with the issue

14   with Mr. Byrne, all of which we think warrant this just

15   approximately two-month extension in complying with discovery,

16   and then just getting the expert reports and summary judgment

17   briefs out.

18          That brings us to disagreement, which is OAN defendant

19   Christina Bobb in particular.  Here, Your Honor, I have to say

20   I'm disappointed to be making this part of my argument today,

21   as the main reason we need this additional time in the OAN

22   case, besides Judge Nichols' clear preference that all of these

23   cases stay on the same schedule pretrial, is because one of the

24   main OAN defendants, Christina Bobb, was criminally indicted

25   for actions she took relating to the 2020 presidential

1    election.  That fact is obviously not of Dominion's making or

2    Dominion's fault, but as this Court knows, again, rather than

3    argue about it and force this Court to rule on everything, we

4    have worked cooperatively and collaboratively with counsel for

5    Ms. Bobb and we agreed to push out, not just her deposition,

6    but her document production until December 13, 2024.

7            When the parties reached that agreement, Your Honor,

8    and this is critical, it was no secret that the other deadlines

9    would need to be adjusted accordingly.  Indeed, the stipulation

10   that was put before this Court reads, and I quote, "The parties

11   will work together in good faith to adjust the rest of the

12   schedule accordingly."

13           It seems that what happened, Your Honor, is that even

14   though counsel for OAN, which is not counsel for Ms. Bobb, was

15   aware of all this, they decided they did not like this plan and

16   so now counsel for Ms. Bobb has done a complete about face and

17   is refusing to adjust any dates at all.  That is not the

18   agreement that was reached between the parties and put before

19   this Court.  It's not right.

20           It also makes no sense from a judicial economy

21   perspective and would unfairly prejudice Dominion.  I'll take

22   both of those in turn very quickly.

23           Regarding judicial economy, what OAN and Ms. Powell

24   are proposing here makes no sense, it's that expert reports be

25   due before a named defendant and critical witness has produced

1    her documents, let alone sat for her deposition.  Again, this

2    is not just some ancillary person where we can update the

3    expert report pro hoc.  By way of one example, discovery has

4    shown that Christina Bobb drafted an executive order, the goal

5    of which seems to have been to prevent the certification of the

6    Electoral College, and she then enlisted her colleagues at OAN,

7    Chanel Rion and Charles Herring, to help put that executive

8    order before then President Trump and his team in the days

9    leading up to January 6th.

10          She did all of this while purporting to be an

11   independent journalist for OAN about supposed election fraud.

12   Dominion contends that that is actual malice 101, but yet OAN

13   would have Dominion put together its reports without the

14   benefit of Ms. Bobb's documents and without the benefit of her

15   testimony.  And I trust, Your Honor, that OAN and Ms. Bobb are

16   not going to respond by saying, well, you got to depose Ms.

17   Rion and Mr. Charles Herring, so you have enough to go on,

18   because let me tell you, while they did not deny what I just

19   said to the Court, their memories were not so good.  It was

20   clear that we needed to talk to Ms. Bobb before we were going

21   to have the full story.

22          Then there is the prejudice to Dominion.  I want to be

23   clear Dominion has already been prejudiced by the agreement it

24   reached with Ms. Bobb, which, again, contemplated further

25   adjustments to the schedule, because Dominion was forced to

1    take literally every offensive deposition in this case, many of

2    which are trial depositions where Dominion cannot compel that

3    person to trial, without the benefit of Ms. Bobb's documents

4    and Ms. Bobb's testimony.

5            Now Ms. Bobb and OAN would add to that prejudice by

6    having Dominion put together and publish to them its expert

7    reports before Ms. Bobb, and possibly also Mr. Robert Herring,

8    has had to answer questions under oath.  That is backwards.  It

9    is not fair to Dominion.

10           Finally, in plain contrast to what I just laid out for

11   the Court, neither Ms. Bobb or OAN has articulated any known

12   prejudice to them if the Court grants this modest two-month

13   extension, not to the fact discovery cutoff, but simply to the

14   other deadlines that flow from it.

15           And so for all those reasons, Your Honor, where a

16   majority of the parties have agreed to a modest extension,

17   where the Court has indicated a strong desire to keep these

18   cases on the same schedule for pretrial purposes, and where

19   there is a good showing that the parties have been working in

20   good faith to pursue these litigations and the delays that are

21   causing this most recent request are not of Dominion's making,

22   Dominion thinks that the schedule submitted to the Court on

23   September 10, 2024 should be granted.

24           THE COURT:  Thank you, Ms. Brook.

25           Very briefly, I'm going to hear from OAN and Bobb.  If

1    there are still objections, I would like to hear from anyone

2    objecting to the modification of the schedule.

3            MR. BABCOCK:  Your Honor, this is Charles Babcock.

4    And Ms. Brook says that the trial setting, which we don't have

5    right now, it won't be affected.  And looking at her proposed

6    dates under the current schedule, the dispositive motion

7    briefing will be done by June 2nd of next year.  Under the

8    proposal, it won't be done until the Friday before Labor Day of

9    next year, making a trial setting in 2025 unlikely.

10           As the Court knows from not only this case, but

11   Smartmatic, OAN has wanted to move this case along and comply

12   with what we thought, and which Dominion agreed, were

13   reasonable deadlines going forward, and we have done our utmost

14   best to do that.

15           We note that the only reason for this extension that

16   has been proffered with respect to our case, is Ms. Bobb -- and

17   Ms. Brook is perhaps overstating a little bit the prejudice to

18   Dominion.  First of all, they sued on 25 broadcasts.  Ms. Bobb

19   was involved with three of them.  One was just an interview

20   with Rudy Giuliani, and the other Dominion wasn't mentioned,

21   although election systems were.

22           And they haven't identified their experts yet, but we

23   note from the last case, that they had nine experts, four of

24   them -- or five of them -- excuse me, five of them were related

25   to damages, three were technical, and only one was related to

 1   so-called journalistic standards.  If they follow that same

 2   pattern here, which we have an indication they will, Ms. Bobb

 3   has nothing to do with Dominion's damages.  She has nothing to

 4   do with their technical experts, who are expected to say that

 5   the Dominion systems were just fine in the 2020 election.

 6          And so it gets down to journalism expert.  And if they

 7   want a little more time for the journalism expert or they want

 8   to supplement the journalism expert's opinions, which should be

 9   formed by now as to everybody but Ms. Bobb -- and frankly, what

10   she did for those broadcasts is pretty well-known.  I mean,

11   they have deposed people all around it, everybody but Ms. Bobb.

12          So if the deadlines are going to be moved, it seems to

13   me there ought to be a good reason.  There is no reason to move

14   eight of Judge Nichols' nine deadlines, four of which relate to

15   experts, one was his own setting, which they now put "to be

16   determined," and the other three are dispositive motions.

17          We would like the case to move on the current

18   schedule.  We don't see a reason to adjust it because of

19   Ms. Bobb.  And by saying "you," but you foreshadowed this in

20   our last conference, Your Honor, by saying, "Don't come to me,

21   Dominion, asking for a bunch of extensions on the deadlines

22   because of Ms. Bobb," because she has very good reason for

23   going later, as the agreement was, and that agreement OAN was

24   not a party to, although certainly didn't object to it.

25          That's all I have, Your Honor.

1          THE COURT:  Thank you, Mr. Babcock.

2          Mr. Haggerty, do you have anything in addition?

3          MR. HAGGERTY:  No, Your Honor.  Just very briefly that

4    I was happy to cooperate with plaintiffs' counsel with respect

5    to putting off the deposition because of the unique

6    circumstances surrounding Christine's indictment.  I just did

7    not think that on behalf of Ms. Bobb I should agree to all of

8    the different dates that plaintiffs' counsel was requesting

9    here, so that was the purpose for my opposition, Your Honor,

10   but that's really all I have got.  Thank you.

11         THE COURT:  Okay.  All right.  Thank you.

12         I am going to adopt Dominion's requested modifications

13   of the trial schedule -- of the pretrial schedules.  There

14   are -- Judge Nichols has expressed preference to have all of

15   the cases running on the same schedule, and there is good

16   reason to push these deadlines out, very modest extensions here

17   of about two months, two to two and a half months for some of

18   these deadlines.

19         I haven't heard any cognizable prejudice that any of

20   the defendants have articulated with respect to this modest

21   extension.  And so I will adopt that extension for all of the

22   cases.

23         With respect to the status conference that Judge

24   Nichols has scheduled for February 18, 2025, as you all know,

25   he has referred any changes -- any disputes regarding changes

1    to the schedule to me.  And so I will let him know that I'm

2    adopting the schedule, and he can decide whether he's going to

3    continue to have that conference on that day.

4           Okay.  The first dispute I'm going to handle last, as

5    I said at the top of the hearing, the first dispute that's

6    between Dominion and OAN.

7           So let's move to Dominion's request for certain

8    financial documents, to which the Herring parties have

9    objected.  So I don't need argument on this issue.  I just

10   simply would like to know from Dominion, of the requests at

11   issue, which requests go to Dominion's theory of actual malice

12   and which go to Dominion's request for punitive damages?

13          MR. SHACKELFORD:  Your Honor, the requests for

14   financial conditions which includes things like profits goes to

15   actual malice, because that shows a financial motive,

16   specifically how the finances were very positively impacted by

17   the continued publication of the defamatory case about

18   Dominion.  That goes to actual malice.  The statements --

19   that's 77 and 78.

20          79 goes towards OAN's efforts to obtain financing,

21   funding or investors.  That also goes to actual malice.  It

22   shows how those efforts changed or were formed by the success

23   that OAN enjoyed, the increasing success they enjoyed as a

24   result of the publication or defamatory statements.

25          That request is also relevant to a different issue,

1  which is it has become clear from one of the main arguments

2  that OAN is going to make at trial is that Dominion was never

3  worth nearly as much as we said it was worth -- (indiscernible)

4  -- and so the way that OAN chose to value itself when it was

5  out shopping for investors and so forth, even the multiples

6  they use and so forth, that is directly relevant to their

7  attempt to attack ours, so we think that RFP 79 is relevant

8  both to actual malice, but also to our own defense against

9  their arguments regarding how to value a company and the

10  reasonableness of valuing companies.

11        And then RFPs 80 and 81, which are tax returns and

12  financial statements from the individual defendants, that shows

13  the increase in fortunes of the individuals in particular as a

14  result of their support and driving the publication and

15  defamatory statements.

16        I think my answer is all of them in one way or another

17  go to actual malice, Your Honor.  The only ones that are

18  relevant also to punitive damages would be the net worth, the

19  net worth statements, which are relevant to actual malice

20  because they show the increase in value as a result of this

21  activity, but they are also relevant -- net worth statements

22  are also relevant to punitive damages, Your Honor.

23        THE COURT:  How does Dominion purport to show that

24  simply because a defendant makes more money in any given year

25  that that is somehow specifically related to the publishing of

1    allegedly defamatory statements?

2            Isn't it every -- isn't it the premise of almost all

3    businesses that they want to try to make more money?  How is

4    that going to show actual malice?

5            MR. SHACKELFORD:  It's specifically tying the --

6    seeing the increase in revenues and the increase in

7    profitability in the early months as a result of these

8    publications in November and December.  You see the ratings did

9    as well, Your Honor, and you see in terms of discussion of how

10   they are doing better and better in November and December of

11   2020.

12           It is not just a general profit.  When you see the

13   general profit motive in cases, it's merely saying you can't

14   just argue to the jury that they did this because it was more

15   sensational, you have to have very specific evidence.  We don't

16   have the numbers, so we can't tell the full story.  We have

17   very specific evidence that the company was doing better.

18   Certainly ratings rised as a result of publishing these

19   statements.

20           To be clear, it's the statements about Dominion and

21   the broader narrative about election fraud, of which Dominion

22   was a key part, but that was dominating their coverage in

23   November and December and continued to dominate their coverage.

24           THE COURT:  So as a major presidential -- this was a

25   very, very busy time in American politics.  So I mean, I just

1    don't see how Dominion is going to draw a line between the

2    increased viewership as a result of alleged defamatory

3    statements versus it being a major presidential cycle.

4         MR. SHACKELFORD:  Your Honor, Fox News ratings went

5    down during the same time period.  Specifically, OAN and

6    Newsmax were working overtime to attract Fox viewers who wanted

7    to see this sort of purported reporting on this alleged

8    misconduct by Dominion and others.

9         THE COURT:  Didn't Dominion sue Fox News for making

10   alleged defamatory statements?

11        MR. SHACKELFORD:  It did, Your Honor.

12        THE COURT:  There was a major settlement from that

13   case, so that kind of undercuts your point, in my view.

14        MR. SHACKELFORD:  Your Honor, it actually doesn't,

15   because what we saw with Fox is that the shows that broadcast

16   the lies managed to hang on to more viewers.  I think this is

17   all public.  They were fighting behind the scenes to keep

18   broadcasts on certain shows in order to keep their ratings from

19   falling any further, but the evidence that OAN -- I'm focusing

20   on OAN here -- shows that they were completely cognizant and

21   were trying really hard to get viewers from Fox by publishing

22   these statements.

23        So we do have evidence to show that was a motive, but

24   we do think this it is relevant to show just how well this

25   company did as a result of stealing some viewers from Fox.

1    Frankly, OAN went way farther than Fox did and continued it for

2    way longer than Fox did, all the way basically until we sued

3    them in August of 2021.

4         So it's a story that is different from the Fox story

5    both in length and in sort of the type of falsehoods that they

6    were willing to air on OAN, and we think that the economics

7    showing how much drastically better the company did in

8    November, December and into the first part of 2021, we think

9    that is an important part of the story.

10        And it's not just a rising tide, and we think the

11   rising tide continued because of this, so that's the order.

12        THE COURT:  Thank you, Mr. Shackelford.

13        Very briefly, anyone on behalf of OAN.

14        MR. BABCOCK:  That would be me, Your Honor.  You said

15   no argument, but --

16        THE COURT:  Isn't anyone going to give you a hand

17   today, Mr. Babcock?

18        MR. BABCOCK:  Later maybe.  The rest of them burdened

19   me with everything because apparently I'm the only one that can

20   resolve things with the other side.

21        But number one, I thank Mr. Shackelford for suggesting

22   an argument that I hadn't thought of and may not pursue, but

23   beyond that, I think Your Honor has hit upon the obvious, which

24   is how in the world, with the fact that we want to make money

25   and that we made perhaps more money in 2020 than we did in 2019

1    for a number of factors.  They have got ratings information.

2    They can do that, but to -- and they want to go all the way

3    back to 2013, by the way, for financial statements.

4         But the fact that we made money is just not pertinent

5    to actual malice.  The only case they cited, the *Connaughton*

6    case from the United States Supreme Court says exactly the

7    opposite of what they say, profit motive is not evidence of

8    actual malice.  And the *Connaughton* case, the Supreme Court

9    points to the *New York Times versus Sullivan,* which is the

10   parent of the actual malice standard, and in that case the New

11   York Times was printing an advertisement for which they were

12   sued, so there was obviously a profit motive in publishing an

13   advertisement.

14        So I don't think they have demonstrated relevance.

15   And certainly in terms of proportionality, I don't think they

16   have made the case on these items.

17        THE COURT:  Thank you, Mr. Babcock.

18        Here is my ruling:  I do want to hold -- so any --

19   with respect to any documents that are solely going to

20   Dominion's claim for punitive damages, we're going to defer

21   production of those until and unless there comes a time that

22   Dominion has proven its entitlement to punitive damages.

23   That's a pretty standard way of proceeding.

24        With respect to, say, net worth statements that are

25   going solely to punitive damages, no one disputes that that

1    information can be relevant.  The question is whether it should

2    be produced now.  I don't hear OAN making any real objection to

3    production of that information, but that is going to be

4    deferred until trial or a time that the Court has determined

5    that punitive damages can be recovered.

6         With respect to documents that Dominion claims goes to

7    its theory of actual malice, there being a financial motive, I

8    will allow the production of certain documents for that issue

9    to give Dominion an opportunity to discover and make its case

10   on the actual malice issue.  As attenuated as I might think it

11   is, I do think Dominion is entitled to seek that information

12   and attempt to make its case there, but I do think that the

13   requests as drafted are overly broad in order to meet that

14   objective.

15        And so we can do one of two things.  I can actually go

16   through request by request and try to dissect for you all and

17   give you all a narrowed version of the request to meet that

18   objective of Dominion's, or I can take a break and let you guys

19   talk and try to figure it out.

20        Mr. Shackelford is smiling, because I'm guessing he is

21   going to say that's not possible, but now you have a ruling

22   from me, so I think you can figure it out.

23        MR. SHACKELFORD:  I was going to say the opposite,

24   Your Honor.  I can say that's always an easy choice for

25   counsel.  Of course we'll take that offer from Your Honor.  Mr.

1    Babcock and I, or his designee, if you'd like, are happy to

2    discuss, and I think I understand things like the timetable and

3    so forth.  Let us try to work it out if we can.

4         THE COURT:  What I would like you all to do is I would

5    like to resolve all of these issues today, and so I might take

6    a break at some point and just give you a chance to talk and

7    then come back on.

8         Let me give you some guidance that will hopefully be

9    helpful.  I think going back to 2013 for financial statements

10   is overly broad for this particular issue.  I also don't know

11   how the actual documents supporting tax returns are going to

12   necessarily be relevant if you can get financial statements for

13   this issue, right.  For punitive damages, it's potentially a

14   different issue, but for the issue of actual malice, I think

15   Dominion can attempt to make its case on this issue without all

16   of the tax returns, underlying tax returns for the company and

17   the individuals.  But I'll again let you all talk about it at a

18   break and see if you can figure it out.

19        I'll also say that with respect to RFP No. 79, that

20   will stand and I will allow those documents to be produced,

21   although I truly think 2010 to the present also seems overly

22   broad, so I would like you all to discuss that.

23        MR. SHACKELFORD:  We will, Your Honor.  Thank you.

24        THE COURT:  Okay.  Thank you.

25        Okay.  The next issue I have is Dominion's amended

1    initial disclosures.  My understanding is that Dominion amended

2    its initial disclosures on September 30th close to the end of

3    the day and added some additional information and that OAN is

4    seeking to strike that information.

5         This seems to be a dispute that has evolved somewhat.

6    I thought initially it was one dispute, and now my

7    understanding is that the scope of the dispute has changed.

8         So if I'm right, why don't I -- just let me turn to

9    someone from OAN to tell me if that is the issue, that OAN is

10   seeking to strike any disclosures that were amended late in the

11   day on Monday, September 30th.

12        MR. BABCOCK:  Your Honor, it's not me.  It's

13   Mr. Edwards.

14        THE COURT:  Okay, Mr. Edwards.

15        MR. EDWARDS:  Good afternoon, Your Honor.  You are

16   correct.  The scope of the dispute is narrowed.  We had

17   additionally raised the issue of plaintiffs' disclosures

18   regarding damages as being inadequate and sought an order from

19   the Court to require them to amend those disclosures to comply

20   with the rule.

21        Now with the passage of time, with the close of

22   discovery on September 30th, we think it's too late to amend.

23   The plaintiffs should be required to stand on their disclosures

24   as they exist at the moment.

25        On Monday night, September 30th, the date discovery

1    closed, they served some amended disclosures.  They didn't

2    correct the inadequacy of their damages disclosures, but what

3    they did do is they added four new jurisdictions where they are

4    claiming damages.  Instead of identifying specific witnesses

5    within these jurisdictions, they just said "representatives."

6            The four counties are Elbert County, Colorado; Monroe

7    County, New York; Saratoga County, New York; and Schuyler

8    County, New Jersey.  At the same time, Monday night, again, on

9    the day discovery closed, they amended their interrogatory

10   response to Interrogatory No. 20, which asked about the damages

11   jurisdictions, and they listed these four.

12           And we had a meet and confer about this, Your Honor,

13   and we were told that Elbert County had decided not to renew

14   their contract with Dominion at the end of the year, and they

15   learned about that on August 27th.  Now, they didn't do

16   anything between August 27th and September 30th to alert us

17   that we have a new claim for damages jurisdiction so that we

18   could do discovery on it, even though we had a compressed

19   period to do it in.  They waited until the night of the

20   discovery deadline.

21           Schuyler County, they told us they learned that on

22   September 4th; Saratoga County, on September 15th; and Monroe

23   County, also on September 15th.  They waited until the end of

24   discovery.

25           They did tell me that Elbert County was disclosed to

 1    us in a deposition.  They said it was a deposition of

 2    Mr. Stephen Bennett (ph), which occurred on September 25th, the

 3    Wednesday before the close of discovery, and they gave me a

 4    number of things.  I went back and looked at his testimony.

 5    And Mr. Bennett merely testified that Elbert County decided not

 6    to renew their contract and they were going with a competitor,

 7    a company called Clear Valley.

 8            But there was actually no indication in the deposition

 9    that Dominion was now claiming that Elbert County is a lost

10    jurisdiction, that they lost this contract because of any

11    alleged defamation by OAN, nothing to put us on notice that

12    this county was part of the damages.

13            So ultimately, Your Honor, when is this going to end?

14    They wait until the end of discovery to disclose these new

15    jurisdictions.  We can't take discovery on them.  We're not

16    asking to, because, frankly, when will this end, because they

17    previewed for me that there likely will be other jurisdictions

18    added down the road.

19            So are we going to be in a position of constantly

20    reopening discovery for depositions of new damage

21    jurisdictions?  There should be a stopping point.  We're four

22    years past the alleged defamation.  It's very prejudicial to

23    OAN to do this on the close of discovery and put us in the

24    position we're in.

25            So we're asking the Court to strike those four newly

1  added jurisdictions as tardy and under Rule 37(c)(1), which the

2  Court makes the requirements of 26(a) in terms of timely

3  disclosing fact witnesses.

4          THE COURT:  When did you receive or when were these

5  amended disclosures served, what time?

6          MR. EDWARDS:  Let's see.  It was Monday night.  Let me

7  get the exact email in front of me.

8          All right.  Let's see.  It was at -- the supplemental

9  interrogatory answers were at 9:01 p.m., and the disclosures

10 themselves were at -- let me see the time -- for some reason, I

11 don't see the time.  It was afterwards.  9:21 p.m.

12         THE COURT:  Thank you, Mr. Edwards.

13         Dominion, who is going to be addressing this?

14         MR. SHACKELFORD:  Your Honor, Stephen Shackelford.  So

15 the reality of this, if past is prologue, Dominion is going to

16 keep losing business that it would not have lost in the

17 alternate universe where the 2020 election defamation never

18 happened.

19         When we go to trial we're going to hear their witness.

20 It's going to be part of the story.  That is the presumption

21 behind -- likely the presumption behind damages as well.

22 That's how it was in the Fox case, is that Dominion --

23 (indiscernible) -- and they are not getting any new business.

24 (Indiscernible) -- despite the one example in deposition that

25 Mr. Edwards referenced, Dominion salesperson was baffled, you

1    can see the answer, saying they chose to go with a more

2    expensive, less good product over us, which doesn't make any

3    sense to Dominion, other than if you look at the

4    extracurricular issues that the -- (indiscernible.)

5        When OAN served interrogatories on us, instruction

6    number five says you are obligated to keep updated to and

7    through trial, so as we continue to suffer losses that are

8    substantially in part because of the defamation, we intend to

9    keep supplementing and providing information about those.

10       I'm not sure how we go to trial if we're not allowed

11   to talk about losses that continue to occur up until trial.  I

12   suppose we can just say losses have continued to occur and we

13   can't tell you about them.  I certainly don't want the jury to

14   think the losses stopped, because they haven't and they're not

15   stopping.

16       With these particular four, we went back to clients to

17   find out what other losses had occurred very recently --

18   (indiscernible) -- we were in the middle of quite a few

19   depositions.  We did our best to update that.  There will be

20   more.  So in the Fox case, we updated until close to trial.

21       THE COURT:  Well, how would Dominion purport to allow

22   OAN to test the assertions made in your initial disclosures?  I

23   mean, typically initial disclosures -- I understand of course

24   they can be amended -- but typically those initial disclosures

25   serve to give the other party notice of witnesses and the

1    foundations of discoverable information.

2          So how do you purport to allow OAN to test any of the

3    information that Dominion added at the last -- at that late

4    time?

5          MR. SHACKELFORD:  Our response is disclosures have

6    been extensive as to the specific jurisdictions, well over 100

7    jurisdictions have been in responses for months now, Your

8    Honor.  And OAN chose to go out -- (indiscernible) -- they went

9    out and took depositions, and I imagine what they are going to

10   do is come to trial and play that tape and say this shows that

11   these people -- (indiscernible) -- defamation, and we're going

12   to show different parts of the tape and say, "Actually, this is

13   what these depositions show."

14         OAN didn't choose to depose every jurisdiction.  And

15   us adding four more jurisdictions that we couldn't have known

16   about before they actually chose not to renew, Your Honor, we

17   couldn't have made those disclosures in June or July or August,

18   because in fact those losses had not happened.

19         So we would be open to -- I guess we would be open to

20   considering some way of late depositions of late added folks,

21   but it's going to keep happening, Your Honor, so we have to

22   come up with a way to deal with it.  All I can say is these

23   losses will continue to happen.  They have continued to happen

24   for years now, and we think we are entitled to let the jury

25   know the losses that continue up until the moment of trial.

1          THE COURT:  Well, is it true that Dominion knew about

2    these four jurisdictions in late August and early September?

3          MR. SHACKELFORD:  One of them apparently, the date on

4    which Dominion found out they had certainly lost was late

5    August, and the other ones, those dates were mid September,

6    yes, Your Honor.

7          THE COURT:  So why didn't you alert OAN to this or why

8    did Dominion wait until after 9:00 p.m. on the night of the

9    close of discovery to amend its disclosures?

10         MR. SHACKELFORD:  To my knowledge, Dominion's counsel,

11   Susman Godfrey, we went back to ask these questions and we

12   turned it around as quickly as we could.  I'm not sure what

13   that would have changed, Your Honor, we but we are open to

14   potentially taking additional depositions, Your Honor.  We

15   proceeded in good faith as quickly as we could.

16         THE COURT:  Well, the time for depositions was the end

17   of September, but, you know, if Dominion is going to sit on

18   this information for whatever reason until that late time, then

19   OAN has a -- deserves a fair opportunity to test that

20   information.  And what I don't want -- so I'm going to allow

21   OAN to conduct very limited discovery into these four

22   jurisdictions, but my preference would be that you all figure

23   out a way, if this is going to keep happening, to address it,

24   because at some point, the Court is going to cut this off and

25   you can't -- if there is a loss that occurs on the eve of

1    trial, you're not simply entitled to say it without giving the

2    defendants an opportunity to test that damages assertion.  So I

3    mean, what would be your proposal?

4         MR. SHACKELFORD:  I am happy to meet and confer with

5    OAN over this issue.  I do think everyone would prefer not to

6    have to keep doing depositions up until and into trial.  If

7    Your Honor is amenable to it, I think we should meet and confer

8    over how to handle this issue.

9         THE COURT:  Well, you know, Mr. Edwards has a good

10   point that it has to stop at some point.  And so I'm going to

11   order you all to talk when I take a break, just as you're going

12   to discuss the financial documents and come up with a plan, but

13   it's not going to be the case that Dominion is just able to

14   update this information and then OAN doesn't have a chance to

15   defend itself.  So there has to be parity and some fairness

16   here.

17        And so I would like you all to talk about it and come

18   up with an idea.  Otherwise, I will address it and figure out a

19   way to put an end to it at some point if there isn't an

20   agreement.  So that's on your to do list.  That's the second

21   item.

22        MR. SHACKELFORD:  Understood, Your Honor.

23        THE COURT:  Okay.  All right.  There is a request for

24   inspection that the Herring parties have made on Dominion for

25   certain source code.  So I'll let OAN address this, but really

1    I just need one thing addressed, which is if the information is

2    not in Dominion's possession, custody or control, what does OAN

3    want the Court to do?

4        MR. EDWARDS:  If the representation on record is they

5    don't have possession, custody or control of the source code,

6    which I think is what they said with respect to Louisiana and

7    Wisconsin, then that representation is what it is.  They can't

8    produce what they don't have.

9        But the issue is the request for inspection of the

10   system that was used in Georgia, because they have not objected

11   to that in terms of not having the equipment or the systems.

12   They just say it's burdensome, they don't have to do it.  And

13   the reason they should be required to do it, Your Honor -- and

14   just so you know, we have agreed to a source code review, which

15   has been completed.  We have done that source code review under

16   your protective order that was signed earlier, so that's

17   completed.

18       The source code is a static picture of just the

19   program language that generates the code, is actually compiled

20   and used in the machines.  What our expert really needs is the

21   ability to have a plugged-in machine, a ballot tabulator, so

22   that they can create an election project, a ballot, make their

23   selection, scan it, tabulate it, and look at the results,

24   because that's the only way they are going to be able to

25   determine how this software actually functions in an

1    operational environment.

2         That's very important to them because there were

3    issues in the 2020 election which were kicked off primarily in

4    Michigan where there was a vote miscount.  There was actually

5    vote flipping from one candidate to another caused by what we

6    believe, and other experts believe, was a software defect, an

7    error.  We want to be able to simulate and recreate that which

8    occurred.  That's one reason the expert would like it.

9         So it's really to be able to test the functionality.

10   It's like if you had a computer and some plug, you could look

11   at the computer and it's only going to tell you a certain

12   amount of information.  You plug in the computer and you're

13   able to run it, you can -- (indiscernible) -- functionality in

14   a real environment.

15        We made a very specific request of the items we needed

16   to be able to do this, and we're happy to work with Dominion to

17   protect whatever they think is necessary, whatever procedures

18   they want in place to ensure it's done in a confidential

19   manner.  We're happy to have those conversations, but we think

20   we're entitled to at least be able to see an operational voting

21   system that they were using in 2020.

22        THE COURT:  Now, the theory for OAN seeking this

23   information is that it goes to the truth of the statements and

24   that is the defense; is that right?

25        MR. EDWARDS:  That's partially it, Your Honor.  The

1  theory of defense is actually an essential part of it, but

2  there is also the reporting that was done, broadcasts that were

3  made involved glitches that occurred in three states, one being

4  in Antrim County.  To be able to reproduce what happened in

5  Antrim County, you have to be able to -- (indiscernible) --

6  through the components of the system, and that's what our

7  expert would like to be able to do.

8          THE COURT:  You kind of hit right on my next question,

9  which is the publishers of the statements didn't have access to

10  source code, did they?  Isn't what's relevant what the

11  publishers knew or didn't know or relied on or didn't rely on

12  when they made statements?

13          MR. EDWARDS:  That gets to the actual malice inquiry.

14  It goes until the time of trial.  And so what actually the

15  system is capable of doing or may have done is relevant until

16  the time of trial.

17          THE COURT:  All right.  Dominion -- so let me just

18  make sure I understand what the request is.  So the request is

19  with respect to three different jurisdictions, is it Louisiana,

20  Wisconsin and Georgia, right?

21          MR. EDWARDS:  Your Honor, if the representation of

22  Dominion is that they can't produce and make available what was

23  in Wisconsin and Louisiana, then that is the representation

24  that we rely on.

25          THE COURT:  So I rely -- I'm going to take that

1  representation as well, because I can't order Dominion to

2  produce something that is not in its possession, custody or

3  control, unless there is a viable argument that that statement

4  is not true, which I'm not hearing.

5       With respect to Georgia, let me hear from Dominion as

6  to what the argument is.

7       MR. SARGENT:  This is Edgar Sargent, Susman Godfrey on

8  behalf of Dominion on this issue.

9       Mr. Edwards is correct, we produced all the source

10  code that they requested that is in our possession.  That

11  actually does include the Wisconsin system, which although it

12  is an old system, it was not developed by Dominion itself, we

13  did have the source code for it so we were able to produce.

14       Mr. Edwards' expert spent three weeks at our office in

15  Houston examining the source code for that system and for the

16  Georgia system and for the Michigan system, and for the Arizona

17  system and for the Nevada system, and for every system of

18  Dominion that was at use in any swing state in the 2020

19  election.

20       What Mr. Edwards is asking for now is for us to set up

21  a -- it's called an EMS or election management system.  It's

22  essentially a computer, a laptop, Windows, that allows the

23  jurisdiction to program the ballot working devices and

24  tabulators that are used by the voters.

25       And again, to be clear, this request for inspection

was served six months after the discovery document production
deadline in this case.  We did agree to produce not only the
source code, but copies of the ballot devices, the tabulators
and machines used by the voters in the election.  What we are
struggling with is finding a reasonable way to produce a full
election management system allowing the programming of the
complete election.

There is no dispute at all anywhere of what happened
in Antrim County.  Everybody knows how the errors caused in
Antrim County were caused, and everyone has known that since
about 24 hours after the election ended.  That's never been in
dispute.  If OAN experts want to try to recreate that, they are
not going to be doing anything except following steps that have
already been set out in the documents repeatedly and it's not
going to prove anything.

Producing this election management system is an
extremely complex and burdensome process.  It's going to
require negotiation of a supplemental protective order.  Just
the installation and configuration of this system takes even
experts at Dominion 10 to 12 hours.  Who is going to make the
decisions on how it's configured, us or them?  Who is going to
decide which module is getting included?  Once they start the
inspection and their process of installing additional software,
connecting it to the internet, the other things they want to
try to prove, how does that get monitored?  Do we get a log of

1    all the activities they conduct?  Does it get done in our

2    offices?

3             Your Honor is exactly correct that what OAN's experts

4    need, if they are looking for evidence about how this system

5    works, is the source code, the software that determines how it

6    counts votes.  That was all made available to them.  They spent

7    weeks looking at it.  They asked our experts for copies of it.

8    What they don't need to do is program some election and play

9    some game that shows a bunny dancing video that sings Call Me

10   Maybe or something just to show what kind of manipulation their

11   experts are going to do with our system.

12            This case is not about whether or not our systems are

13   subject to hacking or manipulation.  Their experts were given

14   unfettered access for a month.  This case is about claims that

15   were made by OAN that our system was designed to cheat, was

16   designed to commit fraud and manipulated vote totals.

17            There is no need for us to go through this elaborate

18   negotiation with them about the terms under which they can

19   manipulate the computer system just so they can show something,

20   exactly as Your Honor pointed out, was not available to their

21   broadcasters and guests on their shows at the time they made

22   the inflammatory statements.  This material is irrelevant.  The

23   burden this late in the case on attempting to come up with a

24   procedure for doing it is simply not justified.

25            THE COURT:  So this request would require Dominion to

1    actually affirmatively create a system as opposed to just

2    permit inspection of something that already exists?

3              MR. SARGENT:  Absolutely, Your Honor.

4              THE COURT:  I'm going to deny the request for the

5    Georgia information.  This is not -- again, this is not a

6    situation where you're simply requesting permission to inspect

7    something that already exists in its current state.  It's

8    actually a request that's designed, or that maybe is not

9    designed to, but would require Dominion to actually create

10   something.  And I do think that it's overly -- I mean, I think

11   that it's not proportional to the needs of the case, especially

12   because I don't think that given everything that has been

13   produced already that this would be of marginal relevance.  So

14   I'm going to deny that request.

15             Mr. Sargent, you have got to get a more updated pop

16   culture reference, my friend.

17             MR. EDWARDS:  Your Honor, I'll say on the record we

18   are not intending to do any bunny dancing videos.

19             THE COURT:  I didn't think you were, but we can come

20   up with something better than Call Me Maybe.  That's fine.

21             The next issue is the Steve Owens deposition.  This

22   one I'll just tell you all, you know, I have read the

23   materials.  I don't need argument on this.  I'll simply say

24   that based on what I've read, OAN is not required to take

25   Mr. Owens as Dominion wants to produce him.

1           OAN is entitled to take a deposition in person of

2   Mr. Owens, and you know the fact that he made himself available

3   by Zoom and another party took him up on that deposition is

4   fine, but OAN is entitled to take the deposition of the witness

5   in the manner it wishes.

6           And so I'm going to allow the deposition to go

7   forward.  It seems that Mr. Owens can make himself available in

8   October.  Is that still correct?

9           MR. SHACKELFORD:  Yes, Your Honor.  I'll check with

10  him, but I'm sure we can find a date in October.

11          THE COURT:  I would -- I don't know exactly what

12  Mr. Owens knows, but I will note that Staple Street Capital is

13  a majority owner of Dominion Voting, by Dominion's own

14  concession.  So given that he's one of the co-founders, I don't

15  think that he's just an ancillary witness.  It may be that he

16  doesn't know much, but if OAN wishes to take that deposition in

17  person, it's entitled to do so.  I would ask you all to confer

18  on scheduling that deposition in October.

19          MR. SHACKELFORD:  Given that OAN has now two

20  transcripts of Mr. Owens' depositions in which he talked about

21  how much he doesn't know about, could we meet and confer with

22  OAN about some reasonable time for us, so he doesn't have to

23  sit for an all-day deposition?

24          THE COURT:  You all can meet and confer if you wish,

25  but I don't need to hear this dispute again.  You know,

1    Mr. Babcock, Mr. Edwards, you know, I don't know why you would

2    need seven hours with this gentleman.  I don't know if you have

3    an idea of how long you would need with him, but I assume and

4    expect that OAN is not going to just be, the old phrase that I

5    used to use when I was in practice is walking the dog, right,

6    just having the witness sitting there.  And I don't know if you

7    all still use that.  I shouldn't be talking to Mr. Sargent

8    about outdated phrases.

9         MR. BABCOCK:  I was going to say, Judge, you can do

10   better than walking the dog.

11        THE COURT:  That's really old, isn't it?

12        MR. BABCOCK:  We got a saying that is "that old dog

13   won't hunt."

14        THE COURT:  Mine is a modification of that one.  Yeah,

15   I assume that OAN is going to only be keeping Mr. Owens for how

16   long -- for however long it needs.

17        So certainly, Mr. Shackelford, if you wish to try to

18   meet and confer with them, but my ruling is what it is and so I

19   don't intend to revisit this dispute, at least as to the taking

20   of his deposition.

21        There is I think an undisputed issue with respect to

22   third-party witnesses, Mr. Johnson and Ms. Holler.  Are the

23   parties simply asking that the Court bless the taking of their

24   depositions beyond the September 30th date?

25        MR. SHACKELFORD:  Your Honor, you would have to

1  because you have extended the order that Dominion requested,

2  which includes certain Powell-related depositions being until

3  December, so I think you mooted this issue.

4           THE COURT:  Okay.  The next issue is Ms. Powell or the

5  Powell defendants' objections to producing certain documents,

6  so I will hear from Dominion on this.  This is Dominion RFPs

7  43, 76, 77 and 84.  And whoever is going to address this -- I'm

8  sorry.  It's 43, 49, 76, 77, 84 and 88.

9           And what I would ask is whoever from Dominion is going

10 to address this to please just state into the record when the

11 requests were served and when the Powell defendants responded.

12          MR. SHACKELFORD:  Yes, Your Honor, this one -- I'm

13 looking through my notes.  These requests were served late last

14 year.  I'll give you the exact date in one moment.

15          THE COURT:  I'll just note that RFP 90 is in this as

16 well.  I think I did not say that.

17          MR. SHACKELFORD:  Okay.  Requests were served --

18          THE COURT:  Is it October 26, 2023?

19          MR. SHACKELFORD:  I think that was when they responded

20 to them.  I'm not sure why I can't find it, Your Honor.  I

21 apologize.  So these requests were served on, you're right,

22 October 26, 2023, and Ms. Powell responded December 16, 2023.

23          THE COURT:  Were they due under the standard 30 days?

24          MR. SHACKELFORD:  Yes, Your Honor.

25          THE COURT:  All right.

1        MR. SHACKELFORD:  As I recall, we sent several emails

2   asking Ms. Powell, "Hey, you're late, what's going on," and

3   there was no answer, and then finally they served a response in

4   mid December 2023, December 16, 2023.

5        THE COURT:  Go ahead.

6        MR. SHACKELFORD:  Your Honor got the parties

7   back-and-forth, our positions on these requests.  The requests

8   are for some financial information, but there is information

9   such as -- (indiscernible) -- websites, Ms. Powell's websites,

10  certain book sales and other merchandise sales we believe were

11  connected to Ms. Powell's newfound notoriety in November of

12  2020, when she became a much more national figure because of

13  her promotion of false conspiracy theories.

14        There is a network piece, which I assume Your Honor

15  would handle in the same way Your Honor handled for the OAN

16  defendants.  There is data analytics from Twitter, all of which

17  goes to the reach of Ms. Powell's defamatory statements, which

18  is relevant to questions of damages.

19        Our expert is doing impact analyses on some of these

20  defendants, so it's all very relevant, and the only answer that

21  Ms. Powell's counsel gave in their opposition to this was we

22  waited too long to raise this and the net worth is premature.

23  They didn't address the other substantive issues.

24        We would ask Your Honor -- we're asking --

25  (indiscernible) -- if there is a concern of overbroad, we're

1    happy to confer.

2              THE COURT:  Have the Powell defendants been deposed?

3              MR. SHACKELFORD:  No, Your Honor.  They have not been

4    and they will not be because we've past the time to be deposed.

5              THE COURT:  All right.  Then I have read the Powell

6    defendants' submission on this.  Is there anything that the

7    Powell defendants would like to add?

8              MS. CINNAMOND:  Yes, Your Honor.  This is Teresa

9    Cinnamond.  I appreciate that the OAN issue with respect to

10   financial records is being dealt with with a further meet and

11   confer, but we would ask the Court to consider that the Powell

12   case is its own case and whether or not the financial records

13   of Ms. Powell are discoverable in this case depends upon

14   whether Dominion will be able to prove that they are relevant

15   to actual malice.

16             I think Your Honor had said she doesn't want argument

17   on the issue of punitive damages, whether they are relevant to

18   punitive damages is premature, so I'm not going to argue that.

19   I think Your Honor knows where she's going on that.  But I do

20   think that the Powell case is a bit different than the OAN case

21   with respect to whether -- or may be a little different.  I

22   might argue -- my argument is also for OAN, but I'm not arguing

23   for OAN, but for Ms. Powell, the plaintiffs' request for

24   financial records are not relevant to Dominion's claims of

25   actual malice.  They are seeking a broad array --

1          THE COURT:  Ms. Cinnamond, I'm sorry to interrupt.

2     Before you launch into that, can you just confirm that the

3     Powell defendants did not timely serve any objections to this?

4     Why shouldn't I deem those waived?

5          MS. CINNAMOND:  Well, there is good cause not to deem

6     them waived, Judge.  The amount of time of the delay was not

7     extensive, and the responses and objections to the third set

8     were served on December 11, 2023.  That date was stated

9     incorrectly.  I think under the federal rules if there is good

10    cause, you know, the untimeliness, the brief untimeliness

11    period should not result in disclosure of such a broader array

12    of records that are not really discoverable, because they are

13    not relevant to the issues, the elements of actual malice.

14         THE COURT:  Okay.  Is there anything else?

15         MS. CINNAMOND:  Yes.  I wanted to point out to Your

16    Honor that there is case law in this district that holds that

17    absent evidence that the publisher's motive is coupled with

18    other evidence that the publisher is willing to publish false

19    allegations, improper motive alone is not probative of actual

20    malice.

21         In my view, Dominion cannot get -- I appreciate that

22    Your Honor asked Mr. Shackelford to state which of the

23    discovery requests were relevant solely to punitive damages as

24    opposed to relevant to actual malice, but I think here Dominion

25    is without evidence that Ms. Powell had a high degree of

1  awareness of probable falsity or that she entertained serious

2  doubts as to the truth of the publications.

3          So without that connection, there is case law in DC,

4  including the *Jankovic* case that holds that that would be

5  improper to allow discovery of Ms. Powell's financial records.

6  So in addition to the requests being premature on the issue of

7  punitive damages, I don't think that connection is there to say

8  that, as Mr. Shackelford said, that it's all relevant to actual

9  malice.

10          I know it's in a nuanced argument, but I think it's

11  important, and I think Ms. Powell is in a slightly different

12  situation than perhaps the news networks.  As you saw in the

13  Fox case, there apparently was evidence of knowledge of falsity

14  and evidence that they entertained doubt as to the truth of

15  publication on networks, but I don't think they have evidence

16  against Ms. Powell.  And without that, I would say all of the

17  financial records discovery that's been sought, to the extent

18  it's not just overbroad, should be delayed until the issue of

19  punitive damages is properly before the Court.

20          THE COURT:  Okay.  Well, I do think this issue is

21  different from OAN, but not necessarily in the way that the

22  Powell defendants are seeing it.  I think it's different

23  because Powell defendants did not object in a timely fashion.

24          And so I'm still going to narrow some of the requests,

25  but I'm not going to -- I am going to compel the production of

1    documents that go toward actual malice, so I'm going to

2    overrule any objections that the Powell defendants have made at

3    this time.

4          I'll just note that when the -- when the dispute was

5    submitted to me, none of these particular arguments were made,

6    rather the arguments were focused on an incorrect statement

7    that the Court ordered all remaining discovery disputes to be

8    submitted to it on or before September 18th.  I don't believe

9    that's what I did.  I instead had ordered that the parties just

10   simply give me a joint report telling me what disputes were

11   still pending.

12         In fact, I did consider and decide disputes up until

13   just a couple of days I think before September 30th.  So that

14   said, what I will say is that any documents that are going to

15   go solely to punitive damages are going to be -- that discovery

16   is going to be deferred, along with the other defendants, but

17   with respect to any documents that go to actual malice, again,

18   the theory -- well, Dominion is entitled to discover this

19   information and to make its case.  Whether it will draw that

20   connection is for another day, it's not up to me.

21         So I'm looking at the request.  Certainly, I would

22   think requests 88 and 90 shall stand the way they are drafted.

23         77 shall stand.

24         76 shall stand the way it's drafted.

25         And 49 shall stand the way it's drafted.

1          43 and 84 go to -- ask for all bank records and all

2    financial statements and all assets, net worth, financial

3    condition, source of income.  I do think that's overly broad.

4          So Mr. Shackelford, I would like you to talk to

5    Ms. Cinnamond.  You're going to be talking to Mr. Babcock or

6    Mr. Edwards anyway.  I would think the same principles that

7    you're going to apply in trying to figure out a way to narrow

8    those should apply as well to Powell, but I will allow Dominion

9    to discover the information for its attempt to make a showing

10   of actual malice, but I think that's probably more than you

11   need for that point.  So when I take a break, if you could have

12   that discussion with Ms. Cinnamond as well, I'd appreciate it.

13         MR. SHACKELFORD:  Will do.  Thank you, Your Honor.

14         MS. CINNAMOND:  Before you go on, I just wanted to

15   make sure the Court is aware of the particulars of our

16   submission when the Court ordered that all remaining discovery

17   disputes be brought to the Court's attention in the

18   September 18th joint submission.  Dominion didn't bring up and

19   hadn't brought up on multiple meet and confers that occurred

20   over a long period of time any of these problems with

21   Ms. Powell's objections to her financial records being subject

22   to discovery.  And I think we did bring that to the Court's

23   attention in our submission.  This was very sudden.  We didn't

24   learn about any problem they had with her responses until a few

25   days before that discovery end date.

1          THE COURT:  Okay.  Well, I am aware of that and my

2     ruling stands.  Dominion doesn't have to -- wasn't required to

3     bring this argument up immediately upon receiving the

4     objections and responses, although that would have likely been

5     preferable.  It still raised this issue well in advance of the

6     close of discovery.  All right.

7          There is a request to strike Dominion's amended

8     supplementary responses to Interrogatories 7 to 10.  This is

9     from the Powell defendants.  Is this the same issue as the

10    amended disclosures?

11         MS. CINNAMOND:  Yes, it is, Judge.  We received on the

12    evening of the 30th, the last day of discovery, we received at

13    10:19 p.m. supplemental log responses and supplemental Rule 26

14    responses.

15         THE COURT:  Okay.  So then -- go ahead.

16         MS. CINNAMOND:  We compared side by side.  I did

17    receive a subsequent email from Dominion's counsel saying that

18    they had provided that information to us, but I reviewed the

19    responses side by side with the four counties that Mr. Edwards

20    cited to, were not included in the prior responses, so it's the

21    same issue, Your Honor, the four new counties.

22         THE COURT:  Okay.  I would like you to speak to

23    Mr. Shackelford at the break as well to deal with all of these

24    issues in a uniform way so when -- I'll ask that OAN, Dominion

25    and the Powell defendants speak together as well, or if

1    Dominion wishes to speak to Ms. Cinnamond separately, that's

2    fine.

3            I'm going to take a brief break, and I believe, unless

4    I'm wrong, that we only have one issue left, which is about the

5    deposition I referenced earlier today.  Is that right?

6            MS. BROOK:  Your Honor, this is Davida Brook from

7    Susman Godfrey.  That is right, based on the very helpful

8    agenda that the Court provided.  I did just want to state for

9    the record, though I believe this is all well-known, just

10   because the Court's email said there are no current disputes in

11   the following cases, and it lists among them Mr. Byrne's case,

12   there are disputes that have been put to the Court in that

13   case, so we understand they are not up today.  We just wanted

14   to make clear for the record that there are in fact disputes

15   there.

16           THE COURT:  I am aware of that, but I'm also aware of

17   the fact that Mr. Byrne has appealed my order of August 13th,

18   and so I'm going to let that appeal -- I was not inclined to

19   stay all discovery, but I will allow this dispute to be

20   deferred until we have further word on the status of the

21   appeal.  So I think --

22           MS. BROOK:  That was our perception, Your Honor.  I

23   appreciate clarification.

24           THE COURT:  I think in fairness to Mr. Byrne, once

25   that appeal is resolved, then I will take up this dispute in

1    due course.

2          All right.  Thank you.  Okay.  So when I come back,

3    I'm going to seal the courtroom.  And I have read all the

4    materials on this last remaining dispute and so I don't need

5    extensive argument, but I will allow each side to that last

6    dispute to be heard, but I ask that you keep it under three

7    minutes, because I have read everything that has come in.  So

8    that portion of the hearing will be under seal.

9          And then I will also hear at that time from the

10   parties on the issues that I have asked them to confer on.

11         Mr. Shackelford, does 15 minutes give you enough time?

12   I know I'm keeping you on a tight time schedule.

13         MR. SHACKELFORD:  (Indiscernible.)

14         THE COURT:  So I'll ask -- so then I'll be back in

15   about 15 minutes and we will deal with the last issue and then

16   deal with any cleanup on those couple of issues I have asked

17   you all to talk about.  Thank you.

18      (Recessed from 3:31 p.m. to 4:01 p.m.)

19         DEPUTY CLERK:  Good afternoon, Your Honor.  We are now

20   back on the record.

21         THE COURT:  Mr. Shackelford, did you have an

22   opportunity to confer with opposing counsel on the issues that

23   we talked about?

24         MR. SHACKELFORD:  We did, Your Honor.  I think we have

25   reached an agreement.

1          THE COURT:  Okay.  Great.  Do you want to walk me

2     through whatever you all decided?

3          MR. SHACKELFORD:  Yes.  So I'll start with RFP 7 and

4     78, we agreed to limit the timeframe for the financial

5     statements to January 1st, 2019 to the present.  And we agreed

6     our request is that they produce at least quarterly financial

7     statements that show profits and losses for all those years,

8     except for 2020 and 2021, we're requesting monthly.  Mr.

9     Babcock is going to check what they have.  He thinks they might

10    only have monthly.  That's generally the agreement.

11         MR. BABCOCK:  Your Honor, that's correct, with the

12    caveat that I'm not sure that financial statements exist.  To

13    the extent they do, then Mr. Shackelford has correctly

14    referenced our agreement on this.

15         THE COURT:  Okay.  Great.

16         MR. SHACKELFORD:  (Indiscernible.)

17         THE COURT:  Just a moment.  We're having a glitch on

18    our end and the court reporter is having an issue hearing.

19    Just a moment.

20         (Pause)

21         THE COURT:  I think we are good now.  My computer is

22    frozen again.  Just a moment, please.  Usually we don't have

23    issues on this end, but it might be our issue.

24         I think we might be all right now.

25         Mr. Babcock, you were saying that you are going to

1    look into monthly statements for those two years and

2    Mr. Shackelford was hoping that those exist.

3            MR. BABCOCK:  Right.  And he made the point, and I

4    agree with it, even if they don't call it monthly financial

5    statements, they call it something else, if it's an equivalent,

6    then we'll get it to them.

7            THE COURT:  Very good.

8            MR. SHACKELFORD:  RFP 79, documents, communications to

9    obtain financing, funding or investors from 2010 to present.

10   We agreed to limit that to 2019 to present, with one caveat,

11   which is Mr. Herring has testified that they have periodically

12   talking to potential investors over the years or in the last

13   several years.  And what we don't know is May 2018 was a huge

14   year.  I said I would like to go up to 2018 -- (indiscernible)

15   -- to do a search.

16           So either 2018 or 2019, depending on what

17   Mr. Babcock's investigation shows, and we would ask for pitch

18   checks to potential investors or financers, and then some sort

19   of ESI or communication with potential investors from that time

20   period.  We can't agree on now, but we have to be able to see

21   what we can agree on in terms of search terms and review and so

22   forth on that discrete issue.

23           MR. BABCOCK:  Yes.  And how much activity there was,

24   but, yeah, generally, Judge, he's accurately stated our

25   agreement.

1              THE COURT:  Okay.

2              MR. SHACKELFORD:  And then RFP 80 and 81, tax returns

3    and financial statements from the individual defendants.  We're

4    asking for financial statements.  Counsel for the individual

5    defendants don't know whether they keep personal financial

6    statements.  They may.  If they do, that's what we're asking

7    for from the time period of November 1st, 2020 through the

8    present.

9              If any of those defendants don't keep any of that and

10   the only records they have are tax returns, we have offered to

11   have them copy their tax returns.  If they were to prepare a

12   simplistic document that takes the relevant sort of profit and

13   loss income information off of that, if they will swear to it,

14   we will accept that as well.

15             MR. BABCOCK:  Judge, that's a little bit of a loose

16   end.  Chanel Rion is a young woman.  I don't know if she has

17   financial statements or not.  Maybe she does.  But I have to

18   talk to her about whether she has created a document and would

19   swear to it.  We're not swearing to financial statements, so I

20   don't know why she would have to swear to it, but in any event,

21   that's a little bit of a loose end with respect to her.  If

22   she's got a financial statement, that's fine, we'll produce it

23   pursuant to the agreement.

24             THE COURT:  Okay.  And so that takes care of

25   everything with respect to OAN.

1          MR. SHACKELFORD:  On financial statements, Your Honor.

2     You asked us to confer on the four new counties.  What

3     Mr. Edwards proposed, which is fine, we know who the relevant

4     person is in each of those four counties, and we don't object

5     to OAN taking their deposition sometime within the discovery

6     period to December 14th.

7          For any other losses between now and trial, Your

8     Honor, our proposal was, I think, accepted generally, was we

9     will tell Dominion if there are other losses suffered that in

10    our view was substantially caused by the defamation, including

11    the defamation of OAN broadcasts and so forth.

12         We disagree on how to prove that, but we understand,

13    of course -- (indiscernible) -- if there is another loss after

14    today that Dominion learns of, Dominion will let OAN and the

15    Powell folks and the other defendants know in two weeks of that

16    notice in good faith.

17         We will consent to them submitting those folks for

18    documents or deposition testimony.  We recognize as we're

19    getting very close to trial, we will revisit this as we're

20    getting closer to trial, but for now that is where I think we

21    have landed.

22         MR. BABCOCK:  The only thing -- I think you said this,

23    Mr. Shackelford, but the notice to us about an additional

24    jurisdiction, there would have to be a good faith belief by

25    Dominion that they have caused damage from that jurisdiction.

1          THE COURT:  Yes, he did.

2          MR. BABCOCK:  We have been through a lot of counties

3   where they say they never heard of OAN, wasn't because of

4   defamation, and so we don't want to have to do that

5   particularly close to trial, but if you have good faith belief

6   that OAN caused this damage, then, yeah, everything else --

7          MR. SHACKELFORD:  To be clear, Your Honor, we disagree

8   with that.  We will do it in good faith only ones that we

9   believe OAN contributed to the particular loss.

10          THE COURT:  Mr. Shackelford, could you repeat the last

11   thing you said because we're having a little bit of a glitch on

12   this side.  Just a moment, everyone.

13      (Pause)

14          THE COURT:  Am I still frozen on your end?

15          MR. BABCOCK:  We can't hear the Court.

16          MR. SHACKELFORD:  Your Honor --

17          THE COURT:  There is something going on here on our

18   end and the court reporter has I think managed to do her best

19   to get everything down, but I don't want us going into this

20   next dispute with glitches, so I would just ask everyone to sit

21   tight for a moment, let me figure out on this end what we can

22   do.

23          (Pause.)

24          THE COURT:  To the extent the parties didn't hear me,

25   we're trying to figure out what's happening here, because this

1    is unusual for the court's system, and so I assume it's the

2    court's network that's the problem, because all of you are

3    freezing to me and that means that it's on our end.

4         And so we're just calling IT, so if you guys just give

5    us a moment, please.

6         (Pause)

7         THE COURT:  Okay, Counsel.  Thank you for your

8    patience.  We're actually going to come and have our IT restart

9    our system, which will take about five minutes.  So apologies

10    for the inconvenience, but I would just ask everyone to log off

11    and log back on at 4:30 p.m.

12         What's happening on our end, just so you all know, is

13    Madam Court reporter is not -- for some reason, you all are

14    freezing on our end like every 20 seconds and she's having a

15    really hard time getting this down.

16         This next issue is important for us to get a full

17    complete record.  I assume everyone wants that.  And so I don't

18    think we'll be on this hearing past 4:45 or 5:00, because I'm

19    going to resolve the last issue pretty quickly, but if that

20    poses a problem for anyone, let me know, but I would just ask

21    everyone to log off and log back on at 4:30.

22         Is that timing okay for you all?  I know we have been

23    going a little while, but I would like to get these things

24    resolved for you guys.  Thanks.  So we'll see you all at 4:30.

25         (Recessed from 4:16 p.m. to 4:29 p.m.)

1          DEPUTY CLERK:  Good afternoon, Your Honor.  We are

2    back on the record.

3          THE COURT:  Okay.  Mr. Shackelford, I think we were in

4    the middle of you putting into the record your discussions with

5    OAN and the Powell defendants.  Where we left off I think

6    before the -- before things started getting really glitchy is

7    that you were going to -- you were stating what the agreement

8    was if there are additional losses beyond the four that

9    Dominion identified on September 30th.

10         Could you just repeat what that agreement is, so if

11   there is anyone beyond the four.

12         MR. SHACKELFORD:  Yes, Your Honor.  So Stephen

13   Shackelford for Dominion.  The agreement is that Dominion will

14   inform OAN within two weeks of learning of any other losses,

15   and same for the Powell defendants, all defendants frankly, any

16   other losses that we could have a good faith basis to believe

17   that the various defendants were a substantial factor in

18   causing those losses for Dominion, and then we will consent to

19   the defendants asking for documents or deposition to any such

20   later arising losses.

21         THE COURT:  Okay.  And then with respect to the Powell

22   defendants, what were your discussions, Mr. Shackelford?

23         MR. SHACKELFORD:  I think the Powell defendants, we're

24   on the same page on that one I just finished outlining.  And

25   then for the Powell defendants we discussed the request for

1    Ms. Powell and Powell, PC's financial statements, which I think

2    Your Honor sent us back to meet on 43 and 84.

3         And we agreed that Your Honor's ruling for now

4    information about Ms. Powell's net worth is not something she

5    has to produce.  But for 43, which is bank records and

6    financial statements, our request is that they simply -- we

7    don't know what form they have these in.  The date range was

8    from January 1st, 2020 to the present.

9         So what I think we got is production of whatever

10   financial records that she keeps that show profits, losses,

11   income for various sources, and they want the right,

12   Ms. Powell, the right to redact information that is plainly

13   unrelated to Ms. Powell's activity in issuing lawsuits.  We are

14   open to that.

15        For example, like her Social Security check, for

16   instance, if she gets one, or child support if she gets that,

17   we're not getting information on those sources of income

18   specifically.  Other choices to redact I think we have to meet

19   and confer on specific decisions to redact additional sources

20   of income.  We have to meet and confer about it.

21        And lastly, we do think we're entitled to and we want

22   the top line number of her income each year, because,

23   obviously, if we show the jury that she made $5 million from

24   fundraising and so forth over a six-month time period, it is

25   relevant, that is 95 percent of her income during that time

1    period or 5 percent over that time period.

2            So while we're not asking for other things like child

3    support or specific numbers for Social Security income, we do

4    think we have to have the top line number, and I think there

5    was not an objection to that also.  The only issue is the

6    redaction part.

7            MR. MOONEY:  This is Josh Mooney.  I think what

8    Mr. Shackelford is saying is for the most part correct.  Just

9    to confirm or maybe word it in a different way, we understand

10   when the Court come down on its decision, what we're looking at

11   is the production of financial statements, bank statements,

12   sources of income is really to relate that to income or debt

13   that arises that out of the statements for which she's being

14   sued.

15           Another example is Ms. Powell represented Michael

16   Flynn in a treason case before her involvement in the election.

17   The time period in question, her income from that

18   representation would fall within the scope of the request, but

19   we do not believe that that information is either relevant or

20   responsive to the claims, the defamation claims alleged by

21   Dominion in this lawsuit.  So what we're looking to do, we

22   understand that Dominion wants to see whether or not Ms. Powell

23   made money off statements that she made.  We understand the

24   Court is going to compel production of documents to the extent

25   they exist that would reflect that.

1          What we're simply asking is that that production,

2    either through limitation of production or through redaction,

3    is limited just to that source of income or any financial

4    statements or bank records that relate to moneys that go back

5    to statements that she -- or statements she made for which

6    she's being sued.

7          If I may, Your Honor, I did want to raise one thing

8    about counties, but we'll table that and address this issue

9    first if that's what the Court would like to do.

10         THE COURT:  That limitation is okay, but that's where

11   I think you're going to have to have discussions with Dominion

12   on the redactions.  And so I would want you all to meet and

13   confer, because Dominion doesn't have to take your word that

14   whatever is redacted is unrelated.  You'll have to provide some

15   information as to what it goes to.

16         So I would suggest that way of proceeding is in theory

17   generally okay, but you'll need to have discussions.  So you

18   can't just redact something and then not share any information

19   as to what's been redacted so that Dominion can contest

20   whatever the redactions are.

21         MR. MOONEY:  We agree with that, Your Honor.  And we

22   agree with my colleague Mr. Shackelford's suggestion.  This is

23   a little bit of a meet and confer and an involved issue, but

24   we're confident that we can work with Dominion's attorneys and

25   resolve anything without further Court attention.

1          THE COURT:  You said there is an issue on the four

2    counties?

3          MR. MOONEY:  We would also ask, to the extent as

4    production of document requests are ongoing, that to the extent

5    that Dominion does identify new counties which they allege did

6    not -- either cancel a contract or did not renew a contract

7    with Dominion because of statements made by Ms. Powell, that

8    they send internal communications or documents that are related

9    to that county's decision.

10         THE COURT:  Well, was a request propounded from Powell

11   defendants before the close of discovery that goes to that

12   information?

13         MR. MOONEY:  We can get that to the Court.  I don't

14   have it in front of me.  There is a request that's pending for

15   documents in essence supporting their damages claims.

16         THE COURT:  Mr. Shackelford?

17         MR. SHACKELFORD:  I'm not sure there is a request that

18   covers this, Your Honor, but we'll see what Mr. Mooney produces

19   on that.

20         THE COURT:  Okay.  All right.  I mean, at some point

21   we need to cut this off, and, that said, if Dominion is going

22   to be relying on these documents for its damages, it has to

23   produce them.  So why don't you all talk and then let me know

24   if I need to intervene on this issue.

25         MR. SHACKELFORD:  We'll do our best to do what we can.

1          MR. MOONEY:  Thank you, Your Honor.

2          THE COURT:  Okay.  Unless there is anything further,

3    I'm going to seal the courtroom.  And we can address the last

4    issue.  For what it's worth, no one is in the courtroom.

5          (Public proceedings concluded at 4:41 p.m.)

6

7                         CERTIFICATE

8       I, Sonja L. Reeves, Federal Official Court Reporter in and
     for the United States District Court of the District of
9    Columbia, do hereby certify that the foregoing transcript is a
     true and accurate transcript, to the best of my ability, from
10   the original stenographic record of a videoconference, in the
     above-entitled matter and that the transcript page format is in
11   conformance with the regulations of the Judicial Conference of
     the United States.

12
        Dated this 9th day of October, 2024.

13

14
                         /s/ Sonja L. Reeves
15                       SONJA L. REEVES, RDR-CRR
                         FEDERAL OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25

# #

**#101** [1] - 2:17

# /

**/s** [1] - 61:14

# 1

**10** [3] - 11:23, 35:20, 47:8
**100** [1] - 28:6
**101** [1] - 10:12
**10:19** [1] - 47:13
**10th** [1] - 7:20
**11** [1] - 43:8
**12** [1] - 35:20
**13** [1] - 9:6
**13649** [1] - 2:17
**13th** [1] - 48:17
**1400** [1] - 1:15
**1401** [1] - 2:3
**1410** [1] - 1:19
**14th** [1] - 53:6
**15** [2] - 49:11, 49:15
**15th** [2] - 24:22, 24:23
**16** [2] - 40:22, 41:4
**1600** [1] - 1:19
**1710** [1] - 2:7
**18** [1] - 14:24
**18th** [2] - 45:8, 46:18
**1900** [2] - 1:15, 2:3
**19103** [1] - 1:19
**1:21-cv-00040-CJN** [1] - 1:5
**1:21-cv-00213-CJN** [1] - 1:7
**1:21-cv-00445-CJN** [1] - 1:6
**1:21-cv-02130-CJN** [1] - 1:5
**1:21-cv-02131-CJN** [1] - 1:6
**1st** [3] - 50:5, 52:7, 57:8

# 2

**20** [2] - 24:10, 55:14
**20-20** [1] - 4:10
**20001** [1] - 1:24
**20015** [1] - 2:10
**20036** [1] - 2:7
**2010** [2] - 22:21, 51:9
**2013** [2] - 20:3, 22:9
**2018** [3] - 51:13, 51:14, 51:16
**2019** [4] - 19:25,

50:5, 51:10, 51:16
**202** [2] - 2:8, 2:11
**2020** [12] - 8:25, 13:5, 17:11, 19:25, 26:17, 32:3, 32:21, 34:18, 41:12, 50:8, 52:7, 57:8
**2021** [3] - 19:3, 19:8, 50:8
**2023** [6] - 40:18, 40:22, 41:4, 43:8
**2024** [4] - 1:10, 9:6, 11:23, 61:12
**2025** [2] - 12:9, 14:24
**21-213** [1] - 3:8
**21-2130** [1] - 3:3
**21-2131** [1] - 3:7
**21-40** [1] - 3:4
**21-445** [1] - 3:5
**22192** [1] - 2:17
**24** [1] - 35:11
**25** [1] - 12:18
**25th** [1] - 25:2
**26** [3] - 40:18, 40:22, 47:13
**26(a** [1] - 26:2
**267** [1] - 1:20
**27th** [3] - 2:13, 24:15, 24:16
**2:11** [2] - 1:11, 3:1
**2nd** [2] - 2:7, 12:7

# 3

**30** [1] - 40:23
**30th** [10] - 6:2, 23:2, 23:11, 23:22, 23:25, 24:16, 39:24, 45:13, 47:12, 56:9
**310** [1] - 1:16
**333** [1] - 1:24
**335-2101** [2] - 2:14
**362-5903** [1] - 2:11
**365-9900** [1] - 2:18
**37(c)(1** [1] - 26:1
**3:31** [1] - 49:18

# 4

**400** [1] - 2:10
**43** [5] - 40:7, 40:8, 46:1, 57:2, 57:5
**470-2695** [1] - 2:8
**479-6719** [1] - 1:20
**49** [2] - 40:8, 45:25
**4:01** [1] - 49:18
**4:16** [1] - 55:25
**4:29** [1] - 55:25
**4:30** [3] - 55:11, 55:21, 55:24

**4:41** [2] - 1:11, 61:5
**4:45** [1] - 55:18
**4th** [1] - 24:22

# 5

**5** [2] - 57:23, 58:1
**5335** [1] - 2:10
**5:00** [1] - 55:18

# 6

**6th** [1] - 10:9

# 7

**7** [2] - 47:8, 50:3
**703** [1] - 2:18
**713** [1] - 2:4
**714** [1] - 2:14
**752-4319** [1] - 2:4
**76** [3] - 40:7, 40:8, 45:24
**77** [4] - 15:19, 40:7, 40:8, 45:23
**77010** [1] - 2:4
**78** [2] - 15:19, 50:4
**789-3100** [1] - 1:16
**79** [4] - 15:20, 16:7, 22:19, 51:8

# 8

**8** [1] - 1:10
**80** [2] - 16:11, 52:2
**81** [2] - 16:11, 52:2
**84** [4] - 40:7, 40:8, 46:1, 57:2
**86** [1] - 7:9
**88** [2] - 40:8, 45:22

# 9

**90** [2] - 40:15, 45:22
**90067** [1] - 1:15
**90831** [2] - 2:14
**95** [1] - 57:25
**9:00** [1] - 29:8
**9:01** [1] - 26:9
**9:21** [1] - 26:11
**9th** [1] - 61:12

# A

**ability** [3] - 7:12, 31:21, 61:9
**able** [14] - 4:24, 30:13, 31:24, 32:7, 32:9, 32:13, 32:16, 32:20, 33:4, 33:5,

33:7, 34:13, 42:14, 51:20
**above-entitled** [1] - 61:10
**absent** [1] - 43:17
**absolutely** [1] - 37:3
**accept** [1] - 52:14
**accepted** [1] - 53:8
**access** [2] - 33:9, 36:14
**accordingly** [2] - 9:9, 9:12
**accurate** [1] - 61:9
**accurately** [1] - 51:24
**actions** [2] - 7:21, 8:25
**activities** [1] - 36:1
**activity** [3] - 16:21, 51:23, 57:13
**actual** [26] - 10:12, 15:11, 15:15, 15:18, 15:21, 16:8, 16:17, 16:19, 17:4, 20:5, 20:8, 20:10, 21:7, 21:10, 22:11, 22:14, 33:13, 42:15, 42:25, 43:13, 43:19, 43:24, 44:8, 45:1, 45:17, 46:10
**add** [2] - 11:5, 42:7
**added** [6] - 23:3, 24:3, 25:18, 26:1, 28:3, 28:20
**adding** [1] - 28:15
**addition** [2] - 14:2, 44:6
**additional** [11] - 6:18, 7:22, 7:24, 8:2, 8:21, 23:3, 29:14, 35:23, 53:23, 56:8, 57:19
**additionally** [1] - 23:17
**address** [8] - 29:23, 30:18, 30:25, 40:7, 40:10, 41:23, 59:8, 61:3
**addressed** [1] - 31:1
**addressing** [1] - 26:13
**adjust** [3] - 9:11, 9:17, 13:18
**adjusted** [1] - 9:9
**adjustments** [1] - 10:25
**adopt** [2] - 14:12, 14:21
**adopting** [1] - 15:2
**advance** [1] - 47:5

**advertisement** [2] - 20:11, 20:13
**affected** [1] - 12:5
**affirmatively** [1] - 37:1
**afternoon** [15] - 3:2, 3:12, 3:16, 3:18, 3:22, 3:23, 3:25, 4:1, 4:5, 4:6, 4:8, 6:6, 23:15, 49:19, 56:1
**afterwards** [1] - 26:11
**agenda** [1] - 48:8
**agree** [7] - 14:7, 35:2, 51:4, 51:20, 51:21, 59:21, 59:22
**agreed** [12] - 6:17, 7:16, 7:19, 8:10, 9:5, 11:16, 12:12, 31:14, 50:4, 50:5, 51:10, 57:3
**agreement** [16] - 6:22, 7:13, 9:7, 9:18, 10:23, 13:23, 30:20, 49:25, 50:10, 50:14, 51:25, 52:23, 56:7, 56:10, 56:13
**agrees** [1] - 7:22
**ahead** [3] - 5:18, 41:5, 47:15
**air** [1] - 19:6
**al** [10] - 1:3, 1:6, 3:3, 3:4, 3:5, 3:6, 3:7, 3:8
**alert** [2] - 24:16, 29:7
**all-day** [1] - 38:23
**allegations** [1] - 43:19
**allege** [1] - 60:5
**alleged** [6] - 18:2, 18:7, 18:10, 25:11, 25:22, 58:20
**allegedly** [1] - 17:1
**allow** [7] - 4:13, 21:8, 22:20, 27:21, 28:2, 29:20, 38:6, 44:5, 46:8, 48:19, 49:5
**allowed** [1] - 27:10
**allowing** [1] - 35:6
**allows** [1] - 34:22
**almost** [1] - 17:2
**alone** [3] - 7:10, 10:1, 43:19
**alternate** [1] - 26:17
**amenable** [1] - 30:7
**amend** [3] - 23:19, 23:22, 29:9
**amended** [9] - 22:25, 23:1, 23:10, 24:1, 24:9, 26:5, 27:24,

47:7, 47:10
**American** [1] - 17:25
**amount** [2] - 32:12, 43:6
**analyses** [1] - 41:19
**analytics** [1] - 41:16
**ancillary** [2] - 10:2, 38:15
**Angeles** [1] - 1:15
**answer** [5] - 11:8, 16:16, 27:1, 41:3, 41:20
**answers** [1] - 26:9
**Antrim** [4] - 33:4, 33:5, 35:9, 35:10
**anyway** [1] - 46:6
**apologies** [1] - 55:9
**apologize** [1] - 40:21
**appeal** [3] - 48:18, 48:21, 48:25
**appealed** [1] - 48:17
**apply** [2] - 46:7, 46:8
**appreciate** [4] - 42:9, 43:21, 46:12, 48:23
**argue** [4] - 9:3, 17:14, 42:18, 42:22
**arguing** [1] - 42:22
**argument** [13] - 6:13, 8:20, 15:9, 19:15, 19:22, 34:3, 34:6, 37:23, 42:16, 42:22, 44:10, 47:3, 49:5
**arguments** [4] - 16:1, 16:9, 45:5, 45:6
**arises** [1] - 58:13
**arising** [1] - 56:20
**Arizona** [1] - 34:16
**array** [2] - 42:25, 43:11
**articulated** [2] - 11:11, 14:20
**assertion** [1] - 30:2
**assertions** [1] - 27:22
**assets** [1] - 46:2
**assume** [6] - 4:18, 39:3, 39:15, 41:14, 55:1, 55:17
**attack** [1] - 16:7
**attempt** [4] - 16:7, 21:12, 22:15, 46:9
**attempting** [1] - 36:23
**attention** [3] - 46:17, 46:23, 59:25
**attenuated** [1] - 21:10
**attorneys** [1] - 59:24
**attract** [1] - 18:6
**August** [7] - 19:3,

24:15, 24:16, 28:17, 29:2, 29:5, 48:17
**available** [5] - 33:22, 36:6, 36:20, 38:2, 38:7
**Avenue** [4] - 1:15, 1:24, 2:7, 2:10
**aware** [5] - 9:15, 46:15, 47:1, 48:16
**awareness** [1] - 44:1

# B

**Babcock** [10] - 3:19, 12:3, 14:1, 19:17, 20:17, 22:1, 39:1, 46:5, 50:9, 50:25
**BABCOCK** [15] - 2:2, 3:18, 12:3, 19:14, 19:18, 23:12, 39:9, 39:12, 50:11, 51:3, 51:23, 52:15, 53:22, 54:2, 54:15
**Babcock's** [1] - 51:17
**back-and-forth** [1] - 41:7
**backwards** [1] - 11:8
**baffled** [1] - 26:25
**ballot** [4] - 31:21, 31:22, 34:23, 35:3
**bank** [4] - 46:1, 57:5, 58:11, 59:4
**based** [2] - 37:24, 48:7
**basis** [1] - 56:16
**Beach** [1] - 2:14
**became** [1] - 41:12
**become** [1] - 16:1
**BEFORE** [1] - 1:10
**behalf** [7] - 3:13, 3:24, 5:9, 6:7, 14:7, 19:13, 34:8
**Behar** [1] - 2:12
**behind** [3] - 18:17, 26:21
**belief** [2] - 53:24, 54:5
**believes** [3] - 4:25, 7:6, 7:11
**benefit** [3] - 10:14, 11:3
**Bennett** [2] - 25:2, 25:5
**best** [5] - 12:14, 27:19, 54:18, 60:25, 61:9
**better** [6] - 17:10, 17:17, 19:7, 37:20, 39:10

**between** [5] - 9:18, 15:6, 18:1, 24:16, 53:7
**beyond** [4] - 19:23, 39:24, 56:8, 56:11
**bit** [6] - 12:17, 42:20, 52:15, 52:21, 54:11, 59:23
**BLAESCHE** [1] - 2:3
**Blaesche** [1] - 3:20
**bless** [1] - 39:23
**BOBB** [1] - 2:12
**Bobb** [2] - 3:24, 8:19, 8:24, 9:5, 9:14, 9:16, 10:4, 10:15, 10:20, 10:24, 11:5, 11:7, 11:11, 11:25, 12:16, 12:18, 13:2, 13:9, 13:11, 13:19, 13:22, 14:7
**Bobb's** [3] - 10:14, 11:3, 11:4
**book** [1] - 41:10
**break** [7] - 21:18, 22:6, 22:18, 30:11, 46:11, 47:23, 48:3
**brief** [2] - 43:10, 48:3
**briefing** [1] - 12:7
**briefly** [5] - 5:20, 7:13, 11:25, 14:3, 19:13
**briefs** [1] - 8:17
**bring** [3] - 46:18, 46:22, 47:3
**brings** [1] - 8:18
**broad** [5] - 21:13, 22:10, 22:22, 42:25, 46:3
**broadcast** [1] - 18:15
**broadcasters** [1] - 36:21
**broadcasts** [5] - 12:18, 13:10, 18:18, 33:2, 53:11
**broader** [2] - 17:21, 43:11
**Brook** [7] - 3:13, 6:4, 6:6, 11:24, 12:4, 12:17, 48:6
**BROOK** [5] - 1:14, 3:12, 6:6, 48:6, 48:22
**brought** [2] - 46:17, 46:19
**bunch** [1] - 13:21
**bunny** [2] - 36:9, 37:18
**burden** [1] - 36:23
**burdened** [1] - 19:18
**burdensome** [2] - 31:12, 35:17

**business** [2] - 26:16, 26:23
**businesses** [1] - 17:3
**busy** [1] - 17:25
**BUTZER** [1] - 2:2
**Butzer** [1] - 3:19
**BY** [7] - 1:14, 1:18, 2:2, 2:6, 2:9, 2:13, 2:16
**Byrne** [9] - 3:7, 5:10, 6:9, 6:21, 7:16, 7:21, 8:14, 48:17, 48:24
**Byrne's** [1] - 48:11

# C

**California** [2] - 1:15, 2:14
**cancel** [1] - 60:6
**candidate** [1] - 32:5
**cannot** [2] - 11:2, 43:21
**capable** [1] - 33:15
**Capital** [1] - 38:12
**care** [1] - 52:24
**CARL** [1] - 2:2
**Carl** [1] - 3:19
**Casarino** [1] - 4:4
**CASARINO** [1] - 1:18
**case** [40] - 5:24, 8:12, 8:22, 11:1, 12:10, 12:11, 12:16, 12:23, 13:17, 15:17, 18:13, 20:5, 20:6, 20:8, 20:10, 20:16, 21:9, 21:12, 22:15, 26:22, 27:20, 30:13, 35:2, 36:12, 36:14, 36:23, 37:11, 42:12, 42:13, 42:20, 43:16, 44:3, 44:4, 44:13, 45:19, 48:11, 48:13, 58:16
**Case** [5] - 3:3, 3:4, 3:5, 3:6, 3:7
**cases** [9] - 4:22, 6:16, 7:8, 8:23, 11:18, 14:15, 14:22, 17:13, 48:11
**caused** [6] - 32:5, 35:9, 35:10, 53:10, 53:25, 54:6
**causing** [2] - 11:21, 56:18
**caveat** [2] - 50:12, 51:10
**Center** [1] - 2:13
**certain** [8] - 15:7, 18:18, 21:8, 30:25,

32:11, 40:2, 40:5, 41:10
**certainly** [7] - 13:24, 17:18, 20:15, 27:13, 29:4, 39:17, 45:21
**CERTIFICATE** [1] - 61:7
**certification** [1] - 10:5
**Certified** [1] - 1:23
**certify** [1] - 61:9
**chance** [4] - 4:17, 22:6, 30:14
**CHANEL** [1] - 2:1
**Chanel** [3] - 3:21, 10:7, 52:16
**changed** [3] - 15:22, 23:7, 29:13
**changes** [1] - 14:25
**CHARLES** [2] - 2:1, 2:2
**Charles** [5] - 3:19, 3:21, 10:7, 10:17, 12:3
**cheat** [1] - 36:15
**check** [3] - 38:9, 50:9, 57:15
**checks** [1] - 51:18
**chief** [1] - 4:10
**child** [2] - 57:16, 58:2
**choice** [1] - 21:24
**choices** [1] - 57:18
**choose** [1] - 28:14
**chose** [4] - 16:4, 27:1, 28:8, 28:16
**CHRISTINA** [1] - 2:12
**Christina** [4] - 3:24, 8:19, 8:24, 10:4
**Christine's** [1] - 14:6
**CHRISTOPHER** [1] - 2:16
**Cinnamond** [6] - 4:2, 42:9, 43:1, 46:5, 46:12, 48:1
**CINNAMOND** [8] - 1:18, 4:1, 42:8, 43:5, 43:15, 46:14, 47:11, 47:16
**circumstances** [1] - 14:6
**cited** [2] - 20:5, 47:20
**Civil** [4] - 3:3, 3:5, 3:6, 3:7
**civil** [1] - 3:4
**claim** [2] - 20:20, 24:17
**claiming** [2] - 24:4,

25:9
**claims** [6] - 21:6, 36:14, 42:24, 58:20, 60:15
**clarification** [1] - 48:23
**cleanup** [1] - 49:16
**clear** [8] - 8:22, 10:20, 10:23, 16:1, 17:20, 34:25, 48:14, 54:7
**Clear** [1] - 25:7
**clerk** [1] - 4:24
**CLERK** [3] - 3:2, 49:19, 56:1
**clients** [1] - 27:16
**close** [10] - 23:2, 23:21, 25:3, 25:23, 27:20, 29:9, 47:6, 53:19, 54:5, 60:11
**closed** [2] - 24:1, 24:9
**closer** [1] - 53:20
**CMK** [1] - 1:17
**co** [1] - 38:14
**co-founders** [1] - 38:14
**Coburn** [1] - 2:6
**code** [12] - 30:25, 31:5, 31:14, 31:15, 31:18, 31:19, 33:10, 34:10, 34:13, 34:15, 35:3, 36:5
**cognizable** [1] - 14:19
**cognizant** [1] - 18:20
**collaboratively** [1] - 9:4
**colleague** [1] - 59:22
**colleagues** [3] - 3:14, 6:4, 10:6
**College** [1] - 10:6
**Colorado** [1] - 24:6
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 61:9
**coming** [2] - 6:23, 8:4
**commit** [1] - 36:16
**communication** [1] - 51:19
**communications** [2] - 51:8, 60:8
**companies** [1] - 16:10
**company** [6] - 16:9, 17:17, 18:25, 19:7, 22:16, 25:7
**compared** [1] - 47:16
**compel** [3] - 11:2, 44:25, 58:24

**competitor** [1] - 25:6
**compiled** [1] - 31:19
**complete** [3] - 9:16, 35:7, 55:17
**completed** [3] - 6:3, 31:15, 31:17
**completely** [1] - 18:20
**complex** [1] - 35:17
**complied** [1] - 4:19
**comply** [3] - 7:2, 12:11, 23:19
**complying** [2] - 4:18, 8:15
**components** [1] - 33:6
**compressed** [1] - 24:18
**computer** [6] - 32:10, 32:11, 32:12, 34:22, 36:19, 50:21
**concern** [1] - 41:25
**concession** [1] - 38:14
**concluded** [1] - 61:5
**condition** [1] - 46:3
**conditions** [1] - 15:14
**conduct** [2] - 29:21, 36:1
**confer** [16] - 24:12, 30:4, 30:7, 38:17, 38:21, 38:24, 39:18, 42:1, 42:11, 49:10, 49:22, 53:2, 57:19, 57:20, 59:13, 59:23
**Conference** [1] - 61:11
**CONFERENCE** [1] - 1:9
**conference** [4] - 6:9, 13:20, 14:23, 15:3
**confers** [1] - 46:19
**confident** [1] - 59:24
**confidential** [1] - 32:18
**configuration** [1] - 35:19
**configured** [1] - 35:21
**confirm** [2] - 43:2, 58:9
**conformance** [1] - 61:11
**Connaughton** [1] - 20:5, 20:8
**connected** [1] - 41:11
**connecting** [1] - 35:24

**connection** [1] - 44:3, 44:7, 45:20
**consent** [1] - 53:17, 56:18
**consider** [2] - 42:11, 45:12
**considering** [1] - 28:20
**consolidated** [1] - 4:22
**conspiracy** [1] - 41:13
**constantly** [1] - 25:19
**Constitution** [1] - 1:24
**contemplated** [1] - 10:24
**contends** [1] - 10:12
**contest** [1] - 59:19
**continue** [5] - 15:3, 27:7, 27:11, 28:23, 28:25
**continued** [6] - 15:17, 17:23, 19:1, 19:11, 27:12, 28:23
**contract** [5] - 24:14, 25:6, 25:10, 60:6
**contrast** [1] - 11:10
**contributed** [1] - 54:9
**control** [3] - 31:2, 31:5, 34:3
**conversations** [1] - 32:19
**cooperate** [1] - 14:4
**cooperatively** [2] - 8:11, 9:4
**copies** [1] - 35:3, 36:7
**copy** [1] - 52:11
**correct** [7] - 23:16, 24:2, 34:9, 36:3, 38:8, 50:11, 58:8
**correctly** [1] - 50:13
**correspondence** [1] - 6:9
**counsel** [15] - 3:11, 4:16, 5:5, 9:4, 9:14, 9:16, 14:4, 14:8, 21:25, 29:10, 41:21, 47:17, 49:22, 52:4
**Counsel** [3] - 3:16, 3:22, 55:7
**counties** [9] - 24:6, 47:19, 47:21, 53:2, 53:4, 54:2, 59:8, 60:2, 60:5
**counts** [1] - 36:6
**County** [15] - 24:6,

24:7, 24:8, 24:13, 24:21, 24:22, 24:23, 24:25, 25:5, 25:9, 33:4, 33:5, 35:9, 35:10
**county** [1] - 25:12
**county's** [1] - 60:9
**couple** [2] - 45:13, 49:16
**coupled** [1] - 43:17
**course** [5] - 8:13, 21:25, 27:23, 49:1, 53:13
**COURT** [78] - 1:1, 3:16, 3:22, 3:25, 4:5, 4:8, 11:24, 14:1, 14:11, 16:23, 17:24, 18:9, 18:12, 19:12, 19:16, 20:17, 22:4, 22:24, 23:14, 26:4, 26:12, 27:21, 29:1, 29:7, 29:16, 30:9, 30:23, 32:22, 33:8, 33:17, 33:25, 36:25, 37:4, 37:19, 38:11, 38:24, 39:11, 39:14, 40:4, 40:15, 40:18, 40:23, 40:25, 41:5, 42:2, 42:5, 43:1, 43:14, 44:20, 47:1, 47:15, 47:22, 48:16, 48:24, 49:14, 49:21, 50:1, 50:15, 50:17, 50:21, 51:7, 52:1, 52:24, 54:1, 54:10, 54:14, 54:17, 54:24, 55:7, 56:3, 56:21, 59:10, 60:1, 60:10, 60:16, 60:20, 61:2, 61:15
**Court** [42] - 1:23, 3:1, 4:25, 5:13, 6:15, 8:4, 8:13, 9:2, 9:3, 9:10, 9:19, 10:19, 11:11, 11:12, 11:17, 11:22, 12:10, 20:6, 20:8, 21:4, 23:19, 25:25, 26:2, 29:24, 31:3, 39:23, 42:11, 44:19, 45:7, 46:15, 46:16, 48:8, 48:12, 54:15, 55:13, 58:10, 58:24, 59:9, 59:25, 60:13, 61:8, 61:8
**court** [2] - 50:18, 54:18
**court's** [1] - 55:1, 55:2
**Court's** [2] - 46:17, 46:22, 48:10

**courtroom** [4] - 5:4, 49:3, 61:3, 61:4
**coverage** [2] - 17:22, 17:23
**covers** [1] - 60:18
**create** [3] - 31:22, 37:1, 37:9
**created** [2] - 52:18
**criminally** [1] - 8:24
**critical** [2] - 9:8, 9:25
**CRR** [1] - 61:15
**culture** [1] - 37:16
**current** [4] - 12:6, 13:17, 37:7, 48:10
**custody** [3] - 31:2, 31:5, 34:2
**cut** [2] - 29:24, 60:21
**cutoff** [2] - 6:15, 11:13
**cycle** [1] - 18:3
**Cynkar** [1] - 2:16

# D

**damage** [3] - 25:20, 53:25, 54:6
**damages** [27] - 12:25, 13:3, 15:12, 16:18, 16:22, 20:20, 20:22, 20:25, 21:5, 22:13, 23:18, 24:2, 24:4, 24:10, 24:17, 25:12, 26:21, 30:2, 41:18, 42:17, 42:18, 43:23, 44:7, 44:19, 45:15, 60:15, 60:22
**dancing** [2] - 36:9, 37:18
**Daniel** [1] - 4:4
**data** [1] - 41:16
**date** [10] - 6:25, 7:3, 23:25, 29:3, 38:10, 39:24, 40:14, 43:8, 46:25, 57:7
**Dated** [1] - 61:12
**dates** [4] - 9:17, 12:6, 14:8, 29:5
**DAVID** [1] - 2:9
**David** [1] - 4:6
**Davida** [3] - 3:13, 6:6, 48:6
**DAVIDA** [1] - 1:14
**days** [4] - 10:8, 40:23, 45:13, 46:25
**DC** [5] - 1:11, 1:24, 2:7, 2:10, 44:3
**deadline** [1] - 24:20, 35:2
**deadlines** [13] - 5:7, 5:20, 5:22, 7:3, 7:16,

9:8, 11:14, 12:13, 13:12, 13:14, 13:21, 14:16, 14:18
**deal** [5] - 5:17, 28:22, 47:23, 49:15, 49:16
**deals** [1] - 5:19
**dealt** [1] - 42:10
**debt** [1] - 58:12
**December** [11] - 9:6, 17:8, 17:10, 17:23, 19:8, 40:3, 40:22, 41:4, 43:8, 53:6
**decide** [3] - 15:2, 35:22, 45:12
**decided** [4] - 9:15, 24:13, 25:5, 50:2
**decision** [2] - 58:10, 60:9
**decisions** [2] - 35:21, 57:19
**deem** [2] - 43:4, 43:5
**defamation** [9] - 25:11, 25:22, 26:17, 27:8, 28:11, 53:10, 53:11, 54:4, 58:20
**defamatory** [7] - 15:17, 15:24, 16:15, 17:1, 18:2, 18:10, 41:17
**defect** [1] - 32:6
**defend** [1] - 30:15
**defendant** [4] - 3:24, 8:18, 9:25, 16:24
**Defendants** [1] - 1:7
**defendants** [33] - 4:2, 5:21, 6:25, 8:24, 14:20, 16:12, 30:2, 40:11, 41:16, 41:20, 42:2, 42:7, 43:3, 44:22, 44:23, 45:2, 45:16, 47:9, 47:25, 52:3, 52:5, 52:9, 53:15, 56:5, 56:15, 56:17, 56:19, 56:22, 56:23, 56:25, 60:11
**defendants'** [2] - 40:5, 42:6
**DEFENDING** [1] - 2:5
**defense** [3] - 16:8, 32:24, 33:1
**defer** [1] - 20:20
**deferred** [3] - 21:4, 45:16, 48:20
**degree** [1] - 43:25
**delay** [1] - 43:6
**delayed** [1] - 44:18
**delays** [2] - 8:1, 11:20
**demonstrated** [1] - 20:14

**deny** [3] - 10:18, 37:4, 37:14
**denying** [1] - 7:11
**depose** [2] - 10:16, 28:14
**deposed** [3] - 13:11, 42:2, 42:4
**deposition** [23] - 5:2, 6:21, 9:5, 10:1, 11:1, 14:5, 25:1, 25:8, 26:24, 37:21, 38:1, 38:3, 38:4, 38:6, 38:16, 38:18, 38:23, 39:20, 48:5, 53:5, 53:18, 56:19
**depositions** [16] - 5:25, 7:2, 7:9, 8:10, 11:2, 25:20, 27:19, 28:9, 28:13, 28:20, 29:14, 29:16, 30:6, 30:8, 39:24, 40:2
**DEPUTY** [3] - 3:2, 49:19, 56:1
**deserves** [1] - 29:19
**designed** [4] - 36:15, 36:16, 37:8, 37:9
**designee** [1] - 22:1
**desire** [1] - 11:17
**despite** [1] - 26:24
**determine** [1] - 31:25
**determined** [2] - 13:16, 21:4
**determines** [1] - 36:5
**developed** [1] - 34:12
**devices** [2] - 34:23, 35:3
**different** [12] - 14:8, 15:25, 19:4, 22:14, 28:12, 33:19, 42:20, 42:21, 44:11, 44:21, 44:22, 58:9
**diligently** [2] - 7:8, 7:25
**Diplomate** [1] - 1:22
**directly** [1] - 16:6
**disagree** [2] - 53:12, 54:7
**disagreement** [2] - 7:14, 8:18
**disappointed** [1] - 8:20
**disclose** [1] - 25:14
**disclosed** [1] - 24:25
**disclosing** [1] - 26:3
**disclosure** [1] - 43:11
**disclosures** [17] - 23:1, 23:2, 23:10, 23:17, 23:19, 23:23,

24:1, 24:2, 26:5, 26:9, 27:22, 27:23, 27:24, 28:5, 28:17, 29:9, 47:10
**discover** [3] - 21:9, 45:18, 46:9
**discoverable** [3] - 28:1, 42:13, 43:12
**DISCOVERY** [1] - 1:9
**discovery** [40] - 3:9, 4:21, 5:23, 5:25, 6:3, 6:15, 6:18, 6:19, 7:25, 8:15, 10:3, 11:13, 23:22, 23:25, 24:9, 24:18, 24:20, 24:24, 25:3, 25:14, 25:15, 25:20, 25:23, 29:9, 29:21, 35:1, 43:23, 44:5, 44:17, 45:7, 45:15, 46:16, 46:22, 46:25, 47:6, 47:12, 48:19, 53:5, 60:11
**discrete** [1] - 51:22
**discuss** [4] - 5:4, 22:2, 22:22, 30:12
**discussed** [1] - 56:25
**discussion** [2] - 17:9, 46:12
**discussions** [4] - 56:4, 56:22, 59:11, 59:17
**dispositive** [2] - 12:6, 13:16
**dispute** [19] - 5:4, 5:5, 8:4, 15:4, 15:5, 23:5, 23:6, 23:7, 23:16, 35:8, 35:12, 38:25, 39:19, 45:4, 48:19, 48:25, 49:4, 49:6, 54:20
**disputes** [12] - 4:21, 4:25, 5:16, 14:25, 20:25, 45:7, 45:10, 45:12, 46:17, 48:10, 48:12, 48:14
**dissect** [1] - 21:16
**District** [2] - 61:8
**district** [1] - 43:16
**DISTRICT** [2] - 1:1, 1:1
**dockets** [1] - 5:12
**document** [9] - 9:6, 35:1, 52:12, 52:18, 60:4
**documents** [24] - 8:4, 8:6, 10:1, 10:14, 11:3, 15:8, 20:19, 21:6, 21:8, 22:11, 22:20, 30:12, 35:14,

40:5, 45:1, 45:14, 45:17, 51:8, 53:18, 56:19, 58:24, 60:8, 60:15, 60:22
**dog** [3] - 39:5, 39:10, 39:12
**dominate** [1] - 17:23
**dominating** [1] - 17:22
**Dominion** [102] - 3:3, 3:4, 3:5, 3:7, 3:8, 5:21, 6:8, 6:11, 6:25, 7:3, 7:6, 7:11, 7:15, 7:19, 9:21, 10:12, 10:13, 10:22, 10:23, 10:25, 11:2, 11:6, 11:9, 11:22, 12:12, 12:18, 12:20, 13:5, 13:21, 15:6, 15:10, 15:18, 16:2, 16:23, 17:20, 17:21, 18:1, 18:8, 18:9, 20:22, 21:6, 21:9, 21:11, 22:15, 23:1, 24:14, 25:9, 26:13, 26:15, 26:22, 26:25, 27:3, 27:21, 28:3, 29:1, 29:4, 29:8, 29:17, 30:13, 30:24, 32:16, 33:17, 33:22, 34:1, 34:5, 34:8, 34:12, 34:18, 35:20, 36:25, 37:9, 37:25, 38:13, 40:1, 40:6, 40:9, 42:14, 43:21, 43:24, 45:18, 46:8, 46:18, 47:2, 47:24, 48:1, 53:9, 53:14, 53:25, 56:9, 56:13, 56:18, 58:21, 58:22, 59:11, 59:13, 59:19, 60:5, 60:7, 60:21
**DOMINION** [1] - 1:3
**Dominion's** [19] - 8:1, 9:1, 9:2, 11:21, 13:3, 14:12, 15:7, 15:11, 15:12, 20:20, 21:18, 22:25, 29:10, 31:2, 38:13, 42:24, 47:7, 47:17, 59:24
**done** [10] - 6:16, 9:16, 12:7, 12:8, 12:13, 31:15, 32:18, 33:2, 33:15, 36:1
**doubt** [1] - 44:14
**doubts** [1] - 44:2
**down** [6] - 13:6, 18:5, 25:18, 54:19, 55:15, 58:10
**drafted** [5] - 10:4,

21:13, 45:22, 45:24, 45:25
**drastically** [1] - 19:7
**draw** [2] - 18:1, 45:19
**driving** [1] - 16:14
**due** [4] - 5:14, 9:25, 40:23, 49:1
**duly** [1] - 5:15
**during** [2] - 18:5, 57:25

---

# E

**early** [2] - 17:7, 29:2
**easy** [1] - 21:24
**economics** [1] - 19:6
**economy** [2] - 9:20, 9:23
**EDGAR** [1] - 1:14
**Edgar** [2] - 3:15, 34:7
**EDWARDS** [8] - 2:2, 23:15, 26:6, 31:4, 32:25, 33:13, 33:21, 37:17
**Edwards** [12] - 3:20, 23:13, 23:14, 26:12, 26:25, 30:9, 34:9, 34:20, 39:1, 46:6, 47:19, 53:3
**Edwards'** [1] - 34:14
**efforts** [2] - 15:20, 15:22
**eight** [1] - 13:14
**EISENSTEIN** [1] - 2:6
**Eisenstein** [1] - 4:7
**either** [4] - 51:16, 58:19, 59:2, 60:6
**elaborate** [1] - 36:17
**Elbert** [5] - 24:6, 24:13, 24:25, 25:5, 25:9
**election** [17] - 9:1, 10:11, 12:21, 13:5, 17:21, 26:17, 31:22, 32:3, 34:19, 34:21, 35:4, 35:6, 35:7, 35:11, 35:16, 36:8, 58:16
**Electoral** [1] - 10:6
**elements** [1] - 43:13
**email** [3] - 26:7, 47:17, 48:10
**emailed** [3] - 4:24, 6:9, 7:19
**emails** [1] - 41:1
**EMS** [1] - 34:21
**end** [19] - 23:2, 24:14, 24:23, 25:13,

25:14, 25:16, 29:16, 30:19, 46:25, 50:18, 50:23, 52:16, 52:21, 54:14, 54:18, 54:21, 55:3, 55:12, 55:14
**ended** [1] - 35:11
**enjoyed** [2] - 15:23
**enlisted** [1] - 10:6
**ensure** [1] - 32:18
**entered** [1] - 5:11
**entertained** [2] - 44:1, 44:14
**entitled** [10] - 21:11, 28:24, 30:1, 32:20, 38:1, 38:4, 38:17, 45:18, 57:21, 61:10
**entitlement** [1] - 20:22
**environment** [2] - 32:1, 32:14
**equipment** [1] - 31:11
**equivalent** [1] - 51:5
**error** [1] - 32:7
**errors** [1] - 35:9
**ESI** [1] - 51:19
**especially** [1] - 37:11
**essence** [1] - 60:15
**essential** [1] - 33:1
**essentially** [1] - 34:22
**et** [10] - 1:3, 1:6, 3:3, 3:4, 3:5, 3:6, 3:7, 3:8
**eve** [1] - 29:25
**evening** [1] - 47:12
**event** [2] - 5:16, 52:20
**eventually** [1] - 8:6
**evidence** [12] - 17:15, 17:17, 18:19, 18:23, 20:7, 36:4, 43:17, 43:18, 43:25, 44:13, 44:14, 44:15
**evolved** [1] - 23:5
**Ewing** [1] - 2:9
**exact** [2] - 26:7, 40:14
**exactly** [4] - 20:6, 36:3, 36:20, 38:11
**examining** [1] - 34:15
**example** [6] - 6:20, 8:2, 10:3, 26:24, 57:15, 58:15
**except** [2] - 35:13, 50:8
**excuse** [1] - 12:24
**executive** [2] - 10:4, 10:7
**exist** [4] - 23:24,

50:12, 51:2, 58:25
**exists** [2] - 37:2, 37:7
**expect** [2] - 5:24, 39:4
**expected** [1] - 13:4
**expensive** [1] - 27:2
**expert** [12] - 7:2, 8:16, 9:24, 10:3, 11:6, 13:6, 13:7, 31:20, 32:8, 33:7, 34:14, 41:19
**expert's** [1] - 13:8
**experts** [11] - 12:22, 12:23, 13:4, 13:15, 32:6, 35:12, 35:20, 36:3, 36:7, 36:11, 36:13
**expressed** [1] - 14:14
**extend** [1] - 5:6
**extended** [1] - 40:1
**extension** [9] - 5:22, 7:1, 7:4, 8:15, 11:13, 11:16, 12:15, 14:21
**extensions** [2] - 13:21, 14:16
**extensive** [3] - 28:6, 43:7, 49:5
**extent** [7] - 7:16, 44:17, 50:13, 54:24, 58:24, 60:3, 60:4
**extracurricular** [1] - 27:4
**extremely** [1] - 35:17

## F

**face** [1] - 9:16
**fact** [14] - 4:16, 6:3, 6:14, 6:15, 9:1, 11:13, 19:24, 20:4, 26:3, 28:18, 38:2, 45:12, 48:14, 48:17
**factor** [1] - 56:17
**factors** [1] - 20:1
**fair** [2] - 11:9, 29:19
**fairness** [2] - 30:15, 48:24
**faith** [8] - 9:11, 11:20, 29:15, 53:16, 53:24, 54:5, 54:8, 56:16
**fall** [1] - 58:18
**falling** [1] - 18:19
**false** [2] - 41:13, 43:18
**falsehoods** [1] - 19:5
**falsity** [2] - 44:1, 44:13
**familiar** [1] - 8:13

**fashion** [1] - 44:23
**fault** [1] - 9:2
**February** [1] - 14:24
**Federal** [1] - 61:8
**federal** [2] - 1:23, 43:9
**FEDERAL** [1] - 61:15
**few** [2] - 27:18, 46:24
**fighting** [1] - 18:17
**figure** [9] - 21:19, 21:22, 22:18, 29:22, 30:18, 41:12, 46:7, 54:21, 54:25
**finally** [2] - 11:10, 41:3
**financers** [1] - 51:18
**finances** [1] - 15:16
**financial** [34] - 15:8, 15:14, 15:15, 16:12, 20:3, 21:7, 22:9, 22:12, 30:12, 41:8, 42:10, 42:12, 42:24, 44:5, 44:17, 46:2, 46:21, 50:4, 50:6, 50:12, 51:4, 52:3, 52:4, 52:5, 52:17, 52:19, 52:22, 53:1, 57:1, 57:6, 57:10, 58:11, 59:3
**financing** [2] - 15:20, 51:9
**fine** [6] - 13:5, 37:20, 38:4, 48:2, 52:22, 53:3
**finished** [1] - 56:24
**first** [7] - 5:6, 5:19, 12:18, 15:4, 15:5, 19:8, 59:9
**five** [6] - 6:16, 12:24, 27:6, 55:9
**flipping** [1] - 32:5
**Floor** [2] - 2:7, 2:13
**flow** [1] - 11:14
**Flynn** [1] - 58:16
**focused** [1] - 45:6
**focusing** [1] - 18:19
**folks** [3] - 28:20, 53:15, 53:17
**follow** [1] - 13:1
**following** [2] - 35:13, 48:11
**FOR** [7] - 1:1, 1:13, 1:17, 2:1, 2:5, 2:12, 2:15
**force** [1] - 9:3
**forced** [1] - 10:25
**Ford** [1] - 2:12
**foregoing** [1] - 61:9
**foreshadowed** [1] - 13:19

**form** [1] - 57:7
**format** [2] - 8:7, 61:10
**formed** [2] - 13:9, 15:22
**former** [1] - 4:10
**forth** [7] - 16:5, 16:6, 22:3, 41:7, 51:22, 53:11, 57:24
**fortunes** [1] - 16:13
**forward** [2] - 12:13, 38:7
**foundations** [1] - 28:1
**founders** [1] - 38:14
**four** [12] - 7:9, 12:23, 13:14, 24:3, 24:6, 24:11, 25:21, 25:25, 27:16, 28:15, 29:2, 29:21, 47:19, 47:21, 53:2, 53:4, 56:8, 56:11, 60:1
**Fox** [12] - 18:4, 18:6, 18:9, 18:15, 18:21, 18:25, 19:1, 19:2, 19:4, 26:22, 27:20, 44:13
**frankly** [3] - 13:9, 25:16, 56:15
**Frankly** [1] - 19:1
**fraud** [3] - 10:11, 17:21, 36:16
**freezing** [2] - 55:3, 55:14
**Friday** [1] - 12:8
**friend** [1] - 37:16
**front** [2] - 26:7, 60:14
**frozen** [2] - 50:22, 54:14
**full** [4] - 10:21, 17:16, 35:5, 55:16
**functionality** [2] - 32:9, 32:13
**functions** [1] - 31:25
**funding** [2] - 15:21, 51:9
**fundraising** [1] - 57:24

## G

**game** [1] - 36:9
**general** [2] - 17:12, 17:13
**generally** [4] - 50:10, 51:24, 53:8, 59:17
**generates** [1] - 31:19
**gentleman** [1] - 39:2
**Georgia** [5] - 31:10, 33:20, 34:5, 34:16,

37:5
**Giuliani** [7] - 3:8, 5:10, 6:21, 7:15, 7:18, 8:12, 12:20
**given** [5] - 16:24, 36:13, 37:12, 38:14, 38:19
**glitch** [2] - 50:17, 54:11
**glitches** [2] - 33:3, 54:20
**glitchy** [1] - 56:6
**goal** [1] - 10:4
**Godfrey** [6] - 1:13, 3:13, 6:7, 29:11, 34:7, 48:7
**granted** [1] - 11:23
**granting** [1] - 7:7
**grants** [1] - 11:12
**great** [2] - 50:1, 50:15
**Greenbaum** [1] - 2:6
**guess** [1] - 28:19
**guessing** [1] - 21:20
**guests** [1] - 36:21
**guidance** [1] - 22:8
**guys** [3] - 21:18, 55:4, 55:24

## H

**hacking** [1] - 36:13
**Haggerty** [4] - 2:12, 3:24, 3:25, 14:2
**HAGGERTY** [3] - 2:13, 3:23, 14:3
**half** [1] - 14:17
**hand** [1] - 19:16
**handle** [5] - 5:3, 5:18, 15:4, 30:8, 41:15
**handled** [1] - 41:15
**hang** [1] - 18:16
**happy** [6] - 14:4, 22:1, 30:4, 32:16, 32:19, 42:1
**hard** [2] - 18:21, 55:15
**HARDWOOD** [1] - 2:13
**hear** [13] - 4:19, 5:20, 6:4, 11:25, 12:1, 21:2, 26:19, 34:5, 38:25, 40:6, 49:9, 54:15, 54:24
**heard** [4] - 4:17, 14:19, 49:6, 54:3
**hearing** [11] - 3:9, 4:11, 5:11, 5:13, 5:14, 5:15, 15:5, 34:4, 49:8,

50:18, 55:18
**heck** [1] - 8:5
**help** [1] - 10:7
**helpful** [2] - 22:9,
48:7
**hereby** [1] - 61:9
**Herring** [11] - 3:3,
3:17, 3:20, 3:21, 10:7,
10:17, 11:7, 15:8,
30:24, 51:11
**HERRING** [3] - 2:1
**high** [1] - 43:25
**himself** [2] - 38:2,
38:7
**hit** [2] - 19:23, 33:8
**hoc** [1] - 10:3
**hold** [2] - 5:14, 20:18
**holds** [2] - 43:16,
44:4
**holler** [1] - 39:22
**Honor** [84] - 3:2,
3:12, 3:18, 3:23, 4:6,
6:6, 7:20, 7:25, 8:12,
8:19, 9:7, 9:13, 10:15,
11:15, 12:3, 13:20,
13:25, 14:3, 14:9,
15:13, 16:17, 16:22,
17:9, 18:4, 18:11,
18:14, 19:14, 19:23,
21:24, 21:25, 22:23,
23:12, 23:15, 24:12,
25:13, 26:14, 28:8,
28:16, 28:21, 29:6,
29:13, 29:14, 30:7,
30:22, 31:13, 32:25,
33:21, 36:3, 36:20,
37:3, 37:17, 38:9,
39:25, 40:12, 40:20,
40:24, 41:6, 41:14,
41:15, 41:24, 42:3,
42:8, 42:16, 42:19,
43:16, 43:22, 46:13,
47:21, 48:6, 48:22,
49:19, 49:24, 50:11,
53:1, 53:8, 54:7,
54:16, 56:1, 56:12,
57:2, 59:7, 59:21,
60:18, 61:1
**Honor's** [1] - 57:3
**HONORABLE** [1] -
1:10
**hopefully** [1] - 22:8
**hoping** [1] - 51:2
**hours** [3] - 35:11,
35:20, 39:2
**Houston** [2] - 2:4,
34:15
**Howell's** [1] - 4:10
**huge** [1] - 51:13
**hunt** [1] - 39:13

# I

**idea** [2] - 30:18, 39:3
**identified** [2] - 12:22,
56:9
**identify** [1] - 60:5
**identifying** [1] - 24:4
**imagine** [1] - 28:9
**immediately** [1] -
47:3
**impact** [1] - 41:19
**impacted** [1] - 7:4,
15:16
**important** [5] - 7:12,
19:9, 32:2, 44:11,
55:16
**improper** [2] - 43:19,
44:5
**inadequacy** [1] -
24:2
**inadequate** [1] -
23:18
**Inc** [7] - 3:3, 3:4, 3:6,
3:7, 3:8
**INC** [4] - 1:3, 2:1, 2:5,
2:15
**inclined** [1] - 48:18
**include** [1] - 34:11
**included** [2] - 35:22,
47:20
**includes** [3] - 4:12,
15:14, 40:2
**including** [2] - 44:4,
53:10
**income** [12] - 46:3,
52:13, 57:11, 57:17,
57:20, 57:22, 57:25,
58:3, 58:12, 58:17,
59:3
**inconvenience** [1] -
55:10
**incorrect** [1] - 45:6
**incorrectly** [1] - 43:9
**increase** [4] - 16:13,
16:20, 17:6
**increased** [1] - 18:2
**increasing** [1] -
15:23
**indeed** [2] - 7:8, 9:9
**independent** [1] -
10:11
**indicate** [1] - 7:22
**indicated** [1] - 11:17
**indication** [2] - 13:2,
25:8
**indicted** [1] - 8:24
**indictment** [1] - 14:6
**Indiscernible** [2] -
26:24, 49:13
**indiscernible** [13] -

16:3, 26:23, 27:4,
27:18, 28:8, 28:11,
32:13, 33:5, 41:9,
41:25, 50:16, 51:14,
53:13
**individual** [3] -
16:12, 52:3, 52:4
**individuals** [2] -
16:13, 22:17
**inflammatory** [1] -
36:22
**inform** [1] - 56:14
**information** [29] -
20:1, 21:1, 21:3,
21:11, 23:3, 23:4,
27:9, 28:1, 28:3,
29:18, 29:20, 30:14,
31:1, 32:12, 32:23,
37:5, 41:8, 45:19,
46:9, 47:18, 52:13,
57:4, 57:12, 57:17,
58:19, 59:15, 59:18,
60:12
**initial** [5] - 23:1,
23:2, 27:22, 27:23,
27:24
**inquiry** [1] - 33:13
**inspect** [1] - 37:6
**inspection** [5] -
30:24, 31:9, 34:25,
35:23, 37:2
**installation** [1] -
35:19
**installing** [1] - 35:23
**instance** [1] - 57:16
**instead** [2] - 24:4,
45:9
**instruction** [1] - 27:5
**intend** [2] - 27:8,
39:19
**intending** [1] - 37:18
**internal** [1] - 60:8
**internet** [1] - 35:24
**interrogatories** [1] -
27:5
**Interrogatories** [1] -
47:8
**interrogatory** [2] -
24:9, 26:9
**Interrogatory** [1] -
24:10
**interrupt** [1] - 43:1
**intervene** [1] - 60:24
**interview** [1] - 12:19
**introduce** [1] - 3:10
**investigation** [1] -
51:17
**investors** [6] - 15:21,
16:5, 51:9, 51:12,
51:18, 51:19

**involved** [3] - 12:19,
33:3, 59:23
**involvement** [1] -
58:16
**irrelevant** [1] - 36:22
**Island** [1] - 2:7
**issue** [49] - 5:1, 5:2,
5:6, 5:19, 5:22, 6:5,
8:13, 15:9, 15:11,
15:25, 21:8, 21:10,
22:10, 22:13, 22:14,
22:15, 22:25, 23:9,
23:17, 30:5, 30:8,
31:9, 34:8, 37:21,
39:21, 40:3, 40:4,
42:9, 42:17, 44:6,
44:18, 44:20, 47:5,
47:9, 47:21, 48:4,
49:15, 50:18, 50:23,
51:22, 55:16, 55:19,
58:5, 59:8, 59:23,
60:1, 60:24, 61:4
**issues** [12] - 4:23,
5:18, 22:5, 27:4, 32:3,
41:23, 43:13, 47:24,
49:10, 49:16, 49:22,
50:23
**issuing** [1] - 57:13
**IT** [2] - 55:4, 55:8
**item** [1] - 30:21
**items** [2] - 20:16,
32:15
**itself** [3] - 16:4,
30:15, 34:12
**IVAN** [1] - 2:16

# J

**Jackson** [1] - 2:2
**Jankovic** [1] - 44:4
**January** [3] - 10:9,
50:5, 57:8
**JASON** [1] - 2:6
**Jersey** [1] - 24:8
**John** [1] - 3:19
**JOHN** [1] - 2:2
**Johnson** [1] - 39:22
**joining** [1] - 4:4
**joint** [2] - 45:10,
46:18
**JONATHAN** [2] -
1:14, 2:3
**Jonathan** [2] - 3:14,
3:19
**Josh** [2] - 4:3, 58:7
**JOSHUA** [2] - 1:18,
2:3
**journalism** [3] - 13:6,
13:7, 13:8
**journalist** [1] - 10:11

**journalistic** [1] - 13:1
**JR** [1] - 1:14
**Judge** [11] - 4:1,
4:10, 8:22, 13:14,
14:14, 14:23, 39:9,
43:6, 47:11, 51:24,
52:15
**JUDGE** [1] - 1:10
**judgment** [2] - 7:3,
8:16
**Judicial** [1] - 61:11
**judicial** [2] - 9:20,
9:23
**July** [1] - 28:17
**June** [2] - 12:7,
28:17
**jurisdiction** [6] -
24:17, 25:10, 28:14,
34:23, 53:24, 53:25
**jurisdictions** [13] -
24:3, 24:5, 24:11,
25:15, 25:17, 25:21,
26:1, 28:6, 28:7,
28:15, 29:2, 29:22,
33:19
**jury** [4] - 17:14,
27:13, 28:24, 57:23
**justified** [1] - 36:24

# K

**Kachouroff** [1] - 2:16
**KACHOUROFF** [1] -
2:16
**KATHERINE** [1] -
2:13
**keep** [12] - 11:17,
18:17, 18:18, 26:16,
27:6, 27:9, 28:21,
29:23, 30:6, 49:6,
52:5, 52:9
**keeping** [2] - 39:15,
49:12
**keeps** [1] - 57:10
**Kennedys** [1] - 1:17,
4:2
**key** [1] - 17:22
**kicked** [1] - 32:3
**kind** [3] - 18:13,
33:8, 36:10
**knowledge** [2] -
29:10, 44:13
**known** [5] - 11:11,
13:10, 28:15, 35:10,
48:9
**knows** [5] - 9:2,
12:10, 35:9, 38:12,
42:19

# L

**Labor** [1] - 12:8
**laid** [1] - 11:10
**landed** [1] - 53:21
**language** [1] - 31:19
**laptop** [1] - 34:22
**largely** [1] - 6:16
**last** [15] - 5:3, 7:9, 12:23, 13:20, 15:4, 28:3, 40:13, 47:12, 49:4, 49:5, 49:15, 51:12, 54:10, 55:19, 61:3
**lastly** [1] - 57:21
**late** [11] - 23:10, 23:22, 28:3, 28:20, 29:2, 29:4, 29:18, 36:23, 40:13, 41:2
**launch** [1] - 43:2
**law** [3] - 4:24, 43:16, 44:3
**lawsuit** [1] - 58:21
**lawsuits** [2] - 7:13, 57:13
**leading** [1] - 10:9
**learn** [1] - 46:24
**learned** [2] - 24:15, 24:21
**learning** [1] - 56:14
**learns** [1] - 53:14
**least** [4] - 6:17, 32:20, 39:19, 50:6
**left** [2] - 48:4, 56:5
**length** [2] - 7:4, 19:5
**less** [1] - 27:2
**lies** [1] - 18:16
**likely** [3] - 25:17, 26:21, 47:4
**limit** [2] - 50:4, 51:10
**limitation** [1] - 59:2, 59:10
**limited** [2] - 29:21, 59:3
**Lindell** [7] - 5:9, 6:20, 7:15, 7:18, 8:3, 8:5, 8:9
**LINDELL** [1] - 2:15
**line** [3] - 18:1, 57:22, 58:4
**list** [2] - 4:25, 30:20
**listed** [1] - 24:11
**listen** [1] - 4:15
**lists** [1] - 48:11
**literally** [1] - 11:1
**litigate** [1] - 7:12
**litigating** [1] - 7:8
**litigations** [1] - 11:20
**LLP** [3] - 1:13, 1:17,

2:2
**log** [6] - 35:25, 47:13, 55:10, 55:11, 55:21
**look** [4] - 27:3, 31:23, 32:10, 51:1
**looked** [1] - 25:4
**looking** [7] - 12:5, 36:4, 36:7, 40:13, 45:21, 58:10, 58:21
**loose** [2] - 52:15, 52:21
**Los** [1] - 1:15
**losing** [1] - 26:16
**loss** [4] - 29:25, 52:13, 53:13, 54:9
**losses** [17] - 27:7, 27:11, 27:12, 27:14, 27:17, 28:18, 28:23, 28:25, 50:7, 53:7, 53:9, 56:8, 56:14, 56:16, 56:18, 56:20, 57:10
**lost** [4] - 25:9, 25:10, 26:16, 29:4
**Louisiana** [3] - 31:6, 33:19, 33:23

# M

**machine** [1] - 31:21
**machines** [2] - 31:20, 35:4
**Madam** [1] - 55:13
**MAGISTRATE** [1] - 1:10
**main** [3] - 8:21, 8:24, 16:1
**major** [3] - 17:24, 18:3, 18:12
**majority** [2] - 11:16, 38:13
**malice** [25] - 10:12, 15:11, 15:15, 15:18, 15:21, 16:8, 16:17, 16:19, 17:4, 20:5, 20:8, 20:10, 21:7, 21:10, 22:14, 33:13, 42:15, 42:25, 43:13, 43:20, 43:24, 44:9, 45:1, 45:17, 46:10
**managed** [2] - 18:16, 54:18
**management** [3] - 34:21, 35:6, 35:16
**manipulate** [1] - 36:19
**manipulated** [1] - 36:16
**manipulation** [2] -

36:10, 36:13
**manner** [2] - 32:19, 38:5
**Marc** [2] - 4:4, 4:7
**MARC** [2] - 1:18, 2:6
**marginal** [1] - 37:13
**Market** [1] - 1:19
**Marvin** [1] - 4:4
**material** [1] - 36:22
**materials** [2] - 37:23, 49:4
**matter** [1] - 61:10
**matters** [1] - 3:9
**McKinney** [1] - 2:3
**McSweeney** [1] - 2:16
**mean** [6] - 13:10, 17:25, 27:23, 30:3, 37:10, 60:20
**means** [1] - 55:3
**meet** [15] - 21:13, 21:17, 24:12, 30:4, 30:7, 38:21, 38:24, 39:18, 42:10, 46:19, 57:2, 57:18, 57:20, 59:12, 59:23
**memories** [1] - 10:19
**mentioned** [1] - 12:20
**merchandise** [1] - 41:10
**merely** [2] - 17:13, 25:5
**Michael** [1] - 58:15
**Michigan** [2] - 32:4, 34:16
**mid** [2] - 29:5, 41:4
**middle** [2] - 27:18, 56:4
**might** [6] - 21:10, 22:5, 42:22, 50:9, 50:23, 50:24
**MIKE** [1] - 2:15
**million** [1] - 57:23
**Mine** [1] - 39:14
**MINOO** [1] - 2:3
**Minoo** [1] - 3:20
**minutes** [4] - 49:7, 49:11, 49:15, 55:9
**misconduct** [1] - 18:8
**miscount** [1] - 32:4
**modest** [4] - 11:12, 11:16, 14:16, 14:20
**modification** [2] - 12:2, 39:14
**modifications** [1] - 14:12
**module** [1] - 35:22
**moment** [9] - 23:24,

28:25, 40:14, 50:17, 50:19, 50:22, 54:12, 54:21, 55:5
**Monday** [4] - 23:11, 23:25, 24:8, 26:6
**money** [6] - 16:24, 17:3, 19:24, 19:25, 20:4, 58:23
**moneys** [1] - 59:4
**monitored** [1] - 35:25
**Monroe** [2] - 24:6, 24:22
**month** [5] - 7:1, 8:15, 11:12, 36:14, 57:24
**monthly** [4] - 50:8, 50:10, 51:1, 51:4
**months** [8] - 6:23, 7:9, 7:17, 14:17, 17:7, 28:7, 35:1
**Mooney** [3] - 4:3, 58:7, 60:18
**MOONEY** [6] - 1:18, 58:7, 59:21, 60:3, 60:13, 61:1
**mooted** [1] - 40:3
**most** [3] - 5:16, 11:21, 58:8
**motion** [1] - 12:6
**motions** [1] - 13:16
**motive** [8] - 15:15, 17:13, 18:23, 20:7, 20:12, 21:7, 43:17, 43:19
**move** [5] - 5:8, 12:11, 13:13, 13:17, 15:7
**moved** [1] - 13:12
**MOXILA** [1] - 1:10
**MR** [68] - 3:18, 3:23, 4:6, 12:3, 14:3, 15:13, 17:5, 18:4, 18:11, 18:14, 19:14, 19:18, 21:23, 22:23, 23:12, 23:15, 26:6, 26:14, 28:5, 29:3, 29:10, 30:4, 30:22, 31:4, 32:25, 33:13, 33:21, 34:7, 37:3, 37:17, 38:9, 38:19, 39:9, 39:12, 39:25, 40:12, 40:17, 40:19, 40:24, 41:1, 41:6, 42:3, 46:13, 49:13, 49:24, 50:3, 50:11, 50:16, 51:3, 51:8, 51:23, 52:2, 52:15, 53:1, 53:22, 54:2, 54:7, 54:15, 54:16, 56:12, 56:23, 58:7, 59:21,

60:3, 60:13, 60:17, 60:25, 61:1
**MS** [11] - 3:12, 4:1, 6:6, 42:8, 43:5, 43:15, 46:14, 47:11, 47:16, 48:6, 48:22
**multiple** [1] - 46:19
**multiples** [1] - 16:5
**MY** [1] - 2:15

# N

**named** [1] - 9:25
**narrative** [1] - 17:21
**narrow** [2] - 44:24, 46:7
**narrowed** [2] - 21:17, 23:16
**national** [1] - 41:12
**nearly** [1] - 16:3
**necessarily** [2] - 22:12, 44:21
**necessary** [1] - 32:17
**need** [18] - 6:18, 8:2, 8:21, 9:9, 15:9, 31:1, 36:4, 36:8, 36:17, 37:23, 38:25, 39:2, 39:3, 46:11, 49:4, 49:17, 60:21, 60:24
**needed** [2] - 10:20, 32:15
**needs** [3] - 31:20, 37:11, 39:16
**NEERMAN** [1] - 2:3
**Neerman** [1] - 3:19
**negotiation** [2] - 35:18, 36:18
**net** [7] - 16:18, 16:19, 16:21, 20:24, 41:22, 46:2, 57:4
**network** [2] - 41:14, 55:2
**NETWORKS** [1] - 2:1
**networks** [2] - 44:12, 44:15
**Networks** [3] - 3:4, 3:17, 3:20
**Nevada** [1] - 34:17
**never** [4] - 16:2, 26:17, 35:11, 54:3
**New** [5] - 20:9, 20:10, 24:7, 24:8
**new** [6] - 6:18, 24:3, 24:17, 25:14, 25:20, 26:23, 47:21, 53:2, 60:5
**newfound** [1] - 41:11
**newly** [1] - 25:25
**News** [2] - 18:4, 18:9

**news** [1] - 44:12
**Newsmax** [1] - 18:6
**next** [8] - 12:7, 12:9, 22:25, 33:8, 37:21, 40:4, 54:20, 55:16
**Nichols** [2] - 14:14, 14:24
**Nichols'** [2] - 8:22, 13:14
**night** [5] - 23:25, 24:8, 24:19, 26:6, 29:8
**nine** [2] - 12:23, 13:14
**none** [1] - 45:5
**note** [7] - 5:8, 5:10, 12:15, 12:23, 38:12, 40:15, 45:4
**noted** [1] - 6:15
**notes** [1] - 40:13
**nothing** [2] - 13:3, 25:11
**notice** [7] - 5:11, 5:13, 6:10, 25:11, 27:25, 53:16, 53:23
**notified** [2] - 5:15, 6:2
**notoriety** [1] - 41:11
**November** [6] - 17:8, 17:10, 17:23, 19:8, 41:11, 52:7
**nuanced** [1] - 44:10
**number** [9] - 4:21, 6:24, 7:6, 19:21, 20:1, 25:4, 27:6, 57:22, 58:4
**numbers** [2] - 17:16, 58:3
**NW** [3] - 1:24, 2:7, 2:10

## O

**O'Connor** [1] - 2:9
**OAN** [69] - 8:18, 8:21, 8:24, 9:14, 9:23, 10:6, 10:11, 10:12, 10:15, 11:5, 11:11, 11:25, 12:11, 13:23, 15:6, 15:23, 16:2, 16:4, 18:5, 18:19, 18:20, 19:1, 19:6, 19:13, 21:2, 23:3, 23:9, 25:11, 25:23, 27:5, 27:22, 28:2, 28:8, 28:14, 29:7, 29:19, 29:21, 30:5, 30:14, 30:25, 31:2, 32:22, 35:12, 36:15, 37:24, 38:1, 38:4,

38:16, 38:19, 38:22, 39:4, 39:15, 41:15, 42:9, 42:20, 42:22, 42:23, 44:21, 47:24, 52:25, 53:5, 53:11, 53:14, 54:3, 54:6, 54:9, 56:5, 56:14
**OAN's** [2] - 15:20, 36:3
**oath** [1] - 11:8
**object** [4] - 4:18, 13:24, 44:23, 53:4
**objected** [2] - 15:9, 31:10
**objecting** [2] - 4:17, 12:2
**objection** [2] - 21:2, 58:5
**objections** [7] - 12:1, 40:5, 43:3, 43:7, 45:2, 46:21, 47:4
**objective** [2] - 21:14, 21:18
**obligated** [1] - 27:6
**obtain** [2] - 15:20, 51:9
**obvious** [1] - 19:23
**obviously** [3] - 9:1, 20:12, 57:23
**occur** [2] - 27:11, 27:12
**occurred** [5] - 25:2, 27:17, 32:8, 33:3, 46:19
**occurs** [1] - 29:25
**October** [7] - 1:10, 38:8, 38:10, 38:18, 40:18, 40:22, 61:12
**OF** [2] - 1:1, 1:9
**offensive** [1] - 11:1
**offer** [1] - 21:25
**offered** [1] - 52:10
**office** [1] - 34:14
**Office** [1] - 2:17
**offices** [1] - 36:2
**OFFICIAL** [2] - 1:23, 61:8
**OFFICIAL** [1] - 61:15
**old** [4] - 34:12, 39:4, 39:11, 39:12
**once** [2] - 35:22, 48:24
**one** [36] - 5:1, 5:2, 5:12, 6:4, 6:14, 8:2, 8:23, 10:3, 12:19, 12:25, 13:15, 16:1, 16:16, 19:19, 19:21, 20:25, 21:15, 23:6, 26:24, 29:3, 31:1, 32:5, 32:8, 33:3,

37:22, 38:14, 39:14, 40:12, 40:14, 48:4, 51:10, 56:24, 57:16, 59:7, 61:4
**One** [1] - 2:13
**ones** [4] - 6:1, 16:17, 29:5, 54:8
**ongoing** [1] - 60:4
**open** [4] - 28:19, 29:13, 57:14
**operational** [2] - 32:1, 32:20
**opinions** [1] - 13:8
**opportunity** [4] - 21:9, 29:19, 30:2, 49:22
**opposed** [2] - 37:1, 43:24
**opposing** [2] - 5:22, 49:22
**opposite** [2] - 20:7, 21:23
**opposition** [2] - 14:9, 41:21
**Order** [1] - 3:1
**order** [16] - 4:10, 4:13, 4:19, 10:4, 10:8, 18:18, 19:11, 21:13, 23:18, 30:11, 31:16, 34:1, 35:18, 40:1, 48:17
**ordered** [3] - 45:7, 45:9, 46:16
**original** [1] - 61:10
**otherwise** [2] - 6:3, 30:18
**ought** [1] - 13:13
**outdated** [1] - 39:8
**outlining** [1] - 56:24
**overbroad** [2] - 41:25, 44:18
**overly** [5] - 21:13, 22:10, 22:21, 37:10, 46:3
**overrule** [1] - 45:2
**overstating** [1] - 12:17
**overtime** [1] - 18:6
**Owens** [6] - 37:21, 37:25, 38:2, 38:7, 38:12, 39:15
**Owens'** [1] - 38:20
**own** [4] - 13:15, 16:8, 38:13, 42:12
**owner** [1] - 38:13

## P

**P.C** [1] - 1:17
**p.m** [13] - 1:11, 3:1,

26:9, 26:11, 29:8, 47:13, 49:18, 55:11, 55:25, 61:5
**page** [2] - 56:24, 61:10
**parent** [1] - 20:10
**parity** [1] - 30:15
**part** [10] - 8:20, 17:22, 19:8, 19:9, 25:12, 26:20, 27:8, 33:1, 58:6, 58:8
**partially** [1] - 37:25
**particular** [6] - 8:19, 16:13, 22:10, 27:16, 45:5, 54:9
**particularly** [1] - 54:5
**particulars** [1] - 46:15
**parties** [20] - 3:9, 4:24, 5:12, 5:14, 5:17, 6:17, 6:22, 7:8, 9:7, 9:10, 9:18, 11:16, 11:19, 15:8, 30:24, 39:23, 41:6, 45:9, 49:10, 54:24
**partners** [1] - 4:3
**parts** [1] - 28:12
**party** [6] - 4:12, 4:14, 13:24, 27:25, 38:3, 39:22
**passage** [1] - 23:21
**past** [4] - 25:22, 26:15, 42:4, 55:18
**patience** [1] - 55:8
**pattern** [1] - 13:2
**Pause** [4] - 50:20, 54:13, 54:23, 55:6
**PC** [1] - 4:3
**PC's** [1] - 57:1
**pending** [4] - 4:22, 45:11, 60:14
**Pennsylvania** [1] - 1:19
**people** [2] - 13:11, 28:11
**percent** [2] - 57:25, 58:1
**perception** [1] - 48:22
**perhaps** [3] - 12:17, 19:25, 44:12
**period** [11] - 18:5, 24:19, 43:11, 46:20, 51:20, 52:7, 53:6, 57:24, 58:1, 58:17
**periodically** [1] - 51:11
**permission** [1] - 37:6
**permit** [1] - 37:2

**person** [5] - 10:2, 11:3, 38:1, 38:17, 53:4
**personal** [1] - 52:5
**perspective** [1] - 9:21
**pertinent** [1] - 20:4
**ph** [1] - 25:2
**Philadelphia** [1] - 1:19
**phone** [1] - 4:13
**phrase** [1] - 39:4
**phrases** [1] - 39:8
**picture** [1] - 31:18
**piece** [1] - 41:14
**PILLOW** [1] - 2:15
**Pillow** [7] - 3:6, 5:10, 7:15, 7:18, 8:3, 8:5, 8:9
**pitch** [1] - 51:17
**place** [1] - 32:18
**Place** [1] - 2:17
**plain** [1] - 1:10
**plainly** [1] - 57:12
**Plaintiffs** [1] - 1:4
**plaintiffs** [3] - 3:13, 6:7, 23:23
**PLAINTIFFS** [1] - 1:13
**plaintiffs'** [3] - 3:11, 14:4, 14:8, 23:17, 42:23
**plan** [2] - 9:15, 30:12
**play** [2] - 28:10, 36:8
**PLLC** [2] - 2:6, 2:16
**plug** [2] - 32:10, 32:12
**plugged** [1] - 31:21
**plugged-in** [1] - 31:21
**point** [11] - 18:13, 22:6, 25:21, 29:24, 30:10, 30:19, 43:15, 46:11, 51:3, 60:20
**pointed** [1] - 36:20
**points** [2] - 6:13, 20:9
**politics** [1] - 17:25
**pop** [1] - 37:15
**portion** [1] - 49:8
**poses** [1] - 55:20
**position** [2] - 25:19, 25:24
**positions** [1] - 41:7
**positively** [1] - 15:16
**possession** [4] - 31:2, 31:5, 34:2, 34:10
**possible** [1] - 21:21

**possibly** [1] - 11:7
**potential** [3] - 51:12, 51:18, 51:19
**potentially** [2] - 22:13, 29:14
**Powell** [40] - 3:5, 4:2, 4:3, 9:23, 40:2, 40:4, 40:5, 40:11, 40:22, 41:2, 42:2, 42:5, 42:7, 42:11, 42:13, 42:20, 42:23, 43:3, 43:25, 44:11, 44:16, 44:22, 44:23, 45:2, 46:8, 47:9, 47:25, 53:15, 56:5, 56:15, 56:21, 56:23, 56:25, 57:1, 57:12, 58:15, 58:22, 60:7, 60:10
**POWELL** [3] - 1:6, 1:17
**Powell's** [8] - 41:9, 41:11, 41:17, 41:21, 44:5, 46:21, 57:4, 57:13
**Powell-related** [1] - 40:2
**practice** [1] - 39:5
**precise** [1] - 7:19
**prefer** [1] - 30:5
**preferable** [1] - 47:5
**preference** [3] - 8:22, 14:14, 29:22
**prejudice** [7] - 7:12, 9:21, 10:22, 11:5, 11:12, 12:17, 14:19
**prejudiced** [1] - 10:23
**prejudicial** [1] - 25:22
**premature** [3] - 41:22, 42:18, 44:6
**premise** [1] - 17:2
**prepare** [1] - 52:11
**present** [6] - 22:21, 50:5, 51:9, 51:10, 52:8, 57:8
**President** [1] - 10:8
**presidential** [3] - 8:25, 17:24, 18:3
**presumption** [2] - 26:20, 26:21
**pretrial** [6] - 5:7, 5:19, 5:22, 8:23, 11:18, 14:13
**pretty** [3] - 13:10, 20:23, 55:19
**prevent** [1] - 10:5
**previewed** [1] - 25:17
**previously** [3] - 4:23,

6:19, 7:1
**primarily** [1] - 32:3
**principles** [1] - 46:6
**printing** [1] - 20:11
**pro** [1] - 10:3
**probable** [1] - 44:1
**probative** [1] - 43:19
**problem** [3] - 46:24, 55:2, 55:20
**problems** [1] - 46:20
**procedure** [1] - 36:24
**procedures** [1] - 32:17
**proceed** [1] - 5:18
**proceeded** [1] - 29:15
**proceeding** [2] - 20:23, 59:16
**proceedings** [1] - 61:5
**PROCEEDINGS** [1] - 1:9
**process** [3] - 8:7, 35:17, 35:23
**produce** [11] - 31:8, 33:22, 34:2, 34:13, 35:2, 35:5, 37:25, 50:6, 52:22, 57:5, 60:23
**produced** [5] - 9:25, 21:2, 22:20, 34:9, 37:13
**Produced** [1] - 1:25
**produces** [1] - 60:18
**producing** [3] - 8:3, 35:16, 40:5
**product** [1] - 27:2
**production** [12] - 9:6, 20:21, 21:3, 21:8, 35:1, 44:25, 57:9, 58:11, 58:24, 59:1, 59:2, 60:4
**proffered** [1] - 12:16
**profit** [5] - 17:12, 17:13, 20:7, 20:12, 52:12
**profitability** [1] - 17:7
**profits** [3] - 15:14, 50:7, 57:10
**program** [3] - 31:19, 34:23, 36:8
**programming** [1] - 35:6
**prohibited** [2] - 4:12, 4:15
**project** [1] - 31:22
**prologue** [1] - 26:15
**promotion** [1] -

41:13
**proper** [1] - 5:11
**properly** [1] - 44:19
**proportional** [1] - 37:11
**proportionality** [1] - 20:15
**proposal** [3] - 12:8, 30:3, 53:8
**proposed** [2] - 12:5, 53:3
**proposing** [1] - 9:24
**propounded** [1] - 60:10
**protect** [1] - 32:17
**protective** [2] - 31:16, 35:18
**prove** [4] - 35:15, 35:25, 42:14, 53:12
**proven** [1] - 20:22
**provide** [1] - 59:14
**provided** [3] - 6:10, 47:18, 48:8
**providing** [1] - 27:9
**public** [1] - 18:17
**Public** [1] - 61:5
**publication** [4] - 15:17, 15:24, 16:14, 44:15
**publications** [2] - 17:8, 44:2
**publish** [2] - 11:6, 43:18
**publisher** [1] - 43:18
**publisher's** [1] - 43:17
**publishers** [2] - 33:9, 33:11
**publishing** [4] - 16:25, 17:18, 18:21, 20:12
**punitive** [14] - 15:12, 16:18, 16:22, 20:20, 20:22, 20:25, 21:5, 22:13, 42:17, 42:18, 43:23, 44:7, 44:19, 45:15
**purport** [3] - 16:23, 27:21, 28:2
**purported** [1] - 18:7
**purporting** [1] - 10:10
**purpose** [1] - 14:9
**purposes** [1] - 11:18
**pursuant** [2] - 4:10, 52:23
**pursue** [2] - 11:20, 19:22
**pursuing** [1] - 7:25
**push** [5] - 6:14, 6:24,

7:16, 9:5, 14:16
**put** [12] - 7:20, 8:11, 9:10, 9:18, 10:7, 10:13, 11:6, 13:15, 25:11, 25:23, 30:19, 48:12
**putting** [1] - 14:5, 56:4

## Q

**quarterly** [1] - 50:6
**questions** [3] - 11:8, 29:11, 41:18
**quickly** [4] - 9:22, 29:12, 29:15, 55:19
**quite** [1] - 27:18
**quote** [1] - 9:10

## R

**raise** [2] - 41:22, 59:7
**raised** [2] - 23:17, 47:5
**raising** [1] - 8:5
**range** [1] - 57:7
**rather** [4] - 6:25, 8:7, 9:2, 45:6
**Rather** [1] - 8:4
**ratings** [5] - 17:8, 17:18, 18:4, 18:18, 20:1
**RDR** [1] - 61:15
**RDR-CRR** [1] - 61:15
**reach** [1] - 41:17
**reached** [4] - 9:7, 9:18, 10:24, 49:25
**read** [5] - 37:22, 37:24, 42:5, 49:3, 49:7
**reads** [1] - 9:10
**real** [2] - 21:2, 32:14
**reality** [1] - 26:15
**really** [10] - 14:10, 18:21, 30:25, 31:20, 32:9, 39:11, 43:12, 55:15, 56:6, 58:12
**Realtime** [1] - 1:23
**reason** [12] - 8:21, 12:15, 13:13, 13:18, 13:22, 14:16, 26:10, 29:18, 31:13, 32:8, 55:13
**reasonable** [3] - 12:13, 35:5, 38:22
**reasonableness** [1] - 16:10
**reasons** [1] - 11:15
**rebroadcasting** [1] -

4:11
**receive** [3] - 6:18, 26:4, 47:17
**received** [4] - 5:13, 47:11, 47:12
**receiving** [1] - 47:3
**recent** [1] - 11:21
**recently** [2] - 8:12, 27:17
**Recessed** [1] - 49:18, 55:25
**recognize** [1] - 53:18
**recognized** [1] - 6:17
**Record** [1] - 1:25
**record** [13] - 3:10, 6:8, 7:7, 31:4, 37:17, 40:10, 48:9, 48:14, 49:20, 55:17, 56:2, 56:4, 61:10
**recording** [1] - 4:11
**records** [12] - 42:10, 42:12, 42:24, 43:12, 44:5, 44:17, 46:1, 46:21, 52:10, 57:5, 57:10, 59:4
**recovered** [1] - 21:5
**recreate** [2] - 32:7, 35:12
**redact** [4] - 57:12, 57:18, 57:19, 59:18
**redacted** [1] - 59:14, 59:19
**redaction** [2] - 58:6, 59:2
**redactions** [2] - 59:12, 59:20
**Reeves** [2] - 61:8, 61:14
**REEVES** [2] - 1:22, 61:15
**reference** [1] - 37:16
**referenced** [3] - 26:25, 48:5, 50:14
**referred** [1] - 14:25
**referring** [1] - 5:5
**reflect** [1] - 58:25
**refusing** [1] - 9:17
**regarding** [5] - 6:11, 9:23, 14:25, 16:9, 23:18
**Registered** [1] - 1:22
**regulations** [1] - 61:11
**relate** [3] - 13:14, 58:12, 59:4
**related** [5] - 12:24, 12:25, 16:25, 40:2, 60:8
**relating** [2] - 5:2, 8:25

**relatively** [1] - 6:12
**relevance** [2] - 20:14, 37:13
**relevant** [25] - 15:25, 16:6, 16:7, 16:18, 16:19, 16:21, 16:22, 18:24, 21:1, 22:12, 33:10, 33:15, 41:18, 41:20, 42:14, 42:17, 42:24, 43:13, 43:23, 43:24, 44:8, 52:12, 53:3, 57:25, 58:19
**relied** [1] - 33:11
**rely** [3] - 33:11, 33:34, 33:25
**relying** [1] - 60:22
**remaining** [3] - 45:7, 46:16, 49:4
**remind** [1] - 4:9
**REMOTE** [1] - 1:9
**renew** [4] - 24:13, 25:6, 28:16, 60:6
**reopening** [1] - 25:20
**repeat** [2] - 54:10, 56:10
**repeatedly** [1] - 35:14
**report** [2] - 10:3, 45:10
**REPORTER** [1] - 61:15
**reporter** [3] - 50:18, 54:18, 55:13
**Reporter** [4] - 1:22, 1:23, 1:23, 61:8
**reporting** [2] - 18:7, 33:2
**reports** [4] - 8:16, 9:24, 10:13, 11:7
**representation** [6] - 31:4, 31:7, 33:21, 33:23, 34:1, 58:18
**representatives** [1] - 24:5
**represented** [1] - 58:15
**reproduce** [1] - 33:4
**REPUBLIC** [1] - 2:5
**request** [31] - 6:14, 6:24, 7:7, 7:11, 11:21, 15:7, 15:12, 15:25, 21:16, 21:17, 30:23, 31:9, 32:15, 33:18, 34:25, 36:25, 37:4, 37:8, 37:14, 42:23, 45:21, 47:7, 50:6, 56:25, 57:6, 58:18, 60:10, 60:14, 60:17
**requested** [5] - 6:19,

7:2, 14:12, 34:10, 40:1
**requesting** [3] - 14:8, 37:6, 50:8
**requests** [15] - 15:10, 15:11, 15:13, 21:13, 40:11, 40:13, 40:17, 40:21, 41:7, 41:23, 44:6, 44:24, 45:22, 60:4
**require** [5] - 8:1, 23:19, 35:18, 36:25, 37:9
**required** [4] - 23:23, 31:13, 37:24, 47:2
**requirements** [1] - 26:2
**resolve** [5] - 4:24, 19:20, 22:5, 55:19, 59:25
**resolved** [2] - 48:25, 55:24
**respect** [18] - 12:16, 14:4, 14:20, 14:23, 20:19, 20:24, 21:6, 22:19, 31:6, 33:19, 34:5, 39:21, 42:9, 42:21, 45:17, 52:21, 52:25, 56:21
**respond** [1] - 10:16
**responded** [4] - 7:21, 40:11, 40:19, 40:22
**response** [3] - 24:10, 28:5, 41:3
**responses** [9] - 28:7, 43:7, 46:24, 47:4, 47:8, 47:13, 47:14, 47:19, 47:20
**responsive** [1] - 58:20
**rest** [2] - 9:11, 19:18
**restart** [1] - 55:8
**result** [8] - 15:24, 16:14, 16:20, 17:7, 17:18, 18:2, 18:25, 43:11
**results** [1] - 31:23
**returns** [7] - 16:11, 22:11, 22:16, 52:2, 52:10, 52:11
**revenues** [1] - 17:6
**review** [4] - 8:8, 31:14, 31:15, 51:21
**reviewed** [1] - 47:18
**revisit** [2] - 39:19, 53:19
**RFP** [6] - 16:7, 22:19, 40:15, 50:3, 51:8, 52:2

**RFPs** [2] - 16:11, 40:6
**Rhode** [1] - 2:7
**Rion** [4] - 3:21, 10:7, 10:17, 52:16
**RION** [1] - 2:1
**rised** [1] - 17:18
**rising** [2] - 19:10, 19:11
**road** [1] - 25:18
**ROBERT** [1] - 2:1
**Robert** [2] - 3:20, 11:7
**ROMERO** [1] - 2:3
**ROSS** [1] - 1:14
**Ross** [1] - 3:15
**Rudy** [1] - 12:20
**rule** [2] - 9:3, 23:20
**Rule** [2] - 26:1, 47:13
**rules** [1] - 43:9
**ruling** [5] - 20:18, 21:21, 39:18, 47:2, 57:3
**run** [1] - 32:13
**running** [1] - 14:15

# S

**sales** [2] - 41:10
**salesperson** [1] - 26:25
**sanctions** [1] - 4:20
**Saratoga** [2] - 24:7, 24:22
**Sargent** [4] - 3:15, 34:7, 37:15, 39:7
**SARGENT** [3] - 1:14, 34:7, 37:3
**sat** [1] - 10:1
**saw** [2] - 18:15, 44:12
**scan** [1] - 31:23
**scenes** [1] - 18:17
**schedule** [17] - 6:11, 7:19, 7:21, 8:11, 8:23, 9:12, 10:25, 11:18, 11:22, 12:2, 12:6, 13:18, 14:13, 14:15, 15:1, 15:2, 49:12
**scheduled** [1] - 14:24
**schedules** [1] - 14:13
**scheduling** [1] - 38:18
**Schuyler** [2] - 24:7, 24:21
**scope** [3] - 23:7, 23:16, 58:18
**seal** [5] - 5:3, 5:4,

49:3, 49:8, 61:3
**search** [2] - 51:15, 51:21
**second** [1] - 30:20
**seconds** [1] - 55:14
**secret** [1] - 9:8
**Security** [2] - 57:15, 58:3
**see** [17] - 13:18, 17:8, 17:9, 17:12, 18:1, 18:7, 22:18, 26:6, 26:8, 26:10, 26:11, 27:1, 32:20, 51:20, 55:24, 58:22, 60:18
**seeing** [2] - 17:6, 44:22
**seek** [1] - 21:11
**seeking** [5] - 7:1, 23:4, 23:10, 32:22, 42:25
**seem** [1] - 7:22
**selection** [1] - 31:23
**send** [1] - 60:8
**sensational** [1] - 17:15
**sense** [4] - 7:24, 9:20, 9:24, 27:3
**sent** [2] - 41:1, 57:2
**separately** [2] - 6:8, 48:1
**September** [20] - 6:2, 7:20, 11:23, 23:2, 23:11, 23:22, 23:25, 24:16, 24:22, 24:23, 25:2, 29:2, 29:5, 29:17, 39:24, 45:8, 45:13, 46:18, 56:9
**serious** [1] - 44:1
**serve** [2] - 27:25, 43:3
**served** [10] - 24:1, 26:5, 27:5, 35:1, 40:11, 40:13, 40:17, 40:21, 41:3, 43:8
**set** [6] - 3:9, 6:20, 7:3, 34:20, 35:14, 43:7
**setting** [5] - 6:9, 7:5, 12:4, 12:9, 13:15
**settlement** [1] - 18:12
**seven** [1] - 39:2
**several** [3] - 6:25, 41:1, 51:13
**SHACKELFORD** [38] - 1:14, 15:13, 17:5, 18:4, 18:11, 18:14, 21:23, 22:23, 26:14, 28:5, 29:3, 29:10,

30:4, 30:22, 38:9, 38:19, 39:25, 40:12, 40:17, 40:19, 40:24, 41:1, 41:6, 42:3, 46:13, 49:13, 49:24, 50:3, 50:16, 51:8, 52:2, 53:1, 54:7, 54:16, 56:12, 56:23, 60:17, 60:25
**shackelford** [2] - 50:13, 51:2
**Shackelford** [19] - 3:14, 19:12, 19:21, 21:20, 26:14, 39:17, 43:22, 44:8, 46:4, 47:23, 49:11, 49:21, 53:23, 54:10, 56:3, 56:13, 56:22, 58:8, 60:16
**Shackelford's** [1] - 59:22
**shall** [4] - 45:22, 45:23, 45:24, 45:25
**share** [1] - 59:18
**shopping** [1] - 16:5
**show** [12] - 16:20, 16:23, 17:4, 18:23, 18:24, 28:12, 28:13, 36:10, 36:19, 50:7, 57:10, 57:23
**showing** [3] - 11:19, 19:7, 46:9
**shown** [1] - 10:4
**shows** [11] - 7:7, 15:15, 15:22, 16:12, 18:15, 18:18, 18:20, 28:10, 36:9, 36:21, 51:17
**side** [7] - 19:20, 47:16, 47:19, 49:5, 54:12
**SIDNEY** [3] - 1:6, 1:17
**Sidney** [2] - 4:2, 4:3
**signed** [1] - 31:16
**simplistic** [1] - 52:12
**simply** [13] - 5:23, 6:19, 11:13, 15:10, 16:24, 30:1, 36:24, 37:6, 37:23, 39:23, 45:10, 57:6, 59:1
**simulate** [1] - 32:7
**sings** [1] - 36:9
**sit** [3] - 29:17, 38:23, 54:20
**sitting** [1] - 39:6
**situation** [2] - 37:6, 44:12
**six** [2] - 35:1, 57:24
**six-month** [1] - 57:24

**slightly** [1] - 44:11
**Smartmatic** [1] -
12:11
**smiling** [1] - 21:20
**so-called** [1] - 13:1
**Social** [2] - 57:15,
58:3
**software** [4] - 31:25,
32:6, 35:23, 36:5
**solely** [4] - 20:19,
20:25, 43:23, 45:15
**someone** [2] - 4:14,
23:9
**sometime** [1] - 53:5
**somewhat** [1] - 23:5
**Sonja** [2] - 61:8,
61:14
**SONJA** [2] - 1:22,
61:15
**sorry** [2] - 40:8, 43:1
**sort** [4] - 18:7, 19:5,
51:18, 52:12
**sought** [2] - 23:18,
44:17
**source** [13] - 30:25,
31:5, 31:14, 31:15,
31:18, 33:10, 34:9,
34:13, 34:15, 35:3,
36:5, 46:3, 59:3
**sources** [4] - 57:11,
57:17, 57:19, 58:12
**specific** [7] - 17:15,
17:17, 24:4, 28:6,
32:15, 57:19, 58:3
**specifically** [5] -
15:16, 16:25, 17:5,
18:5, 57:18
**spent** [2] - 34:14,
36:6
**SR** [1] - 2:1
**Sr** [1] - 3:21
**stand** [6] - 22:20,
22:23, 45:22, 45:23,
45:24, 45:25
**standard** [3] - 20:10,
20:23, 40:23
**standards** [1] - 13:1
**standing** [1] - 4:10
**stands** [1] - 47:2
**Staple** [1] - 38:12
**Stars** [1] - 1:15
**start** [3] - 7:13,
35:22, 50:3
**started** [1] - 56:6
**starting** [1] - 3:10
**state** [5] - 34:18,
37:7, 40:10, 43:22,
48:8
**statement** [3] - 34:3,
45:6, 52:22

**statements** [43] -
15:18, 15:24, 16:12,
16:15, 16:19, 16:21,
17:1, 17:19, 17:20,
18:3, 18:10, 18:22,
20:3, 20:24, 22:9,
22:12, 32:23, 33:9,
33:12, 36:22, 41:17,
46:2, 50:5, 50:7,
50:12, 51:1, 51:5,
52:3, 52:4, 52:6,
52:17, 52:19, 53:1,
57:1, 57:6, 58:11,
58:13, 58:23, 59:4,
59:5, 60:7
**States** [3] - 20:6,
61:8, 61:11
**states** [1] - 33:3
**STATES** [1] - 1:1
**static** [1] - 31:18
**stating** [1] - 56:7
**status** [5] - 5:23,
14:23, 48:20
**stay** [2] - 8:23, 48:19
**stealing** [1] - 18:25
**Stenographic** [1] -
1:25
**stenographic** [1] -
61:10
**Stephen** [4] - 3:14,
25:2, 26:14, 56:12
**STEPHEN** [1] - 1:14
**steps** [1] - 35:13
**Steve** [1] - 37:21
**still** [8] - 5:1, 12:1,
38:8, 39:7, 44:24,
45:11, 47:5, 54:14
**stipulation** [1] - 9:9
**stop** [1] - 30:10
**stopped** [1] - 27:14
**stopping** [2] - 25:21,
27:15
**story** [6] - 10:21,
17:16, 19:4, 19:9,
26:20
**straightforward** [1] -
6:12
**Street** [3] - 1:19, 2:3,
38:12
**strictly** [2] - 4:11,
4:15
**strike** [4] - 23:4,
23:10, 25:25, 47:7
**strong** [1] - 11:17
**struggling** [1] - 35:5
**subject** [2] - 36:13,
46:21
**submission** [4] -
42:6, 46:16, 46:18,
46:23

**submitted** [4] - 4:23,
11:22, 45:5, 45:8
**submitting** [1] -
53:17
**subsequent** [1] -
47:17
**substantial** [1] -
56:17
**substantially** [2] -
27:8, 53:10
**substantive** [1] -
41:23
**success** [2] - 15:22,
15:23
**sudden** [1] - 46:23
**sue** [1] - 18:9
**sued** [5] - 12:18,
19:2, 20:12, 58:14,
59:6
**suffer** [1] - 27:7
**suffered** [1] - 53:9
**suggest** [1] - 59:16
**suggesting** [1] -
19:21
**suggestion** [1] -
59:22
**Suite** [4] - 1:15, 1:19,
2:3, 2:10
**Sullivan** [1] - 20:9
**summarize** [1] - 6:12
**summary** [2] - 7:2,
8:16
**supplement** [1] -
13:8
**supplemental** [4] -
26:8, 35:18, 47:13
**supplementary** [1] -
47:8
**supplementing** [1] -
27:9
**support** [3] - 16:14,
57:16, 58:3
**supporting** [2] -
22:11, 60:15
**suppose** [1] - 27:12
**supposed** [1] - 10:11
**Supreme** [2] - 20:6,
20:8
**surprised** [1] - 7:4
**surrounding** [1] -
14:6
**Susman** [6] - 1:13,
3:13, 6:7, 29:11, 34:7,
48:7
**swear** [3] - 52:13,
52:19, 52:20
**swearing** [1] - 52:19
**swing** [1] - 34:18
**system** [23] - 31:10,
32:21, 33:6, 33:15,

34:11, 34:12, 34:15,
34:16, 34:17, 34:21,
35:6, 35:16, 35:19,
36:4, 36:11, 36:15,
36:19, 37:1, 55:1,
55:9
**systems** [4] - 12:21,
13:5, 31:11, 36:12

**T**

**table** [2] - 4:20, 59:8
**tabulate** [1] - 31:23
**tabulator** [1] - 31:21
**tabulators** [2] -
34:24, 35:3
**tape** [2] - 28:10,
28:12
**tardy** [1] - 26:1
**tax** [7] - 16:11, 22:11,
22:16, 52:2, 52:10,
52:11
**team** [1] - 10:8
**technical** [2] - 12:25,
13:4
**TERESA** [1] - 1:18
**Teresa** [2] - 4:1, 42:8
**terms** [7] - 17:9,
20:15, 26:2, 31:11,
36:18, 51:21
**test** [5] - 27:22, 28:2,
29:19, 30:2, 32:9
**testified** [2] - 25:5,
51:11
**testimony** [4] -
10:15, 11:4, 25:4,
53:18
**Texas** [1] - 2:4
**THE** [80] - 1:1, 1:10,
1:13, 2:5, 3:16, 3:22,
3:25, 4:5, 4:8, 11:24,
14:1, 14:11, 16:23,
17:24, 18:9, 18:12,
19:12, 19:16, 20:17,
22:4, 22:24, 23:14,
26:4, 26:12, 27:21,
29:1, 29:7, 29:16,
30:9, 30:23, 32:22,
33:8, 33:17, 33:25,
36:25, 37:4, 37:19,
38:11, 38:24, 39:11,
39:14, 40:4, 40:15,
40:18, 40:23, 40:25,
41:5, 42:2, 42:5, 43:1,
43:14, 44:20, 47:1,
47:15, 47:22, 48:16,
48:24, 49:14, 49:21,
50:1, 50:15, 50:17,
50:21, 51:7, 52:1,
52:24, 54:1, 54:10,

54:14, 54:17, 54:24,
55:7, 56:3, 56:21,
59:10, 60:1, 60:10,
60:16, 60:20, 61:2
**themselves** [1] -
26:10
**theories** [1] - 41:13
**theory** [6] - 15:11,
21:7, 32:22, 33:1,
45:18, 59:16
**thinks** [3] - 6:11,
11:22, 50:9
**third** [2] - 39:22, 43:7
**third-party** [1] -
39:22
**three** [9] - 6:13, 7:6,
12:19, 12:25, 13:16,
33:3, 33:19, 34:14,
49:6
**tide** [2] - 19:10,
19:11
**tight** [2] - 49:12,
54:21
**timeframe** [1] - 50:4
**timely** [3] - 26:2,
43:3, 44:23
**timetable** [1] - 22:2
**timing** [1] - 55:22
**Tobin** [2] - 2:9, 4:6
**TOBIN** [2] - 2:9, 4:6
**today** [7] - 3:14,
8:20, 19:17, 22:5,
48:5, 48:13, 53:14
**together** [4] - 9:11,
10:13, 11:6, 47:25
**took** [3] - 8:25, 28:9,
38:3
**top** [4] - 6:12, 15:5,
57:22, 58:4
**totals** [1] - 36:16
**toward** [1] - 45:1
**towards** [1] - 15:20
**Trade** [1] - 2:13
**TRANSCRIPT** [1] -
1:9
**Transcript** [1] - 1:25
**transcript** [3] - 61:9,
61:9, 61:10
**transcripts** [1] -
38:20
**treason** [1] - 58:16
**trial** [24] - 6:25, 7:3,
11:2, 11:3, 12:4, 12:9,
14:13, 16:2, 21:4,
26:19, 27:7, 27:10,
27:11, 27:20, 28:10,
28:25, 30:1, 30:6,
33:14, 33:16, 53:7,
53:19, 53:20, 54:5
**trouble** [1] - 8:3

**true** [3] - 29:1, 34:4, 61:9
**truly** [1] - 22:21
**Trump** [1] - 10:8
**trust** [1] - 10:15
**truth** [3] - 32:23, 44:2, 44:14
**try** [7] - 17:3, 21:16, 21:19, 22:3, 35:12, 35:25, 39:17
**trying** [3] - 18:21, 46:7, 54:25
**turn** [2] - 9:22, 23:8
**turned** [1] - 29:12
**Twitter** [1] - 41:16
**two** [14] - 6:16, 6:24, 7:1, 7:17, 8:15, 11:12, 14:17, 21:15, 38:19, 51:1, 53:15, 56:14
**two-month** [3] - 7:1, 8:15, 11:12
**tying** [1] - 17:5
**type** [1] - 19:5
**typically** [2] - 27:23, 27:24

## U

**U.S** [1] - 1:10
**ultimately** [1] - 25:13
**under** [11] - 5:3, 11:8, 12:6, 12:7, 26:1, 31:15, 36:18, 40:23, 43:9, 49:6, 49:8
**undercuts** [1] - 18:13
**underlying** [1] - 22:16
**understood** [1] - 30:22
**undisputed** [1] - 39:21
**unfairly** [1] - 9:21
**unfettered** [1] - 36:14
**uniform** [1] - 47:24
**unique** [1] - 14:5
**UNITED** [1] - 1:1
**United** [3] - 20:6, 61:8, 61:11
**universe** [1] - 26:17
**unless** [4] - 20:21, 34:3, 48:3, 61:2
**unlikely** [1] - 12:9
**unrelated** [2] - 57:13, 59:14
**unstayed** [1] - 8:13
**untimeliness** [2] - 43:10
**untraditional** [1] -

8:7
**unusual** [1] - 55:1
**up** [21] - 5:14, 6:19, 10:9, 27:11, 28:22, 28:25, 30:6, 30:12, 30:18, 34:20, 36:23, 37:20, 38:3, 45:12, 45:20, 46:18, 46:19, 47:3, 48:13, 48:25, 51:14
**UPADHYAYA** [1] - 1:10
**update** [3] - 10:2, 27:19, 30:14
**updated** [3] - 27:6, 27:20, 37:15
**US** [6] - 1:3, 3:3, 3:4, 3:5, 3:7, 3:8
**utmost** [1] - 12:13

## V

**Valley** [1] - 25:7
**value** [3] - 16:4, 16:9, 16:20
**valuing** [1] - 16:10
**various** [2] - 56:17, 57:11
**version** [1] - 21:17
**versus** [7] - 3:3, 3:5, 3:6, 3:7, 3:8, 18:3, 20:9
**VIA** [1] - 1:9
**viable** [1] - 34:3
**video** [1] - 36:9
**videoconference** [3] - 4:13, 4:14, 61:10
**VIDEOCONFEREN CE** [1] - 1:9
**videos** [1] - 37:18
**view** [3] - 18:13, 43:21, 53:10
**viewers** [4] - 18:6, 18:16, 18:21, 18:25
**viewership** [1] - 18:2
**Virginia** [1] - 2:17
**virtue** [1] - 4:16
**vote** [3] - 32:4, 32:5, 36:16
**voters** [2] - 34:24, 35:4
**votes** [1] - 36:6
**Voting** [1] - 38:13
**voting** [1] - 32:20
**vs** [1] - 1:5

## W

**wait** [2] - 25:14, 29:8
**waited** [3] - 24:19,

24:23, 41:22
**waived** [2] - 43:4, 43:6
**walk** [1] - 50:1
**Walker** [2] - 2:2, 2:12
**walking** [2] - 39:5, 39:10
**wants** [3] - 37:25, 55:17, 58:22
**warrant** [1] - 8:14
**warranted** [1] - 7:23
**Washington** [4] - 1:11, 1:24, 2:7, 2:10
**websites** [2] - 41:9
**Wednesday** [1] - 25:3
**weeks** [4] - 34:14, 36:7, 53:15, 56:14
**well-known** [2] - 13:10, 48:9
**William** [1] - 3:24
**WILLIAM** [1] - 2:13
**willing** [2] - 19:6, 43:18
**Windows** [1] - 34:22
**Wisconsin** [5] - 2:10, 31:7, 33:20, 33:23, 34:11
**wish** [2] - 38:24, 39:17
**wishes** [3] - 38:5, 38:16, 48:1
**witness** [5] - 9:25, 26:19, 38:4, 38:15, 39:6
**witnesses** [4] - 24:4, 26:3, 27:25, 39:22
**woman** [1] - 52:16
**Woodbridge** [1] - 2:17
**word** [3] - 48:20, 58:9, 59:13
**works** [1] - 36:5
**World** [1] - 2:13
**world** [1] - 19:24
**worth** [10] - 16:3, 16:18, 16:19, 16:21, 20:24, 41:22, 46:2, 57:4, 61:4
**wrap** [1] - 6:19

## Y

**year** [8] - 7:20, 12:7, 12:9, 16:24, 24:14, 40:14, 51:14, 57:22
**years** [6] - 25:22, 28:24, 50:7, 51:1, 51:12, 51:13
**York** [4] - 20:9,

20:11, 24:7
**young** [1] - 52:16
**yourself** [1] - 3:10

## Z

**Zoom** [1] - 38:3